Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens (*pro hac vice* application pending)
Joseph A. Florczak (*pro hac vice* application pending)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: |

## MOTION OF THE DEBTORS
## FOR AN ORDER (I) APPROVING THE CONTINUED USE OF
## THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS
## AND BUSINESS FORMS; (II) PERMITTING CERTAIN INTERCOMPANY
## TRANSACTIONS AND SETOFFS AND (III) GRANTING RELATED RELIEF

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

for the entry of an order pursuant to sections 363, 503(b)(1) and 553(a) of title 11 of the United

States Code (the "Bankruptcy Code") (i) approving the Debtors' continued use of (a) their current

cash management system and (b) the Debtors' existing bank accounts and business forms,

including authorizing the Debtors to open and close bank accounts, (ii) authorizing all banks

participating in the cash management system to honor the Debtors' directions regarding certain

transfers and charge bank fees and certain other amounts and (iii) permitting continued

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

intercompany transactions, granting administrative expense priority status to postpetition intercompany claims held by a Debtor against one or more of the other Debtors and permitting certain intercompany setoffs.  In support of this Motion, the Debtors incorporate the statements contained in the Declaration of R. Kelly Plato in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

## Background

1.      On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.      Debtor ERG Resources, L.L.C. ("ERG Resources") is a privately owned oil & gas producer that was formed in 1996.  As further described below, ERG Resources (a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas properties in California through its wholly owned subsidiary, ERG Operating Company, LLC ("ERG Operating Co.").  The Debtors' corporate headquarters is located in Houston, Texas.

3.      Since 2010, ERG Resources and ERG Operating Co. have been primarily engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in Santa Barbara County, California.  ERG Resources owns approximately 19,027 gross acres (18,794 net acres) of leasehold in the Cat Canyon Field which it has acquired through a series of transactions since 2010.

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

CHI-181960788v7

4.      ERG Resources currently owns an average working interest of approximately ninety-seven percent (97%) and an average net revenue interest of approximately seventy-eight percent (78%) in these leases.  ERG Interests, LLC, another wholly owned subsidiary of ERG Resources, currently owns a seven percent (7%) overriding royalty interest in the oil & gas leases owned by ERG Resources in the Cat Canyon Field.  There is a single purchaser for all of the oil & gas production generated in the Cat Canyon Field.

5.      ERG Resources also owns and operates oil & gas leases representing approximately 683 gross acres (680 net acres) of leasehold located in Liberty County, Texas. There are currently two (2) purchasers of the oil and gas produced from the Liberty County, Texas properties.

***The Debtors' Cash Management System***

6.      In the ordinary course of business, the Debtors operate a cash management system (the "Cash Management System") involving nine (9) domestic bank accounts (collectively, the "Bank Accounts").  The Cash Management System provides a well-established mechanism for the collection, management and disbursement of funds used in the Debtors' business.

7.      The principal components of the Cash Management System and the flow of funds through the system are described below:[3]

(a)     **Revenue Collection Account**.  The Debtors maintain a revenue collection account with Citibank, NA ("Citibank").  This account receives the bulk of the Debtors' business revenue.  Disbursements are made periodically(a)  from this account to the Debtors' four operating accounts and (b) periodically to certain vendors.  The Debtors also periodically transfer amounts in the Revenue Collection Account that are in excess of

---

[3]     A chart summarizing the Cash Management System and a schedule of the Bank Accounts are attached hereto as Exhibits A and B respectively.

CHI-181960788v7

amounts required for the Debtors' operations to the Debtors' Money Market Account as described below.

(b)    **Operating Accounts**. The Debtors maintain three operating accounts at Citibank and one operating / payroll account with Prosperity Bank, NA ("Prosperity Bank"). These operating accounts are the focal point of the Debtors' operations and the Cash Management System.

