Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
tahowley@jonesday.com

Brad B. Erens (*pro hac vice* application pending)
Joseph A. Florczak (*pro hac vice* application pending)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

## APPLICATION OF DEBTORS FOR AN ORDER
## AUTHORIZING THE APPOINTMENT OF EPIQ BANKRUPTCY
## SOLUTIONS, LLC AS CLAIMS, NOTICING AND BALLOTING AGENT

The above-captioned debtors (collectively, the "Debtors") apply to the Court for

entry of an order (the "Retention Order") pursuant to 28 U.S.C. § 156(c), sections 105(a), 327(a)

and 328 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-

1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the Northern District of Texas (the "Local Rules"), authorizing the appointment of

Epiq Bankruptcy Solutions, LLC ("Epiq") as claims, noticing and balloting agent in these

chapter 11 cases.  In support of this application (the "Epiq Application"), the Debtors rely on the

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

Declaration of R. Kelly Plato in Support of First Day Pleadings (the "First Day Declaration"), the

Agreement for Services, dated April 2, 2015 (the "Services Agreement"), a copy of which is

attached hereto as Exhibit A and incorporated herein as applicable, and the Declaration of Todd

W. Wuertz, Director at Epiq (the "Wuertz Declaration"), a copy of which is attached hereto as

Exhibit B and incorporated herein, and respectfully represent as follows:

## Background

1.      On April 30, 2015 (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.

2.      Debtor ERG Resources, L.L.C. ("ERG Resources") is a privately owned

oil & gas producer that was formed in 1996.  As further described below, ERG Resources

(a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas

properties in California through its wholly owned subsidiary, ERG Operating Company, LLC

("ERG Operating Co.").  The Debtors' corporate headquarters is located in Houston, Texas.

3.      Since 2010, ERG Resources and ERG Operating Co. have been primarily

engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in

Santa Barbara County, California.  ERG Resources owns approximately 19,027 gross acres

(18,794 net acres) of leasehold in the Cat Canyon Field which it has acquired through a series of

transactions since 2010.

4.      ERG Resources currently owns an average working interest of

approximately ninety-seven percent (97%) and an average net revenue interest of approximately

---

[2]        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to
28 U.S.C. § 1409.

seventy-eight percent (78%) in these leases. ERG Interests, LLC, another wholly owned subsidiary of ERG Resources, currently owns a seven percent (7%) overriding royalty interest in the oil & gas leases owned by ERG Resources in the Cat Canyon Field. There is a single purchaser for all of the oil & gas production generated in the Cat Canyon Field.

5.      ERG Resources also owns and operates oil & gas leases representing approximately 683 gross acres (680 net acres) of leasehold located in Liberty County, Texas. There are currently two (2) purchasers of the oil and gas produced from the Liberty County, Texas properties.

### Basis For Relief Requested

6.      The Debtors have determined that they will have to provide certain notices in these bankruptcy cases to over a thousand entities, many of whom may file claims. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims, noticing and balloting agent is otherwise in the best interests of both the Debtors' estates and their creditors.

7.      The Debtors' selection of Epiq to act as the claims, noticing and balloting agent occurred after the Debtors obtained and reviewed engagement proposals from three other claims, noticing and balloting agents to ensure selection through a competitive process. Moreover, the Debtors submit that, based on all engagement proposals obtained and reviewed, Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

8.      By appointing Epiq as the claims, noticing and balloting agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited and the Office of the Clerk of the Court (the "Clerk's Office") will be relieved of the administrative burden of processing what may be a large number of claims. Further, the Debtors will be

relieved of heavy administrative and other burdens that over a thousand creditors and parties in interest may impose during these chapter 11 cases.

### Epiq's Qualifications

9.     Epiq provides comprehensive solutions to design and implement legal notice programs and manage claims issues for chapter 11 cases.  For chapter 11 case management, Epiq specializes in noticing, claims processing and other administrative tasks necessary to operate chapter 11 cases effectively.  Epiq is one of the country's leading chapter 11 administrators, with substantial experience in matters of significant size and complexity.  Indeed, Epiq has acted as the official claims, noticing and balloting agent in many large bankruptcy cases in districts nationwide.  See, e.g., In re Alsip Acquisition, LLC, Case No. 14-12596 (Bankr. D. Del. Nov. 20, 2014); In re IBCS Mining, Inc., Case No. 14-61215  (Bankr. W.D. VA Jun. 27, 2014); In re Licking River Mining, LLC, Case No. 14-10201 (Bankr. E.D. KY. May 22, 2014); In re James River Coal Company, Case No. 14-31848 (Bankr. E.D. VA. Apr. 7, 2014); In re Regional Care Servs. Corp., Case No. 14 01383 (Bankr. D. AZ. Feb. 4, 2014); In re Goldking Holdings, LLC, Case No. 13-37200 (Bankr. S.D. Tex. Oct. 30, 2013); In re Trinity Coal Corp., Case No. 13-50364 (Bankr. E.D. Ky. Feb. 14, 2013); In re ATLS Acquisition, LLC, Case No. 13 10262 (Bankr. D. Del. Feb. 2, 2013): In re Pinnacle Airlines Corp., Case No. 12 11343 (Bankr. S.D.N.Y. Apr. 3, 2012); In re Dynegy Holdings, LLC, Case No. 11 38111 (Bankr. S.D.N.Y. Nov. 15, 2011); In re 4Kids Entertainment, Inc., Case No. 11 11607 (Bankr. S.D.N.Y. Apr. 8, 2011); In re Saint Vincent's Catholic Medical Ctrs. of N.Y., Case No. 10-11963 (Bankr. S.D.N.Y. Apr. 16, 2010); In re Old Carco LLC (f/k/a Chrysler LLC), Case No. 09-50002 (Bankr. S.D.N.Y. May 4, 2009); In re Lyondell Chem. Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 7, 2009); In re Lehman Bros. Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 16, 2008).

## Services To Be Provided

10.     The Debtors seek to engage Epiq to perform work within the scope of the delegation of duties of the Clerk of the Court (the "Clerk") permitted by 28 U.S.C. § 156(c) as well as the functions of an administrative advisor to the Debtors under section 327 of the Bankruptcy Code.  Specifically, under the Services Agreement, it is anticipated that Epiq will perform, at the request of the Debtors or the Clerk, as applicable, the following services (collectively, the "Claims, Noticing and Balloting Services"):

***Noticing Services***

(a)     Prepare and serve required notices and documents in the chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date and any auction or sale hearing, (iii) notices of objections to claims, (iv) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan or plans and (v) other miscellaneous notices to any entities as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     For all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit of service within seven (7) business days of service that includes, to the extent not inconsistent with any case management order entered by the Court, (i) a copy of the notice involved, (ii) a list of persons to whom it was mailed and (iii) the date and manner of mailing;

(c)     Update the claim database to reflect undeliverable or changed addresses;

(d)     Coordinate publication of certain notices in periodicals and other media;

(e)     Distribute claim acknowledgement cards to any creditor that has filed a proof of claim/interest;

*Preparation of Schedules and Statements*

(f)    Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities (the "<u>Schedules</u>") and Statements of Financial Affairs (the "<u>Statements</u>"), including (as needed): (i) coordinating with the Debtors and their advisors regarding the Schedules and Statements process, requirements, timelines and deliverables, (ii) creating and maintaining databases for maintenance and formatting of Schedules and Statements data, (iii) coordinating collection of data from the Debtors and their advisors and (iv) providing data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G;

*Claims Management Services*

(g)    Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form);

(h)    Provide a secure on-line tool through which creditors can file proofs of claim and related documentation;

(i)    Create and maintain electronic databases for creditors and parties in interest information provided by the debtor (e.g., creditor matrices, Schedules and Statements) and by creditors and parties in interest (e.g., proofs of claim and proofs of interests);

(j)    Process all proofs of claim or interest received;

(k)    Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours;

(l)    Maintain the official claims register for each Debtor (the "<u>Claims Registers</u>") on behalf of the Clerk and include in the Claims Registers, among other things, the following information for each proof of claim or proof of interest: (i) the name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent, (ii) the date received, (iii) the claim number assigned and (iv) the asserted amount and classification of the claim;

(m)    Create and maintain a website with general case information, key documents, claim search function and mirror of ECF case docket (the "<u>Case Information Website</u>");

(n)    Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or

less frequent basis or, in the alternative, make available the claims register on-line;

(o) Implement necessary security measures to ensure the completeness and integrity of the claims registers;

(p) Record all transfers of claims pursuant to Bankruptcy Rule 3001 (e) and provide notice of such transfers as required by Bankruptcy Rule 300l(e);

(q) Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office;

***Balloting and Tabulation Services***

(r) Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed): (i) coordinate distribution of solicitation documents, (ii) respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders, (iii) respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures, (iv) establish a website for the posting of solicitation documents, (v) receive and examine all ballots and master ballots cast by voting parties, (vi) date and time-stamp the originals of all such ballots and master ballots upon receipt and (vii) tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures and prepare a certification for filing with the court;

(s) Undertake such other duties as may be requested by the Debtors;

***Call Center Services***

(t) Provide state-of-the-art call center facility and services, including (as needed): (a) create frequently asked questions, call scripts, escalation procedures and call log formats; (b) record automated messaging; (c) train call center staff; and (d) maintain and transmit call log to Debtors and its advisors;

***Virtual Dataroom Services***

(u) Provide confidential on-line workspace to facilitate contract review, or creation of contract repository, among other reasons; and

-7-

*Miscellaneous Services*

        (v)    In addition, (i) provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors, (ii) promptly comply with such further conditions and requirements as the Court may at any time prescribe, (iii) comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements and (iv) provide temporary employees to the Clerk's Office to process claims, as necessary.

      11.    Epiq will not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court.

      12.    In the event Epiq is unable to provide the claims and noticing services set out above, Epiq will immediately notify the Clerk and the Debtors' attorneys and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorneys.

## Professional Compensation

      13.    The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the Claims, Noticing and Balloting Services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  Epiq agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee of the Northern District of Texas (the "U.S. Trustee"), counsel to the Debtors, counsel to any official committee monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or monthly invoices,

the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

14. Prior to the Petition Date, the Debtor provided Epiq a retainer in the amount of $15,000, which has been replenished on an as-needed basis. Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, Epiq may hold its retainer under the Services Agreement during the chapter 11 case as security for the payment of fees and expenses incurred under the Services Agreement.

## Disinterestedness

15. Epiq has reviewed its electronic database to determine whether it has any relationships with the creditors and parties-in-interest provided by the Debtors, and, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the Wuertz Declaration, Epiq has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16. In connection with its retention as the claims, noticing and balloting agent, Epiq represents in the Wuertz Declaration, among other things, that:

(a) Epiq is not a creditor of the Debtors;

(b) Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(d) In its capacity as the claims and noticing agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

-9-

(e)     Epiq will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these chapter 11 cases;

(f)     In its capacity as the claims and noticing agent in these chapter 11 cases, Epiq will not intentionally misrepresent any fact to any person;

(g)     Epiq shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(h)     None of the services provided by Epiq as the claims and noticing agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

17.     To the extent that there is any inconsistency between the Epiq Application, the Retention Order and the Services Agreement, the Retention Order shall govern.

18.     Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to promptly file a supplemental affidavit.

**<u>Indemnification Provisions</u>**

19.     Pursuant to the indemnification provisions contained in the Services Agreement (the "<u>Indemnification Provisions</u>"), the Debtors have agreed, among other things, to indemnify, hold harmless and defend Epiq, its affiliates, parent and each such entity's officers, members, directors, and other parties under certain circumstances.[3]

20.     The terms and conditions of the Services Agreement were negotiated by the Debtors and Epiq at arm's-length and in good faith. Epiq has agreed, in light of the Debtors' chapter 11 filings, to modify its rights under the Indemnification Provisions as set forth in the

---

[3]     The Indemnification Provisions provide, in part, that the Debtors will indemnify and hold harmless Epiq and certain Indemnified Persons (as defined in the Services Agreement) from any losses, claims, damages liabilities, costs and expenses arising out of, or relating to, the Services Agreement or Epiq's rendering of services thereunder, other than losses resulting solely from Epiq's gross negligence or willful misconduct. To the extent that the description in this Application and the Indemnification Provisions are inconsistent, the Indemnification Provisions will control.

-10-

proposed order attached hereto. The Debtors respectfully submit that Indemnification

Provisions, viewed in conjunction with the other terms of Epiq's proposed retention, and as

modified in the proposed order attached hereto as Exhibit C, are reasonable and in the best

interests of the Debtors, their estates and creditors in light of the fact that the Debtors require

Epiq's services to successfully administer their chapter 11 cases.

### Requests for Immediate Relief & Waiver of Stay

21.      Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an

order granting the Debtors the authority to pay Epiq under the terms of the Services Agreement

and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b)

provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate

and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant

relief regarding . . . a motion to incur an obligation regarding property of the estate."

Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property

other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless

the court orders otherwise."

22.      As set forth above, the retention of Epiq is essential to the administration

of the Debtors' chapter 11 cases given their size and complexity. Without Epiq's services,

immediate and irreparable harm in the form of substantial delay, large administrative burdens

and additional costs would likely result. Accordingly, the Debtors submit that ample cause

exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a

waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it

applies.

**Notice**

23.     Notice of the Epiq Application has been given to:  (i) the Office of the

United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest

unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; and

(iii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders.

In light of the nature of the relief requested, the Debtors submit that no further notice is

necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>, granting:  (i) the relief requested herein; and (ii) such other and further relief to the Debtors as the Court may deem proper.

Dated:  May 1, 2015
       Dallas, Texas

                               Respectfully submitted,


                                /s/  Tom A. Howley

                               Tom A. Howley
                               JONES DAY
                               717 Texas Avenue, Suite 3300
                               Houston, Texas 77002
                               Telephone:  (832) 239-3790
                               tahowley@jonesday.com

                               Brad B. Erens
                               Joseph A. Florczak
                               JONES DAY
                               77 West Wacker
                               Chicago, Illinois 60601
                               Telephone:  (312) 782-3939
                               bberens@jonesday.com
                               jflorczak@jonesday.com

                               PROPOSED ATTORNEYS FOR DEBTORS

CHI-181961923v6

**<u>EXHIBIT A</u>**

Services Agreement

# EPIQ SYSTEMS

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

1. **Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on The Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

2. **Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

3. **Charges.**

3.1  For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2  Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2015. If such

1



annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3 Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $15,000.00 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4. Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

5.  <u>Title to Property.</u>

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "<u>Property</u>").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

6.  <u>Disposition of Data.</u>

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "<u>Client Materials</u>") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; <u>provided</u>, <u>however</u>, Epiq shall provide Client with thirty (30) days' prior written notice if its intent to dispose of such data and media.

7.  <u>Indemnification.</u>

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "<u>Indemnified Person</u>") harmless from and against any and all losses, claims, damages, liabilities, costs

3

(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. Representations / Warranties.

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9. Confidential On-Line Workspace

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 10. General

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to

4



protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

10.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8 This Agreement may be executed in counterparts, each of which shall be deemed to an original, but all of which shall constitute one and the same agreement.

10.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

10.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

      If to Epiq Systems:

            Epiq Bankruptcy Solutions, LLC
            757 Third Avenue, Third Floor
            New York, New York 10017
            Attn: James Katchadurian

      If to Client:



ERG Resources, L.L.C.
Three Allen Center
333 Clay Street, Suite 4400
Houston, TX 77002
Attn: Chief Financial Officer

<u>With a copy to</u>:

Brad B. Erens, Esq.
Jones Day
77 W. Wacker Drive
Chicago, Illinois 60601

10.11 Invoices sent to Client should be delivered to the following address:

ERG Resources, L.L.C.
Three Allen Center
333 Clay Street, Suite 4400
Houston, TX 77002
Attn: Chief Financial Officer

Email:      kplato @ ergresources.com

10.12   The "Effective Date" of this Agreement is _April 2_, 2015

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

EPIQ BANKRUPTCY SOLUTIONS, LLC

Name:  James Katchadurian
Title:    Executive Vice President

6



**ERG RESOURCES, L.L.C.**

By: _____

Name: R. Kelly Plato

Title: Chief Financial Officer

7



## SERVICES SCHEDULE

### SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

### CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

- Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


## NOTICING
- Prepare and serve required notices in these Chapter 11 cases, including:

  - Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

  - Notice of any auction sale hearing;

  - Notice of the claims bar date;

  - Notice of objection to claims;

  - Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

  - Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

- After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

- Update claim database to reflect undeliverable or changed addresses.

9

➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION
➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Establish a website for the posting of solicitation documents.

- Receive and examine all ballots and master ballots cast by voting parties. Date- and time-stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER
➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create of frequently asked questions, call scripts, escalation procedures and call log formats.

- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.

## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Debtors.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.

epiq
S Y S T E M S

# EPIQ SYSTEMS PRICING SCHEDULE

## CLAIM AND NOTICING RATES[1]

| Title | Rates |
|-------|-------|
| Clerical/Administrative Support | $30.00 – $45.00 |
| Case Manager | $60.00 – $80.00 |
| IT / Programming | $70.00 – $120.00 |
| Sr. Case Manager/Dir. of Case Management | $85.00 – $150.00 |
| Consultant/ Senior Consultant | $145.00 – $180.00 |
| Director/Vice President | $190.00 |
| Executive Vice President | WAIVED |

## NOTICING SERVICES[2]

| | |
|-------|-------|
| Printing | $0.09 per image (volume discounts apply) |
| Personalization / Labels | $0.05 each |
| Envelopes[3] | NO CHARGE |
| Document Folding and Inserting | NO CHARGE |
| Postage / Overnight Delivery | At cost |
| E-Mail Noticing | WAIVED |
| Fax Noticing | WAIVED |
| Claim Acknowledgement Letter | $0.10 per Letter |
| Publication Noticing | Quoted at time of request |
| Processing Undeliverable Mail | $0.25 per piece |
| CD-Rom | $5.00 per CD plus single setup fee waived |

---

[1] Epiq Systems does not charge a premium/overtime charge for any of the professional services it performs. Outside vendors utilized by Epiq Systems may include a premium / overtime charge for work performed on a weekend, holiday or after standard business hours.

[2] Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

[3] Excludes business reply envelopes



## DATA MANAGEMENT SERVICES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Data Import / Transfer | No per creditor charge |
| Electronic Imaging[4] | $0.10 per image |
| Weblink Hosting Fee | NO CHARGE |
| Update Website case docket including all filed pleadings | NO CHARGE |
| Manual Claim Input | No per creditor charge |
| Web-based Claims Reconciliation Tool (Unlimited Users) | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |
| Document Storage    (paper) | $2.00 per box |
| (electronic) | No per creditor/image charge |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

## CALL CENTER SERVICES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $50 per hour |
| Voice Recorded Message | $0.32 per minute |
| Support/Maintenance | NO CHARGE |

## VIRTUAL DATA ROOM

| | |
|---|---|
| Confidential On-Line Workspace | Quoted at time of request |

---

[4]    An additional $0.10 is charged per image for optical character recognition imaging.

13



### DISBURSEMENT SERVICES

| | |
|---|---|
| Check and/or Form 1099 | Quoted at time of request |
| Record to Transfer Agent | Quoted at time of request |

## **EXHIBIT B**

Wuertz Declaration

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

## DECLARATION OF TODD W. WUERTZ
## IN SUPPORT OF APPLICATION OF DEBTORS FOR AN
## ORDER AUTHORIZING THE APPOINTMENT OF EPIQ BANKRUPTCY
## SOLUTIONS, LLC AS CLAIMS, NOTICING AND BALLOTING AGENT

I, Todd W. Wuertz, under penalty of perjury, declare as follows:

1.       I am a Director of Epiq Bankruptcy Solutions, LLC ("Epiq").  The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto.[2]

2.       This declaration (the "Declaration") is made in support of the Debtors' Application for an Order Authorizing the Appointment of Epiq Bankruptcy Solutions, LLC as Claims, Noticing and Balloting Agent (the "Epiq Application").[3]

3.       As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the notice and claims related services specified in the Epiq Application

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

[2]      Certain of the disclosures herein relate to matters within the knowledge of other professionals at Epiq and are based on information provided by them.

[3]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Epiq Application.

and the Services Agreement. In addition, at the Debtors' request, Epiq will perform such other noticing, claims, administrative, technical and support services specified in the Epiq Application and the Services Agreement.

       4.    Epiq is one of the country's leading chapter 11 administrators, with substantial experience in matters of significant size and complexity. Indeed, Epiq has acted as the official claims, noticing and balloting agent in many large bankruptcy cases in districts nationwide. See, e.g., In re Alsip Acquisition, LLC, Case No. 14-12596 (Bankr. D. Del. Nov. 20, 2014); In re IBCS Mining, Inc., Case No. 14-61215 (Bankr. W.D. VA Jun. 27, 2014); In re Licking River Mining, LLC, Case No. 14-10201 (Bankr. E.D. KY. May 22, 2014); In re James River Coal Company, Case No. 14-31848 (Bankr. E.D. VA. Apr. 7, 2014); In re Regional Care Servs. Corp., Case No. 14 01383 (Bankr. D. AZ. Feb. 4, 2014); In re Goldking Holdings, LLC, Case No. 13-37200 (Bankr. S.D. Tex. Oct. 30, 2013); In re Trinity Coal Corp., Case No. 13-50364 (Bankr. E.D. Ky. Feb. 14, 2013); In re ATLS Acquisition, LLC, Case No. 13 10262 (Bankr. D. Del. Feb. 2, 2013): In re Pinnacle Airlines Corp., Case No. 12 11343 (Bankr. S.D.N.Y. Apr. 3, 2012); In re Dynegy Holdings, LLC, Case No. 11 38111 (Bankr. S.D.N.Y. Nov. 15, 2011); In re 4Kids Entertainment, Inc., Case No. 11 11607 (Bankr. S.D.N.Y. Apr. 8, 2011); In re Saint Vincent's Catholic Medical Ctrs. of N.Y., Case No. 10-11963 (Bankr. S.D.N.Y. Apr. 16, 2010); In re Old Carco LLC (f/k/a Chrysler LLC), Case No. 09-50002 (Bankr. S.D.N.Y. May 4, 2009); In re Lyondell Chem. Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 7, 2009); In re Lehman Bros. Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 16, 2008).

       5.    As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform at the request of the Clerk's office the noticing and claims-related services specified in this Epiq Application. In addition, at the Debtors' request, Epiq will

perform such other noticing, claims, technical, administrative and support services specified in the Epiq Application.

6. Epiq represents, among other things, the following:

(a) Epiq is not a creditor of the Debtors;

(b) Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, Epiq waives any rights to receive compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(d) In its capacity as the claims and noticing agent in these chapter 11 cases, Epiq will not be an agent of the United States and will not act on behalf of the United States;

(e) Epiq will not employ any past or present employees of the Debtors in connection with its work as the the claims and noticing agent in these chapter 11 cases;

(f) In its capacity as the claims and noticing agent in these chapter 11 cases, Epiq will not intentionally misrepresent any fact to any person;

(g) Epiq shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(h) None of the services provided by Epiq as the claims and noticing agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

7. To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Epiq, nor any employee thereof, has any materially adverse connection to the Debtors, their creditors or other relevant parties. Epiq may have relationships with certain of the Debtors' creditors as vendors or in connection with

cases in which Epiq serves or has served in a neutral capacity as the claims and noticing agent for another chapter 11 debtor.

8. In addition, Epiq personnel may have relationships with some of the Debtors' creditors or other parties in interest. However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases. Epiq has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, Epiq has had and will continue to have relationships in the ordinary course of its business with certain vendors, professionals and other parties in interest that may be involved in the Debtors' cases in matters unrelated to these cases. Epiq may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors. To the best of my knowledge, neither Epiq, nor any employees thereof, represents any interest materially adverse to the Debtors' estates with respect to any matter upon which Epiq is to be engaged. Based on the foregoing, I believe that Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

9. Pursuant to the Epiq Application, the Debtors propose to retain Epiq to perform certain administrative advisory duties under section 327 of the Bankruptcy Code. In accordance therewith, Epiq has reviewed its electronic database to determine whether it has any relationships with the entities provided by the Debtors. Epiq currently serves, or in the past has served, in a neutral capacity as the claims and noticing agent for certain of these parties. However, given Epiq's neutral position as the claims and noticing agent in those cases, the Debtors' cases or any other cases, Epiq does not view such relationships as real or potential conflicts. Further, to the best of my knowledge, any such relationships are completely unrelated

to these chapter 11 cases. At this time, we are not aware of any relationship that would present a disqualifying conflict of interest. Should Epiq discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Epiq will use reasonable efforts to file promptly a supplemental affidavit.

10. Epiq shares a corporate parent with certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

11. In performing the services of claims and noticing agent, Epiq will charge the Debtors the rates set forth in the Services Agreement, which is attached as Exhibit A to the Epiq Application.

12. Epiq will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Dated: May 1, 2015

By: /s/ Todd W. Wuertz
       Todd W. Wuertz
       Director
       Epiq Bankruptcy Solutions, LLC

## **EXHIBIT C**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

**ORDER AUTHORIZING**
**THE DEBTORS TO APPOINT EPIQ BANKRUPTCY**
**SOLUTIONS, LLC AS CLAIMS, NOTICING AND BALLOTING AGENT**

This matter coming before the Court on the Debtors' Application for an Order

Authorizing the Appointment of Epiq Bankruptcy Solutions, LLC as Claims, Noticing and

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

Balloting Agent (the "Epiq Application"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Epiq Application, the Wuertz Declaration, the First Day Declaration and having considered the statements of counsel and evidence adduced with respect to the Epiq Application at a hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Epiq Application and the Hearing was sufficient under the circumstances, (v) the Debtors have estimated that there are over a thousand creditors in these chapter 11 cases, many of which may require notice and file proofs of claim, (vi) the provision of notice and the receipt, docketing and maintenance of proofs of claim would be unduly time consuming and burdensome for the Clerk, (vii) Epiq has the capability and experience to provide such services and (vii) Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, with respect to the matters upon which it is to be engaged; and the Court having determined that the legal and factual bases set forth in the Epiq Application, the Wuertz Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.        The Epiq Application is GRANTED.

2.        Notwithstanding the terms of the Services Agreement attached to the Epiq Application, the Epiq Application is approved solely as set forth in this Order.

3.        The Debtors are authorized to appoint Epiq effective as of the Petition Date under the terms of the Services Agreement, and Epiq is authorized and directed to perform

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Epiq Application.

noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, as described in the Epiq Application and the Services Agreement.

4.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5.      Epiq is authorized to take such other action to comply with all duties set forth in the Epiq Application, subject to the provisions of this Order.

6.      Epiq shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the Office of the U.S. Trustee, counsel to the Debtors, counsel to any official committee monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.

7.      The Debtors are authorized to compensate Epiq in accordance with the terms of the Services Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.      The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Services Agreement or monthly invoices; provided, however, that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtors' estates.

10.     Epiq shall apply its retainer to all fees, costs and expenses incurred pursuant to the Services Agreement.

11.     The Debtors shall indemnify Epiq under the terms of the Services Agreement.

12.     All requests by Epiq for the payment of indemnification as set forth in the Epiq Application and/or Services Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Epiq Application and/or Services Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall Epiq be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

13.     In the event that Epiq seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Epiq Application and/or Services Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Epiq's own applications, both interim and final, but determined by this Court after notice and a hearing.

14.     In the event Epiq is unable to provide the services set out in this Order, Epiq will immediately notify the Clerk and the Debtors' attorneys and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     Epiq shall not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court.

16.     In the event of any inconsistency between the Services Agreement, the Epiq Application and this Order, this Order shall govern.

17.     Pursuant to Bankruptcy Rule 6004(h), and notwithstanding any Bankruptcy Rule or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

18.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

19.     The Debtors and Epiq are authorized and empowered to take all actions necessary to implement the relief granted in this Order.  This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

###END OF ORDER###

Submitted by:

Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3790
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS