Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens (*pro hac vice* application pending)
Joseph A. Florczak (*pro hac vice* application pending)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

## MOTION OF THE DEBTORS
## FOR INTERIM AND FINAL ORDERS ESTABLISHING
## ADEQUATE ASSURANCE PROCEDURES WITH RESPECT TO THEIR
## UTILITY PROVIDERS PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

for the entry of interim and final orders pursuant to section 366 of title 11 of the United States

Code (the "Bankruptcy Code") (i) establishing procedures for determining requests for additional

assurance of payment by Utility Companies (as defined below), (ii) prohibiting utility companies

currently providing, or that will provide, services to the Debtors (collectively, the "Utility

Companies," and each, individually, a "Utility Company") from otherwise altering, refusing or

discontinuing services to, or discriminating against the Debtors and (iii) granting certain related

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat
Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946).
ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The
mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay
Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is
4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the
purposes of notices and communications.

relief.  In support of this Motion, the Debtors incorporate the statements contained in the

Declaration of R. Kelly Plato in Support of First-Day Pleadings (the "First Day Declaration")

filed contemporaneously herewith and further respectfully state as follows:

**Background**

1.      On April 30, 2015 (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.

2.      Debtor ERG Resources, L.L.C. ("ERG Resources") is a privately owned

oil & gas producer that was formed in 1996.  As further described below, ERG Resources

(a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas

properties in California through its wholly owned subsidiary, ERG Operating Company, LLC

("ERG Operating Co.").  The Debtors' corporate headquarters is located in Houston, Texas.

3.      Since 2010, ERG Resources and ERG Operating Co. have been primarily

engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in

Santa Barbara County, California.  ERG Resources owns approximately 19,027 gross acres

(18,794 net acres) of leasehold in the Cat Canyon Field which it has acquired through a series of

transactions since 2010.

4.      ERG Resources currently owns an average working interest of

approximately ninety-seven percent (97%) and an average net revenue interest of approximately

seventy-eight percent (78%) in these leases.  ERG Interests, LLC, another wholly owned

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to
28 U.S.C. § 1409.

subsidiary of ERG Resources, currently owns a seven percent (7%) overriding royalty interest in the oil & gas leases owned by ERG Resources in the Cat Canyon Field. There is a single purchaser for all of the oil & gas production generated in the Cat Canyon Field.

5.     ERG Resources also owns and operates oil & gas leases representing approximately 683 gross acres (680 net acres) of leasehold located in Liberty County, Texas. There are currently two (2) purchasers of the oil and gas produced from the Liberty County, Texas properties.

### The Utility Companies

6.     The Debtors currently use electric, natural gas, water, waste, telecommunications and other similar utility services provided by approximately 40 utility accounts, including those with the approximately 15 Utility Companies identified on Exhibit A attached hereto (the "Utility List").[3] The Debtors estimate that their average monthly obligation to the Utility Companies on account of services rendered is approximately $640,000.

7.     Because the Utility Companies provide services essential to the Debtors' operations, any interruption in utility services could prove damaging. The temporary or permanent discontinuation of utility services could irreparably disrupt the Debtors' business operations and, as a result, fundamentally undermine the Debtors' reorganization.

---

[3]     For each Utility Company, Exhibit A identifies, to the extent known: (a) the name of the Utility Company, (b) the address(es) of the Utility Company, (c) the type of service provided by the Utility Company, (d) the account number(s), if any, under which the Utility Company provides services to the Debtors, (e) the average monthly payments for the past twelve months by the Debtors to the Utility Company, (f) any pre-petition security deposits from the Debtors currently held by the Utility Company and (g) the locations serviced by the Utility Company. The inclusion of any entity on, or any omission of any entity from, Exhibit A is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve their rights with respect thereto. In addition, the Debtors are requesting that this Motion apply to all of the Debtors' Utility Companies, whether or not any given Utility Company is included on the Utility List.

8.     The Debtors intend to pay any postpetition obligations to the Utility Companies in a timely fashion and in the ordinary course, as they have substantially done prior to the Petition Date.

## The Adequate Assurance Deposit

9.     Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse or discontinue a chapter 11 debtor's utility service if the utility does not receive from the debtor or the trustee adequate "assurance of payment" within 30 days of the commencement of the debtor's chapter 11 case.[4]  Section 366(c)(1)(A) of the Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit.  Accordingly, the Debtors propose to deposit, as adequate assurance, $319,500 into a newly created, segregated, interest bearing bank account (the "Adequate Assurance Deposit") within 20 days of the Petition Date. The Adequate Assurance Deposit equals approximately two weeks of the Debtors' estimated aggregate utility expenses.

---

[4]     There is an apparent discrepancy between subsections (b) and (c) of section 366 of the Bankruptcy Code, because these two subsections set forth different time periods during which a utility is prohibited from altering, refusing or discontinuing utility service.  Specifically, section 366(b) of the Bankruptcy Code allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within *20 days* after the date of the order for relief, furnishes adequate assurance of payment," while section 366(c)(2) of the Bankruptcy Code allows a utility in "a case filed under chapter 11" to alter, refuse or discontinue service to a chapter 11 debtor "if during the *30-day period* beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service…." (emphases added).

Under the statutory construction canon *lex specialis derogat legi generali* ("specific language controls over general"), the language of section 366(c)(2) controls here because the Debtors are chapter 11 debtors. See 3 Collier on Bankruptcy ¶ 366.03[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2010) ("It is unclear how the 30-day period [in section 366(c)(2) of the Bankruptcy Code] meshes with the normal 20-day period in section 366(b).  The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than the 20-day period in section 366(b), should apply" in chapter 11.); In re Astle, 338 B.R. 855, 859 (Bankr. D. Idaho 2006) (deciding that the provisions of Bankruptcy Code section 366(c) only apply in chapter 11 cases).

10. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in the ordinary course of business and their existing security deposits (the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

**The Adequate Assurance Procedures**

11. To address the right of any Utility Company under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtors propose that the following procedures (the "Adequate Assurance Procedures") be adopted:

A. Any Utility Company desiring assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") so that it is received by the Debtors by no later than 30 days after the Petition Date (the "Request Deadline") at the following address: Jones Day, 77 West Wacker, Chicago, IL 60601, email: jflorczak@jonesday.com (Attn: Joseph Florczak).

B. Any Additional Assurance Request must: (i) be made in writing; (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (iii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iv) describe any deposits, prepayments or other security currently held by the requesting Utility Company; and (v) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance as future payment.

C. Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have 20 days from the Request Deadline (collectively, the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Debtors and the applicable Utility Company also may agree to extend the Resolution Period.

D. The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtors believe such additional assurance is reasonable.

E. If the Debtors determine that an Additional Assurance Request is not reasonable and are not able to resolve such request during the Resolution Period, the Debtors, during or promptly after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "<u>Determination Hearing</u>"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

F. Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering or refusing service to the Debtors.

**<u>The Opt-Out Procedures</u>**

12. Section 366(c) of the Bankruptcy Code allows a Utility Company to terminate service if the Debtors fail to provide the Utility Company with "adequate assurance of payment for utility service that is satisfactory to the utility" within 30 days of the Petition Date. 11 U.S.C. § 366(c)(2). The Adequate Assurance Procedures, nonetheless, prevent Utility Companies that agree to participate in such procedures from terminating service prior to the resolution of an adequate assurance dispute without requiring the Debtors to provide assurances deemed "satisfactory" to the Utility Company within the first 30 days of the case. As a result, certain Utility Companies might assert that the Adequate Assurance Procedures are not strictly in compliance with section 366 of the Bankruptcy Code.

13. To avoid any argument that the Debtors have not fully complied with section 366 of the Bankruptcy Code, the Debtors propose to allow any Utility Company to opt

out of the Adequate Assurance Procedures pursuant to the procedures set forth below

(the "Opt-Out Procedures"):

A.     A Utility Company that desires to opt out of the Adequate Assurance Procedures must file an objection (an "Opt-Out Notice") with the Court and serve such Opt-Out Notice so that it is actually received within 14 days of entry of the Interim Order by the Debtors at the following address: Jones Day, 77 West Wacker, Chicago, IL 60601, email: jflorczak@jonesday.com (Attn: Joseph Florczak).

B.     Any Opt-Out Notice must: (i) be made in writing; (ii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the objecting Utility Company; and (iv) identify, and explain the basis of, the Utility Company's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code.

C.     The Debtors, in their discretion, may resolve any Opt-Out Notice by mutual agreement with the objecting Utility Company and without further order of the Court, and may, in connection with any such resolution and in its discretion, provide a Utility Company with adequate assurance of future payment, including, but not limited to, cash deposits, prepayments or other forms of security, if the Debtors believe such assurance of payment is reasonable.

D.     If the Debtors determine that an Opt-Out Notice is not reasonable and are not able to reach a prompt alternative resolution with the objecting Utility Company, the Opt-Out Notice will be heard at the final hearing on the Motion (the "Final Hearing").

E.     Any Utility Company that does not timely file an Opt-Out Notice is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

### Final Hearing Date and Final Order

14.     To resolve any Opt-Out Notice within 30 days of the Petition Date, as the provisions of section 366(c)(2) may require, the Debtors request that the Court schedule the Final Hearing between 25 and 30 days after the Petition Date.

15. At the Final Hearing, the Debtors intend to seek the entry of a final order that implements the relief requested by this Motion on a final basis.

### Subsequent Modifications of Utility List

16. It is possible that, despite the Debtors' efforts, certain Utility Companies have not yet been identified by the Debtors or included on the Utility List (collectively, the "Additional Utility Companies").  Thus, promptly upon the discovery of an Additional Utility Company, the Debtors will increase the Adequate Assurance Deposit by an amount equal to approximately two weeks of the Debtors' estimated aggregate utility expense for each Additional Utility Company.  In addition, the Debtors request that the Court provide that the Additional Utility Companies are subject to the terms of this order (the "Interim Order") and any final order (when and if entered) (the "Final Order"), including the Adequate Assurance Procedures; provided, however:  (i) the Opt-Out Procedures shall apply only to the extent that an Opt-Out Notice submitted by an Additional Utility Company is filed with the Court and submitted to the Debtors and their counsel no later than 15 days after the Debtors serve the Interim Order or Final Order, if entered, on the Additional Utility Company; and (ii) the deadline for an Additional Utility Company to submit an Additional Assurance Request under the Adequate Assurance Procedures will be 25 days after the date the Debtors serve the Interim Order or Final Order, if entered, on the Additional Utility Company.

### Legal Basis for Relief Requested

17. The policy underlying section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate "assurance of payment" for postpetition utility service. See H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.

Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (e.g., cash deposits, letters of credit, prepayment for utility service) while excluding from the definition certain other forms of security (e.g., administrative expense priority for a utility's claim). In addition, section 366(c)(3)(B) of the Bankruptcy Code provides that a court may not consider certain facts (e.g., a debtor's prepetition history of making timely payments to a utility) in making a determination of adequate assurance of payment.

18.     While section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest the Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. Indeed, section 366(c) of the Bankruptcy Code not only fails to establish a minimum amount of adequate "assurance of payment," but explicitly empowers the court to determine the appropriate level of adequate assurance required in each case and permits a party in interest to request modification of the amount of adequate assurance after notice and a hearing. See 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . .").

19.     Thus, for instance, there is nothing within section 366 of the Bankruptcy Code that prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility company is nominal, or even zero. Prior to the enactment of section 366(c) of the Bankruptcy Code, courts enjoyed precisely the same discretion to make such rulings pursuant to section 366(b) of the Bankruptcy Code, and frequently did. See Virginia Elec. & Power Co. v. Caldor, Inc.– N.Y., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree

with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

20.     Moreover, the requirement of the statute is that the assurance of payment only be "adequate."  Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtors' ability to pay.  See, e.g., In re Caldor, Inc.– N.Y., 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute guarantee of payment.'") (citation omitted), aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc – N.Y., 117 F.3d 646 (2d Cir. 1997); In re Adelphia Bus. Solutions, Inc., 280 BR. 63, 80 (Bankr. S.D.N.Y. 2002) (same); Steinebach v. Tucson Elec. Power Co (In re Steinebach), 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment"); In re Penn Jersey Corp., 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").[5]  Additionally, Courts are not bound by state or local regulations that set adequate assurance of payment postpetition.  In re Begley, 41 B.R. 402, 405-06 (Bankr. D. Pa. 1984), aff'd, 760 F.2d 46 (3d Cir. 1987).  Therefore, despite its language allowing a utility to

---

[5]     Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" Caldor, 117 F.3d at 650 (emphasis in original) (quoting Penn Jersey, 72 B.R. at 985).

take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a debtor seeks to have the Court determine the appropriate amount of adequate assurances.

21.     The Debtors submit that, given the foregoing, entry of the Interim and Final Orders is consistent with, and fully satisfies, the requirements of section 366 of the Bankruptcy Code.  Far from offering the Utility Companies nominal (or even no) additional assurance of payment, the Debtors propose to (i)  place significant cash deposits into an escrow account for the Utility Companies' benefit and (ii) establish procedures pursuant to which the Utility Companies can seek greater or different security.  Such assurance of payment should significantly alleviate concerns of non-payment on the part of the Utility Companies, and is thus clearly "adequate."

22.     Similar relief has been granted in other cases in this district and other districts.  See, e.g., In re ALCO Stores, Inc., Case No. 14-34941 (Bankr. N.D. Tex. Nov. 14, 2014) (approving adequate assurance in the form of deposit in a segregated account of roughly two weeks' utility costs); In re Reddy Ice Holdings, Inc., Case No. 12-32349 (Bankr. N.D. Tex. May 4, 2012) (approving adequate assurance in the form of deposit in a segregated account of roughly two weeks' utility costs); In re Erickson Retirement Cmtys., LLC, Case No. 09-37010 (Bankr. N.D. Tex. Nov. 24, 2009) (approving adequate assurance in the form of roughly one month deposit of monthly utility costs); In re Renaissance Hosp. Grand Prairie, Inc., Case No. 08-43775 (Bankr. N.D. Tex. Sept. 5, 2008) (approving adequate assurance in the form of a one month deposit to requesting utilities); In re SemCrude, L.P., Case No. 08-11525 (Bankr. D. Del.

August 19, 2008) (approving adequate assurance in the form of a letter of credit or escrow account containing an amount equal to two weeks' deposit).

### Notice

23.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (iii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders; and (iv) the Utility Companies.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit B</u>: (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: May 1, 2015
      Dallas, Texas

Respectfully submitted,


  /s/  Tom A. Howley
_____

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## **EXHIBIT A**

Utility List

CHI-181960786v6

UTILITY LIST

| Utility Name | Noticing Address | Type of Utility | Account Number | Average Monthly Bill For Past 12 Mo. | Pre-Petition Security Deposit Amt. | Service Location |
|---|---|---|---|---|---|---|
| Amerigas - Santa Maria | PO Box 7155;  Pasadena, CA, 91109-7155 | Gas | #200950594 | $6,121 | - | Wickenden lease |
| Amerigas - Santa Maria | PO Box 7155;  Pasadena, CA, 91109-7155 | Gas | #200950597 | $472 | - | WH lease |
| Amerigas - Santa Maria | PO Box 7174;  Pasadena, CA, 91109-7174 | Gas | #200950597 | $10,738 | | Cantin lease |
| Bright House Networks | PO Box 7174;  Pasadena, CA, 91109-7174 | Telecom | #0976506-01 | $418 | - | Bakersfield office, CA |
| California Electric Supply | P.O. Box 14196;  Orange, CA, 92863 | Electricity | #62-32150 | $11,984 | - | Field office, Santa Maria, CA |
| City of Liberty | 1829 Sam Houston St; Liberty, TX 77574-4742 | Electricity | #15-2240-01 | $320 | $500 | Townsite #1 |
| Comcast | PO Box 660618; Dallas, TX 75266-0618 | Telecom | #8777 70 318 4282369 | $441 | | Mutiple location |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083528 | $74 | - | Hannah #18 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083531 | $427 | - | Hannah #11 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083896 | $328 | - | Baldwin #25 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083903 | $279 | - | Baldwin #12 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083905 | $426 | - | Baldwin #50 SWD |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083891 | $626 | - | Baldwin #4 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083532 | $538 | - | Pruitt #11 & 13 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083537 | $145 | - | Pruitt #19 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083546 | $124 | - | Pruitt #17 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083558 | $217 | - | S.Liberty CTB #1 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083887 | $450 | - | Sterling #3 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083927 | $410 | - | Wilson #28 & 29 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083928 | $389 | - | Wilson #18 |
| Entergy | P.O. Box 61000; L-ENT-8B; New Orleans, LA 70161 | Electricity | #4083935 | $8 | - | Wilson & Pruitt Wells |
| Health Sanitation Services | P O Nox 541065;  Los Angeles, CA, 90054-1065 | Waste | #518-0065201-1082-3 | $323 | - | Bakersfield office, CA |
| Health Sanitation Services | PO Box 541065;  Los Angeles, CA, 90054-1065 | Waste | #518-0054406-1082-1 | $239 | - | GWP #  347-24 |
| Health Sanitation Services | P.O. Box 541065;  Los Angeles, CA, 90054-1065 | Waste | #518-0070092-1082-9 | $239 | - | WP Hammon fee B lease |
| Logix Communications | PO Box 3608; Houston, TX 77253-3608 | Telecom | #43794142 | $947 | - | 333 Clay St |
| Noble Americas Energy Solutions | PO Box 100967;  Pasadena, CA, 91189-0967 | Electricity | #264131 | $267,113 | - | Multiple |
| PG&E | PO BOX 997300;  Sacramento, CA, 95899-7300 | Electricity | #1269439613-1 | $214,025 | - | Multiple |
| PG&E | PO BOX 997300;  Sacramento, CA, 95899-7300 | Electricity | #6035771475-1 | $7,966 | - | Wickenden lease |
| PG&E | PO BOX 997300;  Sacramento, CA, 95899-7300 | Electricity | #7018983731-6 | $19,767 | - | Peshine & Tompkins leases |
| PG&E | Box 997300;  Sacramento, CA, 95899-7300 | Electricity | #0674383256-7 | $8,924 | - | Peshine & Tompkins leases |
| PG&E | Box 997300;  Sacramento, CA, 95899-7300 | Electricity | #0080070086-6 | $3,060 | - | William's Holding #1 |
| PG&E | Box 997300;  Sacramento, CA, 95899-7300 | Electricity | #3297987582-3 | $19,531 | - | William's Holding lease |
| PG&E | Box 997300;  Sacramento, CA, 95899-7300 | Electricity | #3448384413-9 | $25,433 | - | GWP #  34-24 |
| So.Cal. Gas Co. | PO Box C; Monterey Park, CA, 91756 | Gas | #016-516-94935 | $28,221 | - | Bakersfield office, CA |
| Southern California Edison | PO Box 800; 2244 Walnut Grove Avenue; Rosemead, CA 91770 | Electricity | | $519 | | 200 Lambert Road-Carpenteria |
| TW Telecom | PO Box 172567; Denver, CO, 80217-2567 | Telecom | #315563 | $1,884 | - | Bakersfield office, CA |
| Western Propane Service | 2326 Meredith Lane; Santa Maria, CA, 93455 | Gas | #671191 | $3,760 | - | Cantin lease |

# **EXHIBIT B**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

**INTERIM ORDER ESTABLISHING ADEQUATE ASSURANCE**
**PROCEDURES WITH RESPECT TO THE DEBTORS' UTILITY**
**PROVIDERS PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE**

This matter coming before the Court on the Motion of the Debtors for Interim and

Proposed Final Orders Establishing Adequate Assurance Procedures Pursuant to Section 366 of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

the Bankruptcy Code (the "Motion")[2] filed by the above-captioned debtors (collectively,

the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having

considered the statements of counsel and the evidence adduced with respect to the Motion at a

hearing before the Court (the "Hearing"); the Court having found that (i) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this

district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to

28 U.S.C. § 157(b) and (iv) notice of the Motion and the Hearing was sufficient under the

circumstances; after due deliberation the Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates and their creditors; and good and

sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.  The Motion is GRANTED.

2.  Subject to the procedures described below, no Utility Company may
(i) alter, refuse, terminate or discontinue utility services to, and/or discriminate against, the
Debtors on the basis of the commencement of these chapter 11 cases or on account of
outstanding prepetition invoices or (ii) require additional assurance of payment, other than the
Proposed Adequate Assurance, as a condition to the Debtors receiving such utility services.

3.  The Debtors shall deposit, as adequate assurance, $319,500 into a newly
created, segregated, interest bearing bank account (the "Adequate Assurance Deposit") within 20
days of the Petition Date.

4.  Subject to the entry of the Final Order and the Adequate Assurance
Procedures set forth below, the Adequate Assurance Deposit, in conjunction with the Debtors'

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

ability to pay for future utility services in the ordinary course of business and existing security deposits (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of future payment to the Utility Companies to satisfy the requirements of section 366 of the Bankruptcy Code.

5. The following Adequate Assurance Procedures are approved in all respects:

A. Any Utility Company desiring assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") so that it is received by the Debtors by no later than 30 days after the Petition Date (the "Request Deadline") at the following address: Jones Day, 77 West Wacker, Chicago, IL 60601, email: jflorczak@jonesday.com (Attn: Joseph Florczak).

B. Any Additional Assurance Request must: (i) be made in writing; (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Company; (iii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iv) describe any deposits, prepayments or other security currently held by the requesting Utility Company; and (v) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance as future payment.

C. Upon the Debtors' receipt of an Additional Assurance Request at the addresses set forth above, the Debtors shall have 20 days from the Request Deadline (collectively, the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Debtors and the applicable Utility Company also may agree to extend the Resolution Period.

D. The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in their discretion, provide the requesting Utility Company with additional assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtors believe such additional assurance is reasonable.

E.      If the Debtors determine that an Additional Assurance Request is not reasonable and are not able to resolve such request during the Resolution Period, the Debtors, during or promptly after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "<u>Determination Hearing</u>"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

F.      Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be restrained from discontinuing, altering or refusing service to the Debtors.

6.      The following Opt-Out Procedures are approved in all respects:

A.      A Utility Company that desires to opt out of the Adequate Assurance Procedures must file an objection (an "<u>Opt-Out Notice</u>") with the Court and serve such Opt-Out Notice so that it is <u>actually received</u> within 14 days of entry of the Interim Order by the Debtors at the following address:  Jones Day, 77 West Wacker, Chicago, IL 60601, email: jflorczak@jonesday.com (Attn: Joseph Florczak).

B.      Any Opt-Out Notice must:  (i) be made in writing; (ii) set forth the location(s) for which utility services are provided and the relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the objecting Utility Company; and (iv) identify, and explain the basis of, the Utility Company's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code.

C.      The Debtors, in their discretion, may resolve any Opt-Out Notice by mutual agreement with the objecting Utility Company and without further order of the Court, and may, in connection with any such resolution and in its discretion, provide a Utility Company with adequate assurance of future payment, including, but not limited to, cash deposits, prepayments or other forms of security, if the Debtors believe such assurance of payment is reasonable.

D.      If the Debtors determine that an Opt-Out Notice is not reasonable and are not able to reach a prompt alternative resolution with the objecting Utility Company, the Opt-Out Notice will be heard at the final hearing on the Motion (the "<u>Final Hearing</u>").

E.  Any Utility Company that does not timely file an Opt-Out Notice is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

7.  The Debtors are authorized, as necessary, to provide a copy of this order (the "Interim Order") and any final order (when and if entered) (the "Final Order") to any Utility Company not listed on the Utility List (collectively, the "Additional Utility Companies"), as such Utility Companies are identified.  Promptly upon their discovery of an Additional Utility Company, the Debtors shall increase the Adequate Assurance Deposit by an amount equal to approximately two weeks of the Debtors' estimated aggregate utility expense for each Additional Utility Company.  The Additional Utility Companies are subject to the terms of the Interim Order and Final Order (when and if entered), including the Adequate Assurance Procedures, provided, however:  (i) the Opt-Out Procedures shall apply only to the extent that an Opt-Out Notice submitted by an Additional Utility Company is filed with the Court and submitted to the Debtors and their counsel no later than 15 days after the Debtors serve the Interim Order or Final Order, if entered, on the Additional Utility Company; and (ii) the deadline for an Additional Utility Company to submit an Additional Assurance Request under the Adequate Assurance Procedures shall be 25 days after the date the Debtors serve the Interim Order or Final Order, if entered, on the Additional Utility Company.

8.  A Utility Company served with this Order or the Final Order shall be deemed to have adequate assurance of payment under section 366 of the Bankruptcy Code unless and until:  (i) the Debtors, in their discretion, agree to an alternative assurance of payment with the Utility Company in resolution of an Additional Assurance Request or Opt-Out Notice; or (ii) this Court enters an order at the Final Hearing or any Determination Hearing requiring that additional adequate assurance of payment be provided.

9.    A Final Hearing to resolve any objections to the relief sought in the Motion shall be conducted on [_____], 2015 at _____ \_\_.m., Eastern Time.

10.    The Debtors shall serve a copy of this Order and a notice of the Final Hearing within two (2) business days of the date this Order is entered on (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (iii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders; and (iv) each Utility Company listed on the Utility List.

11.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12.    The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.  This Order shall be deemed to be the Final Order with respect to any Utility Company that does not file a timely Opt-Out Notice as described herein.

13.    The newly created, segregated, interest bearing bank account holding the Adequate Assurance Deposit shall be held free and clear of the liens of the Debtors' prepetition lenders and any postpetition liens created by the Court in these cases.

14.    Except as specifically set forth in this Order, the relief granted herein is subject to any interim or final order of the Court authorizing the Debtors' use of a postpetition financing or cash collateral, as well as to any related budgets

15.    Nothing in this Order or the Motion shall be deemed to vacate or modify any other restrictions on the termination of service by a Utility Company as provided by sections 362 and 365 of the Bankruptcy Code or applicable law.

16. Nothing in this Order or the Motion shall be deemed to constitute an assumption of any executory contract under section 365 of the Bankruptcy Code.

17. Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

###END OF ORDER###

Submitted by:

Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS