Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens (*pro hac vice* application pending)
Joseph A. Florczak (*pro hac vice* application pending)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

### MOTION OF THE DEBTORS FOR AN ORDER
### AUTHORIZING THEM TO PAY PREPETITION EMPLOYEE
### WAGES, BENEFITS, BUSINESS EXPENSES AND RELATED ITEMS

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

for the entry of an order pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and

541(d) of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to

pay: (a) prepetition Employee and independent contractor wages, salaries, overtime pay,

contractual compensation, vacation and holiday pay and other accrued compensation

(collectively, the "Prepetition Compensation") to Employees and Independent Contractors (as

such terms are defined below); (b) prepetition business expenses, including travel, lodging,

moving and relocation expenses and other reimbursable business expenses (collectively, the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

"Prepetition Business Expenses") to Employees and Independent Contractors; (c) prepetition

contributions to, and benefits under, the Employees' benefit plans; (d) prepetition payroll

deductions and withholdings with respect to Employees; and (e) all costs and expenses incident

to the foregoing payments and contributions (including payroll-related taxes and administrative

and processing costs); and granting certain related relief.  In support of this Motion, the Debtors

incorporate the statements contained in the Declaration of R. Kelly Plato in Support of First-Day

Pleadings (the "First Day Declaration") filed contemporaneously herewith and further

respectfully state as follows:

### Background

1.      On April 30, 2015 (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.

2.      Debtor ERG Resources, L.L.C. ("ERG Resources") is a privately owned

oil & gas producer that was formed in 1996.  As further described below, ERG Resources

(a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas

properties in California through its wholly owned subsidiary, ERG Operating Company, LLC

("ERG Operating Co.").  The Debtors' corporate headquarters is located in Houston, Texas.

3.      Since 2010, ERG Resources and ERG Operating Co. have been primarily

engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in

Santa Barbara County, California.  ERG Resources owns approximately 19,027 gross acres

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

(18,794 net acres) of leasehold in the Cat Canyon Field which it has acquired through a series of transactions since 2010.

4. ERG Resources currently owns an average working interest of approximately ninety-seven percent (97%) and an average net revenue interest of approximately seventy-eight percent (78%) in these leases. ERG Interests, LLC, another wholly owned subsidiary of ERG Resources, currently owns a seven percent (7%) overriding royalty interest in the oil & gas leases owned by ERG Resources in the Cat Canyon Field. There is a single purchaser for all of the oil & gas production generated in the Cat Canyon Field.

5. ERG Resources also owns and operates oil & gas leases representing approximately 683 gross acres (680 net acres) of leasehold located in Liberty County, Texas. There are currently two (2) purchasers of the oil and gas produced from the Liberty County, Texas properties.

## Facts Relevant to This Motion

### Employees and Independent Contractors

6. As of the Petition Date, the Debtors had approximately 55 full-time and part-time employees (collectively, the "Employees"). The Employees are responsible for the operations of the Debtors' business. The Employees' skills, specialized knowledge and understanding of the Debtors' infrastructure and operations, as well as their relationships with customers, vendors and other third parties, are essential to the Debtors' continuing operations.

7. The Debtors also utilize the services of two independent contractors who primarily provide critical product marketing and accounting support for the Debtors on a cost-effective basis (collectively, the "Independent Contractors"). The Independent Contractors have business expertise that would be difficult or impossible for the Debtors to replace in a timely

manner.  The Debtors believe that the Independent Contractors would cease providing services to the Debtors, to the detriment of the Debtors' businesses, if they are not paid amounts owing to them as of the Petition Date.[3]  Without the uninterrupted performance of the Independent Contractors, the Debtors would experience disruptions in the critical operation of certain key business functions as replacement staff is identified, hired and trained.

***Prepetition Compensation***

8.      The continued and uninterrupted support of the Employees and the Independent Contractors is essential to continue the Debtors' business operations in the ordinary course.  As of the Petition Date, many of the Employees and Independent Contractors were owed or had accrued various sums for Prepetition Compensation, as follows.

<u>Salaries and Wages</u>

9.      Employees are generally paid their salary or base wages twice per month, and the Debtors made a payroll payment prior to the Petition Date.  As a result, the Debtors estimate that they have only minor prepetition payroll obligations outstanding.

<u>Vacation Days and Personal Days</u>

10.      In addition to monetary forms of compensation, the Debtors provide Employees with paid vacation and paid holidays.  The Debtors seek to allow their Employees who have accrued vacation days and/or personal days to be permitted to utilize those vacation days and/or personal days on a postpetition basis, regardless of whether such vacation days and/or personal days had accrued as of the Petition Date or following the Petition Date, with no disruption to the Debtors' general policies regarding vacation or personal days.  The Debtors'

---

[3]      To the extent that prepetition amounts remain due and owing to such contractors (or any agencies that may provide them), the Debtors propose to pay such amounts, up to the statutory limits, as "Prepetition Compensation" hereunder.

policy is, in some circumstances, to pay an employee any accrued vacation days upon termination.  In accordance with such vacation policy, the Debtors intend to pay any employee who is terminated for accrued vacations days.

***Prepetition Business Expenses, Deductions and Withholdings***

<u>Prepetition Business Expenses</u>

11.     As of the Petition Date, many of the Employees were owed or had accrued various sums for Prepetition Business Expenses.  The Debtors' Employees' Prepetition Business Expenses are estimated to be between $9,000 and $12,000 per month in the aggregate (including those expenses that are paid for with corporate credit cards).  These expenses, including reimbursement for business travel, lodging, meals, and other necessary and appropriate expenses, were incurred by the Employees in the performance of their duties.  The Debtors submit that those expenses incurred by the Employees themselves should be reimbursed so as to not cause Employees to have to bear the costs of such expenses personally when the expenses were incurred for business purposes.  The Debtors further submit that expenses incurred on the corporate credit cards (the "<u>Corporate Credit Cards</u>") issued by Capital One Bank, NA and Citibank, NA (collectively, the "<u>Banks</u>") should also be paid by the Debtors.  The Corporate Credit Cards are used by certain Employees to make approved business-related purchases.  The continued functionality of the Corporate Credit Cards is critical to avoid disruption to the Debtors' ordinary business operations and to save Employees from otherwise going out-of-pocket to incur business-related expenses.  As of the Petition Date, the Debtors estimate that there is approximately $10,000 currently outstanding on the Corporate Credit Cards.  The Debtors seek authority to pay Prepetition Business Expense obligations incurred on the Corporate Credit Cards in an amount not to exceed $10,000.

<u>Deductions and Withholdings</u>

12.     In addition, as of the Petition Date, the Debtors had obligations in respect of Prepetition Compensation for deductions from Employees' paychecks used to make payments on behalf of the Employees for or with respect to, among others:  401(k) savings plans and flexible spending accounts on account of which the Debtors deduct a sum of money from an Employee's paycheck at the direction of the Employee and pay that amount to a third party (collectively, "<u>Deductions</u>"); and (b) withholdings from Employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes for remittance to the appropriate federal, state or local taxing authority or withholdings for garnishments that are remitted as required under the applicable court order (collectively, "<u>Withholdings</u>").  The aggregate amount of Withholdings per payroll period is approximately $140,250.

13.     Most amounts deducted from employee paychecks are paid to the appropriate party for which the Deductions are made on the same date as, or within a few days of, the pay date.  Thus, only on a pay date do the Debtors normally have employee Deductions in their accounts.

14.     Acting on behalf of the Debtors, ADP, Inc. ("<u>ADP</u>"), the Debtor's payroll processor, directs third party intermediaries to withdraw the Withholdings, along with wages, from the Debtors' accounts via electronic transfers.  ADP then directs such third party intermediaries to forward applicable amounts to the taxing authorities at the same time it directs the remittance of the Debtors' payroll.  Accordingly, the Debtors believe that they generally are not in possession of outstanding Withholdings and that no Withholdings attributable to a prepetition period should need to be paid on a postpetition basis.  Nonetheless, out of an

abundance of caution, the Debtors seek the authority to pay both Deductions and Withholdings by this Motion.

***Prepetition Employee Benefits***

15.     The Debtors maintain a number of employee benefit programs, including, but not limited to (a) health, dental, vision, accident and life insurance, (b) 401(k) savings plans for certain of their Employees and (c) other similar programs as described below (the "Benefit Programs").  The contributions to or benefits paid under the various Benefit Programs are referred to herein collectively as the "Benefits."[4]

16.     The Debtors seek authority to pay all prepetition Benefits that, as of the Petition Date, had accrued but remain unpaid.  The Benefits that the Debtors seek authority to pay include those owing under the following types of Benefits Programs:

a.   Third-Party Insured Plans.  The Debtors maintain certain insured benefit plans under which the Debtors, the Employees, or both, contribute to the payment of premiums for insurance or other coverage provided by third parties (collectively, the "Insured Plans").  The Insured Plans include: (i) medical, dental and vision insurance, (ii) basic life and accidental death and dismemberment insurance coverage; (iii)  long-term disability insurance; (iv) business and travel accident insurance; and (v) supplemental life insurance coverage.

b.   Company-Sponsored Benefit Programs.  The Debtors also maintain certain other Benefits Programs under which the Debtors, the Employees or both contribute to the Benefits provided to the Employees (collectively, the "Noninsured Programs").  The Noninsured Programs include, among others:  (i) 401(k) savings plan; and (ii) flexible spending accounts.

17.     While the Debtors believe that all Benefits are paid in advance or immediately thereafter they are earned, to the extent any Benefits are accrued but unpaid as of the Petition Date, the Debtors seek authorization to pay such amounts.

---

[4]      In addition, the Debtors provide the Employees with statutorily mandated benefits such as military duty leave, jury duty leave and family medical leave.

***Costs and Expenses Incident to the Foregoing***

18.     The Debtors incur costs incident to Prepetition Compensation and Deductions, such as other parties for accrued but unpaid prepetition charges for the administration of the Benefits Programs (collectively, the "Prepetition Processing Costs"). Moreover, the Debtors incur the employer portion of payroll related taxes under state and federal law, including social security, Medicare and unemployment taxes (the "Employer Payroll Taxes").  The Debtors' average monthly Prepetition Processing Costs are between $300 and $600.  The Debtors estimate that a portion of this amount remains unpaid as of the Petition Date. The Debtors further estimate that approximately $20,031 in Employer Payroll Taxes were accrued but unpaid to the relevant taxing authorities as of the Petition Date.  ADP currently holds those taxes in trust until payment is remitted to the proper taxing authorities.  Payment of the Prepetition Processing Costs is justified because the failure to pay any such amounts might disrupt services of third party providers with respect to Prepetition Compensation, Deductions and Benefits.  By paying the Prepetition Processing Costs, the Debtors may avoid even temporary disruptions of such services and thereby ensure that the Employees obtain all compensation and benefits without interruption.  Payment of the Employer Payroll Taxes also is justified to prevent disruptions that would be caused through the Debtors' violation of state and federal law if they failed to pay these amounts.

## Legal Basis for Relief Requested

19.     The payment of the Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Employer Payroll Taxes is warranted under sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of the Bankruptcy Code and case law in this District and elsewhere.

***Certain Amounts Owed to Employees Are Entitled To***
***Priority Status under the Bankruptcy Code***

20.    Under section 507(a)(4) of the Bankruptcy Code, employees are granted a

priority claim for:

> allowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
>
> (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor . . . .

11 U.S.C. § 507(a)(4).  Likewise, under section 507(a)(5) of the Bankruptcy Code, employees

are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)    for each such plan, to the extent of —
>
> (i)    the number of employees covered by each such plan multiplied by $12,475; less
>
> (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

21.     In addition, the costs of administering employee benefits programs are also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code. Allegheny Int'l, Inc. v. Metro. Life Ins. Co., 145 B.R. 820 (W.D. Pa. 1992). In Allegheny, the court ruled that the prepetition claims of a medical benefits plan administrator for, among other things, fees charged for performing administrative, actuarial and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under section 507(a)(5) of the Bankruptcy Code. The court stated that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." Id. at 822-23.

22.     In the instant case, and as referenced above, the Debtors believe that they currently have no prepetition base wages and salaries owing to, or on account of, any Employee. To the extent any unknown base wage and salary payment obligations are subsequently discovered, the payment of such amounts, not to exceed the sum of $12,475 allowable as a priority claim under section 507(a)(4) of the Bankruptcy Code, generally would not deplete assets otherwise available to other unsecured creditors under a plan. Likewise, because the Prepetition Processing Costs are entitled to priority under section 507(a)(5) of the Bankruptcy Code, amounts paid on account of such Prepetition Processing Costs also are not available for distribution to unsecured creditors.

***Most of the Withholdings and Deductions Are Held in Trust or Are Excluded From Property of the Estate and, Thus, Are Not Available for General Distribution to Creditors***

23.     Section 541(d) of the Bankruptcy Code provides that "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. § 541(d). It is well established that "property a debtor holds in trust for another is not

property of the estate" within the meaning of section 541 of the Bankruptcy Code. See In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property which a debtor holds in trust — either express or constructive — for another does not become property of the estate when the debtor files for bankruptcy; stating that "Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust.").

24.     More specifically, it is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

25.     The Withholdings are held in trust for the benefit of the appropriate federal, state or local taxing authorities. Likewise, certain of the Deductions also are held in trust for, among others, the Debtors' Employees themselves. Thus, the Withholdings and Deductions likely are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. As a result, the remittance of the Withholdings and Deductions is warranted because it will not adversely affect the Debtors' estates or their creditors.

26.     Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted.  Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits obviously would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtors' efforts to (i) stabilize their postpetition business operations and (ii) develop and implement a successful reorganization strategy.  To avoid the serious disruption of the Debtors' reorganization efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Withholdings collected on behalf of the Employees, including prepetition Withholdings, to the applicable taxing authorities to the extent that that they have not already been remitted.

### Certain Employee Withholdings and Contributions for ERISA Plans Are Not Property of the Estate

27.     In addition to the general exclusion of certain property from a debtor's estate under section 541(d) of the Bankruptcy Code, section 541(b)(7) of the Bankruptcy Code specifically provides that property of the estate does not include amounts withheld by an employer from wages of an employee, or amounts received by an employer from employees, for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 ("ERISA").  Amounts withheld or collected from employees on account of certain Prepetition Benefits, such as 401(k) accounts, medical, life, disability and other insurance, or other benefits that are subject to title I of ERISA and thus satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the Debtors' estates and not available for distribution to the Debtors' creditors.  As such, the

remittance of amounts constituting Benefits that do not constitute property of the Debtors' estates will not adversely affect the Debtors' estates or their creditors and is therefore warranted.

### *The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief*

28.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

29.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted).  The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).

30.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such

payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

31.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

32.     This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the Debtors' reorganization.  The immediate impairment of the Debtors' relationships with their Employees and the irreparable harm to workforce morale sure to attend any delay or disruption in the payments and benefits provided to Employees — at the very time when the dedication, confidence and cooperation of those Employees is most critical — would clearly imperil the Debtors' chances of a successful reorganization.  The Debtors operate in a highly competitive sector of the global economy (i.e., oil & gas exploration and operations). Companies within the Debtors' sector depend upon their Employees' technical backgrounds and safety performance record.  Any diminution in employee motivation or morale will have an immediate harmful impact on the Debtors' operations and the going concern value of the estates.

33.     Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates.  Because the amounts represented by Prepetition Compensation, Prepetition Business Expenses and Benefits are needed to enable the Debtors' Employees to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.  Many would likely seek other employment to the detriment of the Debtors and their reorganization prospects.

34.     In light of the foregoing, the Debtors respectfully submit that the payment of the employee-related obligations as requested herein is (i) necessary and essential for the Debtors' reorganization, (ii) in the best interests of the Debtors, their estates and their creditors and (iii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their Employees.

35.     This Court has routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  See, e.g., In re ALCO Stores., Case No. 14-34941, Docket No. 68 (Bankr. N.D. Tex. Oct. 16, 2014); In re Reddy Ice Holdings, Inc., Case No. 12-32349, Docket No. 83 (Bankr. N.D. Tex. Apr. 17, 2012); In re Vitro Asset Corp., Case No. 10-47470, Docket No. 250 (Bankr. N.D. Tex. Apr. 8, 2011); In re IDEARC Inc., Case No. 09-31828, Docket No. 10 (Bankr. N.D. Tex. Apr. 2, 2009).

***Request for Authority for Banks to Honor and***
***Pay Checks Issued to Pay Prepetition Compensation, Prepetition***
***Business Expenses, Prepetition Benefits and Prepetition Processing Costs***

36.     In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to Prepetition Compensation,

Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs, regardless

of whether such checks were presented or fund transfer requests were submitted prior to or after

the Petition Date, provided that sufficient funds are available in the applicable accounts to make

the payments.  The Debtors represent that these checks are drawn on identifiable payroll and

disbursement accounts and can be readily identified as relating directly to the authorized

payment of Prepetition Compensation, Prepetition Business Expenses, Benefits and/or

Prepetition Processing Costs.  Accordingly, the Debtors believe that checks other than those

relating to authorized payments will not be honored inadvertently.

37.    Nothing contained herein is intended or shall be construed as:  (i) an

admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights

to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an implication or

admission that any particular claim against the Debtors would constitute a claim for Prepetition

Compensation, Prepetition Business Expenses, Prepetition Benefits or Prepetition Processing

Costs.

## **Requests for Immediate Relief & Waiver of Stay**

38.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting

the Debtors authority to pay the Prepetition Compensation, Prepetition Business Expenses,

Deductions, Withholdings, Benefits, Prepetition Processing Costs and Employer Payroll Taxes;

and (ii) a waiver of any stay of the effectiveness of such an order.  The Debtors expect that a

significant amount of the Prepetition Compensation, Prepetition Business Expenses, Deductions,

Withholdings, Benefits, Prepetition Processing Costs and Employer Payroll Taxes will become

due in the first 20 days following the Petition Date.  Bankruptcy Rule 6003(b) provides, in

relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and

irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

39.     As set forth above and in the First Day Declaration, the payment of the Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, Prepetition Processing Costs and Employer Payroll Taxes that become due in the ordinary course of business in the first 20 days following the Petition Date is necessary to prevent the immediate and irreparable damage to the Debtors' operations, going-concern value and ability to reorganize that would result from a collapse of employee morale. Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Notice

40.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; and (iii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A: (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: May 1, 2015
      Dallas, Texas

Respectfully submitted,

 /s/ Tom A. Howley

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

# **EXHIBIT A**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

**ORDER AUTHORIZING DEBTORS TO PAY PREPETITION**
**EMPLOYEE WAGES, BENEFITS, BUSINESS EXPENSES AND RELATED ITEMS**

This matter coming before the Court on the Motion of the Debtors for an Order

Authorizing Them to Pay Prepetition Employee Wages, Benefits, Business Expenses and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

Related Items (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors");

the Court having reviewed the Motion and the First Day Declaration and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the

Motion and the Hearing was sufficient under the circumstances, (v) the payment of the

Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits,

Prepetition Processing Costs and Employer Payroll Taxes as set forth herein is necessary and

appropriate to prevent serious disruptions to the Debtors' business operations that would

potentially cause immediate and irreparable harm to the Debtors and to preserve the going

concern value of the Debtors' businesses and the Debtors' estates for the benefit of all

stakeholders; (vi) there is good cause to waive the fourteen-day stay imposed by Bankruptcy

Rule 6004(h) to the extent it is applicable; and after due deliberation the Court having

determined that the relief requested in the Motion is in the best interests of the Debtors, their

estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED.

2.    The Debtors are authorized, but not directed, to pay amounts that accrued

but remained unpaid as of the Petition Date for (a) Prepetition Compensation, in an amount not

to exceed $12,475 per Employee; (b) Benefits; (c) Prepetition Business Expenses, provided that

amounts paid to satisfy obligations on the Corporate Credit Cards shall not exceed $10,000;

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

(d) Deductions; (e) Withholdings; (f) Benefits; (g) Prepetition Processing Costs; and (h) Employer Payroll Taxes.

3. The Banks are authorized and directed, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

4. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim is a claim for Prepetition Compensation, Prepetition Business Expenses, Deductions, Withholdings, Benefits, Prepetition Processing Costs or Employer Payroll Taxes.

5. The relief granted herein is subject to any interim or final order of the Court authorizing the Debtors' use of a postpetition financing or cash collateral, as well as to any related budgets.

6. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

7. Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

-3-

###END OF ORDER###

Submitted by:

Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS