Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3790
tahowley@jonesday.com

Brad B. Erens (*pro hac vice* application pending)
Joseph A. Florczak (*pro hac vice* application pending)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |
| | § | |

## MOTION OF THE DEBTORS FOR ENTRY OF
## ORDERS:  (I) ESTABLISHING BIDDING AND SALE PROCEDURES;
## (II) APPROVING THE SALE OF ASSETS; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors (collectively, the "Debtors") hereby move the Court,

pursuant to sections 105, 363, 365, 503(b) and 507 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9008 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and local rules and guidelines (the "Local

Rules") of the United States Bankruptcy Court for the Northern District of Texas

(the "Bankruptcy Court"), for the entry of an order (the "Bidding Procedures Order"),

substantially in the form attached hereto as Exhibit A:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

(i)      authorizing and approving bid procedures set forth in Annex 1 to the Bidding Procedures Order (the "Bid Procedures")[2] to be employed in connection with the proposed sale (the "Sale") of substantially all of the assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California (the "Assets");

(ii)     authorizing the Debtors to enter into one or more asset purchase agreements (any such agreement, an "Asset Purchase Agreement") with one or more potential "stalking horse" bidders (each, a "Stalking Horse Bidder") and to provide certain bid protections (the "Bid Protections") to any Stalking Horse Bidder in connection therewith;

(iii)     scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale;

(iv)     authorizing and approving procedures (the "Assignment Procedures") to be employed in connection with the identification and assumption of certain contracts (the "Assumed Contracts") and leases (the "Assumed Leases") and assignment of the such Assumed Contracts and Assumed Leases in connection with the Sale; and

(v)     approving the manner and form of notice of the Auction, the Sale Hearing, and the Assignment Procedures, substantially in the forms attached hereto as Exhibit B (the "Sale Notice") and Exhibit C (the "Assumption Notice").

The Debtors also move the Court, pursuant to Bankruptcy Code sections 105, 363 and 365, Bankruptcy Rules 2002, 6004 and 6006 and the Local Rules for the entry of an order in the form attached hereto as Exhibit D and as it may be modified by the Successful Bidder(s) (as defined below) (the "Sale Order"):

(i)     approving the Sale of the Assets, or any combination thereof, to one or more Successful Bidders free and clear of liens, claims, interests and encumbrances;

(ii)     approving the assumption and assignment by the Debtors of the Assumed Contracts and Assumed Leases to the Successful Bidder(s); and

(iii)     granting certain related relief.

---

[2]     Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Bid Procedures.

In support of this motion, the Debtors incorporate the statements contained in the Declaration of R. Kelly Plato in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

### Background

1.      On April 30, 2015 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[3]  By a motion filed on the Petition Date, the Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.      Debtor ERG Resources, L.L.C. ("ERG Resources") is a privately owned oil & gas producer that was formed in 1996.  As further described below, ERG Resources (a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas properties in California through its wholly owned subsidiary, ERG Operating Company, LLC ("ERG Operating Co.").  The Debtors' corporate headquarters is located in Houston, Texas.

3.      Since 2010, ERG Resources and ERG Operating Co. have been primarily engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in Santa Barbara County, California.  ERG Resources owns approximately 19,027 gross acres (18,794 net acres) of leasehold in the Cat Canyon Field which it has acquired through a series of transactions since 2010

4.      ERG Resources currently owns an average working interest of approximately ninety-seven percent (97%) and an average net revenue interest of approximately seventy-eight percent (78%) in these leases.  ERG Interests, LLC, another wholly owned

---

[3]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. § 1409.

subsidiary of ERG Resources, currently owns a seven percent (7%) overriding royalty interest in the oil & gas leases owned by ERG Resources in the Cat Canyon Field.  There is a single purchaser for all of the oil & gas production generated in the Cat Canyon Field.

5.     ERG Resources also owns and operates oil & gas leases representing approximately 683 gross acres (680 net acres) of leasehold located in Liberty County, Texas.  There are currently two (2) purchasers of the oil and gas produced from the Liberty County, Texas properties.

***The Need for a Timely Sale Process***

6.     As described in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a prompt sale of the Assets on a going concern basis.  The Debtors believe the proposed sale represents the best strategy to maximize value for the Debtors' various stakeholders.

7.     The Debtors have faced increasing financial challenges as a result of various factors, including (i) significant declines in global oil prices and (ii) substantial production declines due to lack of access to capital.  Under these conditions, the Debtors struggled to meet their liquidity needs.  As conditions became increasingly difficult, the Debtors worked with their prepetition secured lenders to attempt to address potential defaults and provide for liquidity needs of the business while the Debtors searched for an investor or acquirer of the Debtors' business.

8.     As noted in the First Day Declaration, the Debtors had been actively seeking a purchaser or investor since 2012.  The Debtors hired Macquarie Bank ("Macquarie") to gauge interest in a divestiture or third party investment.  In 2012, Macquarie distributed marketing materials to over 110 potential purchasers.  As a result of this process, 15 potential

purchasers expressed interest in the assets and executed confidentiality agreements and three submitted offers. However, none of the offers were acceptable to the Debtors' owner. In 2013, Macquarie re-approached 17 parties to revisit their level of interest. Unfortunately, the Debtors were unable to reach a definitive transaction with any of those parties.

9.      In the summer of 2013, the Debtors' management was introduced to a company called Goldleaf Jewelry Co. ("Goldleaf"), a publicly traded jewelry and gold mining company based in China. This introduction eventually led to a definitive purchase agreement, subject to various closing conditions, where Goldleaf was to acquire the Debtors via a stock transaction. A detailed framework agreement was negotiated and executed during the first quarter of 2014 and the definitive transaction documents were executed in May 2014. The proposed transaction, however, was subject to approval by the governments of the United States and China. The approval process, in both China and the United States, took longer than expected and, ultimately, the United States government objected to the proposed sale due to national security concerns.

10.      Starting in the summer of 2014, the Debtors solicited proposals from investors and strategic buyers that would be pursued in the event that the sale to Goldleaf failed to close. The Debtors approached over 40 institutional investors and strategic buyers and were able to reach a proposed agreement with one significant investment firm. This firm offered to arrange capital that would be used to refinance its indebtedness under the Debtors' prepetition credit agreement and to provide additional growth capital. However, this proposed transaction was conditioned upon the outcome of a ballot measure pending in Santa Barbara County's general election in early November of 2014. In the meantime, oil prices fell dramatically and the investor reconsidered its proposal. Additionally, the Debtors re-approached several other

investors that had shown interest; all declined to proceed due to falling oil prices. In December of 2014, the Debtors re-engaged Macquarie to provide investment banking and restructuring advisory services. In addition, the Debtors engaged Citibank in December 2014 to explore potential transactions with five specific entities with operations in the same California region.

11. Despite these efforts (and as further described in the First Day Declaration), the Debtors were unable to consummate a sale transaction as a result of the marketing process. Moreover, the Debtors were unable to obtain any additional funding for a sale process outside of bankruptcy. Accordingly, the Debtors and their prepetition lenders determined that the Debtors should commence these chapter 11 cases to effectuate a sale of the Assets on a going concern basis.

12. The Debtors' prepetition lenders have agreed to provide the Debtors with a postpetition debtor in possession financing facility (the "DIP Facility" and, the lenders thereunder the "DIP Lenders") to allow the Debtors to pursue the Sale in a manner that will maximize asset value. A motion seeking an order approving the DIP Facility has been filed contemporaneously herewith. The DIP Facility sets forth several milestones for the Debtors' sale process, including a requirement that the Debtors consummate any Sale of the Assets by no later than 90 days after the Petition Date. As noted in the First Day Declaration, the prepetition lenders are secured by first priority liens on, and security interests in, substantially all the assets of the Debtors. Moreover, the Debtors do not expect that any bids will be submitted in excess of the full amount of the prepetition lenders' claims. However, if the Debtors comply with the sale-related milestones in the DIP Facility, as well as certain other milestones in other restructuring agreements with the Debtors' prepetition lenders, the lenders will waive any deficiency claim in

connection with a plan for the Debtors, thereby providing a significant benefit to unsecured creditors.

13.     Accordingly, the Debtors believe that the auction process and time periods set forth in the Bid Procedures are reasonable. The Debtors also believe that the process will provide parties with sufficient time and information necessary to formulate a bid to purchase the Assets. In formulating the procedures and time periods, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and to potential purchasers with the need to quickly and efficiently sell the Assets while it still has realizable value and can be maintained as a going concern business. Given the Debtors' history of marketing their assets, the Debtors believe that any parties that may have an interest in bidding at the Auction will not be starting from scratch in formulating their bids.

14.     Completion of the sale process in a timely manner will also maximize the value of the Assets and value available to unsecured creditors. The time periods set forth in the Bid Procedures were negotiated by the DIP lenders, and failure to adhere to such time periods could jeopardize the closing of the Sale, which the Debtors believe is the best means of maximizing the value to be achieved for the Assets and unsecured creditors. Thus, the Debtors have determined that pursuing the Sale in the manner and with the procedures proposed is in the best interest of the Debtors' estates and will provide all interested parties with sufficient opportunity to participate.

*The Bid Procedures*

15.     The Bid Procedures are designed to maximize value for the Debtors' estates and will enable the Debtors to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors. The Bid Procedures

describe, among other things, the procedures for parties to access due diligence, the manner in which bidders and bids become "qualified," the receipt of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidders, and the deadlines with respect to the foregoing Bid Procedures. The Debtors submit that the Bid Procedures afford the Debtors a sufficient opportunity to pursue a sale process that will maximize the value of their estates.

16. Certain of the key terms of the Bid Procedures are as follows:[4]

**Interested Parties**. Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver the following (unless previously delivered) to the Debtors' Financial Advisor so as to be received no later than 5:00 p.m. (Central Time) on **[May 20]**, 2015:

(a) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(b) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Assets; and

(c) sufficient information, as defined by the Debtors, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

If the Debtors determine, after receipt of the items identified above, that an Interested Party has a bona fide interest in purchasing the Assets, no later than two business days after the Debtors make that determination and have received all of the materials required above, such Interested Party will be deemed a "Potential Bidder" and the Debtors will deliver to such Potential Bidder: (A) an electronic copy of a proposed asset purchase agreement (the "Agreement") in the form attached hereto as Exhibit E and (B) access information for the Debtors'

---

[4] The brief description of the Bid Procedures described herein is for the convenience of the Court and parties in interest. The full copy of the Bid Procedures should be reviewed in its entirety and will control in the event of any inconsistency or ambiguity in any descriptions of them herein. Capitalized terms used in this summary and not otherwise defined herein have the meanings given to them in the Bid Procedures attached as Annex 1 to the Bidding Procedures Order.

confidential electronic data room concerning the Assets (the "Data Room"). The Debtors reserve the right to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder. The Debtors shall provide the DIP Agent (as defined below), the administrative agent (the "Pre-Petition Agent") and the lenders (the "Pre-Petition Lenders") party to the Debtors' pre-petition Senior Secured Credit Agreement with a list of all Interested Parties and all Potential Bidders. Any dispute concerning whether an Interested Party should be designated as a Potential Bidder shall be resolved by the Bankruptcy Court.

**Due Diligence**. Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Financial Advisor. The Debtors, with the assistance of the Financial Advisor, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide such materials to all Potential Bidders, the DIP Agent and the Pre-Petition Agent.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline or (B) the Bidding Process is terminated in accordance with its terms.

**Qualified Bids**. Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

**Bid Deadline**. A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received not later than noon (Central Time) on **[June 26]**, 2015 (the "Bid Deadline"), to the Financial Advisor, with copies to DLA Piper LLP (US), 1000 Louisiana Street, Suite 2800, Houston, Texas 77002-5005 (Attn: Jack Langlois), JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley), and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens). The Debtors may extend the Bid Deadline with the written consent of the DIP Agent and the Pre-Petition Agent. If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

**Bid Requirements**. All bids must include the following (the "Required Bid Documents"):

- a letter stating that the bidder's offer is irrevocable until August 31, 2015;

- a duly authorized and executed purchase agreement, including the purchase price for the Assets to be purchased, together with all exhibits and schedules, marked to show any amendments and modifications to the Agreement, and a proposed sale order; and

- written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors.

In addition, a bid will be considered only if the bid:

- provides for the purchase of substantially all of the Assets;

- sets forth the contracts and leases to be assumed and assigned;

- sets forth the consideration for the Assets to be purchased and the contracts and leases to be assumed and assigned;

- provides that the cash consideration to be paid for the Assets and the contracts and leases to be assumed (not including cures) be equal to or greater than $250 million;

- is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

- provides evidence satisfactory to the Debtors of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to it;

- is irrevocable until August 31, 2015;

- is accompanied by a deposit by wire transfer to the Debtors equal to 10% of the cash purchase price (any such deposit, a "Good Faith Deposit");

- provides for the closing of the transaction by no later than July 29, 2015;

- sets forth the representatives who are authorized to appear and act on behalf of the bidder;

- includes evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

- is received on or before the Bid Deadline.

**Stalking Horse Bid Protections**.  If the Debtors execute any Asset Purchase Agreement with any Stalking Horse Bidder(s), the Debtors may, upon the consent of the DIP Lenders (in their sole discretion), provide such Stalking Horse Bidder(s) with the a topping fee in an amount to be negotiated by the Debtors in their discretion, based on the totality of the circumstances, including, without limitation, the purchase price and other terms and conditions of the Asset Purchase Agreement, but in no event more than the sum of three percent of the cash portion of the purchase price, payable from the proceeds of an alternative sale transaction, and satisfied as a super-priority administrative expense, and subject to typical conditions and limitations.

**Auction**.  In the event that the Debtors timely receive at least one Qualified Bid with respect to the Assets, the Debtors shall conduct an auction (the "Auction"). The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.  The Auction will be conducted at the offices of Jones Day, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 on **[July 16]**, 2015 at 10:00 a.m. (Central Time).

Only representatives or agents of the Debtors, the DIP Agent, the Pre-Petition Agent, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any subsequent bids at the Auction.

At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Debtors of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Debtors may, after consulting with the DIP Agent and the Pre-Petition Agent, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that

such rules are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder; and provided further than all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine, in consultation with the DIP Agent and the Pre-Petition Agent, that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below). The Debtors, in their sole discretion (in consultation with the Pre-Petition Agent), may determine appropriate minimum bid increments or requirements for each round of bidding. Notwithstanding anything else in these procedures, a Subsequent Bid must include a cash component of no less than the minimum amount of cash required in connection with a Qualified Bid. In the event of a dispute relating to the conduct of the Auction, such dispute will be heard by the Bankruptcy Court.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, the DIP Agent and the Pre-Petition Agent in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

If the Debtors receive only one Qualified Bid on or prior to the Bid Deadline, the Secured Parties (as defined below) may notify the Debtors, prior to five (5) days before the Auction, if they do not intend on submitting a Credit Bid (as defined below) at or prior to the Auction. Upon the Debtors receiving such notice, no Auction shall occur and the Debtors shall seek approval of the only Qualified Bid at the Sale Hearing. If no such notice is provided to the Debtors, the Auction will occur.

**Selection of Successful Bid(s)**. The Debtors reserve the right, after consulting with the DIP Agent and the Pre-Petition Agent, to (i) determine in their reasonable discretion which Qualified Bid is the highest or otherwise best and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an

offer, without liability, any bid or offer that the Debtors in their reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates. If the DIP Agent or the Prepetition Agent does not agree with the Debtors' determinations regarding any of the matters set forth in this paragraph, the Bankruptcy Court shall make such determinations in lieu of the Debtors.

Prior to the conclusion of the Auction, the Debtors will, after consulting with the DIP Agent and the Pre-Petition Agent: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the transaction; (B) identify the highest or otherwise best offer (the "Successful Bid"); (C) determine which Qualified Bid is the Successful Bid and which is the next highest or otherwise best offer (the "Alternate Bid") for Assets subject to the Auction; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party that submitted the Alternate Bid (the "Alternate Bidder"). If the DIP Agent or the Pre-Petition Agent does not agree with the Debtors' determinations regarding any of the matters set forth in this paragraph, the Bankruptcy Court shall make such determinations in lieu of the Debtors. Within one business day of the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate the Sale contemplated by the Successful Bid.

The Debtors will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

If for any reason, the entity that submits the highest or otherwise best Qualified Bid fails to consummate the purchase of the Assets, or any part thereof, the Debtors and the Alternate Bidder are authorized to effect the sale of such Assets to such Alternate Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement.

**Credit Bid Rights**. Notwithstanding any other provision of these Bidding Procedures or otherwise, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders (collectively, the "Secured Parties") shall be entitled to credit bid some or all of their indebtedness at the Auction pursuant to section

363(k) of the Bankruptcy Code (a "Credit Bid"); provided however, that if, upon the DIP Lenders' consent, the Debtors provide a Stalking Horse Bidder with a topping fee, the Secured Parties' right to Credit Bid is conditioned upon the Secured Lenders paying such topping fee if it is the Successful Bidder; and provided further, that if no Qualified Bids are received prior to the Bid Deadline, the Secured Parties must present such Credit Bid to the Debtors no later than five (5) days prior to the date of the Auction. Without limiting the generality of the foregoing and notwithstanding any other provision of these Bidding Procedures, the Secured Parties shall not be required to post any deposit to participate in and Credit Bid at the Auction and shall be automatically deemed to constitute "Qualified Bidders." In addition, any Credit Bid, whether prior to or at the Auction, shall be deemed to constitute a "Qualified Bid." The Secured Parties automatically shall be deemed the Successful Bidder at the Auction if the aggregate amount of their Credit Bid (if any) exceeds the cash consideration of the Leading Bid at the conclusion of the Auction. All rights of the Secured Parties to object to the Debtors' selection of a Successful Bid or Alternate Bid, or to object to the consummation of the sale transaction represented by either such bid, are preserved, including, without limitation, any such rights under section 363(k) of the Bankruptcy Code.

**The Sale Hearing**. If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing. At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid, and, at the Debtors' election, the offer or offers constituting the Alternate Bid.

The Debtors' presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Alternate Bid will not constitute the Debtors' acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing.

Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.

***Ability to Select a Stalking Horse Bidder***

17.      To incentivize potential bidders and thereby maximize the potential value of the Assets, the Debtors request that they be authorized, upon their receipt of any bid (or bids, if for less than substantially all assets for sale) that the Debtors deem, in an exercise of their sound business judgment to be acceptable, to designate one or more Qualified Bids as a stalking horse bid (each, a "Stalking Horse Bid") and to execute an Asset Purchase Agreement with such Stalking Horse Bidder in connection with the proposed sale of the Assets, at any time before the commencement of the Auction.  No bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid.

18.      Upon execution of an Asset Purchase Agreement with any Stalking Horse Bidder, such Asset Purchase Agreement will be a Qualified Bid and Leading Bid, and the Debtors will provide notice of such Stalking Horse Bidder and Asset Purchase Agreement as outlined above and in the Bid Procedures.

***Assignment Procedures***

19.      Additionally, the Debtors, as part of the Sale, may assume and assign Assumed Contracts and Assumed Leases.  The Debtors propose that the following Assignment Procedures govern the assumption and assignment of the Assumed Contracts and Assumed Leases in connection with the Sale of the Assets to the Successful Bidder:

- Not later than two (2) days after the entry of the Bidding Procedures Order, the Debtors shall file with the Bankruptcy Court a list identifying the Assumed Contracts and Assumed Leases and the amounts necessary to cure defaults and/or to provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default prior to the Petition Date under each of such Assumed Contracts, and Assumed Leases determined by the Debtors (such amounts, "Cure Payment Liability").  If the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned in connection with the Sale not set forth in the original Assumption Notice, the Debtors shall promptly send a supplemental notice (a "Supplemental Assumption

Notice") to the applicable counterparties to such additional executory contracts and unexpired leases. The Debtors shall serve all counterparties to all Assumed Contracts and Assumed Leases with the Assumption Notice, specifically stating that the Debtors are or may be seeking the sale, assumption, and assignment of the Assumed Contracts, and Assumed Leases and notifying such parties of the deadlines for (i) objecting (a "Cure/Assignment Objection") to the amount of any Cure Payment Liability related to such Assumed Contracts, which deadline shall be no less than three (3) days prior to the Bid Deadline (the "Cure/Assignment Objection Deadline") and (ii) objecting to the ability of the Successful Bidder to provide adequate assurance of future performance of an Assumed Contract or Assumed Lease (an "Adequate Assurance Objection"), which deadline shall be no less than two (2) days prior to the Sale Hearing (the "Adequate Assurance Objection Deadline" and collectively, the "Cure/Adequate Assurance Objection Deadlines"). A Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on the Notice Parties so as to be received no later than the applicable Cure/Adequate Assurance Objection Deadline. Failure to file and serve an objection in accordance with this paragraph will forever bar the non-debtor counterparty from objecting to the Cure Payment Liability or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to the Assumed Contracts and Assumed Leases and the Debtors shall be entitled to rely solely upon the Cure Payment Liability. If the Assumed Contract or Assumed Lease was identified as an asset to be purchased pursuant to the Sale, the non-debtor counterparty will be deemed to have consented to the assumption, assignment, transfer, and/or sale of such Assumed Contract and Assumed Lease and will be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (or any other assignee of the relevant contract, lease or right) that any additional amounts are due or defaults exist, or conditions to assumption, assignment, transfer, and/or sale must be satisfied, under such contract, lease or right. If a Cure/Assignment Objection challenges a Cure Payment Liability, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a Cure/Assignment Objection, the Successful Bidder (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Successful Bidder and the objecting party, and the Successful Bidder shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates. So long as the Successful Bidder holds the Claimed Cure Amount in reserve, the Debtors shall seek authority to assume, assign, transfer, and/or sell the Assumed Contract or Assumed Lease that is the subject of an objection without further delay.

- In cases in which the Debtors are unable to establish that a default exists, the relevant Cure Payment Liability shall be set at $0.00 in the Assumption Notice.

- Unless the applicable agreement provides otherwise, a Qualified Bidder may, from time to time, exclude any Assumed Contract or Assumed Lease in its sole and absolute discretion until the Closing.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within three (3) business days of such determination.

*Notice*

20.    The Debtors shall serve within two (2) business days (by first class mail, postage prepaid) after entry of the Bidding Procedures Order (the "Mailing Deadline"), the Sale Notice upon the following parties:  (a) the Office of the United States Trustee for the Northern District of Texas; (b) the applicable state and local taxing authorities; (c) the Internal Revenue Service; (d) the Securities & Exchange Commission; (e) the United States Attorney General/Antitrust Division of Department of Justice; (f) each of the non-Debtor counterparties to the Assumed Contracts and Leases; (g) counsel to the DIP Agent and the Pre-Petition Agent; and (h) all entities who are known to possess or assert a claim against the Debtors.  In addition, on the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall place the Sale Notice on the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg.

21.    Within one business day after the conclusion of the Auction, the Debtors will file a notice identifying the Successful Bidder(s) (the "Notice Of Successful Bidder").

22.    The Debtors submit that the proposed Sale Notice and Notice of Successful Bidder, and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and the Local Rules and constitutes good and adequate notice of the Sale and the proceedings with respect thereto.  Therefore, the

Debtors respectfully request that this Court approve the form of the Sale Notice and the notice procedures proposed above.

## Legal Basis for Relief Requested

### The Bid Procedures Are Fair, Appropriate and Are Designed to Maximize the Value Received for the Assets

23.     Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Debtors submit that the Bid Procedures are appropriate, consistent with procedures routinely approved by courts in this district, ensure that the bidding process is fair and reasonable and will yield the maximum value for their estates and creditors. The Bid Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire information necessary to submit a timely and informed bid. Thus, the Debtors and all parties in interest can be assured that the consideration for the Assets will be fair and reasonable. At the same time, the Bid Procedures provide the Debtors with an adequate opportunity to consider all competing offers and to select, in their reasonable business judgment, and with reasonable consultation with their pre- and post-petition lenders and any creditors' committee appointed in these cases, the highest and best offer for the Assets. Accordingly, the Debtors submit that the Court should approve the Bid Procedures.

### Approval of the Entry into an Asset Purchase Agreement and the Provision of Bid Protections

24.     To the extent the Debtors enter into an Asset Purchase Agreement with a Stalking Horse Bidder prior to the commencement of the Auction, it is appropriate to provide the

Stalking Horse Bidder with the proposed Bid Protections. The proposed Bid Protections are appropriate in these cases because the Debtors will only enter into an Asset Purchase Agreement with a Stalking Horse Bidder if they believe it will maximize the ultimate sale price for the Assets. Moreover, the Debtors intend to negotiate any Asset Purchase Agreement at arms' length and in good faith. Thus, the authorization for the Debtors to provide the Bid Protections to a Stalking Horse Bidder is justified, if entering into an Asset Purchase Agreement allows the Debtors to maximize the potential sale value of the Assets at the Auction.

25. Courts have recognized that fees may be used to protect bidders in connection with a sale of assets pursuant to section 363 of the Bankruptcy Code and that such fees can be "important tools to encourage bidding and to maximize the value of the Debtors' assets." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Such protections enable a debtor to assure a sale to a contractually-committed bidder at a price the debtor believes is fair and reasonable, while providing the debtor with the opportunity of obtaining even greater benefits for the estate through an auction process. See In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (stating that bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking.") (citation omitted).

26. In addition, the amount of the topping fee will be a reasonable percentage of the purchase price for the Assets, is generally consistent with other stalking horse fees previously approved in this District and, therefore, is unlikely to have a "chilling effect" on bidding for the Assets. See In re Fibertower Network Serv. Corp., Case No. 12-44027-DML-11 (Bankr. N.D. Tex. 2012) [Docket No. 310] (3%); In re Mirant Corp., Case No. 03-46590-DML-

11 (Bankr. N.D. Tex. 2004) [Docket No. 6092] (3%); In re Datavon, Inc., Case No. 02-38600-SAF-11 (Bankr. N.D. Tex. 2002) [Docket No. 224] (3%); see also Consumer News & Bus. Channel P'Ship v. Fin. News Network, Inc. (In re Fin. News Network, Inc.), 980 F.2d 165, 167 (2d Cir. 1992) (5.5%); LTV Aerospace & Defense Co. v. Thomson-CSF, S.A. (In re Chateugay Corp.), 198 B.R. 848, 861 (S.D.N.Y. 1996) (4.4%); In re Women's First Healthcare, Inc., 332 B.R. 115, 122 (Bankr. D. Del. 2005) (3%); In re Fruit of the Loom, Inc., Case No. 99-4497 (PJW) (Bankr. D. Del. Dec. 11, 2000) [Docket No. 1700] (3%).

### Approval of the Sale Is Warranted Under Section 363 of the Bankruptcy Code

27.     Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). A debtor must demonstrate a sound business justification for a sale or use of assets outside the ordinary course of business. See, e.g., Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986); In re Martin, 91 F.3d 389 (3d Cir. 1996) (citing In re Schipper, 933 F.2d 513 (7th Cir. 1991)); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983).

28.     Courts typically consider the following factors in determining whether a proposed sale meets this standard:

(a)     whether a sound business justification exists for the sale;

(b)     whether adequate and reasonable notice of the sale was given to interested parties;

(c)     whether the sale will produce a fair and reasonable price for the property; and

(d)     whether the parties have acted in good faith.

In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

29. The Debtors possess ample and sound business reasons for selling the Assets at this time. As discussed above, the Debtors have determined that the comprehensive sale process will maximize the return to their creditors. Furthermore, the administrative and economic costs of maintaining such assets for an uncertain period of time would not be in the best interest of the estates. The Sale (in whatever form that ultimately results) represents the highest and best use for the Debtors' assets. Under these circumstances, sound business reasons exist that justify the sale of the Assets outside of the ordinary course of business.

30. The Debtors also meet the additional requirements necessary to approve a sale under section 363 of the Bankruptcy Code. As stated herein, the Debtors will provide adequate notice of the Sale to interested parties, and the Debtors submit that the aforementioned notice procedures are reasonable and adequate under the circumstances. In addition, the Debtors will continue to market the Assets up until the Bid Deadline in order to maximize the number of participants who may participate as buyer at the Auction. Accordingly, the Debtors are confident that their sale process will maximize the value to be achieved from the Sale and that the sale price is fair and reasonable.

***The Proposed Sale Transaction Satisfies the Requirements
of Bankruptcy Code Section 363(f) for a Sale Free and Clear***

31. The Debtors request approval to sell the Assets free and clear of any and all liens, claims, interests and encumbrances (except for any assumed liabilities) in accordance with section 363(f) of the Bankruptcy Code. Pursuant to section 363(f), a debtor in possession may sell estate property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)     such interest is in bona fide dispute; or

(e)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) (because section 363(f) is written in the disjunctive, a court may approve a "free and clear" sale even if only one of the subsections is met).

32.     Section 363(f) is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); see In re Trans World Airlines, Inc., 2001 WL 1820325, at *3, 6 (Bankr. D. Del. Mar. 27, 2001); Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

33.     The Debtors submit that the Sale will satisfy the requirements of section 363(f) of the Bankruptcy Code. To the extent a party objects to Sale on the basis that it does hold a lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims or that such lien is in bona fide dispute. In addition, to the extent the Debtors discover any party may hold a lien on all, or a portion of, the Assets, the Debtors will provide such party with notice of, and an opportunity to object to, the Sale. Absent objection, each such party will be deemed to have consented to the sale of the Assets.

34. Accordingly, the Debtors believe that the Sale (i) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code and (ii) should be approved free and clear of all liens, claims, interests and encumbrances.

***A Successful Bidder Should Be Entitled to the***
***Protections of Bankruptcy Code Section 363(m)***

35. While the Bankruptcy Code does not define "good faith," the court in In re Sullivan Central Plaza I, Ltd., 106 B.R. 934 (Bankr. N.D. Tex. 1998) stated that: "[t]he type of conduct of a Buyer which would destroy its good faith status under § 363(m) involves fraud, collusion between the Buyer and other bidders of the trustee, or an attempt to take grossly unfair advantages of other bidders." 106 B.R. at 938 (citing Matter of Bleaufontaine, Inc., 634 F.2d 1383, 1388 (5th Cir. 1981)); see also In re Abbotts Dairies, 788 F.2d 143, 147 (3d Cir. 1986) (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders).

36. In other words, a party would have to show fraud or collusion between the buyer and the debtor in possession or trustee or other bidders in order to demonstrate a lack of good faith. See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); see also In re Angelika Films, 57th, Inc., 1997 WL 283412, at *7 (S.D.N.Y. May 29, 1997); In re Balcalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct in the course of the sale proceedings." In re Pisces Leasing Corp., 66 B.R.

671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

37.     The Debtors submit that, based on the evidence that the Debtors will present at the Sale Hearing, any successful bidder arising from the Auction will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and any purchase agreement will be a good faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.

**Assumption and Assignment of Executory Contracts**
**and Unexpired Leases Should Be Authorized**

38.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  See, e.g., Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303 (5th Cir. 1985); see also In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice).

39.     The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's

provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.  See Richmond Leasing, 762 F.2d at 1311.  Moreover, pursuant to section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for "actual pecuniary loss" relating to such default.  11 U.S.C. 365(b)(1).

40.    Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  See In re Rickel Home Center, Inc., 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate.").

41.    Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction."  In re DBSI, Inc., 405 B.R. 698, 708 (Bankr. D. Del. 2009); see also In re Decora Indus., 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. May 20, 2002) ("[A]dequate assurance falls short of an absolute guarantee of payment.").

42.    The Debtors request approval under Bankruptcy Code section 365 of the Debtors' assumption and assignment of the Assumed Contracts and Assumed Leases in connection with the Sale.  The Debtors further request that the Sale Order provide that the Assumed Contracts and Assumed Leases will be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder notwithstanding any provisions in the Assumed Contracts and Assumed Leases, including those described in Bankruptcy Code sections 365(b)(2) and (f)(1) and (f)(3) that prohibit such assignment.

43. To the extent necessary, the Debtors will present facts at the Sale Hearing to show the financial credibility, willingness and ability of the Successful Bidder to perform under the Assumed Contracts and Assumed Leases. The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed Contracts and Assumed Leases, as required under Bankruptcy Code section 365(b)(1)(C). Further, as set forth above, the Debtors will give notice to all parties to the Assumed Contracts and Assumed Leases. This notice will include the amounts the Debtors believe are necessary to cure any defaults in accordance with section 365(b) of the Bankruptcy Code. Accordingly, the Debtors submit that implementation of the proposed Assignment Procedures is appropriate in these cases.

### Requests for Immediate Relief & Waiver of Stay

44. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that the Bidding Procedures Order and Sale Order be effective immediately upon their entry by providing that the fourteen (14) day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

45. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen (14) day stay period, Collier on

Bankruptcy suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶6004.11 (L. King, 16th rev. ed. 2011).  Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

46.     Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### Notice

47.     Notice of this motion has been given to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (iii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders; and (iv) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

### No Prior Request

48.     No prior request for the relief sought herein has been made to this Court or any other Court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Bidding Procedures Order, in substantially the form attached hereto as Exhibit A, (ii) grant the other relief requested herein pending a Sale; (iii) enter the Sale Order, and (iv) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: May 1, 2015          Respectfully submitted,
      Dallas, Texas

   /s/ Tom A. Howley

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3790
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

## EXHIBIT A

**BIDDING PROCEDURES ORDER**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

**ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE SALE OF CERTAIN ASSETS OF THE DEBTORS; (B) APPROVING CERTAIN BID PROTECTIONS; (C) SCHEDULING AN AUCTION AND SALE HEARING; (D) AUTHORIZING AND APPROVING ASSIGNMENT PROCEDURES TO BE EMPLOYED IN CONNECTION WITH THE IDENTIFICATION AND ASSUMPTION OF CERTAIN PRE-PETITION CONTRACTS; AND (E) APPROVING THE MANNER AND FORM OF NOTICE OF THE AUCTION, SALE HEARING, AND ASSIGNMENT PROCEDURES**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

THIS MATTER having come before the Court upon the motion (the "Motion")[2] filed by ERG Intermediate Holdings, L.L.C. ("ERG") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") for entry of (i) an order pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the local rules and guidelines of this Court (the "Local Rules"): (a) authorizing and approving bid procedures set forth in Annex 1 hereto (the "Bid Procedures") to be employed in connection with a potential sale (the "Sale") of substantially all of the assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California (the "Assets") pursuant to an auction process; (b) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider approval of the Sale; (c) authorizing and approving procedures (the "Assignment Procedures") to be employed in connection with the identification and assumption of certain contracts (the "Assumed Contracts") and leases (the "Assumed Leases"); and (d) approving the manner and form of notice of the Auction, the Sale Hearing, and the Assignment Procedures, substantially in the forms attached hereto as Exhibit 1 (the "Sale Notice") and Exhibit 2 (the "Assumption Notice"); and (ii) an order (the "Sale Order") pursuant to sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9008, and the Local Rules substantially in the form attached to the Motion as Exhibit D; and it appearing that the Bankruptcy Court has jurisdiction over this matter; and it appearing that due notice of the Motion as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion is in the best interests of the Debtors and their

---

[2]  Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Motion.

estates and creditors; and upon all of the proceedings had before the Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor,

NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (N), and (o).  Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.      The Debtors have articulated good and sufficient reasons for, and the best interests of the estates, creditors, employees, and other parties in interest and stakeholders will be served by, this Court granting certain of the relief requested in the Motion, including approval of (1) the Bid Procedures, (2)  the Assignment Procedures, and (3) the form, timing, and manner of notice of the proposed Sale, the Bid Procedures, the Assignment Procedures, and the other matters described herein, including the Sale Notice and the Assumption Notice.

E.      Under the circumstances, the Bid Procedures are reasonably designed to maximize the value to be achieved for the Assets.

F.      The Sale Notice is reasonably calculated to provide parties in interest, including, without limitation, creditors, customers, suppliers, and current and former employees,

---

[3]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

with proper notice of the potential sale of the Assets, the related Bid Procedures and the Sale Hearing.

G. The Assumption Notice is reasonably calculated to provide all counterparties to the Assumed Contracts and Assumed Leases with proper notice of the potential assumption, assignment, transfer, and/or sale of their executory contracts or unexpired leases, and Cure Payment Liabilities relating thereto and the Assignment Procedures.

H. Publication of the Sale Notice as set forth herein is reasonably calculated to provide all potential claimants and all unknown creditors and parties not otherwise required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of the potential sale of the Assets, the related Bid Procedures, and the Sale Hearing.

I. The Motion and this Order comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

J. Due, sufficient, and adequate notice of the relief granted herein has been given to parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is GRANTED as set forth herein.

2. All objections to the entry of the Bid Procedures Order not otherwise withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Bid Procedures are hereby approved and shall govern the bidding and the Auction with respect to the Sale of the Debtors' Assets.

4.     Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's contemplated transaction documents, as applicable.

5.     Providing the proposed Bid Protections to any Stalking Horse Bidder, substantially as proposed in the Motion, is hereby approved in all respects. If any obligations with respect to a topping fee become due and owing, such amounts shall be paid from the proceeds of the sale of the applicable Assets to the applicable Successful Bidder at the closing of the sale transaction, and satisfied as a super-priority administrative expense, and subject to typical conditions and limitations.

6.     The Auction will be conducted openly. Bidding at the Auction will be transcribed or videotaped. Absent irregularities in the conduct of the Auction, or reasonable and material confusion during the bidding, the Court will not consider bids made after the Auction has been closed.

7.     The Sale Hearing shall be held on _____, 2015 at _:00 _.m. before the Honorable _____, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Dallas, Texas 75242. The Sale Hearing may be adjourned from time to time as permitted by the Bid Procedures without further notice other than an announcement by the Debtors in the Bankruptcy Court of such adjournment on the date scheduled for the Sale Hearing.

8. The form of Sale Notice substantially in the form annexed hereto as Exhibit 1 is hereby approved. The Debtors shall serve within two (2) business days (by first class mail, postage prepaid) after entry of this Bid Procedures Order (the "Mailing Deadline"), the Sale Notice upon the following parties: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the applicable state and local taxing authorities; (c) the Internal Revenue Service; (d) the Securities & Exchange Commission; (e) the United States Attorney General/Antitrust Division of Department of Justice; (f) each of the non-Debtor counterparties to the Assumed Contracts and Leases that have been identified; (g) counsel to the DIP Agent and the Pre-Petition Agent; and (h) all entities who are known to possess or assert a claim against the Debtors. In addition, on the Mailing Deadline, or as soon as practicable thereafter, the Debtors shall place the Sale Notice on the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg.

9. Notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion as it relates to the Debtors' request for entry of the Sale Order, the Auction, and the Sale Hearing, and no other or further notice of the Motion, the Auction, and/or the Sale Hearing shall be necessary or required.

10. Responses or objections, if any, to the entry of the Sale Order (except for the limited exceptions described below) shall be filed with this Bankruptcy Court and served, so as to be actually received no later than _____, 2015 at 4:00 p.m. (prevailing Central time) on: (a) the Debtors, c/o ERG Intermediate Holdings, L.L.C., 333 Clay Street, Suite 4400, Houston, Texas 77002 (Attn: Rebecca A. Roof); (b) counsel to the Debtors, JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley) and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens); (c) counsel to the DIP Agent and

Pre-Petition Agent, White & Case LLP, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131 (Attn: Thomas E Lauria, Esq.); (d) counsel for the Official Committee of Unsecured Creditors, _____ (Attn: ____); and (e) the Office of the United States Trustee for the Northern District of Texas, _____ (Attn: _____) (collectively, the "Notice Parties").

11.     Responses or objections, if any, related solely to (a) the Successful Bidder or (b) the ability of the Successful Bidder to provide adequate assurance of future performance of an Assumed Contract or Assumed Lease shall be filed with this Bankruptcy Court and served, so as to be actually received no later than _____, 2015 at 4:00 p.m. (prevailing Central time) on the Notice Parties.

12.     The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Bid Procedures Order.

13.     The following Assignment Procedures shall govern the assumption and assignment of the Assumed Contracts and Assumed Leases in connection with the Sale of assets to the Successful Bidder:

a.     Not later than two (2) days after the entry of the Bidding Procedures Order, the Debtors shall file with the Bankruptcy Court a list identifying the Assumed Contracts and Assumed Leases and the amounts necessary to cure defaults and/or to provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default prior to the Petition Date under each of such Assumed Contracts, and Assumed Leases determined by the Debtors (such amounts, "Cure Payment Liability").  If the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned in connection with the Sale not set forth in the original Assumption Notice, the Debtors shall promptly send a supplemental notice (a "Supplemental Assumption Notice") to the applicable counterparties to such additional executory contracts and unexpired leases.  The Debtors shall serve all counterparties to all Assumed Contracts and Assumed Leases with the Assumption Notice, specifically stating that the Debtors are or may be seeking the sale, assumption, and assignment of the Assumed Contracts, and Assumed Leases and notifying such parties of the deadlines for

(i) objecting (a "Cure/Assignment Objection") to the amount of any Cure Payment Liability related to such Assumed Contracts, which deadline shall be no less than three (3) days prior to the Bid Deadline (the "Cure/Assignment Objection Deadline") and (ii) objecting to the ability of the Successful Bidder to provide adequate assurance of future performance of an Assumed Contract or Assumed Lease (an "Adequate Assurance Objection"), which deadline shall be no less than two (2) days prior to the Sale Hearing (the "Adequate Assurance Objection Deadline" and collectively, the "Cure/Adequate Assurance Objection Deadlines").  A Cure/Assignment Objection and/or Adequate Assurance Objection must be filed with the Bankruptcy Court and served on the Notice Parties so as to be received no later than the applicable Cure/Adequate Assurance Objection Deadline.  Failure to file and serve an objection in accordance with this paragraph will forever bar the non-debtor counterparty from objecting to the Cure Payment Liability or provision of adequate assurance of future performance and from asserting any additional cure or other amounts with respect to the Assumed Contracts and Assumed Leases and the Debtors shall be entitled to rely solely upon the Cure Payment Liability.  If the Assumed Contract or Assumed Lease was identified as an asset to be purchased pursuant to the Sale, the non-debtor counterparty will be deemed to have consented to the assumption, assignment, transfer, and/or sale of such Assumed Contract and Assumed Lease and will be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder (or any other assignee of the relevant contract, lease or right) that any additional amounts are due or defaults exist, or conditions to assumption, assignment, transfer, and/or sale must be satisfied, under such contract, lease or right.  If a Cure/Assignment Objection challenges a Cure Payment Liability, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of a Cure/Assignment Objection, the Successful Bidder (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Successful Bidder and the objecting party, and the Successful Bidder shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates.  So long as the Successful Bidder holds the Claimed Cure Amount in reserve, the Debtors shall seek authority to assume, assign, transfer, and/or sell the Assumed Contract or Assumed Lease that is the subject of an objection without further delay.

b.      In cases in which the Debtors are unable to establish that a default exists, the relevant Cure Payment Liability shall be set at $0.00 in the Assumption Notice.

c.      Unless the applicable agreement provides otherwise, a Qualified Bidder may, from time to time, exclude any Assumed Contract or Assumed Lease in its sole and absolute discretion until the Closing.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within three (3) business days of such determination.

14.      The form of notice of the Assignment Procedures, as set forth in this

Order, substantially in the form annexed hereto as Exhibit 2, is hereby approved in all respects.

15. The notice referenced in the Assignment Procedures of (i) the Assumed Contracts and Assumed Leases and the amounts necessary to cure defaults under each of such Assumed Contracts and Assumed Leases determined by the Debtors and (ii) the deadline for objecting to the proposed Cure Payment Liabilities shall constitute adequate and sufficient notice and no additional notice need be provided.

16. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and the Bid Procedures Order shall be effective immediately upon its entry.

17. In the event of any inconsistency between the terms and conditions of this order and any order entered by this Court approving the Debtors' entry into the debtor in possession financing facility on an interim or final basis (the "DIP Orders"), the provisions of the DIP Orders shall govern and control.

18. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Bid Procedures Order.

###END OF ORDER###

Submitted by:


Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

**ANNEX 1**

**BID PROCEDURES**

# BIDDING PROCEDURES

ERG Intermediate Holdings, L.L.C. and certain of its affiliates (together, the "Debtors") have filed petitions for relief under chapter 11 of the title 11 of the United States Code (the "Bankruptcy Code") and are debtors in possession in jointly administered chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  In order to attain the highest or otherwise best offer for all assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California, including, without limitation, the "Mortgaged Properties" as such term is defined in that certain Mortgage, Deed of Trust, Assignment, Security Agreement, Fixture Filing and Financing Statement from ERG to Lawrence C. Adams, Trustee for the benefit of the Administrative Agent dated January 24, 2013 (the "Assets"), the Debtors have established these Bidding Procedures.

**Any interested bidder should contact, as soon as practical, the following:[1]**

**AP SERVICES, LLC
C/O ERG INTERMEDIATE HOLDINGS, L.L.C.
333 CLAY STREET, SUITE 4400
HOUSTON, TEXAS 77002
(212) 297-6321
ATTN: REBECCA A. ROOF**

These Bidding Procedures describe, among other things, (a) the Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of the Successful Bidder (as defined below), and (e) the Bankruptcy Court approval of the sale to the Successful Bidder.

1.     **Participation Requirements**

(a)     **Interested Parties**

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver the following (unless previously delivered) to the Debtors' Financial Advisor so as to be received no later than 5:00 p.m. (Central Time) on **[May 20]**, 2015:

(A)     an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

---

[1]     AP Services are collectively referred to herein as the "Financial Advisor".

1

(B)     a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Assets; and

(C)     sufficient information, as defined by the Debtors, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

If the Debtors determine, after receipt of the items identified above, that an Interested Party has a *bona fide* interest in purchasing the Assets, no later than two business days after the Debtors make that determination and have received all of the materials required above, such Interested Party will be deemed a "Potential Bidder" and the Debtors will deliver to such Potential Bidder: (A) an electronic copy of a proposed asset purchase agreement (the "Agreement") and (B) access information for the Debtors' confidential electronic data room concerning the Assets (the "Data Room").  The Debtors reserve the right to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder.  The Debtors shall provide the DIP Agent (as defined below), the administrative agent (the "Pre-Petition Agent") and the lenders (the "Pre-Petition Lenders") party to the Debtors' pre-petition Senior Secured Credit Agreement with a list of all Interested Parties and all Potential Bidders.  Any dispute concerning whether an Interested Party should be designated as a Potential Bidder shall be resolved by the Bankruptcy Court.

(b)     **Due Diligence**

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Financial Advisor.  The Debtors, with the assistance of the Financial Advisor, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide such materials to all Potential Bidders, the DIP Agent and the Pre-Petition Agent.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline or (B) the Bidding Process is terminated in accordance with its terms.

2.      **Qualified Bids**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

(a)      **Bid Deadline**

A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received not later than noon (Central Time) on **[June 26]**, 2015 (the "Bid Deadline"), to the Financial Advisor, with copies to DLA Piper LLP (US), 1000 Louisiana Street, Suite 2800, Houston, Texas 77002-5005 (Attn: Jack Langlois), JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley), and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens).  The Debtors may extend the Bid Deadline with the written consent of the DIP Agent and the Pre-Petition Agent.  If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

(b)      **Bid Requirements**

All bids must include the following (the "Required Bid Documents"):

- a letter stating that the bidder's offer is irrevocable until August 31, 2015;

- a duly authorized and executed purchase agreement, including the purchase price for the Assets to be purchased, together with all exhibits and schedules, marked to show any amendments and modifications to the Agreement, and a proposed sale order; and

- written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors;

A bid will be considered only if the bid:

- provides for the purchase of substantially all of the Assets;

- sets forth the contracts and leases to be assumed and assigned;

- sets forth the consideration for the Assets to be purchased and the contracts and leases to be assumed and assigned;

- provides that the cash consideration to be paid for the Assets and the contracts and leases to be assumed (not including cures) be equal to or greater than $250 million;

- is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

3

- provides evidence satisfactory to the Debtors of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to it;

- is irrevocable until August 31, 2015;

- is accompanied by a deposit by wire transfer to the Debtors equal to 10% of the cash purchase price (any such deposit, a "Good Faith Deposit");

- provides for the closing of the transaction by no later than July 29, 2015;

- sets forth the representatives who are authorized to appear and act on behalf of the bidder;

- includes evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

- is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements; *provided* that the Debtors, the DIP Agent and the Pre-Petition Agent may designate any bid as a Qualified Bid by agreement.  Any dispute among the DIP Agent, the Pre-Petition Agent and the Debtors regarding whether a bid should or should not constitute a Qualified Bid shall be resolved by the Bankruptcy Court.  The Debtors shall promptly after receipt confirm for a Qualified Bidder whether or not its submission constitutes a Qualified Bid and whether, as a result, it may attend the Auction.  Within one (1) business day of the Bid Deadline, the Debtors will provide the DIP Agent and the Pre-Petition Agent with copies of any Qualified Bids.

All Qualified Bids will be considered, but the Debtors, after consulting with the DIP Agent and the Pre-Petition Agent, reserve the right to reject any and all bids other than (a) a Credit Bid (as defined below) and (b) the highest or otherwise best bid in the Debtors' sole discretion.  The Debtors may, in consultation with the DIP Agent and the Pre-Petition Agent, evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors.  Any disputes among the DIP Agent, the Pre-Petition Agent and the Debtors concerning the rejection or evaluation of a Qualified Bid shall be resolved by the Bankruptcy Court.  Bids other than Qualified Bids (or deemed Qualified Bids) will not be considered.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; and that it did not rely

4

upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding such Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

**3.      Stalking Horse Bid Protections**

To incentivize potential bidders and thereby maximize the potential value of the Assets, the Debtors are authorized, upon their receipt of any bid (or bids, if for less than substantially all assets for sale) that the Debtors deem, in an exercise of their sound business judgment to be acceptable, to designate one or more Qualified Bids as a stalking horse bid (each, a "Stalking Horse Bid") and to execute an asset purchase agreement with such stalking horse bidder (a "Stalking Horse Bidder") in connection with the proposed sale of the Assets, at any time before the commencement of the Auction.  No bid may be a Stalking Horse Bid if it does not constitute a Qualified Bid.

Upon execution of an asset purchase agreement with any Stalking Horse Bidder, such Asset Purchase Agreement will be a Qualified Bid and Leading Bid (as defined below), and the Debtors will provide notice of such Stalking Horse Bidder and asset purchase agreement as outlined in these procedures.

If the Debtors execute any asset purchase agreement with any Stalking Horse Bidder(s), the Debtors may, upon the consent of the DIP Lenders (in their sole discretion), provide such Stalking Horse Bidder(s) with the a topping fee in an amount to be negotiated by the Debtors in their discretion, based on the totality of the circumstances, including, without limitation, the purchase price and other terms and conditions of the asset purchase agreement, but in no event more than the sum of three percent of the cash portion of the purchase price, payable from the proceeds of an alternative sale transaction, and satisfied as a super-priority administrative expense, and subject to typical conditions and limitations.

**4.      Auction**

In the event that the Debtors timely receive at least one Qualified Bid with respect to the Assets, the Debtors shall conduct an auction (the "Auction").  The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.  The Auction will be conducted at the offices of Jones Day, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 on **[July 16]**, 2015 at 10:00 a.m. (Central Time).

Only representatives or agents of the Debtors, the DIP Agent, the Pre-Petition Agent, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only Qualified Bidders will be entitled to make any subsequent bids at the Auction.

At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the

Debtors of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Debtors may, after consulting with the DIP Agent and the Pre-Petition Agent, employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, *provided* that such rules are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder; and provided further than all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine, in consultation with the DIP Agent and the Pre-Petition Agent, that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below). The Debtors, in their sole discretion (in consultation with the Pre-Petition Agent), may determine appropriate minimum bid increments or requirements for each round of bidding. Notwithstanding anything else in these procedures, a Subsequent Bid must include a cash component of no less than the minimum amount of cash required in connection with a Qualified Bid. In the event of a dispute relating to the conduct of the Auction, such dispute will be heard by the Bankruptcy Court.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, the DIP Agent and the Pre-Petition Agent in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

If the Debtors receive only one Qualified Bid on or prior to the Bid Deadline, the Secured Parties (as defined below) may notify the Debtors, prior to five (5) days before the Auction, if they do not intend on submitting a Credit Bid (as defined below) at or prior to the Auction. Upon the Debtors receiving such notice, no Auction shall occur and the Debtors shall seek approval of the only Qualified Bid at the Sale Hearing. If no such notice is provided to the Debtors, the Auction will occur.

**5.      Selection Of Successful Bid**

The Debtors reserve the right, after consulting with the DIP Agent and the Pre-Petition Agent, to (i) determine in their reasonable discretion which Qualified Bid is the highest or

otherwise best and (ii) reject at any time prior to entry of a Bankruptcy Court order approving an offer, without liability, any bid or offer that the Debtors in their reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates. If the DIP Agent or the Prepetition Agent does not agree with the Debtors' determinations regarding any of the matters set forth in this paragraph, the Bankruptcy Court shall make such determinations in lieu of the Debtors.

Prior to the conclusion of the Auction, the Debtors will, after consulting with the DIP Agent and the Pre-Petition Agent: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the transaction; (B) identify the highest or otherwise best offer (the "Successful Bid"); (C) determine which Qualified Bid is the Successful Bid and which is the next highest or otherwise best offer (the "Alternate Bid") for Assets subject to the Auction; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder (the "Successful Bidder"), the amount and other material terms of the Successful Bid and the identity of the party that submitted the Alternate Bid (the "Alternate Bidder"). If the DIP Agent or the Pre-Petition Agent does not agree with the Debtors' determinations regarding any of the matters set forth in this paragraph, the Bankruptcy Court shall make such determinations in lieu of the Debtors. Within one business day of the completion of the Auction, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate the Sale contemplated by the Successful Bid.

The Debtors will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

If for any reason, the entity that submits the highest or otherwise best Qualified Bid fails to consummate the purchase of the Assets, or any part thereof, the Debtors and the Alternate Bidder are authorized to effect the sale of such Assets to such Alternate Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement.

**6.**     **Credit Bid Rights**. Notwithstanding any other provision of these Bidding Procedures or otherwise, the DIP Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Lenders (collectively, the "Secured Parties") shall be entitled to credit bid some or all of their indebtedness at the Auction pursuant to section 363(k) of the Bankruptcy Code (a "Credit Bid"); provided however, that if, upon the DIP Lenders' consent, the Debtors provide a Stalking Horse Bidder with a topping fee, the Secured Parties' right to Credit Bid is conditioned upon the Secured Lenders paying such topping fee if it is the Successful Bidder; and provided further, that if no Qualified Bids are received prior to the Bid Deadline, the Secured Parties must present such

Credit Bid to the Debtors no later than five (5) days prior to the date of the Auction. Without limiting the generality of the foregoing and notwithstanding any other provision of these Bidding Procedures, the Secured Parties shall not be required to post any deposit to participate in and Credit Bid at the Auction and shall be automatically deemed to constitute "Qualified Bidders." In addition, any Credit Bid, whether prior to or at the Auction, shall be deemed to constitute a "Qualified Bid." The Secured Parties automatically shall be deemed the Successful Bidder at the Auction if the aggregate amount of their Credit Bid (if any) exceeds the cash consideration of the Leading Bid at the conclusion of the Auction. All rights of the Secured Parties to object to the Debtors' selection of a Successful Bid or Alternate Bid, or to object to the consummation of the sale transaction represented by either such bid, are preserved, including, without limitation, any such rights under section 363(k) of the Bankruptcy Code.

7. **The Sale Hearing**

The Sale Hearing will be held before the Honorable _____ on _____, 2015 at __:__ _.m. (Central time) in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Dallas, Texas 75242. The Sale Hearing may be adjourned with the consent of (a) the administrative agent (the "DIP Agent") and lenders (the "DIP Lenders") party to the DIP Credit Agreement, and (b) the Pre-Petition Agent and Pre-Petition Lenders without further notice by an announcement of the adjourned date at the Sale Hearing. If the Debtors do not receive any Qualified Bids, the Debtors will report the same to the Bankruptcy Court at the Sale Hearing. At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid, and, at the Debtors' election, the offer or offers constituting the Alternate Bid.

The Debtors' presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Alternate Bid will not constitute the Debtors' acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing.

Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.

8. **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Debtors and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Debtors will retain the Good Faith Deposits of the Successful Bidder and the Alternate Bidder until the closing of the applicable sales transaction

unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within four business days of the entry of the applicable sale order. At the closing contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Alternate Bidder will be released by the Debtors four business days after the closing of the Successful Bid. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

## 9.    <u>As Is, Where Is</u>

The sale of Assets pursuant to these Bidding Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except as provided in any agreement with respect to the sale approved by the Bankruptcy Court.

## 10.    <u>Free and Clear of Any and All Interests</u>

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "<u>Interests</u>") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale with the same validity and priority as such Interests applied against the Assets purchased pursuant to these procedures.

## 11.    <u>Conflicts</u>

In the event of a conflict between these Bidding Procedures, the Bidding Procedures Order and the DIP Order, the terms of the DIP Order shall govern in all respects.

## **EXHIBIT 1**

Sale Notice

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

**NOTICE OF (I) PROPOSED SALE OF CERTAIN ASSETS OF ERG
INTERMEDIATE HOLDINGS, L.L.C. AND ITS AFFILIATED DEBTORS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(II) AUCTION; AND (III) FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On April 30, 2015 (the "Petition Date"), ERG Intermediate Holdings, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  On May 1, 2015, the Debtors filed with the Bankruptcy Court a motion [Docket No. ___] (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California (the "Assets") free and clear of all liens, claims, encumbrances, and interests (the "Sale"); (b) approval of certain procedures (the "Bid Procedures") for the solicitation of bids with respect to the Sale (the "Bid Procedures Relief"); (c) approval of certain procedures (the "Assignment Procedures") in connection with the identification and assumption of certain contracts and leases in connection with the Sale; and (d) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale (the "Sale Hearing").

2.     A hearing on the Bid Procedures Relief was held before the Bankruptcy Court on _____, 2015, and thereafter the Bankruptcy Court entered an order, among other things, approving the Bid Procedures Relief [Docket No. ____] (the "Bid Procedures Order").  A copy of the Bid Procedures Order is attached hereto as Schedule 1.  The Bid Procedures Order establishes the Bid Procedures that govern the manner in which the Assets are to be sold.  All

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946).  ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

1

bids must comply with the Bid Procedures and be submitted so as to be received not later than 4:00 p.m. (prevailing Central time) on _____, 2015.

3.     Pursuant to the Bid Procedures, the Debtors' intend to market the Assets for sale. Each Qualified Bidder (as defined in the Bid Procedures) shall be invited to participate in an auction (the "Auction") at the offices of JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002, which Auction must be attended in person and which shall commence at 10:00 a.m. (prevailing Central time) on _____, 2015.  Any party interested in submitting a bid should contact the parties set forth in the Bid Procedures attached as Annex 1 to the Bid Procedures Order.

4.     The Sale Hearing currently is scheduled to be conducted on _____, 2015 at _:_0_.m. (prevailing Central time) at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Dallas, Texas 75242, before the Honorable _____ United States Bankruptcy Judge, to consider the approval of the sale of the Assets to the prevailing Qualified Bidder at the Auction (the "Successful Bidder").  The Debtors shall seek entry of an order approving the Sale substantially in the form of the order attached to the Sale Motion as Exhibit D (the "Sale Order"), with such changes as may be required to reflect the results of the Auction.  The Sale Hearing may be adjourned or rescheduled from time to time as permitted by the Bid Procedures without further notice other than an announcement by the Debtors in the Bankruptcy Court of such adjournment on the date scheduled for the Sale Hearing.

5.     A copy of the Bid Procedures Order and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to counsel to the Debtors, JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Joseph A. Florczak), or (b) accessing the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg.

7.     **THE HEARING DATE ON SUCH SALE IS SET FOR _____, 2015.  NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT BY THE OBJECTION DEADLINES (AS DEFINED BELOW).**

**OBJECTIONS TO THE RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO THE SUCCESSFUL BIDDER (EACH, A "SALE OBJECTION"), MUST BE MADE IN WRITING, FILED, AND SERVED SO AS TO BE _ACTUALLY RECEIVED_ BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON _____, 2015. OBJECTIONS RELATED SOLELY TO THE DEBTORS' SELECTION OF THE SUCCESSFUL BIDDER OR THE SUCCESSFUL BIDDERS' PROVISION OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER ANY ASSUMED CONTRACT OR ASSUMED LEASE (EACH, A "SUCCESSFUL BIDDER OBJECTION, AND TOGETHER WITH THE SALE OBJECTIONS, AN "OBJECTION") MUST BE MADE IN WRITING, FILED, AND SERVED SO AS TO BE _ACTUALLY RECEIVED_ BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON _____, 2015 (COLLECTIVELY, THE "OBJECTION DEADLINES").**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

8. **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH THE PRECEDING PARAGRAPH ON EACH OF THE FOLLOWING PARTIES:** (a) the Debtors, c/o ERG Intermediate Holdings, L.L.C., 333 Clay Street, Suite 4400, Houston, Texas 77002 (Attn: Rebecca A. Roof); (b) counsel to the Debtors, JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley) and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens); (c) counsel to the DIP Agent and Pre-Petition Agent, White & Case LLP, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131 (Attn: Thomas E Lauria, Esq.); (d) counsel for the Official Committee of Unsecured Creditors, _____; and (e) the Office of the United States Trustee for the Northern District of Texas, _____ (Attn: _____).

9. The Bid Procedures Order approves the Assignment Procedures, which set forth the (i) manner in which the Debtors will (a) identify the Assumed Contracts (as defined in the Agreement) and the Assumed Leases (as defined in the Agreement) and (b) identify amounts the Debtors believe are necessary to cure defaults under each of such Assumed Contracts and Assumed Leases as determined by the Debtors; and (ii) procedures to be followed by any party that wishes to object to the proposed assumption and assignment of any Assumed Contract, or Assumed Lease, the Cure Payment Liability proposed by the Debtors in respect thereof or the ability of the Successful Bidder to provide adequate assurance of future performance. An additional notice setting forth the specific Assumed Contracts and Assumed Leases to be assumed by the Debtors and the proposed Cure Payment Liability for such contracts will be served upon all counterparties to the Assumed Contracts and Assumed Leases.

10. The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale of the assets to the Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of assets, the Debtors' consummation and performance of a purchase agreement with the Successful Bidder (including, without limitation, the transfer of the assets purchased at the Sale free and clear of all liens, claims, encumbrances and interests).

13. This Notice is subject to the full terms and conditions of the Sale Motion, the Bid Procedures Order, and the Bid Procedures, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: _____, 2015

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3790

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

PROPOSED ATTORNEYS FOR DEBTORS

## Schedule 1

## BID PROCEDURES ORDER

## **EXHIBIT 2**

Assumption Notice

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

### NOTICE OF DEBTORS' INTENT TO ASSUME, ASSIGN, TRANSFER, AND/OR SELL CERTAIN EXECUTORY CONTRACTS, AND LEASES

PLEASE TAKE NOTICE THAT, on April 30, 2015 (the "Petition Date"), ERG Intermediate Holdings, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT, on May 1, 2015, the Debtors filed a motion [Docket No. __] (the "Sale Procedures Motion")[2] with the Bankruptcy Court seeking, among other things, approval of certain procedures (the "Assignment Procedures") applicable to the identification and assumption of certain contracts (the "Assumed Contracts"), and certain leases (the "Assumed Leases") and assignment thereof, in connection with the Sale by which the Debtors intend to sell certain of their assets.

PLEASE TAKE FURTHER NOTICE THAT, on _____, 2015, the Bankruptcy Court entered an order [Docket No. ___] (the "Bid Procedures Order") granting the Sale Procedures Motion and approving the procedures for the assumption and assignment of the Assumed Contracts, and Assumed Leases.  A copy of the Bid Procedures Order is attached hereto as Schedule 1.

---

[1]    Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946).  ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

[2]    Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Sale Procedures Motion.

PLEASE TAKE FURTHER NOTICE THAT the Debtors intend to assume, assign, transfer, and/or sell to the Successful Bidder (together with its subsidiaries and any successors or assigns) the Assumed Contracts and Assumed Leases listed on <u>Schedule 2</u> annexed hereto pursuant to sections 363 and 365 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT the Debtors have set forth on <u>Schedule 2</u> hereto the amounts necessary to cure defaults and/or to provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default prior to the Petition Date (the "<u>Cure Payment Liabilities</u>").  The amounts set forth on Schedule 2 may, in some instances, represent the amount that the Successful Bidder has advised it is prepared to pay in order to take an assignment, transfer, and/or sale of a particular Assumed Contract or Assumed Lease.  The Bankruptcy Code requires that the Cure Payment Liabilities (which include any amounts owing on account of the Debtors' prepetition obligations under the Assumed Contracts and Assumed Leases) be paid (or that adequate assurance of payment be provided) to the parties owed such amounts upon the Debtors' assumption of the Assumed Contracts and Assumed Leases.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT, TRANSFER, AND/OR SALE TO THE SUCCESSFUL OF CONTRACT, OR LEASE INCLUDING TO THE VALIDITY OF ANY CURE PAYMENT LIABILITIES AS DETERMINED BY THE DEBTORS OR TO OTHERWISE ASSERT THAT ANY OTHER AMOUNTS, DEFAULTS, CONDITIONS, OR PECUNIARY LOSSES MUST BE CURED OR SATISFIED UNDER THE ASSUMED CONTRACTS AND ASSUMED LEASES MUST FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, AN "<u>ASSUMPTION OBJECTION</u>") SETTING FORTH WITH SPECIFICITY ANY AND ALL CURE OBLIGATIONS OR OTHER CONDITIONS WHICH SUCH PARTY ASSERTS MUST BE CURED OR SATISFIED WITH RESPECT TO SUCH CONTRACT OR LEASE WITH APPROPRIATE DOCUMENTATION IN SUPPORT THEREOF, <u>SO THAT SUCH ASSUMPTION OBJECTION IS ACTUALLY RECEIVED</u> BY** (a) the Debtors, c/o ERG Intermediate Holdings, L.L.C., 333 Clay Street, Suite 4400, Houston, Texas 77002 (Attn: Rebecca A. Roof); (b)  counsel to the Debtors, JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley) and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens); (c) counsel to the DIP Agent and the Pre-Petition Agent, White & Case LLP, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131 (Attn: Thomas E Lauria, Esq.); (d) counsel for the Official Committee of Unsecured Creditors, _____; and (e) the Office of the United States Trustee for the Northern District of Texas, _____(Attn: _____) (collectively, the "<u>Notice Parties</u>") **BY 4:00 P.M. ON _____, 2015 (THE "<u>OBJECTION DEADLINE</u>").**

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ABILITY OF THE SUCCESSFUL BIDDER TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF AN ASSUMED CONTRACT OR ASSUMED LEASE MUST FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, AN "<u>ADEQUATE ASSURANCE OBJECTION</u>"), <u>SO THAT SUCH OBJECTION IS ACTUALLY RECEIVED BY THE</u>**

NOTICE PARTIES BY 4:00 P.M. ON \_\_\_\_\_, 2015 (THE "ADEQUATE ASSURANCE OBJECTION DEADLINE").

PLEASE TAKE FURTHER NOTICE THAT, EXCEPT AS LIMITED BY THE NEXT PARAGRAPH, UNLESS AN ASSUMPTION OBJECTION OR ADEQUATE ASSURANCE OBJECTION, AS APPLICABLE, IS FILED AND SERVED BY A PARTY TO AN ASSUMED CONTRACT OR ASSUMED LEASE OR A PARTY INTERESTED IN AN ASSUMED CONTRACT OR ASSUMED LEASE BY THE APPLICABLE OBJECTION DEADLINE, ALL PARTIES WHO HAVE RECEIVED ACTUAL OR CONSTRUCTIVE NOTICE HEREOF SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ANY RIGHT TO ASSERT AN ASSUMPTION OBLIGATION OR ADEQUATE ASSURANCE OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE, AND SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER, OR ANY OTHER ASSIGNEE OF THE RELEVANT ASSUMED CONTRACT OR ASSUMED LEASE THAT ANY ADDITIONAL AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION OR ASSIGNMENT MUST BE SATISFIED, UNDER SUCH ASSUMED CONTRACT OR ASSUMED LEASE.

PLEASE TAKE FURTHER NOTICE THAT Assumption Objections must set forth the cure amount or other obligation the objecting party asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, and conditions to assignment and the support therefor, if any. Upon receipt of a Cure/Assignment Objection, the Successful Bidder (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Successful Bidder and the objecting party, and the Successful Bidder shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates. So long as the Successful Bidder holds the Claimed Cure Amount in reserve, the Debtors shall seek authority to assume, assign, transfer, and/or sell the Assumed Contract or Assumed Lease that is the subject of an objection without further delay.

PLEASE TAKE FURTHER NOTICE THAT if, as to any Assumed Contract, or Assumed Lease, no Assumption Objection is received by the Objection Deadline, such Assumed Contract, or Assumed Lease shall be deemed assumed by the Debtors and assigned, transferred, and/or sold to the Successful Bidder without further order of the Bankruptcy Court, effective as of the later of (i) the entry of the Sale Order approving, among other things, the Asset Purchase Agreement with the Successful Bidder (the "Agreement") or (ii) the payment of the applicable Cure Payment Liability, if any, set forth in Schedule 2 hereto. If an Assumption Objection is received by the Objection Deadline and the Debtors and the Successful Bidder are unable to resolve such objection consensually, the proposed assumption and assignment which is the subject of such Assumption Objection shall be subject to further order of the Bankruptcy Court, and the Debtors shall promptly schedule a hearing to consider such Assumption Objection.

PLEASE TAKE FURTHER NOTICE THAT, subject to the terms of the Agreement, notwithstanding anything herein to the contrary, the Successful Bidder may, from time to time, exclude any Assumed Contract or Assumed Lease in its sole and absolute discretion

until the Closing.  The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within three (3) business days of such determination.

PLEASE TAKE FURTHER NOTICE THAT hearings with respect to Assumption Objections shall be held on such date as the Bankruptcy Court may designate.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU AGREE WITH THE CURE PAYMENT LIABILITIES SET FORTH ON <u>SCHEDULE 2</u> AND DO NOT OTHERWISE OBJECT TO THE DEBTORS' ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE OF YOUR CONTRACT OR LEASE YOU NEED NOT TAKE ANY FURTHER ACTION.**

PLEASE TAKE FURTHER NOTICE THAT a complete copy of the Sale Motion may be obtained by (a) sending a written request to counsel to the Debtors JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Joseph A. Florczak), or (b) accessing the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: _____, 2015

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone:  (832) 239-3790

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone:  (312) 782-3939

PROPOSED ATTORNEYS FOR DEBTORS

**Schedule 1**

Bid Procedures Order

**Schedule 2**

List of Assumed Contracts, and Assumed Leases and Cure
Payment Liabilities

## **EXHIBIT B**

### **SALE NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

**NOTICE OF (I) PROPOSED SALE OF CERTAIN ASSETS OF ERG
INTERMEDIATE HOLDINGS, L.L.C. AND ITS AFFILIATED DEBTORS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS;
(II) AUCTION; AND (III) FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On April 30, 2015 (the "Petition Date"), ERG Intermediate Holdings, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  On May 1, 2015, the Debtors filed with the Bankruptcy Court a motion [Docket No. ___] (the "Sale Motion") seeking, among other things, (a) authority to sell substantially all of the assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California (the "Assets") free and clear of all liens, claims, encumbrances, and interests (the "Sale"); (b) approval of certain procedures (the "Bid Procedures") for the solicitation of bids with respect to the Sale (the "Bid Procedures Relief"); (c) approval of certain procedures (the "Assignment Procedures") in connection with the identification and assumption of certain contracts and leases in connection with the Sale; and (d) scheduling of a final hearing with the Bankruptcy Court for approval of the Sale (the "Sale Hearing").

2.      A hearing on the Bid Procedures Relief was held before the Bankruptcy Court on _____, 2015, and thereafter the Bankruptcy Court entered an order, among other things, approving the Bid Procedures Relief [Docket No. ___] (the "Bid Procedures Order").  A copy of the Bid Procedures Order is attached hereto as Schedule 1.  The Bid Procedures Order establishes the Bid Procedures that govern the manner in which the Assets are to be sold.  All

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946).  ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

bids must comply with the Bid Procedures and be submitted so as to be received not later than 4:00 p.m. (prevailing Central time) on _____, 2015.

3.      Pursuant to the Bid Procedures, the Debtors' intend to market the Assets for sale. Each Qualified Bidder (as defined in the Bid Procedures) shall be invited to participate in an auction (the "Auction") at the offices of JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002, which Auction must be attended in person and which shall commence at 10:00 a.m. (prevailing Central time) on _____, 2015. Any party interested in submitting a bid should contact the parties set forth in the Bid Procedures attached as Annex 1 to the Bid Procedures Order.

4.      The Sale Hearing currently is scheduled to be conducted on _____, 2015 at _:_0 _.m. (prevailing Central time) at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Dallas, Texas 75242, before the Honorable _____ United States Bankruptcy Judge, to consider the approval of the sale of the Assets to the prevailing Qualified Bidder at the Auction (the "Successful Bidder"). The Debtors shall seek entry of an order approving the Sale substantially in the form of the order attached to the Sale Motion as Exhibit D (the "Sale Order"), with such changes as may be required to reflect the results of the Auction. The Sale Hearing may be adjourned or rescheduled from time to time as permitted by the Bid Procedures without further notice other than an announcement by the Debtors in the Bankruptcy Court of such adjournment on the date scheduled for the Sale Hearing.

5.      A copy of the Bid Procedures Order and the Sale Motion (including the proposed Sale Order) may be obtained by (a) sending a written request to counsel to the Debtors, JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Joseph A. Florczak), or (b) accessing the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg.

7.      **THE HEARING DATE ON SUCH SALE IS SET FOR _____, 2015. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT BY THE OBJECTION DEADLINES (AS DEFINED BELOW).**

**OBJECTIONS TO THE RELIEF REQUESTED IN THE SALE MOTION, INCLUDING THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS TO THE SUCCESSFUL BIDDER (EACH, A "SALE OBJECTION"), MUST BE MADE IN WRITING, FILED, AND SERVED SO AS TO BE _ACTUALLY RECEIVED_ BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON _____, 2015. OBJECTIONS RELATED SOLELY TO THE DEBTORS' SELECTION OF THE SUCCESSFUL BIDDER OR THE SUCCESSFUL BIDDERS' PROVISION OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER ANY ASSUMED CONTRACT OR ASSUMED LEASE (EACH, A "SUCCESSFUL BIDDER OBJECTION, AND TOGETHER WITH THE SALE OBJECTIONS, AN "OBJECTION") MUST BE MADE IN WRITING, FILED, AND SERVED SO AS TO BE _ACTUALLY RECEIVED_ BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON _____, 2015 (COLLECTIVELY, THE "OBJECTION DEADLINES").**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

8.     **ANY OBJECTION MUST BE SERVED IN ACCORDANCE WITH THE PRECEDING PARAGRAPH ON EACH OF THE FOLLOWING PARTIES:**  (a) the Debtors, c/o ERG Intermediate Holdings, L.L.C., 333 Clay Street, Suite 4400, Houston, Texas 77002 (Attn: Rebecca A. Roof); (b) counsel to the Debtors, JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley) and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens); (c) counsel to the DIP Agent and Pre-Petition Agent, White & Case LLP, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131 (Attn: Thomas E Lauria, Esq.); (d) counsel for the Official Committee of Unsecured Creditors, _____; and (e) the Office of the United States Trustee for the Northern District of Texas, _____ (Attn: _____).

9.     The Bid Procedures Order approves the Assignment Procedures, which set forth the (i) manner in which the Debtors will (a) identify the Assumed Contracts (as defined in the Agreement) and the Assumed Leases (as defined in the Agreement) and (b) identify amounts the Debtors believe are necessary to cure defaults under each of such Assumed Contracts and Assumed Leases as determined by the Debtors; and (ii) procedures to be followed by any party that wishes to object to the proposed assumption and assignment of any Assumed Contract, or Assumed Lease, the Cure Payment Liability proposed by the Debtors in respect thereof or the ability of the Successful Bidder to provide adequate assurance of future performance.  An additional notice setting forth the specific Assumed Contracts and Assumed Leases to be assumed by the Debtors and the proposed Cure Payment Liability for such contracts will be served upon all counterparties to the Assumed Contracts and Assumed Leases.

10.     The failure of any person or entity to file an Objection on or before the applicable Objection Deadline shall be deemed a consent to the Sale of the assets to the Successful Bidder and the other relief requested in the Sale Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Auction, the sale of assets, the Debtors' consummation and performance of a purchase agreement with the Successful Bidder (including, without limitation, the transfer of the assets purchased at the Sale free and clear of all liens, claims, encumbrances and interests).

13.     This Notice is subject to the full terms and conditions of the Sale Motion, the Bid Procedures Order, and the Bid Procedures, which shall control in the event of any conflict.  The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: _____, 2015

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3790

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

PROPOSED ATTORNEYS FOR DEBTORS

## Schedule 1

## BID PROCEDURES ORDER

## **EXHIBIT C**

## **ASSUMPTION NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Joint Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

## NOTICE OF DEBTORS' INTENT TO ASSUME, ASSIGN, TRANSFER, AND/OR SELL CERTAIN EXECUTORY CONTRACTS, AND LEASES

PLEASE TAKE NOTICE THAT, on April 30, 2015 (the "Petition Date"), ERG Intermediate Holdings, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").  The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT, on May 1, 2015, the Debtors filed a motion [Docket No. __] (the "Sale Procedures Motion")[2] with the Bankruptcy Court seeking, among other things, approval of certain procedures (the "Assignment Procedures") applicable to the identification and assumption of certain contracts (the "Assumed Contracts"), and certain leases (the "Assumed Leases") and assignment thereof, in connection with the Sale by which the Debtors intend to sell certain of their assets.

PLEASE TAKE FURTHER NOTICE THAT, on _____, 2015, the Bankruptcy Court entered an order [Docket No. ___] (the "Bid Procedures Order") granting the Sale Procedures Motion and approving the procedures for the assumption and assignment of the Assumed Contracts, and Assumed Leases.  A copy of the Bid Procedures Order is attached hereto as Schedule 1.

---

[1]     Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946).  ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors.  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.  The above addresses are listed solely for the purposes of notices and communications.

[2]     Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Sale Procedures Motion.

PLEASE TAKE FURTHER NOTICE THAT the Debtors intend to assume, assign, transfer, and/or sell to the Successful Bidder (together with its subsidiaries and any successors or assigns) the Assumed Contracts and Assumed Leases listed on Schedule 2 annexed hereto pursuant to sections 363 and 365 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE THAT the Debtors have set forth on Schedule 2 hereto the amounts necessary to cure defaults and/or to provide compensation or adequate assurance of compensation for actual pecuniary loss resulting from a default prior to the Petition Date (the "Cure Payment Liabilities").  The amounts set forth on Schedule 2 may, in some instances, represent the amount that the Successful Bidder has advised it is prepared to pay in order to take an assignment, transfer, and/or sale of a particular Assumed Contract or Assumed Lease.  The Bankruptcy Code requires that the Cure Payment Liabilities (which include any amounts owing on account of the Debtors' prepetition obligations under the Assumed Contracts and Assumed Leases) be paid (or that adequate assurance of payment be provided) to the parties owed such amounts upon the Debtors' assumption of the Assumed Contracts and Assumed Leases.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT, TRANSFER, AND/OR SALE TO THE SUCCESSFUL OF CONTRACT, OR LEASE INCLUDING TO THE VALIDITY OF ANY CURE PAYMENT LIABILITIES AS DETERMINED BY THE DEBTORS OR TO OTHERWISE ASSERT THAT ANY OTHER AMOUNTS, DEFAULTS, CONDITIONS, OR PECUNIARY LOSSES MUST BE CURED OR SATISFIED UNDER THE ASSUMED CONTRACTS AND ASSUMED LEASES MUST FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, AN "ASSUMPTION OBJECTION") SETTING FORTH WITH SPECIFICITY ANY AND ALL CURE OBLIGATIONS OR OTHER CONDITIONS WHICH SUCH PARTY ASSERTS MUST BE CURED OR SATISFIED WITH RESPECT TO SUCH CONTRACT OR LEASE WITH APPROPRIATE DOCUMENTATION IN SUPPORT THEREOF, SO THAT SUCH ASSUMPTION OBJECTION IS ACTUALLY RECEIVED BY** (a) the Debtors, c/o ERG Intermediate Holdings, L.L.C., 333 Clay Street, Suite 4400, Houston, Texas 77002 (Attn: Rebecca A. Roof); (b)  counsel to the Debtors, JONES DAY, 717 Texas Avenue, Suite 3300, Houston, Texas 77002 (Attn: Tom A. Howley) and JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Brad B. Erens); (c) counsel to the DIP Agent and the Pre-Petition Agent, White & Case LLP, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida 33131 (Attn: Thomas E Lauria, Esq.); (d) counsel for the Official Committee of Unsecured Creditors, _____; and (e) the Office of the United States Trustee for the Northern District of Texas, _____(Attn: _____) (collectively, the "Notice Parties") **BY 4:00 P.M. ON _____, 2015 (THE "OBJECTION DEADLINE").**

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY SEEKING TO ASSERT AN OBJECTION TO THE ABILITY OF THE SUCCESSFUL BIDDER TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF AN ASSUMED CONTRACT OR ASSUMED LEASE MUST FILE AND SERVE ITS OBJECTION (ANY SUCH OBJECTION, AN "ADEQUATE ASSURANCE OBJECTION"), SO THAT SUCH OBJECTION IS ACTUALLY RECEIVED BY THE**

NOTICE PARTIES BY 4:00 P.M. ON _____, 2015 (THE "<u>ADEQUATE ASSURANCE OBJECTION DEADLINE</u>").

PLEASE TAKE FURTHER NOTICE THAT, <u>EXCEPT AS LIMITED BY THE NEXT PARAGRAPH,</u> UNLESS AN ASSUMPTION OBJECTION OR ADEQUATE ASSURANCE OBJECTION, AS APPLICABLE, IS FILED AND SERVED BY A PARTY TO AN ASSUMED CONTRACT OR ASSUMED LEASE OR A PARTY INTERESTED IN AN ASSUMED CONTRACT OR ASSUMED LEASE BY THE APPLICABLE OBJECTION DEADLINE, ALL PARTIES WHO HAVE RECEIVED ACTUAL OR CONSTRUCTIVE NOTICE HEREOF SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ANY RIGHT TO ASSERT AN ASSUMPTION OBLIGATION OR ADEQUATE ASSURANCE OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE <u>CONSENTED TO THE ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE,</u> AND SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER, OR ANY OTHER ASSIGNEE OF THE RELEVANT ASSUMED CONTRACT OR ASSUMED LEASE THAT ANY ADDITIONAL AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION OR ASSIGNMENT MUST BE SATISFIED, UNDER SUCH ASSUMED CONTRACT OR ASSUMED LEASE.

PLEASE TAKE FURTHER NOTICE THAT Assumption Objections must set forth the cure amount or other obligation the objecting party asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, and conditions to assignment and the support therefor, if any. Upon receipt of a Cure/Assignment Objection, the Successful Bidder (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Successful Bidder and the objecting party, and the Successful Bidder shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates. So long as the Successful Bidder holds the Claimed Cure Amount in reserve, the Debtors shall seek authority to assume, assign, transfer, and/or sell the Assumed Contract or Assumed Lease that is the subject of an objection without further delay.

PLEASE TAKE FURTHER NOTICE THAT if, as to any Assumed Contract, or Assumed Lease, no Assumption Objection is received by the Objection Deadline, such Assumed Contract, or Assumed Lease shall be deemed assumed by the Debtors and assigned, transferred, and/or sold to the Successful Bidder without further order of the Bankruptcy Court, effective as of the later of (i) the entry of the Sale Order approving, among other things, the Asset Purchase Agreement with the Successful Bidder (the "<u>Agreement</u>") or (ii) the payment of the applicable Cure Payment Liability, if any, set forth in <u>Schedule 2</u> hereto. If an Assumption Objection is received by the Objection Deadline and the Debtors and the Successful Bidder are unable to resolve such objection consensually, the proposed assumption and assignment which is the subject of such Assumption Objection shall be subject to further order of the Bankruptcy Court, and the Debtors shall promptly schedule a hearing to consider such Assumption Objection.

PLEASE TAKE FURTHER NOTICE THAT, subject to the terms of the Agreement, notwithstanding anything herein to the contrary, the Successful Bidder may, from time to time, exclude any Assumed Contract or Assumed Lease in its sole and absolute discretion

until the Closing. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within three (3) business days of such determination.

PLEASE TAKE FURTHER NOTICE THAT hearings with respect to Assumption Objections shall be held on such date as the Bankruptcy Court may designate.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU AGREE WITH THE CURE PAYMENT LIABILITIES SET FORTH ON <u>SCHEDULE 2</u> AND DO NOT OTHERWISE OBJECT TO THE DEBTORS' ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE OF YOUR CONTRACT OR LEASE YOU NEED NOT TAKE ANY FURTHER ACTION.**

PLEASE TAKE FURTHER NOTICE THAT a complete copy of the Sale Motion may be obtained by (a) sending a written request to counsel to the Debtors JONES DAY, 77 West Wacker Drive, Chicago, Illinois 60601 (Attn: Joseph A. Florczak), or (b) accessing the website of the Debtors' claims and noticing agent, http://dm.epiq11.com/erg. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: _____, 2015

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3790

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939

PROPOSED ATTORNEYS FOR DEBTORS

**Schedule 1**

Bid Procedures Order

**Schedule 2**

List of Assumed Contracts, and Assumed Leases and Cure
Payment Liabilities

# **EXHIBIT D**

## **FORM SALE ORDER**
**(to come)**

## EXHIBIT E

## AGREEMENT
**(to come)**