Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile:  (903) 757-9559
Email: jsearcy@jrsearcylaw.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Jointly Administered |
| | § | |
|    Debtors. | § | Case No. 15-31858-hdh-11 |

# MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS TO TRANSFER VENUE

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385).  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

# TABLE OF CONTENTS

**Page No.**

I. Preliminary Statement ................................................................................................ 1

II. Facts ......................................................................................................................... 2

    A.    Debtors' Location and Assets ............................................................... 2

    B.    Location of Debtors' Creditors ............................................................ 5

    C.    Location of Debtors' Principals and Agents ......................................... 8

    D.    Pending Litigation ............................................................................. 10

III. Argument ............................................................................................................... 10

    A.    Applicable Law ................................................................................. 10

    B.    While Venue in Any District of Texas Might be Technically Proper, the Northern District, Dallas Division Is Inappropriate Because the Debtors Have Absolutely No Connections There ............................................. 11

    C.    The Cases Should Be Transferred to the California Bankruptcy Court for the Convenience of the Parties ............................................................ 13

    D.    The Cases Should Be Transferred to the California Bankruptcy Court in the Interests of Justice ...................................................................... 22

IV. CONCLUSION ...................................................................................................... 23

V. NOTICE ................................................................................................................. 24

VI. NO PRIOR REQUEST ......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

### CASES

*Hadar Leasing International Co., Inc. v. D.H. Overmeyer Telecasting Company, Inc. (In re Hadar Leasing International Co., Inc.)*,
14 B.R. 819 (Bankr. S.D.N.Y. 1981) ...................................................................................... 17

*In re 1606 New Hampshire Ave. Associates*,
85 B.R. 298 (Bankr. E.D. Pa. 1988) ...................................................................................... 19

*In re A&D Care, Inc.*,
86 B.R. 43 (Bankr. M.D. Pa. 1988) ....................................................................................... 17

*In re Abacus Broadcasting Corp.*,
154 B.R. 682 (Bankr. W.D. Tex. 1993) ........................................................................... passim

*In re B.L. McCandless LP*,
417 B.R. 80 (Bankr. N.D. Ill. 2009) ................................................................................. 19, 20

*In re B.L. of Miami, Inc.*,
294 B.R. 325 (Bankr. D. Nev. 2003) ............................................................................... passim

*In re Bell Tower Assocs., Ltd.*,
86 B.R. 795 (Bankr. S.D.N.Y. 1988) .............................................................................. 11, 18

*In re Commonwealth Oil Ref. Co., Inc.*,
596 F.2d 1239 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S. Ct. 732, (1980) ........ passim

*In re Dunmore Homes*,
380 B.R. 663 (Bankr. S.D.N.Y. 2008) .................................................................................. 22

*In re Enron Corp*,
284 B.R. 376 (Bankr. S.D.N.Y. 2002) ....................................................................... 18, 21, 23

*In re Enron Corp.*,
317 B.R. 629 (Bankr. S.D.N.Y. 2004) .................................................................................. 22

*In re FRG, Inc., et al.*,
107 B.R. 461 (Bankr. S.D.N.Y. 1989) ...................................................................... 11, 17, 18

*In re Great Lakes Hotel Assoc.*,
154 B.R. 667 (E.D. Va. 1992)................................................................................................ 15

*In re Greenhaven Assocs., Ltd.*,
93 B.R. 35 (Bankr. S.D.N.Y. 1988) .................................................................................. 16, 21

*In re Heritage Wood'N Lakes Estates, Inc.*,
73 B.R. 511 (Bankr. M.D. Fla. 1987) .................................................................................... 12

*In re Old Delmar Corp.*,
45 B.R. 883 (S.D.N.Y. 1985)............................................................................................ 16, 17

*In re Pickwick Place, Ltd. Partnership*,
63 B.R. 290 (Bankr. N.D. Ill. 1986) ...................................................................................... 17

*In re Pope Vineyards*,
90 B.R. 252 (Bankr. S.D. Tex. 1988) ............................................................................. passim

*In re Qualteq, Inc., d/b/a VCT*,
2012 WL 527669 (Bankr. D. Del. 2012) ............................................................................... 12

*In re Rehoboth Hospitality d/b/a Logos Plaza Hotel*,
2011 WL 5024267 (Bankr. D. Del. 2011) ....................................................................... passim

*In re Weatherley Frozen Food Group, Inc.*,
    133 B.R. 862 (Bankr. N.D. Ohio 1991) .................................................................................... 16
*Intern. Rectifyer Corp. v. American Cyanamid Co.*,
    520 F. Supp. 635 (D. Minn. 1981) .......................................................................................... 12
*LSREF2 Baron, LLC v. Aguilar*,
    2013 WL 230381 (N.D. Tex. 2013) ........................................................................................ 20
*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
    705 F. 2d 1515 (9th Cir. 1983), *cert. denied*, 465 U.S. 1081, 104 S. Ct. 1446, 79 L. Ed. 2d 765
    (1984) ...................................................................................................................................... 12

## STATUTES

11 U.S.C. § 1109(b) ......................................................................................................................... 23
28 U.S.C. § 1408 ........................................................................................................................ 10, 11
28 U.S.C. § 1412 ............................................................................................................................. 10

## RULES

Fed. R. Bankr. P. 1014(a)(1) .......................................................................................................... 10

The Official Committee of Unsecured Creditors (the "Committee") of ERG
Intermediate Holdings, LLC, *et al.*, the debtors and debtors in possession (collectively, the
"Debtors") in the above-captioned cases (collectively, the "Cases"), hereby move (the "Motion")
this Court, pursuant to 28 U.S.C. § 1412 and Rule 1014 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), for entry of an order, in substantially the form attached
hereto as **Exhibit A**, transferring venue of the Cases to the Central District of California,
Northern Division (the "California Bankruptcy Court"), or, alternatively, to the Eastern District
of Texas, Beaumont Division (the "Eastern District") or the Southern District of Texas, Houston
Division (the "Southern District").  In support of the Motion, the Committee relies upon and
incorporates by reference the *Declaration of Robert J. Feinstein in Support of (I) Motion of the
Official Committee of Unsecured Creditors to Transfer Venue and (II) Motion to Shorten Notice
Relating to Motion of the Official Committee of Unsecured Creditors to Transfer Venue* (the
"Feinstein Declaration") filed herewith, and respectfully represents as follows:

## I. Preliminary Statement

1.      The Debtors' stated reason for choosing to file in the Northern District of
Texas, Dallas Division, is that they are domiciled in the State of Texas.  The Debtors' filings
with this Court demonstrate, however, that substantially all of their assets are located and
operated in California, as are the majority of creditors to whom they owe substantial sums.  The
Debtors' only current connections to the State of Texas are an office in Houston (which the
Debtors claim as their headquarters) and minimal assets located in Liberty County.  The Debtors
have no presence in Dallas, or anywhere in the Northern District of Texas.  The foregoing facts
alone suggest a venue choice motivated by forum shopping.

2.      Proceeding in this venue would effectively deny any meaningful
participation by the many California-based, family-owned businesses who are owed significant

amounts by the Debtors and cannot afford the additional expense of traveling to Texas and engaging local counsel. Little to no prejudice would result in transferring the cases to the California Bankruptcy Court, which serves Santa Barbara County, the site of substantially all of the Debtors' property that is proposed to be sold in these Cases. It is well-established that the location of a debtor's assets is of primary importance and under the circumstances here compels transfer to California for the convenience of the parties and in the interests of justice.[1] Based on all of the facts and circumstances of these Cases, transfer to the California Bankruptcy Court is the only outcome that will fairly protect the local creditor base and local interest in the operation and sale of the Debtors' oil and gas fields in Santa Barbara County.

## II. Facts

### A. Debtors' Location and Assets

3. On April 30, 2015, ERG Intermediate Holdings, LLC, ERG Resources, L.L.C. ("ERG Resources"), West Cat Canyon, L.L.C., ERG Interests, LLC and ERG Operating Company, LLC ("ERG Operating") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Petitions") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Northern District"). None of the Petitions list a Dallas address or any address located in any division of the Northern District. Rather, all but ERG Operating list the same address located in Houston, Harris County, which is served by the Southern District. ERG Operating lists an address located in Bakersfield, Santa Barbara County, California, which is served by the California Bankruptcy Court.

---

[1] In the alternative, the only other possibly convenient forum is the Eastern District, where the Debtors have minimal assets, or the Southern District, where the Debtors maintain an office and their headquarters, although it is unclear based on their filings what types of operations are conducted from Houston given the location of the Debtors' substantial assets and majority of employees in California. As set forth below, only 11 people are employed in Houston, while 43 people are employed in California.

4.      All of the Petitions state that the "Locations of Principal Assets of Business of Debtors (on a consolidated basis)" are Kern County, California; Santa Barbara, California; Liberty County, Texas; and Harris County, Texas.  Apparently, the Debtors have no assets, let alone principal assets, in any county served by any division of the Northern District. Kern County is served by the U.S. Bankruptcy Court for the Eastern District of California (Bakersfield/Fresno Divisions), and Santa Barbara County is served by the California Bankruptcy Court.  Liberty County is served by the U.S. Bankruptcy Court for the Eastern District of Texas, Beaumont Division (the "Eastern District") and, as noted above, Harris County is served by the Southern District.  The sole apparent "connection" to Dallas is the fact that the registered agent for service of process for certain of the Debtors is located there.

5.      The Declaration of R. Kelly Plato in Support of First Day Pleadings [Docket No. 19] (the "First Day Declaration") states that the Debtors have two offices in California and one in Houston, and that their corporate headquarters are located in Houston.  *See* First Day Declaration at ¶¶ 6, 19.

6.      The Debtors state that "ERG Resources (a) directly operates certain oil & gas properties in Texas and (b) operates certain oil & gas properties in California through its wholly owned subsidiary, ERG Operating . . . ."  First Day Declaration at ¶ 6.

7.      The Debtors' "primary objective" for filing these Cases is "to pursue the sale of their assets located in California."  First Day Declaration at ¶3.  ERG Resources owns approximately 19,027 gross lease acreage in the Cat Canyon Field located in Santa Barbara County, California where it produced 5,000 barrels of oil a day in 2013.  The Cat Canyon Field is a large oil field in the Solomon Hills of central Santa Barbara County, California, about 10

miles southeast of Santa Maria. It is the largest oil field in Santa Barbara County, and as of 2010 was the 20th-largest in California by cumulative production.

8.      As the Debtors acknowledge, local interest in the operation of oil & gas fields in Cat Canyon has been keen, and oil and gas operations in Santa Barbara are heavily regulated by local and federal authorities. *See* First Day Declaration at ¶ 22. For example, a Santa Barbara County Fracking Ban Initiative ballot question was on the November 4, 2014 election ballot in Santa Barbara County, California. *See id.* If approved, this measure would have prohibited what are called "high intensity" oil and gas operations. Such referendum was defeated by a vote of 61% to 39%. *See* http://sbcvote.com/Elect/Resources/Results11_2014/results-1.htm. In addition, the United States government objected to the proposed prepetition sale of the Debtors' California assets to Goldleaf Jewelry Company Ltd. due to national security concerns related to the proximity of the Debtors' operations to certain military facilities.

9.      In contrast to the substantial assets the Debtors own in California, their assets located in Texas are relatively minimal. Specifically, ERG Resources owns and operates oil & gas leases representing only 683 gross acres in Liberty County, Texas and currently produces only twenty-five barrels of oil per day at such location. First Day Declaration at ¶¶ 7,9, 24-25. Thus, 96.5% of the Debtors' gross lease acreage is in California, while only 3.5% is in Texas.

10.     As the Debtors admit, "[h]istorically, the Debtors and their predecessors concentrated their operations in the Gulf coast region – both on-shore and off-shore. The Debtors also previously maintained operations in Illinois and Wyoming." Following the Debtors' 2011 sale of "substantially all of these assets," in 2013 the Debtors acquired "a small

number of operations" located in Liberty County that appear to be the only assets located in the State of Texas. First Day Declaration at ¶¶ 20, 25. The Debtors admit that "[s]ince 2010, ERG Resources and ERG Operating have been primarily engaged in" operations in the Cat Canyon Field in Santa Barbara, California. First Day Declaration at ¶ 7.

**B.      Location of Debtors' Creditors**

> **1.      Twenty Largest Unsecured Creditors**

11.     The Debtors filed a consolidated list of their twenty largest unsecured creditors (the "Top Twenty List") with aggregate debt in the approximate amount of $12,954,079.00.

12.     No creditor has an address in Dallas or any other address located in the Northern District.

13.     In contrast, the majority of creditors holding the majority of debt are located in California as follows:

14.     **All** of the creditors on the Top Twenty List, with the exception of professional firms, have California addresses within the Central and Eastern Districts of California. A majority of such creditors are family-owned businesses with local operations based in California and no material presence in Texas. Including professional firms, sixteen creditors holding debt in the aggregate amount of $8,387,623.00, or approximately 65% of the total debt, are listed with California addresses.

15.     The largest unsecured creditor, Chevron U.S.A., Inc. ("Chevron"), has two California addresses (one in the Eastern and one in the Northern District of California), one Houston address, and a claim in the approximate amount of $3.8 million. The Debtors acquired substantial leasehold acreage in the Cat Canyon Field in Santa Barbara County from Chevron and Chevron's claim is described as arising under a "royalty agreement." *See* First Day

Declaration at ¶ 20; Consolidated List of Creditors Holding 20 Largest Unsecured Claims [Docket No. 1]. Thus, Chevron's claim appears to be directly related to the Debtors' assets located in California and therefore it is likely that the principals who would participate in these Cases are located in California.

16. Accordingly, California-based creditors on the Top Twenty List hold approximately $12.1 million, or approximately 93%, of the total unsecured debts listed. Of the remaining largest twenty unsecured creditors, two creditors holding debt in the approximate amount of $524,000 are listed with Houston addresses and one creditor holding approximately $221,000 is listed with a New York address. The creditor listed with a New York address is Macquarie Group, the Debtors' prepetition investment banker, which according to its website has offices worldwide, including one in each of the following cities: Houston, Austin, San Jose, San Diego, Los Angeles and Chicago. The professionals primarily responsible for Macquarie's prepetition engagement are located in the Chicago office.

17. Of the approximately $12.9 million in total unsecured debt on the Top Twenty List, approximately $9.1 million is described as "trade debt." As a related matter, the Debtors claim they owe approximately $10.5 million to vendors on account of trade debt. *See* First Day Declaration at ¶ 17. Thus, it appears that the Top Twenty List encompasses almost all of the prep-petition trade debt, which, as set forth above, is held by sixteen creditors located in California.

**2. The Committee**

18. On, May 12, 2015, the Office of the United States Trustee appointed the Committee, which comprises five members. *See Appointment of the Official Committee of Unsecured Creditors* [Docket No. 84]. All but one of the members is located in Santa Barbara County, California as follows:

6

(1)    Baker Petrolite Company, which is located in Houston, and serves as chair of the Committee;

(2)    Cynthia Garcia, who resides in Bakersfield;

(3)    MMI Services, Inc., which is located in Bakersfield;

(4)    Pacific Petroleum California, Inc., which is located in Santa Maria; and

(5)    SCS Engineers, which is located in Long Beach, California.

**3.    Other Significant Creditors, Parties in Interest and Their Professionals**

19.    The Debtors' largest secured creditor and DIP lender is CLMG Corp. ("CLMG"), as agent for LNV Corp., a subsidiary of Beal Bank, which is represented by White & Case's Miami and Los Angeles offices.  *See* Notice of Appearance [Docket No. 23].  The Debtors claim to owe $372 million under the prepetition facility as of the Petition Date.  *See* First Day Declaration at ¶ 14.  The DIP loan agreement has a Plano, Texas address for CLMG, as administrative agent; a Las Vegas, Nevada address for LNV Corp., as lender; and a Houston address for the Debtors.  *See* DIP Credit Agreement, at § 10.3 [Docket No. 15].[2]  On April 15, 2015, CLMG filed a complaint against all of the Debtors, among others, in the Superior Court of the State of California, County of Santa Barbara, seeking a judicial foreclosure of the Debtors' assets located in California and the appointment of a receiver.  *See* First Day Declaration at ¶ 31.

20.    The Debtors' first day motion seeking adequate assurance with respect to utility providers lists 37 providers.  Only one has a Dallas address; one has a Houston address (*i.e.*, in the Southern District) and one has a Liberty address (*i.e.*, in the Eastern District). Nineteen utility providers are located in California.  The remaining providers have New Orleans

---

[2] Plano is served by the Eastern District and, as noted above, Houston is served by the Southern District.

addresses.  Thus, a majority of the Debtors' utility providers are also based in California, with less than 10% in Texas (and less than 3% in this district).

21.     The Debtors' first day motion to approve payment of wages and other employee benefits states that the Debtors have 55 employees and two independent contractors, but does not indicate where those employees or independent contractors work.  Based on the Debtors' representations, ERG Resources employs 11 people in Houston and ERG Operating employs 43 people in Bakersfield and Santa Maria.  Thus, the overwhelming majority of the Debtors' employees work in Santa Barbara County, California, which is not surprising given that is where the Debtors' principal operating assets are located.  Notably, the proposed DIP financing, which will be used to fund payroll, among other things, terminates upon the sale of the California assets and provides funding thereafter only for the payment of professional fees necessary to wind down the Cases.  Apparently, the Debtors will have no more employees or operations after the California assets are sold.

22.     The Debtors also have approximately 194 royalty owners in pay status in California and Texas.  *See* First Day Declaration at ¶ 16.  Given the relative size of the Cat Canyon and Liberty County operations and the amount oil produced daily at each location, the Committee presumes that the overwhelming majority of such royalty owners are located in California.

**C.      Location of Debtors' Principals and Agents**

23.     The principal attorneys at Jones Day responsible for the Debtors' cases appear to be located in the Chicago office, and *pro hac vice* applications have been filed for them.  Jones Day's Houston office is co-listed with the Chicago office on the Debtors' pleadings.  Jones Day also has an office in Los Angeles.

24. The Debtors' ultimate owner, Scott Wood, is represented by Haynes & Boone. The Notice of Appearance for Mr. Wood lists Haynes & Boones' Houston and Dallas offices, but is signed by an attorney in the Houston office. *See* Notice of Appearance [Docket No. 39].

25. In addition to maintaining a residence in Houston, Mr. Wood also has a substantial presence in Santa Barbara insofar as, among other things, he owns a multi-million dollar parcel of real estate located at 200 Lambert Road, Carpintiera, California (the "Lambert Road Property"), an area that, like the Debtors' Cat Canyon holdings, is also served by the California Bankruptcy Court. Moreover, Mr. Wood's California real estate is intimately bound up with these Cases, as evidenced by the Restructuring Support Agreement (the "RSA") referenced in the First Day Declaration, but not previously filed with the Court. *See* Feinstein Declaration at Exhibit 1 (RSA). The RSA reflects that in August of 2014, Mr. Wood pledged the Lambert Road Property to CLMG to collateralize his personal guaranty of CLMG's loan to the Debtors. It is evident from, among other provisions, paragraph 6(f) of the RSA, that creditor recoveries in this case could well depend on the disposition of the Lambert Road Property. That paragraph provides that if the Debtors consummate an "Acceptable Sale" of their California oil & gas assets, and Mr. Woods makes a "Qualifying Release Payment" of $8.5 million to CLMG to satisfy the deed of trust against Mr. Woods' Lambert Road Property, then CLMG will waive its deficiency claim and release any and all liens it has on the Debtors' remaining assets, freeing them up for unsecured creditors. Thus, the outcome of these Cases depends, in part, on both the disposition of the Debtors' California assets and the resolution of CLMG's claim against Mr. Woods' California real estate. These Cases belong in California where the real properties fundamentally affected by the Cases are located.

**D.** **Pending Litigation**

26.     As set forth above, less than a month before the Petition Date, CLMG commenced a judicial foreclosure and receivership proceeding with respect to the Debtors' California assets in the Superior Court of the State of California, County of Santa Barbara. According to publicly available information, it appears that three other state court actions are pending against one or more of the Debtors in California, and three are pending in Texas. *See* Feinstein Declaration at Exhibit 2 (Litigation Search List).

### III. Argument

**A.** **Applicable Law**

27.     Section 1408 of title 28 of the United States Code (the "Judicial Code") governs where an entity may file a bankruptcy petition and provides that an entity may file in any judicial district in which: (a) for the prior 180 days it (i) was domiciled (*i.e.*, its state of incorporation or formation), (ii) resided (*i.e.*, an entity's residence is the location of its principal place of business), (iii) had its principal place of business (*i.e.*, the entity's headquarters or the "nerve" center from which decision making emanates), or (iv) had its principal assets; or (b) any one of its affiliates currently have a bankruptcy case pending. *See* 28 U.S.C. § 1408.

28.     Section 1412 of the Judicial Code governs transfer of venue and provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

29.     Bankruptcy Rule 1014 implements the foregoing venue statutes and provides that where a case is filed in a proper district, the court "may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1).

**B.    While Venue in Any District of Texas Might be Technically Proper, the Northern District, Dallas Division Is Inappropriate Because the Debtors Have Absolutely No Connections There**

30.    The terms of Section 1408 "indicate that the court in which a debtor's debts are to be compromised and a debtor reorganized or liquidated should be located in a district where the debtor *at least has a presence*." *In re FRG, Inc., et al.*, 107 B.R. 461, 470 (Bankr. S.D.N.Y. 1989) (emph. added) (citing *In re Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979), *cert. denied*, 444 U.S. 1045, 100 S. Ct. 732, (1980) ("*CORCO*"); *In re Bell Tower Assocs., Ltd.*, 86 B.R. 795, 800 (Bankr. S.D.N.Y. 1988)).  As set forth above, all the Debtors but one list a Harris County address on their Petitions, and none list an address in this district.  There is no dispute that the Debtors have **no** presence in this county or district.

31.    By any measure, California is the proper venue for these Cases.  The Debtors' decision to file in the Northern District despite the incontrovertible convenience, efficiency and economy of, and the preponderance of legal factors favoring, a filing in the California Bankruptcy Court (or at the very least a filing in the Southern District or Eastern District) strongly suggest that the Debtors have come to Dallas in the Northern District for no other reason than forum shopping.[3]  This is wholly improper regardless of whether the filing in the Northern District is technically proper because certain Debtors are domiciled in Texas, as the Debtors stated when this Court questioned their venue choice at the first day hearing in these Cases.

32.    Courts will not condone forum shopping, especially when the debtor is attempting to "escape" the forum best suited for administration of its case.  *See In re Qualteq,*

---

[3] While ordinarily a debtor's choice of venue is accorded some deference, where, as here, the debtor files in a district where it has no connections, that decision should not be accorded the same deference.  To the extent the Debtors were concerned about their own proximity to the courthouse, they would have filed in Houston, which falls within the Southern District, but for whatever reason that was not important to them as they filed over 200 miles away from their corporate offices.

*Inc., d/b/a VCT*, 2012 WL 527669, at *7 (Bankr. D. Del. 2012) (debtor's attempt to escape

Illinois bankruptcy court in light of pending litigation in Illinois "should not be condoned").

Thus, the general presumption in favor of maintaining the debtor's choice of forum "is

diminished when the choice of forum is not directly related to the operative, underlying facts of

the case." *In re Rehoboth Hospitality d/b/a Logos Plaza Hotel*, 2011 WL 5024267, at *3 (Bankr.

D. Del. 2011) (citing *In re Centennial Coal, Inc.*, 282 B.R. 140, 144-45) (Bankr. D. Del. 2002);

*Qualteq*, at *7 (rejecting following three reasons given for filing in Delaware rather than Illinois:

(1) predictability of process, (2) familiarity of court with business issues; and (3) desire to create

distance between debtors' operations and the ongoing lawsuits in Chicago).

      33.    As the Bankruptcy Court for the Western District of Texas admonished:

> How much deference should be given to a forum selected primarily
> by the lawyers, for their own convenience or concern for
> remuneration?  How much deference should be given to a debtor's
> concern that it get what it perceives to be a "debtor's judge?"
> Whenever a creditor raises the venue question, none at all.  Forum
> shopping has never been favored by federal courts, and courts are
> quick to discern the evil in all its disguises.  *See, e.g.*, *Wood v.*
> *Santa Barbara Chamber of Commerce, Inc.*, 705 F. 2d 1515, 1523
> (9th Cir. 1983), *cert. denied*, 465 U.S. 1081, 104 S. Ct. 1446, 79 L.
> Ed. 2d 765 (1984); *Intern. Rectifyer Corp. v. American Cyanamid*
> *Co.*, 520 F. Supp. 635, 639 (D. Minn. 1981); *In re Heritage*
> *Wood'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr. M.D. Fla.
> 1987).  In bankruptcy, too often the tactic is masked by pious
> pronouncements about the debtor's "right" to select the most
> advantageous of several possible forums, in order to advance the
> prospects for reorganization.  That rationale, however, should in
> the usual instance, be taken with several grains of salt.

*In re Abacus Broadcasting Corp.*, 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993) (transferring

venue from the Western District of Texas to Utah).  In *Abacus*, the court emphasized the

following two overarching concerns with respect to cases filed in the Western District of Texas

involving real estate located in Salt Lake City: (1) the importance of having a judge preside over

a case "who is sufficiently familiar with the milieu in which the enterprise operates" and (2) the "danger of forum shopping (or more insidiously, judge shopping) …." *Id.* at 684.

34.     In this case, as in *Abacus*, "the smell of forum shopping is strong indeed." *Abacus*, 154 B.R. at 687.  The same issues that concerned Judge Clark in *Abacus* are central here and should cause the same concern for this Court.  While the filing here may have been technically proper, it appears to be motivated by nothing other than forum shopping.  It would be elevating form over substance to allow these Cases to remain in the Northern District given the utter lack of any presence here and the facts and circumstances that overwhelmingly favor the California Bankruptcy Court.

**C.     The Cases Should Be Transferred to the California Bankruptcy Court for the Convenience of the Parties**

35.     The Fifth Circuit established the following criteria courts should consider in determining whether to transfer venue of a chapter 11 case under the "convenience of the parties" prong:

(1) the proximity of creditors of every kind to the court;

(2) the proximity of the debtor to the court;

(3) the proximity of the witnesses necessary to the administration of the estate;

(4) the location of the assets;

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration should liquidation result.

*See CORCO*, 596 F.2d at 1240; *accord In re Pope Vineyards*, 90 B.R. 252, 255 (Bankr. S.D. Tex. 1988).  As set forth below, the factors weigh heavily in favor of transfer to the California Bankruptcy Court under the facts and circumstances of these Cases.[4]

---

[4] In the alternative, the only other possibly convenient forum is the Southern District or Eastern District.

1. **Proximity of Creditors of Every Kind**

36. As stated above, the overwhelming majority of the Debtors' unsecured creditors are located in California, and a majority of the Debtors' other significant parties in interest are located in California, Houston, Liberty County or elsewhere. None are located in the Northern District. Other than parties appearing on the creditor matrix, it seems that no other party in interest is located in Dallas.

37. Maintaining venue in the Northern District would cause unnecessary prejudice and hardship to the small, family-owned businesses, virtually all of which are located in California. Such creditors are owed significant amounts by the Debtors and have no meaningful, if any, presence in Texas. In order to participate in these Cases, such creditors would be forced to retain local counsel in Texas and incur additional expenses traveling over 1,500 miles to Dallas. Thus, transferring these Cases to the California Bankruptcy Court will enable the vast majority of creditors to participate in these Cases without causing any prejudice to the Debtors.

38. Based on the foregoing, the location of creditors weighs heavily in favor of transferring these Cases to the California Bankruptcy Court.

2. **Proximity of Debtors**

39. Although the Debtors are incorporated in Texas, and thus are "domiciled" in Texas, substantially all of their assets are located in California, where the Debtors maintain two offices. There is only one office in Houston, which the Debtors claim as their headquarters. Forty-three of the Debtors' 55 employees, or 78% of them, work in Santa Barbara County. Upon information and belief, Mr. Wood resides and works in Houston, but according to online articles spends a portion of the year in Santa Barbara in connection with his involvement with the ERG

14

Polo Team.[5]  According to their own filings and publicly available information, the Debtors have

no presence in Dallas or any division in the Northern District.

40.    Even if the Debtors make their management and operational decisions

from the Houston location -- which is unclear based on the Debtors' filings to date -- the place

where a debtor's major decisions are made is not necessarily a debtor's principal place of

business.  *See*, *e.g.*, *In re B.L. of Miami, Inc.*, 294 B.R. 325, 332 (Bankr. D. Nev. 2003) (citing *In

re Great Lakes Hotel Assoc.*, 154 B.R. 667, 672 (E.D. Va. 1992)).  Instead, courts consider

where the "true day to day operational and managerial decisions are conducted" rather than a

debtor's assertion regarding the location of the debtors' principals or the principal place of

business for operational decisions.  *Rehoboth Hospitality*, at * 3 (noting that debtors stated their

principal place of business for all executive level operational and financial decisions was

Pennsylvania, but true day to day operational and managerial decisions for hotel in Texas owned

by debtors were conducted onsite by the hotel manager); *Pope Vineyards*, 90 B.R. at 258.  With

78% of their workforce located in Santa Barbara County, it appears that the Debtors' true day-to-

day operations are conducted there, not anywhere in Texas.

41.    Even if a debtor's books and records and its principal are in one location,

it is still appropriate to transfer venue to the court closest to the location of the debtor's

substantial assets.  *Abacus*, 154 B.R. at 685.  The same holds true even when the debtor's

principals manage their property from a location away from where their substantial assets are

located.  For example, in *Pope Vineyards*, the court transferred venue to the district where the

debtor's assets were located and controlled even though it was less convenient for the debtor's

part-time executive.  *Pope Vineyards*, 90 B.R. at 258; *accord In re Weatherley Frozen Food*

---

[5] *See* http://houston.culturemap.com/news/society/09-04-12-the-best-private-party-of-the-summer-santa-barbara-polo-a-sweet-diversion-for-houston-expats/

*Group, Inc.*, 133 B.R. 862 (Bankr. N.D. Ohio 1991) (president's inconvenience was outweighed by the convenience to creditors of transferring venue where debtor's president operated the business from New York, but the debtor's production occurred in Ohio and there appeared to be no reason why the same arrangement would not continue and in any event would not continue indefinitely due to the debtor's anticipated sale of the assets located in Ohio); *In re Greenhaven Assocs., Ltd.*, 93 B.R. 35, 40 (Bankr. S.D.N.Y. 1988) (interests of all creditors other than debtor's management would be better served by transfer to the jurisdiction where all of debtor's assets located and where all of debtor's income was generated); *In re Old Delmar Corp.*, 45 B.R. 883, 885 (S.D.N.Y. 1985).

42.     The Debtors have no connection whatsoever to Dallas or any other location in the Northern District.  In contrast, virtually all of the Debtors' assets, operations and employees are located in California.

43.     Based on the foregoing, the Debtors' location weighs in favor of transferring these Cases to the California Bankruptcy Court.

### 3.     Proximity of Witnesses

44.     While the "physical location of witnesses is not as important a consideration as the other *CORCO* factors," it still weighs in favor of transferring these Cases to the California Bankruptcy Court.  *See B.L. of Miami*, 294 B.R. at 332.  Valuation issues will likely play a central role in these Cases and the Debtors' management and property appraisers located in California will likely be called as witnesses.  In contrast, all potential witnesses will be required to travel to Dallas since the Debtors have no employees, operations or creditors there. Based on the foregoing, the location of potential witnesses weighs in favor of transferring these Cases to the California Bankruptcy Court.

4.      **Location of Assets**

45.      The *Pope Vineyards* court noted that "many courts have placed more importance on the location of the assets than did the [CORCO] court" and on the facts before the court, which are similar to those present here, "this factor must be considered one of paramount importance." *Pope Vineyards*, 90 B.R. at 258.  The court concluded that:

> The case under consideration is one that concerns real property.
> The location of the bulk of the assets must weigh heavily as a
> factor because the business of this debtor relies upon its realty. The
> facts of this business greatly differ from the facts faced by the
> Commonwealth Oil court. Based on this consideration, venue is
> proper where the vineyard is located, in the federal court
> responsible for Napa Valley, California.

*Id.*

46.      Other courts have also focused on the location of the debtor's "principal asset" as the factor they consider to "overwhelmingly compel transfer."  *In re A&D Care, Inc.*, 86 B.R. 43, 45 (Bankr. M.D. Pa. 1988) (transferring venue of case improperly filed in Middle District of Pennsylvania to Western District of Pennsylvania based on facts and circumstances, including pending litigation in the Western District and "relying primarily on the fact that debtor's major asset may eventually be determined to be located in [the Western District]") (citing *Old Delmar Corp.*, 45 B.R. 883 (despite fact that principals resided in New York, the factor that "overwhelmingly militate[d] in favor of transfer" to Texas was the location of all the debtor's assets, which consisted of an apartment complex); *In re Pickwick Place, Ltd. Partnership*, 63 B.R. 290, 292 (Bankr. N.D. Ill. 1986)); *accord Hadar Leasing International Co., Inc. v. D.H. Overmeyer Telecasting Company, Inc. (In re Hadar Leasing International Co., Inc.)*, 14 B.R. 819, 821 (Bankr. S.D.N.Y. 1981) ("Finally, the factor which overwhelmingly militates in favor of transfer was . . . that substantially all of its assets are in Ohio."); *FRG, Inc.*, 107 B.R.

at 472 ("[l]ocation of assets assumes great significance if liquidation is in the offing . . . or if the case involves local concerns and local witnesses."); *Bell Tower*, 86 B.R. at 803.

47. Where the debtors' assets consist solely of real property, "special consideration" should be given to the location of such assets. *See Pope Vineyards*, 90 B.R. at 258. Such special consideration is even more significant here given that the Debtors propose to sell such assets and subsequently liquidate. *See*, *e.g.*, *FRG, Inc.*, 107 B.R. at 472. Courts may discount the location of the debtors' assets on venue transfer motions only if the debtors propose to reorganize. *See*, *e.g.*, *In re Enron Corp*, 284 B.R. 376, 390 (Bankr. S.D.N.Y. 2002) ("The location of the assets is not as important where the ultimate goal is rehabilitation rather than liquidation.") (discussing cases). This line of cases is inapplicable where, as here, the debtors are liquidating virtually all of their assets.

48. Since the "central issue" in these Cases will be the value of the California property, the California Bankruptcy Court "will have greater familiarity with the locale and physical property at issue and is better situated to determine an appropriate valuation . . . ." *Rehoboth Hospitality*, at *4. Courts "have held that transfer of venue is proper because '[m]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property.' " *B.L. of Miami*, 294 B.R. at 332 (transferring venue of case filed in Nevada to Florida where debtor was incorporated in Nevada but sole asset was nightclub located in Miami) (quoting *In re Enron Corp.*, 284 B.R. at 392 (internal citations omitted)); *Pope Vineyards*, 90 B.R. at 258 (same). As the *B.L. of Miami* court noted, "[i]t makes good sense 'to locate the bankruptcy in a venue where the judge presiding would more likely have active familiarity with the community and the milieu' in which the nightclub operates." *B.L. of Miami*, 294 B.R. at 332 (quoting *Abacus*, 154 B.R. at 683). As in *Rehoboth Hospitality*, "the result of

this case and the future of the [property] is of primary importance to the community in which it resides." *Rehoboth Hospitality*, at *4. This factor is even more significant here given the local interest in Cat Canyon Field and regulatory issues relating to the operation of oil and gas fields there. If the issue was important enough to garner a ballot vote then California clearly has a greater interest in the sale of this property than Texas.

49.     In addition, "in today's electronic age," courts are according less relevance to the location of a debtor's "books and records" for purposes of considering the transfer of venue. *See*, *e.g.*, *B.L. of Miami*, 294 B.R. at 333 (any financial records located in original filing district are easily transmitted to location of transferee court); *CORCO*, 596 F.2d at 1248 (finding that location of original documentation entitled to little weight in choosing between two forums); *Abacus*, 154 B.R. at 685 (giving little weight to fact that many of debtor's books and records were maintained at the location of the original filing district).

50.     Lastly, as noted above, the Court should transfer venue to the California Bankruptcy Court where substantially all of the Debtors' assets are located **even if** the Court determines that the Debtors manage and operate those assets from Houston. *In re B.L. McCandless LP*, 417 B.R. 80 (Bankr. N.D. Ill. 2009) is instructive in this regard. In that case, the court transferred venue from the Northern District of Illinois to the Western District of Pennsylvania, where the debtors owned two pieces of real property. The court distinguished *In re 1606 New Hampshire Ave. Associates*, 85 B.R. 298, 304 (Bankr. E.D. Pa. 1988) (citations omitted), finding that denial of a venue transfer motion is appropriate when a debtor managing realty located elsewhere seeks to maintain a bankruptcy case in the district where management is located only when (1) a substantial number of creditors concur that venue should be retained by the court where the original filing was made and (2) the realty at issue is undeveloped. In *BL*

19

*McCandless*, no creditor wanted venue to remain in the original district and the property was developed.  The court transferred venue to the location of the debtor's real property, finding that "wherever the day-to-day management of our Debtor's real estate is taking place, it is true that its tenants and creditors are located in Pennsylvania."  *BL McCandless*, 417 B.R. at 84.  Here, the Committee (whose five members include four small businesses in California) seeks to transfer venue where substantially all of the Debtors' assets and operations are located, and will be offered for sale – the Northern District of California, Northern Division.

51.    Based on the foregoing, the location of the Debtors' assets is of paramount importance in these liquidating cases and weighs heavily in favor of transferring these Cases to the California Bankruptcy Court.

**5.    Economic and Efficient Administration of the Estates**

52.    The promotion of the economic and efficient administration of the estate is the factor accorded the most weight in the "convenience of the parties" analysis.  *See CORCO*, 569 F.2d at 1247; *accord LSREF2 Baron, LLC v. Aguilar*, 2013 WL 230381, at *4 (N.D. Tex. 2013) ("In evaluating the interest of justice factors, several courts have found the most important factor is whether transfer would promote the economic and efficient administration of the bankruptcy estate."); *Pope Vineyards*, 90 B.R. at 258 (same).

53.    The economics of estate administration favor transfer where the Debtors' significant assets consist almost entirely of property located in California.  The most important issues in these Cases concern the Cat Canyon Field and its valuation and disposition, which will require familiarity with the local market and the application of California property and regulatory law.  *Rehoboth Hospitality*, at * 5.  While this Court could certainly familiarize itself with these issues, the California Bankruptcy Court already is familiar with these issues and would be better positioned to serve the interests of the estates and creditors.  *See id.*

54. As the *Pope Vineyards* court noted in distinguishing *CORCO*, the location of a debtor's principals is not determinative, particularly where they suffer only a minor inconvenience in traveling to California. *Pope Vineyards*, 90 B.R. at 258. The court concluded that based on the nature of its business, Pope Vineyards "must be administered in the court closest in proximity to the real estate asset and the bulk of its creditors. In this way, economic administration will be effected." *Id.* at 259; *accord Greenhaven Assocs.*, 93 B.R. at 41("The relative economic harm to the debtor caused by a transfer of venue to the Western District of Kentucky would be minimal, because the debtor retains employees in Kentucky to deal with tenants, collect rents and maintains the premises. The economics of administering the estate will be furthered because most of the creditors are located in or near Kentucky, whereas only one creditor, the debtor's managing agent, is located in New York."). Moreover, as set forth above, where debtors are liquidating their assets rather than reorganizing, the economic and efficient administration of the estates is better served by transferring venue to the location of such assets. *See*, *e.g.*, *Enron Corp.*, 284 B.R. at 390-91 (discussing cases).

55. Based on the foregoing, the efficient and economic administration of the estates weighs heavily in favor of transferring these Cases to the California Bankruptcy Court.

**6.     Necessity for Ancillary Administration if Liquidation Should Result**

56. Little weight should be given to this factor because anticipating the failure of these chapter 11 cases "is not a logical basis in weighing venue," especially at this early stage of the cases. *B.L. of Miami*, 294 B.R. at 332 (citing *CORCO*, 596 F.2d at 1248). If the Court affords any weight to this factor it should be in favor of transfer because were it necessary to convert these Cases to chapter 7, the U.S. Trustee would appoint a panel trustee in Dallas who would have to administer assets located thousands of miles away in California. *See Abacus*, 154

B.R. at 684. Such assets would be administered more economically and efficiently by a chapter 7 trustee in Santa Barbara.

57. Based on the foregoing, the necessity for ancillary administration if liquidation of these Cases should result weighs in favor of transferring them to the California Bankruptcy Court.

58. The facts and circumstances of these Cases plainly warrant transfer of these Cases to the California Bankruptcy Court for the convenience of the parties.

**D. The Cases Should Be Transferred to the California Bankruptcy Court in the Interests of Justice**

59. Courts evaluating the "interests of justice prong" consider the following factors:

(1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;

(2) whether the interests of judicial economy would be served by the transfer;

(3) whether the parties would be able to receive a fair trial in each of the possible venues;

(4) whether either forum has an interest in having the controversy decided within its borders;

(5) whether the enforceability of any judgment would be affected by the transfer; and

(6) whether the plaintiff's original choice of forum should be disturbed.

*In re Dunmore Homes*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (transferring venue from S.D.N.Y. to E.D. Cal.) (citing *In re Enron Corp.*, 317 B.R. 629, 638–39 (Bankr. S.D.N.Y. 2004)). When applying the "interests of justice" test, "the court applies a broad and flexible

standard," considering whether transfer of venue "will promote the efficient administration of the estate, judicial economy, timeliness and fairness." *B.L. Miami*, 294 B.R. at 334 (citing *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002)).

60. The "convenience of the parties" factors weigh heavily in favor of transfer and lead to the conclusion that the interests of justice are best served by transfer of the Cases. *See B.L. of Miami*, 294 B.R. at 334 (citing *Enron Corp.*, 284 B.R. at 386) (finding that "generally what serves the convenience of the parties will also serve the interest of justice"). The facts and circumstances here are similar to those in *B.L. Miami*, where the court held:

> Retaining venue in Reno, Nevada, would make it difficult and expensive for interested parties to participate in the case. Creditors would be geographically distant and if they wanted to participate would need to retain local counsel. There is little doubt that distance and cost would unfairly reduce participation in the reorganization process and that participation is a fundamental predicate of Chapter 11. *See* 11 U.S.C. § 1109(b). While Debtor argues its "nerve center" is in Nevada (but certainly not in Reno), its business activity and its trade creditors are in Miami, Florida. This case simply does not belong in Reno, Nevada, even after giving deference to Debtor's venue choice. While venue may be technically proper, retention of the case would not be in the best interest of justice. Transfer of the case will afford all parties in interest more efficient, economic and meaningful justice.

*Id.*

61. Based on the foregoing, these Cases should be transferred to the California Bankruptcy Court in the interests of justice.

## IV. CONCLUSION

62. The facts and circumstances acknowledged by the Debtors in their filings demonstrate a clear case for transfer of venue to the California Bankruptcy Court, or, alternatively, to the Eastern District, Beaumont Division or the Southern District, Houston Division. By the Debtors' own admissions, these Cases and their success revolve primarily if

not entirely around property located in Santa Barbra County, which the Debtors propose to sell and then wind down their remaining operations.  They have absolutely no connection to the Northern District and only a tenuous one to the Eastern and Southern Districts.  The California Bankruptcy Court is the center of the Debtors' operations and assets and is the most convenient forum for an overwhelming majority of the Debtors' unsecured creditors and other parties in interest.  The interests of justice would be served by the transfer of these Cases to the local forum.

## V. NOTICE

63.     Notice of this Motion will be given to:  (a) counsel to the Debtors; (b) counsel to the agents for the Debtors' prepetition and postpetition secured lenders (c) the Office of the U.S. Trustee; and (d) those parties requesting service in these cases pursuant to Bankruptcy Rule 2002.  The Committee submits that, under the circumstances, no other or further notice is required.

## VI. NO PRIOR REQUEST

64.     No prior request for the relief requested in this Motion has been made to this or any other court.

WHEREFORE, the Committee respectfully requests the entry of an order (a) transferring venue of the Cases to the California Bankruptcy Court, or, alternatively, to the Eastern or Southern District, and (b) granting such other and further relief as may be just and proper.

Dated:  May 15, 2015

         */s/ Jason R. Searcy*
Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile:  (903-757-9559
Email: jsearcy@jrsearcylaw.com

Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
       rfeinstein@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*