# EXHIBIT 1

**(Restructuring Support Agreement)**

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT (this "**Agreement**") is entered into as of April 30, 2015, by and among Scott Y. Wood, an individual ("**Mr. Wood**"), the Lenders party hereto, and CLMG CORP., a Texas corporation, as administrative agent under the Credit Agreement (as defined below) (in such capacity, the "**Administrative Agent**," and, together with Mr. Wood and the Lenders party hereto, the "**Parties**"), and, for the limited purposes of Section 6(f) and Section 19, only, ERG Resources, L.L.C. ("**ERG**," or, the "**Borrower**") West Cat Canyon, L.L.C. ("**West Cat**"); ERG Intermediate Holdings, LLC ("**ERG Intermediate**"); ERG Interests, LLC ("**ERG Interests**"); and ERG Operating Company, LLC ("**ERG Operating**," and, together with West Cat, ERG Intermediate, ERG Interests, and ERG Operating, the "**Corporate Guarantors**").

## RECITALS

WHEREAS, the Administrative Agent, the Lenders, and ERG, as borrower, are party to that certain Credit Agreement dated as of January 24, 2013, as amended by that certain First Amendment to Credit Agreement, dated as of August 14, 2014 (as further amended, restated, supplemented and/or otherwise modified from time to time, the "**Credit Agreement**"); and

WHEREAS, the Corporate Guarantors have guaranteed the Borrower's obligations in respect of the Credit Agreement and related Loan Documents; and

WHEREAS, Mr. Wood is a party to that certain Guaranty, dated as of August 14, 2014, (as amended, restated, supplemented and/or otherwise modified from time to time, the "**Owner Guaranty**"), by which Mr. Wood has guaranteed the Borrower's obligations in respect of the Credit Agreement and related Loan Documents; and

WHEREAS, Mr. Wood's obligations in respect of the Owner Guaranty are secured by that certain Mortgage, Deed of Trust, Assignment, Security Agreement, Fixture Filing and Financing Statement, dated as of October 3, 2014 (as amended, restated, supplemented and/or otherwise modified from time to time, the "**Owner Mortgage**"); and

WHEREAS, certain defaults have occurred and are continuing under the Credit Agreement and the related Loan Documents, and, as a result, the Obligations under the Credit Agreement have been accelerated; and

WHEREAS, on or about March 24, 2015, Rebecca A. Roof and AP Services LLC, began providing services to assist in ERG's restructuring and Ms. Roof was subsequently appointed Chief Restructuring Officer ("**CRO**") of ERG by corporate resolution dated April 30, 2015, and in such capacity is the executive responsible to manage ERG; and

WHEREAS, the Administrative Agent, the Lenders, the Borrower and the Corporate Guarantors are in agreement that the best way to maximize the value of the Borrower and

1

Corporate Guarantors (collectively, the "**Debtors**") and their respective assets is for the Debtors to commence proceedings under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**") in accordance with the DIP Agreement and as otherwise approved by the Administrative Agent for the purpose of, among other things, conducting a sale of the Debtors' California Assets pursuant to section 363 of the Bankruptcy Code in accordance with an Acceptable Sale Process (the bankruptcy cases commenced in accordance with the foregoing, the "**Agreed Bankruptcy Cases**"); and

WHEREAS, the Administrative Agent and the Lenders have agreed to provide a DIP Facility, as provided in a Senior Secured Superpriority Debtor-In-Possession Agreement (the "**DIP Agreement**") to be executed in connection therewith to fund, among other things, an Acceptable Sale Process; and

WHEREAS, the Owner Guaranty provides that Mr. Wood shall indemnify and be personally liable for certain obligations, losses, damages, costs and expenses imposed upon or incurred by the Administrative Agent or any Lender and/or, in certain circumstances, the Obligations under the Loan Documents (the "**Guaranteed Obligations**") upon the occurrence of certain events or conditions as specified in Section 2.1 of the Owner Guaranty, which include, without limitation, (i) the commencement by the Borrower or any other Credit Party of a voluntary case under the Bankruptcy Code or (ii) the failure of the Borrower or any other Credit Party generally to pay its debts as such debts come due, or a written admission by the Borrower or any other Credit Party that it is unable to pay its debts as they come due; and

WHEREAS, the Owner Mortgage secures Mr. Wood's obligations in respect of the Guaranteed Obligations; and

WHEREAS, the Parties desire to set forth certain agreements concerning the Bankruptcy Cases, limitations on the Administrative Agent's enforcement rights in respect of the Credit Agreement, the Owner Guaranty, and the Owner Mortgage, and other related matters, all as more fully set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing, the terms, covenants and conditions contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**SECTION 1.** **Certain Definitions.**

(a) <u>Terms Defined in the Original Agreement.</u> Unless the context requires otherwise or unless otherwise defined in this Agreement, each capitalized term used in this Agreement and defined in the Credit Agreement or the DIP Agreement shall have the same meaning as ascribed to such term in the Credit Agreement or the DIP Agreement, as applicable.

(b) <u>Other Defined Terms.</u> Unless the context requires otherwise, each capitalized term used in this Agreement and defined in this Agreement, including in this Section 1(b), shall have the meaning indicated.

"**Acceptable Sale**" means a sale of the California Assets pursuant to an Acceptable Sale Process.

"**California Assets**" means all assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California, including, without limitation, the "Mortgaged Properties" as such term is defined in that certain Mortgage, Deed of Trust, Assignment, Security Agreement, Fixture Filing and Financing Statement from ERG to Lawrence C. Adams, Trustee for the benefit of the Administrative Agent dated January 24, 2013.

"**Claims**" means any and all direct and indirect claims (including, without limitation, cross-claims, counterclaims, and rights of setoff and recoupment), demands, causes of action (whether direct or derivative in nature), disputes, objections, accounts, reckonings, bonds, bills, specialties, controversies, promises, variances, trespasses, executions, remedies, suits, damages and Liabilities of any nature whatsoever (including, without in any way limiting the generality of the foregoing, all direct and indirect claims either for direct, consequential or punitive damages of any kind), whether actual, contingent or otherwise, whether known, unknown, suspected, unsuspected, foreseen, unforeseen, claimed or subsequently discovered, whether arising under common law, in equity or under statute.

"**Effective Date**" means the first date upon which each of the conditions precedent to the effectiveness of this Agreement, as set forth in Section 2 hereof, is satisfied.

"**Grant Deed**" means that certain Grant Deed dated as of September 12, 2014, conveying the Lambert Road Property from CTS Properties, Ltd. to Mr. Wood.

"**Lambert Road Property**" means certain real property, improvements, and related assets of Mr. Wood located at 200 Lambert Road, Carpinteria, California 93013, designated by the Santa Barbara County Assessor as parcel 005-210-047, as more fully described in the Owner Mortgage.

"**Post-Petition Administrative Agent**" means the administrative agent under the DIP Agreement.

"**Post-Petition Lender**" means a lender under the DIP Agreement.

"**Qualifying Plan**" means a chapter 11 plan of reorganization for the Debtors which (i) treats all liabilities of the Debtors (other than those assumed by the purchaser in an Acceptable Sale) in a manner that does not impair, modify, alter, prejudice, or amend the rights of the Administrative Agent, the Lenders, the Post-Petition Agent, the Post-Petition Lenders, or the purchaser of the California Assets; and (ii) provides for the release of all avoidance actions of ERG and its Affiliates related to the Lambert Road Property.

"**Qualifying Release Payment**" means the payment in cash or immediately available funds in the amount of eight million five hundred thousand dollars ($8,500,000) by Mr. Wood to the Administrative Agent on or prior to September 30, 2015 for the purpose of obtaining a release of the Owner Mortgage; *provided that* the closing of an Acceptable Sale occurs on or prior to August 31, 2015. For the avoidance of doubt, and without limitation of any of the

3

foregoing qualifications, no payment shall be a Qualifying Release Payment if an Acceptable Sale does not occur on or prior to August 31, 2015.

"**Recourse Event**" means any of the following events: (i) the failure of the Wood Financial Statements to be true in all material respects as of the date made and as of the date certified pursuant to the terms of this Agreement; (ii) the taking by Mr. Wood of any action to interfere in any material respect with the conduct of the Agreed Bankruptcy Cases, including, without limitation (a) objecting to the approval of the DIP Facility by the Bankruptcy Court; (b) objecting to the approval of the Acceptable Sale Process by the Bankruptcy Court, including the Bid Procedures; (c) objecting to the consummation of an Acceptable Sale or asserting any interest in the assets which are the subject of an Acceptable Sale; (d) taking any action to remove the CRO or limit her authority; (e) taking any action that is inconsistent with the Bid Procedures Order in any material respect; or (f) taking any action to or intended to cause the termination of the Agreed Bankruptcy Cases; *provided, however*, following the consummation of an Acceptable Sale, if any, Mr. Wood may negotiate and pursue a Qualifying Plan, and any such actions shall not be deemed to violate this clause (ii); (iii) the commencement by Mr. Wood of any action or proceeding against any Lender, Post-Petition Lender, the Administrative Agent, the Post-Petition Administrative Agent, or any of their respective Related Parties, other than an action or proceeding by Mr. Wood to enforce the terms of this Agreement; (iv) the interference by Mr. Wood with any proceeding of the Administrative Agent or the Lenders to foreclose on the Lambert Road Property, whether judicially or non-judicially, except to the extent prohibited by this Agreement, including, without limitation, by making any filing with any court with respect to such a proceeding; (v) the failure of Mr. Wood to cure any breach of his obligations under this Agreement within seven (7) days' of delivery of written notice of such breach by the Administrative Agent and (vi) any representation or warranty under this Agreement shall have been incorrect in any material respect at the time it was made.

"**Wood Financial Statements**" means those financial statements delivered by Mr. Wood to the Administrative Agent dated June 30, 2014.

**SECTION 2.** **Conditions Precedent to Effectiveness.**

The following are conditions precedent to the effectiveness of this Agreement:

(a) Execution and delivery of this Agreement by each of the Parties.

(b) With respect to the Lambert Road Property, the recordation of the Grant Deed with the Clerk Recorder for the County of Santa Barbara, California and delivery to the Administrative Agent proof of such recordation.

(c) The certification by Mr. Wood, in form and substance acceptable to the Administrative Agent, that the Wood Financial Statements were true and correct in all material respects when made and remain true and correct in all material respects as of the date of certification, except as expressly set forth in such certification.

(d) The occurrence of the following events in the following sequence:

4

(i) The authorization by Mr. Wood, in his capacity as the authorized person on behalf of each of the Debtors, of (i) the commencement of the Agreed Bankruptcy Cases, and (ii) the employment of the CRO to manage the Debtors during the pendency of the Bankruptcy Cases, subject to removal by the Debtors only after the consummation of an Acceptable Sale or with the written consent of the Administrative Agent;

(ii) The resignation by Mr. Wood from all positions and titles with respect to ERG and each of its Affiliates (other than ERG Holdings, LLC), including each of the Debtors, *provided, however*, that nothing herein shall require Mr. Wood to relinquish his equity interests in any of ERG or its Affiliates; and

(iii) The appointment of R. Kelly Plato as the sole manager of ERG and each of its Affiliates, including the Debtors.

(e) The commencement of the Agreed Bankruptcy Cases in the Bankruptcy Court on or before April 30, 2015.

**SECTION 3. Acknowledgements.**

(a) Recitals. The Parties agree and acknowledge that the recitals to this Agreement are true and correct.

(b) Liability Under the Owner Guaranty. Mr. Wood acknowledges and agrees that, except as provided in this Agreement, as of the Effective Date, as a result of (i) the failure of the Borrower to generally pay its debts as they come due; (ii) written admissions by the Borrower concerning its inability to pay its debts as they come due; and (iii) the commencement of the Agreed Bankruptcy Cases, Mr. Wood is primarily and directly liable to the Administrative Agent and the Lenders for all of the Guaranteed Obligations, which Guaranteed Obligations include, without limitation, the Obligations of the Borrower in respect of the Loan Documents. As a result, subject to the terms of this Agreement, the Administrative Agent is entitled to foreclose on the Lambert Road Property, whether judicially or non-judicially, at any time.

(c) Loan Documents. Mr. Wood acknowledges and agrees that each of the Loan Documents, the Owner Guaranty, and the Owner Mortgage, is valid and enforceable in accordance with its terms as such enforcement may be limited by bankruptcy, insolvency or similar Laws of general application relating to the enforcement of creditors' rights and by general principles of equity and that, except as modified by this Agreement, all of the terms and conditions thereof are legally binding upon Mr. Wood and are hereby reaffirmed and ratified.

(d) Amount of Obligations. Mr. Wood acknowledges and agrees that: (i) as of April 30, 2015, (A) the aggregate unpaid principal balance of the Loans is $372,000,000 and (B) the aggregate amount of accrued and unpaid interest on the Loans is $28,151,928.08; and (ii) the foregoing amounts do not include other fees, expenses

5

(including professional fees and expenses), and other Obligations and amounts which are chargeable or otherwise reimbursable under the Credit Agreement and the other Loan Documents.

SECTION 4. **Limitation on Recourse Under Owner Guaranty, Owner Mortgage Release Option.**

(a) Subject to Section 4(c) below, on and after the Effective Date, notwithstanding anything in the Owner Guaranty or Owner Mortgage, the Administrative Agent and the Lenders shall be entitled to recover the Guaranteed Obligations solely from the Lambert Road Property, and not from any of Mr. Wood's other personal assets.

(b) Subject to Section 4(c), below, on and after the Effective Date, if Mr. Wood makes the Qualifying Release Payment on or prior to September 30, 2015, the Guaranteed Obligations shall be deemed satisfied and the Administrative Agent and the Lenders shall have no further recourse against Mr. Wood or any of his assets, including the Lambert Road Property on account of the Owner Guaranty or the Owner Mortgage and Mr. Wood shall be entitled to a release of the Owner Mortgage.

(c) If a Recourse Event occurs or exists, Section 4(a) and Section 4(b), above, shall be deemed immediately void and of no force or effect and the Administrative Agent and the Lenders shall be entitled to enforce the Owner Guaranty and the Owner Mortgage in accordance with their terms without regard to Section 4(a), Section 4(b), or any other provision of this Agreement.

SECTION 5. **Release of Administrative Agent and Lenders.**

(a) As of the Effective Date, Mr. Wood, on behalf of himself and each of his predecessors, successors and assigns (each, a "**Wood Releasor**," and collectively, the "**Wood Releasors**"), hereby unconditionally, irrevocably and fully acquits and forever releases, remises, waives and discharges the Administrative Agent, the Lenders, and each of their respective predecessors, successors, assigns, Representatives and Affiliates (collectively, the "**Released Parties**"), of and from any and all Claims (and all defenses, including affirmative defenses, which relate to any of the foregoing), which each Wood Releasor has ever had, now has, or may in the future have against any of the Creditor Released Parties, including, without limitation, all such Claims arising under the Loan Documents, the Owner Guaranty, the Owner Mortgage, or any of the transactions contemplated in connection therewith; provided, that the foregoing releases do not include any Claims of the Wood Releasors arising under this Agreement.

(b) In connection with this Agreement, Mr. Wood, on behalf of himself and all Wood Releasors, waives any and all rights they may have under section 1542 of the California Civil Code, which provides that

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN TO HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

6

As of the Effective Date of this Agreement, the Wood Releasors expressly and forever waive the benefits, protection and rights of California Civil Code section 1542, or any other similar provision of the law of any other jurisdiction, with respect to matters released by the Agreement.

**SECTION 6.** **Certain Matters Pertaining to the Agreed Bankruptcy Cases.**

(a) <u>Mr. Wood's Cooperation in the Agreed Bankruptcy Cases.</u> Mr. Wood shall take such actions as are reasonably required to provide cooperation to the Post-Petition Administrative Agent, the Administrative Agent, the Lenders, the Post-Petition Lenders and the CRO with respect to the prosecution of the Agreed Bankruptcy Cases.

(b) <u>Further Assurances Concerning Consummation of an Acceptable Sale.</u> Without limiting the generality of the immediately preceding paragraph, Mr. Wood shall promptly upon demand by the Post-Petition Administrative Agent or the Administrative Agent execute and deliver or cause to be executed and delivered any document reasonably necessary to disclaim and release any interest he or any of his non-Debtor Affiliates may have in any of the Debtors' assets which are the subject of any Acceptable Sale.

(c) <u>Restriction on Enforcement Actions Against Mr. Wood's Assets During Bankruptcy Cases.</u> The Administrative Agent and the Lenders shall forebear from exercising any state law foreclosure remedies in respect of the Lambert Road Property until the earlier of (i) the occurrence of a Recourse Event or (ii) (A) August 31, 2015, or (B), if an Acceptable Sale is consummated on or before August 31, 2015, then September 30, 2015. Upon the expiration of the forbearance period set forth in this Section 6(c), the Administrative Agent may exercise any and all of its rights and remedies in respect of the Lambert Road Property at its discretion and without opposition from Mr. Wood. Further, after the expiration of the forbearance period set forth in this Section 6(c), upon the written request of the Administrative Agent, Mr. Wood shall promptly transfer the Lambert Road Property, subject to the Administrative Agent's liens, to any entity designated by the Administrative Agent in lieu of foreclosure pursuant to documentation reasonably acceptable to the Administrative Agent.

(d) <u>Certain Rights of Purchaser in Acceptable Sale.</u> Mr. Wood agrees that, subject to applicable law, the purchaser in the Acceptable Sale shall be entitled, in its sole and absolute discretion, to (i) assume or not assume any liabilities of any of the Debtors; (ii) require any one or more of the Debtors to assume and assign to the purchaser one or more executory contracts of such Debtors; and (iii) decline to accept assignment of any executory contract of any Debtor (*provided that* assumption of the executory contract was not requested and effected pursuant to clause (ii)).

(e) <u>Control of the Debtors Following Consummation of an Acceptable Sale.</u> Notwithstanding anything else set forth in this Agreement, following the consummation of an Acceptable Sale, if any, Mr. Wood may replace R. Kelly Plato as the sole manager of ERG and each of its Affiliates, including each of the Debtors, and may serve as an officer of the Debtors, in each case without affecting the effectiveness of this Agreement.

7

(f) <u>Limited Right to Termination of Certain Claims and Liens Against the Debtors.</u> If Mr. Wood makes the Qualifying Release Payment on or prior to September 30, 2015 and a Qualifying Plan is confirmed and goes effective on or prior to October 31, 2015, the Administrative Agent and the Lenders shall, promptly following Mr. Wood's written request, (i) release any and all Liens on the capital stock of the Debtors; (ii) release any and all Liens on the property of the Debtors; and (iii) waive any unsecured deficiency claim under the Loan Documents against the Debtors. For the avoidance of doubt, if Mr. Wood fails to make a Qualifying Release Payment on or prior to September 30, 2015, the Administrative Agent and the Lenders shall have no obligation to release any Liens in any of the Debtors' property or waive any unsecured deficiency claim against any of the Debtors. Nothing herein shall limit or restrict the rights of the Administrative Agent or the Lenders to voluntarily waive (y) any Liens in property of the Debtors remaining after the consummation of an Agreed Sale, including, without limitation, the capital stock of any of the Debtors, or (z) any unsecured deficiency claims against any of the Debtors at any time in the exercise of their sole and absolute discretion. Nothing herein shall limit, impair or modify the rights of the Administrative Agent or the Lenders under the Bankruptcy Code to object to or vote against any plan of reorganization that in the Administrative Agent's view impairs, modifies, waives or otherwise prejudices the rights of the Administrative Agent and the Lenders in any manner.

(g) <u>Sale of Claims.</u> The Administrative Agent and the Lenders, or any of them individually, shall be entitled to sell, assign, or otherwise transfer their respective Loans and claims against any one or more of the Debtors to the fullest extent permitted (or not prohibited) by the Loan Documents and applicable law, except that any such sale, assignment, or other transfer shall be subject to the terms of this Agreement.

**SECTION 7. <u>Representations, Warranties and Covenants of Mr. Wood.</u>**

Mr. Wood hereby represents and warrants to the Administrative Agent and to each of the Lenders that:

(a) the execution, delivery and performance of this Agreement constitutes a legal, valid and binding obligation of Mr. Wood, enforceable against him in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law;

(b) the execution, delivery and performance of this Agreement does not and will not (i) conflict with or result in any breach or contravention of, or the creation of any Lien under, or require any payment to be made under any document evidencing Indebtedness or other obligations to which Mr. Wood is a party or affecting Mr. Wood or his properties or any material order, injunction, writ or decree of any Governmental Authority or any arbitral award to which Mr. Wood is subject; or (ii) violate any Law; and

(c) the Owner Mortgage continues to be a valid, binding, and enforceable first-priority Lien which secures the Guaranteed Obligations.

8

**SECTION 8.** **Ratification of Liabilities, etc.**

(a) Subject to the terms and conditions set forth in this Agreement, Mr. Wood acknowledges the effectiveness and continuing validity of the Owner Guaranty, his liability for the Guaranteed Obligations pursuant to the terms of the Owner Guaranty, and further confirms and agrees that the Liens created pursuant to the Owner Mortgage secure the Guaranteed Obligations.

(b) Mr. Wood (i) acknowledges receipt of a copy of this Agreement and all other agreements, documents and instruments executed and/or delivered in connection herewith; and (ii) consents to the terms and conditions of (A) the DIP Agreement and all orders, agreements, instruments and documents related thereto, and (B) the Acceptable Sale Process, in each case without prejudice to his liability pursuant to any of the Loan Documents and the Owner Guaranty, as applicable.

**SECTION 9.** **Limited Indemnification of Administrative Agent and Lenders and Other Certain Other Undertakings.**

(a) From and after the Effective Date, Mr. Wood shall indemnify, defend and hold harmless the Administrative Agent and the Lenders and each of their respective predecessors, successors, assigns, Representatives and Affiliates, from and against any and all Claims, damages, losses, liabilities, payments, obligations, penalties, fines, assessments, charges, costs, taxes, disbursements, or expenses (including interests, awards, judgments, settlements, costs or redemption, fees, reasonably disbursements and expenses of attorneys, accountants, and other professional advisors and of expert witnesses and costs of investigation and preparation of any kind or nature whatsoever) and court costs to the extent that any of the foregoing relate to, arise out of, or result from the failure of Mr. Wood to record on September 12, 2014 that certain Grant Deed dated September 12, 2014 and signed by Mr. Wood on behalf of CTS Properties, Ltd. purporting to transfer the Lambert Road Property from CTS Properties, Ltd. to Mr. Wood.

(b) Mr. Wood shall take such acts as may be requested by the Administrative Agent from time to time in order to provide the Administrative Agent with a valid first priority lien in the Lambert Road Property to the extent intended by the Owner Mortgage and the Owner Guaranty.

**SECTION 10.** **Reference to and Effect upon the Owner Guaranty and Owner Mortgage.**

(a) Except as expressly provided herein, all terms, conditions and covenants, contained in Owner Guaranty and the Owner Mortgage, each of the Guaranteed Obligations, and all rights of the Lenders and the Administrative Agent, shall remain in full force and effect and Mr. Wood hereby ratifies and reaffirms the same.

(b) The effectiveness of this Agreement shall not directly or indirectly (i) constitute a consent or waiver of any past, present or future violations of the Loan Documents, the Owner Guaranty, or the Owner Mortgage; (ii) amend, modify, prejudice or operate as a waiver of any provision of the Loan Documents, the Owner Guaranty, or the Owner Mortgage, or, except as expressly set forth herein, any right, remedy, power or privilege of the Lenders and/or the Administrative Agent; (iii) except as expressly set forth herein, constitute a consent to any merger or other transaction or to any sale,

9

restructuring or refinancing transaction; or (iv) constitute a course of dealing or other basis for altering any Guaranteed Obligation or any other contract or instrument. Except as otherwise expressly set forth in this Agreement, each of the Administrative Agent and the Lenders reserve all of their respective rights, remedies, powers and privileges under the Loan Documents, the Owner Guaranty, the Owner Mortgage, and applicable Law and/or equity. Except as otherwise expressly set forth in this Agreement, all of the provisions of the Owner Guaranty and the Owner Mortgage are hereby reiterated, and if ever waived, are hereby reinstated.

(c) This Agreement shall not be deemed or construed to be a satisfaction, reinstatement, novation or release of the Owner Guaranty, the Owner Mortgage, or any other document.

**SECTION 11. Dismissal of Foreclosure Action.**

Within ten (10) days of the Effective Date, the Administrative Agent shall use commercially reasonably efforts to dismiss without prejudice the foreclosure action styled *CLMG Corp. v. ERG Resources, L.L.C., et al.* Case No. 15-CV-00515, pending in the Superior Court of the State of California for Santa Barbara County. The Administrative Agent shall have no obligation to dismiss such foreclosure action unless such dismissal is without prejudice in all respects.

**SECTION 12. Counterparts.**

This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart. Any party hereto may execute and deliver a counterpart of this Agreement by delivering by facsimile or other electronic transmission a signature page of this Agreement signed by such party, and any such facsimile or other electronic signature shall be treated in all respects as having the same effect as an original signature.

**SECTION 13. Severability.**

The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction.

**SECTION 14. Further Assurances.**

Mr. Wood agrees to take all further actions and execute all further documents as the Administrative Agent may from time to time reasonably request to carry out the transactions contemplated by this Agreement and all other agreements executed and delivered in connection herewith.

Americas 90546546 (2K)

SECTION 15. <u>Section Headings.</u>

Section headings in this Agreement are included herein for convenience of reference only and shall not constitute part of this Agreement for any other purpose.

SECTION 16. <u>Notices.</u>

All notices, requests, and demands to or upon the respective parties hereto shall be given in accordance with the Credit Agreement.

SECTION 17. <u>GOVERNING LAW.</u>

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

SECTION 18. <u>Acknowledgements.</u>

Mr. Wood hereby acknowledges that:

(a) he has carefully read and fully understood all of the terms and conditions of this Agreement and is fully aware of their legal effect;

(b) he has consulted with and has been advised by fully competent counsel of his choosing in the negotiation, preparation, execution and delivery of this Agreement and has had the contents of the Agreement fully explained by such counsel;

(c) he has participated in the drafting of this Agreement (which has been prepared through the joint efforts of all parties hereto) and that no provision of, nor any alleged ambiguity in, this Agreement shall be construed against or interpreted or resolved against or to the disadvantage of any party hereto by any court or other governmental or judicial authority by reason of, or on the ground that, any party hereto or its counsel having or being deemed to have structured, dictated or drafted such provision or based on any other rule of strict construction;

(d) he is freely, voluntarily, knowingly and intelligently entering into this Agreement;

(e) none of the Lenders or the Administrative Agent has a fiduciary relationship to Mr. Wood, and the relationship between the Administrative Agent and the Lenders, on the one hand, and Mr. Wood, on the other, is solely that of creditor and debtor; and

(f) no joint venture exists among Mr. Wood, the Administrative Agent and the Lenders.

11

**SECTION 19. Assignments; No Third Party Beneficiaries.**

This Agreement shall be binding upon and inure to the benefit of the Lenders, the Administrative Agent, Mr. Wood, and each of their respective successors and assigns, and, with respect to Section 6(f) and this Section 19 only, the Borrower and the Corporate Guarantors; *provided* that Mr. Wood shall not be entitled to delegate any of his duties hereunder and shall not assign any of his rights or remedies set forth in this Agreement without the prior written consent of the Administrative Agent in its sole and absolute discretion (and any attempted assignment or delegation without such consent shall be null and void). No Person other than the parties hereto and each of their respective permitted successors and assigns, shall have any rights hereunder or be entitled to rely on this Agreement and all third-party beneficiary rights are hereby expressly disclaimed. Without limiting the generality of the foregoing, other than with respect to Section 6(f) and this Section 19, the Borrower and the Corporate Guarantors shall have no rights to enforce this Agreement.

**SECTION 20. Amendments.**

No provision of this Agreement may be amended, modified, waived or supplemented, except as provided in Section 8.2 of the Owner Guaranty.

**SECTION 21. Final Agreement.**

This Agreement, the Owner Guaranty, the Owner Mortgage, the other Loan Documents, and the other written agreements, instruments, and documents entered into in connection herewith and therewith (collectively, the "**Credit Support Documents**") set forth in full the terms of agreement between the parties hereto and thereto and are intended as the full, complete, and exclusive contracts governing the relationship between such parties, superseding all other discussions, promises, representations, warranties, agreements, undertakings and understandings between the parties with respect thereto, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. No term of the Credit Support Documents may be amended, restated, waived or otherwise modified except in a writing signed by the party against whom enforcement of the modification, amendment, or waiver is sought, unless otherwise provided in the applicable Credit Support Documents. Any waiver of any condition in or breach of any of the foregoing in a particular instance shall not operate as a waiver of other or subsequent conditions or breaches of the same or a different kind. The Lenders' and/or the Administrative Agent's exercise or failure to exercise any rights or remedies under any of the foregoing in a particular instance shall not operate as a waiver of its right to exercise the same or different rights, remedies, powers and privileges in any other instances. There are no unwritten oral agreements between or among the parties hereto.

[Signature pages to follow]

SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

SCOTT Y. WOOD, in his individual capacity

By: _____

SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT

CLMG CORP., as Administrative Agent

By: _____
Name: James Erwin
Title: President

LNV CORPORATION, as Lender

By: _____
Name: Jacob Cherner
Title: Executive Vice President

15

Americas 90546546 (2K)

SIGNATURE PAGE TO RESTRUCTURING SUPPORT AGREEMENT

*ACKNOWLEDGED, AND,*
*FOR THE LIMITED PURPOSE OF SECTION 6(f) AND SECTION 19 ONLY, AGREED:*

ERG RESOURCES, L.L.C., a Corporate Guarantor

By: _____
Name: Scott Y. Wood
Title:

WEST CAT CANYON, L.L.C, a Corporate Guarantor

By: _____
Name: Scott Y. Wood
Title:

ERG INTERMEDIATE HOLDINGS, LLC, a Corporate Guarantor

By: _____
Name: Scott Y. Wood
Title:

ERG INTERESTS, LLC, a Corporate Guarantor

By: _____
Name: Scott Y. Wood
Title:

ERG OPERATING COMPANY, LLC, a Corporate Guarantor

By: _____
Name: Scott Y. Wood
Title:

15

Americas 90546546 (2K)