Charles A. Beckham, Jr.
State Bar No. 02016600
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 2100
Houston TX 77010
Telephone No.: 713-547-2000
Facsimile No.: 713-547-2600
Email: charles.beckham@haynesboone.com

And

Jarom J. Yates
State Bar No. 24071134
**HAYNES AND BOONE, LLP**
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone No.: 214-651-5139
Facsimile No.: 214-200-0784
Email: jarom.yates@haynesboone.com

**ATTORNEYS FOR CTS PROPERTIES, LTD.**

Allen R. Tomlinson
Florida Bar No. 311197 (*Pro hac* pending)
**JONES, FOSTER, JOHNSTON & STUBBS, P.A.**
505 South Flagler Drive, Suite 1100 (33401)
P.O. Box 3475
West Palm Beach, FL 33402-3475
Telephone: (561) 659-3000
Facsimile: (561) 650-5300
Email: atomlinson@jonesfoster.com

**ATTORNEY FOR CTS PROPERTIES, LTD.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.,*[1] | § | Jointly Administration Pending |
| | § | |
| Debtors. | § | Case No.: 15-31858 |

---

### CTS PROPERTIES, LTD'S RESPONSE IN OPPOSITION TO EMERGENCY MOTION OF J-5 EQUESTRIAN LLC FOR AN ORDER: (I) ENFORCING THE AUTOMATIC STAY UNTIL ADJUDICATION OF THE OWNERSHIP DISPUTE PURSUANT TO SECTION 11 U.S.C. § 362; AND (II) DECLARING THAT CERTAIN HORSES ARE NOT PROPERTY OF THE DEBTORS' ESTATES PURSUANT TO 11 U.S.C. § 541

CTS Properties, Ltd. ("CTS") hereby responds (the "Response") in opposition to the

Emergency Motion of J-5 Equestrian LLC ("J-5") (ECF 89) (the "Motion")[2] as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

## I. PRELIMINARY STATEMENT

1.      There is no "automatic stay" to be enforced because: (a) neither of the jointly administered Debtors is a Defendant in the State Court Case and (b) nobody, including J-5, contends that either of the Horses that are the subject of the State Court Case are property of a Debtor's estate under 11 U.S.C. § 541.

2.      Further, the law in the Fifth Circuit is clear:  the automatic stay only extends to non-debtors in very limited circumstances when there is such an identity between the debtor and a non-debtor that the action against the non-debtor is essentially an action against the debtor.  J-5 has failed to allege any facts sufficient to show that there is such an identity of interests between any of the parties in the State Court Case and the Debtors.

3.      J-5 seeks a declaration by this Court that the Horses are not property of a Debtor's estate.  However, such a declaration would require an adversary proceeding under Bankruptcy Rule 9001(9) and 28 U.S.C. § 2001, *et seq.*, not a motion, so that aspect of J-5's Motion fails on procedural grounds alone.  Substantively, since no interested party, including J-5, contends that the Horses are property of the estate, there is nothing for the Court to declare, and without a bona fide "actual controversy" on whether the Horses are property of the estate there can be no claim for declaratory relief.

## II. FACTUAL AND PROCEDURAL BACKGROUND RELEVANT TO THIS MOTION IN OPPOSITION

4.      For the sake of simplicity in this Response, the background facts at the core of CTS's claims in the State Court Case are summarized as follows.

---

[2] The case styled *CTS Properties, Ltd. v. Andrew T. Lott, D.V.M., et al.*, Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida, Case No. 502015CA003842XXXXMB that J-5 seeks to stay is referred to herein as the "State Court Case."

**Bankruptcy History**

5.      The Debtors filed their bankruptcy cases on May 1, 2015 (the "Petition Date").

6.      Scott Y. Wood ("Mr. Wood") is the ultimate owner, through two (2) affiliates, of one-hundred percent (100%) of the membership units of Debtor, ERG Intermediate Holdings, L.L.C.  Mr. Wood is also the owner of CTS.  CTS is not a debtor in this Bankruptcy Case.

7.      On May 15, 2015, J-5 filed the Motion.

8.      A hearing on the Motion is currently set for Friday, May 22, 2015 at 10:30 a.m.

9.      On May 20, 2015, the *Joinder by Creditor Andrew T. Lott, D.V.M. to Emergency Motion of J-5 Equestrian, LLC for an Order Enforcing Stay and for Declaration* (the "Joinder") [Docket No. 130] was filed.

**State Court Case Factual Background**

10.      CTS entered into a contract with J-5 to sell two polo pony horses, Julieta and Carta Blanca (the "Horses") for $175,000 for one horse, and $300,000 for both Horses to J-5, with CTS to receive two embryos from each horse sold, subject to J-5's trial inspection of the Horses.  The Horses were delivered by CTS to J-5 for that purpose.

11.      While the Horses were entrusted to J-5 for the inspection, rather than completing their purchase from CTS or returning the Horses, J-5 and/or one of its principals, Robert Jornayvaz, III ("Mr. Jornayvaz"), participated in an improper lien auction sale conducted by another defendant in the State Court Case, Andrew T. Lott, D. V. M. ("Dr. Lott").  Dr. Lott was purportedly enforcing a veterinarian's lien under Florida Statute § 713.655.  J-5 claims to have purchased the Horses from Dr. Lott for approximately $50,000 at the auction and has refused to return the Horses to CTS despite CTS's demand.

**State Court Procedural History**

12.　　A copy of CTS's Complaint in the State Court Case is attached as **Exhibit "1."** A copy of the Affidavit of Martin S. Munoz filed to support CTS's claim for "Replevin" in the Complaint is attached as **Exhibit "2."**

13.　　Following a contested hearing, the State Court entered an Order to Show Cause on CTS's Claim for Replevin, setting a hearing for June 19, 2015, a copy of which is attached as **Exhibit "3."**

## III. ARGUMENT AND AUTHORITIES

### A.　There is No Automatic Stay to Enforce as J-5 Requests, and No Basis for Extending the Stay

14.　　There is no automatic stay in effect as to the State Court Case. It is axiomatic that the automatic stay of 11 U.S.C, § 362 applies to acts against "the debtor" or "the debtor's property." CTS is not a Debtor. J-5 and Dr. Lott both concede that the Horses are not property of Debtors' estates under 11 U.S.C § 541. Nothing in the record indicates that any interested party contends otherwise. Since neither J-5 nor any other interested party has presented facts indicating that the Horses are even "arguably" property of the estate, J-5's reliance on *Brown v. Chesnut* (*In re Chesnut*), 422 F.3d 298, 303–304 (4th Cir. 2005) is misplaced.

15.　　All of the authorities cited by J-5 and Dr. Lott agree that the automatic stay does not extend to non-debtor parties like subsidiaries, guarantors, or others absent extraordinary circumstances. Further, the Fifth Circuit of Appeals has been very clear that the automatic stay does not extend to non-debtors except in rare cases when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *See Reliant Energy Servs., Inc. v. Enron Corp.* 349 F.3d 816, 825 (5th Cir.

2003) (citing indemnity provisions owed by the debtor to a third-party in a situation in which an identity may be found to exist) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *Arnold v. Garlock, Inc.* 278 F.3d 426, 436 (5th Cir. 2001) (recognizing the exception articulated in *A.H. Robins Co.* but declining to extend it when there was no suggestion that such a relationship or unitary identity existed). Despite these clear enunciations by the Fifth Circuit Court of Appeals, neither J-5 nor Dr. Lott has provided any facts establishing such an identity between any of the Debtors and CTS or any other party in the State Court Case.

16. Further, even if extraordinary circumstances existed that could establish the requisite identity of interests between CTS and one or more of the Debtors sufficient to permit the extension of the automatic stay to the State Court Case, the automatic stay would not stay the State Court Case because CTS is not a defendant in the State Court Case. The automatic stay only stays actions brought against a debtor, not actions in which a debtor is acting as a plaintiff. *See U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 39 F.3d 563 (5th Cir. La. 1994) (holding that "[t]he automatic stay of the Bankruptcy Code extends only to actions 'against the debtor' and does not stay 'a debtor's offensive claims'"); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991) ("actions against a debtor will be suspended [by the automatic stay] even though closely related claims asserted *by* the debtor may continue") (emphasis in original). J-5 has not suggested that it, nor J-5's co-defendants Dr. Lott or Mr. Jornayvaz, have such an identity of interests with any of the Debtors that a suit against them is a suit against the Debtor. Therefore, the State Court correctly decided that the State Court Case is not stayed by the automatic stay and this Court should deny J-5's Motion.

**B. J-5's Request for Declaratory Relief**

17.     J-5's Motion fails on procedural grounds as well since a declaration of ownership of the Horses by this Court would require an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(9) and the Declaratory Judgment Act 28 U.S.C. 2201-2202, not a Motion. *See Fourth Branch Assocs. v. Mohawk Paper Mill*s (*In re Kings Falls Power Cor*p.), 185 B.R. 431, 435 (Bankr. N.D.N.Y. 1995) and *In re DBSI, Inc.*, 432 B.R. 126, 133-34 (Bankr. D. Del. 2010).

18.     Further, an actual controversy on the issue is required for declaratory relief. 28 U.S.C. § 2201(a). *Tilley Lamp Co. v. Thacker*, 454 F.2d 805, 807 (Fla. 5th Cir. 1972); *U.S. Dep't of Treasury v. Official Comm. Of Unsecured Creditors of Motors Liquidation Co.,* 475 B.R. 347, 356-357 (S.D.N.Y. 2012).  Here, no such controversy exists because no-one, including J-5, is claiming or has claimed that the Horses are property of a Debtor's estate.

**C. J-5's Goal is to Delay the State Court Case Because Its Prospects Are Poor**

19.     If J-5 were confident in its ownership of the Horses, and the lack of merit in CTS's claims, J-5 would embrace the opportunity to present evidence and legal argument at the June 19, 2015 Show Cause hearing. Instead, having failed to convince the State Court that this bankruptcy should stop the Show Cause hearing from going forward (see the Order attached to J-5 Motion as Exhibit F), J-5 has now moved its efforts to this Court.

20.     CTS is reluctant to address the issues of state law here because those issues are not involved in these bankruptcy cases and the State Court is the appropriate forum for their adjudication. Nonetheless, since J-5 has mischaracterized the applicable state law and effect of the authorities it cites, CTS offers the following, although it is not a comprehensive refutation of J-5's position using all of the factual and legal arguments possessed by CTS.

21. CTS owns the Horses. Their purported sale by Dr. Lott to J-5 was invalid. Putting aside the invalidity of Dr. Lott's lien on its face, Florida Statute § 85.031(2), cited by J-5, authorizes lien enforcement by non-judicial sale in matters relating to possessory liens by mechanics and others (hence the recitation in the statute "…if the article is completed and not taken away . . ."), and also authorizes non-judicial sales of those enforcing livery and similar liens under Florida Statute § 713.65. As stated on the face of Dr. Lott's lien (attached as Exhibit D to J-5's Motion), the lien was assertion of a veterinarian's lien under Florida Statute § 713.655. Thus, it did not fall within the limited exceptions carved out in Florida Statute § 85.031(2) for lien enforcement without a judicial proceeding. Dr. Lott's alleged lien had to be enforced, if at all, by a judicial foreclosure like other personal property liens in Florida, and it was not.

22. If Dr. Lott's lien auction sale was invalid, as CTS contends, and as the State Court will likely consider at the June 19, 2015 Show Cause hearing, all of J-5 recitations that it is a "good faith purchaser" of the Horses (e.g., the Motion, p. 2, ¶ 2), that J-5 has "good title" (e.g., the Motion, p. 2, ¶ 8 and p. 7, ¶ 20), and that Dr. Lott's auction sale cannot be unwound (the Motion p. 6, ¶ 19) will fail.

17. The case of *Boyd v. Pan. City Boat Yard*, 522 So. 2d 1058 (Fla. Dist. Ct. App. 1988) which in turn cites to *Lake v. Irrang*, 391 So. 2d (Fla. Dist. Ct. App. 1980) does not support J-5's position. Dr. Lott's auction sale was not lawful. Therefore, J-5 is not entitled to the protection of a bona fide purchaser which might otherwise apply.[3]

---

[3] Interestingly, *Boyd* holds that claims arising in breach of contract and bailment, like those made by CTS in its complaint in addition to its claim for Replevin, are not cut off by a proper lien sale (*Boyd* at 1060) so they certainly are not cut off by an improper sale.

18.     The foregoing are all issues of application of Florida state law on enforcement of statutory liens. The present posture of these bankruptcy cases provides no justification for this Court undertaking their resolution, particularly given the existing State Court Case, an imminent Show Cause hearing, and the obvious appropriateness of the state Court as a forum for adjudicating the competing positions of CTS and J-5. Thus, even if J-5 proceeded in a proper manner, this Court should likely abstain.

WHEREFORE, CTS requests that J-5's procedurally and substantively unsupported Motion should be denied.

Dated:  May 21, 2015.

**HAYNES AND BOONE, LLP**

By: */s/ Jarom J. Yates*

Charles A. Beckham, Jr.
State Bar No. 02016600
1221 McKinney, Suite 2100
Houston TX  77010
Telephone No.:  713-547-2000
Facsimile No.:  713-547-2600
Email: charles.beckham@haynesboone.com

and

Jarom J. Yates
State Bar No. 24071134
2323 Victory Avenue, Suite 700
Dallas, TX  75219
Telephone No.:  214-651-5139
Facsimile No.:  214-200-0784
Email:  jarom.yates@haynesboone.com

and

Allen R. Tomlinson
Florida Bar No. 311197 (*Pro hac* pending)
Jones, Foster, Johnston & Stubbs, P.A.
505 South Flagler Drive, Suite 1100 (33401)
P.O. Box 3475
West Palm Beach, FL 33402-3475
Telephone:  (561) 659-3000
Facsimile: (561) 650-5300
Email: atomlinson@jonesfoster.com

**Attorneys for CTS Properties, Ltd.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 21, 2015 a true and correct copy of the foregoing document was served (i) via email (where indicated) or facsimile upon all parties on the attached Service List, and (ii) via email upon the parties who receive electronic notices in these cases pursuant to the Court's Electronic Filing System.


By:  */s/ Jarom J. Yates*  
      Jarom J. Yates

In re: ERG Intermediate Holdings, L.L.C., et al. - Service List Dated May 18, 2015

JONES DAY
717 TEXAS AVENUE, SUITE 3300
ATTN: TOM A. HOWLEY
HOUSTON, TX 77002
EMAIL: TAHOWLEY@JONESDAY.COM
(COUNSEL TO DEBTORS)

JONES DAY
77 WEST WACKER
ATTN: BRAD B. ERENS & JOSEPH A. FLORCZAK
CHICAGO, IL 60601
EMAIL: BBERENS@JONESDAY.COM;
JFLORCZAK@JONESDAY.COM
(COUNSEL TO DEBTORS)

WHITE AND CASE, LLP
ATTN: ROBERTO KAMPFNER & CRAIG H. AVERCH
633 WEST FIFTH STREET, SUITE 1900
LOS ANGELES, CA 90071-2007
FAX: 213-452-2329
EMAIL: RKAMPFNER@WHITECASE.COM
(COUNSEL TO CLMG CORP., ADMINISTRATIVE AGENT)

WHITE AND CASE, LLP
ATTN: THOMAS E LAURIA
SOUTHEAST FINANCIAL CENTER
200 SOUTH BISCAYNE BLVD, SUITE 4900
MIAMI, FL 33131-2352
FAX: 305-358-5744
EMAIL: TLAURIA@WHITECASE.COM
(COUNSEL TO CLMG CORP., ADMINISTRATIVE AGENT)

OFFICE OF THE U. S. TRUSTEE
ATTN: WILLIAM T. NEARY, US TRUSTEE
1100 COMMERCE STREET, ROOM 976
DALLAS, TX 75242
FAX: 214-767-8971
EMAIL: USTP.REGION06@USDOJ.GOV
(U.S. TRUSTEE)

PACHULSKI STANG ZIEHL & JONES LLP
10100 SANTA MONICA BLVD, 11TH FLOOR
ATTN: JEFFERY N. POMERANTZ & SHIRLEY S. CHO
LOS ANGELES, CA 90067-4100
FAX: 310-201-0760
EMAIL:
JPOMERANTZ@PSZJLAW.COM;SCHO@PSZJLAW.COM
(COUNSEL TO COMMITTEE OF UNSECURED CREDITORS)

PACHULSKI STANG ZIEHL & JONES LLP
780 THIRD AVENUE, 34TH FLOOR
ATTN: ROBERT J. FEINSTEIN & MARIA A. BOVE
NEW YORK, NY 10017
FAX: 212-561-7777
EMAIL:
RFEINSTEIN@PSZJLAW.COM;MBOVE@PSZJLAW.COM
(COUNSEL TO COMMITTEE OF UNSECURED CREDITORS)

SEARCY & SEARCY P.C.
446 FOREST SQUARE, P.O. BOX 3929
ATTN: JASON R. SEARCY
LONGVIEW, TX 75606
FAX: 903-757-9559
EMAIL: JSEARCY@JRSEARCYLAW.COM
(COUNSEL TO COMMITTEE OF UNSECURED CREDITORS)

BAKER PETROLITE CORPORATION
C/O CHRISTOPHER J. RYAN
2929 ALLEN PARKWAY, SUITE 2100
HOUSTON, TX 77019
EMAIL: CHRIS.RYAN@BAKERHUGHES.COM
(OFFICIAL COMMITTEE OF UNSECURED CREDITORS)

CYNTHIA GARCIA
1901 TRUXTUN AVENUE
BAKERSFIELD, CA 93301
EMAIL: SNICHOLS@YOUNGNICHOLS.COM
(OFFICIAL COMMITTEE OF UNSECURED CREDITORS)

In re: ERG Intermediate Holdings, L.L.C., et al. - Service List Dated May 18, 2015

MMI SERVICES, INC.
C/O STEVE MCGOWAN
4042 PATTON WAY
BAKERSFIELD, CA 93308-5030
EMAIL: STEVE@MMI-SERVICES.COM
(OFFICIAL COMMITTEE OF UNSECURED CREDITORS)

PACIFIC PETROLEUM CALIFORNIA, INC.
C/O JOHN HOCHLEUTNER
1615 E. BETTERAVIA ROAD
SANTA MARIA, CA 93454
EMAIL: JOHNSUMMER@PPCINC.BIZ
(OFFICIAL COMMITTEE OF UNSECURED CREDITORS)

SCS ENGINEERS
C/O RICHARD S. BEDELL
11260 ROGER BACON DRIVE, SUITE 300
RESTON, VA 20190
EMAIL: RBEDELL@SCSENGINEERS.COM
(OFFICIAL COMMITTEE OF UNSECURED CREDITORS)

CENTRAL COAST PIPING PRODUCTS
801 MAULHARDT AVENUE
OXNARD, CA 93030
FAX: 805-485-7881
EMAIL: KEVIN@JUSTPIPE.COM
(TOP 20)

CHEVRON U.S.A., INC.
ATTN: DAVID SINGER, ASST SECRETARY
1400 SMITH STREET
HOUSTON, TX 77002
FAX: 866-741-5436
(TOP 20)

CHEVRON U.S.A., INC.
ATTN: REBECCA TRUJILLO
9525 CAMINO MEDIA
BAKERSFIELD, CA 93311
FAX: 805-546-6900
EMAIL: RTRU@CHEVRON.COM
(TOP 20)

CHEVRON U.S.A., INC.
GENERAL COUNSEL'S OFFICE
ATTN: BANKRUPCTY MATTERS
6001 BOLLINGER CYN ROAD, BLDG T
SAN RAMON, CA 94583
FAX: 925-842-2846
EMAIL: ARMS@CHEVRON.COM
(TOP 20)

CONSTRUCTION SPECIALTY SERVICE, INC.
4550 BUCK OWENS BLVD
BAKERSFIED, CA 93308
FAX: 661-663-7077
EMAIL: SFENTON@CSSINCORP.BIZ
(TOP 20)

DLA PIPER LLP (US)
1000 LOUISIANA STREET, SUITE 2800
HOUSTON, TX 77002-5005
FAX: 713-300-6045
EMAIL: JACK.LANGLOIS@DLAPIPER.COM
(TOP 20)

DOWDEN ELECTRICAL SERVICE
ATTN: TIA DOWDEN
509 HILLTOP COURT
TAFT, CA 932608
EMAIL: DOWDENELECTRICAL@GMAIL.COM
(TOP 20)

In re: ERG Intermediate Holdings, L.L.C., et al. - Service List Dated May 18, 2015

DRILTEK INC
ATTN: SUSAN BAILEY
901 TOWER WAY, SUITE 102
BAKERSFIELD, CA 93309
FAX: 661-327-4150
EMAIL: SUSAN.BAILEY@DRILTEK.COM
(TOP 20)

ELECTRICAL SOLUTIONS CORP
2368 EASTMAN AVENUE
SUITE 13
VENUTRA, CA 93003
FAX: 805-658-0868
EMAIL: ESC@ESCVENTURA.COM
(TOP 20)

ENGEL & GRAY INC
745 WEST BETTERAVIA ROAD
P.O. BOX 5020
SANTA MARIA, CA 93456-5020
FAX: 805-925-8023
EMAIL: SALES@ENGELANDGRAY.COM
(TOP 20)

HOLLISTER & BRACE, PC
ATTORNEYS AT LAW
1126 SANTA BARBARA STREET
SANTA BARBARA, CA 93102
FAX: 805-688-3587 / 805-965-0329
EMAIL: HBLAW@HBSB.COM
(TOP 20)

M M I SERVICES, INC.
ATTN: ROXANNE CAMPBELL
4042 PATTON WAY
BAKERSFIELD, CA 93308-5030
FAX: 661-589-2080
EMAIL: RCAMPBELL@MMI-SERVICES.COM
(TOP 20)

MACQUARIE GROUP
ATTN: GENERAL COUNSEL
125 WEST 55TH STREET
NEW YORK, NY 10019
FAX: 312-756-3810
EMAIL: MICK.SOLIMENE@MACQUARIE.COM
(TOP 20)

P C MECHANICAL INC
2803 INDUSTRIAL PARKWAY
SANTA MARIA, CA 93455
FAX: 805-925-6168
EMAIL: LPARKER@PCMECHANICAL.COM
(TOP 20)

PACIFIC GAS & ELECTRIC
C/O BANKRUPTCY DEPARTMENT
8110 LORRAINE AVENUE
STOCKTON, CA 95210
FAX: 1-415-973-8719
(TOP 20)

PACIFIC PETROLEUM CALIFORNIA, INC.
1615 E. BETTERAVIA ROAD
SANTA MARIA, CA 93454
FAX: 805-925-0884
EMAIL: INFO@PPCINC.BIZ
(TOP 20)

PAT PHELAN CONSTRUCTION
235 PHELAN RANCH WAY
ARROYO GRANDE, CA 93420
FAX: 805-473-5918
EMAIL: PATPHELANCONSTRUCTION@YAHOO.COM;
PATSY@PHELANINC.COM
(TOP 20)

In re: ERG Intermediate Holdings, L.L.C., et al. - Service List Dated May 18, 2015

QUINN PUMPS CA, INC
ATTN: AMANDA NEIGUM
300A ROCKLITE RD.
VENTURA, CA 93001
FAX: 432-687-2997
EMAIL: ANEIGUM@QUINNPUMPS.COM
(TOP 20)

SCS ENGINEERS
3900 KILROY AIRPORT WAY
SUITE 100
LONG BEACH, CA 90806
FAX: 760-744-8616
EMAIL: SERVICE@SCSENGINEERS.COM
(TOP 20)

SIMPSON THACHER & BARTLETT LLP
2 HOUSTON CENTER - SUITE 1475
909 FANNIN STREET
HOUSTON, TX 77010
FAX: 1-713-821-5602
EMAIL: RRABALAIS@STBLAW.COM
(TOP 20)

SPEED'S OIL TOOL SERVICE INC
ATTN: CHERYL WETTA
1573 E. BETTERAVIA ROAD
SANTA MARIA, CA 93456
FAX: 805 925-3274
EMAIL: CHERYL@SPEEDSOIL.COM
(TOP 20)

WEST COAST WELDING & CONSTR. INC.
ATTN: KASSANDRA ARAMBUOA
2201 CELSIUS AVE. STE. B
OXNARD, CA 93030-5183
FAX: 805-604-1566
EMAIL: KASSANDRA@WESTCOASTWELDING.NET
(TOP 20)

GERALD M. LEVERETT, ESQ.
(COUNSEL TO MMI SERVICES, INC.)
1830 TRUXTUN AVENUE SUITE 212
BAKERSFIELD, CA 93301
FAX: 661-324-4960
EMAIL: GLEVERETT@GERALDLEVERETT.COM
(NOTICE OF APPEARANCE)

HAYNES AND BOONE, LLP
1221 MCKINNEY, SUITE 2100
ATTN: CHARLES A. BECKHAM, JR.
(COUNSEL TO SCOTT Y. WOOD)
HOUSTON, TX 77010
FAX: 713-547-2600
EMAIL: CHARLES.BECKHAM@HAYNESBOONE.COM
(NOTICE OF APPEARANCE)

HAYNES AND BOONE, LLP
2323 VICTORY AVENUE, SUITE 700
ATTN: JAROM YATES
(COUNSEL TO SCOTT Y. WOOD)
DALLAS, TX 75219
FAX: 214-200-0784
EMAIL: JAROM.YATES@HAYNESBOONE.COM
(NOTICE OF APPEARANCE)

KING & SPALDING LLP
1100 LOUISIANA, SUITE 4000
ATTN: EDWARD L. RIPLEY, MARK W. WEGE
ERIC M. ENGLISH
(COUNSEL TO CHEVRON U.S.A., INC. AND UNION OIL
COMPANY OF CALIFORNIA)
HOUSTON, TEXAS 77002
FAX: 713-751-3290
EMAIL: ERIPLEY@KSLAW.COM; MWEGE@KSLAW.COM;
EENGLISH@KSLAW.COM
(NOTICE OF APPEARANCE)

LAW OFFICES OF JUDITH W. ROSS
700 N. PEARL STREET, SUITE 1610
ATTN: NEIL J. ORLEANS
(COUNSEL TO M-I, LLC)
DALLAS, TX 75201
FAX: 214-377-9409
EMAIL: NEIL.ORLEANS@JUDITHWROSS.COM
(NOTICE OF APPEARANCE)

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO.  502015CA003842XXXXMB AF

CTS PROPERTIES, LTD.,
a Texas Limited Partnership,

        Plaintiff,

v.

ANDREW T. LOTT, D.V.M.;
ROBERT P. JORNAYVAZ, III;
and J-5 EQUESTRIAN LLC,
a Colorado limited liability company,

        Defendants.

_____/

**EXHIBIT 1**

## COMPLAINT

    Plaintiff, CTS Properties, Ltd., sues defendants, Andrew T. Lott, D.V.M., Robert P. Jornayvaz, III, and J-5 Equestrian LLC, and alleges:

### General Allegations

    1.     This is an action for equitable relief and damages in excess of $15,000.

    2.     Plaintiff, CTS Properties, Ltd. ("CTS") is a limited partnership organized under the laws of Texas.

    3.     CTS owns two thoroughbred mare horses named and referred to herein as "Carta Blanca" and "Julieta" (collectively referred to as the "Horses").

    4.     CTS has owned Carta Blanca continuously since November 23, 2004.

    5.     CTS has owned Julieta continuously since April 1, 2014.

    6.     The Horses were bred, trained and intended to be polo ponies.

7. Defendant, Andrew T. Lott, D.V.M. ("Lott"), is a doctor of veterinary medicine.

8. Lott is an equine veterinarian rendering treatment and services to horses.

9. Lott resides in Palm Beach County, Florida.

10. Lott conducts business in Palm Beach County, Florida.

11. Defendant, Robert P. Jornayvaz, III ("Jornayvaz"), is an individual who owns real property and resides part time in Florida.

12. Defendant, J-5 Equestrian LLC ("J-5"), is a limited liability company organized and existing pursuant to the laws of Colorado.

13. Jornayvaz is a member and manager of J-5.

14. J-5 is controlled by Jornayvaz.

15. Jornayvaz owns and operates a polo team known as "Valiente Polo."

16. In January 2015, Jornayvaz, through his agents and representatives, expressed interest in purchasing the Horses from CTS.

17. The Horses were offered for sale to Jornayvaz at a price of $175,000 for either Carta Blanca or Julieta, or $300,000 for both Horses, with CTS to receive two embryos from each horse sold.

18. Subsequent to Jornayvaz seeking to purchase the Horses from CTS, and subsequent to CTS offering to sell the Horses to Jornayvaz on the terms above, Jornayvaz, his agents or employees, requested to take possession of the Horses on a trial basis to assess their suitability for his polo team.

19. On or about February 19, 2015, physical possession of the Horses was transferred from CTS, in Texas, to Jornayvaz on a trial basis.

2

20.     Transfer of possession of the Horses was a bailment for the benefit of Jornayvaz.

21.     During the bailment and trial of the Horses, Jornayvaz transported the Horses to Florida and stabled and maintained them on real property owned and/or controlled by Jornayvaz in Palm Beach County, Florida.

22.     Subsequent to receiving the Horses on a trial basis, Jornayvaz, through his representatives, accepted the offer to purchase the Horses for $300,000, with CTS receiving two embryos from each horse, but failed to pay the purchase price or provide embryos.

23.     On or about February 23, 2015, Lott executed a Claim of Lien on the Horses.

24.     On or about March 4, 2015, Lott executed another Claim of Lien and filed it in the Official Records of Palm Beach County.

25.     Lott's Claims of Lien were based on disputed charges by Lott to a non-party to this action.

26.     Neither CTS, nor any of its agents or representatives, were ever served with, provided, or notified of any Claim of Lien by Lott.

27.     Subsequent to Jornayvaz agreeing to purchase the Horses for $300,000, providing CTS two embryos from each of the Horses, Lott, Jornayvaz and J-5 conspired to privately and illegally auction the Horses.

28.     Lott, Jornayvaz and J-5 conspired to unlawfully auction the Horses by commission of unlawful acts or by the performance of lawful acts by unlawful means.

3

29.     Lott, Jornayvaz and J-5 committed overt acts in the conspiracy, including acts to privately and unlawfully auction and sell the Horses to Jornayvaz and/or J-5.

30.     Purposes of the conspiracy were for Lott to receive money to which he was not entitled and for Jornayvaz to acquire the Horses for less money than he agreed to pay to purchase them from CTS.

31.     Jornayvaz did not advise CTS of the planned auction of the Horses.

32.     Jornayvaz did not advise CTS of his intention to bid on the Horses at the planned auction.

33.     CTS had no knowledge of the planned auction of the Horses.

34.     In March 2015, without notice to or the knowledge of CTS, Lott purportedly auctioned and sold both Horses to Jornayvaz and/or J-5 for a total price of less than $50,000.

35.     The purported auction of the Horses occurred in Palm Beach County, Florida.

36.     The purported auction of the Horses occurred in Palm Beach County, Florida while the Horses were in Jornayvaz' possession in Palm Beach County pursuant to the bailment from CTS.

37.     Lott received money from Jornayvaz and/or J-5 in connection with the purported auction and sale of the Horses.

38.     Jornayvaz, individually or through J-5, paid over $250,000 less for the Horses than he contracted and agreed to pay CTS.

39.     J-5 purportedly purchased the Horses at the direction of and in concert with Jornayvaz.

4

40.    The purported auction and sale of the Horses to J-5, or to Jornayvaz utilizing J-5, was without legal authority.

41.    Lott had no authority to auction and sell the Horses.

42.    Jornayvaz and J-5 had no authority to buy the Horses at auction.

43.    Jornayvaz was not a bona fide or lawful purchaser of the Horses.

44.    J-5 was not a bona fide or lawful purchaser of the Horses.

45.    CTS was and continues to be the vested, lawful owner of the Horses.

46.    Subsequent to the purported sale of the Horses, CTS demanded the return of the Horses from Jornayvaz and J-5.

47.    Jornayvaz and J-5 have failed and refused to return the Horses to CTS, despite demand.

48.    Jornayvaz and J-5 have also continued to ride the Horses in polo matches, at the risk of damaging the Horses, despite CTS's demand that they not be ridden.

49.    CTS retained the undersigned counsel and agreed to pay reasonable attorneys' fees, plus court costs and litigation expenses.

50.    All conditions precedent to the maintenance of this action have occurred, been complied with, or been waived.

**COUNT I**

51.    CTS realleges paragraphs 1 through 50.

52.    This is an action for replevin of the Horses against Jornayvaz and J-5.

53.    CTS is the owner of the Horses.

54. The Horses are specifically identifiable property, each bearing CTS's brand.

55. The Horses have been and are wrongfully detained by Jornayvaz and J-5.

56. The Horses are detained by Jornayvaz and J-5 in Palm Beach County.

57. The Horses were not taken for a tax, assessment, or fine pursuant to law.

58. The Horses were not taken under an execution or attachment against property of CTS.

59. CTS has demanded return of the Horses and Jornayvaz and J-5 have refused to return them.

60. Jornayvaz and J-5 have also continued to ride the Horses in polo matches, at the risk of damaging the Horses, despite CTS's demand that they not be ridden.

61. CTS is entitled to immediate possession of the Horses.

WHEREFORE, CTS demands a judgment for replevin, ordering Jornayvaz and J-5 to deliver possession of the Horses to CTS or, alternatively, a temporary injunction prohibiting riding of the Horses pending determination of CTS's right to replevin, and such further relief deemed proper.

## COUNT II

62. CTS realleges paragraphs 1 through 50.

63. Jornayvaz, as bailee of the Horses from CTS, had a duty to use reasonable care to protect and safeguard CTS's property, i.e., the Horses.

64.     Jornayvaz, as bailee of the Horses from CTS, had a duty to use the same degree of care in protecting the possession and title of the Horses as an owner would exercise for his or her own property.

65.     Jornayvaz, as bailee of the Horses from CTS, had a duty to not commit or participate in the commission of any act in derogation of CTS's title or possessory rights to the Horses.

66.     Jornayvaz, as bailee of the Horses from CTS, had a duty to return the bailed property, i.e., Horses, upon demand by CTS, in substantially the same condition as at commencement of the bailment.

67.     Jornayvaz breached his duties under the bailment.

68.     CTS sustained damage as a result of Jornayvaz's breach of duties.

WHEREFORE, CTS demands judgment for damages against Jornayvaz, plus interest and costs, and such other relief deemed proper.

### COUNT III

69.     CTS realleges paragraphs 1 through 50.

70.     Jornayvaz failed to pay for the Horses and provide two embryos from each, constituting a breach of contract.

71.     CTS was damaged by Jornayvaz's breach of contract in the amount of the purchase price of the Horses, plus the value of two embryos from each horse.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against Jornayvaz, and such further relief deemed proper.

### COUNT IV

72.     CTS realleges paragraphs 1 through 50.

7

73. Lott, Jornayvaz and J-5 conspired to unlawfully auction and sell the Horses by commission of unlawful acts or by the performance of lawful acts by unlawful means.

74. Lott, Jornayvaz and J-5 committed overt acts in pursuance of the conspiracy including but not limited to the unlawful, private auction of the Horses.

75. CTS sustained damage as a result of the acts performed pursuant to the conspiracy between Lott, Jornayvaz and J-5.

WHEREFORE, CTS demands judgment for damages against Lott, Jornayvaz and J-5, plus interest and costs, and such other relief deemed proper.

## COUNT V

76. CTS realleges paragraphs 1 through 50.

77. Lott had no right to possession, custody or control of the Horses.

78. Lott had no right to purportedly auction and sell the Horses.

79. The auction and sale of the Horses constituted a trespass to CTS's property.

80. CTS sustained damage as a result of the trespass by Lott.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against Lott, and such further relief deemed proper.

## COUNT VI

81. CTS realleges paragraphs 1 through 50.

82. Jornayvaz had no right to permanent possession or custody or control of the Horses.

83. At all material times, Jornayvaz only had the right to temporarily possess the Horses on a trial basis pursuant to the bailment from CTS to Jornayvaz.

84. The purported purchase of the Horses by Jornayvaz and/or J-5 constituted a trespass to CTS's property.

85. The continued possession and use of the Horses by Jornayvaz is a continuing trespass to CTS's property.

86. CTS sustained damage as a result of the trespass by Jornayvaz.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against Jornayvaz, and such further relief deemed proper.

## COUNT VII

87. CTS realleges paragraphs 1 through 50.

88. J-5 has no right to possession or custody or control of the Horses.

89. J-5 is not the bona fide purchaser of the Horses.

90. The purported purchase of the Horses by J-5 constituted a trespass to CTS's property.

91. The continued possession and use of the Horses by J-5 is a continuing trespass to CTS's property.

92. CTS sustained damage as a result of the trespass by J-5.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against J-5, and such further relief deemed proper.

## COUNT VIII

93. CTS realleges paragraphs 1 through 50.

94. Lott converted the Horses to his own benefit and use.

95.     CTS was damaged by Lott's conversion of its property.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against Lott, and such further relief deemed proper.

### COUNT IX

96.     CTS realleges paragraphs 1 through 50.

97.     Jornayvaz converted the Horses to his own benefit and use.

98.     CTS was damaged by Jornayvaz's conversion of its property.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against Jornayvaz, and such further relief deemed proper.

### COUNT X

99.     CTS realleges paragraphs 1 through 50.

100.    J-5 converted the Horses to its benefit and use.

101.    CTS was damaged by J-5's conversion of its property.

WHEREFORE, CTS demands judgment for damages, plus interest and costs against J-5, and such further relief deemed proper.

### Demand for Trial by Jury

CTS demands a trial by jury on all issues so triable.

JONES, FOSTER, JOHNSTON & STUBBS, P.A.
Attorneys for Plaintiff
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
(561) 650-0404 [Telephone]
(561) 650-5300 [Facsimile]

By:___/s/Steven J. Rothman_____
Steven J. Rothman
Florida Bar No. 501591
Email: srothman@jonesfoster.com

p:\docs\25400\00002\pld\1lr1832.docx(ebg)

10

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO. 502015CA003842XXXXMB AF

CTS PROPERTIES, LTD.,
a Texas limited partnership,

        Plaintiff,

v.

ANDREW T. LOTT, D.V.M.;
ROBERT P. JORNAYVAZ, III;
and J-5 EQUESTRIAN LLC,
a Colorado limited liability company,

        Defendants.

_____/

**EXHIBIT 2**

## <u>AFFIDAVIT OF MARTIN S. MUNOZ</u>

Before me, the undersigned authority, personally appeared Martin S. Munoz, who attests as follows:

1.     I am over the age of eighteen (18) years and have personal knowledge of the matters in this affidavit.

2.     I am the Polo and Ranch General Manager of CTS Properties, Ltd. ("CTS"). I have worked for CTS in this capacity since April 2000.

3.     CTS owns a 300-acre ranch, with four polo fields and over 85 horse stables, in Brookshire, Texas. The ranch is known as the "Brookshire Polo Club."

4.     I am responsible for CTS's contracts with polo players, the selection of horses for its polo team, and the care of the horses owned and used by CTS.

5.     CTS purchased the American Thoroughbred mare named "Julieta" in April 2014 from Luis F. Escobar.

6. On April 1, 2014, Luis Escobar requested that the purchase proceeds be wire-transferred "for payment of the horse purchase Julieta." Attached as Exhibit A is a copy of Mr. Escobar's April 1, 2014 email.

7. On April 1 and 2, 2014, CTS wired transferred $150,000 to Luis Escobar, as requested, for the purchase of Julieta. Attached as Exhibit B are copies of the wire transfer documents.

8. After payment of the purchase proceeds, CTS took possession of Julieta and transported her to CTS's ranch in Texas.

9. On April 28, 2014, CTS's brand ("SW") was applied to Julieta. Attached as Exhibit C is a photograph of Julieta after she was branded, with a close-up of the brand inset at the bottom right corner.

10. Luis Escobar was aware that Julieta had been branded with CTS's brand, as he was working at CTS's ranch and had contact with Julieta after she was branded.

_____
Martin Munoz

STATE OF TEXAS )
) ss.
COUNTY OF FORT BEND )

The foregoing Affidavit was sworn to, subscribed, and acknowledged before me this 8th day of May, 2015, by Martin Munoz, who is personally known to me or produced Texas Driver Lic as identification.

_____
Notary Public

p:\docs\25400\00002\pld\1m40880.docx(mcb)

LYNDA L FAIRCHILD
My Commission Expires
April 4, 2019

2

# Exhibit A



**Wire information**

**Luis F Escobar** to you  show details ▾

Apr 1 2014

Martin please use the following account only for payment of the horse purchase Julieta.

BANCO INTERNACIONAL DE COSTA RICA MIAMI AGENCY
4000 PONCE DE LEON BLVD. SUITE 600
CORAL GABLES, FLORIDA 33146
Telephone # 305-374-0855, FAX 305-381-6971
SWIFT ES:  COSRUS3M
ABA 066011567
Acc. Number: ████8883
BENEFICIARIO: FRANCISCO ESCOBAR
Beneficiary address:

Hogares de Costa Rica, S.A | Construimos su hogar
Centro Corporativo Internacional, 2do piso, Paseo Colón, Barrio Don Bosco San José, Costa Rica
Tel:  (506) 22-58-56-60

ATT:  SRA. FELICIA LEON O LALY SCORCIA

Luis F Escobar

# Exhibit B



**PROSPERITY BANK®**

PO Drawer G
El Campo TX 77437

**Wire Transfer of Funds Notice**

**Outgoing Domestic Wire**

**Deposit Account Account**

XXXXXX8821

CTS PROPERTIES LTD
333 CLAY ST STE 4400
HOUSTON, TX 77002

| | |
|---|---|
| Processing Date: | 4/01/2014 |
| Time: | 3:34PM |

The Following Information Was Sent For: Regular Transfer of Funds

| Originator: | ID#: XXXXXXXXXXXXX8821 | Wire Amount: | $100,000.00 |
|---|---|---|---|
| | CTS PROPERTIES LTD | | |
| | 333 CLAY ST STE 4400 | | |
| | HOUSTON, TX 77002-0000 | | |

| Beneficiary: | ID#: XXXXXXXXXXXXX8883 | | |
|---|---|---|---|
| | FRANCISCO ESCOBAR | Wire Charged To: | XXXXXX8821 |
| | CENTRO CORP INTL 2DO PISO | | |
| | SAN JOSE | | |
| | COSTA RICA | | |

IMAD:       20140401QMGFT013002954

Additional Wire Information :

Reference: 20140401001042   Originator to Ben: REF HORSE JULIETA- 1/2  Receiving Bank: 0660-1156-7 BANCO
INTERNACIONAL DE COSTA RICA SA   Branch: 50

**Questions about this wire transfer?  Please contact your local Banking Center.**

1

Ref #:     1042


**PROSPERITY BANK**®

PO Drawer G
El Campo TX 77437

**Wire Transfer of Funds Notice**

**Outgoing Domestic Wire**

**Deposit Account Account**

**XXXXXX8821**

CTS PROPERTIES LTD
333 CLAY ST STE 4400
HOUSTON, TX 77002

| | |
|---|---|
| Processing Date: | 4/02/2014 |
| Time: | 4:24PM |

The Following Information Was Sent For: Regular Transfer of Funds

| Originator: | ID#: XXXXXXXXXXXXX8821 | | |
|---|---|---|---|
| | CTS PROPERTIES LTD | Wire Amount: | $50,000.00 |
| | 333 CLAY ST STE 4400 | Wire Fee: | $20.00 |
| | HOUSTON, TX 77002-0000 | Total: | $50,020.00 |

| Beneficiary: | ID#: XXXXXXXXXXXXX8883 | | |
|---|---|---|---|
| | FRANCISCO ESCOBAR | Wire Charged To: | XXXXXX8821 |
| | CENTRO CORP INTL 2DO PISO | Fees Charged To: | XXXXXX8821 |
| | SAN JOSE | | |
| | COSTA RICA | | |

IMAD: 20140402QMGFT014002467

Additional Wire Information :

Reference: 20140402000600  Originator to Ben: REFERNCE HORSE JULIETA  Receiving Bank: 0660-1156-7 BANCO INTERNACIONAL DE COSTA RICA SA  Branch: 50

**Questions about this wire transfer?  Please contact your local Banking Center.**

Ref #: 600

# Exhibit C



IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

CASE NO. 502015CA003842XXXXMB AF

CTS PROPERTIES, LTD.,
a Texas Limited Partnership,

        Plaintiff,

v.

ANDREW T. LOTT, D.V.M.;
ROBERT P. JORNAYVAZ, III;
and J-5 EQUESTRIAN LLC,
a Colorado limited liability company,

        Defendants.

_____/

**EXHIBIT**

**3**

## ORDER REQUIRING DEFENDANTS,
## ROBERT JORNAYVAZ, III AND J-5 EQUESTRIAN LLC,
## TO SHOW CAUSE WHY A WRIT OF REPLEVIN SHOULD NOT ISSUE

THIS CAUSE, having come before the Court on the Motion for Issuance of Order

to Show Cause Why a Writ of Replevin Should Not Issue of Plaintiff, CTS Properties,

Ltd. ("CTS"), and the Court having reviewed the motion and being advised, it is

ORDERED as follows:

A. A hearing is set on _June 19_, 2015 at _8:00_ (a.m.)/p.m.

(_2_ hours reserved) for Defendants, Robert P. Jornayvaz, III ("Jornayvaz") and J-5

Equestrian LLC ("J-5"), to show cause why a writ of replevin should not issue directing

them to return the two subject horses, known as "Carta Blanca" and "Julieta," to CTS.

B. This Order will be provided by the Court to counsel for Jornayvaz and J-5.

Counsel for CTS shall also provide counsel for Jornayvaz and J-5 with a copy of this

Order, upon receipt.

C.    Jornayvaz and J-5 have the right to file affidavits with the Court and appear personally or by way of counsel and present testimony at the hearing.

D.    Upon a finding by the Court pursuant to section 78.067(2), Florida Statutes, that CTS is entitled to possession of the claimed property (i.e., the horses Carta Blanca and Julieta) pending final adjudication of the claims of the parties, Jornayvaz and J-5 may file a written undertaking executed by a surety approved by the Court in an amount equal to the value of the property to stay an order authorizing delivery of the horses to CTS.

E.    If Jornayvaz and/or J-5 fail to appear, individually or by counsel, the defendants shall be deemed to have waived his or its right to a hearing and that in such case the court may order the clerk of the court to issue a writ of replevin.

ORDERED at West Palm Beach, Palm Beach County, Florida this 27th day of April, 2015.

_Edward L. Artau_

Edward Artau, Circuit Judge

Copies furnished to:

Steven J. Rothman, Esq., Jones, Foster, Johnston & Stubbs, P.A., Attorneys for Plaintiff, P.O. Box 3475, West Palm Beach, FL 33402-3475, srothman@jonesfoster.com

Alan M. Burger, Esq., McDonald Hopkins, Attorneys for Jornayvaz and J-5, 505 S. Flagler Drive, Suite 300, West Palm Beach, FL  33401, aburger@mcdonaldhopkins.com

Avery S. Chapman, Esq., Chapman Law Group, PLC, Attorneys for Lott, 12008 South Shores Blvd., Suite 107, Wellington, FL 33414, asc@chapmanlawgroup.net

p:\docs\25400\00002\pld\1ly5469.docx