Thomas E Lauria, State Bar No. 11998025
WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744
tlauria@whitecase.com

Craig H. Averch, State Bar No. 01451020
Roberto J. Kampfner (admitted *pro hac vice*)
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 620-7700
Facsimile:  (213) 452-2329
caverch@whitecase.com
rkampfner@whitecase.com

*Attorneys for CLMG Corp.*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | Jointly Administered |
| Debtors. | Case No. 15-31858-hdh-11 |

### CLMG CORP.'S OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRANSFER VENUE

CLMG Corp. ("**CLMG**"), in its capacities as the Prepetition Agent and the DIP

Agent,[2] hereby files this opposition to the *Motion of the Official Committee of Unsecured*

*Creditors to Transfer Venue* [D.I. 94] (the "**Motion**"), filed by the Official Committee of

---

[1]  The Debtors in these cases, along with the last four digits of their respective federal tax identification numbers, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385)

[2]  As used herein, the terms "**Prepetition Agent**" and "**DIP Agent**" shall mean, respectively, the "Pre-Petition Agent" and the "DIP Agent" as such terms are defined in the Debtors' *Motion for Entry of Interim and Final Orders Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (a) Authorizing the Debtors to (i) Use Cash Collateral of the Pre-Petition Secured Parties, (ii) Obtain Post-Petition Financing and (iii) Provide Adequate Protection to the Pre-Petition Secured Parties, (b) Prescribing Form and Manner of Notice of and Scheduling Final Hearing and (c) Granting Related Relief* [D.I. 15] (the "**DIP Motion**").

Unsecured Creditors (the "**Committee**") appointed in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**"), and respectfully states:

<u>**INTRODUCTION**</u>

It is well established in this Circuit that a debtor's choice of forum should not be disturbed absent extraordinary circumstances. No such circumstances exist here. The Debtors chose to commence the Chapter 11 Cases in this District—one of several proper venues—because this District is an efficient and cost effective venue. Indeed, this Court is ideally situated to preside over these Chapter 11 Cases. Not only is this Court close to the key parties that will ultimately determine the success of these cases, but it is readily accessible to parties located further away and has efficiently and successfully handled many similar cases.

The Motion should be denied for at least three primary reasons. First, this Court is located approximately 20 miles from the executive offices of CLMG and LNV Corporation ("**LNV**"). CLMG is the Prepetition Agent and the DIP Agent. LNV is the Prepetition Lender and the DIP Lender. The Prepetition Lender is owed approximately $400 million and has a lien in substantially all of the Debtors' assets. All other creditors of the Debtors are owed, at most, $20 million—a tiny fraction of what is owed to CLMG—and are largely unsecured.

LNV has also agreed to provide up to $17.5 million in DIP financing to the Debtors. Such financing is absolutely critical to the Chapter 11 Cases. Without it, the Debtors would be unable to operate, leaving unsecured creditors with no recoveries and the Debtors' employees without jobs. Further, if no suitable purchaser for the Debtors' California assets emerges from the sales process, LNV may also become the purchaser pursuant to a credit bid. And, recoveries to the Debtors' unsecured creditors will depend on negotiations between the Debtors, CLMG, LNV, and the Committee, all of which will likely occur over the phone or in Dallas. In short, CLMG and LNV will play critical roles in these cases and filing the Chapter 11 Cases in a proper

Americas 90586664

forum that is easily accessible to CLMG and LNV makes perfect sense, maximizes efficiency, and is unremarkable.

Second, this forum is not only convenient to CLMG and LNV; it is convenient for the Debtors as well. The Debtors' executive offices (and executive officers) are located in Houston, Texas, a mere hour by air from this Court. Attending hearings before this Court will not be burdensome to the Debtors. On the other hand, attending hearings over 1,400 miles away in Santa Barbara would be extremely burdensome, requiring the Debtors to obtain local counsel and travel extensively to do so.

Third, not only are the Debtors, the Prepetition Agent, the DIP Agent, the Prepetition Lender, and the DIP Lender located in Texas, but, once the California assets are sold, the Debtors will attempt to reorganize exclusively around their Texas assets. It makes perfect sense for this Court to preside over such a reorganization. The Committee's request to transfer venue to California does not make sense. Indeed, if the Committee has its way, the Debtors would be forced to fly from Texas to Santa Barbara to confirm a plan that will affect property located exclusively in Texas.

Importantly, LNV has a strong interest in assuring that these cases proceed in an efficient venue. LNV is likely significantly undersecured and the DIP loans it is prepared to extend to fund these Chapter 11 Cases represent substantial expenses that LNV will not recover. Under these circumstances, CLMG and LNV strongly prefer that these cases proceed in this Court. A change of venue will disrupt these cases and unnecessarily increase costs. The DIP Lender should not be required to fund and the Prepetition Lender should not be required to bear these costs when already faced with the prospect of substantial losses.

The Committee ignores all of these facts and urges the Court to second guess the

Americas 90586664

Debtors' choice of venue by moving these cases to Santa Barbara. The Committee argues that such a move would allow both Committee members and "mom and pop" creditors to participate more actively in these cases. This argument is misplaced. The Committee will ably represent its constituency regardless of venue and it will not be significantly more costly to its constituents for these cases to proceed here than it would be in Santa Barbara. Contrary to what is stated in the Motion, only one member of the Committee is located in Santa Barbara. Further, the Chairman of the Committee is located in Texas and one of the primary lawyers representing the Committee, Robert Feinstein, is located in New York City—a continent away from Santa Barbara. In addition, a change of venue to Santa Barbara will provide no substantial benefit to the "mom and pop" creditors that the Committee professes to represent. Such creditors do not regularly attend court hearings, and their interests as unsecured creditors will be ably represented by the Committee in this Court. Further, this Court readily allows parties to appear by phone when necessary and the Debtors have retained a claims agent to make sure that proofs of claim can be easily filed and efficiently handled.

Even if "mom and pop" creditors could obtain some tangible advantage from a change of venue (which CLMG does not concede), the costs imposed on the Debtors, CLMG, and LNV would far exceed any such benefit. Forcing the Debtors and their professionals, and CLMG and LNV, to regularly travel cross country to attend hearings is simply not justified by the theoretical possibility that a "mom and pop" creditor *might* obtain a marginal benefit by a change of venue.

Perhaps recognizing these weaknesses, the Committee alternatively proposes that venue be moved to other Texas districts which neighbor this one. Neither of those districts is more convenient than this one, and, in any event, even a showing that another venue might be preferable is not sufficient to warrant a transfer of venue.

Americas 90586664

The Debtors have chosen to file the Chapter 11 Cases in this District. That choice is, without question, proper and reasonable. The Debtors are located in Texas. Their largest creditor and the DIP Lender are located in Texas, and the Debtors will ultimately reorganize around their Texas assets. The Motion should be denied.

## FACTS

1.        In the Motion, the Committee presents a skewed version of the facts, identifying, distorting, and sometimes inventing facts helpful to their argument, while omitting others relevant to the determination of whether venue is proper in this District. The following additional facts complete the record and support denial of the Motion.

A.        **The Debtors' Business Operations Are Conducted in Texas**

2.        As stated in the *Declaration of R. Kelly Plato in Support of First Day Pleadings* [D.I. 19] (the "**Plato Declaration**"), the Debtors' corporate headquarters is located in Houston, Texas. Plato Decl. ¶ 6. The Debtors' key executives and managers, including CEO R. Kelly Plato and CRO Rebecca Roof, are all located in Houston. Importantly, among other things, the Prepetition Credit Agreement,[3] the Guaranty,[4] the DIP Credit Agreement,[5] and the proposed Bid Procedures[6] were negotiated and executed by the Debtors in their Houston office. Additionally, the majority of the Debtors' prepetition efforts to market and sell their assets occurred at their corporate headquarters in Houston.

---

[3]    The "**Prepetition Credit Agreement**" is that certain Credit Agreement, dated as of January 24, 2013, by and among ERG Resources, L.L.C., CLMG, and certain lender parties thereto, as amended from time to time.

[4]    The "**Guaranty**" is that certain Guaranty, dated as of January 24, 2013, in favor of CLMG executed by ERG Intermediate Holdings, LLC, West Cat Canyon, LLC, ERG Operating Company, LLC, and ERG Interests, LLC.

[5]    The "**DIP Credit Agreement**" has the meaning ascribed to such term in the DIP Motion.

[6]    The term "**Bid Procedures**" refers to the bid procedures requested in the *Motion of the Debtors for Entry of Orders: (i) Establishing Bidding and Sale Procedures; (ii) Approving the Sale of Assets; and (iii) Granting Related Relief* [D.I. 20] (the "**Sale Procedures Motion**").

Americas 90586664

3.      Though their operations are in Houston, the Debtors also hold substantial assets in Dallas.  Indeed, ninety percent of their cash is held in bank accounts located at Citibank, N.A.'s Dallas location.

**B.      The Debtors' Largest Creditors and Those Essential to the Administration of the Chapter 11 Cases Are Located in Texas**

4.      LNV (the "**Prepetition Lender**," or, the "**DIP Lender**," as applicable) is the Debtors' largest creditor.  Pursuant to the Prepetition Credit Agreement and the Guaranty, each of the Debtors is directly liable to the Prepetition Lender in an amount that exceeds $400 million—approximately 96% of the Debtors' outstanding debt as of the Petition Date.  *See* Plato Decl. ¶¶ 13-14 (principal amount outstanding is approximately $372 million with interest unpaid since Sept. 30, 3014 and other expenses accruing).  Unfortunately, though this debt is secured, it most likely far exceeds the value of the assets securing it.  As such, the Prepetition Lender will hold a substantial unsecured deficiency claim, which it believes will dwarf all other unsecured claims in these Chapter 11 Cases.  Additionally, LNV, in its capacity as the DIP Lender, is prepared to extend up to $17.5 million of post-petition financing to fund the Debtors' operations through the conclusion of the Chapter 11 Cases on the terms and conditions set forth in the DIP Credit Agreement.  Without such financing, the Debtors would be unable to operate and would have to be liquidated.  A liquidation would eliminate any material recoveries for general unsecured creditors.

5.      CLMG serves as the agent for the Prepetition Lender.  CLMG is also the agent for the DIP Lender.  CLMG and LNV each maintain offices in Plano, TX, which is approximately 20 miles away from this Court.  All of the principals working on this case on behalf of CLMG and LNV are located in Plano, TX.

6.      Additionally, Baker Petrolite Company (the chair of the Committee), Chevron

(the Debtors' *second* largest unsecured creditor), and BP Energy Company (the holder of a large call option) all have offices in Texas. Chevron has made an appearance in this case through Texas counsel.

7.      In sum, even excluding the contingent claims of BP Energy Company, solely California-based creditors hold only approximately 2% of the Debtors' prepetition debt by amount.

**C.      Mr. Wood Has No Role in the Debtors' Operations**

8.      The Committee choses to focus part of its argument in the Motion on Mr. Wood and his Lambert Road Property (as that term is defined in the Motion). Mr. Wood is not a Debtor. Moreover, pursuant to that certain Restructuring Support Agreement by and between the Prepetition Lender, the Prepetition Agent, and the Debtors, executed on April 30, 2015 (the "**RSA**"), Mr. Wood resigned from all positions and titles with respect to the Debtors. As such, he will have no significant involvement in the Chapter 11 Cases. Even so, Mr. Wood's primary residence is in the Houston area.

**D.      The Debtors' Plan to Reorganize Is Contemplated to Involve Only Their Assets in Texas**

9.      As explained in the Plato Declaration, the Debtors' objectives in the Chapter 11 Cases are to the sell their California assets and then pursue a plan of reorganization based upon their remaining assets in Liberty County, Texas. Plato Decl. ¶ 3. To that effect, on May 1, 2015, the Debtors filed the Sale Procedures Motion. Pursuant to the Sale Procedures Motion, the Debtors propose to sell their assets located in California in an auction conducted under the supervision of this Court to be held on July 16, 2015. Sale Procedures Mot., at 11. Thus, provided the Bid Procedures are approved, on or about July 16, 2015, no Debtor will own any property in California, and many of the claims of California-based creditors will be resolved in

Americas 90586664

connection with the sale of the California assets.

## ARGUMENT

### A.      Venue in the Northern District of Texas Is Proper

10.      In the Motion the Committee implies, without expressly stating, that venue is technically improper in this District.  Such implications do not meet the Committee's burden to establish improper venue and, in any event, are substantively wrong.  *See In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 792 (7th Cir. 1998) (venue of filing presumed proper; party challenging bears burden of showing case was incorrectly venued); *In re Washington, Perito & Dubuc*, 154 B.R. 853, 859 (Bankr. S.D.N.Y. 1993) ("The burden rests on the Movants to demonstrate by a preponderance of the evidence that the Chapter 11 petition was filed in the wrong district.").[7]

11.      Section 1408(1) of title 28 of the United States Code (the "**Judicial Code**"), which determines venue for bankruptcy cases, contains a disjunctive test which provides that venue is proper in any district in which the debtor has its domicile, residence, principal place of business in the United States, or principal assets in the United States.  *See* 28 U.S.C. § 1408(1); *see also Washington, Perito & Dubuc*, 154 B.R. at 859 ("Since the test is in the alternative, venue may properly lie in more than one district.").  Venue is also proper in the district in which an affiliate is the subject of a bankruptcy case.  *Id.* at § 1408(2).  In this case, venue is proper because the Debtors are each incorporated in the state of Texas and are, therefore, domiciled in any district in Texas, including this one.  *In re Horton Wison Deepwater, Inc.*, No. 15-40827-DML, *Order Denying Creditor's Amended Motion to Dismiss for Improper Venue*, No. 53

---

[7]      The Committee contorts itself to avoid conceding that venue is proper in this District, but effectively acknowledges that it is.  At one point, the Committee asserts that the Debtors' decision to file here "is wholly improper regardless of whether the filing in [this District] is technically proper because certain Debtors are domiciled in Texas . . . ."  Mot. ¶ 31.  The Committee unduly discounts the value of technical compliance with a clear rule.

Americas 90586664

(Bankr. N.D. Tex. May 14, 2015) (holding that "the Northern District of Texas is a proper venue for the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1408(1) because the Debtor is incorporated, and thus domiciled, in the State of Texas") (attached hereto as **Exhibit A**).

12.     ERG Intermediate Holdings, LLC ("**Holdings**"), the lead debtor in the Chapter 11 Cases, filed its petition for relief first.  Holdings is the direct or indirect corporate parent of all of the other Debtors.  *See* Plato Decl. Ex. A.  It is incorporated in Texas.  *See* Voluntary Petition, at 1 [D.I. 1].  Accordingly, Holdings is also located in Texas.  *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003) ("Since Debtor is incorporated here in Nevada, the District of Nevada may be considered Debtor's domicile and venue is thus proper under § 1408(1)."); *In re FRG, Inc.*, 107 B.R. 461, 471 (Bankr. S.D.N.Y. 1989) ("[A] corporation's domicile is generally held to be its state of incorporation . . . ."); *In re Innovative Commc'n Co.*, 385 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is appropriate in the state of incorporation, 28 U.S.C. § 1401(1) . . . .").  Unlike the principal assets and principal place of business tests, incorporation is not location specific; rather, it is state specific.  As a result, a debtor domiciled in a state may commence a bankruptcy case in any district within such state, and Holdings properly commenced its Chapter 11 Case here.

13.     The Committee's implication that a filing based on domicile is improper is particularly confusing given the Committee's choice of counsel.  Counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, is well aware that a debtor may properly file in its state of incorporation, even if it has no assets or operations there (which is not the case here).  Indeed, a noted academic study published in 2005 recognized Los Angeles-based Pachulski as an early and frequent proponent of venue in Delaware based on incorporation, going so far as to open a satellite office in the state to take advantage of this basis for venue.  *See* Lynn M. LoPucki,

*Courting Failure: How Competition for Big Cases Is Corrupting the Bankruptcy Courts* 128-29

(Univ. of Mich. Press 2005). Since then, Pachulski has kept up the practice. **Exhibit B** hereto

lists cases that Pachulski filed between 2006 and the present based on the lead debtor's

incorporation in Delaware where the debtors' principal places of business were not in Delaware.

As shown on Exhibit B, Pachulski filed not fewer than thirty such cases, including six in which

the debtors' principal places of business were in California and four in which the debtors'

principal places of business were in Texas.

14.     Once Holdings' Chapter 11 Case was properly commenced in this District, this

District became proper venue for all of the other Debtors without more. *See* 28 U.S.C.

§ 1408(2). Venue is proper.[8]

**B.      The Committee Fails to Carry Its Burden to Show the Chapter 11 Cases Should Be Transferred**

15.     The Committee asks that venue be transferred for the convenience of the parties

and in the interest of justice to nearly any available venue but Dallas. The Committee prefers a

transfer to the Northern Division of the Central District of California, but alternatively requests a

transfer to the Eastern District of Texas or the Southern District of Texas. The centerpiece of the

Committee's argument in favor of moving the cases to California is its assertion that there are

"many California-based, family-owned businesses who [sic] are owed significant amounts by the

Debtors and cannot afford the additional expense of traveling to Texas and engaging local

---

[8]     Notably, when Holdings filed, it *could not* have filed in any district in California. As set forth in the Plato Declaration, Holdings is a holding company whose sole asset is its interest in ERG Resources, L.L.C. ("**Resources**"), a Texas limited liability company. *See* Plato Decl. ¶ 10 & Ex. A (corporate organizational chart). Accordingly, Holdings is domiciled in Texas, has its principal place of business in Texas, and its primary asset, Resources, is a Texas company. Under these circumstances, the only proper venues in which Holdings could commence bankruptcy proceedings were in Texas. *Cf. In re Scotia Dev., LLC*, No. 07-20027, 2007 WL 1192137, at *7 (Bankr. S.D. Tex. Apr. 20, 2007) (rejecting request for transfer from venue of first filing debtor (a minor subsidiary of the debtors' enterprise); noting that first filing debtor could not have filed in movants' preferred venue).

Americas 90586664

counsel." Mot. ¶ 2. Because it serves the Committee's narrative, the Committee focuses on these creditors, which are unlikely to attend hearings in the Chapter 11 Cases regardless of where they proceed, to the exclusion of CLMG—the Prepetition Agent and the DIP Agent, representing the Debtors' largest creditor, the DIP lender and, perhaps, the purchaser of the California assets—which is certain to attend the vast majority of hearings in the Chapter 11 Cases.

16. The alternative relief the Committee requests—a transfer to the Southern District of Texas or the Eastern District of Texas—belies the Committee's concern for these California creditors. These alternative Texas venues would be no more convenient for parties in California than the Debtors' chosen venue. Indeed, the Committee's willingness to accept one of two venues neighboring this District suggests that the Committee's real motivation in filing the Motion is to impose costs on the Debtors, CLMG, and LNV, and thereby gain leverage in negotiations surrounding unrelated issues. These are not valid reasons to transfer venue.

17. The transfer of a bankruptcy case is governed by section 1412 of the Judicial Code and Rule 1014(a) of the Federal Rules of Bankruptcy Procedure. Those statutes provide that a Bankruptcy Court may transfer a case to another district for the convenience of the parties or in the interests of justice. 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014(a)(1). The statute is permissive rather than mandatory. *In re Larzo*, 128 B.R. 168, 171 (Bankr. W.D. Tex. 1991). As such, the decision of whether to transfer venue is left to the sound discretion of the court, as informed by the particular facts and circumstances of the case. *In re Adkins Supply, Inc.*, No. 11-10353-RLJ-7, 2015 WL 1498856, at *5 (W.D. Tex. Mar. 27, 2015); *accord Gulf States Exploration Co. v. Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990).

18. Where a party moves to disturb a debtor's proper choice of venue, the burden lies

with the movant to show why the debtor's choice should be disturbed.  *Peteet v. Dow Chem. Co*., 868 F.2d 1428, 1436 (5th Cir. 1989).  The burden is a particularly heavy one.  Even if the movant shows that another venue might be superior, this still may be inadequate to support its request for relief.  *See, e.g.*, *In re Enron Corp.*, 274 B.R. 327, 342-43 (Bankr. S.D.N.Y. 2002) ("Where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the debtor's choice of forum should not be disturbed.") (internal quotations and modifications omitted); *In re Bennett Funding Grp., Inc.*, 259 B.R. 243, 251 (N.D.N.Y. 2001) ("Plaintiff's choice of forum is normally entitled to substantial weight and should not be disturbed unless the balance of factors is strongly in favor of the defendant.") (internal quotations omitted).

19.     In short, a debtor is entitled to considerable deference if its choice of venue is proper.  *See Enron*, 274 B.R. at 342 ("A debtor's choice of forum is entitled to great weight if venue is proper."); *In re Terry Mfg. Co.*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005) ("[T]here is a strong presumption in favor of maintaining venue where the bankruptcy case is pending."); *In re Del. & Hudson Ry. Co.*, 96 B.R. 467, 467 (Bankr. D. Del. 1988) ("When venue is proper, the debtor's choice of forum is entitled to great weight.") (internal quotations omitted), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).  Consistent with these well-established principles, the Fifth Circuit has instructed that the power to transfer a case or proceeding should be exercised cautiously. *Commonwealth of Puerto Rico v. Commonwealth Oil Ref. Co.* (*In re Commonwealth Oil Ref. Co.*), 596 F.2d 1239, 1241 (5th Cir. 1979) ("***CORCO***").

20.     Here, the Committee has failed to meet its burden.  Read in the absolute most favorable light possible, the Motion merely establishes that a transfer of venue *might* shift some potential costs from California creditors (which hold approximately 2% of the debt) to the

Americas 90586664

Debtors, CLMG, and LNV. That is simply not enough to warrant a change of venue, especially

in cases such as these where the bulk of the primary decision makers are located in Texas. The

Motion should be denied.

### 1. The Convenience of the Parties Will Be Enhanced If Venue Is Maintained in This District

21.     Courts in the Fifth Circuit analyzing the convenience of the parties in the context

of a motion to transfer venue do so under the framework set forth in *CORCO*, 596 F.2d at 1247:

 (1) The proximity of creditors to the actual courthouse;

 (2) The proximity of the debtor to the courthouse;

 (3) The proximity of witnesses necessary to the administration of the estate;

 (4) The location of the debtor's assets;

 (5) The economic administration of the estate; and

 (6) The necessity for ancillary administration if liquidation should result.

*See, e.g.*, *In re Moss*, 249 B.R. 411, 425 (Bankr. N.D. Tex. 2000); *In re Scotia Dev., LLC*, 2007

WL 1192137, at *8. Of these factors, the "most important consideration is whether the requested

transfer would promote the economic and efficient administration of the estate." *CORCO*, 596

F.2d at 1247.

### a. The Debtors' Largest Creditor and the Most Critical Party in Interest in the Chapter 11 Cases Is Located Near This Court

22.     The Committee asserts that "[t]he Debtors have no connection whatsoever to

Dallas or any other location in the Northern District of Texas." Again the Committee's rhetoric

gets ahead of its facts, ignoring, among other things, that CLMG—the Prepetition Agent and the

DIP Agent—is a resident of the Dallas-Fort Worth metroplex.

23.     CLMG has its headquarters in Plano, Texas. Though its address is in the Eastern

District of Texas, CLMG is just over twenty miles from this Court. The principals of the

Prepetition Lender and the DIP Lender are also located in Plano, Texas. As the Prepetition

Lender, LNV is the Debtors' largest creditor. Pursuant to the Prepetition Credit Agreement and the Guaranty, each of the Debtors, either as the primary obligor or as a guarantor, is directly liable to the Prepetition Lender in an amount that exceeds $400 million. *See* Plato Decl. ¶¶ 13, 14 (principal amount outstanding is approximately $372 million with interest unpaid since Sept. 30, 2014 and other expenses accruing). Unfortunately, though this debt is secured by substantially all of the Debtors' assets, it likely far exceeds the value of the property securing it. As such, the Prepetition Lender will hold a substantial unsecured deficiency claim which it believes will dwarf all other unsecured claims in these Chapter 11 Cases.[9]

24.     In addition, LNV, as the DIP Lender, has committed up to $17.5 million to fund the Debtors' operations through the conclusion of an Acceptable Sale Process (as such term is defined in the DIP Motion), and to support the prosecution of the Chapter 11 Cases thereafter through a wind down budget. Absent this funding, the Debtors would have had to cease operations and liquidate. *See* Plato Decl. ¶ 45 ("[T]he Debtors are unable to operate without post-petition financing. . . . As of the Petition Date, the Debtors had minimal cash in their accounts."). Absent the funding, the Chapter 11 Cases could not proceed. *See id.*

25.     Further, because LNV is substantially undersecured and has a lien on substantially all of the Debtors' assets, it will bear the entire burden of funding these Chapter 11 Cases. Importantly, even the Committee's costs will be funded by the DIP loans.

26.     In addition to being the largest creditor and funding these Chapter 11 Cases, CLMG and LNV could take on an even larger role in these Chapter 11 Cases. As described in the DIP Motion and more fully described in the Sale Procedures Motion, the Debtors propose to

---

[9] The Committee recognizes the significance of the Prepetition Lender's deficiency claim in the Motion: "[C]reditor recoveries in this case could well depend on [whether CLMG waives its deficiency claim and liens on the Debtors' non-California assets in accordance with the terms of a restructuring support agreement]. [If] CLMG . . . waive[s] its deficiency claim and release[s] any and all liens it has on the Debtors' [non-California] assets [they will be freed] up for unsecured creditors." Mot. ¶ 25.

sell their California assets in an auction conducted under the supervision of this Court. *See* Sale Procedures Mot., at 2. To the extent that no acceptable bid is forthcoming, LNV also may become the purchaser of the Debtors' California assets pursuant to a credit bid.

27. CLMG has taken and will continue to take an active role in these Chapter 11 Cases, attending hearings and filing papers as appropriate. Indeed, any in-person negotiations between the Debtors, CLMG, LNV, and the Committee will likely occur in Dallas. Moving these cases to California—far from the key parties that will negotiate a reorganization of the Debtors and far from the Debtors' source of funding—simply does not make sense.

28. The Committee chooses to ignore CLMG and LNV (and also the location of the Committee's own Houston-based Chairman), and focus instead on the alleged "small, family owned businesses, virtually all of which are located in California,"[10] in urging this Court to cede the Chapter 11 Cases to the Central District of California to avoid "unnecessary prejudice and hardship." Mot. ¶ 37. In doing so, the Committee grossly overstates its case.

29. As an initial matter, the Committee states that "[a]ll but one of the [Committee] members is located in Santa Barbara County, California," Mot. ¶ 18. This is simply wrong. Only *one* Committee member is located in Santa Barbara County. The chairman of the Committee is located in Houston, Texas. Two other members of the Committee are located in

---

[10] Characteristic of its rhetoric throughout the Motion, the Committee appears to use the term "small businesses" more for effect than as a meaningful description. The label is offered generically for the "many" unnamed creditors the Committee claims will be prejudiced. The only businesses it specifically identifies as "small businesses" are its four California-based members. *See* Mot. ¶ 50. Superficial research on these entities indicates that the Committee's definition of "small" may be different from an ordinary understanding of that term. For example, SCS Engineers lists annual revenue of over $45 million on its website. *See* http://www.scsengineers.com/Pubs-News/bull13.html. This makes SCS Engineers, an environmental consulting service, triple the maximum size for classification as a "small business" under the Federal Small Business Administration's standard. *See* 13 C.F.R. § 121.201 (NAICS Code 541620). Likewise, according to the website manta.com, MMI Services, Inc. has estimated revenue of $50 million to $100 million. MMI Services, an oil field services provider, would also surpass the applicable maximum small business revenue threshold with that level of revenue. *See id.* (NAICS Code 213112).

Americas 90586664

Bakersfield, California, which is in Kern County—a nearly three hour drive from Santa Barbara. Another Committee member is located in Long Beach, California, which is Los Angeles County, approximately 115 miles away from Santa Barbara—a two hour drive *without* considering traffic delays. In short, Santa Barbara is not a readily accessible venue for the vast bulk of Committee members. Not even the Committee's Los Angeles based lawyers will find Santa Barbara a convenient venue. Such lawyers face well over a two hour drive to Santa Barbara under typical traffic conditions. Importantly, one of the Committee's lead lawyers, Robert Feinstein, is based in New York City—much closer to Dallas than Santa Barbara.

30.     Further, many of the Debtors' California-based creditors are unlikely to attend hearings in these Chapter 11 Cases regardless of where the cases proceed. Indeed, the very purpose of the Committee is to represent and advocate for the interests of creditors that otherwise generally would not participate in a chapter 11 case. *See generally* 11 U.S.C. § 1103(c)(3), (c)(5); *see also In re ABC Auto. Prods. Corp.*, 210 B.R. 437, 441 (Bankr. E.D. Pa. 1997) ("The function of the committee is to represent and protect the interests of the unsecured creditors in the plan negotiation process and throughout the entire bankruptcy case.") (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 235, 401 (1978)). Here, the Committee has retained capable counsel and the interests of unsecured creditors as a whole, including trade creditors, will be well represented. Indeed, by requesting an alternative transfer to Houston or Beaumont (both of which are *further* from Santa Barbara than is Dallas) the Committee admits that it can do its job in those places. Certainly, then, it can do its job in Dallas.

31.     Finally, CLMG notes that the Court readily allows creditors to appear by phone when needed and the Debtors have retained a claims agent to effectively and efficiently handle claims.

32.     Under these circumstances, it is simply false that proceeding in this Court will "deny any meaningful participation by the many California-based, family-owned businesses who [sic] are owed significant amount by the Debtors and cannot afford the additional expense of traveling to Texas and engaging local counsel." Mot. ¶ 2.

### b.   The Debtors Are Close to This Court

33.     "The Debtors' corporate headquarters is located in Houston, Texas." Plato Decl. ¶ 6.  Houston is a one hour flight from this Court, with Houston flights arriving at least hourly to Dallas Love Field.  Put simply, the Debtors are close to this Court, especially relative to the Committee's preferred venue.  They are more than 1,400 miles from the Santa Barbara Bankruptcy Court and there are no direct flights from Houston to Santa Barbara.  Moving these cases to Santa Barbara will impose significant travel burdens and the cost of local counsel on the Debtors.  This makes no sense.

34.     The Committee insinuates that the Debtors' control persons might not actually be in Houston, claiming that it is "unclear based on the Debtors' filing to date" whether "the Debtors make their management and operational decisions from the Houston location."  Mot. ¶ 40.  Instead the Committee relies on the Debtors' employee headcount in Santa Barbara County (and Kern County), *id*. at ¶¶ 21, 39, and the fact that one of the Debtors' ultimate equity owners threw a party in Santa Barbara in 2012 (as reported in an article referring to him as a "Houstonian"), *id*. at ¶ 39 & n.5.  The location of the Debtors' control persons can no longer be "unclear" to the Committee.  Since filing the Motion, the Committee has noticed depositions for two representatives of the Debtors: R. Kelly Plato, the Debtors' CEO, and Rebecca Roof, the Debtors' CRO.  *See* Amended Notice of Deposition [D.I. 141].  These depositions will take place in Houston where such persons are located.  *Id.* at 2.

35.     As noted by the Fifth Circuit in *CORCO*, the purpose of a reorganization

proceeding is to restructure a debtor's finances and the logical place for such a proceeding is "[w]here the corporation transacts its corporate business." *CORCO*, 596 F.2d at 1247. This is so because that is where the people "charged with this responsibility" reside. *Id.* That is certainly the case here. The Debtors' CEO and CRO—employees that are essential to the reorganization and will undoubtedly be called to testify during the course of these Chapter 11 proceedings— maintain their offices in Houston. This Court is considerably more convenient for the Debtors than the bankruptcy court in Santa Barbara would be. Moreover, this case is primarily about resolving the $400 million in secured debt owed to LNV, and LNV's decision makers are located in the Dallas metroplex, not in California.

36.     The situation in *In re Pope Vineyards,* 90 B.R. 252 (Bankr. S.D. Tex. 1988), cited by the Committee to support its contention that venue may appropriately be transferred away from a debtor's management operations, is clearly distinguishable from the Debtors' situation. In *Pope Vineyards*, a vineyard affiliated with a bankrupt oil and gas company filed a bankruptcy petition in the Southern District of Texas. *Id.* at 253. The vineyard filed in the Southern District because its affiliate's chapter 11 case was pending there. *Id.* at 254. The vineyard argued that the Southern District of Texas was a more convenient forum as its principal resided in Houston; however, the court noted that he only spent five to ten hours a week working on the vineyard, traveled to the vineyard monthly, and was concentrated on the reorganization of the affiliated oil and gas business. *Id.* at 256-57. The "real business" of the vineyard, including the negotiation of contracts, maintenance of company records, and preparation of financial statements and budgets, was conducted by individuals located in California. *Id.* at 257-58. Noting that the individuals associated with the "real business" of the Debtors would be greatly inconvenienced by maintaining venue in the Southern District, while the executive with limited involvement

18

would only be slightly inconvenienced by a transfer, the Court found that the convenience of the witnesses factor weighed in favor of transferring venue. *Id.* at 258.

37.     In deciding that the convenience of the witnesses tipped in favor of transfer, the *Pope Vineyards* court acknowledged that its decision could be interpreted as contrary to the *CORCO* court's instruction that reorganization should take place where the corporate business was transacted. It reconciled this contradiction by stating that the particular facts of *Pope Vineyards* militated in favor of transfer. Here, the facts do not support a similar exception. The Debtors' management, including those individuals that are in charge of its "real business," are located in Texas. So is LNV, the largest creditor, DIP lender, and potential purchaser. The out-of-court negotiations in this case will take place in board rooms and offices throughout Texas, including in the Dallas metroplex. In sum, as was the case in *CORCO*, the proper place for the Debtor's reorganization is here.

### c.  Key Witnesses Are Located in Texas

38.     The Committee has not identified any necessary witnesses that would be inconvenienced by the maintenance of venue in this Court. Despite hypothesizing that the Debtors' management who will likely be called as witnesses may be located in California, the Committee issued deposition subpoenas for Mr. Plato and Ms. Roof in connection with the Sale Procedures Motion, the DIP Motion, and this Motion. *See Amended Notice of Deposition* [D.I. 141]. Both Mr. Plato and Ms. Roof will likely be required to testify at trial, and, as stated above, are based out of Texas. Indeed, to date, the Committee has not noticed the deposition of any person located in California.

### d.  The Location of the Debtors' Assets

39.     The Committee makes a number of arguments concerning the location of the Debtors' assets (and even assets that are not the Debtors) in urging the Court to transfer venue.

These arguments all must fail. First, the Sale Procedures Motion contemplates a process—the implementation of which is a condition to continued DIP financing—by which the Debtors will sell all of their California assets in the near term, necessarily leaving the Debtors with no California assets after closing. Second, the sole piece of property in California that the Committee mentions in the Motion that is *not* proposed to be sold in the Sale Procedures Motion is not the property of any Debtor. Third, the Committee cites old authority for the notion that the involvement of important real estate assets warrants transfer to the venue where the real estate is located and that local and federal regulation of the Debtors' operations in California do too. The Committee is wrong.

40. The Committee is correct that a large portion of the Debtors' operating assets are located in California. *See* Mot. ¶ 39. The Committee is also correct that the Debtors intend to sell those assets in these Chapter 11 Cases. *Id.* at ¶ 7. It is important that this sale be completed promptly as the Debtors' revenues are inadequate to fund their operations. *See* Plato Decl. ¶ 45. Once the California assets are sold, the Debtors will have no further assets in California and any reorganization will be accomplished around the Debtors' Texas assets. *See* Plato Decl. ¶ 3 ("[T]he Debtors' primary objective in commencing these chapter 11 cases is to pursue the sale of their assets located in California and then pursue a plan based upon the remaining assets . . . ."). Thus, within a matter of months, the Debtors' "principal asset" for the remainder of these Chapter 11 Cases will likely be in Liberty County, Texas, far away from Santa Barbara, California.

41. The Committee is also correct that Mr. Wood's Lambert Road Property is located in California. Mot. ¶ 25. The Committee is incorrect, however, to refer to it in connection with its Motion because the *CORCO* analysis—which the Committee agrees governs—inquires only

Americas 90586664

into the location of property of the debtors and not of any other person.  Mr. Wood is not a Debtor.  The location of his property is not relevant to the Motion.

42.     The Committee cites the opinion of the Bankruptcy Court for the Southern District of Texas in *Pope Vineyards*, 90 B.R. 252, for the proposition that cases concerning real property should be venued where their real property is.  *See id.* at ¶¶ 45-47.  Since then, the Southern District has apparently moved away from any focus on the location of real property in evaluating a request to transfer.

43.     The debtors in *Scotia Development*—which filed in the Southern District of Texas nearly twenty years after *Pope Vineyards*—were primarily engaged in timber harvesting in California's Humboldt County.  Indeed, one of the debtors "own[ed] the real estate, housing, and *all improvements* of the town of Scotia, California."  2007 WL 1192137, at *1 (emphasis added).  To be clear, it owned *an entire California town.*  Additionally, it owned, directly or indirectly, 10,500 acres of timberlands.  *Id.* at *2.  A different debtor owned over 200,000 acres of timberlands.  *Id.*  Despite all of this real estate in California (an area nearly the size of Dallas) balanced against only an office lease in the debtors' chosen venue (which the movants likened to a "phone booth," *id.* at *7), the *Scotia Development* court denied the motion to transfer venue to California.  *Id.* at *8-9.

44.     Similarly, the movants in *Scotia Development*, like the Committee here, argued that a pervasive state regulatory scheme and intense local interest in the debtors' operations required a transfer of their cases to the venue of the debtors' main operations.  As CLMG asks the Court to do here, the court in *Scotia Development* rejected the movants' arguments.  The *Scotia Development* court explained that the debtors' operations had to continue to comply with applicable state and federal laws notwithstanding the bankruptcy; that a plan could not

restructure those laws; and that if the debtors failed to comply with environmental laws, they would be subject to enforcement actions in any appropriate venue just the same as if they were not in a bankruptcy proceeding. *See id.* at *8-9.

45.     The location of the Debtors' assets simply does not carry the weight the Committee urges in analyzing a motion to transfer venue.  Moreover, a transfer now to California solely to be near the assets that are contemplated to be promptly sold would make little sense where the Debtors' remaining assets would be much closer to this Court.

### e.  The Chapter 11 Cases Can Be Most Efficiently Administered in This Court

46.     As noted above, the most important factor when weighing whether to transfer venue is whether the requested transfer would promote the economic and efficient administration of the estate.  *CORCO*, 596 F.2d at 1248.

47.     As described in the Plato Declaration, the Debtors commenced the Chapter 11 Cases to conduct a prompt, value maximizing sale of their assets in California and effect a subsequent reorganization around their remaining assets in Texas.  Plato Decl. ¶ 3.  To that end, the Debtors filed the Sale Procedures Motion seeking approval of Bid Procedures that would culminate in a court-supervised auction on July 16, 2015.  The Debtors believe that the proposed sale represents the "best strategy to maximize value for the Debtors' various stakeholders."  Sale Procedures Mot., 4.  Indeed, the Debtors have asserted that the "[c]ompletion of the sale process in a timely manner will . . . maximize the value of the [Debtors' California assets] and value available for unsecured creditors."  *Id.* at 7.  The Debtors also caution that "failure to adhere to [the sale milestones] could jeopardize the closing of the Sale, which the Debtors believe is the best means of maximizing the value to be achieved for the Assets and unsecured creditors."  *Id.*

48.     Transferring the Chapter 11 Cases would disrupt the positive momentum that the

Debtors have generated and most assuredly cause the Debtors to miss the sale-related milestones proposed in the Sale Procedures Motion and the DIP Motion. *See In re Pavilion Place Assocs.*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ("Transfer is a cumbersome disruption of the Chapter 11 process."); *see also CORCO*, 596 F.2d at 1248 (affirming bankruptcy court's determination that transfer of cases would be disruptive, militating against transfer). The DIP Lender has only committed to fund these cases and businesses for a limited period of time and premised its DIP financing on a filing in this Court. The disruption caused by transferring venue would likely telescope the life of the Chapter 11 Cases past that timeframe and jeopardize the Debtors' DIP financing and ability to reorganize.

49.     Moreover, the Committee has not called into question this Court's ability to economically and efficiently administer the Chapter 11 Cases. Surely, it cannot. This Court has overseen numerous cases involving debtors in the oil and gas business, including: *In re Eastern 1996D Ltd. P'ship* (No. 13-34773); *In re Heritage Consolidated, LLC* (No. 10-36484); *In re Carole Petrol., LLC* (No. 09-37746); *In re Provident Royalties, LLC* (No. 09-33886); *In re Sonoran Energy, Inc.* (No. 09-33852); *In re CrossPoint Energy Holdings, LLC* (No. 08-34666); and *In re Eddie Mayo Oil Props., Inc.* (No. 08-70241). As such, with its extensive experience in oil and gas reorganizations and attendant issues, including particular valuation concerns in the oil and gas arena, there is no doubt that this Court can capably and efficiently administer the Chapter 11 Cases.

50.     Further, as described in greater detail above, the convenience of the key participants in these Chapter 11 Cases will be served if the cases remain in this District. With regards to the Debtors, it will be much easier for their Houston-based management to participate in the in-court aspects of the Chapter 11 Cases if the cases remain here than if they are

23

transferred to Santa Barbara.  Moreover, if venue is maintained in this Court, the Debtors'

managers will be able to focus more of their efforts on reorganizing around the Debtors' Texas

assets.  And, as noted above, LNV is located in the Dallas metroplex and is absolutely critical to

the success of these cases.  As was the case in *CORCO*, where the Fifth Circuit ruled that

transferring venue from Texas was not in the debtor's best interest, the Debtors' problems are

financial.  *See CORCO*, 596 F.2d at 1248.  The people who can solve those problems are in

Texas, including Dallas.  It will be less disruptive to the continued operation of the Debtors if

this case remains here.

51.     Finally, on the whole, maintaining venue in this Court will be more convenient

than the Committee's preferred Santa Barbara location would be for the professionals in this

matter—the individuals who will be before this Court most often.  There are no direct flights to

Santa Barbara from Houston, where Debtors' counsel is based; or from New York, where Mr.

Feinstein is based.  Indirect flights from Houston to Santa Barbara are at least five to six hours

long; whereas direct flights from Houston to Dallas are only an hour long.  Similarly, connecting

flights from New York to Santa Barbara are over seven and half hours long; whereas direct

flights from New York to Dallas are less than three and a half hours long.

52.     Even the Committee's Los Angeles-based counsel is a long way from Santa

Barbara, and can nearly as easily get to Dallas.  Typically, in the morning, it can take up to two

and a half hours to drive from Los Angeles to Santa Barbara.  As such, Santa Barbara is not

significantly less convenient than Dallas for those Los Angeles-based individuals that will be

involved in these Chapter 11 Cases, who can take three hour flights to Dallas.  In short, Dallas is

more convenient for the majority of individuals expected to frequently appear before this Court.

Americas 90586664

**f. Necessity for Ancillary Administration If Liquidation Should Result**

53.     If the Sale Procedures Motion is approved, which, for the reasons stated above and in the Sale Procedures Motion, CLMG believes it should be, the Debtors will sell all of their California assets at an auction on July 16, 2015.  Therefore, if there is a liquidation in these Chapter 11 Cases, it will be of the Debtors' assets in Texas.  Thus, this factor militates in favor of retaining venue in this Court.

**2.     The Interest of Justice Will Be Served If Venue Is Retained by This Court**

54.     As with the "convenience of the parties" analysis, the Committee does not satisfy its burden of proving by a preponderance of the evidence that the "interest of justice" will be served by transferring the cases to Santa Barbara (or to the Southern District of Texas or the Eastern District of Texas).  Generally, the "interest of justice" standard is flexible, and courts consider the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness.  *See BRDC Lofts*, No. 12-11559-CAG, 2013 WL 395129, at *3 (Bankr. W.D. Tex. Jan. 13, 2013).

55.     As explained in detail above, maintaining venue in this Court will lead to an efficient and economic administration of the Debtors' estates.  It will allow the Debtors' principals to be available as witnesses and actively participate in the in-court restructuring, while devoting sufficient attention to the out-of-court restructuring process and operations of the debtors-in-possession.  It will also allow the Debtors' largest creditor, DIP lender, and potential purchaser of its assets to fully participate in these cases.  Moreover, maintaining the current venue will not materially prejudice the Debtors' other creditors. To the contrary, efficiently administering these cases will increase the likelihood of a successful sales process and reorganization, which will benefit, not prejudice, creditors.

56.     Finally, fairness is not served by transferring the Chapter 11 Cases away from the

Debtors' proper choice of venue based on the Committee's exaggerations, misrepresentations,

and manufactured outrage.  Notably, the Committee revisits the theme of forum shopping

throughout the Motion.  At one point, the Committee quotes the bankruptcy court in *Abacus*

*Broadcasting Corp.*, 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993) as follows:

> How much deference should be given to a forum selected primarily by the lawyers, for
> their own convenience or concern for remuneration?  How much deference should be
> given to a debtor's concern that it get what it perceives to be a "debtor's judge?"
> Whenever a creditor raises the venue question, none at all.

Mot. ¶ 33.  Setting aside that this view of the law is inconsistent with the vast weight of authority

on deference to debtor venue preference—which necessarily developed in the context of creditor

questioning—reference to it in this case verges on inflammatory.  Is the Committee suggesting

that the Northern District is more fee friendly than the Southern District of Texas, the Eastern

District of Texas, or the Central District of California?  Or is the Committee suggesting that this

Court is more debtor friendly than the three suggested alternative courts?

57.     Ultimately, it is not clear *what* the Committee is suggesting by its allegations of

forum shopping because it does not so much as speculate as to what advantage the Debtors might

gain from filing in this District as opposed to the Central District of California, the Southern

District of Texas, or the Eastern District of Texas.  The Committee just says it "smells" forum

shopping.  Mot. ¶ 34.  And, aside from its citation to *Abacus Broadcasting*, the Committee never

once suggests that it will not be treated fairly by this Court.

58.     Because the Debtors properly commenced the Chapter 11 Cases in this Court and

because they can be fairly and efficiently administered in this Court the Motion should be

denied.

Americas 90586664

## **CONCLUSION**

WHEREFORE, CLMG respectfully requests that the Court deny the Motion.


Dated: May 26, 2015                      WHITE & CASE LLP
      Los Angeles, California

                              By:  /s/ Craig H. Averch
                                    Craig H. Averch, State Bar No. 01451020
                                    Roberto J. Kampfner, admitted *pro hac vice*
                                    633 West Fifth Street, Suite 1900
                                    Los Angeles, CA 90071
                                    Telephone:     (213) 620-7700
                                    Facsimile:      (213) 452-2329
                                    caverch@whitecase.com
                                    rkampfner@whitecase.com

                                          —and—

                                    Thomas E Lauria, State Bar No. 11998025
                                    Southeast Financial Center, Suite 4900
                                    200 South Biscayne Boulevard
                                    Miami, FL 33131
                                    Telephone:     (305) 371-2700
                                    Facsimile:      (305) 358-5744
                                    tlauria@whitecase.com

                                  *Attorneys for CLMG Corp.*

Americas 90586664

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that notice of the foregoing document was sent on the date thereof to all parties receiving electronic notification in this bankruptcy case from the Court's electronic filing system.

 /s/  Craig H. Averch
Craig H. Averch, Esq.

# **<u>Exhibit A</u>**



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed May 14, 2015

United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 CASE |
| HORTON WISON DEEPWATER, INC., | CASE NO. 15-40827-dml-11 |
| DEBTOR. | |

### ORDER DENYING CREDITOR'S AMENDED MOTION TO
### DISMISS FOR IMPROPER VENUE

Came on for consideration Creditor's Amended Motion to Dismiss for Improper Venue

[Docket No. 13] (the "Motion") filed by Edward E. Horton, III. The Court conducted a hearing

on the Motion on April 14, 2015. The Court, having considered the Motion, the Debtor's

response thereto, and the evidence presented at the hearing thereon, finds and concludes that the

Northern District of Texas is a proper venue for the Debtor's bankruptcy case pursuant to

28 U.S.C. § 1408(1) because the Debtor is incorporated, and thus domiciled, in the State of

Texas. Because the Debtor's bankruptcy case was filed in a proper venue, the Motion must be

denied.

Page 1 of 2

Accordingly, it is hereby **ORDERED** that the Motion is **DENIED**.

**### End of Order ###**

# **Exhibit B**

| Case Name | Case Number | Date Filed | Principal Place of Business |
|---|---|---|---|
| In re EveryWare Global, Inc. | 15-10743 | 04/07/2015 | Lancaster, OH |
| In re Allen Systems Group, Inc. | 15-10334 | 02/18/2015 | Naples, FL |
| In re Cache, Inc. | 15-10172 | 02/04/2015 | New York, NY |
| In re Hipcricket, Inc. | 15-10104 | 01/20/2015 | Bellevue, VA |
| In re Seal123, Inc. | 15-10081 | 01/20/2015 | Foothill Ranch, CA |
| In re Fisker Automotive Holdings, Inc. | 13-13086 | 11/22/2013 | Anaheim, CA |
| In re Prince Sports Holdings, Inc. | 12-11440 | 05/01/2012 | Bordentown, NJ |
| In re AFA Investment Inc. | 12-11127 | 04/02/2012 | King of Prussia, PA |
| In re JER/Jameson Mezz Borrowers II LLC | 11-13392 | 10/25/2011 | Smyrna, GA |
| In re NewPage Corp. | 11-12804 | 09/07/2011 | Miamisburg, OH |
| In re Solyndra LLC | 11-12799 | 09/06/2011 | Fremont, CA |
| In re PTL Holdings, LLC | 11-12676 | 08/23/2011 | Grapevine, TX |
| In re Evergreen Solar, Inc. | 11-12590 | 08/15/2011 | Marlboro, MA |
| In re FKF Madison Group Owner, LLC | 10-11867 | 06/08/2010 | New City, NY |
| In re U.S. Concrete, Inc. | 10-11407 | 04/29/2010 | Houston, TX |
| In re Point Blank Solutions, Inc. | 10-11255 | 04/14/2010 | Pompano Beach, FL |
| In re Latham Intern., Inc. | 09-14490 | 12/22/2009 | Latham, NY |
| In re Majestic Star Casino II LLC | 09-14135 | 11/23/2009 | Las Vegas, NV |
| In re Visteon Corporation, et al | 09-11786 | 05/28/2009 | Van Buren Township, MI |
| In re FB Liquidating Estate | 09-11525 | 05/04/2009 | Burlington, MA |
| In re Accredited Home Lenders Holding Co. | 09-11516 | 05/01/2009 | San Diego, CA |
| In re Pacific Energy Resources, Ltd. | 09-10785 | 03/09/2009 | Los Angeles, CA |
| In re Qimonda Richmond, LLC | 09-10589 | 02/20/2009 | Sandston, VA |
| In re WL Homes LLC | 09-10571 | 02/19/2009 | Irvine, CA |
| In re Metromedia Steakhouses Co., L.P. | 08-12492 | 10/22/2008 | Plano, TX |
| In re WorldSpace, Inc. | 08-12412 | 10/17/2008 | Silver Spring, MD |
| In re Internet Corp. | 08-11859 | 08/12/2008 | Fort Worth, TX |
| In re TSG Group, Inc. | 07-11337 | 09/14/2007 | Lindon, UT |
| In re Mortgage Lenders Network USA, Inc. | 07-10146 | 02/05/2007 | Middletown, CT |
| In re Nellson Nutraceutical, Inc. | 06-10072 | 01/28/2006 | Irwindale, CA |