Mark W. Wege (Texas Bar No. 21074225)
Edward L. Ripley (Texas Bar No. 16935950)
Eric M. English (Texas Bar No. 24062714)
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: 713-751-3200
Facsimile: 713-751-3290
Email: MWege@kslaw.com
　　　　ERipley@kslaw.com
　　　　EEnglish@kslaw.com

ATTORNEYS FOR CHEVRON U.S.A. INC. AND
UNION OIL COMPANY OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** § | | **Chapter 11** |
| § | | |
| **ERG Intermediate Holdings, LLC,** *et al.*, § | | **Jointly Administered** |
| § | | |
| **Debtors.** § | | **Case No.: 15-31858-hdh-11** |

**RESPONSE OF CHEVRON U.S.A. INC. AND UNION OIL COMPANY OF CALIFORNIA TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRANSFER VENUE**
(Related to Doc. No. 94)

Chevron U.S.A. Inc. and Union Oil Company of California (collectively, "Chevron") file this Limited Objection (the "Objection") to The Motion of the Official Committee of Unsecured Creditors to Transfer Venue (the "Venue Motion") and respectfully represents as follows.

**BACKGROUND**

1. On April 30, 2015 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Code by filing petitions in this Court.

2. On the Petition Date, the Debtors also filed the Consolidated List of Creditors Holding 20 Largest Unsecured Claims (the "20 Largest List") (Doc. No. 1, at 12). Chevron

U.S.A. Inc. is listed as the largest creditor on the 20 Largest List, and the Debtors state that they owe Chevron U.S.A. Inc. $3,820,204 arising from a "Royalty Agreement" (the "Chevron Claim").[1] The Debtors have acknowledged that the Chevron Claim is not disputed, contingent or unliquidated.

3. Chevron's Claim consists of the proceeds of royalty interests and overriding royalty interests specifically excepted from Chevron's sale of certain assets, including mineral fee and leasehold interests, to the Debtor ERG Resources, LLC in 2010 located in the Cat Canyon Field in Santa Barbara County, California ("Chevron Cat Canyon Assets"). Chevron's property includes, but is not limited to, various royalty, overriding royalty and other real property interests, and the proceeds of any such interests, in the Chevron Cat Canyon Assets ("Chevron's Property"). As the holder of royalty and overriding royalty interests, Chevron is entitled to payment of past-due royalty obligations, as well as ongoing post-petition royalty obligations related to funds currently directed to the Debtors. Further, pursuant to the sale of the Chevron Cat Canyon Assets from Chevron to Debtor ERG Resources, the Debtors have other obligations to Chevron, including but not limited to indemnification, decommissioning and other environmental obligations necessarily involved in owning and operating oil and gas properties ("ERG Additional Obligations").

4. The Debtors have not paid Chevron for its royalties from production following December 31, 2013, and have not provided documentation to Chevron regarding production so that Chevron can determine the amounts owed, or determine the accuracy of prior payments.

5. The Debtors have asserted that they own approximately 19,027 gross lease acres in the Cat Canyon Field which were acquired through a series of transactions since 2010, and

---

[1] Chevron agrees with the Debtors that Chevron holds a significant claim in these cases. Chevron is in the process of determining the amount of that claim and reserves its right to file a proof of claim in an amount different from the Chevron Claim.

that the Debtors own an average working interest of approximately 97% and have an average net revenue interest of 78%, with a 7% overriding royalty interest owned by ERG Interests, LLC, an affiliate. It is not clear from the Debtors' filings to date what other royalty interest owners exist in the Cat Canyon Field, other than Chevron and ERG Interests, LLC, or may claim an interest in the Cat Canyon Field. In any event, Chevron holds (at a minimum) royalty and overriding royalty rights in a substantial portion of the property interests that comprise the Cat Canyon Field.

6. On May 15, 2015, the Official Committee of Unsecured Creditors (the "Committee") filed the Venue Motion, in which the Committee seeks to transfer the venue of the Debtors' cases from the Northern District of Texas to either the Central District of California, the Southern District of Texas or the Eastern District of Texas. In the Venue Motion, the Committee asserts that venue is not proper in the Northern District of Texas pursuant to 28 U.S.C. §1408 and/or in the alternative, that if venue is technically proper, the cases should be transferred pursuant to 28 U.S.C. §1412 in the "interests of justice or the convenience of the parties."

## RESPONSE

7. Chevron has no objection to these cases remaining in this District and before this Court. This Court (like others in the Northern District of Texas) has substantial experience dealing with oil and gas cases and the issues particularly applicable to debtors owning and operating oil and gas properties including royalty-related issues. The Court has held some hearings and gained some insight into the issues facing these Debtors and their estates.

8. However, if there is a concern regarding whether venue is proper under 28 U.S.C. § 1408, Chevron would support transfer of the venue of the Debtors' cases to the Southern District of Texas (Houston Division). The Debtors' headquarters, including its principle place of

business, is located in Houston. Thus, venue would clearly be proper there pursuant to 28 U.S.C. § 1408[2].

9. As to the Section 1412 issues, courts in the Southern District of Texas have substantial experience in dealing with oil and gas debtors and the unique business and legal issues arising in chapter 11 cases with debtors that own and operate oil and gas properties. For example, in the Southern District of Texas, there are specific provisions in the Local Bankruptcy Rules for Complex Chapter 11 Cases that deal with oil and gas exploration and production debtors including, for example, the requirement to set up bank accounts and segregate gross production proceeds which are not property of the estate to insure that royalties and severance taxes are paid. These issues will be important in these cases because the Debtors failed to make such payments to Chevron (and potentially others) pre-petition and, based on the pleadings so far, it appears that Debtors have not segregated funds attributable to royalties and severance post-petition. Thus, it appears that the Debtors continue to commingle and use funds that are not property of estate creating significant issues and exposure to the estates. This critical issue could be dealt with by transferring venue to the Southern District of Texas, Houston Division[3].

10. As noted above, the Debtors have listed Chevron as having the largest unsecured claim in these cases. Chevron's in-house counsel with responsibility for this matter is located in Houston along with the outside counsel Chevron has retained in these cases (King & Spalding LLP). Additionally, certain of the individual business persons from Chevron with knowledge and information about the 2010 transaction concerning Chevron's Cat Canyon Assets are also

---

[2] While Chevron has no objection to venue in the Eastern District of Texas, it appears that the Debtors' venue connections there are minimal especially as compared to the Southern District of Texas.

[3] Even if venue remains here, as noted in other pleadings filed by Chevron, the Debtors should be required to create a separate, segregated account and deposit all sums received for post-petition production for royalties and severance and turnover such funds promptly. Such funds are not property of the bankruptcy estates.

located in Houston. From Chevron's perspective, while there is a "California" connection to the Debtors' cases, it is clear that the Southern District of Texas would without question be a proper and convenient forum, if the Court determines that venue of these cases should be transferred. Moreover, assuming that a transaction occurs for the Debtors' California assets particularly at the outset of these cases, the only remaining assets and operations of the estates would be in Texas. The Debtors have expressed this strategic approach at the outset of these cases. Thus, it is not clear that transferring these cases out of Texas, when only a Texas relationship and properties exist following an initial sale of the California assets, would meet the Section 1412 test.

Dated: May 27, 2015
       Houston, Texas

Respectfully submitted,

KING & SPALDING LLP

/s/ Mark W. Wege

Mark W. Wege
Edward L. Ripley
Eric M. English
KING & SPALDING, LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: 713-751-3200
Facsimile: 713-751-3290
Email: MWege@kslaw.com
      ERipley@kslaw.com
      EEnglish@kslaw.com

**ATTORNEYS FOR CHEVRON U.S.A. INC. AND UNION OIL COMPANY OF CALIFORNIA**

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served electronically though the Clerk's Office ECF noticing facilities upon the parties eligible to receive notice on this 27th day of May 2015.

    /s/ Mark W. Wege
Mark W. Wege