Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
       rfeinstein@pszjlaw.com

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile:  (903-757-9559
Email: jsearcy@jrsearcylaw.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| | § | |
| | § | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF AP
SERVICES, LLC AND (II) DESIGNATING REBECCA A. ROOF AS CHIEF
RESTRUCTURING OFFICER *NUNC PRO TUNC* TO APRIL 30, 2015**

The Official Committee of Unsecured Creditors (the "Committee") of ERG Intermediate Holdings, LLC ("ERG") and its affiliated debtors (collectively, with ERG, the "Debtors") in the above-captioned cases (the "Cases") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") hereby objects (the "Objection") to the *Debtors' Motion for Entry of an*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

*Order (I) Authorizing the Retention and Employment of AP Services, LLC and (II) Designating Rebecca A. Roof as Chief Restructuring Officer Nunc Pro Tunc to April 30, 2015* [Docket No. 79] (the "Motion").  In support of its Objection, the Committee respectfully states:

1. The Debtors commenced these Cases on April 30, 2015 (the "Petition Date") for the stated purpose of selling their substantial oil and gas assets in Santa Barbara, California (the "California Assets").  The Debtors also profess their intention to reorganize around their remaining assets located in Liberty County, Texas, though the value of those assets may be *de minimis* relative to their several hundred million dollars in liabilities.  In short, these Cases are about effecting a sale of the California Assets.

2. The Debtors' secured lender, CLMG (the "Lender"), has exerted extraordinary control over the direction of these Cases, from the venue "chosen" by the Debtors, the truncated sale process dictated by milestones in the DIP financing, and, germane to the instant motion, the selection of the Debtors' professionals.

3. Prior to the commencement of these Cases, the Debtors were managed by their principal owner, Scott Wood, and their Chief Financial Officer, R. Kelly Plato.  The Debtors had also engaged a highly qualified investment banker, Macquarie Bank ("Macquarie"), to market and sell the Debtors' California Assets.  Exercising its influence over the Debtors, the Lender changed all of that.

4. First, the Lender demanded that the Debtors retain an advisory firm to provide a Chief Restructuring Officer ("CRO"), and made clear to the Debtors that only two firms, one of which is AP Services, would be acceptable to the Lender.  Under the Lender's thumb, on March 24, 2015, the Debtors thus engaged AP Services to provide the services of Rebecca A. Roof as CRO.  Pursuant to the engagement letter attached to the Motion, the Debtors

2

are required to pay AP Services $1,035 per hour for Ms. Roof's services. Assuming a 40 hour work week, on an annualized basis this amounts to a salary for her services of $2,152,000, plus her out of pocket expenses.

5. Second, the Lender, the Debtors and Mr. Wood entered into a Restructuring Support Agreement on the Petition Date that ousted Mr. Wood from any managerial role and installed Mr. Plato in his place as sole managing member of the Debtors. As a result, the Debtors are now managed by Mr. Plato and Ms. Roof as CRO, and have no investment banker or other qualified professional to manage the sale process.

6. Notably, this is a sale case and Ms. Roof is not an investment banker and AP Services is not a licensed broker/dealer. That role should be performed by Macquarie under its preexisting engagement letter, or another qualified investment banker or broker. But the Lender protested the Debtors' plan to retain Macquarie as investment banker in these Cases because it was unwilling to pay an investment banking fee to Macquarie in the event the sale process results in a credit bid by the Lender, and an arrangement acceptable to both Macquarie and the Lender was never reached. Nor has the Lender agreed to fund the retention of any other investment banker or qualified professional to market the Debtors' oil & gas assets. Thus, the Debtors find themselves hurtling towards an expedited sale process with no experienced, qualified professional to manage the process.

7. The Committee deposed Mr. Plato and Ms. Roof in connection with several pending motions. What became clear from those depositions is that the sale process is being run by Mr. Plato, using Macquarie's work product, with AP Services performing a "facilitating" role. *See* Motion, ¶ 17. The testimony also revealed that Ms. Roof has never in her career run a sale process for the assets of an E&P company. Indeed, she further testified that in

her 30 year career, other than her brief tenure in the late 1970's working as an accountant for an E&P company, she has had no experience working for E&P companies save for a brief engagement that began in January of this year that is now dormant.  Ms. Roof may well be generally a competent and experienced turnaround professional, but marketing and selling oil & gas assets is a highly specialized endeavor that to be effective requires not just generalized knowledge but specific expertise and extensive familiarity with industry players that she does not possess.

8. The Committee respectfully submits that the regime put in place by the Lender is inadequate to the essential task of maximizing the value of the California Assets in a robust marketing and sale process.  Equally the case, the Committee does not believe it is appropriate to install a caretaker for the estate hand-picked by the Lender and saddle the estates with an annualized $2.1 million salary for a CRO who does not have experience running an E&P company or marketing and selling E&P assets to maximize their value for all stakeholders.  That is a central function of these Cases and the Debtors are not presently equipped to discharge that important responsibility.

9. Furthermore, the Committee objects to the Motion insofar as it contains language appearing to permit the Debtors and AP Services to reach agreement to establish a standard for a success fee without providing any right for the Committee, any other party in interest, or the Court to have input on the appropriate standard for such success fee, if any.  *See* Motion, ¶ 34. ("Pursuant to the terms of the Engagement Letter, the Debtors and APS agree to the Success Fee criteria by June 3, 2015. AlixPartners and Debtors will outline the mutually agreeable Success Fee criteria in an addendum to the Engagement Letter and will submit a copy to this Court.").

10. Finally, the Committee objects to the Motion insofar as it seeks to excuse AP Services from filing fee applications with the Court. The Debtors seek authority to compensate AP Services pursuant to the following procedures:

> 31. APS will submit monthly invoices to the Debtors, and the Debtors request authority to pay, in the ordinary-course of business, all reasonable amounts invoiced by APS for fees and expenses.
>
> 32. APS may from time to time add or delete staff and APS will file staffing reports to reflect such changes ("Staffing Reports"). Staffing Reports will include the names of and tasks fulfilled by the CRO and all full- and part-time APS Personnel involved in these chapter 11 cases and a summary chart that describes the compensation earned and expenses incurred by each APS Personnel for the relevant period. The U.S. Trustee and the counsel to any statutory committee appointed in these chapter 11 cases ("Notice Parties") shall have 14 days after the date each Staffing Report is served upon them to object to each Staffing Report. The Staffing Reports, APS' staffing decisions, and all compensation identified in the Staffing Report will be subject to review by the Court in the event an objection is filed. APS will file its first Staffing Report by June 30, 2015, for the period covering the Petition Date through May 31, 2015.
>
> 33. Upon approval of the relief requested, APS will not be employed as a professional under section 327 of the Bankruptcy Code, and it will not submit quarterly fee applications pursuant to Bankruptcy Code sections 330 and 331. APS will, however, file with the Court, and provide notice to the Office of the U.S. Trustee and the counsel to any statutory committee appointed in these chapter 11 cases, reports of compensation earned and expenses incurred on at least a quarterly basis ("Compensation Reports"). Such reports shall summarize the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Such compensation and expenses will be subject to Court review in the event an objection is filed.

Motion, ¶¶ 31-33.

11. If the Court authorizes the retention of AP Services over the Committee's objection, the Committee requests that the Court require AP Services to follow a more

5

transparent procedure regarding its requests for compensation, rather than the procedure described above. Filing fee applications should be required consistent with prior CRO engagements in this jurisdiction and elsewhere. Representative examples of such engagements are annexed hereto as Exhibit "A."

12. Specifically, the Committee requests that AP Services follow the procedure set forth below in order to receive compensation from these estates:

> AP Services shall file with the Court, and provide notice to the U.S. Trustee and the Committee, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts, which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. The time entries shall identify the time spent completing each task in .5 hour increments and the corresponding charge (time multiplied by hourly rate) for each task. Such reports shall provide for an objection period of 21 days from the filing and service of such reports. All compensation shall be subject to review by the Court in the event an objection is filed.

The foregoing procedure is more transparent, provides parties in interest with the opportunity to review fees being incurred on a monthly basis, and is consistent with orders authorizing the retention of CROs in other large cases.

6

WHEREFORE, for the foregoing reasons, the Committee requests that the Motion be denied.

Dated: June 2, 2015

*/s/ Jason R. Searcy*
Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone:  (903) 757-3399
Facsimile:    (903) 757-9559
Email:  jsearcy@jrsearcylaw.com

Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:    (310) 201-0706
Email:  jpomerantz@pszjlaw.com
           rfeinstein@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*