**EXHIBIT "A"**



U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

United States Bankruptcy Judge

Signed July 27, 2011

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Case No. 11-33912** |
| | § | |
| **HINGHAM CAMPUS, LLC and** | § | **Chapter 11** |
| **LINDEN PONDS, INC.** | § | |
| | § | **(Jointly Administered)** |
| Debtors. | § | |

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
FOR AUTHORIZATION TO (A) EMPLOY AND RETAIN ALVAREZ & MARSAL
HEALTHCARE INDUSTRY, LLC TO PROVIDE HINGHAM CAMPUS, LLC A
CHIEF RESTRUCTURING OFFICER, AND ADDITIONAL PERSONNEL,
AND (B) TO DESIGNATE PAUL RUNDELL AS THE CHIEF RESTRUCTURING
OFFICER AND FOR HINGHAM CAMPUS, LLC
*NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application, dated June 17, 2011 (the "Application"),[1] of Hingham Campus,

LLC, ("Hingham"), the above-captioned debtor and debtor in possession, for authority pursuant

to 105(a) and 363(b), (i) to employ and retain Alvarez & Marsal Healthcare Industry, LLC

("A&M") to provide Hingham a Chief Restructuring Officer ("CRO"), and, as necessary, the

Additional Personnel, and (ii) to Appoint Paul Rundell as CRO, all nunc pro tunc to the Petition

---

[1] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Application.

Date, and all as more fully set forth in the Application; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and proper notice of the Application having been provided to the necessary parties, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having determined that the relief sought in the Application is in the best interests of Hingham, its creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Application is GRANTED to the extent provided herein; and it is further

ORDERED that in accordance with Bankruptcy Code section 363(b), Hingham is authorized to employ and retain A&M, nunc pro tunc to the Petition Date, pursuant to the terms and conditions of the Amended Engagement Letter; and it is further

ORDERED that the Debtors are authorized to designate Paul Rundell as the Chief Restructuring Officer, nunc pro tunc to the Petition Date; and it is further

ORDERED that the terms of the Amended Engagement Letter, including without limitation, the fee provisions and the indemnification provisions, are, subject and without

prejudice to the rights of parties under section 330 of the Bankruptcy Code as further set forth herein, reasonable terms and conditions of employment and are approved; and it is further

ORDERED that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or the United States Trustee Guidelines or any other guidelines regarding submission and approval of fee applications, in light of the services to be provided by A&M and the structure of A&M's compensation pursuant to the Amended Engagement Letter, A&M and its professionals shall be required to maintain time records, as set forth below, in connection with the services to be rendered pursuant to the Amended Engagement Letter; A&M shall file monthly reports identifying each A&M professional (including Mr. Rundell) engaged in performing services for the Debtors, the number of hours worked that month by each respective professional, a brief description of the tasks performed by each individual and the total of compensation earned, and parties-in-interest in these chapter 11 cases shall have the right to object to fees paid and expenses reimburse to A&M. Further, A&M shall file Quarterly Fee Applications listing time in increments of 1/10th of an hour identified by task code, pursuant to a list of task codes submitted to and approved by the US Trustee;

ORDERED that A&M's fees and expenses shall be evaluated under the reasonableness standards set forth in section 330 of the Bankruptcy Code.

ORDERED that the Debtors are authorized to pay A&M in such amounts and at such times as is provided in the Amended Engagement Letter without further order of this Court; and it is further

ORDERED, that the indemnification provisions of the Indemnification Agreement are approved; and it is further

EAST\44969754.1

3

ORDERED, that if, before the entry of an order closing these chapter 11 cases, any Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement, including without limitation the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Parties; and it is further

ORDERED, that no party may bring against any Indemnified Party any suit, proceeding or other action relating in any way to the Debtors or these chapter 11 cases in any court located in any jurisdiction without an application to and order of this Court; and it is further

ORDERED that this Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

**###End of Order###**



ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 24, 2009**

_____
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 09-37010** |
| | § | |
| **ERICKSON RETIREMENT** | § | **CHAPTER 11** |
| **COMMUNITIES, LLC,** *et al.*[1] | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | |

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 363(b) FOR
AUTHORIZATION TO (A) EMPLOY AND RETAIN ALVAREZ & MARSAL
HEALTHCARE INDUSTRY, LLC TO PROVIDE THE DEBTORS A CHIEF
RESTRUCTURING OFFICER, AN EXECUTIVE VICE PRESIDENT OF
RESTRUCTURING, AND ADDITIONAL PERSONNEL AS CRISIS MANAGERS, AND
(B) TO DESIGNATE GUY SANSONE AS THE CHIEF RESTRUCTURING OFFICER
AND PAUL RUNDELL AS EXECUTIVE VICE PRESIDENT OF RESTRUCTURING
FOR THE DEBTORS NUNC PRO TUNC TO THE COMMENCEMENT DATE**

Upon the application, dated October 20, 2009 (the "Application"),[2] of the above-

captioned debtors and debtors in possession (the "Debtors"), for authority pursuant to 105(a) and

---

[1] The Debtors in these chapter 11 cases are Erickson Retirement Communities, LLC, Ashburn Campus, LLC, Columbus Campus, LLC, Concord Campus GP, LLC, Concord Campus, LP, Dallas Campus GP, LLC, Dallas Campus, LP, Erickson Construction, LLC, Erickson Group, LLC, Houston Campus, LP, Kansas Campus, LLC, Littleton Campus, LLC, Novi Campus, LLC, Senior Campus Services, LLC, Warminster Campus GP, LLC, Warminster Campus, LP.

363(b), (i) to employ and retain Alvarez & Marsal Healthcare Industry, LLC ("A&M") to provide the Debtors a chief restructuring officer, an executive vice president of restructuring, and additional personnel as Crisis Managers, and (ii) to appoint Guy Sansone as Chief Restructuring Officer and Paul Rundell as Executive Vice President of Restructuring, all nunc pro tunc to the Petition Date, and all as more fully set forth in the Application; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409, and due and proper notice of the Application having been provided to the necessary parties, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the record of the Hearing, and all of the proceedings had before the Court; and the Court having determined that the relief sought in the Application is in the best interests of the Debtors, their creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Application is GRANTED to the extent provided herein; and it is further

ORDERED that in accordance with Bankruptcy Code section 363(b), the Debtors are authorized to employ and retain A&M, nunc pro tunc to the Petition Date, pursuant to the terms and conditions of the Engagement Letter; and it is further

---

[2] Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings provided in the Application.

EAST\42619800.1

ORDERED that the Debtors are authorized to designate Guy Sansone as the CRO and Paul Rundell as the Executive Vice President of Restructuring, nunc pro tunc to the Petition Date; and it is further

ORDERED that the terms of the Engagement Letter, including without limitation, the fee provisions and the indemnification provisions, are, subject and without prejudice to the rights of parties under section 330 of the Bankruptcy Code as further set forth herein, reasonable terms and conditions of employment and are approved provided however that (i) Guy Sansone shall work a minimum of 80 hours per month in connection with his engagement as Chief Restructuring officer and that A&M Shall be compensated for Mr. Sansone's services the amount of $65,000 per month; should Mr. Sansone work fewer than 80 hours per month on average for any given quarter the estate shall receive a credit in the amount of $812.50 per hour for any such shortfall, and (ii) any success/transaction fees, payable post petition, provided in the Engagement Letter and described in Paragraph 21 of the Application are capped at the amount of $1,500,000; and it is further

ORDERED that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, or the United States Trustee Guidelines or any other guidelines regarding submission and approval of fee applications, in light of the services to be provided by A&M and the structure of A&M's compensation pursuant to the Engagement Letter, A&M and its professionals shall be required to maintain time records, as set forth below, in connection with the services to be rendered pursuant to the Engagement Letter; A&M shall file monthly reports identifying each A&M professional (including Sansone) engaged in performing services for the Debtors, the number of hours worked that month by each respective professional, a brief description of the tasks performed by each individual and the

total of compensation earned, and parties-in-interest in these Chapter 11 cases shall, subject to the time periods set forth in the Interim Fee Procedures Order, have  the right to object to fees paid and expenses reimburse to A&M. Further, A&M shall file Quarterly Fee Applications listing time in increments of 1/10th of an hour identified by task code (with the exception of Sansone who is retained on a fixed fee arrangement), pursuant to a list of task codes submitted to and approved by the US Trustee;

ORDERED that other than with respect to the Success/Transaction Fee set forth below, A&M's fees and expenses shall be evaluated under the reasonableness standards set forth in section 330 of the Bankruptcy Code.  The Court, the Official Committee of Unsecured Creditors (the "Committee"), and the United States Trustee (the "U.S. Trustee") shall be permitted to review the Success/Transaction Fees (as defined in the Agreement) pursuant to the reasonableness standards set forth in section 330 of the Bankruptcy Code; provided, however, that in determining the reasonableness of the Success/Transaction Fees under section 330, among other factors that the Court, the Committee, and the U.S. Trustee should consider is whether the Transaction Fees are comparable to the range of fees paid to crisis managers in comparable transactions both in and outside of court in this and other Districts, as provided in section 330(a)(3)(F) of the Bankruptcy Code.  Neither the U.S. Trustee nor A&M shall rely upon this provision as binding precedent in any other chapter 11 proceedings; and it is further

ORDERED that nothing in this Order shall prejudice the later allocation of A&M's fees and expenses among the Debtors' various estates, if such is necessary; and it is further

ORDERED that the Debtors are authorized to pay A&M in such amounts and at such times as is provided in the Engagement Letter and the Interim Compensation Order without further order of this Court; and it is further

EAST\42619800.1

ORDERED, that the indemnification provisions of the Indemnification Agreement are approved; and it is further

ORDERED, that if, before the entry of an order closing these chapter 11 cases, any Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement, including without limitation the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution or reimbursement, and is not a provision limiting the duration of the Debtors' obligation to indemnify Indemnified Parties; and it is further

ORDERED, that no party may bring against any Indemnified Party any suit, proceeding or other action relating in any way to the Debtors or these chapter 11 cases in any court located in any jurisdiction without an application to and order of this Court; and it is further

ORDERED that this Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

###End of Order###

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
01/07/2010**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| et al. | § | |
| | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | **Chapter 11** |

**ORDER APPROVING APPLICATION TO EMPLOY AND
RETAIN (I) GRANT THORNTON LLP TO PROVIDE MANAGEMENT
AND RESTRUCTURING SERVICES TO THE DEBTORS AND
(II) JOHN BITTNER AS DEBTORS' CHIEF RESTRUCTURING OFFICER**

Upon consideration of the application (the "Application") to employ and retain (I) Grant Thornton LLP ("Grant Thornton") to provide management and restructuring services to the Debtors and (II) John Bittner ("Bittner") as Debtors' Chief Restructuring Officer; and upon the affidavit of John Bittner ("Bittner"), partner at Grant Thornton LLP (the "Affidavit"); and the Court being satisfied on the representations made in the Application and Affidavit that (i) Grant Thornton LLP ("Grant Thornton") and Bittner represent no interest adverse to the Debtors' estates or their creditors with respect to the matters upon which they are to be engaged, (ii) Grant Thornton and Bittner are "disinterested persons" as that term is defined under § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code; and (iii) that the employment of Grant Thornton to provide management and restructuring services to the Debtors and Bittner as Debtors' Chief Restructuring Officer ("CRO") is necessary and is in the best interests of the Debtors' estates; the Court finds after due deliberation and sufficient cause appearing therefore, that it is hereby

ORDERED that the Application is granted as provided herein; and it is further

ORDERED that, the Debtor is authorized and empowered to employ and retain Grant Thornton to provide crisis management services to the Debtors and to employ and retain Bittner as Debtors' CRO in the above-titled cases on the terms set out in the Application and this Order, *nunc pro tunc* to December 4, 2009 and such retention is hereby approved; and it is further

ORDERED that, other than the timing of the payment of fees for the services rendered by Bittner as CRO, Grant Thornton shall be compensated in accordance with the terms described in the engagement letter entered into between the Debtors and Grant Thornton dated January 5, 2010 (the "Engagement Letter"), and any order made applicable to professionals in these cases that establishes procedures for interim and final compensation and reimbursement of expenses as may be fixed by order of this Court (the "Professional Fee Order"). Grant Thornton shall also be deemed an "Estate Professional" and share the benefit of the "Carve Out" set forth in the Interim or any Final Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing, and (II) Granting Security Interests and Superpriority Claims (the "DIP Order"). It is further

ORDERED that, in accordance with the Application and Engagement Letter, fees for Bittner's services as CRO will be paid by the Debtors to Grant Thornton on a bi-weekly basis, effective immediately from the date of this Order, but otherwise shall be subject to the Professional Fee Order; and it is further

ORDERED that, as provided in the Engagement Letter, the Debtors shall indemnify, hold harmless and defend Bittner, Grant Thornton and its affiliates and its and their present, future, and former partners, principals, directors, employees, contractors, independent contractors, temporary staff and agents (collectively, the "Indemnitees") from and against all claims, liabilities, losses, demands, fees, expenses, damages and costs (including defense costs) arising

from or relating to Grant Thornton's provision of management and restructuring services to the Debtors or Bittner's service as CRO (collectively, "Claims"), as defined in the Engagement Letter. The Indemnitees shall not be liable to the Debtors except for actual damages resulting from willful misconduct or fraud. It is further

ORDERED that, with respect to management decisions and actions that would ordinarily be brought before the board of directors or would require authorization by the board of directors, Grant Thornton and Bittner as CRO, as officers and employees of the Debtors, shall present the issue, solicit input, and discuss any proposed course of action as best as possible given the relevant circumstances and any potential conflicts of interest with Messrs. Kazeminy and Candies, the "DIP Lenders" (as defined in the DIP Order), the Unsecured Creditors' Committee, General Electric Capital Corporation, any other secured creditors or parties in interest that may have an actual or specific interest in the outcome of a particular decision (collectively, the "Consultative Parties"), or, for any of the foregoing, their respective designated representatives. However, these discussions, regardless of the positions taken by the respective creditors, will not be binding on Bittner or Grant Thornton in any way, who shall at all times retain full decision-making authority. If there is a matter concerning which one or more of the Consultative Parties have a conflict of interest pursuant to which they would not be allowed to participate as a director of a corporation under Texas law if a similar conflict arose, then Mr. Bittner and Grant Thornton shall not be required to consult with such Consultative Party; It is further

ORDERED that Grant Thornton and Bittner shall not have or incur any Claim by any party (or any of its agents, employees, representatives, current or former members, financial advisors, attorneys or affiliates) or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the management and restructuring services

- 3 -

provided, or to be provided, pursuant to the Engagement Letter and this Order, except for claims arising from their willful misconduct or fraud; it is further

ORDERED that the Debtors, their officers, employees and agents, are authorized to take or refrain from taking such acts as are necessary and appropriate to implement and effectuate the relief granted herein; and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

If there is a conflict between this order and any of the attached documents, this order controls. Notwithstanding anything in any attached document to the contrary, Mr. Bittner or Grant Thornton's liability for any act of willful misconduct or fraud is not limited.

Dated: __1/6/10_____

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15   Entered 06/02/15 16:50:18   Page 15 of 39
Case 09-39313   Document 118   Filed in TXSB on 01/06/10   Page 5 of 18

Case 09-39313   Document 113   Filed in TXSB on 01/06/10   Page 5 of 18



Audit • Tax • Advisory
Grant Thornton LLP
333 Clay St. Suite 2600
Houston, TX 77002
Tel: 832-476-3600

www.GrantThornton.com

January 5, 2010

**Deep Marine Holdings, Inc.**
**Attn: Nasser Kazeminy and Otto Candies, III**
**20411 Imperial Valley**
**Houston, Texas 77073**

Re: Interim Management and Restructuring Services

Dear Messrs. Kazeminy and Candies:

This letter, together with the attached Schedule(s), Exhibit and General Terms and Conditions, sets forth the agreement ("Agreement") between Grant Thornton LLP, a limited liability partnership ("Grant Thornton"), and Deep Marine Holdings, Inc. and subsidiaries (collectively the "Company"), for the engagement of Grant Thornton to provide certain temporary staff to the Company to assist it in its restructuring as described below *nunc pro tunc* to December 4, 2009. Grant Thornton was previously retained by the Company pursuant to an engagement letter dated November 20, 2009 to provide certain financial and restructuring advisory services (the "Prior Retention"). Upon the retention of Grant Thornton pursuant to this Agreement and approval by the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), the Prior Retention will be deemed terminated and superseded.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s), Exhibit and General Terms and Conditions.

Generally, the engagement of Grant Thornton, including any Grant Thornton partners, principals or employees who serve in Executive Officer positions, shall be under the supervision of the Board of Directors of the Company. However, in these cases because of the planned resignation of the existing Board of Directors, John Bittner shall have sole and exclusive decision-making authority for the Debtors during the term of this Agreement. With respect to management decisions and actions that would ordinarily be brought before the board of directors or would require authorization by the board of directors, Grant Thornton and John Bittner as CRO, as officers and employees of the Company, shall present the issue, solicit input, and discuss the proposed course of action as best as possible given the relevant circumstances and any potential conflicts of interest with Messrs. Kazeminy and Candies, the "DIP Lenders" (as defined in the DIP Order (as defined below)), the Unsecured Creditors' Committee, any other secured creditor or party in interest that may have an actual direct or particular interest in the outcome of a specific decision, such as

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 16 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 6 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 6 of 18

DEEP MARINE TECHNOLOGY, INC.
January 5, 2010
Page 2

(by way of example only and not limitation) the sale of a vessel or other equipment that may be subject to a lien, or, for any of the foregoing, their respective designated representatives. However, these discussions, regardless of the positions taken by the respective creditors and parties in interest, will not be binding on John Bittner or Grant Thornton in any way, who shall at all times retain full decision-making authority.

Although Grant Thornton has been providing interim management and restructuring services to the Company since December 4, 2009, no Grant Thornton partner, principal or employee will assume an Executive Office of the Company until the Bankruptcy Court enters an order approving this Agreement.

## OBJECTIVE AND TASKS

Grant Thornton will provide John Bittner to serve as the Company's Chief Restructuring Officer. Working collaboratively with the senior management team and other Company professionals, John Bittner will assist the Company in evaluating and implementing strategic and tactical options through the restructuring process. In addition to the ordinary course duties of the Chief Restructuring Officer, the Temporary Staff (as defined below) roles will include working with the Company and its team to do the following:

- Manage the Company's financial and treasury functions.

- Evaluate the Company's current level of staffing and compensation of existing employees.

- Provide leadership to the financial function including, without limitation, assisting the Company in (i) strengthening the core competencies in the finance organization, particularly cash management, planning, general accounting and financial reporting information management and (ii) formulation and negotiation with respect to a plan of reorganization.

- Assist with the preparation of the statement of affairs, schedules and other regular reports required by the Bankruptcy Court or which are customarily issued by the Company's Chief Financial Officer as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within Grant Thornton's areas of expertise.

- Assist with financing issues during the bankruptcy case and in conjunction with the Plan of Reorganization or which arise from the Company's financing sources outside of the United States.

- Lead negotiations with stakeholders and their representatives.

Lovells

DEEP MARINE TECHNOLOGY, INC.
January 5, 2010
Page 3

- Coordinating and providing support for the proceeding and developing the Company's Plan of Reorganization or other appropriate case resolution, if necessary.

- Assist in negotiations with potential acquirers of Company assets.

- Manage the "working group" professionals who are assisting the Company in the reorganization process or who are working for the Company's various stakeholders to improve coordination of their effort and individual work product to be consistent with the Company's overall restructuring goals.

- Work with the Company and its senior management team to further identify and implement both short-term and long-term liquidity generating initiatives, including collection of existing accounts receivable.

- Assist in developing and implementing cash management strategies, tactics and processes. Work with the Company's treasury department and other professionals and coordinate the activities of the representatives of other constituencies in the cash management process.

- Assist in overseeing and driving financial performance in conformity with the Company's business plan.

- Assist management with the development of the Company's revised business plan, and such other related forecasts as may be required by the bank lenders in connection with negotiations or by the Company for other corporate purposes.

- Supervise the preparation of regular reports required by the Bankruptcy Court or which are customarily issued by the Company's Chief Financial Officer, management of the claims and claims reconciliation processes as well as providing assistance in such areas as testimony before the Bankruptcy Court on matters that are within Grant Thornton's areas of expertise.

- Lead communication and/or negotiation with outside constituents including the banks and their advisors.

- Assist the Company with electronic data collection.

- Assist with such other matters as may be requested that fall within Grant Thornton's expertise and that are mutually agreed upon.

Grant Thornton and the Company recognize that certain services listed above may not be performed or that certain other services may be performed depending on facts and circumstances that may emerge during the course of this engagement.

DEEP MARINE TECHNOLOGY, INC.
January 5, 2010
Page 4

### STAFFING

Grant Thornton will provide the Company with the individuals set forth on Exhibit A ("Temporary Staff"), subject to the terms and conditions of this Agreement, with the titles, pay rates and other descriptions set forth therein.

The Temporary Staff may be assisted by or replaced by other professionals at various levels, as required, who shall also become Temporary Staff. Grant Thornton will keep the Company informed as to Grant Thornton's staffing and will not add additional Temporary Staff to the assignment without first consulting with the Company to obtain Company concurrence that such additional resources are required and do not duplicate the activities of other employees or professionals.

If Grant Thornton finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) Grant Thornton will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that Grant Thornton is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time Grant Thornton is involved in providing services to the Company.

### EXCULPATION

Because of the potential for the resignation of a board of directors, and based on the concerns Grant Thornton has in having sole decision-making authority in these Cases without the customary oversight of a board, it shall be a condition of Grant Thornton and John Bittner's retention in these Cases that, in addition to the other protections afforded them in this Agreement and its attachments, they shall have the benefit of an order reasonably satisfactory to Grant Thornton providing them with exculpation from actions or omissions taken or to be taken pursuant to this engagement, other than with respect to actions arising from their [gross negligence- **Not Consented to by GT**], willful misconduct or fraud.

### TIMING, FEES AND RETAINER

Grant Thornton will commence this engagement effective as of December 4, 2009 after receipt of a copy of the Agreement executed by the Company accompanied by the Retainer, as set forth on Schedule 1.

The Company shall compensate Grant Thornton for its services, and reimburse Grant Thornton for expenses, as set forth on Schedule 1.

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 19 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 9 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 9 of 18

DEEP MARINE TECHNOLOGY, INC.
January 5, 2010
Page 5

\* \* \*

The Company will promptly apply to the Bankruptcy Court to obtain approval of Grant Thornton's retention and Retainer *nunc pro tunc* to the date of the filing. However, although Grant Thornton has been providing interim management and restructuring services to the Company since December 4, 2009, no Grant Thornton partner, principal or employee will assume an Executive Office of the Company until the Bankruptcy Court enters an order approving this Agreement.

The terms and conditions set out in the attached Schedule(s), Exhibit and the General Terms and Conditions form part of the Agreement and are incorporated by reference herein.

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to working with you.

Sincerely yours,

GRANT THORNTON LLP


JOHN D. BITTNER
Partner

Acknowledged and Agreed to:

DEEP MARINE HOLDINGS, INC.

By: _____

Its: _____

Dated: _____


By: _____

Its: _____

Dated: _____

Lovells

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 20 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 10 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 10 of 18

**Grant Thornton LLP**
**Employment by DEEP MARINE HOLDINGS, INC.**

**Exhibit A**

**Temporary Staff**
**Individuals With Executive Officer Positions**

| Name | Description | Hourly Rate | Commitment Full[1] or Part Time |
|---|---|---|---|
| John Bittner | Chief Restructuring Officer | $665 | Full |

**Additional Temporary Staff**

| Name | Description | Hourly Rate | Commitment Full[1] or Part[2] Time |
|---|---|---|---|
| Tony Gerbino | Operations Manager | $610 | Part |
| Jeff Whetzel | Finance Manager | $465 | Part |

The parties agree that Exhibit A can be amended by Grant Thornton from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

[1] Full time is defined as substantially full time.

[2] Part time is defined as approximately 2-3 days per week, with some weeks more or less depending on the needs and issues facing the Company at that time.

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 21 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 11 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 11 of 18

## SCHEDULE 1

### FEES AND EXPENSES

1.  **Fees:** Grant Thornton's fees will be based on the hours worked by Grant Thornton personnel at Grant Thornton's hourly rates, which are:

| | |
|---|---|
| Partners / Principals | $665 - $695 |
| Directors | $550 - $610 |
| Managers | $410 - $465 |
| Senior Associates | $290 - $360 |
| Associate | $210 - $250 |
| Paraprofessionals | $75 - $150 |

Grant Thornton reviews and revises its billing rates on August 1 of each year.

The Company understands and acknowledges that Grant Thornton shall be deemed an "Estate Professional" and that it shares the benefit of the "Carve Out" set forth in the Interim or any Final Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing, and (II) Granting Security Interests and Superpriority Claims (the "DIP Order").

The Company understands and acknowledges that these fees are Grant Thornton's compensation for the engagement and will use best efforts to have them allowed and paid as an administrative expense pursuant to section 503 of the Bankruptcy Code and pursuant to any order governing professional compensation that establishes procedures for interim and final compensation and reimbursement of expenses (the "Professional Fee Order") as may be fixed by order of the Bankruptcy Court.

For the hourly fees applicable to Mr. John Bittner's planned service to the Company as its Chief Restructuring Officer, the Company expressly agrees that such fee will be paid to Grant Thornton on a bi-weekly basis. Mr. Bittner's expenses shall be governed by Section 2, immediately below.

2.  **Expenses:** In addition to the fees set forth herein, the Company shall pay directly, or reimburse Grant Thornton upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, meals and lodging in accordance with the Professional Fee Order. Grant Thornton shall be entitled to reimbursement of its reasonable attorney's fees and expenses

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 22 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 12 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 12 of 18

incurred in assisting Grant Thornton with its engagement and compliance with the requirements of the Bankruptcy Code.[1]

3.    **Retainer:**  As of the commencement of the Chapter 11 Bankruptcy Case, the Company had deposited a retainer of $106,985.00 with Grant Thornton to be applied against Fees and Expenses as set forth in this Schedule and in accordance with Section 2 of the attached General Terms and Conditions.

---

[1] As set forth in the General Terms and Conditions, in the event that the Company is unable to include Temporary Staff under the Company's D&O insurance policy or does not have first dollar coverage acceptable to Grant Thornton in effect for at least $10 million (e.g., such policy is not reserved based on actions that have been or are expected to be filed against officers and directors alleging prior acts that may give rise to a claim), Grant Thornton may, at its option, attempt to purchase a separate D&O policy that will cover the Temporary Staff only. The cost of same shall be invoiced to the Company as an out-of-pocket cash expense.

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 23 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 13 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 13 of 18

### SCHEDULE 2

### DISCLOSURES

Grant Thornton has caused to be submitted for review, by its conflicts check system, the names of significant parties in interest in this case. Grant Thornton completed a search of its client database for the past five years to determine whether it has had or has any relationships with the following entities:

a) The Company and its affiliates;

b) The Company's current directors and officers and certain of their most significant business affiliations, as provided to Grant Thornton by the Company;

c) The Company's largest unsecured creditors, as identified in the lists filed with the Company's Chapter 11 petitions;

d) The Company's pre- and post-petition lenders;

e) The Company's other key creditors/suppliers, customer or other large and critical relationships; and,

f) Various other potential parties in interest, as identified by the Company.

Based on this search, Grant Thornton knows of no fact or situation that would represent a conflict of interest for Grant Thornton with regard to the Company. However, Grant Thornton wishes to disclose the following:

1. Grant Thornton is currently providing professional services to Aramark in matters unrelated to the Company.

2. Grant Thornton is currently providing professional services to Baker Botts LLP in matters unrelated to the Company.

3. Grant Thornton has previously provided and is currently providing professional services to Bracewell Giuliani LLP in matters unrelated to the Company.

4. Grant Thornton is currently providing professional services to General Electric Capital Fleet Services and General Electric Company in matters unrelated to the Company.

5. Grant Thornton is currently providing professional services to Hydro, Inc. in matters unrelated to the Company.

6. Grant Thornton is currently providing professional services to McDermott, Will & Emery LLP in matters unrelated to the Company.

Lovells

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15    Entered 06/02/15 16:50:18    Page 24 of 39
Case 09-39313   Document 118   Filed in TXSB on 01/06/10   Page 14 of 18

Case 09-39313   Document 113   Filed in TXSB on 01/06/10   Page 14 of 18

7.  Grant Thornton is currently providing professional services to PNC Bank N.A. in matters unrelated to the Company.

8.  Grant Thornton is currently providing professional services to U.S. Bank N.A. in matters unrelated to the Company.

This Schedule 2 may be updated by Grant Thornton from time to time to disclose additional connections or relationships between Grant Thornton and the interested parties.

## GENERAL TERMS & CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the letter agreement ("Agreement") between the Company and Grant Thornton to which these Terms are attached.

### Section 1. Company Responsibilities

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by Grant Thornton in connection with this Agreement.

Grant Thornton's delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Bankruptcy Court Approval

On December 4, 2009 (the "Petition Date"), the Company filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") for relief under Chapter 11, title 11 of the United States Code (the "Bankruptcy Code"). The Company represents that it shall promptly move before the Bankruptcy Court for approval of this Agreement and all of the terms contained herein, *nunc pro tunc* to the Petition Date, and further that it shall, if the timing of the approval process will be delayed, seek an order approving the Agreement on an interim basis pending final approval by the Bankruptcy Court, including without limitation the payment of any amounts due and owing. This Agreement, and Grant Thornton's obligations and responsibilities relating to this engagement, are expressly subject to and conditioned upon Bankruptcy Court Approval of the Agreement in its entirety. In the event that the Bankruptcy Court does not approve this Agreement in its entirety within 15 days of the date of this Agreement, Grant Thornton may, in its sole discretion, without prejudice to its other rights and remedies and without any liability arising there from, terminate this Agreement. Without limiting the generality of the foregoing, Grant Thornton may, in its sole discretion, extend the foregoing 15-day deadline for Bankruptcy Court approval. In the event the Bankruptcy Court approves the Agreement, but deletes or holds unenforceable certain provisions thereof, Grant Thornton in its sole discretion may accept the Agreement as modified, or may terminate the engagement as set forth above, all without prejudice to its other rights and remedies. In the event that Grant Thornton elects to terminate this Agreement, then, promptly upon Grant Thornton's request, the Company hereby agrees to withdraw or amend any application filed with the Bankruptcy Court to approve Grant Thornton's retention in the Case.

Grant Thornton and the Company recognize that certain of the Services being provided and outlined in the Agreement may not be performed or that certain other services may be performed depending on facts and circumstances that may emerge during the course of the Engagement. For example, if any requested Services, in Grant Thornton's sole determination, contravene any professional standards or Firm policies, Grant Thornton will not perform such services. In the event that Grant Thornton determines, in its sole discretion, that additional services requested are beyond the scope of this original engagement, the Company agrees to file a motion with the Bankruptcy Court seeking approval of the expansion of Grant Thornton's retention to include the additional Services.

### Section 3. Retainer, Billing and Payments

**Retainer and Billing.** Grant Thornton will submit weekly statements for services rendered and expenses incurred. Such invoices shall list the names, hourly rates, the total hours worked, and a brief description of the services rendered by the relevant personnel. Grant Thornton shall not be obligated to provide a breakdown of those services by tenths of an hour. Grant Thornton will hold the retainer on account, and will bill semi-monthly for the services of its personnel, which bills shall be paid promptly upon receipt or in accordance with the Agreement, as applicable. Any remaining retainer balance held by Grant Thornton shall be applied to the final statement. Any unearned portion of the retainer will be refunded to the Company at the termination of this engagement.

If there is a breach of any payment obligation under this Agreement and such breach is not cured within fifteen (15) days of its receipt of written notice of such breach, we may immediately (a) suspend performance of the Services, (b) change the payment conditions under this Agreement so that the Company must pay us weekly and in advance or (c) terminate this Agreement. If we elect to suspend our performance due to nonpayment, the Services will not be resumed until your account is paid as agreed. Alternatively, if we elect to terminate the Services due to nonpayment, you will be obligated to compensate us for all time expended and to reimburse us for all expenses through the date of termination.

The Company agrees to pay the reasonable fees and out of pocket expenses of outside counsel for Grant Thornton incurred in connection with the negotiation and documentation of this Agreement, any amendments thereto, and the implementation and management of the engagement through the bankruptcy process.

**Payments.** All payments to be made by the Company to Grant Thornton shall be payable upon receipt of invoice via wire transfer to Grant Thornton's bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Harris, N.A. |
| Receiving Account: | ABA – 071 000 288 |
| | NAME – Grant Thornton LLP |
| | ACCT – 2750602 |

### Section 4. Relationship of the Parties

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, Grant Thornton will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its partners, principals and employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, neither the Temporary Staff nor Grant Thornton will be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. Grant Thornton will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

The Company shall not solicit, recruit or hire any partners, principals, employees or agents of Grant Thornton for a period of two years subsequent to the expiration or termination of the Agreement. If there is a breach of this provision, the Company will pay Grant Thornton a fee equal to the hired person's annual salary in effect at the time of the violation (unless a greater amount is contemplated in another existing Agreement between us and the Company) to reimburse us for the costs of hiring and training replacement personnel.

## GENERAL TERMS & CONDITIONS

### Section 5. Confidentiality

Grant Thornton shall keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither Grant Thornton nor the Temporary Staff will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Information shall not include Information that is disclosed to third parties or becomes publicly available other than by a breach by Grant Thornton or its personnel of their obligations under this Agreement.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, Grant Thornton or the Temporary Staff from disclosure pursuant to a valid subpoena, court order or as required by regulatory agencies, but neither Grant Thornton nor the Temporary Staff shall encourage, suggest, invite or request, or assist in securing, any such subpoena or court order; and the Temporary Staff shall promptly give notice of any such subpoena or court order by fax transmission to the Company. Grant Thornton and the Temporary Staff may make reasonable disclosures of Information to third parties in connection with the performance of Grant Thornton's obligations and assignments hereunder. In addition, Grant Thornton will have the right to disclose to others in the normal course of business its involvement with the Company.

The Company acknowledges that all Information (written or oral), including advice and Work Product (as defined in Section 5), generated by Grant Thornton and the Temporary Staff in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to Grant Thornton at any time in any manner or for any purpose without Grant Thornton's prior approval except as required by law.

### Section 6. Intellectual Property

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that Grant Thornton has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of Grant Thornton, and the Company shall not acquire any interest therein. Grant Thornton shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that Grant Thornton may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain Information or materials furnished to Grant Thornton by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that Grant Thornton creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and could constitute Information referred to in Section 4 above. Grant Thornton may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 7. Framework of the Engagement

The Company acknowledges that it is retaining Grant Thornton to provide the Temporary Staff solely to assist the Company in the management and restructuring of the Company.

Grant Thornton shall be obligated only for the Services described in this Agreement, and only for changes in such scope that are set forth in writing and duly executed by the parties hereto. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement or consulting engagement that is subject to the rules of the AICPA, the SEC, or other such state and national professional bodies.

### Section 8. Electronic Communications

During the course of the Services, Grant Thornton or the Company may need to electronically transmit confidential information to each other and to other entities engaged by either party. E-mail is not a secure means of communication and thus, confidentiality could be compromised. The Company agrees to the use of e-mail and other electronic methods to transmit and receive information, including Information, between Grant Thornton and the Company and between Grant Thornton and any third-party service providers or other entities engaged by either Grant Thornton or the Company. Grant Thornton shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond its reasonable control.

### Section 9. Indemnification and Other Matters

The Company shall indemnify, hold harmless and defend Grant Thornton and its affiliates and its and their present, future, and former partners, principals, directors, employees, contractors, independent contractors, Temporary Staff and agents (collectively, the "Indemnitees") from and against all claims, liabilities, losses, demands, fees, expenses, damages and costs (including defense costs) arising from or relating to this Agreement. The Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel and the costs of Grant Thornton's professional time (Grant Thornton's professional time will be reimbursed at Grant Thornton's rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an Indemnitee may be required or agree to participate but in which it is not a party. The Indemnitees may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

The Company shall specifically include and cover, as a benefit for their protection, Temporary Staff serving as officers of the Company or affiliates from time to time with direct coverage as named insureds under the Company's policy for directors' and officers' ("D&O") insurance. The Company shall provide certificates of such D&O insurance, in a form reasonably satisfactory to Grant Thornton, evidencing direct coverage of Temporary Staff serving as officers of the Company or affiliates as named insureds within 15 days of the entry of the Bankruptcy Court order approving this Agreement. The Company will maintain such D&O insurance coverage for the period through which claims can be made against such persons. The Company disclaims a right to distribution from the D&O insurance coverage with respect to such persons. Additionally, Grant Thornton may, at its option, attempt to purchase a separate D&O policy that will cover the Temporary Staff only. The cost of same shall be invoiced to the Company as an out-of-pocket cash expense. If Grant Thornton is unable to purchase such D&O insurance, then Grant Thornton reserves the right to terminate the Agreement.

Grant Thornton is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against Grant Thornton, whether or not

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 27 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 17 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 17 of 18

## GENERAL TERMS & CONDITIONS

Grant Thornton is instrumental in procuring the third-party product or service.

The Indemnitees shall not be liable to the Company in any way shape or form, except for actual damages resulting from willful misconduct or fraud (which claims shall not exceed the fees Grant Thornton receives for the portion of the work giving rise to such liability).

IN NO EVENT SHALL GRANT THORNTON BE LIABLE FOR, AND YOU HEREBY WAIVE, ANY INDIRECT, SPECIAL, CONSEQUENTIAL, INCIDENTAL, OR EXEMPLARY DAMAGES OR LOSS (NOR ANY LOST PROFITS, TAXES, INTEREST, PENALTIES, LOSS OF SAVINGS, OR LOST BUSINESS OPPORTUNITY.)

With respect to management decisions and actions (or inaction) that would ordinarily be brought before the board of directors, Temporary Staff shall present the issue, solicit input, and discuss the proposed course of action as best as possible given the relevant circumstances with Messrs. Kazeminy and Candies, the "DIP Lenders" (as defined in the DIP Order (as defined below)), the Unsecured Creditors' Committee, any other secured creditor, or party in interest that may have an actual direct or particular interest in the outcome of a specific decision, such as (by way of example only and not limitation) the sale of a vessel or other equipment that may be subject to a lien, or, for any of the foregoing, their respective designated representatives. However, these discussions, regardless of the positions taken by the respective creditors and parties in interest, will not be binding on John Bittner or Grant Thornton in any way, who shall at all times retain full decision-making authority. .

### Section 10. Governing Law

The Agreement is governed by and shall be construed in accordance with the laws of the State of Illinois with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in Chicago, Illinois under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. However, in the event the Company is under the protection of the Bankruptcy Code, the arbitration provisions shall apply only to the extent that the Bankruptcy Court, or the U.S. District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

### Section 11. Successors and Affiliates

(a)   Except to the extent expressly provided hereto to the contrary, no third-party beneficiaries are intended under this Agreement.

(b)   This Agreement is binding on each party hereto and on each of its successors, assigns, heirs, legatees and legal representatives.

(c)   The Company shall not assign any rights, obligations or claims relating to this Agreement.

### Section 12. Termination and Survival

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination Grant Thornton will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of Grant Thornton.

In connection with any of the foregoing, if there has been a Change in Control of the Company, Grant Thornton may immediately terminate this Agreement immediately prior to such Change in Control and will be entitled to any fees and expenses due under the provisions of the Agreement. Such payment obligation shall inure to the benefit of any successor or assignee of Grant Thornton.

The Company may immediately terminate this Agreement for Cause (as defined below). Cause shall mean:

(a)   a Temporary Staff member acting on behalf of the Company is convicted of a felony, or

(b)   it is determined by the Bankruptcy Court, after motion and hearing regarding the same, that either (i) a Temporary Staff member is engaging in misconduct injurious to the Company, or (ii) a Temporary Staff member is breaching any of his or her material obligations under this Agreement.

Sections 2, 4, 5, 7, 8, 9 and 10 of these Terms, the provisions of Schedule 2 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 13. General

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) and Exhibit to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by Grant Thornton and the Temporary Staff and may not be amended or modified in any respect except in a writing signed by the parties. Grant Thornton is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties. If there is a conflict between these Terms and the balance of the Agreement, these Terms shall govern.

**Joint and Several.** If more than one Company signs this Agreement, the liability of each Company shall be joint and several.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to Grant Thornton, to:

Grant Thornton LLP
Attention: Peggy Zagel, General Counsel
175 W. Jackson Boulevard, 20th Floor
Chicago, IL 60604

With a copy to:
Lovells LLP
Attention: Robin E. Keller, Esq. and
    Christopher R. Donoho III, Esq.
590 Madison Avenue
New York, N.Y. 10022

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party. All

Case 15-31858-hdh11 Doc 188-1 Filed 06/02/15 Entered 06/02/15 16:50:18 Page 28 of 39
Case 09-39313 Document 118 Filed in TXSB on 01/06/10 Page 18 of 18

Case 09-39313 Document 113 Filed in TXSB on 01/06/10 Page 18 of 18

## GENERAL TERMS & CONDITIONS

notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

**Section 14. Disclosures**

Grant Thornton is not aware of any fact or situation, other than those disclosed in Schedule 2, which would represent a conflict of interest for Grant Thornton with regard to the Company. However, Grant Thornton has not completed a thorough check of the parties in interest with regard to the Company. Upon receiving additional information from the Company with respect to the parties in interest, Grant Thornton will promptly complete a search of its relationships and will notify the Company of any connections Grant Thornton may have with such parties in interest. While Grant Thornton is not aware of any relationships, other than those disclosed in Schedule 2, that connect Grant Thornton to any party in interest, because Grant Thornton is a consulting firm that serves clients on a international basis in numerous cases, it is possible that Grant Thornton may have rendered services to or have business associations with other entities which had or have relationships with the Company. Grant Thornton has not and will not represent the interests of any of the entities disclosed on Schedule 2 in this case.

Lovells

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                                       |   |                           |
|---------------------------------------|---|---------------------------|
| In re:                                | ) | Chapter 11                |
|                                       | ) |                           |
| LIFE UNIFORM HOLDING CORP., *et al.*,[1] | ) | Case No. 13-11391 (KJC)   |
|                                       | ) |                           |
| Debtors.                              | ) | Jointly Administered      |
|                                       | ) |                           |
|                                       | ) | **Related to Docket No. 67** |

**ORDER PURSUANT TO SECTION 105 AND 363 OF THE BANKRUPTCY
CODE AUTHORIZING AND APPROVING, EFFECTIVE
AS OF THE PETITION DATE, (I) AGREEMENT WITH CAPSTONE
ADVISORY GROUP, LLC TO PROVIDE ROBERT FREZZA TO SERVE
AS DEBTORS' CHIEF RESTRUCTURING OFFICER; AND (II) RETENTION
OF MR. FREZZA AND ADDITIONAL PERSONNEL**

Upon the motion, dated June 6, 2013 (the "Motion"),[2] of the debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), for

the entry of an order (the "Order"), authorizing the Debtors (1) to approve engagement

letter effective May 29, 2013 between the Debtors and Capstone Advisory Group, LLC

("Capstone"), and an addendum thereto, and attached to the Motion as **Exhibit A**

(collectively, the "Capstone Agreement") and (2) to authorize the Debtors to employ and

retain Mr. Robert Frezza of Capstone to serve as the Debtors' Chief Restructuring Officer

(the "CRO") and additional professional personnel of Capstone to assist the CRO

(collectively, the "Additional Personnel"); *nunc pro tunc* to the Petition Date (as defined

herein), all as more fully set forth in the Motion; pursuant to sections 105 and 363(b) of

the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016; and the Court having

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Life Uniform Holding Corp. (1018), Healthcare Uniform Company, Inc. (0640), and Uniform City National, Inc. (0392).

[2]  All capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and the Affidavit of Robert J. Frezza in Support of the Motion (the "Frezza Affidavit"), attached to the Motion as **Exhibit B**; and the Court being satisfied based on the representations made in the Frezza Affidavit that (a) Capstone does not hold or represent an interest adverse to the Debtors' estates and (b) Capstone is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as modified herein.

2. The Debtors are authorized to employ and retain Mr. Frezza as their CRO and the Additional Personnel of Capstone to assist the CRO pursuant to the terms and conditions set forth in the Motion, *nunc pro tunc* to the Petition Date, subject to the

following terms, which apply notwithstanding anything in the Motion or any exhibit(s)
related thereto to the contrary:

(a)    Capstone and its affiliates shall not act in any other capacity (for
example, and without limitation, as a financial advisor, claims
agent/claims administrator, or investor/acquirer) in connection with the
above-captioned cases.

(b)    In the event the Debtor(s) seek(s) to have Capstone personnel
assume executive officer positions that are different than the position(s)
disclosed in the Motion, or to materially change the terms of the
engagement by either (i) modifying the functions of personnel, (ii) adding
new personnel, or (iii) altering or expanding the scope of the engagement,
a motion to modify the retention shall be filed.

(c)    Capstone shall file with the Court with copies to the United States
Trustee ("U.S. Trustee") and all official committees a report of staffing on
the engagement for the previous month.  Such report shall include the
names and functions filled of the individuals assigned.  All staffing shall
be subject to review by the Court in the event an objection is filed.

(d)    No principal, employee or independent contractor of Capstone and
its affiliates shall serve as a director of any of the above-captioned
Debtor(s) during the pendency of the above-captioned cases.

(e)    Capstone shall not be required to submit fee applications pursuant
to sections 330 and 331 of the Bankruptcy Code, but will instead shall file
with the Court, and provide notice to the U.S. Trustee and all official

committees, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed.

(f)     Success fees, transaction fees, or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and are not being pre-approved by entry of this Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause, or appointment of a trustee.

(g)     The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtors' D&O policy.

(h)     There shall be no indemnification of Capstone or its affiliates.

PHIL1 2849124v.3

4

(i)     For a period of three years after the conclusion of the engagement, neither Capstone nor any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

(j)     Capstone shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor(s), its/their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

3.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Order shall constitute, nor is intended to constitute, an admission as to the validity or priority of any claim against the Debtors.

4.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

5.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of the Order shall be immediately effective and enforceable upon its entry.

6.     All time periods set forth in the Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

7.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to the Order in accordance with the Motion.

8.  The Court retains jurisdiction with respect to all matters arising from or related to all matters arising from or related to the implementation, interpretation, and enforcement of the Order.

Dated: _June 27_, 2013
Wilmington, Delaware

_____
Kevin J. Carey
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CACHÉ, INC., et al.,[1] | ) | Case No. 15-10172 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 20** |

### ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN FTI CONSULTING INC. TO PROVIDE A CHIEF RESTRUCTURING OFFICER, ADDITIONAL PERSONNEL, AND FINANCIAL ADVISORY AND RESTRUCTURING-RELATED SERVICES, *NUNC PRO TUNC* AS OF THE PETITION DATE, AND GRANTING LIMITED WAIVER OF DEL. BANKR. L.R. 2016-2

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors

and debtors in possession (the "Debtors") for an order, pursuant to sections 105(a) and 363(b) of

title 11 of the United States Code (the "Bankruptcy Code"): (a) authorizing the Debtors to retain

FTI Consulting Inc. ("FTI"), pursuant to the terms and conditions of that certain letter agreement

between FTI and the Debtors dated January 15, 2015 (the "Engagement Letter"), to (i) provide

Mark Renzi ("Mr. Renzi") as Chief Restructuring Officer ("CRO") of the Debtors, (ii) provide

the Additional Personnel, and (iii) provide financial advisory and restructuring-related services to

the Debtors, in each instance *nunc pro tunc* to the Petition Date; and (b) granting a limited

waiver of Local Rule 2016-2; the Court having reviewed the Motion and the Declaration of Mark

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Caché, Inc. (8181); Caché of Las Vegas, Inc. (9821); and Caché of Virginia, Inc. (9725). The location of the Debtors' headquarters and the service address for each of the Debtors is 256 W. 38th Street, New York, NY 10018.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Renzi in support of the Motion (the "Motion"); the Court finding that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue is proper in this district pursuant to 28 U.S.C. § 1409, and (d) notice of the Motion was sufficient under the circumstances; after due deliberation the Court having determined that the relief requested in the Motion is necessary and essential for the Debtors' estates and such relief is in the best interests of the Debtors, their estates and creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED, as set forth herein, nunc pro tunc as of the Petition Date.

2.     The Debtors are authorized to employ and retain FTI to provide Mr. Renzi as CRO, the Additional Personnel, and financial advisory and restructuring-related services in accordance with the terms and conditions set forth in the Engagement Letter, subject to the following terms, which apply notwithstanding anything in the Motion, the Engagement Letter or any exhibits related thereto to the contrary, effective nunc pro tunc as of the Petition Date.

3.     FTI and its affiliates shall not act in any other capacity (for example, and without limitation, as a director, financial advisor retained under section 327 of the Bankruptcy Code, claims agent/claims administrator appointed pursuant to 28 U.S.C. § 156(c), or investor/acquirer) in connection with these cases.

4.     In the event the Debtors seek to have FTI personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to materially

change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed. No principal, employee, or independent contractor of FTI and its affiliates shall serve as a director of any of the Debtors during the pendency of these cases.

5.     Notwithstanding any provision to the contrary in the Engagement Letter, FTI shall file with the Court and serve on the Notice Parties a Staffing Report by the 30th of each month for the previous month, which shall include the names and functions filled by all FTI personnel assigned to the engagement.

6.     FTI shall file with the Court, and provide notice to the U.S. Trustee and the official committee of unsecured creditors, reports of compensation earned and expenses incurred on a monthly basis. Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in .5 hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. Such reports shall provide for an objection period of 21 days from the filing and service of such reports. All compensation shall be subject to review by the Court in the event an objection is filed.

7. Further, notwithstanding any provision to the contrary in the Engagement Letter, the Debtors shall only indemnify Mark Renzi in his capacity as Chief Restructuring Officer, on the same terms as provided to the Debtors' other officers and directors under the Debtors' by-laws and applicable state law, and pursuant to insurance coverage under the Debtors' directors' and officers' insurance policies.

8. There will be no other indemnification of FTI or any of its affiliates.

9. Further, notwithstanding any provision to the contrary in the Engagement Letter, FTI shall be deemed to have waived, and shall not raise or assert any defense, based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court or (if the reference is withdrawn) the District Court for the District of Delaware to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to FTI's engagement in these cases.

10. For a period of three years after the conclusion of FTI's engagement, neither FTI nor any of its affiliates shall make any investments in the Debtors or any reorganized Debtors.

11. FTI shall disclose any and all facts that may have a bearing on whether FTI, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this paragraph is a continuing obligation.

12. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry notwithstanding the possible applicability of Bankruptcy Rules 6004(g), 7062 or 9014.

14.     To the extent that this Order is inconsistent with the Engagement Letter, the terms of this Order shall govern.

15.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  March 3  , 2015

The Honorable Mary F. Walrath
United States Bankruptcy Judge