**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

**DEBTORS' REPLY TO OBJECTION**
**OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN**
**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF AP SERVICES, LLC AND (II) DESIGNATING REBECCA A. ROOF**
**AS CHIEF RESTRUCTURING OFFICER NUNC PRO TUNC TO APRIL 30, 2015**

The above-captioned debtors (collectively, the "Debtors") hereby file this reply ("Reply") to the Objection of the Official Committee of Unsecured Creditors (the "Committee") to Debtors' Motion for Entry of an Order (I) Authorizing the Retention and Employment of AP Services, LLC and (II) Designating Rebecca A. Roof as Chief Restructuring Officer *Nunc Pro Tunc* to April 30, 2015 (the "Objection") [Docket No. 188] and respectfully state as follows:

**Preliminary Statement**

1. The Committee is inexplicably attacking the qualifications of a nationally recognized turnaround firm and one of its managing directors who has impeccable credentials. The obvious subplot here is that the Committee is making every effort to undermine the Debtors'

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

NAI-1500370118v4

sales process for leverage in negotiations and the Objection is part of this strategy to derail the current timeline and sales process.  The Debtors believe that they have hired the best candidates to fulfill the role of trusted advisors under these circumstances.  Any attempt by the Committee to override this informed exercise of the Debtors' business judgment should be denied.

2. Despite the Committee's best efforts to argue that AP Services, LLC ("AP Services") was unilaterally foisted upon the Debtors, the facts and evidence demonstrate that the Debtors conducted an interview process and selected AP Services on its own volition.  It is correct that the secured lender requested that the Debtors retain a chief restructuring officer and that the secured lender identified AP Services as an acceptable candidate.  This is a rather customary and normal practice.  However, the Debtors felt that if they did not like AP Services or any other candidate suggested by the secured lender that they could have raised the possibility of other candidates.  In fact, the Debtors interviewed another candidate that was not identified by the secured lender but chose AP Services.  In addition, the Debtors also interviewed the Committee's current financial advisor, Conway McKenzie, Inc., but did not select them.

3. The Debtors' proposed chief restructuring officer, Ms. Rebecca Roof, is nationally known and has been involved in notable sophisticated reorganization and sale cases such as Eastman Kodak Company, Lyondell Chemical Company, Taro Pharmaceuticals, Anchor Glass and Atkins Nutritionals.  Ms. Roof has vast experience in crisis management, distressed sales processes and dealing with secured lenders in tough situations.  This experience has already benefitted theses estates significantly.  For example, Ms. Roof was able to assist in breaking the pre-petition impasse between the secured lender and the Debtors' principal owner, Mr. Scott Wood.  This development helped the Debtors avoid a potential shut-down of operations which would have hurt all constituencies, including unsecured creditors.  Instead, Ms. Roof and her

team at AP Services, played a key role in brokering a deal that enabled the Debtors to get access to much needed financing and to pursue a going concern sale of the California assets.

4. In summary, the Debtors have carefully selected their advisor after an interview process and due-deliberation. The Debtors' choice has been validated since the day they hired Ms. Roof and her team. The Committee's misguided and uninformed attempt to dictate the type and scope of advisor for the Debtors should be overruled and the Application should be granted.

**The Debtors' Reply**

*The Debtors Selected AP Services and Ms. Roof as the Best Candidates in an Informed Exercise of Their Business Judgment*

5. As has become typical in these chapter 11 cases, the Committee has distorted the facts and circumstances of these cases in an attempt to bolster an unfounded and disingenuous narrative – namely that CLMG Corp., as agent to the Debtors' prepetition and postpetition lenders ("CLMG"), has hijacked the Debtors' restructuring process to the detriment of other creditors.

6. As is common industry practice, CLMG required the appointment of a Chief Restructuring Officer ("CRO") as a condition to the Debtors' postpetition financing. Contrary to the Committee's implication that CLMG forcibly compelled the Debtors to retain a particular CRO, the Debtors conducted an interview and screening process for CRO candidates. The interview process for CRO candidates spanned multiple days and included candidates other than those suggested by CLMG. As further outlined below, the Debtors selected AP Services and Ms. Roof because of their excellent qualifications, capabilities and experience. Simply put, they were the best candidates for their respective jobs. Given this, it is not surprising that CLMG also approved AP Services and Ms. Roof.

7.     As is more fully detailed in the application to retain and employ AP Services and to designate Rebecca A. Roof as Chief Restructuring Officer for the Debtors (the "AP Services Application") [Docket No. 79], AP Services is a leading turnaround consulting and management firm that has provided these services in some of the most complex and high-stakes restructuring engagements of the past decade.  Moreover, AP Services and its affiliate AlixPartners LLP also have a bench of talent with specific experience in the restructuring of oil and gas exploration and production companies, an uncommon skillset among many financial advisory firms.  AlixPartners LLP has a number of professionals (over 20) with E&P experience, including Dennis Cassidy, who (through AP Services) has already assisted the Debtors by conducting a field review of the Debtors' California operations.  Mr. Cassidy has over 24 years of industry and consulting experience with oil & gas companies, including U.S. independent oil and gas companies, national oil companies, and global oilfield services companies.  He also previously worked as an engineer for ExxonMobil.  AlixPartners LLP and AP Services have completed over 100 engagements in the oil & gas value chain since 2012.

8.     Ms. Roof bears similarly preeminent qualifications to serve as the Debtors' CRO.  She has over 35 years of corporate and consulting experience, over twenty years of which are in turnaround consultancy and management in a broad array of industries.  Her turnaround experience includes roles in capital intensive industry segments such as manufacturing, distribution, automotive and energy services.  Representative samples of her experience in this regard include:

- Served as advisor to an independent E&P company in cost reductions and cash forecasting (out-of-court);
- Served as Interim CFO of Eastman Kodak in bankruptcy performing all the duties of a public reporting company CFO,

including the supervision of the divestiture of Kodak's consumer assets and operations;

- Served as Global Controller of LyondellBasell during its bankruptcy, providing leadership in Plan and Disclosure Statement development and emergence and fresh-start accounting requirements (among other duties);

- Served as Chief Financial Officer of Fleming Companies during its bankruptcy, including the supervision of the sale of the company's wholesale grocery distribution business under court-approved bidding procedures and section 363;

- Served as CRO and interim CFO at Anchor Glass, where she led the company's emergence from bankruptcy;

- Served as CFO of APS Holding Corporation, a New York Stock Exchange–listed auto parts distribution company, where, among other duties, she supervised the sale of the company's assets in bankruptcy under 363 sales; and

- Served as CFO of United Companies Financial Corporation during its bankruptcy and 363 sale and auction process

9. Moreover, Ms. Roof has gained national prominence within the turnaround management industry. Ms. Roof is a fellow in the American College of Bankruptcy and is a member of its standing Finance Committee. Ms. Roof also (a) served on the Executive and Management Committees of the American Bankruptcy Institute, (b) served on the Advisory Board of Texas Wall Street Women and (c) was a founder of the Texas chapter of the Turnaround Management Association. She recently co-chaired the Finance Subcommittee of the ABI's Commission to Study the Reform of Chapter 11. She is also a member of the American Institute of Certified Public Accountants. Ms. Roof is a certified management accountant, a certified insolvency and restructuring advisor, and a certified public accountant licensed in Texas. Her stature in the industry has been acknowledged by the receipt in 2014 of the Mega-Turnaround of the Year Award from the Turnaround Management Association for AP Services' work at Kodak and her designation as a Women Leader in Consulting for Client Service in 2013.

She is a co-author of *The Chief Restructuring Officers Guide to Bankruptcy: Views from Leading Insolvency Professionals* and the *AICPA Consulting Services Practice Aid 98-1* (2nd edition pending) *Providing Bankruptcy and Reorganization Services*.

10. Both AP Services and Ms. Roof have delivered robust results since commencing their services for the Debtors, including (a) the successful negotiation of debtor-in-possession financing, (b) preparation of first day motions, (c) preparation for and attendance at the Debtors' initial interview, (d) preparation of the Debtors' statements of financial affairs and schedules, (e) development and maintenance of the Debtors' cash forecasting and cash management systems, (f) negotiations with utility providers for adequate assurance, (g) vendor management, (h) segregation of pre- and post- liabilities in the Debtors' accounting systems, (i) coordinating and supporting the sales process, including creating the virtual dataroom and training the Debtors' personnel on same, and (j) responding to various information requests from parties interested in acquiring the Debtors assets and the Committee.

11. In view of these qualifications and demonstrated results, the Committee's attacks regarding Ms. Roof's professional fee rate are unfounded. The rates for Ms. Roof and AP Services are comparable for services of similar sophistication and capability within the turnaround management industry. Indeed, the Committee's rate complaints fall particularly flat, as one of the Committee's lead counsel charges a similar rate for the provision of his own services.

12. The Committee's primary complaints regarding AP Services and Ms. Roof seem to arise from the fact that AP Services is not an investment bank and Ms. Roof is not an

investment banker. As further discussed below, such complaints are irrelevant to the retention of AP Services or Ms. Roof.[2]

***The Debtors and Their Professionals Possess the Requisite Skills and Expertise to Conduct the Sale of the Debtors' Assets and the Subsequent Reorganization***

13. The Committee's outcry that the "Debtors are hurtling towards an expedited sale process with no experience, qualified professional to manage the process" [Objection ¶ 6] is simply wrong. As outlined above, Ms. Roof possesses substantial experience in advising and managing companies seeking to sell assets in bankruptcy. In addition to this direct experience, Ms. Roof can readily marshal resources within AP Services that have robust knowledge of the oil and gas industry, and in fact she has already done so in these chapter 11 cases.

14. Tellingly, this particular story of the Committee also ignores Mr. Kelly Plato's far-reaching expertise in oil and gas operations and finance, as well as his network of industry contacts. Mr. Plato has been the Chief Financial Officer of ERG Resources, L.L.C. since 2012 and has over 20 years of engineering and executive experience in the oil and gas industry. Prior to joining ERG, Mr. Plato served as Chief Investment Officer of NGP Capital Resources and he has served on the governing boards of several private and public oil and gas companies. Prior to NGP Capital Resources, he was a partner of Odyssey Energy Capital, LP, a private capital provider to the energy industry and successor to Mirant Americas Energy Capital, LP, where he was an investment professional responsible for origination, structuring, negotiating and portfolio management. Mr. Plato has been directly responsible for originating, structuring

---

[2] It is relevant that when the Committee's current financial advisor, Conway Mackenzie, Inc., pitched its services to the Debtors, Conway Mackenzie, Inc. attempted to fulfill the same roles as Ms. Roof and AP Services. Further Conway Mackenzie, Inc. emphasized its belief that the Debtors needed the services of a CRO more than those of an investment banker.

and managing oil and gas investments valued, in aggregate, of more than $1 billion. Moreover, Mr. Plato has served as the Chief Restructuring Officer for an oil and gas company and has represented investors in the context of other chapter 11 cases.

15. Mr. Plato has in-depth knowledge of the Debtors' business and has been actively involved in the marketing and sale process for the Debtors' California assets, as well as searches for equity capital or alternative financings, since 2013. Other than the Debtors' principal owner, Mr. Scott Wood, there is no individual who knows these assets better than Mr. Plato. Taken together, the talent and experience of Ms. Roof and Mr. Plato, reinforced by other experienced professionals in AP Services, are more than sufficient to market and conduct the sale of the Debtors' California assets.

16. The simple fact is that the prepetition marketing of the Debtors' California assets by Citibank and Macquarie Bank did not result in any bids that would have allowed the Debtors to retire the debt secured by those assets. Further, given lower oil prices, the current market value of the Debtors assets appears to be lower than the amount of secured debt owed to CLMG. In such circumstances, the fees to retain an investment banker to conduct these sales is a wasteful use of the Debtors' resources.

*The Debtors Have Agreed to Modify Certain Procedures to Resolve
Certain of the Committee's Objections*

17. In response to certain of the Committee's concerns, AP Services has agreed to file more detailed monthly compensation reports that include detailed time entries. To resolve the Committee's objection that the AP Services Application does not provide "any right for the Committee, any other party in interest or the Court to have input on the appropriate standard" [Objection ¶ 9] for any success fee under the AP Services Application, AP Services has always agreed to apply to the Court regarding the payment of any such success fee.

Interested parties will then have the opportunity to object to such application if they believe the success fee is unreasonable under the standards outlined in 11 U.S.C. 330.

18.     A redlined version of the Debtors' proposed order showing these proposed changes is attached hereto as <u>Exhibit A</u>.  In light of these revisions, AP Services has fully addressed the procedural concerns raised by the Committee.

## Conclusion

19.     The Committee's objection has very little to do with the professional retention of either AP Services or Ms. Roof.  It is, primarily, another in a series of objections and tactics designed to gain negotiating leverage that the Court should not condone.  The Debtors have selected both AP Services and Ms. Roof in good faith and on an informed basis, and both are very well qualified for their respective roles in these chapter 11 cases.  The Debtors and their advisors have the requisite skills, knowledge and professional network to help navigate the Debtors through these cases.  As such, the Court should approve the AP Services Application.

Dated: June 5, 2015  
Dallas, Texas

Respectfully submitted,

/s/ Tom A. Howley

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

**EXHIBIT A**

"Redline" Showing Changes
to Proposed Order Granting the AP Services Application

NAI-1500370118v4

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG ~~INTERMEDIATE HOLDINGS~~Intermediate Holdings, LLC~~.~~, *et al.*,[1] | § | ~~Case No. 15-31858-hdh-11~~Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |
| ~~Debtors.~~ | | ~~(Joint Administration Requested)~~ |

---

[1] The Debtors in these cases, along with the last four digits of each ~~Debtor's~~Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

**ORDER PURSUANT TO 11 U.S.C. §§ 105(A) and 363(B)
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF
AP SERVICES, LLC AND (II) DESIGNATING REBECCA A. ROOF AS
CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO APRIL 30, 2015**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (I) authorizing the Debtors to retain AP Services, LLC ("APS") and (II) designating Rebecca A. Roof as Chief Restructuring Officer ("CRO") of the Debtors *nunc pro tunc* to the Petition Date, all as more fully set forth in the Motion; and the Court having reviewed the Roof Declaration; and notice of the Motion having been given as set forth in the Motion; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1. The Motion is approved as set forth herein.

2. The Debtors are authorized to (I) employ and retain APS to provide interim management and restructuring services and (II) designate Rebecca A. Roof as Chief Restructuring Officer in accordance with the terms and conditions set forth in the Engagement Letter, as modified herein, *nunc pro tunc* to the Petition Date subject to the terms outlined herein, which apply notwithstanding anything in the Engagement Letter or the Motion or any Exhibits related thereto to the contrary.

3. APS shall be compensated for its services and reimbursed for any related expenses in accordance with the rates (as adjusted from time to time) and disbursement policies as set forth in the Motion, the Roof Declaration, the Engagement Letter, and any other applicable orders of this Court.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

4. APS and its personnel shall be required to: (i) maintain contemporaneous time records in tenth of an hour increments and (ii) conform to the Fee and Expense Structure outlined in the Motion and the Engagement Letter.

~~a~~5. APS is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, but will instead submit monthly invoices to the Debtors, and the Debtors are hereby authorized to pay, in the ordinary course of business, all reasonable amounts invoiced by APS for fees and expenses.

~~5~~6. APS shall submit to the Court, with copies to the U.S. Trustee and the counsel to any statutory committee appointed in these chapter 11 cases (the "<u>Notice Parties</u>"), contemporaneously with such filing, ~~quarterly~~<u>monthly</u> reports of compensation earned~~. in these chapter 11 cases~~ <u>and expenses incurred on the engagement ("Compensation Reports"). Compensation Reports shall summarize services provided, identify compensation earned by each executive officer and APS employee, and itemize expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. The Notice Parties</u> shall have the right to object <u>under the standards of section 330 of the Bankruptcy Code</u> to fees paid and expenses reimbursed to APS within ~~20~~<u>21</u> days after APS files ~~such reports.~~<u>and serves such Compensation Reports. Compensation Reports shall be subject to review in the event an objection is filed. APS will file its first Compensation Report by June 30, 2015, for the period covering the Petition Date through May 31, 2015.</u>

~~6~~7. Each month, APS shall <u>also</u> file with the Court (and serve copies to the Notice Parties) a report on staffing on the engagement for the previous month~~. Such report~~ <u>("Staffing Reports"). Staffing Reports</u> shall include the names and functions of the individuals assigned.

~~All staffing~~The Notice Parties shall have the right to object to Staffing Reports within 21 days after APS files such Staffing Reports. Staffing Reports shall be subject to review by the Court in the event an objection is filed.  APS will file its first Staffing Report by June 30, 2015, for the period covering the Petition Date through May 31, 2015.

8. To the extent a Success Fee is negotiated by Debtors and APS, before any such fee is paid, APS shall apply to the Court for approval of the Success Fee at the conclusion of these chapter 11 cases. The Notice Parties in these chapter 11 cases shall have the right to object to such application and the Success Fee will be subject to a reasonableness standard under Bankruptcy Code section 330.

~~7~~9. APS is authorized to apply the Retainer to satisfy any unbilled or other remaining prepetition fees and expenses APS becomes aware of during its ordinary course billing review and reconciliation.  The remaining balance of the Retainer held by APS shall be treated as an evergreen retainer and be held by APS as security throughout these chapter 11 cases until APS' fees and expenses are fully paid.

10. Notwithstanding the terms of the Engagement Letter, APS will apply to the Court for approval of the payment of any attorney's fees pursuant to the indemnity provisions of the Engagement Letter ("Indemnification Attorney Fee Payments"), and Court approval of such Indemnification Attorney Fee Payments will be required before the Debtors remit payment.  For the avoidance of doubt, this paragraph does not apply to payments made pursuant to the Debtors' director and officer insurance policies.

~~8~~11. The terms of the Engagement Letter, as modified by the Motion and this Order, are reasonable terms and conditions of employment and are thereby approved.

~~9~~12. Notwithstanding anything in the Motion or the Engagement Letter to the contrary,

APS shall (i) to the extent APS uses the services of independent contractors (the "Contractors") in these cases, APS shall pass-through the cost of such Contractors to the Debtors at the same rate that APS pays the Contractors; (ii) seek reimbursement for actual costs only; (iii) ensure that the Contractors are subject to the same conflict checks as required for APS; and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

~~10~~13.  APS shall use its reasonable efforts to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

~~11~~14.  To the extent that there may be any inconsistency between the terms of the Motion, the Roof Declaration or the Engagement Letter and this Order, the terms of this Order shall govern.

~~12~~15.  The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

~~13~~16.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

~~14~~17.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

###END OF ORDER###

~~Dated: _____, 2015~~
~~Dallas, Texas~~                                                  ~~United States Bankruptcy Judge~~

Submitted by:

Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS

| Summary report: Litéra® Change-Pro TDC 7.5.0.96 Document comparison done on 6/5/2015 11:32:10 AM ||
|---|---|
| **Style name:** JD Color ||
| **Intelligent Table Comparison:** Inactive ||
| **Original filename:** ERG_2015_05_28_Proposed Order v1.docx ||
| **Modified filename:** ERG_2015_05_28_Proposed Order v3.docx ||
| **Changes:** ||
| Add | 37 |
| Delete | 29 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 2 |
| Table Delete | 5 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 73 |