Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email:  jpomerantz@pszjlaw.com
           rfeinstein@pszjlaw.com

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile:  (903-757-9559
Email:  jsearcy@jrsearcylaw.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |

**OMNIBUS REPLY OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) DEBTORS' RESPONSE IN OPPOSITION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRANSFER VENUE, (II) CLMG CORP.'S OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRANSFER VENUE, AND (III) RESPONSE OF CHEVRON U.S.A. INC. AND UNION OIL COMPANY OF CALIFORNIA TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED <u>CREDITORS TO TRANSFER VENUE</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385).  The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002.  The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

## **TABLE OF CONTENTS**

**Page No.**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The Debtors' Venue "Choice" Is Not Entitled to Deference Because it Was Mandated by the Lender for its Sole Convenience, Notwithstanding the Debtors' Lack of Any Substantial Connection to this District ........................ 2

    B. The Location of Principal Decision-Makers Is Not Entitled to Deference When the Debtors' Assets to be Liquidated Are Located in Other Jurisdictions and a Financial Restructuring or Reorganization is Unlikely ........... 6

    C. This District is not a More Favorable Jurisdiction than the California Bankruptcy Court with Respect to Relief Requested by the Debtors .................... 9

    D. No Other Factor Justifies Maintaining Venue Here ............................................ 10

## **TABLE OF AUTHORITIES**

**Page No.**

**CASES**

*In re Abacus Broadcasting Corp.*,
  154 B.R. 682 (Bankr. W.D. Tex. 1993) ................................................................................ 5
*In re American Suzuki Motor Corp.*,
  Case No. 12-22808 (Bankr. C.D. Cal. Nov. 7, 2012) [Docket No. 69] .................................. 10
*In re BDRC Lofts, Ltd.*,
  2013 WL 395129 (Bankr. W.D. Tex. 2013) ..................................................................... 5, 11
*In re Caesars Entertainment Operating Co., Inc.*,
  2015 WL 495259 (Bankr. D. Del. 2015) ............................................................................... 9
*In re Commonwealth Oil Ref. Co.*,
  596 F.2d 1239 (5th Cir. 1979) ..................................................................................... 6, 7, 9
*In re Enron Corp.*,
  274 B.R. 327 (Bankr. S.D.N.Y. 2002) .......................................................................... 5, 6, 9
*In re ISE Corporation*,
  Case No. 10-14198 (Bankr. S.D. Cal., Dec. 8, 2010) [Docket No. 276] ................................ 10
*In re Patriot Coal Corp.*,
  482 B.R. 718 (Bankr. S.D.N.Y. 2012) ................................................................................... 9
*In re Pope Vineyards*,
  90 B.R. 252 (Bankr. S.D. Tex. 1988) .................................................................................... 8
*In re Scotia Dev't, LLC*,
  2007 WL 1192137 (Bankr. S.D. Tex. 2007) ................................................................. 5, 6, 8
*In re Victor Valley Community Hospital*,
  Case No. 10-39537 (Bankr. C.D. Cal., Sept. 17, 2010) [Docket No. 34] ............................... 10
*In re Woodside Group, LLC*,
  Case No. 08-20682 (Bankr. C.D. Cal., Aug. 27, 2008) [Docket No. 18] ............................... 10

The Official Committee of Unsecured Creditors (the "Committee") of ERG Intermediate Holdings, LLC, *et al.*, the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases, hereby files this *Omnibus Reply of the Official Committee of Unsecured Creditors to (I) Debtors' Response in Opposition to Motion of the Official Committee of Unsecured Creditors to Transfer Venue, (II) CLMG Corp.'s Opposition to the Motion of the Official Committee of Unsecured Creditors to Transfer Venue, and (III) Response of Chevron U.S.A. Inc. and Union Oil Company of California to Motion of the Official Committee of Unsecured Creditors to Transfer Venue*,[2] and respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.    The Committee filed the Venue Motion almost immediately after its appointment, urging this Court to transfer the Cases to the Central District of California, Santa Barbara division, where it has the vast majority of its assets – oil and gas assets to be sold in these Cases – and the majority of its employees and creditors are located.  Since filing the Venue Motion, the Committee has learned that the Cases were filed in the Northern District of Texas at the direction of the Debtors' secured lender, CLMG (the "Lender").  The Debtors were forced to file here as a condition to obtaining DIP financing and notwithstanding the location of the Debtors' headquarters in Houston, in the Southern District, and the location of their principal assets in California.  Notably, the Lender insisted on the Northern District of Texas even though it is not located there; rather, its headquarters are in Plano, in the Eastern District of Texas.

---

[2] As used herein, the "Venue Motion" shall refer to the *Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 94], the "Debtors' Opposition" shall refer to the Debtors' Response in Opposition to Motion of the Official Committee of Unsecured Creditors to Transfer Venue [Docket No. 159], the "Lender's Opposition" shall refer to *CLMG Corp.'s Opposition to the Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 161], the "Chevron Response" shall refer to the *Response of Chevron U.S.A. Inc. and Union Oil Company of California to Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 164], and the "Oppositions" shall refer collectively to the Debtors' Opposition, the Lender's Opposition, and the Chevron Opposition.

Thus, it has emerged that the only contact the Debtors have with the Northern District is less than $35,000 in bank accounts maintained with a bank located in Dallas.

2. The Lender should not be permitted to dictate the venue for the Cases, particularly when neither the Debtors nor any other creditor has any connection to this District. Permitting the Cases to remain in this District would improperly reward the Debtors for their decision to file in any District in Texas that the Lender mandated when virtually all of the Debtors' -- and the Lender's -- connections are to other Districts within the state.

3. Unsurprisingly, the principal oppositions to the Venue Motion come from the Lender and the Debtors (even though the latter asserts via their Lender-approved CRO that they did not think it was worth fighting about venue), arguing in unison that the Venue Motion should be denied for three reasons addressed below, each of which does not withstand scrutiny. They are manufactured reasons intended to mask the real reason the Debtors filed in a forum remote to their headquarters and assets – namely, that the Lender simply demanded it.

## II. ARGUMENT

### A. The Debtors' Venue "Choice" Is Not Entitled to Deference Because it Was Mandated by the Lender for its Sole Convenience, Notwithstanding the Debtors' Lack of Any Substantial Connection to this District

4. The argument that the Debtors' "choice" of venue is entitled to great deference is highly suspect here given that the Lender essentially demanded that the Debtors file in this District; the Debtors had no "choice." While the Debtors and Lender attempt in their responses to understate this demand by describing it as merely the Lender's "strong preference" (*see* Debtors' Opposition at ¶ 8; Lender's Opposition at 3), the evidence will show otherwise. The filing in this District, notwithstanding the facts that the Debtors' headquarters and material assets are located elsewhere and the Lender is not even located in this District, amounted to nothing less than the Debtors' complete acquiescence to the Lender's demand and is not based

on any arms' length negotiations, studied consideration, or the pretextual reasons proffered by the Debtors and Lender in their oppositions.

5. The Debtors assert that their choice to file here was not forum-shopping "in a negative sense," but was based on their "informed and studied conclusion given the facts and circumstances leading up to the filing" -- *i.e.*, the RSA's requirement that venue be in Dallas and the DIP credit agreement's requirement that venue be acceptable to the Lender -- and the critical need for post-petition financing and critical vendor relief. *See* Debtors' Opposition at ¶ 4. In this regard, the Debtors proudly advise that the RSA will "greatly increase the recoveries of unsecured creditors" as a result of the waiver by the Lender of its unsecured deficiency claim upon the consummation of a sale of the California assets and "certain other conditions," which, though substantial, the Debtors fail to mention. The RSA mandating a filing in Dallas conditioned the Lender's waiver of its deficiency claims on two material events – that the Debtor's principal owner, Scott Wood, make a payment to the Lender of $8.5 million by September 30, 2015, and that the Debtors confirm a plan acceptable to the Lender by October 31, 2015. *See* RSA at § 6(f). Of course, this arrangement could have been accomplished in any jurisdiction and thus the Committee fails to see how it is appropriate for the Lender to condition the agreement on the Debtors filing in the District of the Lender's choice, where the Debtors have no offices or material assets. Further, given the conditionality of the waiver and its dependence on action by a non-debtor, Mr. Wood, the benefit conferred on the estate of acceding to the Lender's insistence on venue in this District is not as certain or substantial as the Debtors' incomplete description of the RSA suggests.

6. Similarly, the insistence that venue be acceptable in the onerous DIP financing agreement underscores the fact that the Lender, acting as a veritable lender in

possession, is using the power of the purse strings to dictate every aspect of these Cases – venue, the timeline for a rapid sale and the selection of the Debtors' professionals. What is described by the Debtors as a package of putatively beneficial concessions from the Lender is in fact the Debtors caving to all of the Lender's myriad demands, including that these Cases be filed in Dallas.

7. Also undermining the notion that the conditional waiver of the Lender's deficiency claim under the RSA is meaningful, the Debtors flip flop and rely on the Lender's deficiency claim as a rationale for maintaining venue where it is. The Debtors argue in their opposition that the Lender's location (which is not even in this District) should be given greater consideration because, among other things, it is "likely the Debtors' largest unsecured creditor should it assert a deficiency claim." Debtor's Opposition at ¶ 26. Thus, it is not entirely clear whether the Debtors believe the Lender's waiver of a deficiency claim will ever be realized.

8. Lastly, the Lender and its principals are also located in Plano, Texas, in the Eastern District. *See* Lender's Opposition at ¶ 23. Thus, if the location of the Lender and its principals is afforded any weight, it would favor the transfer of venue to the Eastern District.

9. Removing all the rhetoric[3] and pretexts from the Oppositions, the only connection either the Debtors or the Lender could cite to Dallas is the location of the Debtors' bank accounts. The Lender attempts to inflate the significance of these accounts by describing them as "substantial assets" holding "ninety percent of the Debtors' cash." Lender's Opposition at ¶ 3. The evidence will show that the accounts held only approximately $35,000 as of the Petition Date, representing less than one-tenth of one percent of the Debtors' assets. Rather than

---

[3] For example, the Debtors characterize the Venue Motion as one to transfer venue to "anywhere but Dallas." Debtors' Opposition at ¶ 1. That is a distortion. The Venue Motion seeks a transfer to the Central District of California and, though the Committee suggested two alternatives, the form of order submitted with the Venue Motion as Exhibit A provides for transfer to the California Bankruptcy Court.

being "substantial assets," the Citibank accounts -- the Debtors' singular connection to Dallas -- are de minimis.

10. At bottom, these Cases are here because the Lender insisted on them being filed here, for its convenience alone, as the Debtors' management and professionals and all other parties in interest will have to fly to Dallas from other cities to attend hearings. Unlike in *BDRC Lofts*, one of the cases relied upon by the Lender, the Debtors simply do not have "substantial ties" to this District. *See In re BDRC Lofts, Ltd.*, 2013 WL 395129 (Bankr. W.D. Tex. 2013), at *3 ("It is not clear to the Court why BDRC would be guilty of forum shopping for filing in the Western District of Texas rather than the Northern District of Texas. BDRC has substantial ties to both districts …."). As the *Abacus* court stated: "How much deference should be given to a forum selected by the lawyers, for their own convenience …? …. Whenever a creditor raises the venue question, none at all." *See* Venue Motion at ¶ 33 (citing *In re Abacus Broadcasting Corp.*, 154 B.R. 682, 686-87 (Bankr. W.D. Tex. 1993)).[4]

11. As acknowledged by the court in *Scotia Dev't*, a case heavily relied upon by the Lender, "[n]ormally, a Court would rely on the position of the Official Unsecured Creditors Committee" in deciding whether to transfer venue. *In re Scotia Dev't, LLC*, 2007 WL 1192137, at * 11 (Bankr. S.D. Tex. 2007); *accord In re Enron Corp.*, 274 B.R. 327, 345 (Bankr. S.D.N.Y. 2002) ("the Court finds it relevant to weigh the position of the Committee in its statutory role as a fiduciary to a representative body of the unsecured creditors."). The *Scotia*

---

[4] As the Lender notes, the Committee never once suggests that it will not be treated fairly by this Court. The fairness with which any court will treat any party in interest is simply not a consideration with respect to a venue transfer analysis. The Committee expects that any court, including this Court, will treat it with the same fairness.

As a further attempt at misdirection, the Lender devotes two pages of its opposition to setting up and then knocking down the straw man argument that the Committee asserts venue is improper in this District. *See* Lender's Opposition at ¶¶ 10-14. The Committee concedes in the Venue Motion that venue in this District is technically proper. When given four districts within a state to choose from, however, and the choice was to file in the one district with virtually no contacts when there are more substantial connections to two others, the implication of forum-shopping is inescapable.

*Dev't* court did not rely on the committee's position there because it was dominated not by trade creditors, but by three parties with lawsuits against the debtors whose motives were more related to legal strategy. In *Enron Corp.*, the creditors' committee indicated its "strong opposition" to the transfer of venue.[5] Here, the Committee's request to transfer venue to the California Bankruptcy Court should be given great weight because the Committee is dominated by major trade creditors, most of which are essential to the Debtors' business and are located in California. The Committee's position is all the more relevant in cases like these, whose every aspect the Lender is trying to completely control for its sole benefit and to the detriment of unsecured creditors.

B. **The Location of Principal Decision-Makers Is Not Entitled to Deference When the Debtors' Assets to be Liquidated Are Located in Other Jurisdictions and a Financial Restructuring or Reorganization is Unlikely**

12. The Lender argues that "[a]s noted by the Fifth Circuit in *CORCO*, the purpose of a *reorganization proceeding* is to *restructure a debtor's finances* and the logical place for such a proceeding is '[w]here the corporation transacts its corporate business.'" Lender's Opposition at ¶ 35 (quoting *In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979)) ("*CORCO*") (emph. added). "This is so because that is where the people charged with this responsibility' reside." *Id.* The Lender then asserts that the employees that are essential to the "reorganization" are located in Houston – in the Southern District. *Id.* Thus, even if the location of the primary decision-makers were relevant here, it would not favor keeping the Cases in Dallas because the Debtors' decision-makers are located in Houston, the Lender's decision-

---

[5] The Debtors cite *Enron Corp.* for the proposition that the Lender's separate opposition is a factor courts have noted when considering the proximity of creditors to the court, but do not mention that the creditors' committee also strongly opposed the transfer of venue of those cases. Indeed, the *Enron Corp.* court first considered the creditors' committee's position before noting that "[f]urthermore, the Debtors' … banks [and DIP Lenders] oppose transfer of venue in these cases." *Enron Corp.*, 274 B.R. at 345-46.

makers are located in Plano, and even the minimal remaining assets are located in Liberty County – all outside of this District.

13. As well-established authority demonstrates, however, the location of a Debtors' decision-makers outweighs the location of a Debtors' assets only in cases involving a financial or balance sheet restructuring or reorganization. In an ill-fated attempt to shoehorn the facts of these Cases into those cases discussed in their oppositions keeping venue where the responsible parties are located (even though the Debtors' responsible parties are located in Houston, not Dallas), the Debtors and Lender now state that there may be a potential reorganization of the Debtors' remaining assets after the sale of the California assets. The Debtors and Lender weave the theme of a potential reorganization throughout their oppositions, which is the first time such a strategy has been mentioned since the filing of these Cases, and plainly is now being used to attempt to defeat the transfer of these Cases.

14. This is not – as the Debtors and Lender attempt to argue – a "reorganization" case, like *CORCO* was. The Debtors are deeply insolvent and selling off their primary assets, leaving them with very little. Any assertion that the remaining assets can be reorganized around is baseless. After the California assets are sold, the Debtors will be left with miniscule oil and gas property in Liberty County, a pending lawsuit, and tens if not hundreds of millions of dollars in unsatisfied liabilities, all of which hardly form a credible basis for a reorganization.

15. The Lender is simply wrong in contending that, "[i]n sum, as was the case in *CORCO*, the proper place for the Debtor's reorganization is here." Contrary to the Lender's contention, **t**he Fifth Circuit's concern in *CORCO* that the "financial reorganization of the business" would be impeded by a transfer to where the business was physically located as

opposed to where the people who managed the company and its finances were located is simply not an issue here. *See In re Pope Vineyards*, 90 B.R. 252, 258-59 (Bankr. S.D. Tex. 1988).[6]

16. The *Scotia Dev't* case cited by the Lender only confirms this, and is also distinguishable from these Cases. In that case, "[a]s in [CORCO], the Debtors' chapter 11 cases require financial restructuring." *Scotia Dev't,* at * 8. Notwithstanding the Debtors' and Lender's attempt to now convince the Court otherwise, the instant Cases will not involve a financial restructuring or any kind of reorganization. Moreover, unlike here, in *Scotia Dev't* the debtor chose venue where its principal assets, principal place of business and its only office were located. *See id.* at *6. Furthermore, the Lender provides no basis to support its misleading argument that *Scotia Dev't* represents a trend by the Southern District since the *Pope Vineyards* decision to "move[] away from any focus on the location of real property in evaluating a request to transfer." Lender's Opposition at ¶ 42. The Lender cites to no other Southern District case for such proposition. Thus any contention regarding such a trend must fail.

17. The Debtors and Lender have failed to provide any legal or factual basis that the location of the Debtors' decision-makers should be given any weight in cases, like these, in which all of the Debtors' assets will be liquidated in one manner or another, and all of those assets and the Debtors' decision-makers are located outside the district in which the Debtors chose venue.

18. While theoretically anything is possible, a potential reorganization of any remaining assets after the sale under the facts and circumstances of these Cases is unlikely and is a manufactured reason provided to escape the overwhelming weight of authority in favor of

---

[6] Similarly, the Lender's attempt to distinguish *Pope Vineyards* also fails because here, as in *Pope Vineyards*, "this business relies upon and emanates from the land in California." *Pope Vineyards*, 90 B.R. at 256. Where a business relies upon real property, the bulk of which is located outside the jurisdiction in which the decision-makers are located, the location of such assets must be considered "of paramount importance." *Id.*

transfer to the location of a Debtors' assets that are to be liquidated. The Lender criticizes the many cases cited by the Committee in this regard as "old authority," but cites no cases overruling such authorities (because none exist) and, as set forth above, offers cases that are distinguishable from the facts and circumstances here. Brand new authority, however, confirms the holdings set forth in the cases cited by the Committee. For example, as recently as February 2015, the court in *Caesars Entertainment Operating Co.* stated that the restructuring support agreement there "clearly contemplates a 'balance sheet restructuring' as opposed to any sort of significant sale or operational restructuring" and, accordingly, that "[t]he location of the assets is not as important where the ultimate goal is rehabilitation **rather than liquidation**." *In re Caesars Entertainment Operating Co., Inc.*, 2015 WL 495259, at *6 (Bankr. D. Del. 2015) (citing *Enron Corp.*, 274 B.R. at 347 (in turn citing *CORCO*, 596 F.2d at 1248); *In re Patriot Coal Corp.*, 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012)) (emph. added).

C. **This District is not a More Favorable Jurisdiction than the California Bankruptcy Court with Respect to Relief Requested by the Debtors**

19. The Debtors assert that the decision to file here was based on a determination that the payment of critical vendor obligations is necessary to preserve the value of the Debtors' estates and that research revealed that such relief has been granted in this district in recent significant cases. *See* Debtors' Opposition at ¶ 13. They question the Committee's insistence on venue in the California Bankruptcy Court based on their incorrect conclusion that legal standards in the Ninth Circuit "may prove to be a serious obstacle." *Id.* at ¶¶ 14-15 (citing a 1983 decision from the Ninth Circuit Court of Appeals, one decision from the Bankruptcy Court for the District of Montana and one from the Bankruptcy Court for the Northern District of California).

20. The Committee is constrained to point out that while the Debtors profess to have selected this District due to their concern with respect to obtaining authority to pay critical vendors, the Debtors waited over a month into the case to file a motion seeking that extraordinary relief.

21. But the Debtors' assertion about the state of the law is incorrect in any event, revealing this argument as yet another pretext. Contrary to the Debtors' assertion, bankruptcy courts in the Ninth Circuit routinely authorize payments to vital suppliers and trade creditors where the payment of such claims is essential. *See*, *e.g.*, *In re American Suzuki Motor Corp.*, Case No. 12-22808 (Bankr. C.D. Cal. Nov. 7, 2012) [Docket No. 69] (authorizing debtors to pay critical vendor claims); *In re ISE Corporation*, Case No. 10-14198 (Bankr. S.D. Cal., Dec. 8, 2010) [Docket No. 276] (authorizing payment of critical vendor prepetition claim); *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal., Sept. 17, 2010) [Docket No. 34] (authorizing the debtor to pay prepetition claims of emergency room doctors, medical director doctors, and nursing registries who were critical vendors); *In re Woodside Group, LLC*, Case No. 08-20682 (Bankr. C.D. Cal., Aug. 27, 2008) [Docket No. 18] (approving stipulation allowing debtors to pay ordinary course providers of goods and services in the ordinary course of business). Thus, the Debtors' assertion that the payment of critical vendors informed their decision to file here is nothing more than pretext.

D. **No Other Factor Justifies Maintaining Venue Here**

22. The Committee's members and professionals do not believe it will be an inconvenience for them to travel to the California Bankruptcy Court. Moreover, contrary to the Debtors' and Lender's assertions, transferring venue of these Cases to the California Bankruptcy Court will not shift the inconvenience to the Debtors or result in any inefficiencies. Specifically, the Debtors would not have to retain local counsel in California, where their current counsel has

five offices. The Lender's counsel also has an office in Los Angeles, so it will not be required to retain local counsel either, and its lead attorneys Messrs. Averch and Kampfer are located there. In addition, if these Cases remain on the fast track demanded by the Lender (over the Committee's objection), or even if the timeline is expanded, the Cases will not take years to resolve. Thus, the Lender's complaint that responsible parties will have to "regularly" travel cross country is unfounded. *See* Lender's Opposition at 4. The Debtors admit that that have "significant numbers of creditors in California." *See* Debtors' Opposition at ¶ 26. Contrary to the Lender's assertion, whether such creditors or Committee members are located in Santa Barbara or elsewhere is irrelevant, especially given that the Committee, which represents their interests, has made its informed decision that the transfer of these Cases to the California Bankruptcy Court will best serve the convenience of all parties and the interests of justice.[7] Lastly, there will not be much of a learning curve, if any, for the California Bankruptcy Court because there have been no substantive hearings or rulings in these Cases since the first day hearing. These cases have not been pending for months, unlike the *BDRC Lofts* case, which the Lender relies upon.

---

[7] Moreover, the Lender's assertions about the various locations of creditors in California is hypocritical given that it demanded the Debtors to file in a District to which even the Lender has no connections and where the Debtors' only connection was approximately $35,000 (or less than one-tenth of one percent of their total assets) in bank accounts, notwithstanding the fact that substantially all of the Debtors' assets are located in California, their headquarters are in Houston and the Lender's headquarters are in Plano.

WHEREFORE, for the reasons set forth herein and in the Venue Motion, the Committee respectfully requests that the Court (i) overrule the Oppositions and (ii) enter an order, substantially in the form of **Exhibit A** attached to the Venue Motion, transferring these Cases to the United States Bankruptcy Court for the Central District of California, Santa Barbara.

Dated: June 8, 2015

*/s/ Jason R. Searcy*
Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone:  (903) 757-3399
Facsimile:   (903) 757-9559
Email:  jsearcy@jrsearcylaw.com


Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:   (310) 201-0706
Email:  jpomerantz@pszjlaw.com
            rfeinstein@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*