Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens (admitted *pro hac vice*)
Joseph A. Florczak (admitted *pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

ATTORNEYS FOR THE DEBTORS

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

A HEARING WILL BE CONDUCTED ON THIS MATTER
ON **SEPTEMBER 1, 2015 AT 9:00 A.M. (CDT)** IN COURTROOM #3,
1100 COMMERCE ST., 14TH FLOOR, DALLAS, TEXAS.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT SO THAT IT IS RECEIVED BEFORE THE HEARING REGARDING THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385).
ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

**EMERGENCY MOTION**
**OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (A) APPROVING**
**THIRD AMENDMENT TO DIP FACILITY AND (B) AMENDING FINAL DIP ORDER**

The above-captioned debtors (collectively, the "Debtors") hereby move the Court

(this "Motion") for the entry of interim and final orders (A) approving the Third Amendment to

DIP Facility attached hereto as Exhibit A (the "Third Amendment") and (B) amending the Final

Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the

Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (I) Use Cash Collateral of the

Pre-Petition Secured Parties, (II) Obtain Post-Petition Financing and (III) Provide Adequate

Protection to the Pre-Petition Secured Parties entered on June 15, 2015 [Docket No. 282]

(the "Final DIP Order"). In support of this Motion, the Debtors respectfully represent as follows:

**Background**

1.     On May 1, 2015 the Debtors' filed their Motion for Entry of Interim and

Final Orders Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001

of the Federal Rules of Bankruptcy Procedure (A) Authorizing the Debtors to (I) Use Cash

Collateral of the Pre-Petition Secured Parties, (II) Obtain Post-Petition Financing and

(III) Provide Adequate Assurance Protection to the Pre-Petition Secured Parties (B) Prescribing

Form and Manner of Notice Of and Scheduling Final Hearing and (C) Granting Related Relief

[Docket No. 15] (the "DIP Motion"). The DIP Motion sought debtor in possession financing

from the Debtors' prepetition secured lender (the "Secured Lender") on the terms set forth therein.

2.     On May 5, 2015, the Court entered an order approving certain of the relief

requested in the DIP Motion on an interim basis and set a hearing regarding the final relief

sought in the DIP Motion for June 1, 2015 [Docket No. 43] (the "Interim DIP Order"). Pursuant

to an agreed motion by parties-in-interest [Docket No. 172], the Court ordered the DIP Hearing

continued until June 11, 2015 [Docket No. 177]. Following this hearing, the Court approved an

amended version of the Senior Secured Superpriority Debtor-in-Possession Credit Agreement by and among ERG Resources, L.L.C., as borrower, CLMG Corp., as administrative agent and collateral agent, and certain other prepetition lenders (the "DIP Facility") on a final basis in the Final DIP Order on June 15, 2015

       3.     The DIP Facility had a Stated Maturity Date of July 29, 2015, reflecting that the financing contemplated funding the Debtors' operations through the consummation of a sale process for the California-based assets of the Debtors (the "Sale Process"), which was originally intended to be completed by the end of July 2015.  Because the Sale Process was delayed into August as a result of, among other things, negotiations between the Secured Lender and the Official Committee of Unsecured Creditors, the Secured Lender previously extended the Stated Maturity Date of the DIP Facility to August 31, 2015, and the DIP Facility now expires on that date.

       4.     The Sale Process, as revised during these chapter 11 cases, had an August 10, 2015 bid deadline for offers to purchase the Debtors' California assets.  As of August 10, the Debtors had received no qualifying bids in connection with such proposed sale. Pursuant to the Sale Process, the Secured Lender had the right to credit bid for the Debtors' assets after the bid deadline.  On August 12, 2015, in lieu of credit bidding for such assets, the Secured Lender proposed the terms of a plan of reorganization for the Debtors.

       5.     As a result, the Debtors filed a notice with this Court [Docket No. 415] cancelling the Sale Process and announcing their intent to pursue a plan of reorganization on the terms set forth in such notice (the "Plan Process").  The Debtors require debtor-in-possession financing and use of cash collateral to complete the Plan Process pursuant to the terms of the DIP Facility that expires on August 31, as amended pursuant to the proposed order attached hereto.

    

Therefore, pursuant to this Motion, the Debtors seek to extend the DIP Facility, as amended,

through and including November 15, 2015, as further described below. The terms of the

amended DIP Facility would be implemented by (a) the terms of the Third Amendment attached

hereto as Exhibit A and (b) a proposed order (the "Proposed Order") authorizing the Third

Amendment attached hereto as Exhibit B. A redline showing the proposed changes to the Final

DIP Order is attached hereto as Exhibit C.

6.     Because the Debtors are filing this Motion on less than 14 days' notice for

the proposed hearing for the Motion, the Proposed Order seeks the entry of an interim order on

the Motion. Assuming the Court enters the Proposed Order, the Debtors would also request that

the Court set a hearing date for entry of a final order on the Motion. At such hearing, the

Debtors would seek entry of the Proposed Order, or a revised order on substantially the same

terms, on a final basis.

7.     The principal amendments to the DIP Facility proposed in the DIP

amendment are as follows:

| Amended Portion of Dip Facility | Amendment |
|---|---|
| Generally | (a) Removal of references to the sale process for the Debtors' California assets and related provisions and (b) the incorporation of references relating to a plan of reorganization. |
| Generally | Incorporation of the terms of that certain Settlement and Transaction Support Agreement dated August 6, 2015, by and among the Official Committee of Unsecured Creditors appointed in the chapter 11 cases jointly administered as *In re ERG Intermediate Holdings, LLC,* et al., No. 15-31858-hdh currently pending before the United States Bankruptcy Court for the Northern District of Texas, CLMG Corp. and LNV Corporation. (the "Committee Settlement Agreement"). |
| Article I Definitions | "Approved Plan" is defined as "Reorganization Plan which is in form and substance satisfactory to the Lenders and shall include (i) payment in full in cash of all Commitments and Obligations under the DIP Facility on or prior to the Maturity Date and (ii) treatment of the Pre- |

| | |
|---|---|
| | Petition Facility Obligations in a manner acceptable to the Pre-Petition Agent." |
| Article I Definitions | "Stated Maturity Date" is amended to mean November 15, 2015. |
| 6.24 Milestones | "Approved Plan Milestone" replaces "Acceptable Sale Process Milestones", specifying than an Approved Plan be effective no later than November 15, 2015. |
| 8.1 Events of Default | An additional event of default is added: "a Reorganization Plan other than an Approved Plan shall be filed by any Credit Party in the Chapter 11 Case." |

## Notice

8. Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) counsel to the agents for the Debtors' prepetition and proposed postpetition secured lenders; (iii) counsel to the Creditors' Committee; and (iv) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>: (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated: August 28, 2015                    Respectfully submitted,
       Dallas, Texas

                                        /s/ Tom A. Howley

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

ATTORNEYS FOR THE DEBTORS

# EXHIBIT A

Third Amendment

## THIRD AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS THIRD AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Amendment") is made as of [●], 2015, by and among ERG Resources, L.L.C., a Texas limited liability company ("Company"), the Guarantors party hereto, CLMG Corp., as administrative agent ("Administrative Agent"), and the Lenders party hereto. Capitalized terms used herein and not otherwise defined herein shall have the meanings given to them in the Credit Agreement referred to below, as amended by this Amendment. References to Sections are references to Sections of the Credit Agreement, as applicable, unless otherwise stated.

W I T N E S S E T H:

WHEREAS, Company, Administrative Agent and Lenders entered into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated as of May 7, 2015 (as amended, restated, amended and restated, supplemented and/or otherwise modified prior to, but not including, the date hereof, the "Credit Agreement"), for the purpose and consideration therein expressed, whereby Lenders became obligated to make loans to Company as therein provided; and

WHEREAS, Company has requested that the Administrative Agent and Lenders amend certain provisions of the Credit Agreement, and, subject to the satisfaction of the conditions set forth herein, the Administrative Agent and the Lenders signatory hereto are willing to do so, on the terms set forth herein.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

ARTICLE I.

AMENDMENTS AND AGREEMENTS

Section 1.1.    Section 1.1 of the Credit Agreement is hereby amended by deleting the following definitions in their entirety:

"Acceptable Sale Process"

"Approved Sale"

"Auction"

"Bid Procedures"

"Bid Procedures Motion"

"Bid Procedures Order"

"Break-Up Fee"

"Post-Sale Carve-Out"

"Sale"

"Sale Motion"

"Sale Order"

Section 1.2.    Section 1.1 of the Credit Agreement is hereby amended by inserting the following definitions in the appropriate alphabetical order:

(a)    "Approved Plan" means a Reorganization Plan which is in form and substance satisfactory to the Administrative Agent and the Lenders and shall include (i) payment in full in cash of all Commitments and Obligations under the DIP Facility on or prior to the Maturity Date and (ii) treatment of the Pre-Petition Facility Obligations in a manner acceptable to the Pre-Petition Agent.

(b)    "Committee Settlement Agreement" means that certain Settlement and Transaction Support Agreement dated August 6, 2015, by and among the Official Committee of Unsecured Creditors appointed in the chapter 11 cases jointly administered as *In re ERG Intermediate Holdings, LLC,* et al., No. 15-31858-HDH currently pending before the United States Bankruptcy Court for the Northern District of Texas, CLMG Corp. and LNV Corporation.

(c)    "Reorganization Plan" means a plan of reorganization in the Chapter 11 Case.

Section 1.3.    The definition of "Approved Budget" appearing in Section 1.1 of the Credit Agreement is hereby amended by inserting the text ", provided that the set aside for the professional fees of the Committee shall be as set forth in the Committee Settlement Agreement" following the text "and any Supplemental Approved Budget" appearing therein.

Section 1.4.    The definition of "Change of Control" appearing in Section 1.1 of the Credit Agreement is hereby amended by deleting the reference to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof.

Section 1.5.    Clauses (1), (2) and (3) of the definition of "Final Order" appearing in Section 1.1 of the Credit Agreement are hereby amended as follows:

(a)    clause (1) is hereby deleted in its entirety;

(b)    clause (2) is hereby amended by renumbering such clause as clause (1) and deleting the reference to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof; and

(c)    clause (3) is hereby amended by renumbering such clause as clause (2).

Section 1.6.    The definition of "Maturity Date" appearing in Section 1.1 of the Credit Agreement is hereby amended by amending and restating it in its entirety as follows:

"'Maturity Date'" means, the earliest to occur of (a) the Stated Maturity Date, (b) the date of termination of the Commitments of the Lenders and their obligations to make Loans pursuant to the exercise of remedies under Article VIII as a result of the occurrence of an Event of Default which is continuing, and (c) the effective date of an Approved Plan."

Section 1.7.    The definition of "Stated Maturity Date" appearing in Section 1.1 of the Credit Agreement is hereby amended by deleting "August 31, 2015" and inserting "November 15, 2015" in lieu thereof.

Section 1.8.    Section 2.6(a)(iii), Section 2.6(a)(v), Section 2.7(b), Section 2.15, Section 7.17, Section 7.21(d), Section 7.21(e) and Section 10.1(a) of the Credit Agreement are hereby amended by deleting the references to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof.

Section 1.9.    Section 2.16(a) of the Credit Agreement is hereby amended by:

(a)    deleting the following sentence appearing therein:

"In addition to the foregoing, upon the closing of the Approved Sale (and only upon the closing of the Approved Sale), a fund shall be established by the Credit Parties in accordance with the terms of the Orders in an amount equal to $750,000 (the "Post-Sale Carve-Out") to be used solely for professional fees and expenses incurred by the Credit Parties' estates after the closing of the Approved Sale, including in connection with a plan of reorganization permitted under the Interim Order or the Final Order; provided that, the use of the Post-Sale Carve-Out shall be consistent with the Approved Budget; provided further, that the Post-Sale Carve Out shall be reduced on a dollar for dollar basis by the amount of the Default Carve-Out Amount in the event that the Administrative Agent delivers a Carve-Out Trigger Notice"; and

(b)    deleting the text "or the Post-Sale Carve Out" following the text "Notwithstanding anything herein to the contrary, no portion of the Carve-Out" appearing therein.

Section 1.10.    Section 4.1(b) of the Credit Agreement is hereby amended by deleting the text "Without limiting the foregoing, the CRO shall have full authority to (i) direct the Acceptable Sale Process and (ii) direct or instruct the Company and its Subsidiaries to take or cause the actions necessary or appropriate to achieve the Milestones" appearing therein.

Section 1.11.    Section 4.1(l) of the Credit Agreement is hereby deleted in its entirety.

Section 1.12.    Section 6.24 of the Credit Agreement is hereby amended by amending and restating it in its entirety as follows:

"Section 6.24. <u>Approved Plan Milestone</u>. Company shall cause, or shall cause one or more of the Guarantors (as applicable) to cause the Approved Plan to be effective no later than November 15, 2015 (the "<u>Milestone</u>")."

Section 1.13.   Section 7.5 of the Credit Agreement is hereby amended by deleting the following text appearing therein:

"Notwithstanding anything else provided in this Section 7.5, the Company and any Grantor may Dispose of its Oil and Gas Properties constituting California Assets pursuant to an Approved Sale, which, for the avoidance of doubt, must be conducted pursuant to an Auction pursuant to the Bid Procedures which preserve the right of the Administrative Agent and the Pre-Petition Agent to Credit Bid in connection with any sale of Collateral or Pre-Petition Collateral (as the case may be)."

Section 1.14.   Section 7.13(c) of the Credit Agreement is hereby amended by inserting the text "except as set forth in the Committee Settlement Agreement," following the text "Notwithstanding anything in any Approved Budget," appearing therein.

Section 1.15.   Section 8.1(l) of the Credit Agreement is hereby amended by deleting the clause ", except pursuant to the Acceptable Sale Process" appearing therein.

Section 1.16.   Section 8.1(q) of the Credit Agreement is hereby amended by deleting the clause "other than pursuant to the Acceptable Sale Process" appearing therein.

Section 1.17.   Section 8.1(t) of the Credit Agreement is hereby amended by deleting the clause ", except that the Credit Parties are entitled to conduct the Acceptable Sale Process in a manner consistent with the Bid Procedures" appearing therein.

Section 1.18.   Section 8.1 of the Credit Agreement is hereby amended by deleting the word "or" at the end of subsection 8.1(x), deleting the period at the end of subsection 8.1(y), inserting a semicolon at the end of subsection 8.1(y) followed by the word "or" and inserting the following subsection 8.1(z):

"(z) a Reorganization Plan other than an Approved Plan shall be filed by any Credit Party in the Chapter 11 Case."

ARTICLE II.

<u>CONDITIONS OF EFFECTIVENESS</u>

Section 2.1.   <u>Effective Date</u>

This Amendment shall become effective when each of the following conditions shall have been satisfied:

(a)    <u>Counterparts</u>. Borrower, each Guarantor, Administrative Agent and the Required Lenders shall have signed a counterpart hereof (whether the same or different counterparts) and shall have delivered (including by way of facsimile, pdf or other

electronic transmission) the same to Administrative Agent c/o White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, Attention: John Gawey (facsimile number: (212) 354-8113 / email: john.gawey@whitecase.com);

(b)     <u>Representations and Warranties</u>. All of the representations and warranties made pursuant to Article IV hereof shall be true and correct in all material respects on the Third Amendment Effective Date (after giving effect to this Amendment); and

(c)     <u>Bankruptcy Court Approval</u>. The Bankruptcy Court shall have entered an order, reasonably satisfactory in form and substance to the Required Lenders, approving this Amendment, which order shall be in full force and effect and shall not have been amended, modified, stayed or reversed.

(d)     <u>No Default</u>. No event shall have occurred and be continuing that would constitute an Event of Default or a Default (after giving effect to this Amendment) (the date on which such conditions have been satisfied the "<u>Third Amendment Effective Date</u>")

ARTICLE III.

<u>REPRESENTATIONS AND WARRANTIES</u>

Section 3.1.     <u>Representations and Warranties of Company</u>

In order to induce Administrative Agent and each Lender party hereto to enter into this Amendment, Company represents and warrants to Administrative Agent and each Lender party hereto that:

(a)     All representations and warranties made by any Person in any Loan Document are true and correct in all respects on the Third Amendment Effective Date (after giving effect to this Amendment) as if such representations and warranties had been made on the Third Amendment Effective Date (after giving effect to this Amendment) (except to the extent that such representation or warranty was made as of a specific date, in which case such representation or warranty is true and correct in all respects as of such specific date).

(b)     Each Credit Party has duly taken all action necessary to authorize the execution and delivery by it of this Amendment and to authorize the consummation of the transactions contemplated hereby and the performance of its obligations hereunder, and such transactions are within each Credit Party's corporate, partnership, limited liability company or other powers.

(c)     The execution and delivery by the various Credit Parties of this Amendment does not and will not (a) conflict with any provision of (i) any Law, (ii) the Organizational Documents of any Credit Party, or (iii) any material agreement, judgment, license, order or permit applicable to or binding upon any Credit Party or its property, (b) result in the acceleration of any Indebtedness owed by any Credit Party, or (c) result in or require the creation of any Lien upon any assets or properties of any Credit Party except

as expressly contemplated or permitted in the Loan Documents.  Except as expressly contemplated in the Loan Documents no permit, consent, approval, authorization or order of, and no notice to or filing with, any Governmental Authority or third party is required in connection with the execution, delivery or performance by any Credit Party of this Amendment or to consummate any transactions contemplated hereby.

ARTICLE IV.

Acknowledgement and Confirmation

Section 4.1.    Acknowledgement and Confirmation

Each of the Credit Parties party hereto hereby reaffirms, acknowledges and agrees that, with respect to each Loan Document to which it is a party, after giving effect to this Amendment (and the deemed effectiveness hereof as of [●], 2015):

(a) all of its obligations, liabilities and indebtedness under such Loan Document, including guarantee obligations, shall remain in full force and effect on a continuous basis;

(b) all of the liens and security interests created and arising under such Loan Document remain in full force and effect on a continuous basis, and the perfected status and priority to the extent provided for in Section 2.16 of the Credit Agreement of each such lien and security interest continues in full force and effect on a continuous basis, unimpaired, uninterrupted and undischarged as collateral security for the Obligations;

in each case as if the amendment made pursuant hereto had become effective as of [●], 2015 and hereby waive any and all defenses of any kind or nature as a result of this Amendment having been entered into after [●], 2015.

ARTICLE V.

MISCELLANEOUS

Section 5.1.    Ratification of Agreements

This Amendment is limited precisely as written and, except as expressly set forth herein, shall not constitute or be deemed to constitute a modification, acceptance or waiver of any other provision of the Credit Agreement or any other Loan Document and shall not operate as a waiver of any right, power or remedy of the Administrative Agent or any Lender under the Credit Agreement, the Notes, or any other Loan Document.

Section 5.2.    Effect on Loan Documents

On and after the Third Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein", or words of like import, and each reference to the Credit Agreement in any other Loan Document shall be deemed a reference to the Credit Agreement as modified hereby. This Amendment shall constitute a "Loan Document" for all purposes of the Credit Agreement and the other Loan Documents.

Section 5.3.    **GOVERNING LAW**

**THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.**

Section 5.4.    Interpretive Provisions

Section 1.4 of the Credit Agreement is incorporated herein by reference herein as if fully set forth.

Section 5.5.    Severability

Any provision hereof which is held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without rendering the remaining provisions hereof invalid, illegal or unenforceable in such jurisdiction and without effecting the validity, legality or enforceability of any provision in any other jurisdiction.

Section 5.6.    Successors; Assignment

The terms of this Amendment shall be binding upon, and shall inure for the benefit of, the parties hereto and their respective successors and assigns.

Section 5.7.    Counterparts

This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which when so executed shall constitute an original, but all of which when taken together shall constitute a single contract.   Delivery of an executed counterpart of a signature page of this Amendment by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Amendment.

**THIS AMENDMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES HERETO.**

*[The remainder of this page has been intentionally left blank.]*

IN WITNESS WHEREOF, this Amendment is executed as of the date first above written.

COMPANY:                      ERG RESOURCES, L.L.C.


By: _____
      Name:  R. Kelly Plato
      Title:  Chief Financial Officer


ERG INTERMEDIATE HOLDINGS, LLC


By:_____
      Name:  R. Kelly Plato
      Title:  Chief Financial Officer


WEST CAT CANYON, L.L.C.


By:_____
      Name:  R. Kelly Plato
      Title:  Chief Financial Officer


ERG OPERATING COMPANY, LLC


By:_____
      Name:  R. Kelly Plato
      Title:  Chief Financial Officer


ERG INTERESTS, LLC


By:_____
      Name:  R. Kelly Plato
      Title:  Chief Financial Officer


[Signature Page to Third Amendment To Senior Secured Superpriority Debtor-In-Possession Credit Agreement]

ADMINISTRATIVE AGENT:          CLMG CORP.


By: _____
     Name: James Erwin
     Title: President


LENDER:                    LNV CORPORATION


By: _____
     Name: Jacob Cherner
     Title: Executive Vice President

[Signature Page to Third Amendment To Senior Secured Superpriority Debtor-In-Possession Credit Agreement]

## EXHIBIT B

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

**INTERIM ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE
BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE APPROVING THIRD AMENDMENT TO DIP
FACILITY AND AMENDING FINAL DIP ORDER**

THIS MATTER having come before the Court upon the motion (the "Motion") of

ERG Intermediate Holdings, L.L.C. ("Intermediate Holdings") and the other above-captioned

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for the entry of an order (A) approving the Third Amendment to DIP Facility attached hereto as Exhibit A (the "Third Amendment") and (B) amending the *Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (I) Use Cash Collateral of the Pre-Petition Secured Parties, (II) Obtain Post-Petition Financing and (III) Provide Adequate Protection to the Pre-Petition Secured Parties entered on June 15, 2015* (the "Final Order"). Capitalized terms used herein, but not defined herein, shall have the meanings ascribed to such terms in the Final Order.

The Court having considered the Motion, the terms of the Third Amendment, and the evidence submitted at the hearing held before this Court on September 1, 2015 (the "Interim Hearing"), to consider entry of this Order and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the local rules of the Court, due and proper notice of the Motion and the Interim Hearing having been given; and the Interim Hearing having been held before the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending a final hearing and was otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and, subject to the terms hereof; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      **Petition Date.**   On April 30, 2015 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the Northern District of Texas (the "Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue.** The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation.** On May 12, 2015, the Office of the United States Trustee appointed the Creditors' Committee in the Cases.

D. **Interim Order.** At the Interim Hearing, the Court approved the Third Amendment on an interim basis pending a final hearing. Pursuant to the Interim Order, a final hearing (the "Final Hearing") to consider final approval of the Third Amendment was scheduled for September 21, 2015.

E. **Notice.** Notice of the Interim Hearing and the relief requested in the Motion complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the local rules of the Court.

F. **Immediate Need for Postpetition Financing and Use of Cash Collateral.** The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). Good cause has been shown for entry of this Order. An immediate need exists for the Debtors to obtain funds and liquidity in order to continue operations and to administer and preserve the value of their estates pending a restructuring pursuant to a plan of reorganization approved by the DIP Agent and the Pre-Petition Agent (an "Approved Plan"). The ability of the

Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize the return for all creditors requires the availability of the DIP Facility and the use of Cash Collateral.  In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.  Further, the possibility for a successful reorganization would be jeopardized in the absence of the availability of funds in accordance with the terms of this Order.  Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

G.    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain on more favorable terms and conditions than those provided in this Order (a) adequate unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien.  The Debtors are unable to obtain credit for borrowed money without confirming and ratifying the DIP Liens and the DIP Superpriority Claim to (or for the benefit of) the DIP Secured Parties.

H.    **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)    The terms and conditions of the DIP Facility (as amended by the Third Amendment), are fair, reasonable, and the best available under the circumstances, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii) the DIP Facility (as amended by the Third Amendment) was negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Secured Parties; and

(iii) the use of the proceeds to be extended under the DIP Facility (as amended by the Third Amendment) will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

I.     **Relief Essential; Best Interest.**   The relief requested in the Motion (and provided in this Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility (as amended by the Third Amendment), ratify and confirm the DIP Obligations and use the Cash Collateral as contemplated herein.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors, the Pre-Petition Agent and the Pre-Petition Secured Parties and the DIP Secured Parties, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.     **Motion Granted.**   The Motion is granted on an interim basis in accordance with the terms and conditions set forth in this Order.  Any objections to the Motion with respect to

entry of this Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.      **Third Amendment.**  The Debtors are expressly and immediately authorized and empowered to enter into the Third Amendment and to incur and to perform all of their obligations thereunder in accordance with and subject to this Order, and to perform all of their obligations under the other DIP Loan Documents (as amended by the Third Amendment) and to execute and/or deliver the Third Amendment and all other instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the Debtors under the DIP Loan Documents (as amended by the Third Amendment).  The Debtors are hereby authorized and directed to continue to pay all DIP Obligations as such shall accrue and become due.  The DIP Loan Documents (as amended by the Third Amendment) and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms and shall have all of the protections afforded a party acting in good faith under Section 364(e) of the Bankruptcy Code.

3.      **Obligations Order**.  Except as modified in Paragraph 4 below, the Interim Order and the Final Order shall remain in full force and effect on a final basis in all respects and all of the rights of the Debtors and their estates in connection with the DIP Facility shall be governed by the terms of such Orders.  Without limiting the generality of the foregoing, (a) the Debtors hereby ratify and confirm all of the releases set forth in the Final Order and reassert them as of the date of this Order, (b) the DIP Obligations and the Pre-Petition Facility Obligations are ratified and confirmed in all respects, shall have all of the rights and priorities set forth in the Interim Order and the Final Order, and are not subject to any defense or counterclaim of any kind

or nature whatsoever, and (c) the DIP Liens, the Pre-Petition Liens, the Adequate Protection, Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim are each ratified and confirmed in all respects and shall have all of the rights set forth in the Interim Order and the Final Order.

     4.    **Modifications to Final Order**.  Upon the effective date of the Third Amendment, the Final Order shall be modified as follows:

     (a)    Paragraph J of the Final Order shall be deleted in its entirety and replaced with the following:

"**Use of Cash Collateral and Proceeds of the DIP Facility, DIP Collateral and Pre-Petition Collateral**.  All Cash Collateral, all proceeds of the Pre-Petition Collateral and the DIP Collateral (defined below), including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses payable under the Interim Order or this Final Order) shall be used and/or applied in accordance with the terms and conditions of the Interim Order or this Final Order, the DIP Budget and the other DIP Loan Documents, for the expenditures in the DIP Budget and for no other purpose; <u>provided</u>, that, subject to the limitations set forth in the DIP Budget, on or before August 25, 2015, the proceeds of the DIP Facility, DIP Collateral, Pre-Petition Collateral or Cash Collateral, may be used by the Creditors' Committee solely to investigate the matters covered by the Claims Stipulations (defined below)."

     (b)    Paragraph M of the Final Order shall be deleted in its entirety and replaced with the following:

"**Extension of Financing.**  The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents (including the DIP Budget) and subject to (i) the entry of this Final Order and (ii) findings by this Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order, and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens) will not be affected by any subsequent reversal, modification, vacatur or amendment of, as the case may be, the Interim Order, this Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code."

     (c)    Paragraph 3 of the Final Order shall be deleted in its entirety and replaced with the following:

"**Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility.** Subject to the terms and conditions of the Interim Order, this Final Order and the other DIP Loan Documents, and to the adequate protection granted to or for the benefit of the Pre-Petition Secured Parties as hereinafter set forth, each Debtor was authorized during the Interim Period and is hereby authorized on a final basis to (a) use the Cash Collateral and (b) request and use proceeds of the DIP Extensions of Credit, in each case in the amounts and for the line item expenditures set forth in the DIP Budget. The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Loan Documents and the prior written consent of the DIP Agent; provided, that the amount set aside for the professionals of the Creditors' Committee shall be $1,600,000 and shall not be subject to modification. Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 17(b), the Debtors' right to request or use proceeds of DIP Extensions of Credit or to use Cash Collateral shall terminate on the Termination Date. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval)."

(d)      Paragraph 9 of the Final Order shall be deleted in its entirety and replaced

with the following:

"Subject to the terms and conditions contained in this paragraph 9, the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claim, which have the relative lien and payment priorities as set forth herein, shall, in any event, in all cases be subject and subordinate to a carve-out (the "Carve-Out"), which shall be composed of the following: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) plus (ii) an amount equal to the unpaid professional fees and expenses incurred by the Debtors and the Creditors' Committee on or after the Petition Date through the date (if any) upon which the DIP Agent provides written notice (a "Carve Out Trigger Notice") to counsel to the Debtors and counsel to the Creditors' Committee that the Maturity Date (as defined in the DIP Credit Agreement) has occurred, plus (iii) $300,000 (the "Default Carve-Out Amount"), which amount may be used subject to the terms of the Interim Order and this Final Order to pay any allowed fees or expenses incurred by the Debtors and the Creditors' Committee after the date of delivery of the Carve-Out Trigger Notice. The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out. No portion of the Carve-Out, no proceeds of the DIP Facility or DIP Extensions of Credit, and no proceeds of the Pre-Petition Collateral, including Cash Collateral, or any other amounts, may be used for the payment of the fees and expenses of any person incurred (i) in challenging any of the Pre-Petition Secured Parties' or the DIP Secured Parties' liens or claims (or the value of their respective Pre-Petition Collateral or the DIP Collateral), or the initiation or prosecution of any claim or action against any of the Pre-Petition Secured Parties or DIP Secured Parties, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, or any state law or foreign law, in respect of the Pre-Petition Secured Obligations or the DIP Facility, or in preventing, hindering or delaying the realization by the Pre-Petition Secured Parties or the DIP Secured Parties upon any Pre-Petition Collateral or DIP Collateral, respectively, or the enforcement of their respective rights under the Interim Order, this Final Order, any other DIP

Loan Document or any Pre-Petition Loan Document, (ii) in requesting authorization, or supporting any request for authorization, to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (x) from the DIP Lenders or (y) if such financing is sufficient to indefeasibly pay and satisfy all DIP Obligations in full in cash and such financing is immediately so used or (iii) in connection with any claims or causes of actions against the Releasees, including formal or informal discovery proceedings in anticipation thereof, and/or in challenging any Pre-Petition Secured Obligations, DIP Obligations, Pre-Petition Liens, Adequate Protection Liens or DIP Liens."

(e)     Paragraph 15 of the Final Order shall be hereby deleted in its entirety and replaced with the following:

"**Disposition of DIP Collateral.**   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Loan Documents.  Upon the effective date of an Approved Plan, the reorganized Debtors shall assume the following obligations: (i) any accrued but unpaid U.S. Trustee fees, plus (ii) any unfunded professional fees and costs set forth in the DIP Budget."

(f)     Paragraph 18(a) of the Final Order shall be deleted in its entirety and replaced with the following:

"(a)     As a condition to the DIP Extensions of Credit and the authorization to use Cash Collateral, each Debtor has agreed that proceeds of any DIP Collateral and Pre-Petition Collateral, any amounts held on account of the DIP Collateral or Pre-Petition Collateral, and all payments and collections received by the Debtors with respect to all proceeds of DIP Collateral and Pre-Petition Collateral, shall be used and applied in accordance with the DIP Loan Documents (including repayment and reduction of the DIP Obligations) and the DIP Budget."

5.     **Certain References**.  On and after the effective date of the Third Amendment, all references in the Final Order and the other DIP Loan Documents to the "Final Order" shall be references to the Final Order as amended by this Order.

6.     **DIP Budget.**  The "DIP Budget" shall be the budget attached hereto as Exhibit B. Such budget may be updated from time to time pursuant to the DIP Loan Documents and, in each case, subject to the prior approval of the DIP Agent; provided that the amount set aside for the professionals of the Creditors' Committee shall be $1,600,000 and shall not be subject to modification.

7.     **Other Rights and Obligations.**

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.**  Based on the findings set forth herein and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by the Interim Order, the Final Order and this Order, in the event any or all of the provisions of this Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created pursuant to the Interim Order, the Final Order or this Order.

(b)     **Binding Effect.**  The provisions of this Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 case.

(c)     **No Waiver.**  The failure of the DIP Secured Parties or the Pre-Petition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Order, the Final Order, this Order, the other DIP Loan Documents or the Pre-Petition Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Pre-Petition Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of the Interim Order, the Final Order and this Order are without prejudice to, and do not constitute a waiver of, expressly or implicitly, or otherwise

10

impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Pre-Petition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent (i) to request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the Pre-Petition Secured Parties.

(d)    **No Third Party Rights.**    Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(e)    **Survival of Order.**    The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.   The terms and provisions of the Interim Order, the Final Order and this Order, and any protections granted to or for the benefit of the Pre-Petition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim), shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claim and protections for the Pre-Petition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim) shall maintain their priority as provided by the Interim Order, the Final

Order, this Order, the other DIP Loan Documents and the Pre-Petition Loan Documents (as the case may be), including any intercreditor arrangement or agreements in respect thereof, until all of the DIP Obligations and the Pre-Petition Secured Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

(f) **Enforceability.** This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(g) **No Waivers or Modification of Order.** The Debtors irrevocably waive any right to seek any modification or extension of this Order without the prior written consent of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent.

(h) **Waiver of any Applicable Stay.** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(i) **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

###END OF ORDER###

EXHIBIT A
THIRD AMENDMENT

### THIRD AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT

THIS THIRD AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT (this "Amendment") is made as of [●], 2015, by and among ERG Resources, L.L.C., a Texas limited liability company ("Company"), the Guarantors party hereto, CLMG Corp., as administrative agent ("Administrative Agent"), and the Lenders party hereto. Capitalized terms used herein and not otherwise defined herein shall have the meanings given to them in the Credit Agreement referred to below, as amended by this Amendment. References to Sections are references to Sections of the Credit Agreement, as applicable, unless otherwise stated.

W I T N E S S E T H:

WHEREAS, Company, Administrative Agent and Lenders entered into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated as of May 7, 2015 (as amended, restated, amended and restated, supplemented and/or otherwise modified prior to, but not including, the date hereof, the "Credit Agreement"), for the purpose and consideration therein expressed, whereby Lenders became obligated to make loans to Company as therein provided; and

WHEREAS, Company has requested that the Administrative Agent and Lenders amend certain provisions of the Credit Agreement, and, subject to the satisfaction of the conditions set forth herein, the Administrative Agent and the Lenders signatory hereto are willing to do so, on the terms set forth herein.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

ARTICLE I.

AMENDMENTS AND AGREEMENTS

Section 1.1.   Section 1.1 of the Credit Agreement is hereby amended by deleting the following definitions in their entirety:

"Acceptable Sale Process"

"Approved Sale"

"Auction"

"Bid Procedures"

"Bid Procedures Motion"

"Bid Procedures Order"

"Break-Up Fee"

"Post-Sale Carve-Out"

"Sale"

"Sale Motion"

"Sale Order"

Section 1.2.    Section 1.1 of the Credit Agreement is hereby amended by inserting the following definitions in the appropriate alphabetical order:

(a)    "Approved Plan" means a Reorganization Plan which is in form and substance satisfactory to the Administrative Agent and the Lenders and shall include (i) payment in full in cash of all Commitments and Obligations under the DIP Facility on or prior to the Maturity Date and (ii) treatment of the Pre-Petition Facility Obligations in a manner acceptable to the Pre-Petition Agent.

(b)    "Committee Settlement Agreement" means that certain Settlement and Transaction Support Agreement dated August 6, 2015, by and among the Official Committee of Unsecured Creditors appointed in the chapter 11 cases jointly administered as *In re ERG Intermediate Holdings, LLC,* et al., No. 15-31858-HDH currently pending before the United States Bankruptcy Court for the Northern District of Texas, CLMG Corp. and LNV Corporation.

(c)    "Reorganization Plan" means a plan of reorganization in the Chapter 11 Case.

Section 1.3.    The definition of "Approved Budget" appearing in Section 1.1 of the Credit Agreement is hereby amended by inserting the text ", provided that the set aside for the professional fees of the Committee shall be as set forth in the Committee Settlement Agreement" following the text "and any Supplemental Approved Budget" appearing therein.

Section 1.4.    The definition of "Change of Control" appearing in Section 1.1 of the Credit Agreement is hereby amended by deleting the reference to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof.

Section 1.5.    Clauses (1), (2) and (3) of the definition of "Final Order" appearing in Section 1.1 of the Credit Agreement are hereby amended as follows:

(a)    clause (1) is hereby deleted in its entirety;

(b)    clause (2) is hereby amended by renumbering such clause as clause (1) and deleting the reference to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof; and

(c)    clause (3) is hereby amended by renumbering such clause as clause (2).

Section 1.6.    The definition of "Maturity Date" appearing in Section 1.1 of the Credit Agreement is hereby amended by amending and restating it in its entirety as follows:

"'Maturity Date'" means, the earliest to occur of (a) the Stated Maturity Date, (b) the date of termination of the Commitments of the Lenders and their obligations to make Loans pursuant to the exercise of remedies under Article VIII as a result of the occurrence of an Event of Default which is continuing, and (c) the effective date of an Approved Plan."

Section 1.7.    The definition of "Stated Maturity Date" appearing in Section 1.1 of the Credit Agreement is hereby amended by deleting "August 31, 2015" and inserting "November 15, 2015" in lieu thereof.

Section 1.8.    Section 2.6(a)(iii), Section 2.6(a)(v), Section 2.7(b), Section 2.15, Section 7.17, Section 7.21(d), Section 7.21(e) and Section 10.1(a) of the Credit Agreement are hereby amended by deleting the references to "Acceptable Sale Process" appearing therein and inserting "Approved Plan" in lieu thereof.

Section 1.9.    Section 2.16(a) of the Credit Agreement is hereby amended by:

(a)    deleting the following sentence appearing therein:

"In addition to the foregoing, upon the closing of the Approved Sale (and only upon the closing of the Approved Sale), a fund shall be established by the Credit Parties in accordance with the terms of the Orders in an amount equal to $750,000 (the "Post-Sale Carve-Out") to be used solely for professional fees and expenses incurred by the Credit Parties' estates after the closing of the Approved Sale, including in connection with a plan of reorganization permitted under the Interim Order or the Final Order; provided that, the use of the Post-Sale Carve-Out shall be consistent with the Approved Budget; provided further, that the Post-Sale Carve Out shall be reduced on a dollar for dollar basis by the amount of the Default Carve-Out Amount in the event that the Administrative Agent delivers a Carve-Out Trigger Notice"; and

(b)    deleting the text "or the Post-Sale Carve Out" following the text "Notwithstanding anything herein to the contrary, no portion of the Carve-Out" appearing therein.

Section 1.10.    Section 4.1(b) of the Credit Agreement is hereby amended by deleting the text "Without limiting the foregoing, the CRO shall have full authority to (i) direct the Acceptable Sale Process and (ii) direct or instruct the Company and its Subsidiaries to take or cause the actions necessary or appropriate to achieve the Milestones" appearing therein.

Section 1.11.    Section 4.1(l) of the Credit Agreement is hereby deleted in its entirety.

Section 1.12.    Section 6.24 of the Credit Agreement is hereby amended by amending and restating it in its entirety as follows:

"Section 6.24. <u>Approved Plan Milestone</u>. Company shall cause, or shall cause one or more of the Guarantors (as applicable) to cause the Approved Plan to be effective no later than November 15, 2015 (the "<u>Milestone</u>")."

Section 1.13.  Section 7.5 of the Credit Agreement is hereby amended by deleting the following text appearing therein:

"Notwithstanding anything else provided in this Section 7.5, the Company and any Grantor may Dispose of its Oil and Gas Properties constituting California Assets pursuant to an Approved Sale, which, for the avoidance of doubt, must be conducted pursuant to an Auction pursuant to the Bid Procedures which preserve the right of the Administrative Agent and the Pre-Petition Agent to Credit Bid in connection with any sale of Collateral or Pre-Petition Collateral (as the case may be)."

Section 1.14.  Section 7.13(c) of the Credit Agreement is hereby amended by inserting the text "except as set forth in the Committee Settlement Agreement," following the text "Notwithstanding anything in any Approved Budget," appearing therein.

Section 1.15.  Section 8.1(l) of the Credit Agreement is hereby amended by deleting the clause ", except pursuant to the Acceptable Sale Process" appearing therein.

Section 1.16.  Section 8.1(q) of the Credit Agreement is hereby amended by deleting the clause "other than pursuant to the Acceptable Sale Process" appearing therein.

Section 1.17.  Section 8.1(t) of the Credit Agreement is hereby amended by deleting the clause ", except that the Credit Parties are entitled to conduct the Acceptable Sale Process in a manner consistent with the Bid Procedures" appearing therein.

Section 1.18.  Section 8.1 of the Credit Agreement is hereby amended by deleting the word "or" at the end of subsection 8.1(x), deleting the period at the end of subsection 8.1(y), inserting a semicolon at the end of subsection 8.1(y) followed by the word "or" and inserting the following subsection 8.1(z):

"(z) a Reorganization Plan other than an Approved Plan shall be filed by any Credit Party in the Chapter 11 Case."

ARTICLE II.

<u>CONDITIONS OF EFFECTIVENESS</u>

Section 2.1.    <u>Effective Date</u>

This Amendment shall become effective when each of the following conditions shall have been satisfied:

(a)    <u>Counterparts</u>. Borrower, each Guarantor, Administrative Agent and the Required Lenders shall have signed a counterpart hereof (whether the same or different counterparts) and shall have delivered (including by way of facsimile, pdf or other

electronic transmission) the same to Administrative Agent c/o White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036, Attention: John Gawey (facsimile number: (212) 354-8113 / email: john.gawey@whitecase.com);

(b)     Representations and Warranties. All of the representations and warranties made pursuant to Article IV hereof shall be true and correct in all material respects on the Third Amendment Effective Date (after giving effect to this Amendment); and

(c)     Bankruptcy Court Approval. The Bankruptcy Court shall have entered an order, reasonably satisfactory in form and substance to the Required Lenders, approving this Amendment, which order shall be in full force and effect and shall not have been amended, modified, stayed or reversed.

(d)     No Default. No event shall have occurred and be continuing that would constitute an Event of Default or a Default (after giving effect to this Amendment) (the date on which such conditions have been satisfied the "Third Amendment Effective Date")

ARTICLE III.

REPRESENTATIONS AND WARRANTIES

Section 3.1.     Representations and Warranties of Company

In order to induce Administrative Agent and each Lender party hereto to enter into this Amendment, Company represents and warrants to Administrative Agent and each Lender party hereto that:

(a)     All representations and warranties made by any Person in any Loan Document are true and correct in all respects on the Third Amendment Effective Date (after giving effect to this Amendment) as if such representations and warranties had been made on the Third Amendment Effective Date (after giving effect to this Amendment) (except to the extent that such representation or warranty was made as of a specific date, in which case such representation or warranty is true and correct in all respects as of such specific date).

(b)     Each Credit Party has duly taken all action necessary to authorize the execution and delivery by it of this Amendment and to authorize the consummation of the transactions contemplated hereby and the performance of its obligations hereunder, and such transactions are within each Credit Party's corporate, partnership, limited liability company or other powers.

(c)     The execution and delivery by the various Credit Parties of this Amendment does not and will not (a) conflict with any provision of (i) any Law, (ii) the Organizational Documents of any Credit Party, or (iii) any material agreement, judgment, license, order or permit applicable to or binding upon any Credit Party or its property, (b) result in the acceleration of any Indebtedness owed by any Credit Party, or (c) result in or require the creation of any Lien upon any assets or properties of any Credit Party except

as expressly contemplated or permitted in the Loan Documents. Except as expressly contemplated in the Loan Documents no permit, consent, approval, authorization or order of, and no notice to or filing with, any Governmental Authority or third party is required in connection with the execution, delivery or performance by any Credit Party of this Amendment or to consummate any transactions contemplated hereby.

ARTICLE IV.

Acknowledgement and Confirmation

Section 4.1.      Acknowledgement and Confirmation

Each of the Credit Parties party hereto hereby reaffirms, acknowledges and agrees that, with respect to each Loan Document to which it is a party, after giving effect to this Amendment (and the deemed effectiveness hereof as of [●], 2015):

(a) all of its obligations, liabilities and indebtedness under such Loan Document, including guarantee obligations, shall remain in full force and effect on a continuous basis;

(b) all of the liens and security interests created and arising under such Loan Document remain in full force and effect on a continuous basis, and the perfected status and priority to the extent provided for in Section 2.16 of the Credit Agreement of each such lien and security interest continues in full force and effect on a continuous basis, unimpaired, uninterrupted and undischarged as collateral security for the Obligations;

in each case as if the amendment made pursuant hereto had become effective as of [●], 2015 and hereby waive any and all defenses of any kind or nature as a result of this Amendment having been entered into after [●], 2015.

ARTICLE V.

MISCELLANEOUS

Section 5.1.      Ratification of Agreements

This Amendment is limited precisely as written and, except as expressly set forth herein, shall not constitute or be deemed to constitute a modification, acceptance or waiver of any other provision of the Credit Agreement or any other Loan Document and shall not operate as a waiver of any right, power or remedy of the Administrative Agent or any Lender under the Credit Agreement, the Notes, or any other Loan Document.

Section 5.2.      Effect on Loan Documents

On and after the Third Amendment Effective Date, each reference in the Credit Agreement to "this Agreement", "hereunder", "hereof", "herein", or words of like import, and each reference to the Credit Agreement in any other Loan Document shall be deemed a reference to the Credit Agreement as modified hereby. This Amendment shall constitute a "Loan Document" for all purposes of the Credit Agreement and the other Loan Documents.

Section 5.3. **GOVERNING LAW**

**THIS AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.**

Section 5.4.    Interpretive Provisions

Section 1.4 of the Credit Agreement is incorporated herein by reference herein as if fully set forth.

Section 5.5.    Severability

Any provision hereof which is held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without rendering the remaining provisions hereof invalid, illegal or unenforceable in such jurisdiction and without effecting the validity, legality or enforceability of any provision in any other jurisdiction.

Section 5.6.    Successors; Assignment

The terms of this Amendment shall be binding upon, and shall inure for the benefit of, the parties hereto and their respective successors and assigns.

Section 5.7.    Counterparts

This Amendment may be executed in counterparts (and by different parties hereto in different counterparts), each of which when so executed shall constitute an original, but all of which when taken together shall constitute a single contract.   Delivery of an executed counterpart of a signature page of this Amendment by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Amendment.

**THIS AMENDMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES HERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN OR AMONG THE PARTIES HERETO.**

*[The remainder of this page has been intentionally left blank.]*

IN WITNESS WHEREOF, this Amendment is executed as of the date first above written.

COMPANY:                          ERG RESOURCES, L.L.C.


                                  By: _____
                                      Name:  R. Kelly Plato
                                      Title:  Chief Financial Officer


                                  ERG INTERMEDIATE HOLDINGS, LLC


                                  By:_____
                                      Name:  R. Kelly Plato
                                      Title:  Chief Financial Officer


                                  WEST CAT CANYON, L.L.C.


                                  By:_____
                                      Name:  R. Kelly Plato
                                      Title:  Chief Financial Officer


                                  ERG OPERATING COMPANY, LLC


                                  By:_____
                                      Name:  R. Kelly Plato
                                      Title:  Chief Financial Officer


                                  ERG INTERESTS, LLC


                                  By:_____
                                      Name:  R. Kelly Plato
                                      Title:  Chief Financial Officer


[Signature Page to Third Amendment To Senior Secured Superpriority Debtor-In-Possession
Credit Agreement]

ADMINISTRATIVE AGENT:          CLMG CORP.

By: _____
     Name: James Erwin
     Title: President


LENDER:               LNV CORPORATION

By: _____
     Name: Jacob Cherner
     Title: Executive Vice President

[Signature Page to Third Amendment To Senior Secured Superpriority Debtor-In-Possession Credit Agreement]

EXHIBIT B
DIP BUDGET

**[To be filed prior to the Hearing]**

# EXHIBIT C

"Redline" Showing Proposed Amendments to Final DIP Order

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, L.L.C., *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

**FINAL ORDER PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE
BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE AUTHORIZING THE DEBTORS TO (I) USE CASH
COLLATERAL OF THE PRE-PETITION SECURED PARTIES, (II) OBTAIN POST-
PETITION FINANCING AND (III) PROVIDE ADEQUATE PROTECTION TO THE
<u>PRE-PETITION SECURED PARTIES</u>**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

THIS MATTER having come before the Court upon the motion, dated May 1, 2015 (the "Motion"), of ERG Intermediate Holdings, L.L.C. ("Intermediate Holdings") and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for the entry of an order (A) authorizing the Debtors to (I) use cash collateral of the Pre-Petition Secured Parties (as defined below) pursuant to Section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), (II) obtain postpetition financing pursuant to Sections 361, 362 and 364 of the Bankruptcy Code and (III) provide adequate protection to the Pre-Petition Secured Parties pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, and (B) scheduling interim and final hearings pursuant to Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), the Debtors sought, among other things, the following relief:

      (i)      the Court's authorization, pursuant to Sections 363 and 364(c)(1), (2), (3) and (d)(1) of the Bankruptcy Code, for ERG Resources, L.L.C. ("ERG Resources" or the "DIP Borrower"), to (A) enter into a senior secured superpriority post-petition credit facility (the "DIP Facility") provided by CLMG Corp. ("CLMG"), as administrative agent and as collateral agent (in such capacities, respectively, the "DIP Administrative Agent" and "DIP Collateral Agent," and collectively, the "DIP Agent"), and the Pre-Petition Lenders (as defined below), as lenders (in such capacities, the "DIP Lenders"), pursuant to the Senior Secured Superpriority Debtor-in-Possession Credit Agreement attached hereto as Exhibit A (the "DIP Credit Agreement,"[2] and together with an interim order and a final order (this "Final Order"), and all other agreements, documents and instruments delivered or executed in connection therewith, as hereafter amended, supplemented or

---

[2]      Terms used but not otherwise defined herein shall have the meanings given to them in the DIP Credit Agreement.

otherwise modified from time to time, including the DIP Budget (as defined below), collectively, the "DIP Loan Documents"), and (B) obtain extensions of credit thereunder on a senior secured and superpriority basis, (1) during the period (the "Interim Period") from the date of the Interim Order (as defined below) through and including the earlier to occur of (x) the date of entry of this Final Order by this Court and (y) the Termination Date (as defined below), in an aggregate principal amount that did not exceed $5,000,000, and (2) upon entry of this Final Order and thereafter until the Termination Date, in an aggregate principal amount not to exceed $17,500,000, in each case at any time outstanding (all financial accommodations and extensions of credit under the DIP Credit Agreement and the DIP Facility, the "DIP Extensions of Credit"), and (C) for Intermediate Holdings, West Cat Canyon, L.L.C. ("West Cat"), ERG Operating Company, LLC ("ERG Operating"), and ERG Interests, LLC ("ERG Interests") (collectively, the "DIP Guarantors," and together with the DIP Borrower, the "DIP Loan Parties") to jointly and severally guarantee on a secured basis the DIP Borrower's obligations in respect of the DIP Facility;

(ii)     the Court's authorization for each of the DIP Loan Parties to execute the DIP Loan Agreement and the other DIP Loan Documents to which it is a party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)     the Court's authorization to use DIP Extensions of Credit in accordance with the proposed budget prepared by the Debtors and annexed hereto as Exhibit B (as updated from time to time pursuant to the DIP Loan Documents and, in each case, subject

to the prior approval of the DIP Agent, the "DIP Budget"), and as otherwise provided herein and in the other DIP Loan Documents;

(iv)    the Court's authorization to grant to the DIP Agent for the benefit of the DIP Lenders and the other secured parties under the DIP Loan Documents (collectively, the "DIP Secured Parties"), in respect of the DIP Obligations (as defined below), a superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code and first priority priming liens on and security interests in all assets and property of the Debtors (now owned or hereafter acquired) pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, in each case as and to the extent set forth more fully below and subject to the Carve-Out (as defined below);

(v)    the Court's authorization to use "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "Cash Collateral") in which the Pre-Petition Secured Parties have an interest;

(vi)    the Court's authorization to grant, as of the Petition Date (as defined below), the Adequate Protection Superpriority Claim (as defined below) and Adequate Protection Liens (as defined below), to the extent of and as compensation for any Diminution in Value (as defined below), and the payment of fees and expenses to the Pre-Petition Agent (as defined below) for the benefit of the Pre-Petition Lenders, in each case, as set forth more fully below and subject to the Carve-Out;

(vii)    the modification by the Court of the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, the Interim Order, this Final Order and the other DIP Loan Documents;

(viii)   the scheduling by the Court of an interim hearing (the "Interim Hearing") to consider entry of the Interim Order for a date that is no later than 5 days following the Petition Date;

(ix)   approval of this Final Order no later than 35 days following the Petition Date, pursuant to which the Debtors will be required to conduct an Acceptable Sale Process, in accordance with the DIP Credit Agreement and the Milestones through the implementation of the Bid Procedures in respect of substantially all of the California Assets through a public auction and sale process whereby the DIP Agent and the Pre-Petition Agent shall have the right to credit-bid up to the full amount of their claims, with an auction and a hearing before the Court to consider the sale scheduled for a date that is no later than 85 days following the Petition Date;

(x)   the scheduling by the Court of a final hearing (the "Final Hearing") to consider entry of this Final Order granting the relief requested in the Motion on a final basis no later than 35 days following the Petition Date and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion; and

(xi)   the Court's waiving of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of this Final Order.

The Court having considered the Motion, the terms of the DIP Facility and the DIP Loan Documents, the Declaration of R. Kelly Plato in Support of the First Day Motions, the comments of the United States Trustee and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the evidence submitted at the Interim Hearing held before this Court on May 4, 2015, to consider entry of the Interim Order and at the Final Hearing held before this Court on June 11, 2015 to consider entry of this Final Order; and the Court having entered on May 5, 2015, after the Interim Hearing, that certain Interim Order Pursuant To Sections 361, 362, 363

And 364 Of The Bankruptcy Code And Rule 4001 Of The Federal Rules Of Bankruptcy Procedure (A) Authorizing The Debtors To (I) Use Cash Collateral Of The Pre-Petition Secured Parties, (II) Obtain Post-Petition Financing And (III) Provide Adequate Protection To The Pre-Petition Secured Parties, And (B) Prescribing Form And Manner Of Notice Of And Scheduling Final Hearing (the "Interim Order") approving the DIP Facility and the Debtors' use of Cash Collateral on an interim basis; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the local rules of the Court, due and proper notice of the Motion, the Interim Hearing, and the Final Hearing having been given; and the Final hearing having been held before the Court and concluded on June 11, 2015; and it appearing that approval of the interim relief requested in the Motion was necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and was otherwise fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential for the continued operation of the Debtors' businesses; and, subject to the terms hereof, the Court having determined that there is adequate protection of the liens of the Pre-Petition Secured Parties; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date.** On April 30, 2015 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue.** The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation.** On May 12, 2015, the Office of the United States Trustee appointed the Creditors' Committee in the Cases.

D. **Interim Order.** At the Interim Hearing, the Court approved the DIP Facility on an interim basis pending the Final Hearing and entry of this Final Order. Pursuant to the Interim Order, the Final Hearing to consider final approval of the DIP Facility was scheduled for June 1, 2015 and then rescheduled for June 11, 2015.

E. **Notice.** Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, by telecopy, email, overnight courier and/or hand delivery, to (a) the United States Trustee for the Northern District of Texas, (b) counsel to the Pre-Petition Agent; (c) counsel to the Creditors' Committee; (d) all other parties asserting a lien on or a security interest in the assets of the Debtors to the extent reasonably known to the Debtors; (e) the Office of the United States Attorney General for the Northern District of Texas; (f) the Internal Revenue Service, and (g) those creditors holding the 20 largest unsecured claims against the Debtors' estates (the "Notice Parties"). Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion complies with Section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the local rules of the Court.

F.   **Pre-Petition Indebtedness.**

I.   **Pre-Petition Facility.**

(i)   ERG Resources, as borrower, the lenders party thereto from time to time (the "Pre-Petition Lenders"), CLMG Corp., as administrative agent (in such capacity, the "Pre-Petition Agent", and as collateral agent (in such capacity, the "Pre-Petition Collateral Agent", and, together with the Pre-Petition Lenders and the Pre-Petition Agent, the "Pre-Petition Secured Parties"), are parties to that Credit Agreement dated as of January 24, 2013, as amended by that certain First Amendment to Credit Agreement (the "First Amendment to Credit Agreement"), dated as of August 14, 2014 (as further amended, restated, supplemented and/or otherwise modified from time to time through the date hereof the "Pre-Petition Credit Agreement," and together with each of the Loan Documents (each as defined therein), the "Pre-Petition Loan Documents").

(ii)   The Pre-Petition Credit Agreement provided for $372,000,000 of loans consisting initially of $230,000,000 of Term Loans and $120,000,000 of Delayed Draw Term Loans (each as defined in the Pre-Petition Credit Agreement) and subsequently of an additional $22,000,000 of Term Loans pursuant to the First Amendment to Credit Agreement (the "Pre-Petition Facility").  Intermediate Holdings, West Cat, ERG Operating, and ERG Interests (the "Pre-Petition Subsidiary Guarantors") provided, pursuant to section 6.16 of the Pre-Petition Credit Agreement, an unconditional joint and several guaranty of the Guaranteed Obligations (as defined in the Guaranty (as defined below)).   Additionally, each Pre-Petition Subsidiary Guarantor has executed a guaranty (the "Guaranty") in connection with the Guaranteed Obligations (as defined in the Guaranty) and, pursuant to the First Amendment to Credit Agreement, Scott Y. Wood has executed a guaranty (the "Owner Guaranty") which provides an

absolute and unconditional guaranty of the Guaranteed Obligations (as defined in the Owner Guaranty) upon the occurrence of certain circumstances.

(iii)     Pursuant to the Pre-Petition Loan Documents, the Pre-Petition Secured Parties are secured by first priority liens on, and security interests in, the Collateral (as defined in the Pre-Petition Credit Agreement), including the Collateral Account (as defined in the Pre-Petition Credit Agreement), all funds therein and all proceeds thereof (the "Pre-Petition Collateral").  For the avoidance of doubt, notwithstanding the foregoing, the funds subject to and maintained under the Collateral Agreement and Receipt entered into on April 21, 2010, between ERG Resources, L.L.C. and IndemCo, LP in connection with the Abandonment Sinking Fund Agreement between ERG Resources, L.L.C. and U.S. Specialty Insurance Company ("USSIC") dated April 28, 2010 (the "USSIC Funds") are subject to a first lien in favor of USSIC. Accordingly, none of the DIP Liens, the DIP Superpriority Claim nor the Adequate Protection Liens or the Adequate Protection Superpriority Claim will prime, be superior to, or outrank any liens, claims and rights in the USSIC Funds.  Additionally, none of the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens or the Adequate Protection Superpriority Claim shall attach to, or provide any lien claim or encumbrance on the Chevron Proceeds (as defined in Docket Number 246) (the "Chevron Proceeds"), or the Chevron Property.  The Chevron Proceeds and the Chevron Property are not property of the Debtors' estates.  For purposes of this Order, the term Chevron Property means, collectively, (a) the non-participatory perpetual royalty interest specifically excepted from the transfer of assets from Chevron U.S.A. Inc. and Union Oil Company of California to ERG Resources, L.L.C. effected pursuant to that certain Grant Deed recorded with the Santa Barbara County Clerk Recorder on May 14, 2010, which assigned such grant deed record number 2010-0025677, (b) the two percent of one

hundred percent overriding royalty referenced in the Assignment of Royalty recorded with the Santa Barbara County Clerk Recorder on January 18, 2012, which assigned such Assignment record number 2012-0003073, (c) the rights of Chevron U.S.A. Inc. set forth in that certain Environmental Restrictions and Conditions and Covenants Agreement recorded with the Santa Barbara County Clerk Recorder on May 14, 2010, which assigned such document record number 2010-0025675 and (d) the rights of Chevron U.S.A. Inc. set forth in that certain Assignment of Oil and Gas Leases and Rights-of-Way and Easements recorded with the Santa Barbara County Clerk Recorder on May 14, 2010, which assigned such Assignment record number 2010-0025676.

  II.  **Reserved.**

  III.  **<u>Intercreditor Agreement.</u>**

  (i)  The Intercreditor Agreement (as defined in the Pre-Petition Loan Documents) remains in full force and effect.

  G.  **<u>Stipulations as to Pre-Petition Secured Obligations.</u>** Without limiting the rights of a Creditors' Committee or any other party in interest as and to the extent set forth in Paragraph 8 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree:

  (i)  **<u>Pre-Petition Credit Facility Obligations.</u>** As of the Petition Date, the Debtors were indebted and liable to the Pre-Petition Agent and the Pre-Petition Secured Parties under the Pre-Petition Loan Documents, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than (a) $372,000,000 with respect to the Pre-Petition Facility and (b) in connection with the amount in the foregoing clause (a), accrued (both before and after the Petition Date) and unpaid interest thereon, all yield maintenance

amounts payable in connection therewith, and all fees, expenses and all other obligations payable under the Pre-Petition Loan Documents, including any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable or reimbursable under the Pre-Petition Loan Documents (clauses (a) through (b), collectively, the "Pre-Petition Facility Obligations").

(ii) **Enforceability, etc. of the Pre-Petition Secured Obligations.** The Pre-Petition Loan Documents and the Pre-Petition Secured Obligations are (a) legal, valid, binding, and enforceable against each Debtor, and (b) not subject to any contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, avoidance or other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(iii) **Enforceability, etc. of Pre-Petition Liens.** The liens and security interests (collectively, the "Pre-Petition Liens") granted by the Debtors under the Pre-Petition Loan Documents to or for the benefit of the Pre-Petition Agent and the other Pre-Petition Secured Parties as security for the Pre-Petition Secured Obligations encumber substantially all of the Debtors' assets and property (all such assets and property, as the same existed on or at any time prior to the Petition Date, including, without limitation, the Pre-Petition Collateral). The Pre-Petition Liens have been properly recorded and perfected under applicable non-bankruptcy law, and are legal, valid, enforceable, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. As of the Petition Date, and without giving effect to the Interim Order or this Final Order, the Debtors are not aware of any liens or security interests having priority over the Pre-Petition

Liens, except the Senior Third Party Liens (defined below). The Pre-Petition Liens were granted to or for the benefit of the Pre-Petition Agent and the Pre-Petition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and/or commitments and other financial accommodations secured thereby.

        (iv)    **Indemnity.** The Pre-Petition Agent, the Pre-Petition Secured Parties and the DIP Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (defined below) and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to all transactions contemplated by the foregoing. Accordingly, the Pre-Petition Agent, the Pre-Petition Secured Parties and the DIP Secured Parties shall be and hereby are indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto. No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph G, in the Pre-Petition Loan Documents or in the DIP Loan Documents, to indemnify and/or hold harmless the Pre-Petition Agent, the DIP Agent, or any other Pre-Petition Secured Party or DIP Secured Party, as the case may be, and any such defenses are hereby waived.

        (v)    **No Control.** None of the DIP Secured Parties or the Pre-Petition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility, the DIP Loan Documents and/or the Pre-Petition Loan Documents.

(vi) **No Claims, Causes of Action.** As of the date hereof, there exist no claims or causes of action against any of the Pre-Petition Agent, the Pre-Petition Secured Parties or the DIP Secured Parties with respect to, in connection with, related to, or arising from the Pre-Petition Loan Documents and/or the DIP Loan Documents that may be asserted by the Debtors or any other person or entity.

(vii) **Release.** The Debtors forever and irrevocably release, discharge, and acquit all former, current and future (a) DIP Secured Parties, (b) Pre-Petition Secured Parties, (c) Affiliates of the DIP Secured Parties and the Pre-Petition Secured Parties and (d) officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of each of the DIP Secured Parties, the Pre-Petition Secured Parties and each of their respective Affiliates, in each case acting in such capacity (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Pre-Petition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy

Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Pre-Petition Agent, the Pre-Petition Secured Parties and/or the DIP Secured Parities.

H.      **Immediate Need for Postpetition Financing and Use of Cash Collateral.**  The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Good cause has been shown for entry of this Final Order.  An immediate need exists for the Debtors to obtain funds and liquidity in order to continue operations and to administer and preserve the value of their estates pending a restructuring or a sale of all or substantially all of the California Assets pursuant to an agreed restructuring or sale process.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and to maximize the return for all creditors requires the availability of the DIP Facility and the use of Cash Collateral.  In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.  Further, the possibility for a successful reorganization would be jeopardized in the absence of the availability of funds in accordance with the terms of this Final Order.  Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

I.      **No Credit Available on More Favorable Terms.**  The Debtors have been unable to obtain on more favorable terms and conditions than those provided in this Final Order (a) adequate unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense, (b) credit for money borrowed with priority over any or all

administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claim (defined below) to (or for the benefit of) the DIP Secured Parties.

J.     **Use of Cash Collateral and Proceeds of the DIP Facility, DIP Collateral and Pre-Petition Collateral**. All Cash Collateral, all proceeds of the Pre-Petition Collateral and the DIP Collateral (defined below), including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses payable under the Interim Order or this Final Order) shall be used and/or applied in accordance with the terms and conditions of the Interim Order or this Final Order, the DIP Budget and the other DIP Loan Documents, for the expenditures in the DIP Budget and for no other purpose; provided, that, subject to the limitations set forth in the DIP Budget, ~~up to $100,000 in the aggregate of~~ on or before August 25, 2015, the proceeds of the DIP Facility, DIP Collateral, Pre-Petition Collateral or Cash Collateral, may be used by the Creditors' Committee solely to investigate the matters covered by the Claims Stipulations (defined below); ~~provided, further that the DIP Budget shall allocate $500,000 for the payment of Creditors' Committee professional fees incurred from the Petition Date through the earlier of (a) the closing date of an Approved Sale; and (b) August 12, 2015. For the avoidance of doubt, proceeds of the Pre-Petition Collateral and the DIP Collateral shall include proceeds from the Approved Sale, and the proceeds from the Approved Sale shall be paid directly to the DIP Agent and the Pre-Petition Agent upon consummation of the Approved Sale pursuant to the Sale Order; **provided**, that~~

~~proceeds of the Approved Sale shall be paid to the Debtors to the extent required to fund the expenses set forth in clause (i) and clause (ii) of paragraph 15 to the extent such expenses are not paid from cash on hand and DIP Extensions of Credit.~~"

K. **Adequate Protection for the Pre-Petition Secured Parties.** The Pre-Petition Agent and the Pre-Petition Secured Parties have negotiated in good faith regarding the Debtors' use of the Pre-Petition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof. The Pre-Petition Agent and the Pre-Petition Secured Parties have agreed to permit the Debtors to use the Pre-Petition Collateral, including the Cash Collateral, in accordance with the terms hereof and the DIP Budget subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under Section 363(m) of the Bankruptcy Code. The Pre-Petition Agent and the other Pre-Petition Secured Parties are entitled to the adequate protection as and to the extent set forth herein pursuant to Sections 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and of the use of the Pre-Petition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Pre-Petition Agent's and the other Pre-Petition Secured Parties' consent thereto; provided, that nothing in the Interim Order, this Final Order, or the other DIP Loan Documents shall be construed as a consent by any Pre-Petition Secured Party that it would be adequately protected in the event debtor in possession financing is provided by a third party (*i.e.*, other than the DIP Lenders) a consent to the terms of any other such financing,

including the consent to any lien encumbering the Pre-Petition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof).

L.    **Section 552.** In light of, as applicable, the subordination of the Pre-Petition Liens and the Adequate Protection Liens of the Pre-Petition Secured Parties to the DIP Liens and the Carve-Out, and the granting of the DIP Liens on the Pre-Petition Collateral, the Pre-Petition Agent and the Pre-Petition Secured Parties are each entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

M.    **Extension of Financing.** The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents (including the DIP Budget) and subject to (i) the entry of this Final Order, and (ii) ~~entry of the Bid Procedures Order relating to the Acceptable Sale Process pursuant to the Milestones (collectively, the "Sale Conditions"), and (iii)~~ findings by this Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order, and the DIP Facility (including the DIP Superpriority Claim and the DIP Liens) ~~, including the Sale Conditions,~~ will not be affected by any subsequent reversal, modification, vacatur or amendment of, as the case may be, the Interim Order, this Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)    The terms and conditions of the DIP Facility, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii) the DIP Facility was negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Secured Parties; and

(iii) the use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

O. **Relief Essential; Best Interest.** The relief requested in the Motion (and provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property. It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility, incur the DIP Obligations and use the Cash Collateral as contemplated herein.

**NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Interim Hearing and the Final Hearing, and with the consent of the Debtors, the Pre-Petition Agent and the Pre-Petition Secured Parties and the DIP Secured Parties, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted.** The Motion is granted on a final basis in accordance with the terms and conditions set forth in this Final Order. Any objections to the Motion with respect to entry of this Final Order to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.     **DIP Facility.**

(a)     **DIP Obligations, etc.**     The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur and to perform the DIP Obligations in accordance with and subject to the Interim Order, this Final Order, and the other DIP Loan Documents, to execute and/or deliver all DIP Loan Documents and all other instruments, certificates, agreements and documents, and to take all actions, which may be reasonably required or otherwise necessary for the performance by the Debtors under the DIP Facility, including the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to continue to pay all principal, interest, fees and expenses, indemnities and other amounts described herein and in the other DIP Loan Documents as such shall accrue and become due hereunder or thereunder, including, without limitation, the reasonable fees and expenses of the attorneys and financial and other advisors and consultants of the DIP Agent and the DIP Lenders as and to the extent provided for herein and in the other DIP Loan Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities and obligations (including indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Loan Documents, the "DIP Obligations").  The DIP Loan Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms.  The term of the DIP Facility commenced on the date of entry of the Interim Order and end on the Termination Date, subject to the terms and conditions set forth herein and in the other DIP Loan Documents, including the protections afforded a party acting in good faith under Section 364(e) of the Bankruptcy Code.

(b) **Authorization to Borrow, etc.**  In order to continue to operate their businesses, subject to the terms and conditions of the Interim Order, this Final Order and the other DIP Loan Documents (including the DIP Budget), the DIP Borrower was authorized to borrow under the DIP Facility during the Interim Period and is hereby authorized to borrow under the DIP Facility on a final basis, and the other Debtors set forth in the DIP Loan Documents are authorized to guarantee repayment of, such DIP Obligations, up to an aggregate principal amount of $17,500,000.

(c) **Conditions Precedent.**  The DIP Lenders shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder or under the other DIP Loan Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making DIP Extensions of Credit under the DIP Loan Documents have been satisfied or waived in accordance with the terms of the DIP Loan Documents.

(d) **DIP Collateral.**  As used herein, "DIP Collateral" shall mean, all now owned or hereafter acquired assets and property, whether real or personal, of the Debtors including, without limitation, all Pre-Petition Collateral, all assets and property pledged under the DIP Loan Documents, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts (including the cash collection, "lockbox" and "concentration" accounts provided for in the DIP Loan Documents), "core concentration accounts," "cash collateral accounts", and in each case all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, general intangibles, documents,

instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing; provided, that the DIP Collateral shall not include actions for preferences, fraudulent conveyances, and other avoidance power claims under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions"), provided, that the proceeds of Avoidance Actions shall be available to pay any administrative claim held by the DIP Agent or any DIP Lender in respect of the DIP Facility. Further, the DIP Collateral does not include USSIC Funds except as expressly provided for herein.

a) **Surety**. The DIP Agent, the DIP Lenders, the Pre-Petition Agent, and the Pre-Petition Lenders (collectively, the "Lender Parties") and the Debtors acknowledge and agree that USSIC (the "Surety") has a lien (the "Surety Lien") in certain cash in the Surety's possession in the approximate amount of $4.4 million (the "Surety Account") to secure, among other things, the Debtors' potential reimbursement obligations to the Surety under surety bonds issued by Surety for the benefit of the Debtors (the "Surety Bonds"). The Lender Parties and the Debtors further acknowledge and agree that the Surety Lien is a Senior Third Party Lien for purposes of this Order that is prior to the liens, if any, of the Lender Parties in the Surety Account. Further, the rights, if any, of the Lender Parties in the Surety Account shall be economic only, and the Lender Parties shall have no rights to enforce remedies against the Surety Account absent the consent of Surety or the cancellation of the Surety Bonds without further liability to Surety thereunder. However, in the event the Surety Bonds are cancelled without further liability to or unsatisfied obligations to Surety thereunder, the Lender Parties shall have

rights in the Surety Account to the same extent as any other DIP Collateral under this Order. The Pre-Petition Agent and the Pre-Petition Lenders also shall maintain all other rights that they had in the Surety Account that existed as of the Petition Date and under this Order. In the event the Surety Bonds are cancelled without further liability to Surety thereunder, the proceeds of the Surety Account shall be applied as follows at the direction of the DIP Agent or the Pre-Petition Agent, as applicable: (a) to the DIP Budget in lieu of a DIP Extensions of Credit or the use of Cash Collateral, (b) to the DIP Obligations or (c) to the extent the Pre-Petition Agent had fully valid and enforceable perfected liens in the Surety Account as of the Petition Date, to the Pre-Petition Agent on account of the obligations owing under the Pre-Petition Credit Facility.

(e) **DIP Liens.** Effective immediately upon the entry of the Interim Order, and subject to the Carve-Out, as set forth more fully in the Interim Order and this Final Order, the DIP Agent for the ratable benefit of the DIP Secured Parties was granted on an interim basis and is hereby granted on a final basis the following security interests and liens, which were immediately, and shall continue to be, valid, binding, perfected, continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to the Interim Order, this Final Order and the other DIP Loan Documents, the "DIP Liens"):

> (I) pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable first priority liens on and security interests in all DIP Collateral that was not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date;
>
> (II) pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in

(x) all DIP Collateral which is unencumbered by the Pre-Petition Liens but on which a third party, *i.e.*, not the Pre-Petition Secured Parties (a "<u>Third Party Lienholder</u>"), had a pre-existing lien on the Petition Date and (y) all DIP Collateral encumbered by the Pre-Petition Liens on which a Third Party Lienholder had a pre-existing lien on the Petition Date that was senior to the Pre-Petition Liens, in each case junior only to any such liens and security interests of Third Party Lienholders, but solely to the extent that such liens and security interests of Third Party Lienholders were in each case valid, enforceable, perfected and non-avoidable as of the Petition Date, and were permitted by the terms of the Pre-Petition Loan Documents (the "<u>Senior Third Party Liens</u>"); and

(III) pursuant to Section 364(d) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in all Pre-Petition Collateral, which liens and security interests shall be senior to and prime the Pre-Petition Liens and the liens of all Third Party Lienholders which are *pari passu* with or junior and subject to the Pre-Petition Liens.

(f)    **<u>Other Provisions Relating to the DIP Liens.</u>**  The DIP Liens shall secure all of the DIP Obligations.  The DIP Liens shall not, without the consent of the DIP Agent, be made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and to the Carve-Out, by any court order heretofore or hereafter entered in the Cases, and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy

Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Cases. The DIP Liens and the Adequate Protection Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of Section 552 of the Bankruptcy Code or, upon entry of this Final Order, Section 506(c) of the Bankruptcy Code.

(g)  **Superpriority Administrative Claim Status.**  The DIP Obligations shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "DIP Superpriority Claim") of the DIP Agent for the benefit of the DIP Secured Parties, and be payable from and have recourse to all DIP Collateral. The DIP Superpriority Claim shall be subject and subordinate only to the Carve-Out. Other than as expressly provided herein, including in paragraph 11 and with respect to the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code Sections 328, 330 and 331, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim or any of the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder or under the other DIP Loan Documents, or otherwise in connection with the DIP Facility.

3.  **Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility.**  Subject to the terms and conditions of the Interim Order, this Final Order and the other DIP Loan Documents, and to the adequate protection granted to or for the benefit of the Pre-Petition Secured Parties as hereinafter set forth, each Debtor was authorized during the Interim Period and is hereby authorized on a final basis to (a) use the Cash Collateral and (b) request and use proceeds of the DIP Extensions of Credit, in each case in the amounts and for the line item

expenditures set forth in the DIP Budget.  The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Loan Documents and the prior written consent of the DIP Agent; provided, that the amount set aside for the professionals of the Creditors' Committee shall be $1,600,000 and shall not be subject to modification. Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 17(b), the Debtors' right to request or use proceeds of DIP Extensions of Credit or to use Cash Collateral shall terminate on the Termination Date.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).

4. **Adequate Protection for Pre-Petition Secured Parties.**  As adequate protection for the interests of the Pre-Petition Agent and the Pre-Petition Secured Parties in the Pre-Petition Collateral (including Cash Collateral), the Pre-Petition Agent for the benefit of the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a) **Adequate Protection Liens.**  To the extent of, and in an aggregate amount equal to, the diminution in value of such interests, from and after the Petition Date, calculated in accordance with Section 506(a) of the Bankruptcy Code, resulting from, among other things, the use, sale or lease by the Debtors of the Pre-Petition Collateral (including the use of Cash Collateral), the granting of the DIP Liens, the subordination of the Pre-Petition Liens thereto and to the Carve-Out, and the imposition or enforcement of the automatic stay of Section 362(a) (collectively, "Diminution in Value"), the Pre-Petition Secured Parties shall have pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, replacement security interests in and liens upon (the "Adequate Protection Liens") all of the DIP Collateral.  The Adequate Protection

Liens of the Pre-Petition Secured Parties shall be junior and subject to the DIP Liens and any Senior Third Party Liens.  The Adequate Protection Liens shall in all cases be subject to the Carve-Out.

(b)    **Adequate Protection Superpriority Claims.**  To the extent of the aggregate Diminution in Value, the Pre-Petition Secured Parties shall have, subject to the payment of the Carve-Out, an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") as provided for in Section 507(b) of the Bankruptcy Code, immediately junior and subject to the DIP Superpriority Claim, and payable from and having recourse to all DIP Collateral; provided, that the Pre-Petition Secured Parties shall not receive or retain any payments, property, distribution or other amounts in respect of the Adequate Protection Superpriority Claim unless and until the DIP Obligations and (without duplication) the DIP Superpriority Claim have indefeasibly been paid in full in cash; provided, further, that the proceeds of Avoidance Actions shall not be used to satisfy the Adequate Protection Superpriority Claim.

(c)    **Reserved**.

(d)    **Reserved**.

(e)    **Credit-Bid Protection.** Upon commencement of the Acceptable Sale Process, the DIP Agent and the Pre-Petition Agent shall each have the right to credit-bid up to the amount of the DIP Obligations and the Pre-Petition Facility Obligations in connection with any sale of some or all of the Debtors' assets and property, including, without limitation, any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

5.        **Monitoring of Collateral.**  The Pre-Petition Collateral Agent and the DIP Agent, and their respective consultants and advisors, shall be given reasonable access to the Debtors' books, records, assets and properties for purposes of monitoring the Debtors' business and the value of the DIP Collateral, and shall be permitted to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations and inventory appraisals in respect of the DIP Collateral all as and to the extent provided in the DIP Loan Documents.

6.        **Financial Reporting, etc.**  The Debtors shall provide the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent with the monthly financial reporting given to the United States Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Loan Documents and the Pre-Petition Loan Documents.

7.        **DIP Lien and Adequate Protection Replacement Lien Perfection.**  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent may, in its sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to the DIP Agent all such

financing statements, mortgages, security agreements, notices and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Adequate Protection Liens. The DIP Agent, in its sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order. To the extent that the Pre-Petition Collateral Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Pre-Petition Loan Document, the DIP Agent is also deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Pre-Petition Loan Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance with the terms of the Interim Order and/or this Final Order, as applicable, and the other DIP Loan Documents. The Pre-Petition Collateral Agent shall serve as agent for the DIP Agent for purposes of perfecting their respective security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

8. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims.** Except as set forth below in the immediately following sentence, all of the findings, agreements, terms, provisions and stipulations set forth in paragraph G of this Final Order (the "Claims Stipulations"), shall be immediately and irrevocably binding on all persons and entities.

Notwithstanding the foregoing, nothing in this Final Order shall prejudice any rights the Creditors' Committee (or any other party with standing to do so) may have (a) to object to or challenge any of the Claims Stipulations, including in relation to (i) the validity, extent, perfection or priority of the Pre-Petition Liens on the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Secured Obligations, or (b) to bring suit against any of the Pre-Petition Secured Parties in connection with or related to the matters covered by the Claims Stipulations; provided, that unless the Creditors' Committee (which shall be deemed to have standing hereunder) or such other party with standing to do so, commences an adversary proceeding or contested matter (as applicable) raising such objection or challenge, including without limitation any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Secured Obligations (including but not limited to, those under Sections 506 (subject to the waiver of Bankruptcy Code Section 506(c) claims as may be provided herein), 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Pre-Petition Secured Parties), by July 11, 2015 (the period described in the immediately preceding clause shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "Challenge Period Termination Date") upon the Challenge Period Termination Date, any and all such challenges and objections by the Creditors' Committee, any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest shall be deemed to be forever waived and barred, and the Pre-Petition Secured Obligations shall be deemed to be an allowed secured claim within the meaning of Sections 502 and 506 of the Bankruptcy Code for all purposes in connection with the Cases, and the Claims Stipulations shall be binding on all creditors, interest holders and parties in interest. To the extent any such objection or complaint is

filed, the Claims Stipulations shall nonetheless remain binding and preclusive except to the extent expressly challenged in such objection or complaint.

9. **Carve-Out.** Subject to the terms and conditions contained in this paragraph 9, the DIP Liens, the DIP Superpriority Claim, the Pre-Petition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claim, which have the relative lien and payment priorities as set forth herein, shall, in any event, in all cases be subject and subordinate to a carve-out (the "Carve-Out"), which shall be composed of the following:  (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) plus (ii) an amount equal to the unpaid professional fees and expenses incurred by the Debtors and the Creditors' Committee on or after the Petition Date through the date (if any) upon which the DIP Agent provides written notice (a "Carve Out Trigger Notice") to counsel to the Debtors and counsel to the Creditors' Committee that the Maturity Date (as defined in the DIP Credit Agreement) has occurred, plus (iii) $300,000 (the "Default Carve-Out Amount"), which amount may be used subject to the terms of the Interim Order and this Final Order to pay any allowed fees or expenses incurred by the Debtors and the Creditors' Committee after the date of delivery of the Carve-Out Trigger Notice.  ~~In addition to the foregoing, upon the closing of an Approved Sale (and only upon the closing of an Approved Sale), a fund shall be established in the amount of $1,365,000 (the "Post-Sale Carve-Out") to be used solely for professional fees and expenses incurred by the Debtors' estates after the closing of an Approved Sale, including in connection with a plan of reorganization permitted hereunder or under the Final Order; provided that the use of the Post-Sale Carve-Out shall be consistent with the DIP Budget; provided, further, that the Post-Sale Carve-Out shall be reduced on a dollar-for-dollar basis by the amount of the Default Carve-Out Amount in the event that the DIP Agent issues a~~

~~Carve-Out Trigger Notice. The Post-Sale Carve-Out shall be funded immediately prior to the closing of the Approved Sale from the Debtors' cash on hand and DIP Extensions of Credit and will have the same lien and payment priorities as the Carve-Out. The dollar limitation in clause (ii) above on fees and expenses shall not be reduced or increased by the amount of any compensation or reimbursement of expenses paid prior to the issuance of a Carve-Out Trigger Notice.~~ The ability of any party to object to the fees, expenses, reimbursement or compensation described above shall not be impaired by the terms of the Carve-Out. No portion of the ~~Carve-Out or the Post-Sale~~ Carve-Out, no proceeds of the DIP Facility or DIP Extensions of Credit, and no proceeds of the Pre-Petition Collateral, including Cash Collateral, or any other amounts, may be used for the payment of the fees and expenses of any person incurred (i) in challenging any of the Pre-Petition Secured Parties' or the DIP Secured Parties' liens or claims (or the value of their respective Pre-Petition Collateral or the DIP Collateral), or the initiation or prosecution of any claim or action against any of the Pre-Petition Secured Parties or DIP Secured Parties, including, without limitation, any claim under Chapter 5 of the Bankruptcy Code, or any state law or foreign law, in respect of the Pre-Petition Secured Obligations or the DIP Facility, or in preventing, hindering or delaying the realization by the Pre-Petition Secured Parties or the DIP Secured Parties upon any Pre-Petition Collateral or DIP Collateral, respectively, or the enforcement of their respective rights under the Interim Order, this Final Order, any other DIP Loan Document or any Pre-Petition Loan Document, (ii) in requesting authorization, or supporting any request for authorization, to obtain postpetition financing (whether equity or debt) or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than (x) from the DIP Lenders or (y) if such financing is sufficient to indefeasibly pay and satisfy all DIP Obligations in full in cash and such financing is immediately

so used or (iii) in connection with any claims or causes of actions against the Releasees, including formal or informal discovery proceedings in anticipation thereof, and/or in challenging any Pre-Petition Secured Obligations, DIP Obligations, Pre-Petition Liens, Adequate Protection Liens or DIP Liens. ~~For avoidance of doubt, the investigation of such claims or causes of action is subject to the limitation in paragraph J hereof, but is not prohibited by this paragraph.~~

10.     **Payment of Compensation.**  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors or the Creditors' Committee or shall limit or otherwise affect the right of the DIP Secured Parties and/or the Pre-Petition Secured Parties to object to the allowance and payment of any such fees and expenses. So long as no Event of Default exists that has not been waived in writing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code and in accordance with the DIP Budget, with the variations permitted herein, as the same may be due and payable and the same shall not reduce the Carve-Out.

11.     **Section 506(c) Claims.**  As a further condition of the DIP Facility, any obligation of the DIP Secured Parties to make DIP Extensions of Credit, and the Debtors' authorization to use the Cash Collateral, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Cases) shall be deemed to have waived any rights, benefits or causes of action under 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the DIP Collateral, the Pre-Petition Secured Parties, the Adequate Protection Liens, the Pre-Petition Liens or the Pre-Petition Collateral.  Nothing contained in the Interim Order, this Final Order or in the other DIP Loan Documents shall be deemed a consent by the Pre-Petition Secured Parties or the DIP

Secured Parties to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Pre-Petition Collateral under 506(c) of the Bankruptcy Code or otherwise.

12. **Collateral Rights; Limitations in Respect of Subsequent Court Orders.** Without limiting any other provisions of this Final Order, unless the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent have provided their prior written consent or the DIP Obligations and the Pre-Petition Secured Obligations shall have been indefeasibly paid and satisfied in full in cash, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to the Interim Order or this Final Order to or for the benefit of the DIP Secured Parties or the Pre-Petition Secured Parties, or (ii) the use of Cash Collateral for any purpose other than as set forth in the DIP Budget, including to wind down the estates.

13. **Proceeds of Subsequent Financing.** Without limiting the provisions and protections of paragraph 12 above, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations and all Pre-Petition Secured Obligations, and the termination of the DIP Secured Parties' obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any Chapter 11 plan or plans (the "Plan") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of the Interim Order, this Final Order, or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent or the Pre-Petition Collateral Agent, as the case may be, for application in

accordance with paragraph 18(b) of this Final Order, the DIP Loan Documents and the Pre-Petition Loan Documents, as applicable. For the avoidance of doubt, the DIP Borrower may, at its option, upon notice as provided in the DIP Credit Agreement, prepay all of the Loans, on any date, at 100% of the principal amount so prepaid; <u>provided</u> that all Obligations (as defined in the Pre-Petition Credit Agreement) shall be concurrently paid in full, in cash.

14. **Cash Management.** The Debtors' cash management system shall at all times be maintained (i) in accordance with the terms of the DIP Loan Documents and any order of this Court approving the maintenance of the Debtors' cash management system, and (ii) in a manner which in any event shall be reasonably satisfactory to the DIP Agent. The DIP Agent shall be deemed to have "control" over such accounts for all purposes of perfection under the Uniform Commercial Code. Until the occurrence of an Event of Default, all amounts collected in the cash collection accounts may be used in accordance with the Interim Order, this Final Order, the Budget and the other DIP Loan Documents; after the occurrence and during the continuance of an Event of Default, subject only to the Debtors' rights under paragraph 17(b), all such amounts shall be applied in accordance with paragraph 18(b). The Chevron Proceeds (as defined in Docket Number 246) shall not be subject to any restrictions or limitations as provided by (and contained in) the terms of this Final Order.

15. **Disposition of DIP Collateral.** The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Loan Documents~~, or as approved by the Court~~. Upon the ~~closing~~<u>effective date</u> of an Approved ~~Sale (and only upon the closing of an Approved Sale), the~~<u>Plan, the reorganized</u> Debtors shall ~~retain sufficient cash on hand to satisfy~~<u>assume</u> the following ~~costs (the "Post-Closing Costs")~~<u>obligations</u>: (i) any accrued but unpaid ~~professional or~~ U.S. Trustee fees ~~and~~

~~expenses that are part of the Carve Out (if any)~~, plus (ii) ~~the~~any unfunded professional fees and costs set forth in the DIP Budget~~, including the Post Sale Carve Out.  In the event that the Debtors' cash on hand is insufficient on the closing date of the Approved Sale to satisfy the Post-Closing Costs, notwithstanding anything in this Order or the DIP Credit Agreement, including any commitment to lend thereunder, the Debtors shall be entitled to a DIP Extension of Credit immediately prior to the closing of the Approved Sale in an amount equal to the difference between the Post Closing Costs and the retained cash.~~.

16.     **Survival of Certain Provisions.**  In the event of the entry of any order converting any of these Cases into a Successor Case, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Liens and Adequate Protection Superpriority Claim shall maintain their respective priorities as provided by this Final Order.

17.     **Events of Default; Rights and Remedies Upon Event of Default.**

(a)     Any automatic stay otherwise applicable to the DIP Secured Parties and the Pre-Petition Collateral Agent is hereby modified so that, upon and after the occurrence of the Termination Date, the DIP Agent and the Pre-Petition Collateral Agent shall, subject to subparagraph (b) of this paragraph 17, be immediately entitled to exercise all of their rights and remedies in respect of the DIP Collateral and the Pre-Petition Collateral, in accordance with the Interim Order and this Final Order, the other DIP Loan Documents and/or the Pre-Petition Loan Documents, as applicable.  The term "Termination Date" shall mean the earlier to occur of (i) the Maturity Date and (ii) this Final Order ceasing to be in full force and effect for any reason.

(b)        Notwithstanding the foregoing subparagraph (a) of this paragraph 17, immediately following the giving of notice by the DIP Agent to the Debtors, counsel to the Debtors, counsel for the Creditors' Committee, and the Office of the United States Trustee for the Northern District of Texas (the "U.S. Trustee") of the occurrence of an Event of Default: (i) all Commitments of the DIP Lenders to provide any DIP Extensions of Credit shall immediately be suspended; (ii) subject to the immediately succeeding sentence, the Debtors shall have no right to request or use any proceeds of any Loans or DIP Collateral, or to use Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve-Out, as provided in the applicable DIP Loan Documents; (iii) the Debtors shall deliver and cause the delivery of the proceeds of the Loans and the DIP Collateral to the DIP Agent as provided herein and in the DIP Loan Documents; and (iv) the DIP Agent shall be permitted to apply such proceeds in accordance with the terms of the Interim Order, this Final Order and the DIP Loan Documents. The Debtors and the Creditors' Committee shall be entitled to an emergency hearing before this Court within seven (7) days after the giving of written notice by the DIP Agent and the Pre-Petition Agent of the occurrence of an Event of Default and the Debtors shall be entitled to continue to use Cash Collateral as provided in the DIP Budget until the conclusion of such hearing; provided, that the only issue that may be raised at such hearing shall be whether an Event of Default has in fact occurred and is continuing, and such entities hereby waive their right to seek any relief, whether under Section 105 of the Bankruptcy Code or otherwise, that would in any way impair, limit, restrict or delay the rights and remedies of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent under the DIP Loan Documents or the Pre-Petition Loan Documents.  If the Debtors or the Creditors' Committee do not contest the occurrence of the Event of Default within seven (7) days after the giving of notice thereof, or if the Debtors or

the Creditors' Committee do timely contest the occurrence of an Event of Default and the Court after notice and a hearing declines to stay the enforcement thereof, the Termination Date shall be deemed to have occurred for all purposes and the automatic stay, as to the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent, shall automatically terminate in all respects. Nothing herein shall preclude the DIP Agent, the Pre-Petition Agent or the Pre-Petition Collateral Agent from seeking an order from the Court upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee, counsel to the Debtors and counsel to the Creditors' Committee, if any, authorizing the DIP Agent, the Pre-Petition Agent and/or the Pre-Petition Collateral Agent to exercise any enforcement rights or remedies with respect to the DIP Collateral on less than seven (7) days' notice, or the Debtors' right to contest such relief.

(c)    Upon the occurrence of the Termination Date (but subject, only in the case of the occurrence of the Termination Date resulting from an Event of Default, to the provisions of paragraph 17(b)), the DIP Agent, the Pre-Petition Agent, and the Collateral Agent are authorized to exercise all remedies and proceed under or pursuant to the applicable DIP Loan Documents and the Pre-Petition Loan Documents.  All proceeds realized in connection with the exercise of the rights and remedies of the applicable DIP Secured Parties and Pre-Petition Secured Parties shall be turned over and applied in accordance with paragraph 18(b).

(d)    The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified pursuant to the terms of the DIP Loan Documents as necessary to (i) permit the Debtors to continue to grant the Adequate Protection Liens and the DIP Liens and to continue to incur all DIP Obligations and all liabilities and obligations to the Pre-Petition Secured Parties hereunder and under the other DIP Loan Documents, as the case may be, and (ii) authorize the

DIP Agent, the Pre-Petition Agent and the Collateral Agent to continue to retain and apply payments, and otherwise enforce their respective rights and remedies hereunder.

(e)     Nothing included herein shall prejudice, impair, or otherwise affect the Pre-Petition Agent's, the Pre-Petition Collateral Agent's or the DIP Agent's rights to seek (on behalf of the Pre-Petition Secured Parties and the DIP Secured Parties, respectively) any other or supplemental relief in respect of the Debtors  nor the DIP Agent's, Pre-Petition Agent's or Pre-Petition Collateral Agent's rights to suspend or terminate the making of DIP Extensions of Credit or use of Cash Collateral pursuant to the terms of this Order and the DIP Loan Documents.

(f)     Notwithstanding anything in this Final Order to the contrary, the Pre-Petition Agent and the Pre-Petition Collateral Agent shall not be permitted to exercise any rights or remedies for themselves or the Pre-Petition Secured Parties unless and until the DIP Obligations are indefeasibly paid and satisfied in full in cash.

18.     **Applications of Proceeds of Collateral, Payments and Collections.**

(a)     As a condition to the DIP Extensions of Credit and the authorization to use Cash Collateral, each Debtor has agreed that proceeds of any DIP Collateral and Pre-Petition Collateral, any amounts held on account of the DIP Collateral or Pre-Petition Collateral, and all payments and collections received by the Debtors with respect to all proceeds of DIP Collateral and Pre-Petition Collateral, shall be used and applied in accordance with the DIP Loan Documents (including repayment and reduction of the DIP Obligations) and the DIP Budget. For the avoidance of doubt, proceeds of the Pre-Petition Collateral and the DIP Collateral shall include proceeds from the Approved Sale, and the proceeds from the Approved Sale shall be paid directly to the DIP Agent and the Pre-Petition Agent upon consummation of the Approved Sale pursuant to the Sale Order, subject to the funding of the Carve-Out as set forth in paragraph

~~15.   Without limiting the generality of the foregoing, any proceeds from the Approved Sale received by the DIP Agent and/or the Pre-Petition Agent shall be applied in the order set forth in paragraph 18(b) below.   Further, in the event that in their sole and absolute discretion the DIP Agent and/or the Pre-Petition Agent make a credit bid for any of the DIP Collateral and/or the Pre-Petition Collateral, the DIP Agent shall credit bid all of the DIP Obligations before the Pre-Petition Agent shall credit bid any Pre-Petition Secured Obligations.~~

(b)      Subject to the Debtors' rights under paragraph 17(b) and the funding of the Carve-Out, upon and after the occurrence of the Termination Date all proceeds of DIP Collateral and Pre-Petition Collateral, whenever received, shall be paid and applied as follows:  (i) *first*, to permanently and indefeasibly repay and reduce the DIP Obligations then due and owing in accordance with the DIP Loan Documents, until paid and satisfied in full in cash; (ii) *second*, to permanently and indefeasibly repay and reduce the Pre-Petition Secured Obligations then due and owing in accordance with the Pre-Petition Loan Documents, until paid and satisfied in full in cash; and (iii) *third*, to the Debtors' estates.  For avoidance of doubt, nothing in this Final Order shall be construed to limit the voluntary and mandatory repayment provisions set forth in the DIP Loan Documents.

19.      **Proofs of Claim, etc.**   None of the DIP Secured Parties or the Pre-Petition Secured Parties shall be required to file proofs of claim in any of the Cases or any Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, the DIP Agent, on behalf of itself and the DIP Secured Parties and the Pre-Petition Collateral Agent, on behalf of itself and the Pre-Petition Secured Parties, respectively, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or

supplement, as each sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim may (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. Any proof of claim filed by the DIP Agent or the Pre-Petition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective DIP Secured Parties or Pre-Petition Secured Parties. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Cases shall not apply to the DIP Agent, the other DIP Secured Parties, the Pre-Petition Agent or the other Pre-Petition Secured Parties.

20. **Other Rights and Obligations.**

(a) **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.** Based on the findings set forth in this Final Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by the Interim Order and this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Secured Parties are entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens or of the DIP Superpriority Claim granted to or for the benefit of the DIP Secured Parties shall be governed in all respects by

the original provisions of this Final Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and the DIP Superpriority Claim granted herein, with respect to any such claim. Because the DIP Extensions of Credit are made in reliance on the Interim Order and this Final Order, the DIP Obligations incurred by the Debtors or owed the DIP Secured Parties prior to the effective date of any stay, modification or vacation of the Interim Order or this Final Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under the Interim Order or this Final Order.

(b) **Expenses.** Notwithstanding any other provision of this Order or the DIP Loan Documents, the Debtors only shall be required to pay the expenses of the DIP Secured Parties, the Pre-Petition Agent and the Pre-Petition Secured Parties upon the occurrence of an Event of Default. On and after the occurrence of an Event of Default, the Debtors will pay all expenses incurred by the DIP Secured Parties, the Pre-Petition Agent and the Pre-Petition Secured Parties (including, without limitation, the reasonable fees and disbursements of their counsel, any other local or foreign counsel that they shall retain and any internal or third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding and administration of the DIP Loan Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Loan Documents, (ii) the administration of the Pre-Petition Loan Documents, (iii) the Cases or any Successor Cases, or (iv) enforcement of any rights or remedies under the DIP Loan Documents or the Pre-Petition Loan Documents, in each case whether or not the transactions contemplated hereby are fully consummated. The Pre-

Petition Agent, the Pre-Petition Secured Parties and the DIP Secured Parties, and their advisors and professionals, shall not be required to comply with the U.S. Trustee fee guidelines, but shall provide reasonably detailed statements (redacted if necessary for privileged, confidential or otherwise sensitive information) to the Office of the U.S. Trustee, counsel for the Creditors' Committee and the Debtors. Thereafter, within ten (10) days of presentment of such statements, if no written objections to the reasonableness of the fees and expenses charged in any such invoice (or portion thereof) is made, the Debtors shall pay in cash all such fees and expenses of the Pre-Petition Agent, the Pre-Petition Secured Parties, the DIP Agent and the DIP Secured Parties, and their advisors and professionals. Any objection to the payment of such fees or expenses shall be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, the Creditors' Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall resolve any dispute as to the reasonableness of any fees and expenses. For the avoidance of doubt, and without limiting any of the forgoing or any other provision of this Final Order, the fees specified in Section 2.14 of the DIP Credit Agreement were, upon entry of the Interim Order and irrespective of any subsequent order approving or denying the DIP Facility or any other financing pursuant to Section 364 of the Bankruptcy Code, fully entitled to all protections of Section 364(e) of the Bankruptcy Code and were deemed fully earned, indefeasibly paid, non-refundable, irrevocable, and non-avoidable as of the date of the Interim Order.

(c)    **Binding Effect.**  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 case.

(d)    **No Waiver.**  The failure of the DIP Secured Parties or the Pre-Petition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the other DIP Loan Documents or the Pre-Petition Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Pre-Petition Secured Parties' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of the Interim Order and this Final Order are without prejudice to, and do not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Pre-Petition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent (i) to request conversion of the Cases to cases under Chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the Pre-Petition Secured Parties.

(e)    **No Third Party Rights.**  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(f)    **Intercreditor Matters.**  Nothing in this Final Order shall be construed to convey on any individual DIP Secured Party or Pre-Petition Secured Party any consent, voting or other rights beyond those (if any) set forth in the DIP Loan Documents and Pre-Petition Loan Documents, as applicable.  Nothing in this Final Order shall be construed to impair or otherwise affect any intercreditor, subordination or similar agreement or arrangement in respect of the Pre-Petition Secured Obligations, including, without limitation, the Intercreditor Agreement (as defined in the Pre-Petition Loan Documents).

(g)    **No Marshaling.**  Neither the DIP Secured Parties nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Pre-Petition Collateral, as applicable.

(h)    **Section 552(b).**  The DIP Secured Parties and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the DIP Collateral.

(i)    **Amendment.**  The Debtors and the DIP Agent (with the consent of the requisite DIP Secured Parties as provided in and consistent with their respective rights under the DIP Loan Documents) may amend, modify, supplement or waive any provision of the DIP Loan Documents without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the

imposition of the default rate) or fees charged in connection with the DIP Facility, (y) increases the commitments of the DIP Lenders to make DIP Extensions of Credit under the DIP Loan Documents, or (z) changes the Termination Date. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and approved by the Court after notice to parties in interest.

(j)     **Priority of Terms**.   To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Final Order shall govern.

(k)     **Survival of Final Order.**   The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of the Interim Order and this Final Order, including the DIP Liens and DIP Superpriority Claim granted pursuant to the Interim Order and this Final Order, and any protections granted to or for the benefit of the Pre-Petition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim), shall continue in

full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claim and protections for the Pre-Petition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claim) shall maintain their priority as provided by the Interim Order, this Final Order, the other DIP Loan Documents and the Pre-Petition Loan Documents (as the case may be), including any intercreditor arrangement or agreements in respect thereof, until all of the DIP Obligations and the Pre-Petition Secured Obligations have been indefeasibly paid and satisfied in full in cash and discharged.

(l) **Enforceability.** This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m) **No Waivers or Modification of Final Order.** The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent, the Pre-Petition Agent and the Pre-Petition Collateral Agent. This Final Order may not be modified to alter relative lien priority of the DIP Liens, the Pre-Petition Liens and the Adequate Protection Liens.

(n) **Waiver of any Applicable Stay.** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(o) **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

###END OF ORDER###

Submitted by:

/s/ Tom A. Howley
Tom A. Howley, State Bar No. 24010115
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
tahowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
bberens@jonesday.com
jflorczak@jonesday.com

ATTORNEYS FOR DEBTORS

/s/ Jeffrey N. Pomerantz
Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
rfeinstein@pszjlaw.com

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile: (903-757-9559
Email: jsearcy@jrsearcylaw.com

PROPOSED COUNSEL TO THE OFFICIAL

/s/ Thomas E. Lauria
Thomas E Lauria (State Bar No. 11998025)
WHITE & CASE LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
tlauria@whitecase.com

Craig H. Averch, State Bar No. 01451020
Roberto J. Kampfner
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
caverch@whitecase.com
rkampfner@whitecase.com

ATTORNEYS FOR CLMG CORP.

/s/ Edward L. Ripley
Edward L. Ripley (State Bar No. 16935950)
Mark W. Wege (State Bar No. 21074225)
KING & SPALDING LLP
1100 Louisiana, Suite 4000
Houston, Texas 77002
Telephone: 713-751-3200
Facsimile: 713-751-3290
Email: MWege@kslaw.com
ERipley@kslaw.com

Thaddeus D. Wilson
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: 404-572-4600
Facsimile: 404-572-5100
Email: Thadwilson@kslaw.com
Pro Hac Vice Admission Pending

ATTORNEYS FOR CHEVRON U.S.A.

COMMITTEE OF UNSECURED CREDITORS    INC. AND UNION OIL COMPANY OF
CALIFORNIA

EXHIBIT A
DIP CREDIT AGREEMENT

EXHIBIT B
DIP BUDGET

| Summary report: Litéra® Change-Pro TDC 7.5.0.96 Document comparison done on 8/27/2015 8:57:53 AM | |
|---|---|
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:**iw://NAI/NAI/1500508011/1 | |
| **Modified DMS:** iw://NAI/NAI/1500508011/2 | |
| **Changes:** | |
| Add | 12 |
| Delete | 20 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 3 |
| Table Delete | 3 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 38 |