## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| ERG Intermediate Holdings, LLC, <u>et al.</u>,[1] | Jointly Administered |
| Debtors. | Case No. 15-31858-HDH |

---

**CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 3, 2015 IN RESPECT OF ERG INTERMEDIATE HOLDINGS, LLC AND ITS AFFILIATED DEBTORS**

---

Tom A. Howley
JONES DAY
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Telephone: (832) 239-3939
Facsimile:
thowley@jonesday.com

Brad B. Erens
Joseph A. Florczak
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile:
berens@jonesday.com
jflorczak@jonesday.com

*Attorneys for the Debtors*

**The Bankruptcy Court has not approved the proposed Disclosure Statement to accompany this Plan. The distribution of this Plan and the Disclosure Statement is not intended to be, and should not be construed as, a solicitation of votes on this Plan. The Debtors reserve the right to modify, amend, supplement, restate or withdraw this Plan, the Disclosure Statement, and all ancillary documents.**

---

[1] The Debtors in these cases and the last four digits of their respective federal tax identification numbers are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street, Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue, Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

# TABLE OF CONTENTS

**[insert]**

# EXHIBITS[2]

Exhibit A ...............................................................................Glossary of Defined Terms

Exhibit B .................................Approved Settlement and Transaction Support Agreement

Exhibit C ..................................................................................ERG Plan Trust Declaration

Exhibit D ..................... Schedule of Assumed Executory Contracts and Unexpired Leases

Exhibit E ...................... Schedule of Rejected Executory Contracts and Unexpired Leases

Exhibit F.........................................................................Exempt Assets Trust Declaration

Exhibit G ............................................................................ Exit Facility Loan Documents

Exhibit H ................................................................................. Form of Exit Facility ORRI

Exhibit I..........................................................Reorganized Debtor Operating Agreements

Exhibit J ...................................................................... Restructuring Support Agreement

Exhibit K ........................List and Compensation of Management of Reorganized Debtors

---

[2] To the extent certain exhibits are not included herein, such exhibits to this Plan will be filed with the Bankruptcy Court no later than 10 days before the Voting Deadline. The exhibits shall be made available on the internet site address http://dm.epiq11.com/ERG once they are filed. The Debtors reserve the right to modify, amend, supplement, restate or withdraw the exhibits after they are filed and shall promptly make such changes available on the internet site address http://dm.epiq11.com/ERG.

ERG Intermediate Holdings, LLC and its affiliated debtors and debtors in possession in the above captioned jointly administered chapter 11 proceedings (the "**Debtor**s") hereby jointly propose the following chapter 11 plan for the Debtors:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**1.1    Definitions.**

Where the context requires, each capitalized term used herein shall have the meaning ascribed to such term in the Glossary of Defined Terms attached to the Plan as **Exhibit A**.

**1.2    Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The terms "include" and "including" shall be construed as "include, without limitation" and "including, without limitation," respectively.

**1.3    Application of Definitions and Rules of Construction Set Forth in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4    Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5    Appendices and Plan Documents.**

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  All Plan Documents not otherwise filed herewith shall be filed with the clerk of the Bankruptcy Court in the Plan Supplement no later than 10 days before the Voting Deadline.  In the event of any inconsistency between the terms of the Plan and any Plan Documents, the terms of the Plan shall control except with respect to the Exit Facility Loan Documents, which shall control over the terms of the Plan in the event of any inconsistency.  Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

Jones Day
717 Texas, Suite 3300
Houston, Texas 77002-2712
Attn: Thomas A. Howley
Telephone:     (832) 239-3939
Facsimile:      (832) 239-3600

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND MEMBERSHIP INTERESTS

For the purposes of organization, voting and all confirmation matters, all Claims against and Membership Interests in the Debtors shall be classified as set forth in this Article II.

**2.1    Administrative Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article V.

**2.2    Classification of Claims and Membership Interests.**

The classes of Claims against and Membership Interests in the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims against the Debtors.

Class 2 – Prepetition Facility Claims.  Class 2 shall consist of the Prepetition Facility Claims.

Class 3 – Other Secured Claims.  Class 3 shall consist of all Other Secured Claims against the Debtors.

Class 4 –Convenience Claims.  Class 4 shall consist of all Convenience Claims against the Debtors.

Class 5 – Unsecured Claims.  Class 5 shall consist of all Unsecured Claims against the Debtors.

Class 6 – Intercompany Claims.  Class 6 shall consist of Claims held by one Debtor against another Debtor.

Class 7 – Intermediate Holdings Membership Interests.  Class 7 shall consist of the Membership Interests in Debtor Intermediate Holdings.

Class 8 – Other Debtor Membership Interests.  Class 8 shall consist of the Membership Interests in the Other Debtors.

**2.3      Separate Classification of Secured Claims.**

Although Other Secured Claims against the Debtor have been placed in one category for ease of reference, each Other Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions.  Such classes comprised of individual Other Secured Claims shall be designated as Class 3A, Class 3B, Class 3C, etc.

## ARTICLE III

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS
## AND MEMBERSHIP INTERESTS

**3.1      Unimpaired Classes of Claims and Membership Interests.**

The following classes of Claims and Membership Interests are not impaired under the Plan: Class 1 – Priority Claims, Class 3 – Other Secured Claims that are reinstated, Class 4 – Convenience Claims, Class 6 – Intercompany Claims, and Class 8 – Other Debtor Membership Interests.

**3.2      Impaired Classes of Claims and Membership Interests.**

The following classes of Claims and Membership Interests are impaired under the Plan: Class 2 – Prepetition Facility Claims, Class 5 – Unsecured Claims, and Class 7 – Intermediate Holdings Membership Interests.

**3.3      Impairment Controversies.**

If a controversy arises as to whether any Claim or Membership Interest or any class of Claims or Membership Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND MEMBERSHIP INTERESTS
## UNDER THE PLAN

**4.1      Treatment of Claims.**

The Plan treats the Debtors as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Membership Interests in the Debtors under the Plan.  Such treatment shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and all Debtors shall continue to exist as separate legal entities. The above treatment serves only as a mechanism to effect a fair distribution of value to the Debtors' constituencies.  In addition, the above treatment shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.

The Plan serves as a motion seeking entry of an order consolidating the Estates for purposes of voting and distribution only. Unless an objection to such consolidation or case closing is made in writing by any creditor affected by the Plan, filed with the Bankruptcy Court and served on the Debtors on or before the Plan objection deadline as established by the Bankruptcy Court, the consolidation and case closing order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at or before the Confirmation Hearing.

The classes of Claims against and Membership Interests in the Debtors shall be treated under the Plan as follows:

(a)     Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim against any Debtor shall receive, in full satisfaction of such Allowed Priority Claim, on the applicable Plan Distribution Date, Cash in the amount of such holder's Allowed Priority Claim.

(b)     Class 2 – Prepetition Facility Claims.

On the Effective Date, the Prepetition Facility Claims shall be reinstated and Allowed in their entirety in such amount as set forth in the Plan Supplement, and the Prepetition Lenders shall retain the Prepetition Facility Liens in and to the Prepetition Facility Collateral (other than Exempt Assets transferred to the Exempt Assets Trust on the Effective Date), subject only to Liens granted by the Debtors in connection with the Exit Facility and Liens permitted under the Exit Facility Loan Documents and the Amended and Restated Prepetition Loan Documents. Without limiting the generality of the foregoing, the Prepetition Loan Documents, as amended and restated by the Amended and Restated Prepetition Loan Documents, shall provide for: (A) the payment and/or accrual of interest at the Post-Effective Date Interest Rate, (B) the maturity of the Prepetition Facility Claims on the third anniversary of the Effective Date, subject to extension in the sole and absolute discretion of the Prepetition Agent, and (C) the payment of the ERG Sharing Amount to the ERG Plan Trust as set forth in Section 7.5(a)(ii) of the Plan.

(c)     Class 3 – Other Secured Claims.

Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, on the applicable Plan Distribution Date, each Allowed Other Secured Claim shall, at the option of the Disbursing Agent, (i) be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code; (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code; or (iii) receive the collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in each case, in full and complete satisfaction of such Allowed Other Secured Claim. Other Secured Claims relating to Materialmen's Liens shall be Allowed only as set forth in the paragraph below.

On the Effective Date, each Claim secured by a Materialmen's Lien that was either

4

perfected under (a) section 546 of the Bankruptcy Code or (b) prior to the Petition Date, under applicable non-bankruptcy law (each a "Potentially Secured Materialmen's Lien Claim"), shall be deemed a disputed Claim and not an Allowed Claim. The Prepetition Agent shall have standing to challenge the status of such Claim as an Other Secured Claim and to otherwise object to such Claim. If the Bankruptcy Court determines that the Materialmen's Lien securing such Potentially Secured Materialmen's Lien Claim is senior to the Prepetition Facility Liens, such Claim shall be deemed an Allowed Other Secured Claim and shall be paid as set forth in Section 4.1(c). If the Bankruptcy Court determines that the Prepetition Facility Liens are senior to the Materialmen's Liens securing such Potentially Secured Materialmen's Lien Claim, such Materialmen's Liens shall be null, void and unenforceable and such Potentially Secured Materialmen's Lien Claim shall be treated as an Unsecured Claim for all purposes. On the Effective Date, all Claims secured by a Materialmen's Liens that are not Potentially Secured Materialmen's Lien Claims shall be treated as Unsecured Claims for all purposes and all Liens securing such Claims shall be deemed null, void and unenforceable as of such date.

(d)    Class 4 –Convenience Claims.

On the applicable Plan Distribution Date, each holder of an Allowed Convenience Claim will receive Cash in the amount of such holder's Allowed Convenience Claim from the Exempt Assets Trust.

(e)    Class 5 – Unsecured Claims.

Each holder of an Allowed Unsecured Claim shall receive, on the applicable Plan Distribution Date, its Pro Rata Share of the Exempt Assets Trust Beneficial Interests.

(f)    Class 6 – Intercompany Claims.

On the Effective Date, Intercompany Claims will be reinstated.

(g)    Class 7 – Intermediate Holdings Membership Interests.

Each holder of a Membership Interest in Intermediate Holdings shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), its Pro Rata Share of (a) the Class B ERG Plan Trust Beneficial Interests and (b) the residual amount of net proceeds of the Nabors Lawsuit from the Exempt Assets Trust after satisfaction in full of all Allowed Unsecured Claims, including interest.

(h)    Class 8 – Other Debtor Membership Interests.

The Membership Interests in the Other Debtors shall not be canceled, but shall be reinstated for the benefit of the Reorganized Debtor which is the holder thereof.

## ARTICLE V

## PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1     Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**5.2     Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)     <u>Time for Filing Administrative Claims</u>.

The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable in the ordinary course of business by the Estate (and not past due); (iii) an Administrative Claim that has been Allowed on or before the Effective Date or (iv) a DIP Facility Claim, must file with the Bankruptcy Court and serve on the Reorganized Debtors, the Exempt Assets Trustee, and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation.  Such notice must include at a minimum (A) the name of the holder of the Claim; (B) the amount of the Claim; and (C) the basis of the Claim.  **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b)     <u>Time for Filing Fee Claims</u>.

Professional Persons asserting a Fee Claim for services rendered before the Effective Date must, unless previously filed, file with the Bankruptcy Court and serve on the Reorganized Debtors and the Disbursing Agent and such other entities who are designated by the Bankruptcy Rules, the Professional Fee Order, the Confirmation Order or other order of the Bankruptcy Court an application for final Allowance of such Fee Claim no later than 14 days after the Effective Date; <u>provided</u>, <u>however</u>, that any Professional Person who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date pursuant to the Ordinary Course Professionals Order without further Bankruptcy Court review or approval (except as provided in the Ordinary Course Professionals Order).  Objections to any Fee Claim must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the Disbursing Agent and the requesting party by the later of (A) 14 days after the Filing of the applicable request for payment of the Fee Claim or (B) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Fee Claims.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims, <u>provided</u>, <u>however</u>, that in no event shall the Plan or the Confirmation Order modify or affect any limitation on the amount of any Fee Claim, whether individually or in the aggregate, contained in (i) the Final DIP Order, (ii) any budget in effect thereunder, or (iii) the Approved

Settlement and Transaction Support Agreement. Without limiting the generality of the foregoing, to the extent the Fee Claims of Professionals retained by the Committee exceed the cap set forth in the Approved Settlement and Transaction Support Agreement, any such fees and expenses shall not be paid by the Prepetition Agent from any collateral of the Prepetition Agent or by the Debtors from proceeds of the DIP Facility, provided, that the Committee reserves the right to pay such fees and expenses from the Exempt Assets in accordance with Section 3 of the Approved Settlement and Transaction Support Agreement. **The failure to timely file and serve a Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c)     Allowance of Administrative Claims/Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) shall become an Allowed Administrative Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date; and (ii) the date of service of the applicable notice of Administrative Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

(d)     Payment of Allowed Administrative Claims.

On the applicable Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by such holder and the Debtors (or, if after the Effective Date, the Disbursing Agent); provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; and provided, further that an Administrative Claim representing a liability incurred and payable in the ordinary course of business of the Estates shall be paid by the Debtors in the ordinary course of business.

(e)     DIP Facility Claims.

On or before the Effective Date, the Debtors shall pay to the DIP Agent all principal, interest, fees and other amounts due and owing under or in respect of the DIP Facility in Cash.

**5.3     Treatment of Tax Claims.**

At the election of the Debtors, each holder of an Allowed Tax Claim will receive in full satisfaction of such Allowed Tax Claim Cash in the full amount of such Allowed Tax Claim on the applicable Plan Distribution Date. The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against any responsible person, officer or director of the Debtors that otherwise would be liable to such holder for payment of a Tax Claim so long as the Debtors are in compliance with this Section. So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section or pursuant to

the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

## ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

**6.1     Classes Entitled to Vote.**

Except for Class 1 – Priority Claims, Class 3 – Other Secured Claims that are to be reinstated, Class 4 – Convenience Claims, Class 6 – Intercompany Claims, and Class 8 – Other Debtor Membership Interests, all classes of Claims and Membership Interests are entitled to vote on the Plan.

**6.2     Presumed Acceptance of the Plan.**

Class 1 – Priority Claims, Class 3 – Other Secured Claims that are to be reinstated, Class 4 – Convenience Claims, Class 6 – Intercompany Claims, and Class 8 –Other Debtor Membership Interests are unimpaired.  Each holder of a Claim in such classes is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**6.3     Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.   A class of Membership Interest shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of the Allowed Membership Interests in that class that have voted on the Plan.

**6.4     Vacant Classes.**

Any Class of Claims or Membership Interests that does not have a holder of an Allowed Claim or Allowed Membership Interest (or a Claim or Membership Interest temporarily Allowed by the Bankruptcy Court) in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and shall be presumed to have accepted the Plan.

**6.5     Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims and Membership Interests that is impaired under, and has not accepted, the Plan.

# ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1    Operations Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate their businesses as debtors in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**7.2    Approved Settlement and Transaction Support Agreement.**

The Approved Settlement and Transaction Support Agreement is incorporated into and made part of the Plan.  In the event of any conflict between the Plan and the Approved Settlement and Transaction Support Agreement concerning the Exempt Assets or the Exempt Assets Trust, the terms of the Approved Settlement and Transaction Support Agreement shall control.  In the event of any other conflicts, the Plan shall control, provided that the Plan shall not serve to modify the limit on Fee Claims payable to Professional Persons of the Committee contained in the Approved Settlement and Transaction Support Agreement.

**7.3    Certain Settlements.**

Pursuant to Bankruptcy Code 1123(b)(3) and Bankruptcy Rule 9019, the Plan constitutes a settlement of certain existing and potential disputes concerning the value of the Prepetition Facility Claims.  Upon the timely making by the Prepetition Agent of its election under section 1111(b)(2) of the Bankruptcy Code, the Prepetition Facility Collateral shall be deemed, for the purposes of the Plan, to have a value of not less than the aggregate amount of the Prepetition Facility Claims, and the Prepetition Facility Claims shall be deemed for the purposes of the Plan to be fully secured.

**7.4    The Reorganized Debtors.**

(a)    On the Effective Date, each of the following shall occur or shall be deemed to have occurred, as applicable, in the following order:

(i)    The ERG Plan Trust shall be formed in accordance with Section 7.5 of the Plan and the Exempt Assets Trust shall be formed in accordance with Section 7.6 of the Plan.

(ii)    All of the Membership Interests in Intermediate Holdings shall be cancelled and new Membership Interests in Reorganized Intermediate Holdings shall be issued to the ERG Plan Trust, free and clear of any and all Liens, Claims, and interests other than (A) the Liens granted in connection with the Exit Facility and (B) the Prepetition Facility Liens.  The new Membership Interests in Reorganized Intermediate Holdings shall be certificated and possession of such new Membership Interests shall be transferred to the Exit Facility Agent and Prepetition Agent, with such other

9

documentation as may be needed to perfect the Liens of the Exit Facility Agent and Prepetition Agent in and to such new Membership Interests.

(iii)     All of the Membership Interests in the Other Debtors shall revest in the Reorganized Debtor that held such Membership Interests immediately prior to the Effective Date. All such Membership Interests shall be certificated and transferred to the possession of the Exit Facility Agent and Prepetition Agent as may be needed to perfect the Liens of the Exit Facility Agent and the Prepetition Agent in and to such new Membership Interests.

(iv)     The ERG Interests Royalty Interest shall be canceled, nullified, and voided, and ERG Interests shall no longer have any rights whatsoever in respect of the ERG Interests Royalty Interest or the cancellation, nullification, or voiding thereof.

(v)     Except as otherwise set forth in the Plan, all of the Assets of each Debtor's Estate, other than Exempt Assets, shall revest in each such Debtor free and clear of any and all Liens, Claims, and interests other than (A) the Liens granted in connection with the Exit Facility and (B) the Prepetition Facility Liens.

(vi)     The Prepetition Loan Documents shall be amended and restated as set forth in the Amended and Restated Prepetition Loan Documents and shall preserve in favor of the Prepetition Agent the Prepetition Facility Liens in the Prepetition Facility Collateral;

(vii)     The Exit Facility shall become effective in accordance with its terms and shall grant the Exit Facility Agent the Exit Facility Liens in the Exit Facility Collateral and the Exit Facility Agent shall receive the Exit Facility ORRI; and

(viii)    The Reorganized Debtors shall draw on the Exit Facility an amount sufficient to satisfy all DIP Facility Claims and the Confirmation Payment and shall pay the proceeds of such draw to the DIP Agent in full satisfaction of the DIP Facility Claims. Upon full payment and satisfaction of all DIP Facility Claims, the DIP Liens shall be discharged.

(b)     The Reorganized Debtors shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Allowed Administrative Claims, Cure Claims, Allowed Priority Claims, Allowed Tax Claims, and Allowed Other Secured Claims.

**7.5     ERG Plan Trust.**

(a)     Formation.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date, the ERG Plan Trust shall be created pursuant to the ERG Plan Trust Declaration. The ERG Plan Trust Declaration shall constitute a Plan Document and shall only contain terms and conditions consistent with the Plan and reasonably acceptable to the Exit Facility Agent and the Pre-Petition Agent. Without limiting the generality of the foregoing, the ERG Plan Trust Declaration shall:

(i)      Provide that the ERG Plan Trust shall reduce the ERG Plan Trust Property to Cash, including by directing the Reorganized Debtors to (A) operate their Assets in compliance with all applicable laws and regulations, including in compliance with the Reorganized Debtor Operating Agreements; (B) comply in all respects with the terms of the Amended and Restated Prepetition Loan Documents and the Exit Facility Loan Documents; (C) implement curative measures to improve production and reduce operational costs; (D) direct capital improvements deemed necessary or appropriate to enhance the value of the Assets held by the Reorganized Debtors; (E) prepare for direct or indirect sale of the Assets held by the Reorganized Debtors, including by a sale of the Membership Interests in ERG Intermediate Holdings, in a manner that is reasonably calculated to maximize the value of such Assets, subject to the terms of the ERG Plan Trust Declaration, the Amended and Restated Prepetition Loan Documents and the Exit Facility Loan Documents; and (F) consummate a sale described in the immediately preceding clause (E) within three (3) years of the Effective Date or such other period as agreed in writing by the Exit Facility Lenders and the Prepetition Lenders; and

(ii)      provide for the distribution of the proceeds of all Assets sold or otherwise liquidated outside the ordinary course of business in the following order:

First, to the ERG Plan Trust in an amount equal to the ERG Plan Trustee's good faith estimate of the actual and necessary costs of administering the ERG Plan Trust plus a reasonable reserve for the winding up of the affairs of the ERG Plan Trust, which amount shall be maintained by the ERG Plan Trust in a segregated account and used only for such purposes, with any excess contained in such account upon the winding up of the ERG Plan Trust to be applied in accordance with this waterfall except that the ERG Sharing Amount shall not be paid out of any such excess;

Second, to pay in full all Exit Facility Claims, including all of the principal, interest, fees and other obligations owed by the Reorganized Debtors in respect of the Exit Facility Loan Documents;

Third, to pay in full all of the Prepetition Facility Claims, including all of the principal, interest, fees and other obligations owed by the Reorganized Debtors in respect of the Prepetition Loan Documents, provided, that the ERG Sharing Amount shall be distributed to or retained by the ERG Plan Trust (as the case may be) for ratable distribution to the ERG Plan Trust Beneficial Interests as set forth in the "Fifth" clause below;

Fourth, to pay unsecured claims, if any, incurred after the Effective Date of the Plan; and

Fifth, to the ERG Plan Trust, which shall apply any such proceeds in the following order: (A) to the holder of the Class A ERG Plan Trust Beneficial Interests, until the holders of Allowed Unsecured Claims have received, in the aggregate and from all sources (including from the Exempt Assets Trust), an amount equal to such Allowed Unsecured Claims, including interest; and (B) ratably, to the holders of Class B ERG Plan Trust Beneficial Interests.

(b)     The ERG Plan Trustee. The ERG Plan Trust shall be administered by the ERG Plan Trustee, which shall be identified prior to the commencement of the Confirmation Hearing by the Debtors.  The ERG Plan Trustee shall be reasonably acceptable to the Prepetition Lenders and the Exit Facility Lenders.  The appointment of the initial ERG Plan Trustee and the terms of its compensation shall be reasonable and subject to the approval of the Bankruptcy Court.  The ERG Plan Trustee shall have the power to administer the assets of the ERG Plan Trust in a manner consistent with the Plan and the ERG Plan Trust Declaration.  Without limiting the generality of the foregoing, the ERG Plan Trustee shall (i) hold and administer the ERG Plan Trust Property; (ii) have the power and authority to retain, as an expense of the ERG Plan Trust, such attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the ERG Plan Trustee hereunder or in the ERG Plan Trust Declaration; (iii) make distributions as provided in the ERG Plan Trust Declaration and the Plan; (iv) prepare tax returns for the ERG Plan Trust and provide such tax documentation as may be required to the holders of ERG Plan Trust Beneficial Interests; and (iv) provide periodic reports and updates regarding the status of the administration of the ERG Plan Trust.  The ERG Plan Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of ERG Plan Trust Beneficial Interests pursuant to the ERG Plan Trust Declaration.

(c)     Certain Amounts.  During the period from the Confirmation Date to the Effective Date, the Debtors shall reimburse the ERG Plan Trustee for the actual and necessary out-of-pocket expenses incurred by it (whether before or after the Confirmation Date) in preparing to assume its responsibilities under the ERG Plan Trust Declaration in an aggregate amount not to exceed $50,000.

(d)     Vesting of Property.  On the Effective Date, the ERG Plan Trust Property shall vest in the ERG Plan Trust, free and clear of any Liens, Claims, or other interests other than (i) the Liens granted in connection with the Exit Facility and (ii)  the Prepetition Facility Liens, and shall be administered for the benefit of the holders of ERG Plan Trust Beneficial Interests on the terms and conditions set forth in the Plan and the ERG Plan Trust Declaration.

(e)     Purpose of the ERG Plan Trust.  The ERG Plan Trust shall be established for the primary purpose of liquidating its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the ERG Plan Trust. Accordingly, the ERG Plan Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the non-Cash ERG Plan Trust Property, make timely distributions to the holders of ERG Plan Trust Beneficial Interests (subject to Section 7.5(a)(ii)), and not unduly prolong the duration of the ERG Plan Trust.  The ERG Plan Trust shall not be deemed a successor-in-interest of any Debtor for any purpose.  The Assets held in the ERG Plan Trust will be deemed held in a "disputed ownership fund" under Treas. Reg. § 1.468B-9, and as such the ERG Plan Trust shall be a taxable entity for federal income tax purposes.  As soon as practicable after the Effective Date, the ERG Plan Trustee shall value the assets of the ERG Plan Trust as set forth in the ERG Plan Trust Declaration.  The valuation shall be used consistently by all parties for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding such valuation.

(f)     Termination of ERG Plan Trust. The ERG Plan Trust will terminate as soon as practicable, but not later than the fifth (5th) anniversary of the Effective Date; provided

that, within six months prior to the fifth (5th) anniversary of the Effective Date (or such later date as may be permitted by order of the Bankruptcy Court as described in this Subsection 7.5(f)), the Bankruptcy Court, upon motion by a party in interest, may extend the term of the ERG Plan Trust for a finite period, if such an extension is necessary to liquidate the assets of the ERG Plan Trust or for other good cause.  Multiple extensions of the termination of the ERG Plan Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term and the ERG Plan Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the ERG Plan Trust as a grantor trust for federal income tax purposes.

(g)    Certain Exculpations.  The ERG Plan Trustee, together with its agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and other parties in interest, from any and all Causes of Action (including any Causes of Action concerning the environment, protection of the environment, environmental contaminants, health, or human safety), arising out of the discharge of the powers and duties conferred upon the ERG Plan Trustee by the ERG Plan Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the ERG Plan Trustee's gross negligence, wrongful conversion of ERG Plan Trust Property, or other willful misconduct.

**7.6    Exempt Assets Trust.**

(a)    Formation.  Pursuant to section 1123(a)(5) of the Bankruptcy Code, on the Effective Date the Exempt Assets Trust shall be created pursuant to the Exempt Assets Trust Declaration.  The Exempt Assets Trust Declaration shall constitute a Plan Document and shall only contain terms and conditions consistent with the Plan.  Without limiting the generality of the foregoing, the Exempt Assets Trust Declaration shall require that all Cash Exempt Assets Trust Property, including the proceeds of the Exempt Assets, be applied in the following order:

First, paid in full satisfaction of any outstanding expenses arising from the administration of the Exempt Assets Trust;

Second, retained as a reasonable reserve for the winding up of the affairs of the Exempt Assets Trust; and

Third, ratably, paid to the holders of the Exempt Assets Trust Beneficial Interests, until such holders have received, in the aggregate and from all sources (including from the ERG Plan Trust) on account of their Unsecured Claims, an amount equal to the amount of all Allowed Unsecured Claims, including interest.

The residual amount of proceeds of the Nabors Lawsuit shall be remitted by the Exempt Assets Trust to former holders of Membership Interests in Intermediate Holdings after satisfaction in full of all Allowed Unsecured Claims, including interest.

(b)    Exempt Assets Trustee.  The Exempt Assets Trust shall be administered by the Exempt Assets Trustee.  Jason Searcy shall be the initial Exempt Assets Trustee.  The terms of the compensation of the Exempt Assets Trustee shall be disclosed in the Plan Supplement.  The Exempt Assets Trustee shall have the power to administer the assets of the

Exempt Assets Trust in a manner consistent with the Exempt Assets Trust Declaration and the Plan and the Exempt Assets Trustee shall be the Estate representative designated to prosecute any and all Transferred Causes of Action. Without limiting the generality of the foregoing, the Exempt Assets Trustee shall (i) hold and administer the assets of the Exempt Assets Trust; (ii) have the sole power and authority to evaluate and determine strategy with respect to the Transferred Causes of Action and to litigate, settle, transfer, release or abandon any such Transferred Causes of Action on behalf of the Exempt Assets Trust; (iii) have authority to pay all out of pocket expenses incurred in connection with the prosecution of the Transferred Causes of Action from assets of the Exempt Assets Trust; (iv) have the power and authority to retain, as an expense of the Exempt Assets Trust, such attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Exempt Assets Trustee hereunder or in the Exempt Assets Trust Declaration; (vi) make distributions as provided in the Exempt Assets Trust Declaration and this Plan; and (vii) provide periodic reports and updates regarding the status of the administration of the Exempt Assets Trust. The Exempt Assets Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Exempt Assets Trust Beneficial Interests pursuant to the Exempt Assets Trust Declaration.

(c)     Nabors Lawsuit.  The Exempt Assets Trustee shall keep the Nabors Lawsuit Oversight Committee reasonably apprised of the Exempt Assets Trustee's actions and all material developments in the Nabors Lawsuit. Notwithstanding anything else in the Plan to the contrary, the Exempt Assets Trustee shall not settle the Nabors Lawsuit without the approval of the majority of the members of the Nabors Lawsuit Oversight Committee as constituted at the time of any proposed settlement and without approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

(d)     Certain Amounts.  During the period from the Confirmation Date to the Effective Date, the Debtors shall reimburse the Exempt Assets Trustee for the actual and necessary out-of-pocket expenses incurred by it (whether before or after the Confirmation Date) in preparing to assume its responsibilities under the Exempt Assets Trust Declaration in an aggregate amount not to exceed $50,000. On the Effective Date, according to the terms of the Approved Settlement and Transaction Support Agreement, the Exit Facility Lender shall fund the Exempt Assets Trust Advance.

(e)     Transfer of Assets.  On the Effective Date, the Exempt Assets and the Exempt Assets Trust Advance shall vest in the Exempt Assets Trust, free and clear of any and all Liens, Claims and other interests, exclusively for the benefit of the holders of Exempt Assets Trust Beneficial Interests on the terms and conditions set forth in the Plan, the Approved Settlement and Transaction Support Agreement and the Exempt Assets Trust Declaration.

(f)     Purpose of the Exempt Assets Trust.  The Exempt Assets Trust shall be established for the primary purpose of liquidating its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Exempt Assets Trust. Accordingly, the Exempt Assets Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the non-Cash Exempt Assets Trust Property, including the Transferred Causes of Action, make timely distributions to the holders of Exempt Assets Trust Beneficial Interests, and not unduly prolong the duration of the Exempt Assets

Trust.  The Exempt Assets Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Exempt Assets Trust Declaration.  The Exempt Assets Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the holders of Exempt Assets Trust Interests treated as grantors and owners of the Exempt Assets Trust.  As soon as practicable after the Effective Date, the Exempt Assets Trustee shall value the assets of the Exempt Assets Trust based on the good faith determination of the Exempt Assets Trustee.  The valuation shall be used consistently by all parties for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding such valuation.

(g)    Termination of Exempt Assets Trust.  The Exempt Assets Trust will terminate as soon as practicable, but not later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within six months prior to the fifth (5th) anniversary of the Effective Date (or such later date as may be permitted by order of the Bankruptcy Court as described in this Subsection 7.6(g)), the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Exempt Assets Trust for a finite period, if such an extension is necessary to liquidate the assets of the Exempt Assets Trust or for other good cause.  Multiple extensions of the termination of the Exempt Assets Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term and the Exempt Assets Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Exempt Assets Trust as a grantor trust for federal income tax purposes.

(h)    Certain Obligations of the Debtors.  The Reorganized Debtors shall cooperate in a commercially reasonable manner and in good faith with the Exempt Assets Trustee to assure that the Exempt Assets Trust has full and complete access to the Debtors' books and records in connection with its duty to prosecute the Transferred Causes of Action and object to Unsecured Claims and Convenience Claims.  Without limiting the generality of the foregoing, the Reorganized Debtors shall (i) preserve all records and documents (including any electronic records and documents) related to the Transferred Causes of Action until the earlier of (y) the fifth (5th) anniversary of the Effective Date, and (z) thirty (30) days after receiving notice of a sale of all or substantially all of the Assets of the Reorganized Debtors or Membership Interests in the Reorganized Debtors, or if actions related to the Transferred Causes of Action remain pending as of the earlier of such dates, until the Exempt Assets Trustee notifies the Reorganized Debtor that such records are no longer required to be preserved; and (ii) provide the Exempt Assets Trustee with reasonable access to review and copy such records and documents.

(i)    Certain Exculpations.  The Exempt Assets Trustee, together with its agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and other parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Exempt Assets Trustee by the Exempt Assets Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Exempt Assets Trustee's gross negligence or willful misconduct.

## 7.7    Corporate Action.

Pursuant to section 1142 of the Bankruptcy Code, and any applicable provision of the

business corporation law of the State of Texas or any other applicable state, the entry of the Confirmation Order shall constitute authorization for the Debtors and the Reorganized Debtors to take or cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation: (a) the appointment of the ERG Plan Trustee as the sole director of the Reorganized Debtors, (b) the appointment of officers in accordance with the Plan; (c) the adoption of the Reorganized Debtors' Operating Agreements, which shall supersede the prior certificates of incorporation, articles of organization, limited liability company agreements, by-laws or other organizational documents, as appropriate, of each of the Reorganized Debtors; and (d) actions as are necessary or appropriate to close or dismiss any of the Other Debtors' Bankruptcy Cases. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the members, stockholders, directors or managers of the Debtors, the Reorganized Debtors or any of their Affiliates. On the Effective Date, the appropriate officers, directors, members and managers of the Debtors and the Reorganized Debtors are authorized and directed to execute, deliver, record, or take such other action as is necessary to give effect to or otherwise implement the agreements, documents and instruments contemplated by this Plan in the name of and on behalf of the Debtors and/or the Reorganized Debtors, as applicable, including the recordation of evidence of the cancellation, nullification, and voiding of the ERG Interests Royalty Interest effected by Section 7.4(a)(iv) of the Plan.

**7.8     Management and Officers.**

The Reorganized Debtors shall be managed in accordance with the Reorganized Debtor Operating Agreements which shall, among other things, provide that the Reorganized Debtors shall engage for the purposes of operating the California Assets one or more contract operators acceptable to the Exit Facility Lenders and the Prepetition Lenders. The ERG Plan Trustee shall be the sole member of Intermediate Holdings and shall serve as its sole director. Without limiting the generality of the foregoing, subject to applicable law, from and after the Effective Date, the officers of the Reorganized Debtor shall be selected and appointed, in accordance with, and pursuant to, the provisions of applicable law and the Reorganized Debtor Operating Agreements. Nothing in this Plan shall constitute an assumption by the Debtors or the Reorganized Debtors of any Claims of or obligations to the Debtors' employees. Nothing in this Section 7.8 shall release any Cause of Action of any Estate.

**7.9     Exit Facility.**

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, which shall provide, subject to the terms set forth in the Exit Facility Loan Documents, loans to the Reorganized Debtors for general corporate purposes in a principal amount of up to $150 million, which amount shall include (1) any amounts then due under the DIP Facility; (2) the Confirmation Payment; and (3) the $1 million payment to the Exempt Assets Trust as required by Section 7.6(d) of the Plan.

**7.10    Certain Indemnification Obligations.**

(a)    Indemnification Claims.  The entry of the Confirmation Order shall constitute an objection by the Prepetition Agent to any Claim for indemnification arising from conduct that occurred prior to the Petition Date and asserted on account of any provision contained in any Prepetition Indemnification Agreement (an "Indemnification Claim").  The Prepetition Agent shall prosecute its objections to any such Indemnification Claim for the benefit of the Estates and shall have exclusive standing to do so; provided that any settlement of an Indemnification Claim shall be subject to Bankruptcy Court approval pursuant to Rule 9019.  To the extent any such Indemnification Claim is Allowed, such Indemnification Claim shall constitute an Allowed Unsecured Claim and shall be treated as a Class 5 – Unsecured Claim for purposes of the Plan.  Without limiting the foregoing, none of the Reorganized Debtors or their successors or assigns shall be liable for any Indemnification Claim which arose from, in whole or in part, conduct which occurred prior to the Effective Date.

(b)    Termination of Certain Interests.  Without limiting any other provision of the Plan, upon the entry of the Confirmation Order, the Assets shall revest in the applicable Reorganized Debtors free and clear of any Lien, restriction, covenant or interest constituting or relating to a Claim for indemnification, including an Indemnification Claim, arising on account of any Prepetition Indemnification Agreement, including any such Liens, restrictions, covenants or interests set forth in Schedule 1 hereto, unless the Prepetition Indemnification Agreement containing such Lien, restriction, covenant or interest is expressly assumed pursuant to the Plan. The Prepetition Agent shall have the sole standing to resolve any disputes concerning this provision and any such disputes shall be resolved by the Bankruptcy Court.

**7.11    Transferred Causes of Action.**

Nothing in the Plan or otherwise shall impair, modify, impede, compromise or limit the ability of the Exempt Assets Trust to investigate and prosecute the Transferred Causes of Action and all such Causes of Action are expressly preserved notwithstanding the occurrence of the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Transferred Cause of Action against them as any indication that the Exempt Assets Trust will not pursue any and all available Causes of Action against them.  The Exempt Assets Trust expressly reserves all rights to prosecute any and all Transferred Causes of Action against any Person at any time and for any reason.  The Exempt Assets Trust reserves all Transferred Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.**

**7.12    Other Causes of Action.**

Except for the Transferred Causes of Action, the Released Causes of Action, and as otherwise specifically provided in the Plan or in a Final Order of the Bankruptcy Court, all Causes of Action of the Debtors and their Estates shall, upon the occurrence of the Effective Date, be vested in the Reorganized Debtors.  Except as otherwise provided in the Plan, the rights

of the Reorganized Debtors to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action (other than the Transferred Causes of Action and Released Causes of Action) against any Person. Other than Causes of Action expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action (other than the Transferred Causes of Action), for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.**

**7.13    Sources of Cash for Plan Distributions.**

All Cash necessary for the Reorganized Debtors to make Plan Distributions in the Reorganized Debtors' capacities as Disbursing Agent in respect of Allowed Administrative Claims, Allowed Cure Claims, Allowed Priority Claims, Allowed Tax Claims, and Allowed Other Secured Claims shall be obtained from Cash on hand or from the Exit Facility. All Cash necessary for the ERG Plan Trustee to make payments and Plan Distributions in its capacity as Disbursing Agent to holders of ERG Plan Trust Beneficial Interests shall be obtained from ERG Plan Trust Property in accordance with the terms of the ERG Plan Trust Declaration; provided, that, the Exit Facility may be used to fund the reasonable actual and necessary expenses of the ERG Plan Trustee in a manner to be described in the Exit Facility Documents. All Cash necessary for the Exempt Assets Trustee to make payments and Plan Distributions in its capacity as Disbursing Agent to holders of Exempt Assets Trust Beneficial Interests shall be obtained from the Exempt Assets Trust Property in accordance with the terms of the Exempt Assets Trust Declaration.

All liabilities and expenses accrued by the Reorganized Debtors on and after 12:00 a.m. Pacific Time on the Effective Date shall be the obligations of the Reorganized Debtors and enforceable in accordance with applicable law.

**7.14    Effect on Royalty Interests.**

Except with respect to the cancelation of the ERG Interests Royalty Interests, nothing in the Plan shall affect, modify, or impair the rights of any holder of a royalty interest in the production of the Assets which is otherwise valid and enforceable in accordance with applicable law. The Prepetition Agent shall have exclusive standing to prosecute in its sole and absolute discretion any and all Avoidance Actions relating to, on account of, or otherwise in respect of the RCPTX Royalty Interest and any transfer thereof. Such Avoidance Actions shall not constitute Transferred Causes of Action and shall be preserved notwithstanding the confirmation of the Plan.

**7.15    Restructuring Transactions.**

On or after the Confirmation Date, subject to the terms of the Exit Facility, the applicable Debtors or Reorganized Debtors may enter into such Restructuring Transactions and may take such actions as the Debtors or the Reorganized Debtors determine to be necessary or appropriate to effect a corporate restructuring of their respective businesses, to simplify the overall corporate structure of the Reorganized Debtors, or to preserve the value of any available net operating losses and other favorable tax attributes and/or to maximize the value of the Reorganized Debtors, in each case only to the extent consistent with the terms of the Plan and with the consent of the Prepetition Agent, the Prepetition Lenders, the Exit Facility Agent, and the Exit Facility Lenders.  Such Restructuring Transactions may include one or more transfers, mergers, consolidations, conversions, restructurings (including the issuance of one or more series of Interests in one or more of the Reorganized Debtors), dispositions, liquidations or dissolutions, as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate. The actions to effect these transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of transfer, merger, consolidation, conversion, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable Persons may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Persons may agree; (c) the filing of appropriate certificates or articles of merger, consolidation, conversion, dissolution or change in corporate form pursuant to applicable state law; and (d) the taking of all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.  Notwithstanding anything else set forth in this Section 7.15 or elsewhere in the Plan, none of the Debtors or the Reorganized Debtors shall cause ERG Operating to cease to be the operator of record of any Assets as to which it is operator of record as of the Confirmation Date without the consent of the Prepetition Agent, the Prepetition Lenders, the Exit Facility Agent, and the Exit Facility Lenders.

**7.16    Obligations to Insure and Indemnify Managers, Officers and Employees.**

(a)    Any and all directors and officers or similar liability and fiduciary (including ERISA) insurance or tail policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed or assumed and assigned by the applicable Debtor or Reorganized Debtor, pursuant to section 365 of the Bankruptcy Code and the Plan.  Each insurance carrier under such policies shall continue to honor and administer the policies with respect to the Reorganized Debtors in the same manner and according to the same terms and practices applicable to the Debtors prior to the Effective Date.

(b)    The obligations of each Debtor or Reorganized Debtor to indemnify any person who is serving or has served as one of its managers, officers or employees as of the Petition Date by reason of such person's prior or future service in such a capacity or as a manager, officer or employee of another corporation, partnership or other legal entity, to the extent provided in the applicable certificates of incorporation, by-laws or similar constituent

documents, by statutory law or by written agreement, policies or procedures of or with such Debtor, will be deemed and treated as executory contracts that are assumed by the applicable Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.  Accordingly, such indemnification obligations will survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

(c)    Notwithstanding anything else to the contrary contained in the Plan, including this Section 7.16, neither the Debtor nor Reorganized Debtor shall be liable for or assume in any manner any obligation to indemnify Scott Y. Wood, except to the extent such indemnification is paid for by any insurance available immediately prior to the Effective Date.

**7.17    Reinstatement and Continuation of Insurance Policies.**

From and after the Effective Date, each of the Debtors' insurance policies in existence immediately prior to the Effective Date shall be reinstated (or replaced by a like policy) and continued in accordance with its terms and shall, to the extent applicable, be deemed assumed by the applicable Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.

**7.18    Continuation of Bonding Facility.**

From and after the Effective Date, all bonds and bonding obligations of U.S. Specialty Insurance Company relating to the Debtors and in existence immediately prior to the Effective Date shall be reinstated and continued in accordance with their terms, and such bonds and bonding obligations shall, to the extent applicable, be deemed assumed by the applicable Reorganized Debtor pursuant to section 365 of the Bankruptcy Code.

**7.19    Rights in Respect of Prepetition Facility Claims Against Third Parties Unaffected.**

Notwithstanding anything else contained in the Plan, including any release or exculpation set forth herein, but subject to the terms of the Restructuring Support Agreement, the rights of the Prepetition Agent and the Prepetition Lenders under applicable law to enforce their respective rights under, in connection with or related to the Prepetition Facility Documents against non-Debtor parties shall be unaffected by the Plan or the Confirmation Order and nothing contained in or caused by the Plan or the Confirmation Order shall serve as a defense for or discharge or release of any non-Debtor or its assets, including Scott Y. Wood, in any action to enforce the rights of the Prepetition Agent or the Prepetition Lenders against such non-Debtor parties or assets held by non-Debtors.  Without limiting the generality of the foregoing, the reinstatement of the Prepetition Loan Documents pursuant to the terms of the Amended and Restated Prepetition Loan Documents shall not (i) serve to cure any defaults under the Prepetition Loan Documents or otherwise as to any non-Debtor parties or their assets; or (ii) impair, limit, or otherwise modify any guaranties, mortgages, security documents, or other documents executed by Scott Y. Wood relating to or otherwise in respect of the Prepetition Loan Documents, but subject to the Restructuring Support Agreement.  Further, the enforcement of any Liens granted under the Prepetition Loan Documents against any non-Debtor shall not entitle the Reorganized Debtor to assert any defense against the Prepetition Agent or the Prepetition Lenders under Section 726 of the California Code of Civil Procedure or any similar statute.

# ARTICLE VIII

## DISBURSING AGENT

Upon the occurrence of the Effective Date, (a) the Reorganized Debtors shall be appointed to serve as the Disbursing Agent with respect to all Administrative Claims, Tax Claims, Priority Claims, Claims for cure of an executory contract or unexpired lease assumed pursuant to Article XII of the Plan, and Other Secured Claims; (b) the Exempt Assets Trustee shall be appointed to serve as the Disbursing Agent with respect to Convenience Claims and holders of Exempt Assets Trust Beneficial Interests; and (c) the ERG Plan Trustee shall be appointed to serve as the Disbursing Agent with respect to holders of ERG Plan Trust Beneficial Interests. Each of the Reorganized Debtors, the Exempt Assets Trustee, and the ERG Plan Trustee, in their respective capacities as a Disbursing Agent, shall have all powers, rights, protections, obligations, and duties afforded or imposed upon the Disbursing Agent under the Plan, but solely with respect to those Claims and Membership Interests on account of which the applicable Disbursing Agent is designated to make Plan Distributions under the Plan and Plan Documents, provided that the ERG Plan Trustee shall not agree or consent to the reclassification of any Claim as an Unsecured Claim without either the written consent of the Exempt Assets Trustee or approval of the Bankruptcy Court under Rule 9019. Notwithstanding the foregoing, the Exempt Assets Trustee, in its capacity as the Disbursing Agent with respect to the holders of Exempt Assets Trust Beneficial Interests, shall have sole and exclusive authority to object to Unsecured Claims and Convenience Claims and the ERG Plan Trustee, in its capacity as Disbursing Agent with respect to holders of ERG Plan Trust Beneficial Interests, shall be bound by (i) the outcome of any such objection, whether achieved by litigation, settlement, or otherwise; and (ii) the consequences of any failure to file such an objection. Nothing herein shall affect the rights of the Prepetition Agent to object to a Potentially Secured Materialmen's Lien Claim or exercise any of its rights under Section 7.10.

**8.1     Powers and Duties of the Disbursing Agent.**

Pursuant to the terms and provisions of the Plan, each respective Disbursing Agent shall be empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions on account of Allowed Claims and Membership Interests; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims and Membership Interests as specified in the Plan, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim or Membership Interest as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims and Membership Interests that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim or Membership Interest; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

**8.2     Exculpation of Disbursing Agent.**

**Except as otherwise provided in this Section** 8.2**, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan; or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this Section 8.2 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Disbursing Agent to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.**

## ARTICLE IX

## PLAN DISTRIBUTION PROVISIONS

**9.1     Plan Distributions.**

The Disbursing Agent shall make all Plan Distributions in accordance with the terms of the Plan.  In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.  For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code (including the Prepetition Facility Claims), a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**9.2     Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the latest date of the following documents: (a) the Schedules; (b) the proof of Claim filed by such holder; (c) any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); and (d) any notice served on the Disbursing Agent by such holder giving details of a change of address.  If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to receive such Plan Distribution and the undeliverable distribution shall

automatically revert without restriction to the Disbursing Agent for distribution or other application in accordance with the provision of the Plan.

**9.3     Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of any Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.  The Disbursing Agent will have no obligation to recognize the transfer or sale of any Claim that occurs after 4:00 p.m. Central Time on the Distribution Record Date and will be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.

**9.4     De Minimis Plan Distributions.**

No Plan Distribution of less than twenty-five dollars ($25.00) shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent within ninety (90) days of the Effective Date.  Each Plan Distribution of less than twenty-five dollars ($25.00) as to which no request is made as provided in this Section 9.4 shall automatically revert without restriction to the Disbursing Agent on the ninety-first (91st) day after the Effective Date for distribution or other application in accordance with the terms of the Plan.

**9.5     Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the Person to whom such check was originally issued.  Any claim in respect of such a voided check shall be made within thirty days (30) days after the date upon which such check was deemed void.  If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert without restriction to the Disbursing Agent for distribution or other application in accordance with the terms of the Plan.

**9.6     Manner of Payment Under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may, in addition to the foregoing, be made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.7    Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made.  Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**9.8    Special Provisions Regarding Insured Claims.**

Distributions under the Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law.  Nothing in this Section 9.8 shall constitute a waiver of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities that any Person may hold against any other Person, including the Debtors' insurance carriers.

**9.9    Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, on or before the Plan Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, except to the extent assumed by the Debtors; and (b) execute and deliver such other documents as may be necessary to effectuate the Plan.  Such certificate, instrument or note shall thereafter be canceled and extinguished.  The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered; or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form.  Any such holder who fails to surrender such certificates, instruments or notes or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.  All property which would otherwise have been distributable on account of such forfeited Claims shall revert to the Disbursing Agent.

**ARTICLE X**

**PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS**

**10.1    Objection Deadline.**

The Disbursing Agent and Exempt Assets Trustee, as applicable, shall file objections to Claims and Membership Interests, if any, with the Bankruptcy Court as soon as practicable but in any event not later than (a) the date that is one hundred and eighty (180) days after the Effective Date; or (b) such later date as may be established by order of the Bankruptcy Court upon motion of the Disbursing Agent or Exempt Assets Trustee, as applicable, provided that the Exempt Assets Trustee shall be permitted in his discretion to allow Unsecured Claims prior to the Objection Deadline.  The Disbursing Agent and Exempt Assets Trustee, as applicable, shall

24

serve any objection to a Claim upon the holder of the Claim to which the Disbursing Agent or Exempt Assets Trustee, as applicable, objects. For the avoidance of doubt, except as provided in Section 4.1(c) and Section 7.10 of the Plan, the Exempt Assets Trustee shall have the sole and exclusive authority to object to Unsecured Claims and Convenience Claims. Further, the Exempt Assets Trustee shall retain all of his rights under applicable law (if any) to intervene in any proceeding brought by the Prepetition Agent pursuant to Section 4.1(c) and Section 7.10 of the Plan and the Prepetition Agent shall reserve all of its rights under applicable law to object to any such intervention.

**10.2   Tort Claims.**

After the Effective Date, at the Exempt Assets Trustee's option, any unliquidated Tort Claim (as to which a proof of Claim was timely filed) not resolved through Final Order of the Bankruptcy Court or as agreed to by the holder of such unliquidated Tort Claim and the Exempt Assets Trustee, shall be (a) determined and liquidated in the administrative or judicial tribunal(s) in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction; (b) estimated, pursuant to section 502(c) of the Bankruptcy Code, in a proceeding before the United States District Court for the Northern District of Texas; or (c) resolved through an alternative dispute resolution program approved by the Bankruptcy Court after notice and a hearing. The Exempt Assets Trustee may exercise any of the above options by service upon the holder of the applicable Tort Claim of a notice informing the holder of such Tort Claim that the Exempt Assets Trustee has exercised such option. Upon the Exempt Assets Trustee's service of such notice, the injunction set forth in Section 14.7 and the automatic stay imposed by operation of section 362 of the Bankruptcy Code, shall be deemed modified, without the necessity for further Bankruptcy Court approval, solely to the extent necessary to allow the parties to determine or liquidate the Tort Claim in the applicable administrative or judicial tribunal(s). Notwithstanding the foregoing, at all times prior to or after the Effective Date, the Bankruptcy Court shall retain jurisdiction relating to Tort Claims, including the Exempt Assets Trustee's rights to have such Claims determined and/or liquidated in the Bankruptcy Court (or the United States District Court having jurisdiction over the Bankruptcy Cases) pursuant to section 157(b)(2)(B) of title 28 of the United States Code, as may be applicable. Any Tort Claim determined and liquidated pursuant to a judgment obtained in accordance with this Section 10.2 and applicable non-bankruptcy law that is no longer appealable or subject to review shall be deemed an Allowed Claim, as applicable, in Class 5 in such liquidated amount, provided that only the amount of such Allowed Claim that is less than or equal to the Debtor's self-insured retention or deductible in connection with any applicable insurance policy and that cannot be satisfied from proceeds of insurance payable to the holder of such Allowed Claim under the Debtors' insurance policies shall be treated as an Allowed Claim for the purposes of distributions under the Plan. In the event a Tort Claim is determined and liquidated pursuant to a judgment or order that is obtained in accordance with this Section 10.2 and is no longer appealable or subject to review, and applicable non-bankruptcy law provides for no recovery against the applicable Debtor, such Tort Claim shall be deemed expunged without the necessity for further Bankruptcy Court approval upon the Exempt Assets Trustee's service of a copy of such judgment or order upon the holder of such Tort Claim. Nothing contained in this Section shall constitute or be deemed a waiver of any Claim, right or Cause of Action that a Debtor or the Exempt Assets Trust may have against any Person in connection with or arising out of any Tort Claim, including but not limited to any rights under

section 157(b)(5) of title 28 of the United States Code. All Claims, demands, rights, defenses and Causes of Action that the Debtors or the Exempt Assets Trust may have against any Person in connection with or arising out of any Tort Claim are expressly retained and preserved.

**10.3    Prosecution of Contested Claims.**

Subject to other provisions of the Plan governing authority and standing to object to Claims and Membership Interests, the Disbursing Agent may object to the Allowance of Claims and Membership Interests filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.6 of the Plan.

**10.4    Authority to Amend Schedules.**

After the Effective Date, without approval of the Bankruptcy Court, (a) the Reorganized Debtors will have authority to amend the Schedules with respect to any Other Secured Claim, Tax Claim or Priority Claim; underlined provided that the Reorganized Debtors shall not be permitted to amend the Schedules to add any Unsecured Claims without the consent of the Exempt Assets Trustee or approval of the Bankruptcy Court and (b) the Exempt Assets Trustee will have the authority to amend the Schedules with respect to any Unsecured Claim or Convenience Claim. The Disbursing Agents will have authority to make distributions based on such amended Schedules without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim, the holder of such Claim shall be provided with notice of such amendment and such holder shall have 21 days to file an objection to such amendment with the Bankruptcy Court. If no such objection is filed, the Disbursing Agents may proceed with distributions based on such amended Schedules without approval of the Bankruptcy Court.

**10.5    Enforcement of Bar Date Order.**

In accordance with the Bar Date Order, any Person that (i) failed to file a proof of Claim by the applicable Bar Date or (ii) failed to file a proof of Claim by the applicable Bar Date and was not otherwise permitted to file a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court is and shall be barred, estopped and enjoined from asserting any Claim (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Person as undisputed, noncontingent and liquidated; or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Person.

**10.6    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action, subject to the other provisions of the Plan, without further review or approval of the Bankruptcy Court.

**10.7    Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**ARTICLE XI**

**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1    Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)    The clerk of the Bankruptcy Court shall have entered an order or orders in form and substance satisfactory to Debtors, the Exit Facility Agent and the Prepetition Agent (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan; (vi) approving the Plan Documents; and (vii) authorizing the Debtors to (A) execute, enter into, and deliver the Plan Documents and (B) execute, implement, and take all actions otherwise necessary or appropriate to give effect to the transactions and transfers of Assets contemplated by the Plan and the Plan Documents;

(b)    The ERG Plan Trust Declaration and all Plan and Confirmation Order provisions governing the ERG Plan Trust Declaration are in a form reasonably satisfactory to the Debtors, the Exit Facility Agent and the Prepetition Agent; and

(c)    The Exempt Assets Trust Declaration and all Plan and Confirmation Order provisions governing the Exempt Assets Trust Declaration are in a form and substance reasonably satisfactory to the Debtors and the Committee, provided that the Exempt Assets Trust Declaration and all Plan and Confirmation Order provisions governing the Exempt Assets Trust Declaration shall include all provisions required by the Bankruptcy Court to make the Plan confirmable.

**11.2    Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date, the satisfaction of which shall be determined in the discretion of the Prepetition Agent and the Exit Facility Agent:

(a)    The Confirmation Order shall have been entered by the clerk of the Bankruptcy Court, in a form acceptable to the Debtors, the Prepetition Agent and the Exit

27

Facility Agent, and the Confirmation Order shall be in full force and effect and not subject to any stay or injunction;

(b)     The provisions of the Confirmation Order governing the Exempt Assets Trust Declaration are in a form and substance reasonably satisfactory to the Debtors and the Committee; <u>provided</u> that the Confirmation Order shall include all provisions required by the Bankruptcy Court to make the Plan confirmable;

(c)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, <u>including</u> satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents;

(d)     All conditions to the effectiveness of the Amended and Restated Prepetition Loan Documents other than the occurrence of the Effective Date have been satisfied or waived by the Prepetition Agent in accordance with the terms of the Amended and Restated Prepetition Loan Documents;

(e)     The Exit Facility shall have been approved by the Exit Facility Lenders and all conditions to the availability of the Exit Facility other than the occurrence of the Effective Date have been satisfied or waived in accordance with the terms of the Exit Facility Credit Agreement;

(f)     The Plan Documents, in each case in a form and substance acceptable to the Debtors, the Prepetition Agent and the Exit Facility Agent, shall be executed by the relevant parties thereto;

(g)     All conditions to the effectiveness of the ERG Plan Trust Declaration other than the occurrence of the Effective Date shall have been satisfied or waived;

(h)     All conditions to the effectiveness of the Exempt Assets Trust Declaration other than the occurrence of the Effective Date shall have been satisfied or waived;

(i) The Debtors shall have sufficient funds or the ability to obtain sufficient funds to make all the payments required to be made under the Plan as of the Effective Date; and

(j)     All of the conditions in this Section 11.2(a) through (i) shall have occurred or otherwise be satisfied on or prior to November 30, 2015.

**11.3    Waiver of Conditions.**

The Debtors, with the consent of the Prepetition Agent and the Exit Facility Agent, may, collectively, waive any one or more of the conditions set forth in Sections 11.1 or 11.2 in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest; provided that the conditions precedent set forth in Section 11.1(c) and Section 11.2(b) shall not be waived without the consent of the Committee.

**11.4    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date shall not occur on or prior to November 30, 2015, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtors; (b) prejudice in any manner the rights of the Debtors, including any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code to the extent such rights have not otherwise been terminated; or (c) constitute an admission, acknowledgement, offer or undertaking by the Reorganized Debtors or any other party in interest.

## ARTICLE XII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtors shall be treated pursuant to the provisions of section 365 of the Bankruptcy Code, as follows: (i) each contract and lease listed in the schedule of Rejected Executory Contracts and Unexpired Leases, which schedule shall be in form and substance reasonably satisfactory to the Prepetition Agent and the Exit Facility Agent, shall be rejected; (ii) each contract and lease listed in the schedule of Assumed Executory Contracts and Unexpired Leases, which schedule shall be in form and substance reasonably satisfactory to the Prepetition Agent and the Exit Facility Lenders, shall be assumed.  The Debtors shall file the schedule of Assumed Executory Contracts and Unexpired Leases and the schedule of Rejected Executory Contracts and Unexpired Leases with the Plan Supplement.  The Debtors shall use commercially reasonable good faith efforts to identify all executory contracts and unexpired leases subject to rejection in the schedule of Rejected Executory Contracts and Unexpired Leases.  If an executory contract or unexpired lease is omitted from the schedule of Rejected Executory Contracts and Unexpired Leases and is not included in the schedule of Assumed Executory Contracts and Unexpired Leases, such executory contract or unexpired lease shall, nonetheless be deemed rejected pursuant to the terms of this Article XII, except for any executory contract or unexpired lease that (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court; (ii) is the subject of a separate motion to assume or reject filed by the Debtors pursuant to section 365 of the Bankruptcy Code before the Confirmation Date; or (iii) is the subject of a dispute over the amount or manner of cure pursuant to Section 12.2 hereof and for which the Debtors makes a motion to reject such contract or lease based upon the existence of such dispute filed at any time.

(b)    Any non-Debtor counterparty to an agreement being assumed hereunder that disputes (i) the amount of any cure payments; (ii) the Reorganized Debtor's ability to provide adequate assurance of future performance; or (iii) any other matter pertaining to the assumption or assignment of such agreement must file with the Bankruptcy Court, and serve upon the Debtor, a written objection (an "Assumption Objection"), which objection shall set forth the basis for the dispute by no later than 14 days prior to the Confirmation Hearing.  If a non-Debtor counterparty fails to file and serve an Assumption Objection, the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor, including the lack of any cure obligations.

(c)    The Plan shall constitute a motion to assume or reject such executory contracts and unexpired leases set forth in 12.1(a), and the Debtors shall have no liability thereunder except as is specifically provided in the Plan.  The Debtors reserve the right to amend, with the consent of the Prepetition Agent and the Exit Facility Agent, the schedule of Rejected Executory Contracts and Unexpired Leases and the schedule of Assumed Executory Contracts and Unexpired Leases on or prior to the Confirmation Date to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) and unexpired lease(s) shall be deemed to be, respectively, assumed or rejected by the Debtors pursuant to this Article XII.  The Debtors shall provide notice of any amendments to the schedule of Rejected Executory Contracts and Unexpired Leases or the schedule of Assumed Executory Contracts and Unexpired Leases to (i) the Prepetition Agent and the Exit Facility Agent; and (ii) the non-Debtor parties to the executory contracts or unexpired lease affected thereby.  The listing of a document on the schedule of Rejected Executory Contracts and Unexpired Leases or the schedule of Assumed Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtors that such document is an executory contract or that the Debtors have any liability thereunder.  Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the assumptions or rejections under this Section 12.1 pursuant to sections 365(a) and (b) of the Bankruptcy Code without further order of the Bankruptcy Court and a finding by the Bankruptcy Court that each such rejection or assumption is in the best interests of the Debtors and their respective Estates.

(d)    Inclusion of a contract, lease or other agreement on the schedule of Rejected Executory Contracts and Unexpired Leases shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan; and (ii) the Debtors are no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

**12.2    Cure Claims.**

To the extent that such Claims constitute monetary defaults, the Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code:  (1) by payment of the Cure Claim in Cash on or after the Effective Date; or (2) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease.  Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Claim shall be allowed for a penalty rate or other form of default rate of interest.  If there is an unresolved dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (3) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of such dispute by the parties or the entry of a Final Order resolving the dispute and approving the assumption.  For assumptions of Executory Contracts or Unexpired Leases between Debtors, the Reorganized Debtor assuming such contract may cure any monetary default (1) by treating such amount as either a direct or indirect contribution to capital or distribution (as appropriate) or (2) through an intercompany account balance in lieu of payment in cash.  No sections or provisions of any Executory Contract or Unexpired Lease that

purport to provide for additional payments, penalties, charges, rent acceleration or other financial accommodations in favor of the non-debtor third party thereto shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and are otherwise unenforceable under section 365(e) of the Bankruptcy Code and/or applicable case law.  Any Cure Claims under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the cure amount listed on the schedule of Assumed Executory Contracts and Unexpired Leases in Cash on the Effective Date by the Disbursing Agent; or (b) on such other terms as agreed to by the Disbursing Agent and the non-Debtor counterparty to such executory contract or unexpired lease.  In the event a non-Debtor counterparty files an Assumption Objection, the cure payments required by section 365(b)(1) of the Bankruptcy Code to such non-Debtor counterparty shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.

**12.3    Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date shall be Unsecured Claims and must be filed with the Bankruptcy Court and served on the Debtors or, if after the Effective Date, the Reorganized Debtors, the Exempt Assets Trustee, and the ERG Plan Trustee: (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the order rejecting such executory contract or unexpired lease; or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the Confirmation Date; or (ii) is rejected pursuant to the Plan, no later than thirty (30) days after the Confirmation Date.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth herein will be forever barred from assertion and shall not be enforceable against the Debtors or their Estates.  Except as otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

## ARTICLE XIII

## RETENTION OF JURISDICTION

**13.1    Scope of Retention of Jurisdiction.**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; or (b) arising in or related to the Chapter 11 Cases or the Plan, including the following:

(i)    To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine any and all Claims and any related disputes (including the exercise or enforcement of setoff or recoupment rights, or rights against

any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)     To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Prepetition Agent, the Exit Facility Agent, the Disbursing Agent, the ERG Plan Trustee, the Exempt Assets Trustee or the Reorganized Debtors, as applicable, after the Effective Date;

(iii)     To hear and determine any objections to the Allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)     To hear and determine any objections to an Indemnification Claim and to determine the validity and extent of any indemnification obligations of the Debtors related to an Indemnification Claim, including under the terms of any prepetition settlement agreement;

(v)     To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(vi)     To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(vii)     To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(viii)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Chapter 11 Cases, the Plan, the Plan Documents or their interpretation, implementation, enforcement, or consummation, including any disputes that may arise under Section 7.10;

(ix)     To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(x)     To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estates;

(xi)     To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xii)    To hear and determine matters concerning state, local, or federal taxes, fines, or penalties, or additions to taxes or other obligations for which the Debtors, the ERG Plan Trustee, the Exempt Assets Trustee, or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiv)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtors (including Avoidance Actions and Transferred Causes of Action) commenced by the Debtors, the Exempt Assets Trustee, or the Disbursing Agent, or any third parties, as applicable, before or after the Effective Date;

(xv)    To enter an order or final decree closing the Chapter 11 Cases;

(xvi)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvii)   To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

**13.2    Failure of the Bankruptcy Court to Exercise Jurisdiction.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 13.1 of the Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

**ARTICLE XIV**

**<u>SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS</u>**

**14.1    Satisfaction of Claims.**

<u>Except</u> as set forth in Section 4.1(b), (1) the rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtors, the Estates or any of their respective Assets and (2) on the Effective Date, all Claims against the Debtors and the Estates shall be satisfied, discharged and released in full.  <u>Except</u> as set forth in Section 4.1(b), all Persons shall be precluded and forever barred from asserting against the Reorganized Debtors, the Debtors, the Estates and any of their Assets any Claims or Causes of Action arising from any event, occurrence, condition, thing, act, omission, transaction, or other activity of any kind or nature

that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date. The provisions of this Section 14.1 shall not apply to the Prepetition Facility Claims, and the Prepetition Facility Claims shall not be discharged under the Plan or the Confirmation Order.

**14.2    Release of Liens.**

Except as set forth in Section 4.1(b), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, Liens against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. For the avoidance of doubt, and without limiting the generality of the foregoing, the following Liens shall be unaffected by the Plan and Confirmation Order: (i) the Prepetition Facility Liens; and (ii) the DIP Liens, which, in the case the of the Liens identified in the foregoing clauses (i) and (ii), are legal, valid, enforceable, first-priority, non-avoidable, and not subject to contest, avoidance, attack, offset, re-characterization, subordination or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, provided, that, upon the occurrence of the Effective Date, (i) the Prepetition Liens and the DIP Liens in the Exempt Assets only shall be waived and released by operation of Section 4 of the Approved Settlement and Transaction Support Agreement in accordance with the terms thereof; and (ii) the Exit Facility Liens shall attach to the Reorganized Debtors' Assets in accordance with the terms of the Exit Facility Loan Documents.

**14.3    Exculpation.**

**From and after the Effective Date, the Exculpated Parties will neither have nor incur any liability to any Person, and no holder of a Claim or Membership Interest, no other party in interest and none of their respective Representatives, shall have any right of action against any Exculpated Party, for any act taken or omitted to be taken in connection with, related to, arising out of, or in any manner in contemplation of the Chapter 11 Cases, or the events leading thereto, or the consideration, formulation, preparation, dissemination, implementation, confirmation or consummation of the Chapter 11 Cases, any document or agreement related thereto, the Plan, the exhibits to the Plan, the Disclosure Statement, any transaction proposed in connection with or in contemplation of the Chapter 11 Cases or the events leading thereto, or any contract, instrument, release or other agreement or document created or entered into or any other act taken or omitted to be taken, in connection therewith; provided, however, that the foregoing provisions will have no effect on: (a) the liability of any Person that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan or (b) the liability of any Person that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.**

**14.4    Discharge of Claims and Termination of Membership Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and, <u>except</u> as set forth in Section 4.1(b) or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Membership Interests, and Causes of Action of any nature whatsoever, including any interest accrued from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Membership Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Membership Interests subject to the Effective Date occurring.  The provisions of this Section 14.4 shall not apply to the Prepetition Facility Claims.

**14.5    Release by Debtors.**

**As of the Effective Date, for good and valuable consideration, the Debtors shall and shall be deemed to release and forever waive and discharge any and all Lambert Road Avoidance Actions.  In addition, the Debtors and the Reorganized Debtors, on behalf of themselves and their Affiliates, the Estates and their respective successors, assigns and any and all entities who may purport to claim by, through, for or because of them will forever release, waive and discharge all Claims that they have, or had against any Released Party except with respect to any obligations arising under or in connection with the Plan, including in connection with any agreement, document, or contract entered into or delivered in connection with the Plan; <u>provided</u> that the foregoing provisions will have no effect on the liability of any Person that would otherwise result from any act or omission since the Petition Date to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct.**

**14.6    General Release by Holders of Claims and Membership Interests**

As of the Effective Date, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, <u>except</u> for the Prepetition Agent and the Prepetition Lenders, each holder of a Claim or Membership Interest (solely in its capacity as such) that votes in favor of the Plan to the fullest extent permissible under law, will be deemed to forever release, waive and discharge all Claims in any way relating to a Debtor, the Chapter 11 Cases, the Estates, the Plan, the exhibits to the Plan, the Disclosure Statement, or the Prepetition Facility that such Person has, had or may have against any Released Party or any employees or members of the Debtors (which release will be in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code), except with respect to any obligations arising under or in connection with the Plan or any act, event, injury, omission, transaction, or agreement arising after the Effective Date (other than Claims

relating to such act, event, injury, omission, transaction or agreement first arising or occurring prior to the Effective Date); provided, however, that the foregoing provisions will have no effect on the liability of any Person that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct.

**14.7    Injunctions.**

On the Effective Date, all Persons who have been, are, or may be holders of Claims against or Membership Interests in the Debtors shall be permanently enjoined from taking any of the following actions against or affecting the Reorganized Debtors, the Debtors, the Estates, the Assets, the Disbursing Agent, the ERG Plan Trust, the Exempt Assets Trust, or any of their respective current or former members, directors, managers, officers, employees, agents, trustees, professionals or successors and assigns (other than Scott Y. Wood and his affiliated non-Debtor entities) or their respective assets and property with respect to such Claims or Membership Interests (other than actions brought to enforce any rights or obligations under the Plan and other than with respect to the Prepetition Facility Claims):

(i)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(ii)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;

(iii)    creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(iv)    asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtors may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 15.11.

In addition, the Confirmation Order will enjoin permanently the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims released pursuant to the Plan.  Nothing contained in this Section 14.6 shall affect the rights of (i) the Exempt Assets Trust from asserting, prosecuting, or enforcing any judgment obtained in respect of any Transferred Cause of Action; or (ii) the Prepetition Agent and the Prepetition Lenders from asserting, prosecuting, or enforcing against any non-Debtor any rights in respect of or relating to the Prepetition Loan Documents, including rights against Scott Y. Wood in respect of any and all associated guaranties and mortgages, subject to the terms of the Restructuring Support Agreement.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

**15.1    Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**15.2    Dissolution of Creditors' Committee**

On the Effective Date, the Committee shall dissolve, and the members thereof shall be released and discharged from all duties and obligations arising from or related to their membership, provided, however, that (1) the Committee shall continue in existence and its Professionals shall continue to be retained with respect to any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date pursuant to the terms of the Plan and (2) the Exempt Assets Trust shall be deemed the successor to the Committee with respect to any motions seeking to enforce the Plan and the transactions contemplated hereunder or the Confirmation Order and any pending appeals and related proceedings.  The Professionals retained by the Committee and the respective members thereof shall not be entitled to assert any Fee Claims for any services rendered or expenses incurred on behalf of the Committee after the Effective Date, except for fees for time spent and expenses incurred: (1) in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date pursuant to the terms of the Plan; or (2) in connection with any appeal pending as of the Effective Date, including any appeal of the Confirmation Order.

**15.3    Notices.**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Jones Day
717 Texas Avenue, Suite 3300
Houston, Texas 77002
Attn: Tom A. Howley

With a copy to:

[●]

If to the Prepetition Agent or the DIP Agent:

CLMG Corp.
7195 Dallas Parkway
Plano, TX 75024
Attn: James Erwin

With a copy to:

White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Attn:  Roberto J. Kampfner

If to the Committee:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Attn:  Robert J. Feinstein

If to the Exempt Assets Trustee:

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606

With a copy to:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Attn:  Robert J. Feinstein

**15.4    Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**15.5    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, _except_ as otherwise expressly provided in such instruments, agreements or documents.

**15.6    Expedited Determination.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtors.

**15.7    Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**15.8    Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Membership Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including, but not limited to, the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**15.9    Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in the Plan or as ordered by the Bankruptcy Court.

**15.10    Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors, with the consent of the Prepetition Agent, the Prepetition Lenders, the Exit Facility Agent, and the Exit Facility Lenders, at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code; provided, further that any provisions of the Plan relating to the Exempt Assets or the Exempt Assets Trust shall not be modified without the consent of the Committee, except to the extent required to make the Plan confirmable.  The Debtors, with the consent of the Prepetition Agent and the Exit Facility Agent, may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications; provided, further that any provisions of the Plan relating to the Exempt Assets or the Exempt Assets Trust shall not be modified without the consent of the Committee, except to the extent required to make the Plan confirmable.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if

the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**15.11  Setoff Rights.**

In the event that the Debtors have a Claim of any nature whatsoever against the holder of an Administrative Claim, Tax Claim, Priority Claim, Other Secured Claim, or Unsecured Claim, in each case against the Debtors accruing prior to the Effective Date, then the Disbursing Agent may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) against the Debtors' claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code. Neither the failure to set off nor the Allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtors may have against the holder of any Claim.

**15.12  Compliance with Tax Requirements.**

In connection with the Plan, the Debtors, the Disbursing Agent, the ERG Plan Trustee and the Exempt Assets Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, <u>including</u> income, withholding and other tax obligations, on account of such Plan Distribution.  The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**15.13  Binding Effect.**

The Plan shall be binding upon the Debtors, the holders of all Claims and all parties in interest and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**15.14  Severability.**

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTORS MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 15.10 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR TRANSACTION; <u>PROVIDED</u>, THAT ANY PROVISIONS OF THE PLAN RELATING TO THE EXEMPT ASSETS OR THE EXEMPT ASSETS TRUST SHALL NOT BE MODIFIED WITHOUT THE CONSENT OF THE COMMITTEE, <u>EXCEPT</u> TO THE EXTENT REQUIRED TO MAKE THE PLAN CONFIRMABLE.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION**

**OF THE PLAN; OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

**15.15  No Admissions.**

       **AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR AND DEBTOR IN POSSESSION IN THE CHAPTER 11 CASES.**

[Signature Page to Follow]

Dated: September 3, 2015      Respectfully submitted,

ERG INTERMEDIATE HOLDINGS, LLC

By: _____

Name: _____

Title: _____


ERG RESOURCES, L.L.C.

By: _____

Name: _____

Title: _____


ERG INTERESTS, LLC

By: _____

Name: _____

Title: _____


ERG OPERATING COMPANY, LLC

By: _____

Name: _____

Title: _____


WEST CAT CANYON, L.L.C.

By: _____

Name: _____

Title: _____

## EXHIBIT A

## GLOSSARY OF DEFINED TERMS

1.      "Administrative Claim" means a Claim incurred by the Debtor (or its Estate) after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including Fee Claims and the DIP Facility Claims.

2.      "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

3.      "Allowance" means the process by which a Claim may become Allowed.

4.      "Allowed," when used

(a)      with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

(b)      with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in the Plan.

5.      "Amended and Restated Prepetition Loan Documents" means the Prepetition Loan Documents as amended and restated, with such amendment and restatement made effective as of the Effective Date.

6.      "Approved Settlement and Transaction Support Agreement" means the Settlement and Transaction Support Agreement by and among the Prepetition Agent, the DIP Agent, the Prepetition Lenders, and the DIP Lender; and the Committee dated as of August 6, 2015 and approved by the Bankruptcy Court on August 26, 2015.

7.      "Assets" means, all of the Debtors' right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

8.      "Assumption Objection" has the meaning set forth in Section 12.1(b) of the Plan.

9.      "Avoidance Actions" means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code.

10.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as applicable to the Chapter 11 Cases.

11.      "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or such other court having jurisdiction over the Chapter 11 Cases.

12.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Cases.

13.    "Bar Date" means the applicable bar date by which a proof of Claim or request for payment of Administrative Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

14.    "Bar Date Order" means the Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof [Docket No. 179].

15.    "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in Dallas, Texas.

16.    "California Assets" means all assets of the Debtors, wherever located, relating to the Debtors' operations in the State of California, including the "Mortgaged Properties" as such term is defined in the California Mortgage.

17.    "California Mortgage" means the Mortgage, Deed of Trust, Assignment, Security Agreement, Fixture Filing and Financing Statement from ERG Resources to Lawrence C. Adams, Trustee, for the benefit of the Prepetition Agent, dated January 24, 2013 and recorded in the Official Records of the County of Santa Barbara, California as record 2013-0006360.

18.    "Cash" means legal tender of the United States of America.

19.    "Cat Canyon" means West Cat Canyon, L.L.C.

20.    "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.  For the avoidance of doubt, Avoidance Actions constitute Causes of Action.

21.    "Chapter 11 Cases" means the chapter 11 cases of the Debtors jointly administered before the Bankruptcy Court under lead case 15-31858-HDH.

22.    "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For avoidance of doubt, "Claim" includes a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries and/or damages are manifested; or (c) at the time of or prior to the Effective Date, the Debtor has received one or more demands for payment for injuries or damages arising from such acts or omissions.

23. "Class A ERG Plan Trust Beneficial Interests" means those certain class A beneficial interests issued in the ERG Plan Trust in connection with, and subject to, the Plan, the Confirmation Order, and the ERG Plan Trust Declaration.

24. "Class B ERG Plan Trust Beneficial Interests" means those certain class B beneficial interests issued in the ERG Plan Trust in connection with, and subject to, the Plan, the Confirmation Order, and the ERG Plan Trust Declaration.

25. "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

26. "Confirmation Date" means the date of entry of the Confirmation Order.

27. "Confirmation Hearing" means the hearing before the Bankruptcy Court to consider confirmation of the Plan.

28. "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan, as amended or modified pursuant to the terms of the Plan or the Confirmation Order.

29. "Confirmation Payment" shall mean a $700,000 payment in Cash to be made to R. Kelly Plato on the Effective Date from the Exit Facility in lieu of any payments to Mr. Plato under the Employee Order.

30. "Contested" when used with respect to a Claim, means such Claim (a) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (b) if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (i) the proof of claim amount exceeds the amount indicated in the Schedules; or (ii) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; (c) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; or (d) as to which an objection has been filed on or before the Effective Date; provided, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

31. "Convenience Claim" means a Claim Allowed in an amount of no more than $5,000.

32. "Cure Claims" means the amount under each executory contract and unexpired lease to be assumed under this Plan that must be paid pursuant to section 365(b)(1) of the Bankruptcy Code.

33. "Debtors" means Cat Canyon, Intermediate Holdings, ERG Interests, ERG Operating, and ERG Resources.

34.     "Debtors in Possession" means the Debtors, in their capacities as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

35.     "DIP Agent" means CLMG Corp. in its capacity as Administrative Agent and Collateral Agent under the DIP Credit Agreement.

36.     "DIP Credit Agreement" means the Senior Secured Superpriority Debtor-In-Possession Credit Agreement by and among ERG Resources, the DIP Agent, and the DIP Lender as approved by the Bankruptcy Court on a final basis on June 15, 2015 and from time to time amended.

37.     "DIP Facility" means the credit facility established pursuant to the terms of the DIP Credit Agreement.

38.     "DIP Facility Claims" means the claims of the DIP Agent and the DIP Lender against the Debtors arising under or otherwise in respect of the DIP Facility.

39.     "DIP Lender" means LNV Corporation in its capacity as Lender under the DIP Credit Agreement and any other Person or entity that becomes party to the DIP Credit Agreement as a Lender thereunder.

40.     "DIP Liens" means the Liens securing the Debtors' obligations in respect of the DIP Facility as described in the Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (i) Use Cash Collateral of the Pre-Petition Secured Parties, (ii) Obtain Postpetition Financing and (iii) Provide Adequate Protection to the Pre-Petition Secured Parties [Chapter 11 Cases Docket No. 282].

41.     "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

42.     "Distribution Record Date" means the close of business on the Confirmation Date.

43.     "Disbursing Agent" means, (i) with respect to the ERG Plan Trust Beneficial Interests, the ERG Plan Trustee; (ii) with respect to Convenience Claims, Unsecured Claims, and the Exempt Assets Trust Beneficial Interests, the Exempt Assets Trustee; and (iii) with respect to all other Claims and Membership Interests, the Reorganized Debtors.

44.     "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

45.     "Effective Date" means a date selected by the Debtors which shall be a Business Day that is no later than five (5) Business Days after all of the conditions specified in Section 11.2 have been satisfied or waived (to the extent waivable).

46.     "Employee Order" means the Order (A) Approving Payment of Key Employee Incentives, (B) Approving Severance Program and (C) Granting Certain Related Relief [Docket No. 332].

47.    "ERG Interests" means ERG Interests, LLC.

48.    "ERG Interests Royalty Interest" means any and all royalty interests in respect of the California Assets conveyed to ERG Interests, including the overriding royalty interest recorded in the Official Records of the County of Santa Barbara, California as record [●].

49.    "ERG Plan Trust" means the trust created pursuant to Section 7.5 of the Plan, the Confirmation Order, and the ERG Plan Trust Declaration.

50.    "ERG Plan Trust Beneficial Interests" shall mean the beneficial interests, however classified, issued in the ERG Plan Trust in connection with, and subject to, the Plan, the Confirmation Order, and the ERG Plan Trust Declaration.

51.    "ERG Plan Trust Declaration" means the declaration of trust to be entered into by the Debtor and the ERG Plan Trustee on the Effective Date.  The ERG Plan Trust Declaration shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

52.    "ERG Plan Trust Property" means all of the assets held at any time by the ERG Plan Trust, including the Membership Interests in Reorganized Intermediate Holdings and any proceeds thereof and any dividends and distributions paid on account thereof.

53.    "ERG Plan Trustee" means the Person appointed to serve as the trustee of the ERG Plan Trust and any successor trustee.

54.    "ERG Operating" means ERG Operating Company, LLC.

55.    "ERG Resources" means ERG Resources, L.L.C.

56.    "ERG Sharing Amount" means the lesser of (a) 0.5 percent (0.5%) of the amount payable to the Prepetition Agent on account of the Prepetition Facility Claims from the proceeds of the direct or indirect sale of the California Assets; and (b) $500,000.  For the avoidance of doubt, the ERG Sharing Amount shall be distributed to the ERG Plan Trust only upon the direct or indirect sale of the California Assets.

57.    "Estates" means the estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

58.    "Exculpated Parties" means, collectively and individually, the Released Parties, the Debtors and Reorganized Debtors, any employees or members of the Debtors who were employed by or were members of the Debtors prior to the Petition Date, and any Disbursing Agent (solely in such capacity); provided that the Exculpated Parties shall not include Scott Y. Wood or any of his non-Debtor Affiliates, including CTS Properties, Ltd.

59.    "Executory Contract or Unexpired Lease" means a prepetition contract or lease to which a Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

60.     "Exempt Assets" means (a) the "Exempt Assets" as such term is defined in the Approved Settlement and Transaction Support Agreement; (b) the Membership Interests in ERG Holdings, LLC and (c) the Class A ERG Plan Trust Beneficial Interests.

61.     "Exempt Assets Trust" means the trust created pursuant to Section 7.6 of the Plan, the Confirmation Order, and the Exempt Assets Trust Declaration.

62.     "Exempt Assets Trust Advance" means an advance by the Exit Facility Lender on the Effective Date in the amount of $1,000,000 from the Exit Facility into the Exempt Assets Trust for purposes of liquidating the Exempt Assets and otherwise administering the Exempt Assets Trust as provided in the Approved Settlement and Transaction Support Agreement.

63.     "Exempt Assets Trust Beneficial Interests" shall means the beneficial interests issued in the Exempt Assets Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Exempt Assets Trust Declaration.

64.     "Exempt Assets Trust Declaration" means the declaration of trust to be entered into by the Debtor and the Exempt Assets Trustee on the Effective Date.  The Exempt Assets Trust Declaration shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

65.     "Exempt Assets Trust Property" means all of the assets held at any time by the Exempt Assets Trust, including (a) the Exempt Assets and any proceeds thereof and (b) the Exempt Assets Trust Advance.

66.     "Exempt Assets Trustee" means Jason Searcy and any successor Exempt Assets Trustee.

67.     "Exit Facility" means the credit facility established pursuant to the terms of the Exit Facility Credit Agreement secured by the Exit Facility Lien and having availability of up to $150 million.

68.     "Exit Facility Agent" means CLMG Corporation, in its capacity as administrative agent and collateral agent under the Exit Facility.

69.     "Exit Facility Claims" means all claims of the Exit Facility Agent and the Exit Facility Lenders against the Reorganized Debtors arising in respect of the Exit Facility Loan Documents.

70.     "Exit Facility Collateral" means all of the assets of the Reorganized Debtors.

71.     "Exit Facility Credit Agreement" means the credit agreement in connection with the Exit Facility.

72.     "Exit Facility Lenders" means the lenders from time to time party to the Exit Facility Credit Agreement and any other Person that becomes a party to the Exit Facility Credit Agreement as a Lender thereunder.

73.     "Exit Facility Lien" means a first priority, exclusive, fully enforceable and perfected Lien in and to the Exit Facility Collateral to be granted by the Reorganized Debtors to the Exit

Facility Agent in connection with the Exit Facility, subject only to Liens permitted under the Exit Facility.

74.    "Exit Facility Loan Documents" means the Exit Facility Credit Agreement and any security agreements, financing statements, mortgages, deeds of trust and other instruments and documents executed in connection therewith.

75.    "Exit Facility ORRI" means the 3% overriding royalty interest to be granted to the Exit Facility Agent, for the benefit of the Exit Facility Lenders, on the Effective Date.

76.    "Fee Application" means an application of a Professional Person for Allowance of a Fee Claim.

77.    "Fee Claim" means a Claim of a Professional Person.

78.    "Final DIP Order" means the Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (i) Use Cash Collateral of the Pre-Petition Secured Parties, (ii) Obtain Postpetition Financing and (iii) Provide Adequate Protection to the Pre-Petition Secured Parties [Docket No. 282]

79.    "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

80.    "Glossary of Defined Terms" means this Exhibit A to the Plan.

81.    "Indemnification Claim" has the meaning ascribed to such term in Section 7.10 of the Plan.

82.    "Insured Claim" means that portion of any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses.

83.    "Intercompany Claim" means any Claim held by one Debtor against another Debtor.

84.    "Intermediate Holdings" means ERG Intermediate Holdings, LLC.

85.     "Lambert Road Avoidance Actions" means any and all actions seeking (a) avoidance of any transfer of the Lambert Road Property; or (b) recovery of the value of the Lambert Road Property or any proceeds thereof.

86.     "Lambert Road Property" means the property commonly known as 200 Lambert Road, Carpinteria, California 93013 and designated by the Santa Barbara County Assessor as parcel 005 210 047.

87.     "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

88.     "Materialmen's Liens" means any Liens granted by statute on the Debtors' real property to secure payments due to materialmen for work done on the Debtors' real property, including works of improvement.

89.     "Membership Interests" means the equity securities (as defined in section 101(16) of the Bankruptcy Code) in the Debtors.

90.     "Nabors Lawsuit" means Case No. 2012-16446, ERG Resources LLC v. Nabors Global Holdings II, et. al., 61st Judicial District Court, Harris County, Texas.

91.     "Nabors Lawsuit Oversight Committee" means a three (3) member board consisting of one (1) member appointed by Scott Y. Wood and two (2) members appointed by the Committee, provided that if there is a settlement between Scott Y. Wood and the Committee before the Effective Date, then the Nabors Lawsuit Oversight Committee shall be a five (5) member board consisting of three (3) members appointed by Scott Y. Wood and (2) two members appointed by the Committee.  In no event shall Scott Y. Wood be a member of the Nabors Lawsuit Oversight Committee.

92.     "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed to holders of Claims by the claims, noticing, and balloting agent appointed in the Chapter 11 Cases pursuant to section 156(c) of title 28 of the United States Code.

93.     "Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

94.     "Ordinary Course Professionals Order" means the Bankruptcy Court's Order Authorizing Retention and Payment of Professionals Utilized by the Debtors in the Ordinary Course of Business [Docket No. 247].

95.     "Other Debtors" means all of the Debtors other than Intermediate Holdings.

96.     "Other Secured Claim" means (a) a Claim other than a DIP Facility Claim and a Prepetition Facility Claim secured by a Lien on any Assets, which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject

to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a secured claim; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case the class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a secured claim to the extent Allowed.

97.  "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

98.  "Petition Date" means April 30, 2015.

99.  "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

100.  "Plan Distribution" means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim.

101.  "Plan Distribution Date" means (a) with respect each Claim that is an Allowed Claim on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, except with respect to DIP Facility Claims, as to which "Plan Distribution Date" means the Effective Date; and (b) with respect to each claim that is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date that such Claim is Allowed.

102.  "Plan Documents" means the forms of documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan including, The Exit Facility Loan Documents, the Amended and Restated Prepetition Loan Documents, the Exempt Assets Trust Declaration, and the ERG Plan Trust Declaration.

103.  "Plan Supplement" means the compilation of documents, schedules and exhibits to be Filed no later than 10 days prior to the Voting Deadline, as each may thereafter be altered, amended, modified or supplemented in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules.

104.  "Post-Effective Date Interest Rate" means [●].

105.  "Potentially Secured Materialmen's Liens" has the meaning set forth in Section 4.1(c).

106.  "Prepetition Agent" means CLMG Corp. in its capacity as Administrative Agent and Collateral Agent under the Prepetition Credit Agreement.

107.  "Prepetition Credit Agreement" means that certain Credit Agreement by and among the Prepetition Agent, the Prepetition Lenders, and ERG Resources dated as of January 24, 2013, as

amended by that certain First Amendment to Credit Agreement, dated as of August 14, 2014, and as further amended, restated, supplemented and/or otherwise modified from time to time.

108. "Prepetition Facility" means the credit facility established pursuant to the terms of the Prepetition Credit Agreement.

109. "Prepetition Facility Claims" means all claims of the Prepetition Agent and the Prepetition Lenders against the Debtors arising in respect of the Prepetition Loan Documents.

110. "Prepetition Facility Collateral" means the property subject to the Prepetition Facility Liens.

111. "Prepetition Facility Liens" means those liens granted pursuant to the Prepetition Security Documents.

112. "Prepetition Guaranty" means that certain Guaranty by ERG Resources, Intermediate Holdings, Cat Canyon, ERG Operating, and ERG Interests in favor of the Prepetition Agent dated as of January 24, 2013, as amended, restated, supplemented and/or otherwise modified from time to time.

113. "Prepetition Indemnification Agreement" means any (i) purchase agreement or lease executed by any of the Debtors; (ii) grant deed received by any of the Debtors or under which any of the Debtors was or is a grantee; (iii) assignment under which any of the Debtors was or is an assignee; or (iv) settlement or other agreement, in each case executed prior to the Effective Date and pertaining to the California Assets.

114. "Prepetition Lenders" means LNV Corporation in its capacity as Lender under the Prepetition Credit Agreement and any other Person that becomes a party to the Prepetition Credit Agreement as a Lender thereunder.

115. "Prepetition Loan Documents" means, in each case as amended and/or restated from time to time, including pursuant to the Amended and Restated Prepetition Loan Documents, the Prepetition Credit Agreement and all other definitive agreements, certificates, documents, instruments and writings at any time delivered in connection therewith, including the Prepetition Guaranty and the Prepetition Security Documents.

116. "Prepetition Security Agreement" means that certain Security Agreement by and among ERG Resources, the Subsidiary Guarantors, and the Prepetition Agent dated as of January 24, 2013, as amended, restated, supplemented and/or otherwise modified from time to time.

117. "Prepetition Security Documents" means the California Mortgage, the Texas Mortgage, the Prepetition Security Agreement, and all other documents granting a Lien or otherwise relating to a Lien in property of the Debtors in favor of the Prepetition Agent.

118. "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Other Secured Claims, Administrative Claims, and Tax Claims.

119.    "Pro Rata Share" means, with respect to each Claim within a class, the share of the property (such as ERG Plan Trust Beneficial Interests or Exempt Assets Trust Interests) available for distribution on account of Claims within the class that is proportionate to the Allowed amount of the Claim relative to the aggregate dollar amount of Claims which may become Allowed within the class.

120.    "Professional Fee Order" means the Bankruptcy Court's Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 256).

121.    "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

122.    "RCPTX Royalty Interest" means (i) the overriding royalty interest referenced in the assignment of overriding royalty interest recorded in the Official Records of the County of Santa Barbara, California as record 2014-0005745; and (ii) the non-participating royalty interest assigned pursuant to the assignment of non-participating royalty interest recorded in the Official Records of Santa Barbara, California as record 2014-005746.

123.    "Released Causes of Action" means the Causes of Action released pursuant to Section 14.5 of the Plan.

124.    "Released Parties" means, individually and collectively, the Debtors' Representatives, the Committee and its current and former members (solely in their capacity as such), the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the DIP Lender, the Exit Facility Agent, the Exit Facility Lender, and the Representatives of each of the foregoing (solely in their capacities as such); provided that the Released Parties shall not include Scott Y. Wood or any of his non-Debtor Affiliates, including CTS Properties, Ltd.

125.    "Reorganized," when describing one or more of the Debtors, means such Debtor, Debtors or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

126.    "Reorganized Debtor Operating Agreements" means the operating agreements governing the Reorganized Debtors, which shall be in form and substance satisfactory to the Exit Facility Agent and the Prepetition Agent, and which shall be filed as part of the Plan Supplement.

127.    "Representatives" means, with respect to any Person, any officer, manager, affiliate, subsidiary, attorney, advisor, investment banker, financial advisor, accountant or other professional of such Person, in each case in such capacity, serving on or after the Petition Date.

128.    "Restructuring Support Agreement" means the Restructuring Support Agreement dated April 30, 2015 among Wood, CLMG Corp, as administrative agent for the First Lien Lenders, and the Debtors, as such agreement is amended from time to time, attached hereto as Exhibit [●].

129.    "Restructuring Transactions" means, collectively, those mergers, consolidations, restructurings, asset transfers, dispositions, liquidations or dissolutions that the Debtors or Reorganized Debtors determine to be necessary or appropriate in connection with the Plan or the

Debtors' emergence from the Bankruptcy Cases and not in violation of the other provisions of the Plan or the terms of the Exit Facility.

130.    "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule to be filed by the Debtors with the Bankruptcy Court as part of the Disclosure Statement, as may from time to time be amended at any time prior to the commencement of the Confirmation Hearing, (i) identifying each contract and lease the Debtors seek to assume pursuant to Section 12.1 of the Plan; and (ii) the Debtors' proposed cure amount in respect of each contract and lease identified in such schedule, if any.

131.    "Schedules" means the schedules of assets and liabilities and list of equity interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1009.

132.    "Tax Claim" means a Claim against the Debtor that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

133.    "Texas Mortgage" means the instrument recorded in the official records of Liberty County, Texas on January 29, 2013 as Instrument No. 2013014293.

134.    "Tort Claim" means any Claim that has not been settled, compromised or otherwise resolved that: (a) is a tort or other similar Claim and/or arises out of allegations of personal injury, wrongful death, property damage, products liability or similar legal theories of recovery; or (b) arises under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, employment, civil rights, hazardous substances or the environment.

135.    "Transferred Causes of Action" means all Exempt Assets constituting Causes of Action, including (a) the Nabors Lawsuit, (b) the Wood Claims and (c) all Avoidance Actions other than (i) Avoidance Actions that the DIP Agent determines in its reasonable discretion are related to the California Assets; provided, that the DIP Agent and the DIP Lender shall not pursue any preference or fraudulent transfer actions against vendors and suppliers providing goods and services related to the California Assets, and (ii)  the Lambert Road Avoidance Actions.

136.    "Unsecured Claim" means any Claim against the Debtors that arose prior to the Petition Date other than a Claim arising under section 503(b)(9) of the Bankruptcy Code, a Convenience Claim, a Priority Claim, a Tax Claim, an Other Secured Claim, an Intercompany Claim, or a Prepetition Facility Claim.

137.    "Voting Deadline" means the deadline for submitting ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, the ballots or related solicitation documents approved by the Bankruptcy Court.

138.    "Wood Claims" means those claims described in Section 4.a.(vi) of the Approved Settlement and Transaction Support Agreement, i.e., "any claims of the Debtors' estates against Scott Y. Wood or any of his family members and/or non-Debtor affiliates of any kind or nature

whatsoever other than claims constituting Lambert Road Avoidance Actions and claims relating, in the DIP Agent's reasonable discretion, to the conveyance of interests in the California Assets, including royalties, overrides and similar interests.