Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured
Creditors*

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile: (903) 757-9559
Email: jsearcy@jrsearcylaw.com

**THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| | § | |

**SUMMARY OF FIRST INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF
PACHULSKI STANG ZIEHL & JONES LLP, AS LEAD COUNSEL TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
FOR THE PERIOD FROM MAY 12, 2015 THROUGH AUGUST 31, 2015**

| Name of Applicant: | Pachulski Stang Ziehl & Jones LLP |
|---|---|
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | Effective *nunc pro tunc* to May 12, 2015 |
| Period for which Compensation and Reimbursement is Sought: | May 12, 2015 – August 31, 2015[2] |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

[2] The applicant reserves the right to include any time expended in the time period indicated above in future application(s) if it is not included herein.

| Amount of Fees Sought as Actual, Reasonable and Necessary: | $775,328.75[3] |
|---|---|
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $47,352.89[4] |
| Blended Hourly Rate in this Application for All Attorneys: | $818.83 |
| Blended Hourly Rate in this Application for All Timekeepers: | $756.05 |
| Compensation Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $553,170.86 |
| Expenses Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed: | $37,957.16 |
| Number of Professionals Included in this Application: | 13 |
| Number of Professionals Included in this Application Not Included on the Staffing Plan: | 0 |
| Number of Professionals Billing Fewer than 15 Hours: | 3 |

This is an:     __ monthly          _x_ interim          __ final application.

## PRIOR APPLICATIONS FILED

| Date Filed & Docket No. | Period Covered | Requested Fees | Requested Expenses | Fees 80% of Total |
|---|---|---|---|---|
| 06/30/15   Doc. No. 347 | 05/12/15 - 05/31/15 | $286,679.50 | $5,132.32 | $229,343.60 |
| 06/30/15   Doc. No 347 Committee Member Exp. | 05/12/15 - 05/31/15 | 0.00 | $3,331.97 | 0.00 |
| 07/29/15   Doc. No. 393 | 06/01/15 - 06/30/15 | $292,140.75 | $29,223.94 | $233,712.60 |
| 09/02/15   Doc. No. 480 | 07/0115 - 07/31/15 | $97,459.50 | $12,415.99 | $77,967.60 |
| 09/25 /15  Doc. No. 544 | 08/01/15- 08/31/15 | $83,524.00 | $2,866.84 | $79,239.20 |
| Fees Inadvertently Omitted | 07/01/15 - 07/31/15 | $15,525.00 | 0.00 | $12,420.00 |
| **Sub Total** | | **$775,328.75** | **$52,971.06** | **$632,683.00** |
| **Less Additional Write-offs** | | | **<$2,286.20>** | |
| **Grand Total** | | | **$50,684.86** | **$632,683.00** |

---

[3]  This amount includes fees in the amount of $15,525 that were inadvertently omitted from the July 2015 fee statement.

[4]  This amount reflects an additional voluntary write-off of $2,286.00 in expenses taken pursuant to this Application.

## PSZJ PROFESSIONALS

| Name of Professional Individual | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate (including Changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert J. Feinstein | Partner 2001; Member NY Bar since 1982 | $995.00 | 227.70 | $ 226,561.50 |
| Robert J. Feinstein | Non-Working Travel billed at ½ rate | $497.50 | 38.00 | $ 18,905.00 |
| Andrew W. Caine | Partner 2013 [Former Partner 1989] Member CA Bar since 1983 | $925.00 | 13.90 | $ 12,857.50 |
| Debra I. Grassgreen | Partner 1977; Member CA Bar since 1994; Member FL Bar since 1992 | $925.00 | 20.50 | $ 18,962.50 |
| Jeffrey N. Pomerantz | Partner 1995; Member CA Bar since 1989 | $895.00 | 90.10 | $ 80,639.50 |
| Jeffrey N. Pomerantz | Non-Working Travel billed at ½ rate | $447.50 | 13.90 | $ 6,220.25 |
| John A. Morris | Partner 2008; Member NY Bar since 1991 | $875.00 | 167.00 | $ 146,125.00 |
| John A. Morris | Non-Working Travel billed at ½ rate | $437.50 | 43.80 | $ 19,162.50 |
| Maxim B. Litvak | Partner 2004; Member CA Bar since 2001; Member TX Bar since 1997 | $795.00 | 19.50 | $ 15,502.50 |
| Shirley S. Cho | Of Counsel 2009; Member CA Bar 1997; Member NY Bar 2002 | $750.00 | 43.20 | $ 32,400.00 |
| Maria A. Bove | Of Counsel 2001; Member NY Bar since 2001 | $725.00 | 153.80 | $ 111,505.00 |
| Gail S. Greenwood | Of Counsel 2009; Member CA Bar 1994 | $675.00 | 71.50 | $ 48,262.50 |
| Jason H. Rosell | Associate 2010; Member NY Bar 2011; Member CA Bar 2010 | $525.00 | 3.70 | $ 1,942.50 |
| Leslie A. Forrester | Law Library Director | $325.00 | 7.10 | $ 2,307.50 |
| Patricia J. Jeffries | Paralegal 1999 | $305.00 | 99.40 | $ 30,317.00 |
| Denise A. Harris | Paralegal 2001 | $295.00 | 12.40 | $ 3,658.00 |
| **TOTAL** | | | **1,025.50[5]** | **$775,328.75[6]** |

---

[5] This amount includes 23 hours of billable time inadvertently omitted from the July 2015 fee statement.

[6] This amount includes $15,525.00 of billable time inadvertently omitted from the July 2015 fee statement.

Grand Total:          $775,328.75
Total Hours:           1,025.50
Blended Rate:      $      756.05

## BLENDED RATE OF PROFESSIONALS - TOTAL

| Professional | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Partners & Counsel | $816.37 | 902.90 | $737,103.75 |
| Associates | $525.00 | 3.70 | 1,942.50 |
| Paralegals/Other | $305.15 | 118.90 | 36,282.50 |
| **TOTAL** | **$756.05** | **1,025.50** | **$775,328.75** |

## COMPENSATION BY CATEGORY

| Project Categories | Total Hours | Total Fees |
|---|---|---|
| Asset Analysis/Recovery | 110.40 | $ 92,654.00 |
| Asset Disposition | 50.60 | $ 44,112.00 |
| Avoidance Actions | 12.30 | $ 10,613.50 |
| Bankruptcy Litigation | 289.20 | $230,270.50 |
| Case Administration | 48.60 | $ 27,884.50 |
| Claims Administration/Objections | 9.50 | $ 7,521.50 |
| Compensation of Professionals | 0.80 | $ 377.50 |
| Comp. of Professionals/Others | 9.10 | $ 5,051.50 |
| Employee Benefit/Pension | 6.80 | $ 4,547.50 |
| Financial Filings | 12.70 | $ 6,314.50 |
| Financing | 83.70 | $ 67,629.00 |
| General Creditors Comm. | 46.60 | $ 34,912.50 |
| Hearing | 25.40 | $ 22,965.00 |
| Meeting of Creditors | 6.00 | $ 5,620.00 |
| Non-Working Travel | 26.20 | $ 11,944.50 |
| Operations | 10.80 | $ 9,381.50 |
| PSZJ Compensation | 20.90 | $ 9,840.50 |
| PSZJ Retention | 4.40 | $ 2,747.00 |
| Plan & Disclosure Statement | 105.40 | $ 96,120.50 |
| Retention of Professionals | 45.90 | $ 31,214.50 |
| Retention of Professionals/Other | 27.40 | $ 18,483.00 |
| Stay Litigation | 3.30 | $ 2,780.50 |
| Travel | 69.50 | $ 32,343.25 |
| **Total** | **1,025.50** | **$775,328.75** |

### EXPENSE SUMMARY

| Expense Category | Rate | Total Expense |
|---|---|---|
| Air Fare | Coach | $17,018.37 |
| Airport Parking | Actual Cost | $ 519.29 |
| Auto Travel | Actual Cost | $ 1,222.94 |
| Bloomberg | Actual Cost | $ 474.69 |
| Conference Call | Actual Cost | $ 363.92 |
| Federal Express | Actual Cost | $ 432.43 |
| Hotel Expense | Actual Cost | $ 4,503.67 |
| Legal Vision Atty Messenger Service | Actual Cost | $ 1,034.90 |
| Lexis/Nexis- Legal Research | Actual Cost | $ 2,465.54 |
| Pacer - Court Research | Actual Cost | $ 972.30 |
| Postage | Actual Cost | $ 426.31 |
| Reproduction Expense | @ $ .10 per page | $ 2,882.80 |
| Reproduction/Scan Copy | @ $ .10 per page | $ 1,222.10 |
| Research | Actual Cost | $ 233.75 |
| Transcript | Actual Cost | $ 8,620.82 |
| Travel Expense | Actual Cost | $ 1,836.05 |
| Westlaw Legal Research | Actual Cost | $ 5,356.37 |
| Working Meals | Actual Cost | $ 52.84 |
| **Sub Total** | | **$49,639.09** |
| **Less Additional Write-offs Taken Pursuant to This Application** | | **<2,286.00>** |
| **Grand Total** | | **$47,352.89** |

## INFORMATION REGARDING PRIOR INTERIM FEE APPLICATIONS

| Date Filed & Docket No. | Period Covered | Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Date(s) of Orders on Interim Compensation or Reimbursement of Expenses |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

## CUMULATIVE FEE AND EXPENSE TOTAL SINCE CASE INCEPTION

| Fees and Expenses Requested | | Fees and Expenses Approved | | Approved Fees and Expenses Paid | | Approved Fees and Expenses Remaining Unpaid | | Fees and Expenses Disallowed or Withdrawn | |
|---|---|---|---|---|---|---|---|---|---|
| Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile: (903-757-9559
Email: jsearcy@jrsearcylaw.com

*Counsel to the Official Committee of Unsecured
Creditors*

**THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| | § | |
| | § | |

**FIRST INTERIM APPLICATION FOR COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF
PACHULSKI STANG ZIEHL & JONES LLP, AS LEAD COUNSEL TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
FOR THE PERIOD FROM MAY 12, 2015 THROUGH AUGUST 31, 2015**

Pursuant to sections 330 and 331 of Title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement*

*of Expenses of Professionals* signed on June 10, 2015 [Docket No. 256] (the "Interim

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

Compensation Procedures Order"), Pachulski Stang Ziehl & Jones LLP ("PSZJ" or the "Firm"), as lead counsel to the Official Committee of Unsecured Creditors (the "Committee"), hereby submits its *First Interim Application for Compensation and for Reimbursement of Expenses for the Period from May 12, 2015 through August 31, 2015* (the "Application").

By this Application, PSZJ seeks an interim allowance of: (a) compensation for professional services rendered by PSZJ to the Committee in the amount of $775,328.75; and (b) reimbursement of actual and necessary expenses in the amount of $47,352.89 for the period from May 12, 2015 through August 31, 2015 (the "Compensation Period").

### Background

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     On April 30, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), thereby commencing these chapter 11 cases.

3.     On May 5, 2015, the Court entered an order jointly administering these cases for procedural purposes only under lead case 15-31858 (the "Case").  The Debtors continue in possession of their property and are operating and managing their business as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has been appointed in the Case.

4.      On May 12, 2015, the United States Trustee for Region 6 appointed the Committee to represent the interests of all unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code.  The members appointed to the Committee are: (i) Baker Petrolite Corporation; (ii) Cynthia Garcia; (iii) MMI Services, Inc.; (iv) Pacific Petroleum California, Inc.; and (v) SCS Engineers.

5.      On June 10, 2015, the Court signed the Interim Compensation Procedures Order,[2] authorizing certain professionals ("Professionals") to submit monthly applications for interim compensation and reimbursement for expenses, pursuant to the procedures specified therein.  Commencing with the period ending August 31, 2015 and at three-month intervals thereafter, each of the Professionals shall file with the Court an interim application for allowance of the amounts sought in its Monthly Fee Applications for that period.  All fees and expenses paid are on an interim basis until final allowance by the Court.

6.      On or about June 24, 2015, this Court signed the *Order Authorizing and Approving the Retention of Pachulski Stang Ziehl & Jones LLP as Lead Counsel to the Official Committee of Unsecured Creditors Effective as of May 12, 2015* (the "Retention Order") [Docket No. 321].  The Retention Order authorized PSZJ to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Compensation Procedures Order.

## PSZJ'S APPLICATION FOR COMPENSATION
## AND FOR REIMBURSEMENT OF EXPENSES

### Compensation Paid and Its Source

7.      All services for which PSZJ requests compensation were performed for or

on behalf of the Committee.  PSZJ has received no payment and no promises for payment from

any source other than the Debtors for services rendered or to be rendered in any capacity

whatsoever in connection with the matters covered by this Application.  There is no agreement or

understanding between PSZJ and any other person other than the partners of PSZJ for the sharing

of compensation to be received for services rendered in this Case.  PSZJ has not received a

retainer in this Case.

### Prior Monthly Fee Statements

8.      Pursuant to the Interim Compensation Order, PSZJ has submitted the

following monthly fee statements (the "Prior Monthly Fee Statements") comprising the four

months within the Compensation Period, each of which is incorporated herein by reference in its

entirety:

(a)      For the period May 12 through May 31, 2015 - fees $286,679.50 (80% of

allowed fees $229,343.60), expenses $5,132.32, Committee member expenses $3,319.97

[Docket No. 347];

(b)      For the period June 1 through June 30, 2015 - fees $292,140.57 (80% of

allowed fees $233,712.60 and reimbursement of expenses $29,223.94 [Docket No. 393];

(c)     For the period July 1 through July 31, 2015 – fees $97,459.50 (80% of allowed fees $77,967.50) and reimbursement of expenses $12,415.99 [Docket No. 480]; [3] and

(d)     For the period August 1 through August 31, 2015 – fees $83,524.00 (80% of allowed fees $66,819.20) and reimbursement of expenses $2,866.84 [Docket No. 544].

9.      As of the date of this Application, no party has objected to any of PSZJ's Prior Monthly Fee Statements.

10.     PSZJ's itemized time records for attorneys and paraprofessionals performing services for the Committee during the Compensation Period and PSZJ's itemized records detailing expenses incurred on behalf of the Committee during the Compensation Period were attached as <u>Exhibit A</u> to the Prior Monthly Fee Statement and are incorporated herein by reference. These statements contain daily time logs describing the time spent by each attorney and paraprofessional during the Compensation Period. To the best of PSZJ's knowledge, this Application complies with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the Interim Compensation Procedures Order.

## Actual and Necessary Expenses

11.     PSZJ seeks reimbursement for expenses incurred in rendering services to the Committee during the Compensation Period in the amount of $47,352.89. Itemized records detailing such expenses were attached as Exhibit A to the Prior Monthly Fee Statements and are incorporated herein by reference.

---

[3] PSZJ's July 2015 fee statement [Docket No. 393] inadvertently omitted 23.0 billable hours and fees in the amount of $15,525.00. Therefore, by this Application, PSZJ hereby amends the July 2015 fee statement and seeks interim allowance of the additional fees in the amount of $15,525.00. Attached hereto as **Exhibit B** is a chart setting forth such fees and services.

12.     PSZJ customarily charges $0.10 per page for photocopying expenses and $0.10 per page for scanning and printing charges. PSZJ's photocopying machines automatically record the number of copies made when the person that is doing the copying enters the client's account number into a device attached to the photocopier. PSZJ summarizes each client's photocopying charges on a daily basis.

13.     PSZJ charges $1.00 per page for out-going facsimile transmissions. There is no additional charge for long distance telephone calls on faxes. The charge for outgoing facsimile transmissions reflects PSZJ's calculation of the actual costs incurred by PSZJ for the machines, supplies and extra labor expenses associated with sending telecopies and is reasonable in relation to the amount charged by outside vendors who provide similar services. PSZJ does not charge the Committee for the receipt of faxes in this Case.

14.     With respect to providers of on-line legal research services (e.g., LEXIS and Westlaw), PSZJ charges the standard usage rates these providers charge for computerized legal research. PSZJ bills its clients the actual amounts charged by such services, with no premium. Any volume discount received by PSZJ is passed on to the client.

15.     PSZJ believes the foregoing rates are the market rates that the majority of law firms charge clients for such services. In addition, PSZJ believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## Committee Member Expenses

16.     Attached as Exhibit B to PSZJ's May 2015 fee statement and incorporated herein by reference were the Committee expense reimbursement forms, including photocopies of the receipts for the expenses incurred by members of the Committee ("Members") during the Compensation Period.  The expenses incurred by the Members were in connection with their duties as Members of the Committee.  Pursuant to the Interim Compensation Order, PSZJ sought reimbursement of expenses incurred by the Members during the Compensation Period in the amount of $3,331.97.  No objections were received with respect to such request.  Accordingly, the Debtors paid PSZJ such amounts and PSZJ remitted those amounts to the Members.

17.     As set forth in the May 2015 fee statement, the expenses incurred by the Members were necessary to permit the effective performance of the Members' duties under section 1103 of the Bankruptcy Code and are reimbursable from the Debtors' estates.  *See* 11 U.S.C. § 503(b)(3)(F); *In re First Merchants Acceptance Corp.*, 198 F.3d 394, 397 (3d Cir. 1999); *see also In re Haven Eldercare, LLC*, 382 B.R. 180, 183 (Bankr. D. Conn. 2008) ("The actual and necessary expenses of the lay members of the official unsecured creditors' committee . . . are entitled to treatment as administrative priority claims under Section 503(b)(3)(F)").

## Summary of Services Rendered

18.     The names of the timekeepers of PSZJ who have rendered professional services in this Case during the Compensation Period are set forth above.  PSZJ, by and through such persons, has prepared and assisted in the preparation of various motions and orders submitted to the Court for consideration, advised the Committee on a regular basis with respect

to various matters in connection with the Debtors' Case, and performed all necessary professional services which are described and narrated in detail below. PSZJ's efforts have been extensive due to the size and complexity of the Debtors' Case.

### Summary of Services by Project

19. The services rendered by PSZJ during the Compensation Period can be grouped into the categories set forth below. PSZJ attempted to place the services provided in the category that best relates to such services. However, because certain services may relate to one or more categories, services pertaining to one category may in fact be included in another category. These services performed, by categories, are generally described below, with a more detailed identification of the actual services provided set forth in Exhibit A to the Prior Monthly Fee Statements. The summary charts above identify the attorneys and paraprofessionals who rendered services relating to each category, along with the number of hours for each individual and the total compensation sought for each category.

**A.    Asset Analysis/Recovery**

20. Time billed to this category related to the analysis of the Debtors' assets, including, among other things: preparation of a due diligence list; review of the data room established by the Debtors; correspondence regarding the Debtors' assets; the review and analysis of the Nabors litigation; review and analysis of claims against Scott Wood and his affiliates; the preparation of a stipulation providing the Committee standing to pursue claims against Scott Wood and his affiliates; preparation of a Bankruptcy Rule 2004 motion with respect to Mr. Wood and his affiliates and negotiations with counsel regarding settlement issues;

review and comments on revised bidding procedures; research and communications regarding fraudulent transfers analysis with respect to the perfection of CLMG's security interests; preparation of a stipulation extending the Committee's deadline to challenge CLMG's liens and claims under the final DIP financing order; preparation for and attendance at CLMG's deposition and correspondence regarding same; research, analysis and communications relating to the preparation of a complaint against CLMG.

Fees: $92,654.00   Hours: 110.40

**B.** **Asset Disposition**

   21. Time billed to this category relates to, among other things; the review and analysis of the Debtors' bid procedures motion; the preparation of an objection to the Debtors' bid procedures motion; the review and analysis of, and revisions to, the Debtors' bid procedures orders and correspondence with counsel regarding same; preparation with respect to and attendance at the deposition of John Young of Conway Mackenzie, Inc.; the review of US Specialty Insurance's reservation of rights regarding assumption of contracts; discussions with Chevron's counsel regarding sale status; and correspondence with counsel regarding the sale of the Debtors' Liberty County assets.

Fees: $44,112.00   Hours: 50.60

**C.** **Avoidance Actions**

   22. Time billed to this category relates to research and analysis regarding applicable state statutes of limitations and fraudulent transfers; research and analysis regarding perfection of liens on tort claims and related fraudulent transfer issues; review and analysis of

Scott Wood's opposition to the Committee's Bankruptcy Rule 2004 motion and preparation of a reply thereto.

Fees: $10,613.50        Hours: 12.30

**D.    Bankruptcy Litigation**

        23.    Time billed to this category relates to, among other things: research, analysis and perpetration of a motion to transfer venue of the Case and related pleadings; review of Chevron's, the Debtors' and lender's objections to the Committee's motion to transfer venue and preparation of an omnibus reply thereto; conduct discovery with respect to the Debtors' contested DIP financing and sale procedures motions; preparation of discovery requests and attendance at the depositions of the Debtors, Macquarie and Citigroup; preparation for June 11, 2015 hearing; and participation in settlement discussions.

Fees: $230,270.50        Hours: 289.20

**E.    Case Administration**

        24.    This category relates to work regarding administration of this Case. During the Compensation Period, the Firm, among other things: reviewed correspondence and pleadings and forwarded them to appropriate parties; maintained a memorandum of critical dates; maintained document control; maintained service lists; and conferred and corresponded regarding case administration issues.

Fees: $27,884.50        Hours: 48.60

**F.**     **Claims Administration/Objections**

25.     Time billed to this category relates to, among other things; the review and analysis of the Debtors' claims bar date motion and comments thereto; the review and analysis of claims against the Debtors and correspondence with counsel regarding same; calendaring deadlines and communications regarding critical vendor and Committee member claims.

        Fees: $7,521.50         Hours: 9.50

**G.**     **Compensation of Professionals**

26.     Time billed to this category relates to the review and analysis of the Interim Compensation Procedures Order.

        Fees: $377.50         Hours: .80

**H.**     **Compensation of Professionals (Others)**

27.     Time billed to this category relates to the preparation of Committee member expense reimbursement requests, review of correspondence regarding Conway Mackenzie; review of Conway Mackenzie's monthly fee statements; and review of AP Services' monthly compensation reports.

        Fees: $5,051.50         Hours: 9.10

**I.**     **Employee Benefit/Pension**

28.     Time billed to this category relates primarily to the review and analysis of the Debtors' motion to approve a key employee incentive program.

        Fees: $4,547.50         Hours: 6.80

**J.** **Financial Filings**

29.    Time billed to this category related to the review and analysis of the Debtors' schedules of assets and liabilities and statements of financial affairs.

Fees: $6,314.50          Hours: 12.70

**K.** **Financing**

30.    Time billed to this category relates to, among other things:  the review and revision of the final DIP financing order; discovery relating to contested DIP financing and bid procedures;  preparation of an objection to the Debtors' DIP financing motion; the review and analysis of the Debtors' and CLMG Corp.'s replies with respect to the Committee's objections to DIP financing and sale motions; participation in settlement negotiations regarding DIP financing and bid procedures motions; review and analysis of various lien issues.

Fees: $67,629.00          Hours: 83.70

**L.** **General Creditors' Committee**

31.    This category includes services related to general Committee and creditor issues.  During the Compensation Period, the Firm, among other things:  communicated with Committee members and creditors regarding case status updates; attended to Committee expense reimbursement requests; participated in Committee meetings; prepared, reviewed and revised a Committee information confidentiality motion; prepared the Committee Bylaws; prepared summaries of substantive pleadings for Committee review; created a public creditor site for access to key documents filed in the Case.

Fees: $34,912.50          Hours: 46.60

**M.**    **Hearing**

32.    This category relates to the attendance at various hearings in the Case. During the Compensation Period, the Firm, among other things, prepared for hearings on the Debtors' motion to extend exclusivity, the Committee's Bankruptcy Rule 2004 motion seeking discovery from Scott Wood, and the Committee's Bankruptcy Rule 9019 motion (the "Rule 9019 Motion") to approve the settlement (the "Settlement") between the Committee and CLMG Corp. and LNV Corporation (the "Lenders").

Fees:  $22,965.00          Hours:  25.40

**N.**    **Meeting of Creditors**

33.    This category includes work related to general Committee and creditor issues.  During the Compensation Period the Firm, among other things: prepared summaries of substantive pleadings for Committee review; participated in Committee meetings; and communicated with Committee members regarding case status updates.

Fees:  $5,620.00          Hours:  6.00

**O.**    **Non-Working Travel/Travel**

34.    These categories include non-working travel time, which is billed at 50% of the normal rate for the applicable professional.

Fees:  $44,287.75          Hours:  95.70

**P.**    **Operations**

35.    Time billed to this category relates to, among other things:  addressing issues relating to the Debtors' motion to pay royalty claims; review of the Debtors' revised cash

management order; preparation of a respond to the Debtors' critical vendor motion; and discussions regarding negotiations of a revised critical vendor order.

Fees: $9,381.50        Hours: 10.80

## Q.    PSZJ Compensation

36.    Time billed to this category relates to the preparation of the Firm's monthly interim fee statements.

Fees: $9,840.50        Hours: 20.90

## R.    PSZJ Retention

37.    Time billed to this category relates to the preparation of the Firm's retention application and order.

Fees: $2,747.00        Hours: 4.40

## S.    Plan and Disclosure Statement

38.    Time billed to this category relates to services with respect to the Debtors' plan of reorganization and related documents and issues. During the Compensation Period, the Firm, among other things: reviewed and analyzed various settlement term sheets; communicated with the Debtors' and Lenders' counsel regarding same; negotiated and drafted the agreement memorializing the Settlement (the "Settlement and Transaction Support Agreement") and drafted the Settlement Motion; addressed plan issues with the Debtors' and Lenders' counsel; participated in settlement meetings; reviewed discovery requests in connection with the Debtors' motion to extend exclusivity, conducted research with respect to the extension of the Debtors' exclusive periods and prepared an objection thereto; reviewed and provided comments to the

form of exclusivity bridge order; and reviewed, analyzed and provided comments on the

Debtors' plan and related documents.

Fees: $96,120.50 Hours: 105.40

**T.  Retention of Professionals**

39.  Time billed to this category relates to, among other things, the preparation

of the Firm's retention application and the preparation of the Firm's staffing and budget plan.

Fees: $31,214.50 Hours: 45.90

**U.  Retention of Professionals/Others**

40.  Timed billed to this category relates to, among other things: the

preparation of Conway MacKenzie's retention application; the review of the Committee's local

counsel's retention application; the review and analysis of the objection to the Debtor's

application to retain AP Services and discovery in connection therewith; the review and analysis

of the Debtors' ordinary course professionals motion; and the review and analysis of DLA

Piper's retention application.

Fees: $18,483.00 Hours: 27.40

**V.  Stay Litigation**

41.  Time billed to this category relates to the review and analysis of J-F's

motion for relief from stay and correspondence regarding same.

Fees: $2,780.50 Hours: 3.30

42.  The nature of work performed by these persons is fully set forth in

summary charts above.  These are PSZJ's normal hourly rates for work of this character.  The

reasonable value of the services rendered by PSZJ for the Committee during the Compensation Period is $775,328.75.

### Statement of the Applicant

43.     Pursuant to section C5 of the Guidelines, PSZJ makes the following statements:

(a)     PSZJ did not agree to any variations from, or alternatives to, its standard or customary billing rates, fees or terms for services that were provided during the Compensation Period.

(b)     None of the hourly rates of PSZJ's professionals and paraprofessionals included in this Application has been varied based on the geographic location of this Case.

(c)     This Application does not include any rate increases since PSZJ's retention.

### Budget

44.     In connection with approval of DIP financing and the DIP budget (the "DIP Budget"), PSZJ agreed to a carve-out in the total amount of $240,000 with respect to its other Committee professionals' projected fees and expenses for services to be provided to the Committee for the period from May 12, 2015 through July 31, 2015, which projections were shared with the Committee.  Attached hereto as **Exhibit C** is a copy of the DIP Budget attached as Exhibit A to the *Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4011 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (i) Use Cash Collateral of the Pre-Petition Secured Parties, (ii) Obtain Postpetition Financing and (iii) Provide Adequate Protection to the Pre-Petition Secured Parties* [Docket No. 282].  As the DIP Budget period was coming to a close it was apparent that, given the complex nature of this Case, unexpected developments, and the inherently reactive nature of Committee

representation, the projected budget would be insufficient. Thus, the Committee and lenders agreed pursuant to the Settlement Transaction and Support Agreement (which was reviewed by the Committee) that the lenders would fund the lesser of (i) the actual fees and expenses incurred by Committee professionals in this Case and (ii) $1,650,000. *See* Settlement Transaction and Support Agreement at §3, a copy of which is attached hereto as **Exhibit D**.

45.     While PSZJ's actual fees and expenses for the Compensation Period exceeded the projected fees and expenses set forth in the DIP Budget, the revised amount set forth in the Settlement and Transaction Support Agreement more accurately reflects the fees and expenses incurred during the Compensation Period and projected fees and expenses for the remainder of this Case. Specifically, the fees and expenses incurred by all of the Committee's professionals for the Compensation Period total less than $1,650,000.[4] In addition, pursuant to the Settlement and Transaction Support Agreement, any fees and expenses incurred by Committee professionals in excess of such amount may be recovered only from the Exempt Assets Trust to be established pursuant to the filed plan of reorganization.

**Standard for Allowance of Fees and Expenses**

46.     Bankruptcy Code § 330 authorizes the Court to award to professional persons who have been employed by the estate pursuant to Bankruptcy Code §§ 1103 or 327 reasonable compensation for actual and necessary services rendered, including reimbursement of actual and necessary expenses incurred by such professional persons.

---

[4] *See First Interim Fee Application of Conway MAcKenzie, Inc. for Payment of Interim Compensation and Reimbursement of Expenses for the Period From May 12, 2015 Through August 31, 2015* [Docket No. 554] (seeking interim allowance of fees and expenses in the amount of $338,128.88); *First Interim Application of Searcy & Searcy, P.C. for Payment of Interim Compensation and Reimbursement of Expenses for the Period From May 12, 2015 Through August 31, 2015* [Docket No. 557] (seeking interim allowance of fees and expenses in the amount of $118,833.82).

47.     As more fully described below, PSZJ submits that the elements governing awards of compensation pursuant to Bankruptcy Code § 330 justify the allowance, on an interim basis, of the fees and expenses incurred in its representation of the Committee during the Compensation Period.

48.     The Court of Appeals for the Fifth Circuit established a set of guidelines for use by lower federal courts when ruling on attorneys' fee requests in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Under *Johnson*, courts should consider the following factors: (a) the time and labor required; (b) the novelty and difficulty of the questions presented; (c) the skill requisite to perform the legal services properly; (d) the preclusion of other employment due to the acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client with the circumstances of the case; (h) the amount involved and the results obtained; (i) the experience, reputation and ability of the attorney; (j) the undesirability of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases. *Id.* at 717-19. In *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298 99 (5th Cir. 1977), the Fifth Circuit applied the *Johnson* factors to the analysis of fee awards in bankruptcy cases. In 2005, the Fifth Circuit harmonized the provisions of § 330 and the traditional *Johnson* factors, explaining:

> The Fifth Circuit has traditionally used the lodestar method to calculate "reasonable" attorneys' fees under § 330. *In re Fender*, 12 F.3d 480, 487 (5th Cir. 1994). A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993). A court then may adjust the lodestar up or down based on the factors contained in § 330 and its consideration of the twelve factors listed in *Johnson*, 488 F.2d at 717-19. *See Fender*,

> 12 F.3d at 487. While the bankruptcy court has considerable discretion in applying these factors, *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir. 1977), it must explain the weight given to each factor that it considers and how each factor affects its award. *Fender*, 12 F.3d at 487; *Evangeline Refining Co.*, 890 F.2d at 1327-28.

*In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005).

### Application of the Johnson Factors

49.     As set forth in greater detail below, PSZJ's request for allowance of fees and reimbursement of expenses is reasonable and proper pursuant to § 330, the lodestar, and the *Johnson* factors. Accordingly, the Court should approve this Application and allow the amounts requested herein.

   (a)   Time and Labor Required.   PSZJ has expended over 1,025 hours representing the Committee during the Compensation Period.   All of the time spent was necessary and appropriate for the representation of the Committee in this Case.

   (b)   Novelty and Difficulty of Questions Presented.   This Case has presented several novel and difficult restructuring issues, including, among others, (i) venue issues, (ii) specialized matters relating to the oil & gas industry, and (iii) the pursuit of an expedited sale process. PSZJ's efforts were critical with respect to handling these complex and novel issues.

   (c)   Skill Requisite to Perform Services Properly.   Each of the PSZJ attorneys providing services to the Committee possesses the skills expected of a national and highly ranked restructuring practice.

   (d)   Preclusion of Other Employment.   Given the size and depth of its restructuring practice and the size of this Case, PSZJ's representation of the Committee has not precluded it from seeking other engagements.

   (e)   Customary Fee.   The hourly rates charged by each PSZJ professional who performed services for the Committee are PSZJ's normal rates for services of this kind and are comparable to those being charged by other professionals with similar qualifications and experience.

(f) <u>Whether the Fee is Fixed or Contingent</u>. The fees requested in this Application represent fixed hourly rates, and PSZJ's compensation is contingent upon approval by the Court.

(g) <u>Time Limitations</u>. PSZJ provided services under significant time restraints due to the Debtors' pursuit of an expedited sale process and the requirement to negotiate a plan of reorganization within the time limits imposed by the Bankruptcy Code.

(h) <u>Amounts Involved and Results Obtained</u>. PSZJ's representation of the Committee in this Case involved restructuring efforts encompassing (a) assets and liabilities totaling hundreds of millions of dollars and (b) the operations of a multistate oil & gas enterprise in a highly competitive business sector. As described above, PSZJ's representation of the Committee facilitated the approval of postpetition financing and a sale process on terms more favorable to creditors than proposed and the formulation of a plan of reorganization with broad creditor support that will result in substantial recoveries to general unsecured creditors, if not payment in full with interest.

(i) <u>Experience, Reputation, and Ability of Counsel</u>. PSZJ attorneys have represented, and are sought after to represent, numerous debtors, banks, creditors, bidders for estate assets, trustees, and official committees in some of the largest and most sophisticated bankruptcy cases in the country.

(j) <u>Undesirability of the Case</u>. This Case is not undesirable.

(k) <u>Nature and Length of the Professional Relationship</u>. PSZJ had no relationship with the Committee prior to being retained on May 12, 2015.

(l) <u>Awards in Similar Cases</u>. The fees and expenses for which PSZJ seeks compensation and reimbursement are not excessive and are substantially similar to those awarded in similar cases in this district for similar services rendered and results obtained.

50. PSZJ respectfully submits that it has satisfied the requirements for the

allowance of the compensation and reimbursement of expenses sought herein. The services

described above, at the time they were provided, were necessary and beneficial to the

Committee, the Debtors and the Debtors' estates. PSZJ's services were consistently performed

in a timely manner, commensurate with the complexity of the issues facing the Committee and the nature and importance of the problems, issues, and tasks.  Furthermore, all of the services for which compensation is requested hereunder were rendered at the request of and solely on behalf of the Committee, and not on behalf of any other entity.    In accordance with the Guidelines, the Certification of Robert J. Feinstein is attached hereto as **Exhibit A** and incorporated herein by reference.

## Notice

51.    PSZJ has served this application in accordance with the Interim Compensation Order and the Court order granting Complex Case Management Procedures [Docket No. 61].  Any objections to this application must be in writing and filed with the Court and served upon PSZJ so as to be received no later than November 2, 2015.  PSZJ respectfully submits that no other or further notice need be provided.

## No Prior Request

52.    No prior request for the relief sought in this Application has been made to this or any other court.

WHEREFORE, PSZJ respectfully requests that, pursuant to the Interim Compensation Order, the Court (i) allow on an interim basis compensation in the amount of $775,328.75 for services rendered by PSZJ during the Compensation Period; (ii) allow on an interim basis reimbursement of expenses in the amount of $47,352.89 for expenses incurred during the Compensation Period; (iii) authorize payment of these allowed fees and expenses to PSZJ; and (iv) grant such other and further relief as the Court may deem proper.

Dated:  October 16, 2015

SEARCY & SEARCY, P.C.

Jason R. Searcy (TX Bar No. 17953500)
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Tel.:  (903) 757-3399
Fax:  (903) 757-9559
Email:  jsearcy@jrsearcylaw.com


*/s/ Robert J. Feinstein*
PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz
Robert J. Feinstein
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel.: (310) 277-6910
Fax: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

# EXHIBIT A

## Feinstein Certification

Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone: (903) 757-3399
Facsimile:  (903) 757-9559
Email: jsearcy@jrsearcylaw.com

## THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| | § | |
| | § | |

## CERTIFICATION OF ROBERT J. FEINSTEIN

Robert J. Feinstein, under penalty of perjury, certifies as follows:

1.      I am a partner with the law firm of Pachulski Stang Ziehl & Jones LLP

("PSZJ").  I make this certification in accordance with *Appendix F of the Local Bankruptcy Rules*

*of the United States Bankruptcy Court for the Northern District of Texas* ("Appendix F")

regarding the contents of applications for compensation and expenses.

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

2.    I have read the *First Interim Application for Compensation for Services Rendered and Reimbursement of Expenses of Pachulski Stang Ziehl & Jones LLP, as Lead Counsel to the Official Committee for Unsecured Creditors for the Period from May 12, 2015 through August 31, 2015* (the "Application").

3.    Pursuant to section I.G of Appendix F, I hereby certify to the best of my knowledge, information and belief, formed after reasonable inquiry, that (a) the compensation and expense reimbursement sought is in conformity with Appendix F, except as specifically noted in the Application and (b) the compensation and expense reimbursement requested are billed at rates in accordance with practices no less favorable than those customarily employed by the applicant and generally accepted by the applicant's clients.

4.    I have reviewed the requirements of the *Guidelines for reviewing Application for Compensation and Reimbursement of Expenses by Attorneys in Large Chapter 11 Cases, effective November 1, 2013* (the "Guidelines") and I believe that the Application complies with the Guidelines.

Dated:  October 16, 2015

/s/ *Robert J. Feinstein*
Robert J. Feinstein

## EXHIBIT B

### Detail of Inadvertently Omitted July 2015 Fees

### PSZJ PROFESSIONALS

| Attorney | Title | Rate | Hours | Total |
|---|---|---|---|---|
| Gail S. Greenwood | Of Counsel | $675.00 | 23.00 | $15,525.00 |

### Services by Category

**Bankruptcy Litigation**

| Date | Timekeeper | Category | Description | Hours | Rate | Total |
|---|---|---|---|---|---|---|
| 07/02/2015 | GSG | BL | Emails re doc production and status. | 0.20 | 675.00 | $135.00 |
| 07/03/2015 | GSG | BL | Review Alex Partners doc production platform and emails re CLMG production. | 0.40 | 675.00 | $270.00 |
| 07/06/2015 | GSG | BL | Emails with CLMG counsel and review doc production; emails to J. Morris re | 5.70 | 675.00 | $3,847.50 |
| 07/07/2015 | GSG | BL | Review further production of docs by CLMG; notes re same | 1.30 | 675.00 | $877.50 |
| 07/08/2015 | GSG | BL | Review CLMG production of documents; emails to J. Morris re same. | 2.70 | 675.00 | $1,822.50 |
| 07/09/2015 | GSG | BL | Review CLMG documents and email J. Morris re same. | 1.30 | 675.00 | $877.50 |
| 07/11/2015 | GSG | BL | Review 6th production of docs by CLMG; notes re same. | 2.30 | 675.00 | $1,552.50 |
| 07/13/2015 | GSG | BL | Review CLMG production (7th); emails J. Morris re same. | 4.70 | 675.00 | $3,172.50 |
| 07/14/2015 | GSG | BL | Review CLMG productions; emails to J. Morris re deposition documents. | 3.60 | 675.00 | $2,430.00 |
| 07/15/2015 | GSG | BL | Review document productions; emails re depositions docs and proposed complaint. | 0.50 | 675.00 | $337.50 |
| | | | | **22.70** | | **$15,322.50** |

**Case Administration**

| Date | Timekeeper | Category | Description | Hours | Rate | Total |
|---|---|---|---|---|---|---|
| 07/06/2015 | GSG | CA | Conference call re deposition status and deadlines. | 0.30 | 675.00 | $202.50 |
| | | | | **0.30** | | **$202.50** |
| | | | | **23.00** | | **$15,525.00** |

**EXHIBIT C**

**ERG Intermediate Holdings, LLC, et al. ("Debtors in Possession")**
**Cash Flow Forecast for the period 05/08/2015 - 07/31/2015**

$'000

| | | | | | | Sale Process Period | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Forecast Week** | Actual 1 | Actual 2 | Actual 3 | Actual 4 | Fcast 5 | Fcast 6 | Fcast 7 | Fcast 8 | Fcast 9 | Fcast 10 | Fcast 11 | Fcast 12 | Fcast 13 | 13-Week |
| **Week Ending** | 8-May | 15-May | 22-May | 29-May | 5-Jun | 12-Jun | 19-Jun | 26-Jun | 3-Jul | 10-Jul | 17-Jul | 24-Jul | 31-Jul | 8-May–31-Jul |
| Beginning cash | 35 | 1,108 | 1,263 | 3,111 | 2,356 | 1,643 | 1,150 | 532 | 2,044 | 2,020 | 2,134 | 2,151 | 4,051 | 35 |
| **Operating Receipts:** | | | | | | | | | | | | | | |
| Total Operating Inflows | 84 | - | 2,395 | - | - | - | - | 2,628 | - | - | - | 2,368 | - | 7,475 |
| **Operating Disbursements:** | | | | | | | | | | | | | | |
| Payroll and Benefits | (110) | (289) | (12) | (232) | (12) | (12) | (260) | (12) | (260) | (12) | (348) | (12) | (1,962) | (3,533) |
| Field Expenses | (1) | (158) | (388) | (285) | (432) | (412) | (858) | (1,482) | (7,597) | (454) | (60) | (380) | (46) | (12,554) |
| General, administrative and other | - | (98) | (146) | (238) | (263) | (69) | (500) | (121) | (60) | (320) | (275) | (76) | (900) | (3,066) |
| Total Operational Disbursements | (111) | (545) | (546) | (755) | (707) | (493) | (1,618) | (1,615) | (7,917) | (786) | (683) | (468) | (2,908) | (19,153) |
| Operating cash flow | (27) | (545) | 1,849 | (755) | (707) | (493) | (1,618) | 1,013 | (7,917) | (786) | (683) | 1,900 | (2,908) | (11,678) |
| **Non-Operating Cash Flows:** | | | | | | | | | | | | | | |
| Debtor Professionals | - | - | - | - | - | - | - | - | - | - | - | - | (1,019) | (1,019) |
| UCC Professionals | - | - | - | - | - | - | - | - | - | - | - | - | (240) | (240) |
| Lender / Other Professionals | - | - | - | - | - | - | - | - | - | - | - | - | (40) | (40) |
| Total Professional Fees | - | - | - | - | - | - | - | - | - | - | - | - | (1,299) | (1,299) |
| Agent Commitment Fee | - | - | - | - | - | - | - | - | - | - | - | - | (39) | (39) |
| DIP Interest | - | - | - | - | (6) | - | - | - | (8) | - | - | - | - | (14) |
| Net cash flow | (27) | (545) | 1,849 | (755) | (713) | (493) | (1,618) | 1,013 | (7,925) | (786) | (683) | 1,900 | (4,246) | (13,030) |
| DIP loan incremental drawdown | 1,100 | 700 | - | - | - | - | 1,000 | 500 | 7,900 | 900 | 700 | - | 4,700 | 17,500 |
| Closing cash | 1,108 | 1,263 | 3,111 | 2,356 | 1,643 | 1,150 | 532 | 2,044 | 2,020 | 2,134 | 2,151 | 4,051 | 4,505 | 4,505 |
| Facility availability | 5,000 | 5,000 | 5,000 | 5,000 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 | 17,500 |
| DIP loan incremental drawdown | 1,100 | 700 | - | - | - | - | 1,000 | 500 | 7,900 | 900 | 700 | - | 4,700 | 17,500 |
| DIP loan remaining availability | 3,900 | 3,200 | 3,200 | 3,200 | 15,700 | 15,700 | 14,700 | 14,200 | 6,300 | 5,400 | 4,700 | 4,700 | - | - |
| Total Liquidity | 5,008 | 4,463 | 6,311 | 5,556 | 17,343 | 16,850 | 15,232 | 16,244 | 8,320 | 7,534 | 6,851 | 8,751 | 4,505 | 4,505 |
| Total Borrowings | 1,100 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 2,800 | 3,300 | 11,200 | 12,100 | 12,800 | 12,800 | 17,500 | 17,500 |

DRAFT AND CONFIDENTIAL

**EXHIBIT D**

**EXHIBIT 1**

## SETTLEMENT AND TRANSACTION SUPPORT AGREEMENT

This SETTLEMENT AND TRANSACTION SUPPORT AGREEMENT (the "**Agreement**") is made and entered into as of August 6, 2015 by and among (a) the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases jointly administered as *In re ERG Intermediate Holdings, LLC,* et al., No. 15-31858-HDH (the "**Chapter 11 Cases**") currently pending before the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"); and (b)(i) CLMG Corp., in its capacities as the Pre-Petition Agent,[1] the Pre-Petition Collateral Agent, the DIP Administrative Agent and the DIP Collateral Agent (together in such capacities, "**CLMG**"), and (ii) LNV Corporation, in its capacities as Pre-Petition Lender and DIP Lender (together, in such capacities, the "**Bank**"). Each party named above is a "**Party**" and such parties are collectively the "**Parties**."

### RECITALS

WHEREAS, on April 30, 2015 (the "**Petition Date**"), ERG Intermediate Holdings, LLC ("**Intermediate Holdings**"); ERG Resources, L.L.C. ("**ERG Resources**"); West Cat Canyon, L.L.C. ("**West Cat**"); ERG Interests, LLC ("**ERG Interests**"); and ERG Operating Company, LLC ("**ERG Operating**," and, together with Intermediate Holdings, ERG Resources, West Cat, and ERG Interests, the "**Debtors**") each filed a chapter 11 petition in the Bankruptcy Court, thereby commencing the Chapter 11 Cases; and

WHEREAS, on May 12, 2015, the Office of the United States Trustee appointed the Committee in the Chapter 11 Cases; and

WHEREAS, prior to the Petition Date, the Pre-Petition Agent, the Pre-Petition Collateral Agent, the Pre-Petition Lender, and ERG Resources entered into the Pre-Petition Credit Agreement setting forth the terms of the Pre-Petition Facility pursuant to which the Pre-Petition Lender extended loans to ERG Resources in the aggregate principal amount of $372 million; and

WHEREAS, pursuant to the Pre-Petition Loan Documents, (i) the obligations of ERG Resources in respect of the Pre-Petition Credit Agreement are guaranteed by Intermediate Holdings, West Cat, ERG Operating, and ERG Interests (together, the "**Pre-Petition Subsidiary Guarantors**"); and (ii) the obligations of ERG Resources and the Pre-Petition Subsidiary Guarantors in respect of the Pre-Petition Credit Agreement are secured

---

[1] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the *Final Order Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtors to (i) Use Cash Collateral of the Pre-Petition Secured Parties, (ii) Obtain Postpetition Financing and (iii) Provide Adequate Protection to the Pre-Petition Secured Parties* [Chapter 11 Cases Docket No. 282] (the "**Final DIP Order**").

by the Pre-Petition Liens in the Pre-Petition Collateral, which collateral constitutes substantially all of the Debtors' assets; and

WHEREAS, following the Petition Date, the DIP Administrative Agent, the DIP Collateral Agent, the DIP Lender, and ERG Resources entered into the DIP Credit Agreement setting forth the terms of the DIP Facility pursuant to which the DIP Lender agreed to extend credit to ERG Resources in the principal amount of not more than $17.5 million; and

WHEREAS, pursuant to the DIP Loan Documents, (i) the obligations of ERG Resources in respect of the DIP Credit Agreement are guaranteed by Intermediate Holdings, West Cat, ERG Operating, and ERG Interests (together, the "DIP Guarantors"); and (ii) the obligations of ERG Resources and the DIP Guarantors in respect of the DIP Credit Agreement are secured by the DIP Liens in the DIP Collateral, which collateral constitutes substantially all of the Debtors' assets; and

WHEREAS, on June 15, 2015, the Bankruptcy Court authorized ERG Resources to borrow under the DIP Facility on a final basis in accordance with the terms of the DIP Loan Documents, the Interim Order, and the Final Order; and

WHEREAS, the Debtors provided the Claims Stipulations in the Final Order, including, without limitation, (a) an acknowledgment as to the validity and enforceability of (i) the Pre-Petition Facility Obligations (and that such obligations are not subject to objection, defense, counterclaim or offset of any kind); (ii) the Pre-Petition Loan Documents and the Pre-Petition Secured Obligations (and that such documents and obligations are not subject to contest, attack, objection, recoupment, defense, counterclaim, offset, subordination, re-characterization, or other claim, cause of action or other challenge); and (iii) the Pre-Petition Liens (and that such liens are not subject to contest, avoidance, attack, offset, re-characterization, subordination, or other challenge); (b) that the Debtors are not and have not been subject to the control of the Bank; and (c) that the Debtors released the Bank and its affiliates from all claims, including so-called "lender liability claims;" and

WHEREAS, the Claims Stipulations were made immediately and irrevocably binding on all persons *subject to* the right of the Committee to commence an adversary proceeding or contested matter within the Challenge Period, which period, by agreement of the Parties, was extended through and including August 6, 2015; and

WHEREAS, the Committee investigated the matters relative to the Claims Stipulations during the Challenge Period and indicated to the Bank that it was prepared to challenge some or all of the Claims Stipulations prior to the expiration of the Challenge Period; and

WHEREAS, the Committee and the Bank entered into negotiations to avoid litigation concerning the Claims Stipulations and other related matters.

2

**NOW THEREFORE,** in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## AGREEMENT

**SECTION 1. No Challenge to Claims Stipulations; Committee Bound.**

The Committee hereby waives any and all rights to assert any challenge to the Claims Stipulations during or after the Challenge Period and admits, agrees, and acknowledges that it and the Debtors' estates are forever and irrevocably bound by the Claims Stipulations and that all such Claims Stipulations are true and correct in all respects. Without limiting the generality of the foregoing, the releases set forth in Paragraph G(vii) of the Final DIP Order shall be and hereby are fully enforceable against the Debtors' estates and cannot be challenged in any manner by the Committee for any reason.

**SECTION 2. Funding Under the DIP Budget.**

a. _Obligations Affirmed._ The DIP Lender admits, acknowledges, and affirms its obligations to fund the DIP Budget in accordance with the terms of the DIP Credit Agreement and the Final DIP Order; _provided,_ that professional fees set aside in the DIP Budget for the Committee shall be equal to the Committee Professional Fee Cap (as defined below) and shall not be reduced.

b. _DIP Agent's Consent to Essential Supplier Payments._ The DIP Agent and the DIP Lender shall provide the requisite consent pursuant to Section 7.13(c) of the DIP Credit Agreement to permit the Debtors' estates to expend not less than $4 million (the "**Essential Provider Bucket**") to pay some or all of the pre-petition claims (the "**Essential Provider Claims**") owed to the entities on <u>Exhibit A</u> hereto as authorized by the _Order Authorizing the Debtors to Pay Prepetition Claims of Certain Essential Suppliers_ [Chapter 11 Cases Docket No. 320] (the "**Essential Provider Order**"). The DIP Agent, in the exercise of its sole and absolute discretion, (i) shall be entitled to determine which Essential Provider Claims to authorize for payment from the Essential Provider Bucket; and (ii) may authorize payment of individual Essential Provider Claims either in whole or in part so long as the aggregate amount of Essential Provider Claims is not less than $4 million. In the event that the DIP Lender has not funded the full amount of the Essential Provider Bucket by the six month anniversary of the Effective Date (as defined below), (x) the DIP Lender shall advance the unused portion of the Essential Provider Bucket to the Debtor for contribution to the Liquidating Trust (as defined below) and (y) the DIP Lender shall have no further obligation to make advances in respect of Essential Provider Claims. Nothing in this Agreement does or shall expand, limit, or otherwise modify the rights or obligations set forth in the Essential Provider Order of holders of Essential Provider Claims paid from the Essential Provider Bucket.

3

**SECTION 3. Committee Professional Fees.**

Notwithstanding anything else set forth in the DIP Budget and as more particularly described in Section 9(a), the DIP Lender shall fund under the DIP Facility the lesser of (y) the amount sufficient to satisfy all claims of professionals employed by the Committee for fees and expenses allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 330(a); and (z) $1,650,000 (the "**Committee Professional Fee Cap**"). The DIP Agent and the DIP Lender shall provide the requisite consent pursuant to Section 7.13(b) of the DIP Credit Agreement to permit the Debtors to pay the Committee Professional Fee Cap. To the extent that professionals employed by the Committee accrue fees and expenses in excess of the Committee Professional Fee Cap, any such fees and expenses shall not be paid by the Bank from any collateral of the Bank or by the Debtors from the proceeds of the DIP Facility or otherwise; provided, that the Committee reserves the right to pay such fees and expenses from the proceeds of Exempt Assets (as defined below) to the extent such assets are monetized prior to the effective date of a plan of reorganization or liquidation and the establishment of the Liquidating Trust and thereafter to cause the Liquidating Trust to assume the obligation to pay the remaining amount of unpaid fees and expenses. Without limiting the generality of the foregoing, the Committee and its professionals waive the right to object to a plan of reorganization or liquidation on the grounds that the Debtors' estates must pay the professional fees and costs of the Committee in excess of the Committee Professional Fee Cap.

**SECTION 4. Bank's Conditional Limited Waiver of Liens and Right of Recovery from Proceeds of Certain Assets.**

Upon the closing of an Approved Sale (as defined in the DIP Credit Agreement) or any other transaction approved by the Bank with respect to the California Assets, which may include the direct or indirect transfer of the California Assets (as defined in the DIP Credit Agreement) to itself or any third party (any such transaction (including an Approved Sale) is referred to herein as, an "**Approved Transaction**"), the Bank shall:

a. waive any and all Liens against the following assets (collectively, the "**Exempt Assets**"): (i) any and all claims which have been or could be asserted in the litigation styled *ERG Resources LLC v. Nabors Global Holdings II Limited*, et al., No. 2012-16446, pending in the 61st Judicial District of Harris County, Texas; (ii) any and all real property owned by any of the Debtors in Liberty County, Texas (the "**Liberty County Property**"); (iii) any and all rights (other than books and records and IT rights) of any of the Debtors exclusively connected with the Liberty County Property; (iv) any and all equipment located on the Liberty County Property that is not, in the determination of the Bank in its reasonable discretion, necessary or appropriate to operate the California Assets; provided, that any assets transferred from the Debtors' California properties to Liberty County within the 12 months preceding the Effective Date shall be conclusively deemed to be part of the California Assets unless the DIP Agent, in its sole discretion, determines otherwise; (v) all Avoidance Actions *other than* (x) Avoidance Actions that the DIP Agent determines in its reasonable discretion are related to the California Assets; provided, that the

4

Americas 90715058 (2K)

DIP Agent and the DIP Lender shall not pursue any preference or fraudulent transfer actions against vendors and suppliers providing goods and services related to the California Assets, and (y) the Lambert Road Avoidance Actions (as defined below); and (vi) any claims of the Debtors' estates against Scott Y. Wood or any of his family members and/or non-Debtor affiliates (the "**Wood Parties**") of any kind or nature whatsoever *other than* claims constituting Lambert Road Avoidance Actions and claims relating, in the DIP Agent's reasonable discretion, to the conveyance of interests in the California Assets, including royalties, overrides and similar interests. In addition, the Bank shall cause a copy of all of the books and records exclusively related to the Exempt Assets to be delivered to the Debtors or any successors of the Debtors free and clear of the Bank's Liens; and

b.     waive the right to share in the proceeds of any Exempt Assets or the Liquidating Trust, including, without limitation, on account of claims arising under 11 U.S.C. § 507(b) or relating to the DIP Facility.

c.     Nothing in this Agreement is intended to or shall affect, modify, release or alter any of the claims of the Pre-Petition Agent, the Pre-Petition Lender, the DIP Agent or the DIP Lender against the Wood Parties or any obligations of Mr. Wood to any of the foregoing, including under the Owner Guaranty, the Owner Mortgage and/or the Restructuring Support Agreement in effect between the Pre-Petition Agent, the Pre-Petition Lender and Mr. Wood.

### SECTION 5.  Conditional Waiver of Claims of the Debtors' Estates Relating to the Lambert Road Property

Upon the closing of an Approved Transaction, the Debtors' estates shall forever waive and release all Avoidance Actions seeking either of the following (any such action, a "**Lambert Road Avoidance Action**"): (a) avoidance of any transfer of the property commonly known as 200 Lambert Road, Carpinteria, California 93013 and designated by the Santa Barbara County Assessor as parcel 005 210 047 (the "**Lambert Road Property**"); or (b) recovery of the value of the Lambert Road Property or any proceeds thereof.

### SECTION 6.  Liquidating Trust.

If, after or in connection with an Approved Transaction, a final order is entered by the Bankruptcy Court in the Chapter 11 Cases (a "**Liquidating Trust Order**"), including a confirmation order, establishing a trust or other entity or process for the purpose of liquidating the Exempt Assets for the benefit of general unsecured creditors (the "**Liquidating Trust**"), the Bank shall advance $1,000,000 to the Liquidating Trust (the "**Liquidating Trust Advance**"), such funds to be used for the purpose of liquidating the Exempt Assets and other general purposes of the Liquidating Trust, but shall not be a beneficiary thereof or receive any distributions therefrom, and the Liquidating Trust shall have no obligation to repay the Liquidating Trust Advance.

5

Americas 90715058 (2K)

## SECTION 7.  Support of Approved Transaction.

The Committee shall support (a) any Approved Transaction; and (b) any exercise of any rights or remedies by the Bank and/or CLMG against the Debtors or their estates; provided, that, the Bank and CLMG shall not exercise any rights or remedies against the Exempt Assets after the closing of an Approved Transaction.

## SECTION 8.  Effectiveness and Approval

a. Except for Section 8(b), which shall become effective immediately upon the execution of this Agreement by the Committee, this Agreement shall become effective on the first day upon which each of the following shall have occurred (the "**Effective Date**"): (i) the Bankruptcy Court shall have entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Settlement Approval Order**") in form and substance reasonably satisfactory to the DIP Agent approving this Agreement and finding that this Agreement was entered into in good faith and is subject to section 363(m) of the Bankruptcy Code; and (ii) each Party shall have executed and delivered a signed counterpart to this Agreement to each other Party.

b. By no later than August 6, 2015, the Committee shall file a motion (the "**9019 Motion**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the entry of the Settlement Approval Order. The 9019 Motion shall be in form and substance reasonably satisfactory to the DIP Agent. Further, the Committee shall prosecute the 9019 Motion in good faith and shall use best efforts to cause the Bankruptcy Court to grant the 9019 Motion in all respects. Without limiting the generality of the foregoing, the Committee shall use best efforts to obtain: (i) a hearing in respect of the 9019 Motion by no later than August 25, 2015 and (ii) entry of the Settlement Approval Order by no later than August 27, 2015. The Committee shall not withdraw the 9019 Motion without the consent of the DIP Agent.

c. The DIP Agent shall be entitled to terminate this Agreement, in its sole discretion, if the Settlement Approval Order has not been entered by August 27, 2015 by providing written notice to the Committee pursuant to Section 10(i). This Agreement shall automatically terminate if the Bankruptcy Court enters an order denying approval of this Agreement. In the event of a termination, the Parties shall be placed into the same position as they occupied immediately prior to the execution of this Agreement and the Challenge Period shall be deemed to expire at the end of the next business day following the termination date.

## SECTION 9.  Funding of Certain Payments.

a. Upon the closing of an Approved Transaction, the DIP Agent and the DIP Lender shall fund into the Debtors' estates an amount equal to the difference between $1,650,000 and the amount of professional fees and expenses already funded to the Debtors to pay Committee professionals (the "**Committee Amount**"). The Committee Amount shall be part of the Post Sale Carve-Out provided for the Final DIP Order and the funding set

Americas 90715058 (2K)

forth in this Section 9 shall be part of the funding required by paragraph 15 of the Final DIP Order. The Post Sale Carve-Out shall be modified in the Settlement Approval Order as needed to reflect the incorporation of the Committee Professional Fee Cap into the Post Sale Carve-Out. Nothing in this Agreement shall affect the rights of the Debtors' professionals to receive their allocated portions of the Post Sale Carve-Out on the terms and conditions set forth in the Final DIP Order and the DIP Budget. The Debtors shall repay to the DIP Agent on demand any portion of the Committee Amount ultimately determined by the DIP Agent to be in excess of the Committee Professional Fee Cap.

b.      Upon the closing of an Approved Transaction, the DIP Lender shall deposit into an escrow account maintained with the DIP Lender the Liquidating Trust Advance. The Liquidating Trust Advance shall be released (i) to the Liquidating Trust upon the entry of a Liquidating Trust Order, or,(ii) if no Liquidating Trust Order has been entered on or before December 31, 2015, to the Debtors' estates.

**SECTION 10. Miscellaneous Terms.**

a.      <u>Authority; Binding Effect.</u> Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement on behalf of the Party for whom he or she signs. Each Party represents and warrants to the other that the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized and that this Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

b.      <u>Further Assurances.</u> The Parties agree to execute and deliver such other instruments and perform such acts, in addition to the matters herein specified, as may be reasonably appropriate or necessary, from time to time, to effectuate this Agreement.

c.      <u>Headings.</u> The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

d.      <u>Governing Law.</u> THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CHOICE OF LAWS PRINCIPLES THEREOF. By its execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought exclusively in the Bankruptcy Court. By execution and delivery of this Agreement, each of the Parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding.

Americas 90715058 (2K)

e.     Interpretation.  When a reference is made in this Agreement to a Section, Schedule or Exhibit, such reference shall be to a Section, Schedule or Exhibit of this Agreement unless otherwise indicated.  Whenever the words "included," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the phrase "without limitation."  Unless otherwise indicated, all references to dollars refer to United States dollars.  This Agreement is the product of negotiation by and among the Parties.  Any Party enforcing or interpreting this Agreement shall interpret it in a neutral manner.  There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.

f.     Counterparts.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.  Any Party hereto may execute and deliver a counterpart of this Agreement by delivering by facsimile or other electronic transmission a signature page of this Agreement signed by such Party, and any such facsimile or other electronic signature shall be treated in all respects as having the same effect as an original signature.

g.     Amendments.  This Agreement may only be modified, altered, amended or supplemented by an agreement in writing signed by each Party hereto.

h.     Settlement Discussions.  This Agreement is part of a proposed settlement of a dispute between the Parties.  Nothing herein shall be deemed an admission of any kind.  Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

i.     Notices.  Any notices in respect of this Agreement shall be made in writing and delivered by courier or by registered or certified mail (return receipt requested) to the following addresses and email addresses (or at such other addresses or email addresses as shall be specified by like notice):

If to the Bank:

CLMG Corp.
7195 Dallas Parkway
Plano, TX 75024
Attn: James Erwin
jerwin@clmgcorp.com

with a copy (which shall not constitute notice) to:

White & Case LLP
555 South Flower Street, Suite 2700

8

Los Angeles, CA 90071
Attn: Roberto J. Kampfner
rkampfner@whitecase.com

If to the Committee, to:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017
Attn: Robert J. Feinstein
rfeinstein@pszjlaw.com

Any notice given by delivery, mail or courier shall be effective when received. Any notice given by email shall be effective upon oral or electronic confirmation of transmission.

j.  <u>Complete Agreement.</u>  This Agreement and the DIP Documents, including the Final DIP Order, constitute the complete agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, between or among the Parties with respect thereto.

9

IN WITNESS WHEREOF, the Parties have entered into this SETTLEMENT AND TRANSACTION SUPPORT AGREEMENT on the day and year first above written.

CLMG CORP.

By: _____

Name:

Title:    **James Erwin**
          **President**

LNV CORPORATION

By: _____

Name: JACOB Cherner

Title: EVP

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By: _____

Name:

Title:

10

IN WITNESS WHEREOF, the Parties have entered into this SETTLEMENT AND TRANSACTION SUPPORT AGREEMENT on the day and year first above written.

CLMG CORP.

By:_____
Name:
Title:


LNV CORPORATION

By:_____
Name:
Title:


THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
Name: CHRISTOPHER J. RYAN
Title: CHAIRMAN

10

## EXHIBIT A

ERG Intermediate Holdings, LLC et al. ("Debtors In Possession")

| Vendor | Scheduled Amount | Filed Claims Amount |
|---|---|---|
| Pacific Petroleum California (1) | $ 1,887,815 | Not Filed |
| M M J Services, Inc. | 1,712,531 | 1,717,531 |
| Harry E. Hagen-Treas/Collector | 959,481 | Not Filed |
| Construction Specialty Service | 880,262 | Not Filed |
| Pat Phelan Construction | 617,858 | Not Filed |
| West Coast Welding & Constr. | 520,085 | 555,725 |
| Central Coast Piping Products | 366,068 | 383,962 |
| SCS Engineers/Tracers | 344,609 | Not Filed |
| Speed's Oil Tool Service Inc | 300,113 | 303,257 |
| P C Mechanical Inc | 297,016 | Not Filed |
| Quinn Pumps CA, Inc | 215,085 | 263,469 |
| Quinn Pumps Inc. | 49,949 | See Quinn Pumps CA |
| Dowden Electrical Service | 242,255 | Not Filed |
| Electrical Solutions Corp | 142,487 | Not Filed |
| Nalco Company | 135,458 | Not Filed |
| Engel & Gray Inc | 111,449 | 111,449 |
| Netherland Sewell & Associates | 103,734 | Not Filed |
| Packer Service Inc | 87,884 | Not Filed |
| Sweet Oil Tool Rental Inc. | 83,887 | Not Filed |
| APT American Pipe & Tubing | 75,323 | Not Filed |
| Cavins Oil Well Tools | 74,662 | 87,224 |
| Eco-Tec Inc. | 66,480 | Not Filed |
| Gazelle Transportation Inc. | 45,990 | Not Filed |
| Baker Hughes Business Support | 34,812 | 34,812 |
| Terrain Consulting Inc. | 30,535 | 25,165 |
| Rain For Rent Santa Paula | 25,373 | 25,711 |
| Subtotal - First Batch Vendors | $ 9,395,899 | $ 3,519,092 |
| **Second Batch of Critical Vendors** | | |
| D.D. Technology Inc. | 22,600 | Not Filed |
| Dyno - Tech | 19,856 | 19,956 |
| J B Dewar Inc | 12,671 | 12,671 |
| Nalco Company | 5,988 | Not Filed |
| San Joaquin Bit Service, Inc | 4,780 | Not Filed |
| CSS Drilling Tools | 4,160 | Not Filed |
| Century Calibrating Company | 3,807 | Not Filed |
| Searles Valley Minerals Inc. | 3,794 | Not Filed |
| SSCI Environmental | 3,312 | Not Filed |
| Well Analysis Corporation | 1,100 | Not Filed |
| Valley Valve, Inc. | 568 | Not Filed |
| Zalco Laboratories Inc | 481 | 481 |
| Petrotech Resources Company | 263 | Not Filed |
| Verizon Southwest | 118.49 | Not Filed |
| Verizon Communications | 8.43 | Not Filed |
| Subtotal - Second Batch Vendors | $ 82,588 | $ 33,108 |
| Total - Essential Suppliers | $ 9,478,487 | $ 3,552,199 |