

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 26, 2015**

United States Bankruptcy Judge

___

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-31858-hdh11 |
| ERG INTERMEDIATE HOLDINGS, | § | |
| LLC, *et al.*, | § | Jointly Administered |
| | § | |
| Debtors. | § | |

### MEMORANDUM OPINION REGARDING ORDER DENYING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TRANSFER VENUE

On June 12, 2015, this Court entered its *Order Denying Motion of the Official Committee of Unsecured Creditors to Transfer Venue*.[1]  The Court now issues this memorandum opinion to further explain its reasons for denying the request to transfer venue.

In addressing the Official Committee of Unsecured Creditors' request to transfer venue to Santa Barbara, California, Houston, Texas, or Beaumont, Texas, the Court was faced with two issues. The first issue is whether venue for these Cases (as defined herein) is technically proper in the Northern District of Texas. The second issue is whether the Court should exercise its discretion to transfer the Cases even if venue is technically proper.

___

[1] Docket No. 267.

By the time the Court rendered its decision on these issues, the parties all agreed that venue is technically proper in these Cases, but the Court will still address this issue. The Debtors are all Texas limited liability corporations. The question is whether the fact that an entity is organized in a state means that venue for a case under Title 11 is proper for that entity in any District in that state, including Districts in which the entity does not have its principal place of business or its principal assets. The Court holds that it does.

The question of whether this Court should exercise its discretion to transfer venue is a more challenging question. As set out in more detail herein, the movant has failed to persuade the Court that it should exercise its discretion to transfer venue of these Cases in the interest of justice or for the convenience of the parties. Therefore, the Debtors' choice of venue will not be disturbed.

## I. Relevant Factual Background

On April 30, 2015, ERG Intermediate Holdings, LLC ("ERG Holdings"), ERG Resources, L.L.C. ("ERG Resources"), ERG Operating Company, LLC ("ERG Operating"), West Cat Canyon, L.L.C., and ERG Interests, LLC (collectively referred to as the "Debtors" in these "Cases") filed voluntary petitions for relief in this District under Chapter 11 of the Bankruptcy Code.[2] In the bankruptcy petitions, ERG Operating identified its address as being in the Central District of California, and the other Debtors all identified their address as being in Houston, Texas, which is in the Southern District of Texas.

Each of the Debtors is a limited liability company formed under the laws of Texas.

---

[2] Title 11 of the United States Code.

**A. The Debtors' Assets and Operations**

ERG Resources[3] is a privately-owned oil and gas producer that was formed in 1996. ERG Resources (a) directly operates certain oil and gas properties in Texas and (b) operates certain oil and gas properties in California through its wholly-owned subsidiary, ERG Operating.

The Debtors' corporate headquarters is located in Houston, and the Debtors have two offices in California. Both the Debtors' Chief Financial Officer and the Debtors' Chief Restructuring Officer are located in Houston. The ultimate owner of the Debtors, Mr. Scott Wood, has now resigned all positions and titles with the Debtors but maintains his principal residence in the Houston area. The Debtors have approximately eleven employees in Houston and forty-three employees in California. The California employees are in Santa Maria and Bakersfield.

Historically, the Debtors and their predecessors concentrated their operations in the Gulf Coast region—both on-shore and off-shore. The Debtors also previously maintained operations in Illinois and Wyoming. However, the Debtors sold substantially all of these assets in 2011.

Since 2010, ERG Resources and ERG Operating have been primarily engaged in the exploration and production of crude oil and natural gas in the Cat Canyon Field in Santa Barbara County, California. ERG Resources owns approximately 19,027 gross acres of leasehold in the Cat Canyon Field in Santa Barbara County where production peaked at 5,000 barrels of oil a day in 2013. ERG Resources also owns and operates oil and gas leases representing approximately 683 gross acres of leasehold located in Liberty County, Texas. Current production from the Liberty County operations is approximately twenty-five barrels of oil per day.

The Debtors' bankruptcy petitions all state that the locations of the Debtors' principal assets, on a consolidated basis, are Kern County (Eastern District of California), Santa Barbara

---

[3] ERG Holdings is the parent of ERG Resources.

3

County (Central District of California), Liberty County (Southern District of Texas), and Harris County (Southern District of Texas).

The only asset of the Debtors in the Northern District of Texas is roughly $30,000 in a bank located in Dallas. The Debtors do not have operations in the Northern District of Texas.

**B. The Debtors' Creditors**

CLMG Corp. ("CLMG"), in its capacity as the administrative agent and collateral agent for the prepetition lender LNV Corporation ("LNV"), represents, by far, the Debtors' largest secured creditor. As of the date the Debtors filed for bankruptcy, the Debtors were indebted and liable to LNV[4] in the aggregate principal amount of $372,000,000, plus accrued interest and fees thereon, in the additional amount of just over $28,000,000. LNV's claim is secured by first priority liens on substantially all the Debtors' assets. The Debtors believe that LNV's claim is significantly undersecured and LNV may be entitled to a deficiency claim in excess of $100,000,000, which would also make LNV the largest unsecured creditor in these Cases. The executive offices of CLMG and LNV are in Plano, Texas, which despite technically being in the Eastern District of Texas, is less than twenty miles away from this Court.

Based on the Debtors' list of their twenty largest unsecured creditors, the next largest unsecured creditor in these Cases after any deficiency claim of LNV is Chevron U.S.A., Inc. ("Chevron"), which the Debtors identified as holding a claim for $3,820,204. Chevron's in-house counsel with responsibility for this matter, the outside counsel Chevron retained for these Cases, and certain of the relevant business persons from Chevron are all located in Houston.

Of the Debtors' twenty largest unsecured creditors, three are professional firms with addresses in Houston or New York. The remainder of the Debtors' twenty largest unsecured

---

[4] ERG Resources is the original borrower under the credit agreement with LNV, but the other Debtors all provided unconditional joint and several guaranties of the obligations.

creditors have approximately $9,000,000 in claims and have addresses in various cities in the Central and Eastern Districts of California. A numerical majority of the Debtors' unsecured creditors and royalty owners are in California.

The Debtors' first day motion seeking adequate assurance with respect to utility providers lists thirty-seven providers. One has a Dallas address (Northern District of Texas), one has a Houston address (Southern District of Texas), one has a Liberty address (Eastern District of Texas), one has a Denver address (District of Colorado), fourteen have a New Orleans address (Eastern District of New Orleans), and nineteen have California addresses in seven different cities (Central and Eastern Districts of California).

**C. Postpetition Financing and the Restructuring Support Agreement**

Before filing for bankruptcy, the Debtors' management chose to pursue a sale of their California assets followed by a reorganization around the Debtors' remaining assets. This, however, required cooperation from CLMG. The Debtors' available cash collateral would have been insufficient to operate their business as a going concern enterprise once in bankruptcy, so obtaining post-petition financing (the "DIP Financing") was critical to (1) preserving the value of their assets prior to a sale and (2) continuing operating with their remaining assets prior to their reorganization.

One of the conditions to the DIP Financing, as requested by CLMG, was that the jurisdiction for the Debtors' bankruptcy cases must be acceptable to the lenders. During the course of the DIP Financing negotiations, CLMG expressed a strong preference for venue in the Dallas division of the Northern District of Texas. As CLMG represents the largest creditor of the Debtors

and the source of the Debtors' DIP Financing, the Debtors believed this preference was a legitimate and important consideration.[5]

In addition, the Debtors negotiated a restructuring support agreement with CLMG, LNV, and Mr. Scott Wood (the "RSA"). The RSA provides, among other things, that upon the consummation of a sale of the Debtors' California assets and certain other conditions, LNV will waive any deficiency claim against the Debtors (the "LNV Deficiency Claim"). This provision of the RSA is of significant value to the Debtors, as the LNV Deficiency Claim may total in excess of $100,000,000. Eliminating the LNV Deficiency Claim would greatly increase the potential for recoveries for all other unsecured creditors. Among the conditions precedent to the effectiveness of the RSA consented to by all parties to the agreement was that each of the Debtors commence bankruptcy cases in the Northern District of Texas.

**D. The Motion to Transfer Venue**

On May 15, 2015, the Official Committee of Unsecured Creditors (the "Committee"), filed its *Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 94] (the "Motion to Transfer").[6] Through the Motion to Transfer, the Committee sought a transfer of the venue of the Debtors' Cases to the Southern District of California, Santa Barbara Division or, alternatively, to the Eastern District of Texas, Beaumont Division or the Southern District of Texas, Houston Division. Hollister & Brace, the eighth largest creditor on the Debtors' list of its twenty largest unsecured creditors, filed a joinder to the Motion to Transfer.[7] The Debtors and

---

[5] On June 15, 2015, the Court entered a final order approving the DIP Financing with CLMG in an aggregate principal amount not to exceed $17,500,000. *See* Docket No. 282.

[6] The Committee was formed on May 12, 2015. *See Appointment of the Official Unsecured Creditors' Committee* [Docket No. 84].

[7] Docket No. 157.

CLMG filed responses in opposition to the Motion to Transfer.[8] Chevron also filed a response to the Motion to Transfer opposing a transfer to California. Chevron is not opposed, however, to the Cases either remaining in this District or being transferred to the Southern District of Texas.[9]

## II. Legal Analysis

The Court is faced with two distinct issues. The first issue is whether venue for these Cases is technically proper in the Northern District of Texas. The second issue is whether the Court should exercise its discretion to transfer the Cases even if venue is technically proper. The Court will address each issue in turn.

**A. Venue for the Debtors' Bankruptcy Cases is Technically Proper in this District.**

Venue for a bankruptcy case is generally proper in the federal district in which the debtor has its domicile, residence, principal place of business, or principal assets. 28 U.S.C. § 1408. Section 1408 is written in the disjunctive, meaning that any of the four bases—domicile, residence, principal place of business, or principal assets—is sufficient for venue to be proper. In the case of a business entity, the state where it was organized is generally its domicile. *See In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (holding that because the debtor was incorporated in New York, it was considered domiciled in that state); *In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003) ("Since Debtor is incorporated here in Nevada, the District of Nevada may be considered Debtor's domicile and venue is thus proper under § 1408(1)."); *In re Segno Commc'ns, Inc.*, 264 B.R. 501, 506 (Bankr. N.D. Ill. 2001) ("To determine the domicile of a corporation we look to the state of its incorporation."); *accord In re*

---

[8] *Debtors' Response in Opposition to Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 159]; *CLMG Corp.'s Opposition to the Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 161].

[9] *See Response of Chevron U.S.A. Inc. and Union Oil Company of California to Motion of the Official Committee of Unsecured Creditors to Transfer Venue* [Docket No. 164].

7

*FRG, Inc.*, 107 B.R. 461, 471 (Bankr. S.D.N.Y. 1989) (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957)).

For entities incorporated in states with multiple Districts, the Court sees no basis for finding the entity to be domiciled in one District but not the others. *See In re Dunmore*, 380 B.R. at 670 (holding that venue was proper in the Southern District of New York because the debtor was incorporated in the state of New York). Accordingly, an entity that is formed under the laws of a given state is domiciled in the entire state for purposes of section 1408(1) and may file a case under the Bankruptcy Code in any District in that state. As each of the Debtors before the Court is a limited liability company that was organized in the state of Texas, the domicile of the Debtors is the state of Texas. Therefore, under the plain language of section 1408(1), venue for the Debtors' Cases is proper in the Northern District of Texas. Because venue for these Cases is proper, a transfer is not mandatory, but the Court still has discretion to transfer the Cases if certain circumstances exist.

**B. The Court Will Not Exercise its Discretion to Transfer Venue of These Cases.**

Even if venue is technically proper, courts may still exercise their discretion to transfer a case to another District in the interest of justice or for the convenience of the parties. 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014(a)(1). Both section 1412 and Bankruptcy Rule 1014 are disjunctive, allowing a case to be transferred either (1) for the convenience of the parties or (2) in the interest of justice. The party seeking the transfer bears the burden of showing, by a preponderance of the evidence, that a transfer is warranted. *Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 208 (Bankr. W.D. Tex. 2015).

It is worth noting at the outset that a debtor's selection of a proper venue is entitled to great weight and deference in change of venue motions. *In re Dunmore*, 380 B.R. at 670. The Fifth Circuit Court of Appeals has directed courts in its Circuit to exercise caution in transferring cases

filed in a proper venue. *See In re Commonwealth Oil Ref. Co., Inc.*, 596 F.2d 1239, 1241 (5th Cir. 1979) (referred to as "*CORCO*"). Courts in other Circuits have held likewise. *See, e.g.*, *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) ("A debtor's choice of forum is entitled to great weight if . . . venue is proper."); *In re Ocean Props. of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del 1988) ("When venue is proper, the debtor's choice of forum is entitled to 'great weight.'").

The Court now considers the standards underlying each of the two different possible bases for a discretionary transfer of these Cases.

*Convenience of the Parties*

Courts in the Fifth Circuit evaluating whether to transfer a case for the convenience of the parties consider six factors: (1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if bankruptcy should result. *CORCO*, 596 F.2d at 1247. The most important factor of the six is whether transfer would promote the economic and efficient administration of the estate. *Id.*

In these Cases, the common thread that seems to run through each of these factors is that each venue would be more convenient for some parties and less convenient for others, but no venue is clearly superior to all others. With regard to the proximity of the creditors, the Court notes that while a large number of unsecured creditors represented by the Committee are in California, they are not all concentrated in one particular place in California, and very few of them appear to be within a one-hour drive of the courthouse in Santa Barbara. So it is not entirely clear that transferring venue of these Cases to Santa Barbara would be more convenient for very many interested parties, but it is clear that it would be significantly less convenient for CLMG, which

represents the largest and most active creditor in these Cases. It also appears that transferring venue of these Cases to Santa Barbara would be less convenient for Chevron. As far as the Court can tell, transferring these Cases to Beaumont as the Committee requests would be significantly less convenient for all creditors involved.

With regard to the proximity of the Debtors, the Debtors' representatives, witnesses, and the professionals involved in these Cases, Dallas appears to be much more convenient than Santa Barbara or Beaumont but generally less convenient than Houston. The Debtors' headquarters is in Houston. The Debtors' CFO and CRO are both in Houston. The professionals involved in these Cases, however, are based in various cities across the country, including Chicago, New York, Los Angeles, Houston, and Dallas. Most of them will have to travel regardless of where the Cases are, so the most important consideration for them would be accessibility to an airport, making Houston and Dallas more convenient than Santa Barbara or Beaumont, which require greater travel time between the airport and the local courthouse.

With regard to the location of the Debtors' assets, it is clear that the vast majority of the Debtors' assets are in California, but as of the time the Motion to Transfer was argued, the Debtors planned to quickly sell the California assets and reorganize around the remaining Texas assets. As a result, this factor leans in favor of transferring venue to Santa Barbara, but not nearly as much as it would if the Debtors did not intend to quickly dispose of the California assets.

With regard to the economic administration of the estate, the Court believes that Dallas is clearly preferable to Santa Barbara, Beaumont, or Houston. Moving the Cases would require the Debtors, and several other parties in these Cases, to retain local counsel, which would contribute to the professionals' fees and expenses in these Cases. Any transfer of the Cases would also result in a delay in the Cases while the new judge gets acquainted with the Cases.

Ultimately, the Court finds the facts of these Cases to be similar to those in *CORCO*. In *CORCO*, the Fifth Circuit Court of Appeals affirmed denial of a transfer motion attempting to transfer venue from Texas to Puerto Rico where the debtor's creditors, operations, and assets were located. The Fifth Circuit concluded that venue was proper in Texas for several reasons, including that management of all aspects of the debtor's business was handled in Texas, that the debtor's problems were financial rather than operational, and that the people who were working to solve those financial problems or would appear in court were based in Texas. *CORCO*, 596 F.2d at 1247-48. While the Committee has shown that a significant portion of the Debtors' assets, operations, and creditors are in California, it is evident that the Debtors' problems are financial rather than operational, that the people who work to solve the financial problems of the Debtors are in Texas, and that management of all aspects of the Debtors' business is taking place in Texas.

No one disputes that the nerve center of the Debtors' business is in Houston. No one disputes that CLMG and LNV, located in Plano, will play a vital role in the success or failure of this bankruptcy. The Committee cannot dispute that LNV's role in this bankruptcy is essential to the Debtors' future success and the unsecured creditors' recoveries. LNV is not only providing the DIP Financing, but is also the largest secured and potentially the largest unsecured creditor *by far*. The cooperation of CLMG and LNV with these Cases and their waiver of any deficiency claim is essential to recovery by the unsecured creditors. While the majority of creditors are in California, Texas creditors also possess substantial claims. While the majority of assets are in California, the assets that the Debtors intend to reorganize around are in Texas. The Court finds that none of the alternative Districts proposed by the Committee are significantly more convenient for the parties and as a result, the Debtors' choice of venue should not be disturbed on the basis of convenience of the parties under these circumstances.

*Interest of Justice*

The "interest of justice" consideration in section 1412 is a "broad and flexible standard" that must be applied on a case-by-case basis. *In re Cavu/Rock Props. Project I, LLC*, 530 B.R. 349, 354 (W.D. Tex. 2015).  Under this standard, a court must consider (a) the venue in which the estate can be most efficiently administered, (b) the venue that will promote judicial economy and efficiency, (c) the parties' ability to receive a fair disposition, and (d) a state's interest in having local controversies decided within its borders. *In re Crosby Nat'l Golf Club, LLC*, 534 B.R. 888, 890-91 (Bankr. N.D. Tex. 2015).  Courts evaluating the "interest of justice" also commonly consider whether a debtor has engaged in abusive forum shopping, and will transfer a case if the court finds such abuse. *In re Lazaro*, 128 B.R. 168, 174 (Bankr. W.D. Tex. 1991).

In order to meet its burden under an "interest of justice" analysis, the Committee must not just show that the venue requested will promote efficient administration, judicial economy, timeliness, and fairness, the Committee must overcome the *presumption* that the District in which the underlying bankruptcy cases are pending is the appropriate District for hearing and determination of a proceeding in bankruptcy. *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990).

With regard to the interest of justice, the Committee primarily argued that CLMG and LNV unduly influenced the Debtors in their choice of venue.  The fact that the Debtors were influenced in their choice of venue by CLMG and LNV does not support a showing of abuse.  Instead, the Debtors are relying heavily upon them for the success of these Cases.  Not only is LNV providing the DIP Financing, the RSA and the potential waiver of LNV's deficiency claim could provide a substantial benefit to the unsecured creditors.  While the Committee has proven that the Debtors were influenced by the preferences of CLMG and LNV, it has failed to show any abuse or harm.  Furthermore, it has failed to show any attempt to manipulate the judicial process.  When a proper

venue is chosen and no abuse can be shown, there is no forum shopping in the pejorative sense. Rather, the Debtors considered their options for where to file these Cases and chose to file in Dallas because they determined, in the exercise of their fiduciary duties, that it provided the best opportunity to maximize value for all interested stakeholders. Based on the facts of these Cases, the Court does not find that the Debtors have engaged in improper forum shopping.

The Committee has not shown (a) that the Cases will be more efficiently administered in Houston, Beaumont, or Santa Barbara, (b) that a transfer of the Cases will promote judicial economy and efficiency, (c) that the parties cannot receive a fair disposition without a transfer, or (d) that there is an overriding state interest in having controversies in these Cases resolved in California. Without such a showing, the Court will not disturb the Debtors' choice of venue.

### III. Conclusion

For the reasons stated above, this Court concludes that the venue of these Cases is technically proper and should not be changed. An entity incorporated in a given state is domiciled in the entire state and may initiate a bankruptcy proceeding in any federal district in that state. This conclusion seems relatively clear considering the legal import of incorporation in a state and also looking to the practice of other bankruptcy courts.

These Cases also presented the Court with the issue of whether venue should be changed for the convenience of the parties or in the interest of justice. As the Debtors pointed out in their briefing, there were pros and cons for almost all of the Districts in which the Debtors could have chosen to file these Cases. Ruling on the Motion to Transfer was somewhat complicated by the fact that the Committee requested a transfer to Santa Barbara, Houston, or Beaumont, but really only presented argument in favor of a transfer to Santa Barbara. Of the other parties that supported a transfer of any kind, one merely joined in the Committee's request and the other opposed a

transfer to Santa Barbara but supported venue in either Dallas or Houston. This left the Court without any party really arguing in favor of a transfer to Houston or Beaumont, but the Court still considered these options.

The Court declined to transfer the Cases to Santa Barbara because, among other reasons, that venue would have been very inconvenient to the Debtors, the Debtors' representatives, and at least two major creditors who have appeared at all the hearings in these Cases to date. In addition, many of the California creditors that the Committee cites in favor of a transfer are not actually located in, or even particularly near, Santa Barbara. The Court also declined to transfer the Cases to Houston where the Debtors have their corporate headquarters. Whether to transfer the Cases to Houston was a closer question in the Court's mind, but some deference must be given to the Debtors' choice of venue, as well as the concerns of the major and most active creditors, who either had no objection to the Northern District of Texas or expressly wanted the Cases here. In addition, transferring the Cases to the Houston would be no more convenient to the California creditors than denying a transfer altogether and would cause delay. Finally, the Court declined the Committee's request to transfer venue to Beaumont because that venue would actually be less convenient to almost all parties, and the Debtors have no significant ties to that District.

Venue of bankruptcy cases is a hot topic of discussion among bankruptcy judges and professionals. *See, e.g.*, *In re Crosby Nat'l Golf Club, LLC*, 534 B.R. 888 (Bankr. N.D. Tex. Aug. 3, 2015). This Court heard this matter in June and was close to issuing an opinion when the *Crosby National* opinion came out. To avoid the appearance that the judges of the Northern District of Texas had begun a venue opinion cottage industry and to re-examine the facts in these Cases, this Court delayed the issuance of this opinion.

While the undersigned judge shares some of the concerns expressed by other judges about venue shopping in bankruptcy cases disenfranchising the little guy, such is not the case here. The larger and more active creditors in these Cases have able counsel and are satisfied with the venue of these Cases. The smaller creditors also have quite capable counsel, both general and local, and their interests have been well-represented to date. This is not the case of a parochial fight, which could involve strong local interests. From the beginning, these Cases have been about a sale of most of the Debtors' assets and an eventual reorganization around the rest.

The Court returns to its conclusion for the benefit of the parties: venue is proper in the Northern District of Texas because the Debtor is incorporated in Texas. A change in venue is not warranted in these Cases for the convenience of the parties or in the interest of justice.

### End of Opinion ###