

**U.S. BANKRUPTCY COURT**

**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**

**THE DATE OF ENTRY IS**

**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 2, 2015**

**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, *et al.*,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No.: 15-31858-hdh-11 |

---

## FINDINGS OF FACT AND CONCLUSIONS OF
## LAW REGARDING CONFIRMATION OF THE FIRST
## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## DATED SEPTEMBER 18, 2015, AS AMENDED, IN RESPECT OF
## <u>ERG INTERMEDIATE HOLDINGS, LLC AND ITS AFFILIATED DEBTORS</u>

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309. The above addresses are listed solely for the purposes of notices and communications.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FINDINGS OF FACT ........................................................................................ 5

    A. THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION ........................................................................................ 5

    B. THE DEBTORS ACTED IN GOOD FAITH ............................................ 5

    C. TRANSMITTAL AND MAILING OF MATERIALS; NOTICE ........................ 6

    D. THE PLAN MODIFICATIONS ................................................................ 6

    E. COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE ..................................................................... 6

        1. Section 1129(a)(1) — Compliance of the Plan with Applicable Provisions of the Bankruptcy Code. ....................... 6

        2. Sections 1122 and 1123(a)(1)-(4) — Classification and Treatment of Claims and Interests............................................... 7

        3. Section 1123(a)(5) — Adequate Means for Implementation of the Plan. ......................................................................... 9

        4. Section 1123(a)(6) — Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities. ............................... 11

        5. Section 1123(a)(7) — Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy. ....................... 12

        6. Section 1123(a)(8)— Payment of Earnings From Personal Services or Other Income of a Debtor As Necessary for the Execution of the Plan. ................................................... 12

        7. Section 1123(b)(1) — Impairment of Claims and Interests.................... 12

        8. Section 1123(b)(2) — Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases. .................. 12

        9. Section 1123(b)(3) — Retention, Enforcement and Settlement of Claims Held by the Debtors.................................................... 13

        10. Section 1123(b)(5) — Modification of the Rights of Holders of Claims. ........................................................................ 13

        11. Section 1123(b)(6) — Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code...................................... 13

        12. Section 1123(d) — Cure of Defaults. ....................................... 13

        13. Section 1129(a)(2) — Compliance with Applicable Provisions of the Bankruptcy Code.................................................... 14

# TABLE OF CONTENTS
## (continued)

Page

14. Section 1129(a)(3) — Proposal of the Plan in Good Faith. .................... 14

15. Section 1129(a)(4) — Court Approval of Certain Payments as Reasonable. ........................................................................................ 15

16. Section 1129(a)(5) — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy. ................................................................................................ 15

17. Section 1129(a)(6) — Approval of Rate Changes. ................................. 16

18. Section 1129(a)(7) — Best Interests of Holders of Claims and Interests. ............................................................................................... 16

19. Section 1129(a)(8) — Acceptance of the Plan by Each Impaired Class. .................................................................................................... 16

20. Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code. .............................. 17

21. Section 1129(a)(10) — Acceptance By at Least One Impaired, Non-Insider Class. ................................................................................. 18

22. Section 1129(a)(11) — Feasibility of the Plan. ..................................... 18

23. Section 1129(a)(12) — Payment of Bankruptcy Fees. ........................... 18

24. Section 1129(a)(13) — Retiree Benefits. ............................................... 19

25. Section 1129(a)(14) — Domestic Support Obligations. ......................... 19

26. Section 1129(a)(15) — Payment of Unsecured Claims In Case of Individual Debtor. ................................................................................. 19

27. Section 1129(a)(16) — Restrictions on Transfers of Property of Nonprofit Entities. ................................................................................ 19

28. Section 1129(b) — Confirmation of the Plan Over the Nonacceptance of Impaired Classes. ..................................................... 19

29. Section 1129(d) — Purpose of Plan. ..................................................... 20

F. COMPREHENSIVE SETTLEMENT OF CLAIMS AND CONTROVERSIES ................................................................................. 20

G. APPROVAL OF EXIT FACILITY ........................................................... 21

H. CERTAIN ADDITIONAL FINDINGS ...................................................... 21

I. SATISFACTION OF CONDITIONS TO CONFIRMATION ....................... 21

III. CONCLUSIONS OF LAW .............................................................................. 21

A. JURISDICTION AND VENUE ............................................................... 21

**TABLE OF CONTENTS**
**(continued)**

Page

B.  THE PLAN MODIFICATIONS AND PLAN SUPPLEMENT .......................... 22

C.  EXEMPTIONS FROM TAXATION ................................................................ 22

D.  APPROVAL OF THE RELEASE AND EXCULPATION PROVISIONS
    IN THE PLAN ................................................................................................ 23

E.  COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE ...... 24

F.  GOOD FAITH NEGOTIATION, IMPLEMENTATION AND
    CONSUMMATION ........................................................................................ 24

G.  EXECUTORY CONTRACT AND UNEXPIRED LEASES .............................. 25

H.  1111(b) ELECTION ........................................................................................ 25

I.  OBJECTIONS TO THE PLAN ........................................................................ 25

## I.   INTRODUCTION

WHEREAS, the above-captioned debtors (collectively, the "Debtors") and CLMG Corp., the Prepetition Agent, proposed the First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 in Respect of ERG Intermediate Holdings, LLC And Its Affiliated Debtors [Docket No. 518], as modified by the Plan Modifications (as defined below) and incorporated herein by reference (as it may be further modified and inclusive of the Plan Supplement, the "Plan"),[2] and the Debtors filed an accompanying disclosure statement [Docket No. 519] (the "Disclosure Statement");

WHEREAS, on September 21, 2015, the Bankruptcy Court entered the Order (I) Scheduling Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan, (II) Establishing Procedures for Solicitation and Tabulation of Votes on Plan and (III) Approving Related Matters [Docket No. 534] (the "Solicitation Order"), which conditionally approved the Disclosure Statement for the purposes of solicitation of votes on the Plan, subject to final approval of the Disclosure Statement at the combined hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing");

WHEREAS, the Certificate of Service of Stephenie Kjontvedt regarding the service of solicitation materials in respect of the Plan and the notice of the Combined Hearing in accordance with the Solicitation Order [Docket No. 568] (the "Certificate of Service") was filed with the Bankruptcy Court on October 8, 2015;

WHEREAS, the Plan and Disclosure Statement distributed to creditors that received solicitation packages indicated that the Plan Supplement could be obtained from the Debtors' website at http://dm.epiq11.com/ERG;

---

[2]       Terms not otherwise defined herein shall have the meanings given to them in the Plan.

WHEREAS, on September 18, 2015 [Docket No. 520] and October 2, 2015 [Docket No. 560], the Debtors filed the Plan Supplement and related exhibits;

WHEREAS, the Affidavit of Edward Silva of Publication in the *Houston Chronicle* [Docket No. 574] and Affidavit of Jenna Holmes of Publication in the *Los Angeles Times* [Docket No. 575] (collectively, the "Publication Affidavits") with respect to the publication of the Notice of (A) Deadline for Casting Votes to Accept or Reject Chapter 11 Plan of Reorganization, (B) Combined Hearing to Consider Approval of Disclosure Statement and Confirmation of Plan and (C) Related Matters and Procedures (the "Publication Notices") were each filed with the Bankruptcy Court on October 9, 2015;

WHEREAS, Epiq Bankruptcy Solutions, LLC, the Bankruptcy Court-appointed solicitation and tabulation agent in respect of the Plan, filed the Declaration of Stephenie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting and Tabulation of Ballots Accepting and Rejecting the First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 in Respect of ERG Intermediate Holdings, LLC and Its Affiliated Debtors [Docket No. 612] (the "Voting Declaration") on October 21, 2015 attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

**Class 2 Claimants.** The Debtors received 1 acceptance out of 1 vote from the holder of Claims under Class 2 (Prepetition Facility Claims). The Class 2 claimant who voted in favor of the Plan holds Claims in the amount of $423,800,000.00 for voting purposes, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 2 Claims. (Voting Declaration Ex. A.);

**Class 5 Claimants.** The Debtors received 16 acceptances out of 27 votes from holders of Claims under Class 5 (Unsecured Claims), with Class 5 claimants who voted in favor

of the Plan holding Claims in the amount of $4,988,258.79 for voting purposes, such acceptances being 59 percent in number and 91 percent in amount of all ballots received from holders of Class 5 Claims (Voting Declaration Ex. A.);

**Class 7 Interest Holders.** The Debtors did not receive any ballots from holders of interests under Class 7 (Intermediate Holdings Interests) (Voting Declaration Ex. A.);

WHEREAS, objections to Confirmation of the Plan (collectively, the "Objections") were filed by:

a. Texas Comptroller of Public Accounts [Docket No. 572];

b. Nabors Global Holdings II, Ltd. [Docket No. 578];

c. Ford Motor Credit Company LLC [Docket No. 579];

d. U.S. Specialty Insurance Company [Docket No. 580];

e. Chevron U.S.A. Inc. and Union Oil Company of California [Docket No. 581];

f. Galveston, Harris and Orange Counties, Texas [Docket No. 582];

g. Scott Y. Wood [Docket No. 583];

h. RCPTX, Ltd. [Docket No. 584];

i. HVI Cat Canyon, Inc. [Docket No. 585];

j. Parex Resources, Inc., Parex Resources (Bermuda), Ltd. and Ramshorn International Limited (collectively, "Parex") [Docket No. 586]; and

k. United States Trustee [Docket No. 597].

WHEREAS, the Debtors filed a memorandum of law in support of (a) final approval of the Disclosure Statement, (b) Confirmation of the Plan and (c) in response to certain of the Objections [Docket No. 619] (the "Memorandum of Law");

WHEREAS, CLMG Corp, as the Prepetition Agent, filed a response to the Objections filed by Chevron U.S.A. and Union Oil Company of California, RCPTX, Ltd., and the United States Trustee [Docket No. 613] (the "Response");

WHEREAS, (a) the Declaration of Rebecca A. Roof in Support of the First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 In Respect of ERG Intermediate Holdings, LLC And Its Affiliated Debtors [Docket No. 615] (the "Roof Declaration") and (b) the Declaration of R. Kelly Plato in Support of the First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 In Respect of ERG Intermediate Holdings, LLC And Its Affiliated Debtors [Docket No. 616] (the "Plato Declaration," together with the Roof Declaration, the "Plan Declarations") were submitted in support of the Plan;

WHEREAS, the Debtors have modified the Plan [Docket No. 614] (collectively, the "Plan Modifications"), which as modified is attached as Exhibit A to the Confirmation Order;

WHEREAS, the Bankruptcy Court has reviewed the Plan (as modified by the Plan Modifications), the Plan Supplement, the Disclosure Statement, the Solicitation Order, the Voting Declaration, the Affidavit of Service, the Publication Affidavits, the Objections, the Memorandum of Law, the Response, the Plan Declaration and the other papers before the Bankruptcy Court in connection with the Confirmation of the Plan;

WHEREAS, the Combined Hearing was held on October 26, 2015 at 9:00 a.m. (Central Time) before the Honorable Harlin D. Hale, United States Bankruptcy Judge for the Northern District of Texas;

WHEREAS, the Bankruptcy Court heard the statements of counsel in support of and in opposition to confirmation as reflected in the record made at the Combined Hearing;

WHEREAS, the Bankruptcy Court has considered all evidence presented at the Combined Hearing;

WHEREAS, the Bankruptcy Court has taken judicial notice of the papers and pleadings on file and of prior Bankruptcy Court hearings in these Chapter 11 Cases;

WHEREAS, the Bankruptcy Court, after due deliberation and for sufficient cause, finds that the evidence admitted in support of the Plan at the Combined Hearing is persuasive and credible;

WHEREAS, the Bankruptcy Court made certain findings of fact and conclusions of law on the record at the Combined Hearing, which findings and conclusions shall be deemed to be incorporated herein in their entirety;

NOW, THEREFORE, the Bankruptcy Court hereby enters the following findings of fact and conclusions of law with respect to Confirmation of the Plan (the "Findings and Conclusions").[3]

## II.     FINDINGS OF FACT

### A.     THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION

The Disclosure Statement contains adequate information within the meaning of 11 U.S.C. 1125(a).

### B.     THE DEBTORS ACTED IN GOOD FAITH

The Debtors and the Prepetition Agent, and their Representatives (acting in such capacity) have acted in good faith and in compliance with the applicable provisions of the

---

[3]     These Findings and Conclusions constitute the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

Bankruptcy Code and the Solicitation Order with respect to the transmittal of all materials relating to the solicitation of the Plan and the solicitation of acceptances of the Plan.  Similarly, the Debtors and the Prepetition Agent, and their respective directors, managers, officers, employees, agents, affiliates and Professional Persons (acting in such capacity) have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to each transaction contemplated under the Plan.  As such, the Debtors and the Prepetition Agent, and their respective directors, managers, officers, employees, agents and Professionals Persons (acting in such capacity), are entitled to the benefits and protections of section 1125(e) of the Bankruptcy Code.

### C.    TRANSMITTAL AND MAILING OF MATERIALS; NOTICE

The Disclosure Statement, the Plan, the Solicitation Order, the ballots for holders of Claims or interests to accept or reject the Plan, and the notices of the Combined Hearing were transmitted and served in compliance with the Bankruptcy Rules, the Bankruptcy Code and the Solicitation Order.  Based on the foregoing, due, adequate and sufficient notice of the Combined Hearing, along with the other dates and deadlines for voting on or filing objections to the Plan has been given in compliance with the Bankruptcy Rules and the terms of the Solicitation Order, and no other or further notice is, or shall be, required.

### D.    THE PLAN MODIFICATIONS

The Plan Supplement and the Plan Modifications do not materially or adversely affect or change the treatment of any Claim against or interest in any Debtor.

### E.    COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE

**1.    Section 1129(a)(1) — Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code. The Plan complies with each requirement of section 1123(a) of the Bankruptcy Code. Article II of the Plan designates seven classes of Claims and interests. (Plan Art. II.) Section 3.1 of the Plan specifies that Claims and interests in Classes 1, 3, 4, 6 and 8 are not impaired under the Plan. (Plan § 3.1.) Section 3.2 of the Plan specifies that Claims in Classes 2, 5 and 7 are impaired and describes the treatment of each such class. (Id. at § 3.2) Further, the treatment of each Claim or interest within a Class is the same as the treatment of each other Claim or interest in such Class, unless the holder of a Claim or interest agrees to less favorable treatment on account of its Claim or interest. (Id. at § 4.1)

> **2.** **Sections 1122 and 1123(a)(1)-(4) — Classification and Treatment of Claims and Interests.**

a. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies each Claim against and interest in the Debtors into a Class containing only substantially similar Claims or interests. (Plan Art. II.) In accordance with section 1123(a)(1) of the Bankruptcy Code, Article II of the Plan properly classifies all Claims and interests that require classification. (Id.) In particular, Article II of the Plan segregates into separate Classes Priority Claims (Class 1), Prepetition Facility Claims (Class 2), Other Secured Claims (Class 3), Convenience Claims (Class 4), Unsecured Claims (Class 5), Intercompany Claims (Class 6), Intermediate Holdings Membership Interests (Class 7) and Other Debtor Membership Interests (Class 8).[4] The number of classes reflects the diverse characteristics of those Claims and interests, and the legal rights under the Bankruptcy Code of each of the holders of Claims or interests within a particular Class are substantially similar to other holders of Claims or interests within that Class. (Id.)

---

[4] In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

b.       In accordance with section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan identifies and describes each Class of Claims or interests that is not impaired under the Plan.  (Plan Art. III.)  In particular, section 3.1 of the Plan specifies that Classes 1, 3, 4, 6 and 8 are not impaired under the Plan.  (Id.)

c.       In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan identifies and describes any Class of Claims or interests that is impaired under the Plan.  (Plan Art. III.)  In particular, Section 3.2 of the Plan also specifies that Claims and interests in Classes 2, 5 and 7 are impaired, (Id. at § 3.2.), and describes the treatment of each such class of Claims.  (Id. at Art. IV.)

d.       In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or interest of a particular Class unless the holder of such a Claim or interest agrees to less favorable treatment.  (Plan Art. IV.)

e.       Due to their entitlement to priority status under section 507 of the Bankruptcy Code, Priority Claims have been separately classified in Class 1.  (Plan Art. II.).  Based on their secured status and the distinctive bases for such Claims, Prepetition Facility Claims have been classified in Class 2 and Other Secured Claims have been separately classified in Class 3. (Id.)   Convenience Claims, Unsecured Claims, Intermediate Holdings Membership Interests and Other Debtor Membership Interests have been separately classified in, respectively, Classes 4, 5, 7 and 8 due to the distinctive bases for such claims and interests.  (Id.)  Finally, due to the unique nature of the claims and the fact that the Plan treats the Intercompany Claims differently than the other Unsecured Claims, Intercompany Claims have been classified in Class 6 separately from Unsecured Claims.  (Id.)

3.       **Section 1123(a)(5) — Adequate Means for Implementation of the Plan.**

In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Article VII of the Plan and the Plan Supplement, provides adequate means for the Plan's implementation, including:

a.       the continued operations of the Debtors' businesses from the Confirmation Date through and until the Effective Date, under Section 7.1 of the Plan;

b.       the incorporation of the Approved Settlement and Transaction Support agreement into the Plan, under Section 7.2 of the Plan;

c.       settlement of certain existing and potential disputes concerning the value of the Prepetition Facility Claims, under Section 7.3 of the Plan;

d.       the (i) cancellation of all of the Membership Interests in Intermediate Holdings and the issuance of new Membership Interests in Reorganized Intermediate Holdings to the ERG Plan Trust, (ii) the re-vesting of Membership Interests in the Other Debtors in the Reorganized Debtor that held such Membership Interests immediately prior to the Effective Date and (iii) the re-vesting of the Assets of each Debtor's Estate in each such Debtor, under Section 7.4 of the Plan;

e.       the formation of the ERG Plan Trust under Section 7.5 of the Plan;

f.       the formation of the ERG Exempt Assets Trust under Section 7.6 of the Plan;

g.       the authorization for the Debtors and the Reorganized Debtors to take or cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan, under Section 7.7 of the Plan;

- 9 -

h.      the provision for the management of the Reorganized Debtors in accordance with the Reorganized Debtor Operating Agreements, under Section 7.8 of the Plan;

i.      the entry by the Reorganized Debtors into the Exit Facility, under Section 7.9 of the Plan;

j.      the Confirmation Order to constitute an objection by the Prepetition Agent to the Indemnification Claims and the termination of certain interests, under Section 7.10 of the Plan and the termination of all Liens, restrictions, covenants or interests related to a Claim for Indemnification;

k.      the preservation of the ability of the Exempt Assets Trust to investigate and prosecute the Transferred Causes of Action, under Section 7.11 of the Plan;

l.      the vesting in the Reorganized Debtors of the Causes of Action of the Debtors and their Estates, except for the Transferred Causes of Action, the Released Causes of Action, and as otherwise specifically provided in the Plan or in a Final Order of the Bankruptcy Court, under Section 7.12 of the Plan;

m.      the vesting in the Exempt Assets Trust of the Transferred Causes of Action under Sections 7.6 and 7.11 of the Plan;

n.      the Reorganized Debtors to obtain Cash necessary for the Reorganized Debtors, the ERG Plan Trustee, and the Exempt Assets Trustee to make Plan Distributions in their respective capacities as Disbursing Agent, under Section 7.13 of the Plan;

o.      the preservation of the rights of holders of royalty interests in the production of the Assets, except with respect to the cancellation of the ERG Interests Royalty Interest, under Section 7.14 of the Plan;

p.      the authorization for the applicable Debtors or Reorganized Debtors to enter into the Restructuring Transactions as the Debtors or the Reorganized Debtors determine to be necessary or appropriate, under Section 7.15 of the Plan;

q.      the (i) reinstatement of directors and officers or similar liability and fiduciary (including ERISA) insurance or tail policies and (ii) assumption of the obligations of each Debtor or Reorganized Debtor to indemnify any person who is serving or has served as one of its managers, officers or employees as of the Petition Date on account of such service, except that neither the Debtors nor the Reorganized Debtors shall be liable for or assume any obligation to indemnify Scott Y. Wood, under Section 7.16 of the Plan;

r.      the reinstatement (or replacement by a like policy) of each of the Debtors' insurance policies in existence immediately prior to the Effective Date and, to the extent applicable, the deemed assumption of such insurance policies by the applicable Reorganized Debtor pursuant to section 365 of the Bankruptcy Code, under Section 7.17 of the Plan;

s.      the reinstatement and continuance of all bonds and bonding obligations of U.S. Specialty Insurance Company relating to the Debtors and in existence immediately prior to the Effective Date, under Section 7.18 of the Plan; and

t.      the preservation of the rights of the Prepetition Agent and the Prepetition Lenders under applicable law to enforce their respective rights under, in connection with or related to the Prepetition Loan Documents against non-Debtor parties, under Section 7.19 of the Plan.

**4.      Section 1123(a)(6) — Prohibition Against the Issuance of Nonvoting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

In accordance with section 1123(a)(6) of the Bankruptcy Code, the prohibition against the issuance of nonvoting equity securities, to the extent required under section 1123(a) of

the Bankruptcy Code, is stated in the amended form of the Reorganized Debtor Operating Agreements filed at Docket No. 621.

**5.      Section 1123(a)(7) — Selection of Directors and Officers in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy.**

In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan and the Plan Supplement, including the Reorganized Debtor Operating Agreements, the ERG Plan Trust Declaration, and the Exempt Assets Trust Declaration, regarding the manner of selection of (i) officers and members of the Reorganized Debtors, (ii) the ERG Plan Trustee, (iii) the Exempt Assets Trustee, and (iv) members of the Exempt Assets Trust Oversight Committees are consistent with the interests of creditors and equity security holders and with public policy.

**6.      Section 1123(a)(8)— Payment of Earnings From Personal Services or Other Income of a Debtor As Necessary for the Execution of the Plan.**

Section 1123(a)(8) of the Bankruptcy Code is not applicable to the Debtors because the Debtors are not individuals.

**7.      Section 1123(b)(1) — Impairment of Claims and Interests.**

As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides for the impairment of certain classes of Claims and interests, while leaving other Classes unimpaired.  The Plan thus modifies the rights of the holders of certain Claims and interests and leaves the rights of others unaffected.

**8.      Section 1123(b)(2) — Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.**

Pursuant to section 1123(b)(2) of the Bankruptcy Code, Article XII of the Plan provides for the rejection of all prepetition Executory Contracts or Unexpired Leases not (i) previously assumed or rejected by the Debtors; or (ii) assumed in accordance with the assumption procedures described in Article XII of the Plan.

9.     **Section 1123(b)(3) — Retention, Enforcement and Settlement of Claims Held by the Debtors.**

In accordance with 1123(b)(3) of the Bankruptcy Code, (a) Section 7.12 of the Plan and the Plan Supplement provide for the retention and enforcement of certain claims by the Debtors and (b) Sections 7.6 and 7.11 of the Plan and the Plan Supplement provide for the retention and enforcement of certain claims by the Exempt Assets Trustee.

10.     **Section 1123(b)(5) — Modification of the Rights of Holders of Claims.**

Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of each class of Claims and interests.

11.     **Section 1123(b)(6) — Other Provisions Not Inconsistent with Applicable Provisions of the Bankruptcy Code.**

In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, including the provisions of: (a) Article IX of the Plan governing distributions on account of Allowed Claims, (b) Article X of the Plan establishing procedures for resolving Contested Claims and making distributions on account of such Contested Claims once resolved, (c) Article XIV of the Plan regarding the discharge of Claims and injunctions against certain actions, and (d) Article XIII of the Plan regarding retention of jurisdiction by the Bankruptcy Court over certain matters after the Effective Date.

12.     **Section 1123(d) — Cure of Defaults.**

In accordance with section 1123(d) of the Bankruptcy Code, Section 12.2 of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All Cure Claims will be determined in accordance with the underlying agreements and applicable law.

13.    **Section 1129(a)(2) — Compliance with Applicable Provisions of the Bankruptcy Code.**

The Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.   The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Solicitation Order.   Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Order.   The Debtors and each of their respective directors, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

14.    **Section 1129(a)(3) — Proposal of the Plan in Good Faith.**

The Debtors and the Prepetition Agent proposed the Plan in good faith and not by any means forbidden by law.   In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan.   Based on the evidence presented at the Combined Hearing, the Bankruptcy Court finds and concludes that the Plan has been proposed by the Plan Proponents in good faith and in the belief that it will maximize the value of the ultimate recoveries to all creditor groups on a fair and equitable basis.   The Plan is designed to effectuate the objectives and purposes of the Bankruptcy Code by maximizing the recoveries to parties in interest.   Among other things, the Plan, the arm's-length negotiations with, and support of, the Prepetition Agent and the Committee and the acceptance of the Plan by all Classes that submitted a vote provide independent evidence of the Debtors' good faith in proposing the Plan.   (See Voting Declaration Ex. A.).   Without limiting any

of the foregoing, the Court finds that the Prepetition Agent and the Prepetition Lenders, and their respective officers, directors, agents and affiliates, at all times acted in good faith in connection with the negotiation and confirmation of the Plan and that, at no time, did the Prepetition Agent and Prepetition Lenders, or their respective officers, directors, agents and affiliates, control or unduly influence the Debtors in any respect.

15.    **Section 1129(a)(4) — Court Approval of Certain Payments as Reasonable.**

a.    In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, including the Fee Claims, has been or will be made by a Debtor other than payments that have been authorized by order of the Bankruptcy Court.  Section 5.2 of the Plan provides for the payment of Administrative Claims, which are subject to the Bankruptcy Court's approval and the standards of the Bankruptcy Code. (Plan § 5.2.)

b.    In connection with the foregoing, Article XIII of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for the periods ending on or before the Effective Date.  (Plan Art. XIII.)

16.    **Section 1129(a)(5) — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

The Debtors have disclosed the identities of (i) the management of each of the Reorganized Debtors as of the Effective Date, (ii) the ERG Plan Trustee, and (iii) the Exempt Assets Trustee.  The nature of compensation to be provided to any insiders to be retained by the

Reorganized Debtors as of the Effective Date was also disclosed at or prior to the Combined Hearing. The members of management for the Reorganized Debtors as set forth in the Plan Supplement are qualified, and the appointments to, or continuance in, such offices by such management is consistent with the interests of holders of Claims and interests and with public policy. The appointment of the ERG Plan Trustee and Exempt Assets Trustee is consistent with the interests of holders of Claims and interests and with public policy.

17.     **Section 1129(a)(6) — Approval of Rate Changes.**

The Debtors' businesses do not involve the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after Confirmation.

18.     **Section 1129(a)(7) — Best Interests of Holders of Claims and Interests.**

Each holder of an impaired Claim that has not accepted the Plan will on account of such Claim, as demonstrated by the liquidation analyses included as Exhibit IV to the Disclosure Statement, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holders would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. (Roof Declaration ¶ 17.)

19.     **Section 1129(a)(8) — Acceptance of the Plan by Each Impaired Class.**

a.     Pursuant to section 1129(a)(8) of the Bankruptcy Code, all classes except Class 7 have accepted the Plan or are unimpaired under the Plan. Specifically**,** Class 2 (100 percent in number and 100 percent in amount) and Class 5 (59 percent in number and 91 percent in amount) each overwhelmingly voted to accept the Plan. Classes 1, 3, 4, 6 and 8 are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to all Classes of Claims and interests, except with respect Class 7. No holder of a Class 7 interest returned a timely ballot, and therefore Class 7 has not affirmatively accepted the Plan.

b.      Nonetheless, as explained in Section II.D.28 of these Findings and Conclusions, the Plan satisfies the "cramdown" requirements of section 1129(b) of the Bankruptcy Code necessary to obtain Confirmation of the Plan, notwithstanding the lack of affirmative acceptance by Class 7.

20.    **Section 1129(a)(9) — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

a.      The Plan also meets the requirements regarding the payment of Administrative Claims, Priority Claims and Tax Claims, as set forth in section 1129(a)(9) of the Bankruptcy Code.

b.      Section 5.2 of the Plan provides that, subject to certain bar dates and unless otherwise agreed by the holder of an Administrative Claim and the applicable Debtor or Reorganized Debtor, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either:  (a) as soon as practicable after the Effective Date; and (b) if the Administrative Claim is not allowed as of the Effective Date, as soon as practicable after the date on which such Administrative Claim becomes Allowed.   In addition, the Reorganized Debtors shall satisfy Administrative Claims based on ordinary course liabilities pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holder of such Administrative Claims or further approval of the Bankruptcy Court.  Allowed Administrative Claims under or evidenced by the DIP Facility will be paid in full on the Effective Date.

c.      Section 5.3 of the Plan provides that the Debtors will pay Tax Claims on the Effective Date or as soon as practicable after such Claim becomes an Allowed Claim in an amount equal to the Allowed Claim Section 4.1(a) of the Plan provides that holders of Priority

Claims will receive Cash equal to the amount of such Allowed Claim on the Effective Date. Accordingly, the Plan satisfies the requirements set forth in section 1129(a)(9) of the Bankruptcy Code with respect to the payment of Priority Claims and Tax Claims.

**21. Section 1129(a)(10) — Acceptance By at Least One Impaired, Non-Insider Class.**

As indicated in the Voting Declaration and as reflected in the record of the Combined Hearing, Class 2 and Class 5 are impaired under the Plan and have each voted to accept the Plan, determined without including the acceptance by any insider, with respect to all Debtors under the Plan. (Voting Declaration Ex. A.)

**22. Section 1129(a)(11) — Feasibility of the Plan.**

The Plan is feasible, within the meaning of section 1129(a)(11) of the Bankruptcy Code. The Debtors' projections of the capitalization and financial information of the Reorganized Debtors as of the Effective Date are reasonable and made in good faith and Confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtors (except to the extent contemplated by the Plan). The Debtors have demonstrated a reasonable assurance of the Plan's prospects for success. (See Plato Declaration ¶¶ 6-15.)

**23. Section 1129(a)(12) — Payment of Bankruptcy Fees.**

Section 15.1 of the Plan provides that on the Effective Date, Administrative Claims for fees payable pursuant to section 1930 of title 28 of the United States Code will be paid in Cash equal to the amount of such Administrative Claim by the Reorganized Debtors. After the Effective Date and until these Chapter 11 Cases are closed, the Plan provides for the payment of all such fees in accordance with section 1930 of title 28 of the United States Code and section 350(a) of the Bankruptcy Code. See Plan § 15.1.

24.     **Section 1129(a)(13) — Retiree Benefits.**

The Debtors and Reorganized Debtors have no retiree obligations pursuant to

Section 1129(a)(13) of the Bankruptcy Code, and therefore this requirement is not applicable.

25.     **Section 1129(a)(14) — Domestic Support Obligations.**

The Debtors are not obligated to pay any domestic support obligations.

Accordingly, the requirements of section 1129(a)(14) of the Bankruptcy Code are not applicable.

26.     **Section 1129(a)(15) — Payment of Unsecured Claims In Case of Individual Debtor.**

The Debtors are not individuals.   Accordingly, the requirements of

section 1129(a)(15) of the Bankruptcy Code are not applicable.

27.     **Section 1129(a)(16) — Restrictions on Transfers of Property of Nonprofit Entities.**

The Debtors are not a corporation or trust that is not a moneyed, business, or

commercial corporation or trust.  Accordingly, the Plan complies with section 1129(a)(16) of the

Bankruptcy Code.

28.     **Section 1129(b) — Confirmation of the Plan Over the Nonacceptance of Impaired Classes.**

a.      Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan

may be confirmed notwithstanding that Class 7 is impaired and has not affirmatively accepted the

Plan.  The Plan's treatment of Class 7 interests meets the "fair and equitable" requirement because

Class 7 is the most junior class and no class of Claims or interests junior to Class 7 will receive or

retain any value under the Plan.

b.      The Plan does not unfairly discriminate against the holders of

interests in Class 7, the sole class that has not affirmatively accepted the Plan.  In particular, the

Plan does not unfairly discriminate, because the interests classified in Class 7 are legally distinct

from, and junior to, other Claims and interests. As a result, there exists no discrimination with respect to Class 7. Therefore, the requirements of section 1129(b) are satisfied with respect to Class 7.

### 29. Section 1129(d) — Purpose of Plan.

The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act, and there has been no request filed by any governmental unit to the contrary.

### F. COMPREHENSIVE SETTLEMENT OF CLAIMS AND CONTROVERSIES

Based upon the representations and arguments of counsel for the Debtors and all other testimony either actually given or proffered at the Combined Hearing and the full record of these Chapter 11 Cases, including the Approved Settlement Transaction and Support Agreement, the Bankruptcy Court finds that, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or interest may have with respect to any Claim or interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or interest.

In particular, the releases, injunctions, exculpations and discharges set forth in Sections 7.2, 14.3, 14.6, and 14.7 of the Plan (collectively, the "Release and Exculpation Provisions") are integral conditions of the settlement that was negotiated by the Prepetition Agent, the Prepetition Lenders, the Committee, and the Debtors and is embodied in the Plan. The Release and Exculpation Provisions (a) will confer substantial benefits on the Debtors' Estates, (b) are fair to holders of Claims, (c) are necessary to the proposed reorganization and (d) are in the best interests of the Debtors, their Estates, and all parties in interest.

G.      **APPROVAL OF EXIT FACILITY**

The Exit Facility, including all documents relating thereto, is essential to the Plan, in the best interests of the Debtors' estates and was negotiated in good faith and at arm's length. The Exit Facility establishes only a borrower-lender relationship between the Exit Facility Lenders and the Reorganized Debtors and does not result in any joint venture or partnership between the Exit Facility Agent and Exit Facility Lenders on the one hand, and the Reorganized Debtors on the other. None of the Exit Facility Agent, the Exit Facility Lender, the Prepetition Agent or the Prepetition Lenders, or their respective officers, directors, agents and affiliates, is in control of the Reorganized Debtors, the ERG Plan Trustee or the ERG Plan Trust.

H.      **CERTAIN ADDITIONAL FINDINGS**

The Indemnification Obligations identified in the Response constitute Claims within the meaning of the Bankruptcy Code. Pursuant to Section 7.10(b) of the Plan, the Debtors' assets shall revest in the Reorganized Debtors free and clear of such Indemnification Obligations pursuant to the Plan, and sections 1141(c) and 1141(d) of the Bankruptcy Code.

I.      **SATISFACTION OF CONDITIONS TO CONFIRMATION**

Each of the conditions precedent to Confirmation under Section 11.1 of the Plan have been satisfied or duly waived by the Debtors with the consent of the Prepetition Agent and the Exit Facility Agent.

III.    **CONCLUSIONS OF LAW**

A.      **JURISDICTION AND VENUE**

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of a Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Each of the Debtors was and is qualified to be a debtor under section 109 of the Bankruptcy Code.

Venue of these Chapter 11 Cases in the United States District Court for the Northern District of Texas was proper as of the Petition Date, pursuant to 28 U.S.C. § 1408, and continues to be proper.

### B. THE PLAN MODIFICATIONS AND PLAN SUPPLEMENT

The Plan Modifications and the Plan Supplement do not materially or adversely affect or change the treatment of any Claim against or interest in any Debtor. Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications and the Plan Supplement do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims against or interests in the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan as filed with the Bankruptcy Court. Disclosure of the Plan Supplement as part of the filings made by the Debtors (a) on September 18, 2015 and October 3, 2015 and (b) disclosure of the Plan Modifications at (i) Docket No. 614 and as set forth in the Plan attached as Exhibit A to the Confirmation Order and (ii) on the record at the Combined Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases. Accordingly, the Plan (as supplemented and modified) is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to the Plan Supplement and Plan Modifications shall be binding and shall be deemed to be cast with respect to the Plan as supplemented and modified.

### C. EXEMPTIONS FROM TAXATION

Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp, real estate transfer, mortgage recording, sales or use, or other similar tax: (1) the issuance, transfer or exchange of notes or equity securities under the Plan; (2) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (3) the making or assignment of any lease or sublease; (4) any Restructuring Transaction; and (5) the making or delivery of any

deed or other instrument of transfer, sale or assignment under, in furtherance of or in connection with the Plan, including, but not limited to, any merger agreements, agreements or other documents of transfer, conversion, consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any Restructuring Transaction pursuant to the Plan.

### D. APPROVAL OF THE RELEASE AND EXCULPATION PROVISIONS IN THE PLAN

The release and exculpation provisions set forth in Article XIV of the Plan (as approved in the Confirmation Order) including without limitation the releases of non-debtor parties pursuant to (i) the general releases by the Debtors in Section 14.5 of the Plan and (ii) the general releases by holders of Claims in Section 14.6 of the Plan, individually and collectively, are (i) appropriate under applicable law, (ii) integral elements of the Plan and inextricably bound with the other provisions of the Plan, (iii) with respect to the releases, approved by an overwhelming majority of holders of Claims against the Debtors that voted on the Plan, and (iv) given and made after notice and opportunity for hearing.

Without limiting the generality of the foregoing, the release provisions in section 14.6 of the Plan are appropriate, as such release provisions are consensual in nature and arise from an affirmative vote by holders of Claims or interests in support of the Plan. The ballots for such voting contained sufficient notice that a vote supporting the Plan would constitute acceptance of the release provisions in the Plan.

Without limiting the generality of the foregoing, the exculpation provisions in section 14.3 of the Plan, as approved in the Confirmation Order, are appropriate. The exculpation provisions of section 14.3 of the Plan are essential elements of the intricate and delicate compromise that was negotiated by the Debtors, the Committee, the Prepetition Agent, and the

Prepetition Lenders. This compromise has unlocked considerable value for the benefit of all of the Debtors' stakeholders. Indeed, without the additional funding contributed by the Prepetition Lenders, priority, unsecured, and secured claims held by parties other than the Prepetition Lenders would receive no recovery.

**E.      COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE**

The Debtors have the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden. As set forth in Section II.D above, the Plan complies in all respects with the applicable requirements of section 1129 of the Bankruptcy Code.

**F.      GOOD      FAITH      NEGOTIATION,      IMPLEMENTATION      AND CONSUMMATION**

The Debtors, the Committee, and the Prepetition Agent (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys), as applicable, participated in good faith in negotiating, at arm's length, the Plan and all contracts, instruments, releases, agreements and documents related to or necessary to implement, effectuate and consummate the Plan, including (a) all contracts, instruments, agreements and documents to be executed and delivered in connection with the Restructuring Transactions, (b) the Reorganized Debtor Operating Agreements, (c) the Approved Settlement and Transaction Support Agreement, and (d) the Exit Facility, and all other contracts, instruments, agreements and documents to be executed and delivered by any Debtor or Reorganized Debtor in connection therewith. In so determining, the Bankruptcy Court has examined, among other things, the totality of circumstances surrounding the filing of these Chapter 11 Cases, the record of this proceeding and the Plan and all related pleadings, exhibits, statements, and comments regarding Confirmation.

G.    **EXECUTORY CONTRACT AND UNEXPIRED LEASES**

The Debtors have exercised reasonable business judgment in determining whether to reject or assume each of their executory contracts and unexpired leases under the terms of the Plan and the Confirmation Order.  Each of the executory contracts and unexpired leases to be rejected or assumed is deemed to be an executory contract or an unexpired lease, as applicable.

H.    **1111(b) ELECTION**

For purposes of the Plan only, the Prepetition Agent made a valid election for the application of section 1111(b)(2) of the Bankruptcy Code with respect to the treatment of the Class 2 – Prepetition Facility Claims.

I.    **OBJECTIONS TO THE PLAN**

The Bankruptcy Court concludes that all objections to the Plan not otherwise withdrawn at or prior to the Combined Hearing should be overruled for the reasons the Bankruptcy Court articulated on the record at the Combined Hearing and/or set forth in the Debtors' Memorandum of Law in support of Confirmation of the Plan.

###END OF FINDINGS AND CONCLUSIONS###