    (i)    ERG Resources, L.L.C. Operating Accounts. With respect to the operations of ERG Resources, L.L.C., the Debtors maintain an operating account with Citibank and an operating / payroll account with Prosperity Bank (collectively, the "ERG Resources Operating Accounts"). Substantially all of the disbursements related to the operations of ERG Resources, L.L.C. flow through the ERG Resources Operating Accounts.

       The ERG Resources Operating Accounts receive distributions from the Revenue Account. In addition, the Prosperity Bank ERG Resources Operating Account collects funds from certain other miscellaneous receipts.

       Disbursements from the Citibank ERG Resources Operating Account are made to certain vendors. Disbursements from the Prosperity Bank ERG Resources Operating Account are made to (a) payroll obligations, (b) certain vendors and (c) the 401K Account as described below.

    (ii)    ERG Operating Company, LLC Operating Accounts. With respect to the operations of ERG Operating Company, LLC, the Debtors maintain two operating accounts with Citibank (the "ERG Operating Co. Operating Accounts"). Substantially all of the disbursements related to the operations of ERG Operating Company, LLC flow through the ERG Operating Co. Operating Accounts.

       The ERG Operating Co. Operating Accounts receive distributions from the Revenue Account.

       Disbursements from the ERG Operating Co. Operating Accounts are made to (a) vendors and (b) ERG Operating Company, LLC's payroll and petty cash account with Union Bank, NA (the "ERG Operating Co. Payroll & Petty Cash Account").

       The ERG Operating Co. Payroll & Petty Cash Account receives distributions from the ERG Operating Co. Operating Accounts, along with other miscellaneous receipts, and is used primarily to fund the payroll obligations of ERG Operating Company, LLC.

CHI-181960788v7

(iii)    <u>401-k Account</u>.  The Debtors maintain an account with Prosperity Bank primarily to collect and fund the Debtors' 401k employee benefit plan obligations (the "<u>401-k Account</u>").  Employee withholdings and employer matching funds related to 401k contributions for employees of both ERG Resources, LLC and ERG Operating Company, LLC are remitted to the 401k administrator (John Hancock) through the 401k Account.

(c)    **Money Market Account**.  As described above, the Debtors periodically transfer funds in excess of the Debtors' operating requirements from the Revenue Collection Account to a money market account with Citibank.  This account is a money-market savings account and is FDIC insured.

<u>**Legal Basis for Relief Requested**</u>

***The Continued Use of the Cash Management System,***
***Bank Accounts and Business Forms Is Essential to the Debtors' Ongoing***
***Business and is in the Best Interests of the Debtors' Respective Estates and Creditors***

<u>*Cash Management System and Bank Accounts*</u>

8.    The Debtors hereby seek authority to continue to use the Cash Management System.  Significant disruptions to the Debtors' business would be highly likely if the cash management procedures must be quickly altered.  As such, it is essential that the Debtors be permitted to maintain their cash management system in its current format.

9.    Absent the ability to maintain their Cash Management System, the Debtors would have to significantly alter their business operations to comply with United States Trustee established guidelines (the "<u>UST Guidelines</u>").[4]  The Cash Management System provides benefits to the Debtors, such as enabling them to:  (i) control and monitor corporate funds; (ii) invest idle cash; (iii) ensure cash availability; and (iv) reduce administrative expenses by facilitating the movement of funds.

10.    Given the Debtors' corporate and financial structure and the number of

---

[4]    Among other requirements, the United States Trustee guidelines with respect to a debtor's cash management system include:  (i) closing all existing bank accounts and open new debtor in possession accounts; and (ii) maintaining separate debtor in possession accounts for various items.

affiliated entities participating in the Cash Management System, it would be difficult and unduly burdensome for the Debtors to establish an entirely new system of bank accounts and a new cash management and disbursement system for each of the Debtors. Removing this burden will help the Debtors' employees focus on key restructuring tasks instead of devoting their attention to constructing a new cash management system, and thus is in the best interests of the Debtors' estates and creditors.

11.     The Debtors further seek authority to (i) implement changes to the Cash Management System consistent with the DIP Agreement, assuming Court approval of the DIP Agreement and (ii) ordinary course changes to their Cash Management System as the Debtors may determine that other changes in the Cash Management System are beneficial to their business. As part of these changes, the Debtors request authority to open and close bank accounts. The Debtors request that the Banks (as such term is defined below) be authorized to honor the Debtors' requests to open or close any bank accounts, provided, however, that any new account is established at a bank insured with the Federal Deposit Insurance Corporation ("FDIC") or the Federal Savings and Loan Insurance Corporation (the "FSLIC") and that is organized under the laws of the United States or any State therein.

12.     Bankruptcy courts routinely permit chapter 11 debtors to maintain their existing cash management systems and Bank Accounts, generally treating requests for such relief as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition

CHI-181960788v7

"routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

13. Further, the continued postpetition use of cash management systems and continued use of the prepetition bank accounts also has been approved as a routine matter in other bankruptcy cases in this District. See, e.g., In re ALCO Stores, Inc, Case No. 14-34941, Docket No. 70 (Bankr. N.D. Tex. October 16, 2014) (the "ALCO Stores Order"); In re Reddy Ice Holdings, Inc., Case No. 12-32349, Docket No. 60 (Bankr. N.D. Tex. Apr. 13, 2012) (the "Reddy Ice Order"); In re Vitro Asset Corp., Case No. 11-32600, Docket No. 675 (Bankr. N.D. Tex. May 25, 2011) (the "Vitro Asset Order"); In re IDEARC Inc., Case No. 09-31828, Docket No. 156 (Bankr. N.D. Tex. April 19, 2009) (the "IDEARC Order").

14. The Debtors respectfully submit that under the circumstances, the maintenance of the Cash Management System and Bank Accounts in substantially the same form as it existed prior to the Petition Date (or as the Debtors may modify the system under the DIP Agreement or in the ordinary course of business) is in the best interests of the Debtors' estates and creditors.

*Business Forms*

15. In the ordinary course of their business, the Debtors use a multitude of checks and other business forms. By virtue of the nature and scope of the Debtors' business operations and the large number of suppliers of goods and services with which the Debtors deal on a regular basis, it is important that the Debtors be permitted to continue to use their existing checks and other business forms without alteration or change. To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request that they not be required to make reference to their status as debtors-in-possession on any business forms or checks. Absent this relief, the estates will be required to bear potentially significant and unnecessary expenses,

which the Debtors respectfully submit is unwarranted.

16.     As parties that presently conduct business with the Debtors likely will be aware of the Debtors' status as debtors in possession, the alteration of the Debtors' checks and business forms would be unnecessary and unduly burdensome.  Further, the Court has authorized similar relief in other large Chapter 11 cases.  See, e.g., Reddy Ice Order; Vitro Asset Order; IDEARC Order.

***The Court Should Authorize Banks
Participating in the Cash Management System
to Honor the Debtors' Directions Regarding Certain
Transfers and Charge Bank Fees and Certain Other Amounts***

17.     Contemporaneously with the filing of this Motion, the Debtors have filed various motions for authorization to pay certain prepetition debt.  With respect to some of this debt, prior to the Petition Date, the Debtors issued checks that have yet to clear the banking system.  With respect to other debt, the Debtors intend to issue checks postpetition on account of such prepetition debt if the Court enters an order permitting the Debtors to take such action.  The Debtors intend to inform their banks which prepetition checks the Debtors' bank should honor pursuant to orders of the Court authorizing such payment.

18.     As a result of the foregoing, the Debtors request their banks and financial institutions (collectively, the "Banks") be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks will not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court, (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition

check or item to be honored or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

19. Finally, the Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees"). The Debtors also request the Banks be authorized to charge back returned items to the Bank Accounts in the normal course of business.

20. The Debtors require this relief to minimize the disruption of the Cash Management System and their Bank Accounts and to assist them in accomplishing a smooth transition to operating in chapter 11. Authority for debtors to pay bank fees and banks to charge back returned items has been routinely granted in other chapter 11 cases. See, e.g., ALCO Stores Order; Vitro Asset Order; IDEARC Order.

***Permitting Continued Intercompany***
***Transactions and Granting Administrative***
***Expense Status to Intercompany Obligations is Appropriate***

21. Prior to the Petition Date, the Debtors engaged in intercompany transactions with each other in the ordinary course of business (collectively, the "Intercompany Transactions"). Accordingly, at any given time, there may be balances that are due and owing from one Debtor to another. All balances between Debtors are ultimately settled through cash payments in accordance with company procedures.

22. The continuation of the ordinary course Intercompany Transactions will permit the Debtors to conduct business as usual and avoid any disruption to the detriment of the

Debtors and their stakeholders. Accordingly, the Debtors submit that the continuation of these transactions is in the best interests of the Debtors' estates and creditors. The Debtors maintain strict records of transfers of cash and can readily ascertain, trace and account for all Intercompany Transactions. The Debtors will continue to maintain such records, including records of all current intercompany accounts receivable and payable.

23. The Debtors respectfully request that, pursuant to section 503(b)(1) of the Bankruptcy Code, the Court accord administrative expense status to all intercompany claims against a Debtor by another Debtor arising after the Petition Date as a result of Intercompany Transactions (collectively, "Intercompany Claims"). Similar relief is routinely granted in other chapter 11 cases. See, e.g., ALCO Stores Order; Vitro Asset Order; IDEARC Order.

24. Under the terms of the DIP Agreement, the Intercompany Claims are pledged to the Bank. Additionally, the Intercompany Claims are inferior and subordinated to any and all liens, claims and encumbrances of the secured lenders.

***The Preservation and Permitted Exercise of***
***Intercompany Setoff Rights Is Appropriate***

25. The Debtors also seek authorization to preserve and exercise intercompany setoff rights that arise through the operation of their Cash Management System. Section 553(a) of the Bankruptcy Code provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).

26.     A creditor need only establish two elements before a setoff may be asserted:  mutuality and timing.[5]  Although courts have not uniformly defined the elements of mutuality, most courts require the following elements: that the debts are (a) owed between the same parties and (b) in the same right or capacity.[6]  Timing requires that both claims arise prepetition.[7]  In other words, "a creditor may not set off a pre-petition claim against a post-petition debt it owes the debtor, and likewise it may not set off a post-petition claim that it has against a prepetition debt it owes to a debtor."[8]

27.     The Cash Management System and related controls allow the Debtors to track all obligations owing between related entities and thereby ensure that setoffs of Intercompany Claims will meet both the mutuality and timing requirements of section 553 of the Bankruptcy Code.  Accordingly, subject to all of the terms and the provisions of the DIP Agreement and the Prepetition Financing Documents (as defined therein), the Debtors respectfully request that they be expressly authorized to set off mutual prepetition obligations relating to the intercompany transactions that occurred prior to the Petition Date.

---

[5]     See Official Comm. of Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re The Bennett Funding Group, Inc.), 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997); In re Lehman Bros. Inc., 458 B.R. 134, 139-40 (Bankr. S.D.N.Y. 2011); see also In re Verco Indus., 704 F.2d 1134, 1139 (9th Cir. 1983); In re Lundell Farms, 86 B.R. 582, 584 (Bankr. W.D. Wis. 1988).

[6]     See 5 COLLIER ON BANKRUPTCY ¶ 553.03[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2010); Lubman v. Sovran Bank, N.A. (In re A & B Homes, Ltd.), 98 B.R. 243, 248 (Bankr. E.D. Va. 1989); see also Cohen v. Savs. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54, 57 (3d Cir. 1990) (explaining that the right of setoff depends on the existence of mutual debts and claims between the creditor and debtor).

[7]     See Cooper Jarrett, Inc. v. Cent. Transp., Inc., 726 F.2d 93, 96 (3d Cir. 1984) (noting that a creditor may not [setoff] its prepetition claims against a debt owed to a debtor which came into existence after filing the bankruptcy petition); see also Packaging Indus. Group, Inc. v. Dennison Mfg. Co. (In re Sentinel Prods. Corp.), 192 B.R. 41, 45 (N.D.N.Y. 1996) ("[T]he offset debts must be mutual, prepetition debts."); Scherling v. Hellman Elec. Corp. (In re Westchester Structures), 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995) ("Courts have interpreted debts in the same right to mean that a 'pre-petition debt cannot offset a post-petition debt.'").

[8]     Arnold M. Quittner, Setoff & Recoupment, 715 PLI/Comm 663, 694 (1995) (citing Metco Mining & Minerals, Inc. v. PBS Coals, Inc. (In re Metco Mining and Minerals, Inc.), 171 B.R. 210 (Bankr. W.D. Pa. 1994)); see also Westchester Structures, 181 B.R. at 739.

CHI-181960788v7

**Requests for Immediate Relief and Waiver of Stay**

28.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek immediate entry of an order granting the Debtors (i) the authority to continue to pay Bank Fees and (ii) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

29.     The continued use of the Bank Accounts, Cash Management System and business forms, and the payment of Bank Fees, are necessary to prevent the immediate and irreparable damage to the Debtors' operations.  Accordingly, the Debtors submit that ample cause exists to justify:  (i) the immediate entry of an order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b); and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**Notice**

30.     Notice of this Motion has been given to:  (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (iii) counsel to the

agents for the Debtors' prepetition and proposed postpetition secured lenders; (iv) Citibank, NA;

(v) Union Bank, NA; and (vi) Prosperity Bank, NA.  In light of the nature of the relief requested,

the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.


Dated:  April 30, 2015            Respectfully submitted,
        Dallas, Texas


                                   /s/   Tom A. Howley
                                  _____

                                  Tom A. Howley
                                  JONES DAY
                                  717 Texas Avenue, Suite 3300
                                  Houston, Texas 77002
                                  Telephone:  (832) 239-3939
                                  tahowley@jonesday.com

                                  Brad B. Erens
                                  Joseph A. Florczak
                                  JONES DAY
                                  77 West Wacker
                                  Chicago, Illinois 60601
                                  Telephone:  (312) 782-3939
                                  bberens@jonesday.com
                                  jflorczak@jonesday.com

                                  PROPOSED ATTORNEYS FOR DEBTORS

# **EXHIBIT A**

Flow Chart Summarizing Cash Management System

# ERG Resources, LLC & Subsidiaries
# Cash Management System



Note: Dashed lines indicated proposed changes to the pre-petition cash management system to ensure conformity to the post-petition financing requirements

# **EXHIBIT B**

Schedule of Bank Accounts

| **Bank** | **Account Holder** | **Account Type** | **Account Number**[1] |
|---|---|---|---|
| Citibank, NA | ERG Resources, L.L.C. | Revenue Collection Account | 9084 |
| Citibank, NA | ERG Resources, L.L.C. | Money Market Account | 3248 |
| Citibank, NA | ERG Resources, L.L.C. | Operating Account | 4980 |
| Prosperity Bank, NA | ERG Resources, L.L.C. | Operating / Payroll Account | 1813 |
| Prosperity Bank, NA | ERG Resources, L.L.C. | 401k Account | 9731 |
| Union Bank, NA | ERG Resources, L.L.C. | [Dormant Money Market] | 4407 |
| Citibank, NA | ERG Operating Company, LLC | Operating Account | 3272 |
| Citibank, NA | ERG Operating Company, LLC | Operating Account | 3150 |
| Union Bank, NA | ERG Operating Company, LLC | Payroll & Petty Cash Acct | 3690 |

---

[1]    In order to alleviate privacy concerns, this column only contains the last four digits of the account numbers

**EXHIBIT C**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: |

---

**ORDER (I) APPROVING THE CONTINUED USE OF THE**
**DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS**
**AND BUSINESS FORMS, (II) PERMITTING CERTAIN INTERCOMPANY**
**TRANSACTIONS AND SETOFFS AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the Motion of the Debtors for an Order

(I) Approving the Continued Use of the Debtors' Cash Management System, Bank Accounts and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

Business Forms, (II) Permitting Certain Intercompany Transactions and Setoffs and (III) Granting Related Relief (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances, and (iv) good cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to:  (i) maintain the Cash Management System in substantially the same form as described in the Motion; (ii) implement changes to their Cash Management System in the ordinary course of business and in accordance with the DIP Agreement, if and when such DIP Agreement is approved by the Court; and (iii) open and close bank accounts; provided, however, that the Debtors give notice to the Office of the United States Trustee and any official committees appointed in these chapter 11 cases prior to opening or closing a bank account.  Any new domestic bank account opened by the Debtors shall be established at an institution insured by the FDIC or the FSLIC and that is organized under the

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

laws of the United States or any State therein.

3.     The Debtors are authorized to continue to use the Bank Accounts under existing account numbers without interruption; provided, however, that no checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases shall be honored, except as otherwise authorized by an order of this Court and directed by the Debtors.

4.     The Debtors shall not be required to make reference to their status as debtors-in-possession on checks or business forms.

5.     The Banks are authorized to accept and honor all representations and directions from the Debtors as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on, or subsequent to the Petition Date. The Banks shall not be liable to any party on account of:  (i) following the Debtors' instructions or representations as to any order of this Court; (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

6.     The Banks are authorized to charge and the Debtors are authorized to pay or honor the Bank Fees related to the Bank Accounts.  The Banks also are authorized to charge back returned items to the Bank Accounts in the normal course of business.

7.     The Debtors are authorized, from and after the Petition Date, to continue to engage in Intercompany Transactions in the ordinary course of the Debtors' businesses.  All Intercompany Claims held by a Debtor against another Debtor arising from postpetition Intercompany Transfers shall be entitled to administrative expense priority pursuant to section

CHI-181960788v7

503(b)(1) of the Bankruptcy Code. In connection therewith, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

8. Pursuant to section 553 of the Bankruptcy Code, the Debtors are authorized, subject to all of the terms and the provisions of the DIP Agreement and the Prepetition Financing Documents (as defined therein), to (a) set off mutual prepetition obligations relating to Intercompany Transactions through the Cash Management System and (b) set off mutual postpetition obligations relating to Intercompany Transactions through the Cash Management System.

9. Notwithstanding anything contained in this Order to the contrary, to the extent this Order is inconsistent with any term or provision of any Court approved debtor in possession financing and/or use of cash collateral or any future order in respect of the same, such other documents or orders shall govern and control.

10. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

11. This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

CHI-181960788v7

###END OF ORDER###


Submitted by:


Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: |

## CERTIFICATE OF CONFERENCE

I, Brad B. Erens, hereby certify that counsel for the above-captioned debtors delivered an advance copy of the Motion of the Debtors for an Order (I) Approving the Continued Use of the Debtors' Cash Management System, Bank Accounts and Business Forms, (II) Permitting Certain Intercompany Transactions and Setoffs and (III) Granting Related Relief (the "Motion") with the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") on April 29, 2015. The U.S. Trustee had not given any comment regarding the relief sought in the Motion at the time of the filing of the Motion. The Debtors intend to work proactively with the U.S. Trustee in the event that any issues with respect to the relief sought in the Motion are raised.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

Dated:  April 30, 2015         Respectfully submitted,
       Dallas, Texas


  /s/  Brad B. Erens

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS