Charles R. Gibbs (Texas No. 07846300)
Eric C. Seitz (Texas No. 24067863)
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Attorneys for Scott Y. Wood*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 15-31858-hdh-11** |
| | § | |
| **ERG INTERMEDIATE** | § | **JOINTLY ADMINISTERED** |
| **HOLDINGS, LLC**, *et al.* | § | |
| | § | **CHAPTER 11** |
| **REORGANIZED DEBTORS.**[1] | § | |

### REPLY OF SCOTT Y. WOOD TO OBJECTION TO THE
### TRUSTEE'S SETTLEMENT AGREEMENT WITH SCOTT WOOD

Scott Y. Wood ("Wood"), by and through his undersigned counsel, submits this *Reply* (the

"Reply") *of Scott Y. Wood to Objection to the Trustee's Settlement Agreement with Scott Wood*

(the "Objection")[2] and respectfully states as follows:

### PRELIMINARY STATEMENT

Royalty Clearinghouse, LTD. ("RCH"), a party unrelated to these bankruptcy

proceedings, has filed the Objection attempting to prevent the approval of a settlement that will

realize over $10 million in recoveries to the Trust Beneficiaries (of which RCH is not one).

---

[1] The Reorganized Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (3522); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (7538); and ERG Operating Company, LLC (7946). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, Texas 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, California 93309.

[2] Capitalized terms not defined herein shall have the meanings given to them in the Wood Settlement Agreement or the Objection, as applicable.

Under the guise of objecting to the Wood Settlement Agreement, RCH is doing nothing more than seizing an opportunity to publicly air its grievances against Wood before this Court (notwithstanding the fact that these issues are the subject of a RCH Lawsuit pending in the Western District of Texas) and improperly attempting to conflate the two proceedings. The Court should not be persuaded by this charade, and the Objection should be overruled for multiple reasons. As an initial matter, RCH, which is not a beneficiary of the Exempt Assets Trust, does not have standing to bring the Objection. In addition, there is no evidence that RCH's allegations in the Objection have merit. Finally, by asking the Court to deny the Motion in order to prevent further alleged harm from befalling it, RCH is using the Objection to seek improper affirmative relief. For these reasons, the Objection should be overruled and the Wood Settlement Agreement approved.

## **BACKGROUND**

1.      The Exempt Assets Trust was established by the *Debtors' First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 in Respect of ERG Intermediate Holdings and its Affiliated Debtors* [Docket No. 518] (the "Plan"). The Exempt Assets Trust was established for the benefit of holders of Allowed Convenience Claims and Allowed Unsecured Claims under the Plan (the "Trust Beneficiaries").

2.      The Plan was confirmed on October 30, 2015.

3.      On April 18, 2017, the Trustee of the Exempt Assets Trust filed his *Motion of the Exempt Assets Trustee, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Order Approving Settlement Agreement with Scott Wood* [Docket No. 891] (the "Motion").

4.      By the Motion, the Trustee seeks Court approval of a settlement agreement with Wood (the "Wood Settlement Agreement") with respect to the Wood Litigation.

5.      On May 22, 2017, RCH filed the Objection [Docket No. 899].

2

## **REPLY**

*A.      RCH does not have standing to object to the Wood Settlement Agreement.*

6.      Bankruptcy Code section 1109(b) governs standing in bankruptcy cases, and states that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).  Here, RCH objects to a settlement of claims by the Exempt Assets Trust.  Pursuant to the Exempt Assets Trust Declaration (the "Trust Declaration"),[3] the Exempt Assets Trust "shall be established pursuant to this Declaration for the purposes of (a) administering and monetizing the Exempt Assets Trust Property, (b) resolving all Convenience Claims and Unsecured Claims, and (c) making all Plan Distributions to *holders of Allowed Convenience Claims and Allowed Unsecured Claims provided for under the Plan*."  *See* Trust Declaration, at 1 (emphasis added).  In addition, "the Exempt Assets Trust is created for the purpose of liquidating the Exempt Assets Trust Property *for the benefit of the holders of Allowed Class 4 Convenience Claims and Allowed Class 5 Unsecured Claims . . . .*"  *Id.* (emphasis added).

7.      RCH was not a creditor of the Debtors, and does not hold a Class 4 Convenience Claim or Class 5 Unsecured Claim against the Debtors.  In other words, RCH is not a beneficiary of the Exempt Assets Trust and holds no interest in the Exempt Assets Trust.  To state that RCH is a party in interest in any fashion strains credulity, and RCH does not have standing to object to the proposed actions of the Trustee.  Consequently, it should not be permitted to block the Court's approval of the Wood Settlement Agreement, an agreement that, as discussed below, may result in a recovery of nearly $11 million on behalf of the Trust Beneficiaries.

---

[3] Relevant portions of the Trust Declaration are attached hereto as Exhibit A.

3

**B.      There is no evidence that the Settlement contains a fraudulent transfer.**

8.      RCH attempts to sidestep its standing deficiency by suggesting that a portion of the funds to be paid by Wood with respect to the Wood Settlement Agreement are the same funds that Wood received from RCH *more than three years ago* from the sale of certain royalty interests to RCH by Wood (the "RCH Transaction"), and which are the subject of the RCH Lawsuit.  Crucially however, RCH's allegations in the RCH Lawsuit have not been proven, nor has a judgment been entered.[4]  Consequently, even if the funds in question had been segregated by Wood over the past three years, and were readily identifiable and ascertainable (which they are not) such that they could be properly traced, there is absolutely no evidence before this Court that the funds were obtained fraudulently to begin with such that RCH would have a legal interest in such funds. Similarly, even if RCH did have a cognizable legal interest in the funds (which it does not), there is absolutely no evidence before this Court that the same funds obtained by Wood in the RCH Transaction are being used to fund his obligations under the settlement.  RCH admits as much in the Objection, stating that "that number [the $2 million in cash fronted by Wood pursuant to the Wood Settlement Agreement compared to the "missing" $2.15 million at issue in the RCH Litigation] is, at best, curious and requires investigation." Objection at ¶ 7.

9.      In either event, RCH does not provide any – much less sufficient – proof that it has a legal interest in the Wood Settlement Agreement or the transaction contemplated therein. To suggest that the Wood Settlement Agreement should not be approved because an "investigation may prove" something is utterly insufficient to confer standing here.  Furthermore,

---

[4] In fact, discovery is currently stayed in the RCH Lawsuit due to pending motions to dismiss the lawsuit in its entirety.  *See* Order, *Royalty Clearinghouse, Ltd. v. CTS Properties, Ltd, et al.*, No. 1:16-cv-01342-LY (W. D. Tex. Feb. 27, 2017) [Docket No. 23] (the "Discovery Order").  A true and correct copy of the Discovery Order is attached hereto as Exhibit B.

this Court's analysis of whether the Wood Settlement Agreement is fair and equitable and in the

best interest of the Trust Beneficiaries (*see In re Cajun Elec. Power Coop, Inc.*, 119 F.3d 349,

355 (5th Cir. 1997; *In re Mirant*, 348 B.R. 725, 738 (Bankr. N.D. Tex. 2006)) should be based on

facts, not accusations or conjecture. And the <u>facts</u> support that it is clearly in the best interest of

the Trust Beneficiaries that the Wood Settlement Agreement be approved. As stated in the

Motion, the Wood Settlement Agreement provides an assured return of $10 million to the Trust

Beneficiaries and provides for potential future recoveries resulting from the Nabors Litigation.[5]

It also eliminates the significant costs that necessarily would be borne by the Trust to continue to

prosecute the Wood Litigation. *See* Motion, ¶¶ 31-37. In short, it replaces an uncertain, specious

and expensive cause of action owned by the Trust to a guaranteed liquidated recovery that will

inure the benefit of the Trust Beneficiaries.

10.    RCH continues its parade of unfounded accusations by suggesting that the

guaranty provided by CTS Management, LLC ("<u>CTS</u>") as part of the Wood Settlement

Agreement is itself a fraudulent transfer because no consideration is provided to CTS.

Objection, ¶¶ 8-10. This argument, too, is unfounded. Under Texas law, a transfer made without

reasonably equivalent consideration is fraudulent only if the party making the transfer held assets

unreasonably small in relation to the transaction or intended to incur, or reasonably should have

believed it would incur, debts beyond its ability to repay, or was insolvent at the time of the

transaction or became insolvent as a result of the transaction. *See* TEX. BUS. & COMM. CODE

§§24.005(a)(2); 24.0006(a) (2015).

---

[5] The "Nabors Litigation," as defined in the Wood Settlement Agreement, includes claims held by Wood against Parex Resources, Inc., Ramshorn International Ltd., Parex Resources, Inc., Parex Resources (Bermuda), Ltd., Parex Resources (Colombia), Ltd., and RBC Dominion Securities, Inc. (collectively, the "<u>Parex Entities</u>"). On May 26, 2017, the Trustee filed his *Motion of the Exempt Assets Trustee, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Order Approving Settlement Agreement with [the Parex Entities]* [Docket No. 900] (the "<u>Parex Settlement Agreement</u>"). Based on the distribution waterfall regarding the Contingent Recovery in the Wood Settlement Agreement, combined with the proposed settlement of $15 million with the Parex Entities pursuant to the Parex Settlement Agreement, the Trust Beneficiaries will realize another $850,000 in liquidated recoveries.

11.     Here, even if CTS did not receive reasonably equivalent value in exchange for its guarantee (and there is no evidence that it did not), there is absolutely no evidence that CTS is insolvent or that the guarantee itself renders CTS with unreasonably small capital or causes it to be become insolvent.  In other words, there is no basis for concluding that the guaranty is a fraudulent transfer under Texas law.

12.     The accusations and assumptions contained in the Objection regarding the merits of the Motion and deficiencies of the Wood Settlement Agreement are not grounded in fact, and for this reason the Objection should be overruled.

### C.     *The Objection seeks improper affirmative relief.*

13.     At its core, in the Objection RCH asks the Court to deny the Motion not because it is unfair, inequitable or against the interest of the Trust Beneficiaries, but in order to stop the transfer of funds it believes belong to RCH and that were fraudulently obtained by Wood as a result of the RCH Transaction.   In other words, stripped of its veneer, the Objection seeks injunctive relief and therefore is over-reaching.

14.     As an initial matter, any effort to obtain an injunction in a bankruptcy case must be brought by an adversary proceeding.  Fed. R. Bankr. P. 7001(7).  A six page objection hardly qualifies.

15.     Procedural deficiencies notwithstanding, RCH has not met its burden to show that injunctive relief is warranted in any event.   Under Fifth Circuit law, in order to obtain a preliminary injunction, a movant is required to demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the party against whom the injunction is sought; and (4) that the injunction will not disserve the

public interest. *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Plains Cotton Co-op. Ass'n v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1259 (5th Cir. 1987).

16.     Here, RCH has not met its burden.   *First*, RCH has provided no information regarding the probability of the success of the RCH Lawsuit.   *Second*, RCH has demonstrated no threat of irreparable injury if the Motion is granted.   Indeed, the only harm that RCH identifies in the Objection is that, if the Wood Settlement Agreement is approved, "then RCH will have no choice but to add the Trust as a party to the RCH Lawsuit, seek to clawback money paid by Mr. Wood to the Trust, and seek to avoid the obligations incurred by CTS Management."   Objection, ¶ 11.   The possibility that the RCH Lawsuit would need to be expanded in the future to include the Exempt Assets Trust as a defendant does not constitute irreparable damage on the part of RCH.   Rather, it provides a potential remedy to address RCH's unsubstantiated claims, and therefore makes any speculative harm RCH anticipates it will suffer reparable.

17.     *Third*, there is no threatened injury to RCH if the Wood Settlement Agreement is approved.   As previously stated, RCH is not a Trust Beneficiary, and there is no evidence that RCH's funds are being used as consideration to fund the Wood Settlement Agreement.   Indeed, if the Wood Settlement Agreement is not approved, it is the Trust Beneficiaries, and not RCH, who will be injured.   There will no liquidated recovery on account of the Wood Litigation, and the Exempt Assets Trust (and concomitantly the Trust Beneficiaries) will be left with the expense and uncertainty of continuing to prosecute the Wood Litigation.   *Finally*, allowing RCH, a party with no interest in the Exempt Assets Trust, to prevent the approval of the Wood Settlement Agreement to the detriment of the Trust Beneficiaries is a public disservice.   For all of these

reasons, a preliminary injunction is not warranted under Fifth Circuit law and the Objection should be overruled.

## CONCLUSION

WHEREFORE, Wood prays (a) that the Court overrule the Objection, (b) that the Court approve the Wood Settlement Agreement and (c) for such other and further relief to which Wood may be entitled.

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:   */s/ Charles R. Gibbs*
Charles R. Gibbs (TX #07846300)
Eric C. Seitz (Texas No. 24067863)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Attorneys for Scott Y. Wood*

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on June 7, 2017, a true and correct copy of the above and foregoing was served by (i) electronic notice on all persons requesting notice under the ECF filing system for the Northern District of Texas (ii) electronic mail, and (iii) U.S. Mail, postage paid to the party listed below:

Andrew B. Ryan
Ryan Law Partners, LLP
3811 turtle Creek Boulevard, Suite 780
Dallas, Texas  75219
Email:  andy@ryanlawpartners.com

*/s/ Eric C. Seitz*
Eric C. Seitz

**EXHIBIT A**

**Exempt Assets Trust Declaration**
**(relevant portions)**

## EXEMPT ASSETS TRUST DECLARATION

THIS EXEMPT ASSETS TRUST DECLARATION (the "Exempt Assets Trust Declaration"), dated as of this __ day of October 2015, is made by and among the bankruptcy estates of ERG Intermediate Holdings, LLC, *et al.* (collectively, the "Debtors") and Jason R. Searcy (the "Exempt Assets Trustee"), on the other hand.  This Declaration is executed in connection with the *First Amended Joint Chapter 11 Plan of Reorganization Dated September 18, 2015 in Respect of ERG Intermediate Holdings, LLC and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Plan") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), which provides for the establishment of a liquidating trust (as defined in the Plan, the "Exempt Assets Trust") to resolve, liquidate and realize upon certain of the Debtors' assets, rights, claims, and causes of action, as successor to and representative of the bankruptcy estates of the Debtors. Except as otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan.

## W I T N E S S E T H

WHEREAS, on April 30, 2015, the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court;

WHEREAS, on _____, 2015, the Bankruptcy Court entered an order confirming the Plan;

WHEREAS, the Plan's Effective Date occurred or will occur on or about _____, 2015;

WHEREAS, under the terms of the Plan, the Exempt Assets Trust shall be established pursuant to this Declaration for the purposes of (a) administering and monetizing the Exempt Assets Trust Property, (b) resolving all Convenience Claims and Unsecured Claims, and (c) making all Plan Distributions to holders of Allowed Convenience Claims and Allowed Unsecured Claims provided for under the Plan;

WHEREAS, Jason R. Searcy has agreed to serve as the Exempt Assets Trustee;

WHEREAS, the Exempt Assets Trust is created for the purpose of liquidating the Exempt Assets Trust Property for the benefit of the holders of Allowed Class 4 Convenience Claims and Allowed Class 5 Unsecured Claims, whether such Claims are Allowed prior to, on or after the Effective Date of the Plan (collectively, the "Beneficiaries");

WHEREAS, the Exempt Assets Trustee has agreed to act as the Exempt Assets Trustee under this Declaration and the Plan for the purposes herein provided;

WHEREAS, under the terms of the Plan, the Exempt Assets Trust Property is to be conveyed to the Exempt Assets Trust on the Effective Date, evidenced hereby, for the purpose of liquidating and distributing such property to the Beneficiaries and completing the resolution of disputed Convenience Claims and Unsecured Claims in accordance with the Plan;

WHEREAS, the Exempt Assets Trust is intended to be treated as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d), and as a grantor trust subject to the provisions of Subchapter J, Subpart E of the Tax Code, owned by the Beneficiaries as grantors;

WHEREAS, the Exempt Assets Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Beneficiaries to be treated as grantors of the Exempt Assets Trust and deemed to be owners of the Exempt Assets Trust Property (subject to the rights of creditors of the Exempt Assets Trust), and, consequently, the transfer of the Exempt Assets Trust Property to the Exempt Assets Trust shall be treated as a deemed transfer of such property from the Debtors and the Estates to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the Exempt Assets Trust for federal income tax purposes.

NOW, THEREFOR, pursuant to the Plan and the Confirmation Order, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I.
## PURPOSE OF THE TRUST

1.1     Purpose of the Exempt Assets Trust.

The Exempt Assets Trust shall be established for the sole purpose of liquidating its Exempt Assets Trust Property, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of any trade or business, other than as necessary to liquidate its Exempt Assets Trust Property. The Exempt Assets Trust is hereby established for the purpose of (a) administering and monetizing the Exempt Assets Trust Property, including by the pursuit of the Transferred Causes of Action, (b) except as set forth in the Plan, resolving all Convenience Claims and Unsecured Claims, (c) making all Plan Distributions to holders of Allowed Convenience Claims and Allowed Unsecured Claims provided for under the Plan, and (d) taking such other actions as are reasonably necessary to accomplish these purposes. Accordingly, the Exempt Assets Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the non-Cash Exempt Assets Trust Property, make timely Plan Distributions as provided for herein and in the Plan and not unduly prolong the duration of the Exempt Assets Trust. The liquidation of the Exempt Assets Trust Property may be accomplished, as more specifically provided for herein and in the Plan, (a) through the sale of the Exempt Assets Trust Property (in whole or in combination), including the sale of any claims, rights or Transferred Causes of Action, (b) through the prosecution or settlement of any claims, rights or Transferred Causes of Action, or (c) through abandonment of any Exempt Assets Trust Property that is burdensome to the Exempt Assets Trust or of inconsequential value or benefit to the Exempt Assets Trust; provided that no Exempt Assets Trust Property may be abandoned to the Reorganized Debtors.

ARTICLE II.
ESTABLISHMENT OF THE TRUST

2.1     Transfer of Estate Assets to the Exempt Assets Trust.

Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Exempt Assets Trust Property shall be, and hereby are, automatically vested in the Exempt Assets Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests and such transfer is on behalf of the Beneficiaries (whether such Beneficiaries' Claims are Allowed Claims on or after the Effective Date of the Plan), to establish the Exempt Assets Trust.  To the extent any law or regulation prohibits the transfer of ownership of any of the Estates' Assets from the Debtors to the Exempt Assets Trustee and such law is not superseded by the Bankruptcy Code, the Exempt Assets Trustee's interest shall be a lien upon and security interest in such non- transferable Exempt Assets Trust Property, in trust, nevertheless, for the sole use and purposes set forth in Section 1.1, and this Declaration shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  All of the Debtors' rights, title and interest in any attorney-client privilege and work-product privilege or doctrine that attaches to communications or work-product that are relevant to any Transferred Causes of Action, including but not limited to the Nabors Lawsuit, prosecuted by the Exempt Assets Trust are hereby vested and preserved in the Exempt Assets Trust.  All of the Debtors' rights, title and interest in any attorney-client privilege and work-product privilege or doctrine that attaches to other conduct are hereby vested and preserved in the applicable Reorganized Debtors.  By executing this Declaration, the Exempt Assets Trustee hereby accepts all of such property as the Exempt Assets Trust Property, to be held in trust for the Beneficiaries, subject to the terms of this Declaration and the Plan.

2.2     Title to the Exempt Assets Trust Property.

2.2.1    The transfer of the Exempt Assets Trust Property to the Exempt Assets Trust shall be made by the Debtors for the benefit and on behalf of the Beneficiaries, whether their Claims are allowed prior to, on or after the Effective Date.  In this regard, the Exempt Assets Trust Property will be treated for tax purposes as being transferred (subject to the liabilities indicated herein, whether such Claims are Allowed Claims on or after the Effective Date of the Plan) by the Debtors to the Beneficiaries in exchange for and satisfaction of such Beneficiaries' Claims, and then by such Beneficiaries to the Exempt Assets Trust in exchange for interests (the "Exempt Assets Trust Beneficial Interests") in the Exempt Assets Trust in accordance with the Plan.  Upon the transfer of the Exempt Assets Trust Property, the Exempt Assets Trustee shall succeed to all of the Debtors' rights, title and interest in the Exempt Assets Trust Property free and clear of all liens, claims, encumbrances and other interests but subject to the terms of the Plan, and the Debtors will have no further interest in or with respect to the Exempt Assets Trust Property or this Exempt Assets Trust.

2.2.2    For all federal income tax purposes, all parties, including, without limitation, the Debtors, the Exempt Assets Trustee, the Beneficiaries and the Oversight Committees (as defined below) shall treat the transfer of Exempt Assets Trust Property to the Exempt Assets Trust, as set forth in this Section 2.2 and in accordance with the Plan, as a transfer of the Exempt Assets Trust Property to the Beneficiaries, followed by a transfer of such

assets by such holders to the Exempt Assets Trust, and the Beneficiaries shall be treated as the grantors and owners hereof.

      2.3    <u>Further Instruments and Acts</u>.

      Through and including the Effective Date, the Debtors or the Committee, as appropriate, shall, upon reasonable request of the Exempt Assets Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or appropriate to transfer to the Exempt Assets Trust any portion of the Exempt Assets Trust Property intended to be transferred herein.

      2.4    <u>Valuation of Exempt Assets Trust Property</u>.

      As soon as possible after the Effective Date, the Exempt Assets Trustee shall make a good faith determination of the fair market value of the Exempt Assets Trust Property and apprise the holders of the Exempt Assets Trust Beneficial Interests in writing of that fair market value and of each Beneficiary's proportionate share thereof. The valuation shall be used consistently by all parties and Persons (including, without limitation, the Debtors, the Exempt Assets Trustee, the Beneficiaries and the General Oversight Committee, as such term is defined in Section 7.16 below) for all federal income tax purposes.

      2.5    <u>Appointment of the Exempt Assets Trustee</u>.

      The Exempt Assets Trustee shall be Jason R. Searcy.

      2.6    <u>Identification of Holders of Exempt Assets Trust Beneficial Interests</u>.

      The Exempt Assets Trustee shall keep for such purpose at his principal office a register (the "<u>Trust Interest Register</u>") in which the Exempt Assets Trustee shall provide for the registration of Exempt Assets Trust Beneficial Interests and adjustments of Exempt Assets Trust Beneficial Interests as provided for herein and in the Plan, and which shall include necessary information, including, without limitation, the addresses of holders of Exempt Assets Trust Beneficial Interests. The Exempt Assets Trustee may treat the person in whose name any Exempt Assets Trust Beneficial Interest is registered on such register as the owner thereof for the purposes of receiving Plan Distributions from Exempt Assets Trust Property and for all other reasons.

**THE EXEMPT ASSETS TRUST BENEFICIAL INTERESTS SHALL BE UNCERTIFICATED AND SHALL NOT BE TRANSFERABLE EXCEPT UPON THE DEATH OF THE HOLDER OR BY OPERATION OF LAW.**

ARTICLE III.
AUTHORITY, POWERS, LIMITATIONS AND COMPENSATION

3.1    Powers and Authority of the Exempt Assets Trustee.

The Exempt Assets Trustee shall be the exclusive trustee of the Exempt Assets Trust
Property of the Exempt Assets Trust for purposes of 31 U.S.C. Section 3713(b) and 26 U.S.C.
Section 6012(b)(3). The powers and authority of the Exempt Assets Trustee shall include,
without limitation other than as provided in the Plan or this Declaration, the power to: (i) invest
funds of the Exempt Assets Trust, and withdraw funds of the Exempt Assets Trust, make
distributions, incur obligations for reasonable and necessary expenses in liquidating and
converting any remaining assets of the Exempt Assets Trust Property to Cash, and pay taxes and
other obligations owed by the Exempt Assets Trust from funds held by the Exempt Assets
Trustee in accordance with the Plan; (ii) perform all of the obligations and agreements of the
Exempt Assets Trust and/or of the Exempt Assets Trustee provided for in the Plan and herein;
(iii) hold legal title to any and all rights of the holders of the Exempt Assets Trust Beneficial
Interests in or arising from the Exempt Assets Trust Property, including without limitation, the
right to vote any claim or interest in a case under the Bankruptcy Code and receive any
distribution therein; (iv) protect and enforce the rights to the Exempt Assets Trust Property by
any method deemed appropriate including, without limitation, by judicial proceedings or
pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general
principles of equity; (v) perform the duties, exercise the powers, and assert the rights of a trustee
under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation,
commencing, prosecuting or settling Transferred Causes of Action, enforcing contracts, and
asserting claims, defenses, offsets and privileges; (vi) determine, satisfy, object to and estimate
any and all claims or liabilities created, incurred or assumed by the Exempt Assets Trust; (vii)
pay all expenses and make all other payments relating to the Exempt Assets Trust; (viii)
establish, keep and maintain any reserve for the benefit of disputed Claims (the "Disputed Claim
Reserve"); (ix) account separately in the Disputed Claim Reserve for each disputed Claim until
the Claim is an Allowed Claim or Disallowed Claim; (x) except as otherwise provided in the
Plan, in the discretion of the Exempt Assets Trustee, set off against any Claim (and the payments
or other distributions to be made pursuant to the Plan with respect to such Claims) any
Transferred Cause of Action comprising Exempt Assets Trust Property against the holder of such
Claim, but neither the failure to so set off any Transferred Cause of Action nor the allowance of
any Claim shall constitute a waiver or release by the Exempt Assets Trust or Exempt Assets
Trustee of any Transferred Cause of Action constituting Exempt Assets Trust Property; (xi)
market, negotiate, enter into and perform agreements for the sale or other disposition of the
Exempt Assets Trust Property; (xii) consult with and provide information to the applicable
Oversight Committee at such times and with respect to such issues relating to the conduct of the
Exempt Assets Trust as is appropriate; (xiii) prepare and deliver written statements or notices as
required by law to be delivered to Beneficiaries and the General Oversight Committee; (xiv)
prepare, or have prepared, and file with the appropriate taxing authority on behalf of the Exempt
Assets Trust any and all tax and information returns with respect to the Exempt Assets Trust
(including, without limitation, United States federal, state, local or foreign tax or information
returns required to be filed by the Exempt Assets Trust) and pay taxes properly payable by the
Exempt Assets Trust, if any, and cause all taxes payable by the Exempt Assets Trust, if any, to
be paid exclusively out of the Exempt Assets Trust Property; (xv) maintain and preserve the

originals of any and all instruments and documents pertaining to the Exempt Assets Trust
Property; (xvi) take any of the foregoing actions, and execute any documents relating thereto, in
the Exempt Assets Trustee's own name, on behalf of the Exempt Assets Trust (including but not
limited to all settlement agreements); (xvii) exercise and perform the rights, powers and duties
held by the Estate, including without limitation the authority under section 1123(b)(3) of the
Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and
enforcement of claims and interests of the Estates, including but not limited to the sale of non-
Cash Exempt Assets Trust Property, the prosecution and settlement of the Transferred Causes of
Action, and, except as otherwise set forth in the Plan, the Plan Documents and in any order of the
Bankruptcy Court, the authority to exercise all rights and powers under sections 506(c), 544-551,
1106, 1107 and 1108 of the Bankruptcy Code; (xviii) engage employees and professionals to
assist the Exempt Assets Trustee with respect to his responsibilities, including, but not limited to,
any professionals employed by the Committee or the Debtors; (xix) prosecute, compromise
and/or settle claims and Transferred Causes of Action and objections to Convenience Claims
and, except as set forth in the Plan, Unsecured Claims on behalf of the Exempt Assets Trust;
(xx) liquidate any remaining Assets of the Exempt Assets Trust, and provide for the Plan
Distributions therefrom in accordance with the provisions of the Plan; (xxi) manage the
continued liquidation of the Exempt Assets Trust's assets, and to otherwise administer the
Exempt Assets Trust; (xxii) stand in the shoes of the Debtors (solely with respect to the
Transferred Causes of Action) and assert or waive attorney client privilege and other privileges
between the Debtors and their professionals relevant to the Transferred Causes of Action
(whether such professionals represented the Debtors prior to, or after, the Petition Date), (xxiii)
interpret the Plan in the Exempt Assets Trustee's reasonable discretion; and (xxiv) exercise such
other powers and authority as may be vested in or assumed by the Exempt Assets Trustee by any
Final Order or as may be necessary and proper to carry out the provisions of the Plan or the
Exempt Assets Trust.  Subject to the conditions set forth in Section 7.17 below, the Exempt
Assets Trustee, on behalf of the Exempt Assets Trust, shall have discretion to pursue, not pursue
and/or settle any and all Transferred Causes of Action and objections to Convenience Claims
and, except as set forth in the Plan, Unsecured Claims as the Exempt Assets Trustee determines
is in the best interests of the Exempt Assets Trust, and the Exempt Assets Trustee shall have no
liability whatsoever for the outcome of that decision, except in the event that there is a Final
Order determining that he committed gross negligence or intentional misconduct.  In connection
with the administration of the Exempt Assets Trust, the Exempt Assets Trustee is authorized to
perform any and all acts necessary and desirable to accomplish the purposes of the Plan.  In the
event that the Exempt Assets Trustee cannot take any action, including without limitation the
prosecution of any Transferred Causes of Action or the objection to any Convenience Claim or
Unsecured Claim, by reason of an actual or potential conflict of interest, the General Oversight
Committee acting by majority shall be authorized to take any such action(s) in his place and
stead, including without limitation the retention of professionals (which may include
professionals retained by the Exempt Assets Trustee) for such purpose of taking such actions.

3.2     Retention and Compensation of Professionals.

The Exempt Assets Trustee may, without further order of the Bankruptcy Court, employ
various professionals, including, but not limited to, counsel, consultants, and financial advisors,
as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee

arrangement the Exempt Assets Trustee deems appropriate, including, without limitation, contingency fee arrangements.

Professionals engaged by the Exempt Assets Trustee shall not be required to file applications for compensation in order to receive the compensation provided for herein.

To the extent there are sufficient available funds, the Exempt Assets Trustee shall include in a reserve reasonably sufficient cash (in the judgment of the Exempt Assets Trustee) to cover the reasonably foreseeable fees and expenses of such professionals incurred, or to be incurred, after the Effective Date.

3.3     Limitation on Exempt Assets Trustee's Authority.

3.3.1    The Exempt Assets Trustee shall consult with the General Oversight Committee on a regular basis and inform the General Oversight Committee of actions that the Exempt Assets Trustee is pursuing and is planning to pursue in connection with the discharge of the Exempt Assets Trustee's duties.  The Exempt Assets Trustee will exercise independent business judgment with respect to the administration of the Exempt Assets Trust.

3.3.2    Notwithstanding anything herein to the contrary, the Exempt Assets Trustee shall not and shall not be authorized to engage in any trade or business except to the extent necessary to monetize the Exempt Assets Trust Property, and shall take such actions consistent with the orderly liquidation of the Exempt Assets Trust Property as are required by applicable law, and such actions permitted under Sections 3.1, 3.2, 3.4, 3.5, 3.6, 3.7, 3.8, 4.1 and 4.2 hereof.

3.4     Disposition of Exempt Assets Trust Property.

The Exempt Assets Trustee may take such actions as are necessary and practical to dispose of Exempt Assets Trust Property.

3.5     Books and Records.

The Exempt Assets Trustee shall maintain records and books of account relating to the Exempt Assets Trust Property and otherwise maintained on a basis to facilitate compliance with the tax reporting requirements of the Exempt Assets Trust, and shall, at all reasonable times, permit any Beneficiary (or authorized representative designated by a Beneficiary) and the members of the General Oversight Committee to have access, during normal business hours and upon reasonable notice, to inspect and/or copy (at their own expense payable at the time of copying), the financial records relating to the Exempt Assets Trust Property, provided, however, that any such Person (other than General Oversight Committee members) having access shall have entered into a confidentiality agreement satisfactory in form and substance to the Exempt Assets Trustee.

3.6     Additional Powers.

Except as otherwise set forth in this Declaration or in the Plan, and subject to any applicable United States Treasury regulations promulgated under the Tax Code governing

liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Exempt Assets Trustee may control and exercise authority over the Exempt Assets Trust Property and over the protection, conservation, disposition and abandonment thereof.  No Person dealing with the Exempt Assets Trust shall be obligated to inquire into the authority of the Exempt Assets Trustee in connection with the protection, conservation, disposition or abandonment of the Exempt Assets Trust Property.

3.7     Application of Exempt Assets Trust Property and Other Property.

3.7.1   The Exempt Assets Trustee shall apply all Exempt Assets Trust Property and any proceeds and/or income therefrom, as follows: The Exempt Assets Trustee shall apply all Cash Exempt Assets Trust Property and any proceeds and/or income from non-Cash Exempt Assets Trust Property therefrom in the order and reflecting the priorities set forth below:

First, paid in full satisfaction of any outstanding expenses arising from the administration of the Exempt Assets Trust;

Second, retained as a reasonable reserve for the winding up of the affairs of the Exempt Assets Trust; and

Third, ratably, paid to the holders of the Exempt Assets Trust Beneficial Interests, until such holders have received, in the aggregate and from all sources (including from the ERG Plan Trust) on account of their Unsecured Claims, an amount equal to the amount of all Allowed Unsecured Claims, including interest.

The residual amount of proceeds of the Nabors Lawsuit, if any after satisfaction in full of all Allowed General Unsecured Claims, including interest, shall be remitted by the Exempt Assets Trust to former holders of Membership Interests in Intermediate Holdings.

3.7.2   Subject to the Plan, the Exempt Assets Trustee shall distribute at least annually to holders of Beneficial Interests from the Exempt Assets Trust Property all available net Cash, including as Cash for this purpose, all income from permissible investments described in Sections 4.1 and 4.2, below. All Plan Distributions to Beneficiaries shall be made in accordance with the Plan.  The Exempt Assets Trustee shall withhold from amounts distributable to any Person any and all amounts, determined in the Exempt Assets Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.7.3   Notwithstanding anything to the contrary in Section 3.7.1 or 3.7.2 above, prior to making any Plan Distribution to Beneficiaries, the Exempt Assets Trustee may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and disputed Claims and to maintain the value of the Exempt Assets Trust Property of the Exempt Assets Trust during liquidation, (ii) to pay reasonable estimated administrative expenses (including any taxes imposed or which may be imposed on the Exempt Assets Trust or in respect of the Exempt Assets Trust Property of the Exempt Assets Trust), and (iii) to satisfy other liabilities incurred by the Exempt Assets Trust (or to which the Exempt Assets Trust Property are otherwise subject), all for the term of the Exempt Assets Trust and in accordance with this Declaration or the Plan.

3.7.4    All Plan Distributions made by the Exempt Assets Trustee to Beneficiaries shall be payable to Beneficiaries of record as of the 15th day prior to the date scheduled for the Plan Distribution, unless such day is not a Business Day, then such day shall be the following Business Day. All Plan Distributions shall be in Cash, and the Exempt Assets Trustee shall distribute such Cash by wire, check, or such other method as the Exempt Assets Trustee deems appropriate under the circumstances

3.8    No *De Minimis* Plan Distributions.

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $25.00 will be made by the Exempt Assets Trustee to any entity holding an Allowed Claim unless a request therefor is made in writing to the Exempt Assets Trustee within ninety (90) days of the Effective Date of the Plan. No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section. Allowed Claims that are entitled to a pro rata distribution of less than $25.00 shall continue to accrue until such time as the pro rata distribution on account of such Claim will be $25.00 or more.

3.9    No Plan Distributions With Respect to Disputed Claims.

Notwithstanding any other Plan provision, Plan Distributions will be made on account of a disputed Claim only after, and only to the extent that, the disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Plan Distribution purposes.

3.10    Undeliverable, Unclaimed Non-Negotiated Distributions.

3.10.1    Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the latest date of the following documents: (a) the Schedules; (b) the proof of Claim filed by such holder; (c) any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); and (d) any notice served on the Exempt Assets Trustee by such holder giving details of a change of address. If any Plan Distribution is returned to the Exempt Assets Trustee as undeliverable, no Plan Distributions shall be made to such holder unless the Exempt Assets Trustee is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited and waived its right to receive such Plan Distribution and will be forever barred from receiving that undeliverable Plan Distribution or asserting any Claim against the Exempt Assets Trust, or its property or the Exempt Assets Trustee or the Oversight Committees. The undeliverable Plan Distribution shall automatically revert without restriction to the Exempt Assets Trust for distribution or other application in accordance with the provision of the Plan. Nothing in the Plan requires the Exempt Assets Trust, the Exempt Assets Trustee or the Oversight Committees or any of their members to attempt to locate any entity holding an Allowed Claim and whose Plan Distribution is undeliverable.

3.10.2    If an instrument delivered as a Plan Distribution to a Beneficiary is not negotiated within 120 days after such instrument was sent to the Beneficiary pursuant to Section 3.10 hereof, then the instrument shall be null and void and the Beneficiary shall be deemed to have waived such distribution.

3.11    Reporting Duties.

3.11.1  Federal Income Tax.

The Exempt Assets Trustee shall file returns for the Exempt Assets Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

3.11.2  IRS Form W-9 or Equivalent.

Each Beneficiary shall provide a properly executed Form-W-9 or equivalent, or Form W-8 or W-8BEN or equivalent, as appropriate, in order to receive any Plan Distributions. The Exempt Assets Trustee shall provide three notices to each Beneficiary of its obligation to submit an appropriate IRS Form to the Exempt Assets Trustee. If the Beneficiary does not provide an appropriate IRS Form to the Exempt Assets Trustee within 90 days after the third notice is sent to the Beneficiary, then such Beneficiary's Claim shall be expunged.

3.11.3  Other.

The Exempt Assets Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Exempt Assets Trust that are required by any governmental authority.

3.12    Compliance with Laws.

Any and all distributions of Exempt Assets Trust Property and proceeds of borrowings, if any, shall be in compliance with the Plan and applicable laws, including, but not limited to, applicable federal and state securities laws.

ARTICLE IV.
PERMITTED INVESTMENTS OF TRUST PROPERTY

4.1    Investment of Exempt Assets Trust Property.

All Cash and other property received by the Exempt Assets Trustee shall, until distributed or paid over as herein provided or as provided in the Plan, be held in trust for the benefit of the holders of the Exempt Assets Trust Beneficial Interests, unless and to the extent required by law. The Exempt Assets Trustee shall be under no liability for interest or producing income on any monies received by him hereunder and held for distribution or payment to the holders of Exempt Assets Trust Beneficial Interests, except as such interest shall actually be received by the Exempt Assets Trustee. Investments of any moneys held by the Exempt Assets Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the Exempt Assets Trustee to invest the Exempt Assets Trust Property, the proceeds thereof, or any income earned by the Exempt Assets Trust, shall be limited to the right and power to invest such Exempt Assets Trust Property (pending periodic distributions in accordance with Section 3.7 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills ("Permitted Investments"); and provided further, that the scope of the Permitted

Investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4, may be permitted to invest in, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. Any Permitted Investment made as provided for herein must mature prior to the date of the next scheduled distribution, but in no event shall a Permitted Investment have a maturity date in excess of six (6) months from the date of the acquisition of the Permitted Investment.

4.2     Treatment and Disposition of Permitted Investments.

Any of the foregoing investments purchased with any of the Exempt Assets Trust Property shall be deemed a part of the Exempt Assets Trust Property. Any earned interest, dividends, distributions or gains from Permitted Investments shall be included in the Exempt Assets Trust Property. At such time as it shall be necessary that some or all of the Permitted Investments be redeemed, sold, liquidated or otherwise disposed of in order to raise monies to comply with the provisions of this Declaration or the Plan, the Exempt Assets Trustee shall effect such disposition, in such manner and at such time as the Exempt Assets Trustee, in his discretion, deems reasonable.

ARTICLE V.
DISTRIBUTIONS

5.1     The Source of Plan Distributions.

The sources of all Plan Distributions and payments under the Plan is the Exempt Assets Trust Property (and the proceeds thereof), including the Exempt Assets and Exempt Assets Trust Advance.

5.2     Treatment of Disputed Claims.

Except as provided in the Plan or by order of the Bankruptcy Court, the Exempt Assets Trustee shall have the exclusive right, except with respect to applications for the allowance of compensation and reimbursement of expenses of professionals under sections 330 and 503 of the Bankruptcy Code, to object to the allowance of Convenience Claims and Unsecured Claims filed with the Bankruptcy Court with respect to which the liability is disputed in whole or in part. All objections may be litigated to Final Order; however, the Exempt Assets Trustee may compromise and settle any objection to Convenience Claims and Unsecured Claims without the approval of the Bankruptcy Court. At such time as a disputed Convenience Claim or Unsecured Claim is resolved by Final Order or is settled by the Exempt Assets Trustee, and is Allowed, the holder thereof will receive, on the next distribution date, the Plan Distributions to which such holder is then entitled under the Plan.

5.3     Distribution of Property Under the Plan.

    5.3.1   Manner of Cash Payments.

Cash payments to domestic entities holding Allowed Claims shall be denominated in U.S. dollars and shall be made by checks drawn on a domestic bank selected by the Exempt Assets Trustee or, at the Exempt Assets Trustee's option, by wire transfer or other commercially reasonable means from a domestic bank.  Cash payments to foreign entities holding Allowed Claims may be paid, at the Exempt Assets Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

    5.3.2   Setoff and Recoupment.

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE EXEMPT ASSETS TRUSTEE, ON BEHALF OF THE EXEMPT ASSETS TRUST, MAY SET OFF, RECOUP, OR WITHHOLD AGAINST THE PLAN DISTRIBUTIONS TO BE MADE ON ACCOUNT OF ANY ALLOWED CLAIM, INCLUDING ANY PLAN DISTRIBUTIONS TO ANY OFFICER OR DIRECTOR ANY CLAIMS THAT THE DEBTORS OR THE ESTATES MAY HAVE AGAINST THE ENTITY HOLDING THE ALLOWED CLAIM.  THE EXEMPT ASSETS TRUST AND THE EXEMPT ASSETS TRUSTEE SHALL NOT WAIVE OR RELEASE ANY CLAIM AGAINST THOSE ENTITIES BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM AGAINST THE DEBTORS OR THE EXEMPT ASSETS TRUST; OR BY MAKING A PLAN DISTRIBUTION ON ACCOUNT OF AN ALLOWED CLAIM.**

ARTICLE VI.
DISPUTED RESERVE

6.1     Disputed Reserves.

On the first date that Plan Distributions are made (the "Initial Distribution Date"), and after making all Plan Distributions required to be made under the Plan, a separate reserve (the "Disputed Reserve") shall be established for the payment of disputed Claims that become Allowed after the Effective Date, which reserve is held in trust by the Exempt Assets Trustee for the benefit of the holders of the beneficial interest in the Exempt Assets Trust.

6.2     Funding of Disputed Reserve.

The Exempt Assets Trust shall reserve in Cash, or other property (including proportionate shares of the Exempt Assets Trust Property) for each disputed Claim, the pro rata amount of the Exempt Assets Trust Property with respect to the full asserted amount of each disputed Claim.

6.3     Taxation of the Disputed Reserve.

The Exempt Assets Trustee shall elect to treat the Disputed Reserve as a disputed ownership fund under Treasury Regulation § 1.468B-9 which is taxable as a corporation, and

shall pay, or cause to be paid, out of the funds held in the Disputed Reserve any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the Disputed Reserve. The Exempt Assets Trustee shall file, or cause to be filed, any tax or information return related to a Disputed Reserve that is required by any federal, state, or local taxing authority.

6.4     Distributions of Disputed Reserve.

Subject to Section 6.3 hereof, amounts in each Disputed Reserve, net of taxes payable pursuant to Section 6.3 hereof shall be distributed as follows: at such time as a disputed Claim in the Class to which the Disputed Reserve relates becomes an Allowed Claim, the holder of such disputed Claim shall receive a distribution equal to the product of (x) the amount in the Disputed Reserve and (y) a fraction whose numerator is such holder's Allowed Claim and whose denominator is the aggregate of all disputed Claims. At such time as a disputed Claim becomes a Disallowed Claim, the amount that would have been distributed to the holder of such disputed Claim in accordance with the preceding sentence had such disputed Claim become an Allowed Claim shall be removed from the Disputed Reserve and shall be included in the Exempt Assets Trust Property attributable to Beneficiaries that are holders of Allowed Claims in proportion to their Beneficial Interests in the Exempt Assets Trust.

6.5     Termination of Disputed Reserve.

The Disputed Reserve shall be closed and extinguished by the Exempt Assets Trust when all disputed Claims have been resolved and the assets in the Disputed Reserve have been distributed or transferred to the Exempt Assets Trust for the benefit of holders of Allowed Claims.

ARTICLE VII.
THE LIQUIDATING TRUSTEE, GENERAL OVERSIGHT COMMITTEE AND NABORS
OVERSIGHT COMMITTEE

7.1     Generally.

The Exempt Assets Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Declaration and not otherwise, except that the Exempt Assets Trustee may deal with the Exempt Assets Trust Property for his or her own account as permitted by Section 3.1.

7.2     Responsibilities of the Exempt Assets Trustee.

The Exempt Assets Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Exempt Assets Trust Property, make timely Plan Distributions and not unduly prolong the duration of the Exempt Assets Trust. In so doing, the Exempt Assets Trustee will exercise his reasonable business judgment in liquidating the Exempt Assets Trust Property. The liquidation of the Exempt Assets Trust Property may be accomplished through the sale of Exempt Assets Trust Property (in whole or in combination), including the sale of any of the Exempt Assets Trust's interest in any Transferred Causes of Action or through the prosecution or settlement of any or all Transferred Causes of Action, or otherwise. In connection therewith, the

Exempt Assets Trustee will have the power to prosecute for the benefit of the Exempt Assets Trust all claims, rights and Transferred Causes of Action transferred to the Exempt Assets Trust, whether such suits are brought in the name of the Exempt Assets Trust, or otherwise.  Any and all proceeds generated from such Exempt Assets Trust Property shall be the property of the holders of the Exempt Assets Trust Beneficial Interests held by the Exempt Assets Trust.  Except as expressly set forth herein or in the Plan, the Exempt Assets Trustee shall have absolute discretion to pursue or not to pursue any and all Transferred Causes of Action, as it determines are in the best interests of the holders of the Exempt Assets Trust Beneficial Interests and consistent with the purposes of the Exempt Assets Trust, and shall have no liability for the outcome of his decision.  The Exempt Assets Trustee may incur any reasonable and necessary expenses in liquidating the Exempt Assets Trust Property.

     7.3    <u>Exempt Assets Trustee Compensation.</u>

       7.3.1   <u>Exempt Assets Trustee Fees.</u>

In lieu of any commission or fees which may be fixed by applicable law for trustees or fiduciaries (and which are hereby waived by the Exempt Assets Trustee), the Exempt Assets Trustee shall receive compensation as disclosed to the Bankruptcy Court in the Plan Supplement. Such compensation shall be paid from the Exempt Assets Trust Property.  In addition, the Exempt Assets Trustee shall be entitled to reimbursement from the Exempt Assets Trust Property of all reasonable expenses and costs to administer the Exempt Assets Trust, distribute to the Beneficiaries the available Cash, litigate any Transferred Causes of Actions or take other actions contemplated herein.

       7.3.2   <u>Exempt Assets Trustee and Professional Compensation.</u>

The Exempt Assets Trustee and any and all professionals retained by the Exempt Assets Trustee or the Exempt Assets Trust retained after the Effective Date will be paid for their services and reimbursed for their expenses without further order of the Bankruptcy Court.

     7.4    <u>Liability of the Exempt Assets Trustee.</u>

The Exempt Assets Trustee shall not be personally liable for any claim asserted against the Exempt Assets Trust or the Exempt Assets Trustee, except as set forth below. Notwithstanding anything to the contrary set forth herein, no provision of this Declaration shall be construed to relieve the Exempt Assets Trustee from liability for his own gross negligence, fraud or willful misconduct, except that:

         (i)    the Exempt Assets Trustee shall be liable only for the performance of such duties and obligations as are specifically set forth in this Declaration, the Plan or the Confirmation Order; and

         (ii)    the Exempt Assets Trustee shall not be liable for any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, unless the Exempt Assets Trustee was grossly negligent.

7.5     Reliance of the Exempt Assets Trustee.

Except as provided in Section 7.4:

(i)     the Exempt Assets Trustee may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, notices, requests, consents, instruments or reports believed by it to be genuine and to have been signed or presented by the proper Person or Persons; provided, however, that the Exempt Assets Trustee shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Declaration or the Plan; and

(ii)    the Exempt Assets Trustee may consult with and rely upon the written or oral advice of independent legal counsel to be selected by him or professionals retained by the Exempt Assets Trust, including without limitation counsel, financial advisors and advisors, and the Exempt Assets Trustee shall not be liable for any action taken or omitted to be taken by him in accordance with the advice of such counsel or other professional; and Persons dealing with the Exempt Assets Trustee shall look only to the Exempt Assets Trust Property to satisfy any liability incurred by the Exempt Assets Trustee to such Person in carrying out the terms of this Declaration, and the Exempt Assets Trustee shall have no personal obligation to satisfy any such liability.

7.6     Indemnification.

From and after the Effective Date, the Exempt Assets Trustee and the members of the Oversight Committees, and their respective members, officers, managers, directors, employees, consultants, professionals, advisors, agents, and other representatives, including, without limitation, attorneys, accountants, and financial advisors, and their respective subsidiaries and affiliates, and the successors or assigns of the foregoing, (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be, and hereby are, indemnified by the Exempt Assets Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability (collectively, "Liability Claims") arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Transferred Causes of Action or objections to Unsecured Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Exempt Assets Trustee; or (iv) proceedings by or on behalf of any creditor, except to the extent any member of the Oversight Committees is acting on behalf of itself as a creditor or as agent for any creditor in its individual capacity. The Exempt Assets Trust shall, on demand, advance or pay promptly out of Cash or a reserve account set up specifically for this purpose if such an account

is established by the Exempt Assets Trustee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder for any reason whatsoever.  If any member of the Oversight Committees or the Exempt Assets Trustee has a reasonable concern that any Indemnified Party who has requested or is reasonably expected to request indemnification for any reason would not be entitled to such indemnification for the reason stated in the preceding sentence, such member may request a hearing before the Bankruptcy Court on such request (or expected request) and the Bankruptcy Court's ruling on such request (or expected request) shall be binding.

The Exempt Assets Trustee is authorized, but not required, to obtain and purchase (by using cash of the Exempt Assets Trust) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties (or any other professionals hired by the Exempt Assets Trustee) under the Plan.  Any person entitled to indemnification shall have the right to employ such person's own separate counsel reasonably acceptable to the Exempt Assets Trustee and the applicable Oversight Committee in any such action, at the Exempt Assets Trust's expense, subject to the foregoing terms and conditions.

7.7    Expenses and Costs of the Exempt Assets Trustee and Members of the Oversight Committees.

Subject to limitations set forth in the Plan, the Exempt Assets Trust Property shall be subject to the claims of the Exempt Assets Trustee and the members of the Oversight Committees, and the Exempt Assets Trustee shall be entitled to reimburse himself and the members of the Oversight Committees out of any available Cash in the Exempt Assets Trust, for their actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Exempt Assets Trustee or any such member may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Exempt Assets Trustee or the Oversight Committees under this Declaration, provided that any request for reimbursement of a single expenses (or related expenses) in an amount greater than $5,000.00 shall be submitted, in writing, to the Oversight Committees within three (3) Business Days prior to the incurrence of such expense (unless such expense could not be reasonably anticipated in advance), and unless a majority of the members of the Oversight Committees denies such request within two (2) Business Days of the request being made, the request shall be deemed approved, provided further that, for these purposes, the provisions set forth in Section 7.4 hereof as applied to the Exempt Assets Trustee shall be deemed to apply to the members of the Oversight Committees as if the Oversight Committees were the subject of such Section 7.4.  If the Cash in the Exempt Assets Trust shall be insufficient to compensate and reimburse the Exempt Assets Trustee or the members of the Oversight Committees, as the case may be, for any amounts to which they are entitled hereunder and if the Exempt Assets Trustee shall be unable to borrow funds sufficient for such compensation and reimbursement in accordance with the terms of this Declaration, then the Exempt Assets Trustee is hereby authorized, subject to Sections 3.3 and 3.7 hereof, to reduce to Cash that portion of the Exempt Assets Trust Property necessary so as to effect such compensation and reimbursement.

7.8    No Commingling of Property.

The Exempt Assets Trustee shall not commingle any of the Exempt Assets Trust Property with his own property or the property of any other Person.

7.9    Claims Against the Exempt Assets Trustee.

In accepting the Trust hereby created, the Exempt Assets Trustee acts solely as Exempt Assets Trustee hereunder, and all Persons having any claim against the Exempt Assets Trustee in connection with his performance of his rights, powers and duties as such Exempt Assets Trustee shall only look to the Exempt Assets Trust Property for payment or satisfaction thereof.

7.10    Confidentiality.

The Exempt Assets Trustee shall, during the period that he serves as Exempt Assets Trustee under this Declaration and for a period of twelve (12) months following the termination of this Declaration or following his removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Exempt Assets Trust Property relates or of which he has become aware in his capacity as Exempt Assets Trustee.

7.11    Removal of the Exempt Assets Trustee.

The Exempt Assets Trustee may be removed with or without cause by a majority of the members of the General Oversight Committee, or (b) the Exempt Assets Trustee's own motion to the Bankruptcy Court, with no less than thirty (30) days' prior written notice thereof to the General Oversight Committee ("Notice").

7.12    Resignation of the Exempt Assets Trustee.

The Exempt Assets Trustee may resign as Exempt Assets Trustee at any time by giving Notice; provided, however, that such resignation shall not be effective earlier than thirty (30) days after the date of such notice, unless an earlier effective date is allowed by the Bankruptcy Court or by a unanimous vote of the General Oversight Committee.

7.13    Successor Trustee.

In the event that the Exempt Assets Trustee is removed, resigns (with 30 days' notice to the General Oversight Committee) or otherwise ceases to serve as Exempt Assets Trustee, the General Oversight Committee shall use commercially reasonable efforts to select a successor Exempt Assets Trustee within twenty (20) Business Days of such resignation, removal, or cessation of service by the incumbent Exempt Assets Trustee. The General Oversight Committee shall file with the Bankruptcy Court a notice of such successor, which shall be served on the United States Trustee and all parties that have requested notice in the Chapter 11 Cases. Any successor Exempt Assets Trustee shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Exempt Assets Trustee. If the Exempt Assets Trustee ceases to act as Exempt Assets Trustee for any reason whatsoever, such Exempt Assets Trustee shall turn over to any

successor Exempt Assets Trustee, upon written request, any and all property of the Exempt Assets Trust, including without limitation business and financial records of the Exempt Assets Trust, within twenty (20) days of the receipt of such written request. References herein to the Exempt Assets Trustee shall be deemed to refer to the successor Exempt Assets Trustee acting hereunder.

7.14    Appointment of Successor upon Removal or Resignation.

If the Exempt Assets Trustee is removed pursuant to Section 7.12 or resigns pursuant to Section 7.13 and a successor Exempt Assets Trustee is not appointed or does not accept his appointment within forty- five (45) days following such action for removal or delivery of notice of resignation, as the case may be, the General Oversight Committee may appoint a successor Exempt Assets Trustee. If a successor Exempt Assets Trustee is not appointed or does not accept his appointment pursuant to the preceding sentence of this Section 7.15 within seventy-five (75) days following such action for removal or delivery of notice of resignation, as the case may be, any holder of Exempt Assets Trust Beneficial Interests may petition any court of competent jurisdiction, including the Bankruptcy Court, for the appointment of a successor Exempt Assets Trustee.

7.15    The General Oversight Committee.

An oversight committee (the "General Oversight Committee") is established pursuant to this Declaration. As of the Effective Date, the Oversight Committee members shall be: (i) Baker Petrolite Corporation; (ii) SCS Engineers; (iii) Pacific Petroleum California, Inc.; and (iv) MMI Services, Inc. Nothing herein shall prohibit any member of the Oversight Committee from providing a proxy for such member's vote on General Oversight Committee matters to any other member of the General Oversight Committee. Unless otherwise specified herein or in the Plan, approval of a majority of the members of such General Oversight Committee shall be required for the General Oversight Committee to act. In the event that a member of the General Oversight Committee resigns, the party or parties that designated such resigning member shall select a successor to serve in the place of the resigning member, provided, however, that if the resigning General Oversight Committee members was one identified by the Committee, to the extent the Committee is no longer in existence the successor member shall be designated by the other General Oversight Committee member designated by the Committee. The General Oversight Committee shall have the right to remove and appoint a successor Exempt Assets Trustee in accordance with the express terms of this Declaration. Except for (a) reimbursement of reasonable expenses, (b) the General Oversight Committee members' fees and (c) indemnification, the members of the General Oversight Committee shall receive no other compensation or other payment for the performance of their duties hereunder. The General Oversight Committee may adopt by-laws with respect to its operation so long as such by-laws are consistent with the terms of the Plan and this Declaration.

7.16    The Nabors Lawsuit Oversight Committee

The Nabors Lawsuit Oversight Committee (together with the General Oversight Committee, the "Oversight Committees") is established pursuant to the terms of the Plan. The Nabors Oversight Committee shall be a three (3) member board consisting of one (1) member appointed by Scott Y. Wood and two (2) members appointed by the Committee, provided that if

there is a settlement between Scott Y. Wood and the Committee before the Effective Date, then the Nabors Lawsuit Oversight Committee shall be a five (5) member board consisting of three (3) members appointed by Scott Y. Wood and (2) two members appointed by the Committee. In no event shall Scott Y. Wood be a member of the Nabors Lawsuit Oversight Committee.

The Exempt Assets Trustee shall keep the Nabors Lawsuit Oversight Committee reasonably apprised of the Exempt Assets Trustee's actions with respect to the Nabors Lawsuit. Notwithstanding anything else in this Declaration or the Plan to the contrary, the Exempt Assets Trustee shall not settle the Nabors Lawsuit without the approval of the majority of the members of the Nabors Lawsuit Oversight Committee as constituted at the time of any proposed settlement and without approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Upon the settlement or conclusion of the Nabors Lawsuit, the Nabors Lawsuit Oversight Committee shall be dissolved.

7.17     Records.

The Exempt Assets Trustee shall maintain good and sufficient books and records of account relating to the Exempt Assets Trust Property, the cash, the management thereof, all post-Effective Date transactions undertaken by the Exempt Assets Trustee, all expenses incurred by or on behalf of the Exempt Assets Trustee after the Effective Date, and all distributions contemplated or effectuated under the Plan.

ARTICLE VIII.
TERMINATION

8.1     Termination of Exempt Assets Trust.

The duties, responsibilities and powers of the Exempt Assets Trustee and the Oversight Committees shall terminate after (a) all the Exempt Assets Trust Property, including Transferred Causes of Action, transferred and assigned to the Exempt Assets Trust or involving the Exempt Assets Trustee on behalf of the Exempt Assets Trust are fully resolved, abandoned or liquidated by the Exempt Assets Trust, (b) all disputed Convenience Claims and Unsecured Claims have been resolved and (c) all Plan Distributions to be made in accordance with the Plan and this Declaration have been made. The Exempt Assets Trust shall terminate no later than five (5) years from the Effective Date; provided, however, that, within six (6) months prior to the fifth (5th) anniversary of the Effective Date (or such later date as may be permitted by order of the Bankruptcy Court as described in this Section 8.1), the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Exempt Assets Trust for a finite period, if such an extension is necessary to liquidate the Exempt Assets Trust Property or for other good cause. Multiple extensions of the termination of the Exempt Assets Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration of each extended term and the Exempt Assets Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Exempt Assets Trust as a grantor trust for federal income tax purposes. Upon the occurrence of the termination of the Exempt Assets Trust, the Exempt Assets Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Exempt Assets Trustee and a final decree closing the Debtors' Chapter 11 Cases. The Exempt Assets Trustee shall not unduly prolong the duration of the Exempt Assets Trust and shall at all times endeavor to resolve, settle

or otherwise dispose of all claims that constitute Exempt Assets Trust Property and to effect the distribution of the Exempt Assets Trust Property to the holders of the Exempt Assets Trust Beneficial Interests in accordance with the terms hereof and the Plan and terminate the Exempt Assets Trust as soon as practicable.  Prior to and upon termination of the Exempt Assets Trust, the Exempt Assets Trust Property will be distributed to the holders of Exempt Assets Trust Beneficial Interests, pursuant to the provisions set forth in Sections 3.7, 5.3, 6.4 and 6.5 hereof. If any Exempt Assets Trust Property is not duly claimed, such Exempt Assets Trust Property will be distributed, pro rata, according to holders' Exempt Assets Trust Beneficial Interests. Thereafter, if there is still any Exempt Assets Trust Property not duly claimed after satisfaction in full of all Allowed Unsecured Claims, including interest, such Exempt Assets Trust Property will be donated to the ABI Endowment Fund.

8.2     Bankruptcy Court Order.

Apart from any other provision of this Declaration, the Exempt Assets Trustee or any party in interest may apply to the Bankruptcy Court to terminate the Exempt Assets Trust and the Exempt Assets Trust may be terminated under such terms and conditions as the Bankruptcy Court may establish.

ARTICLE IX.
JURISDICTION

Any provision of this Declaration which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

The Bankruptcy Court shall retain sole and exclusive jurisdiction over this Declaration and the Exempt Assets Trust established hereby, including without limitation the interpretation and enforcement of its provisions, for the purpose of determining all amendments, applications, claims or disputes with respect to this Declaration and the Exempt Assets Trust.

ARTICLE X.
MISCELLANEOUS

10.1     Intention to Establish Grantor Trust.

This Declaration is intended to create a grantor trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Declaration may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

10.2     Reporting; Securities Laws.

Under Bankruptcy Code § 1145, the issuance of Exempt Assets Trust Beneficial Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable

state and local laws requiring registration of securities. If the Exempt Assets Trustee determines, with the advice of counsel, that the Exempt Assets Trust is required to comply with the reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Exempt Assets Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

10.3    <u>Organization.</u>

This Declaration is not intended to create and shall not be interpreted as creating an association, corporation, partnership or joint venture of any kind; it is intended as a trust, to be governed and construed in all respects as a trust.

10.4    <u>Principal Office.</u>

The Exempt Assets Trustee shall establish a principal office of the Exempt Assets Trust by written notice to the Oversight Committees, which shall be filed with the Bankruptcy Court, no later than thirty (30) days after the Effective Date.

10.5    <u>Sale and Conveyances.</u>

Any sale or other conveyance of a part of the Exempt Assets Trust Property made by the Exempt Assets Trustee, and pursuant to this Declaration, shall bind the Exempt Assets Trustee and shall be effective to transfer or convey all right, title and interest of the Exempt Assets Trustee in and to such Exempt Assets Trust Property. The Exempt Assets Trustee shall not assume any liability or incur any obligation or liability to any other Person in connection with the transfer by the Exempt Assets Trustee of the Exempt Assets Trust Property, and no delegation of duty of performance to the Exempt Assets Trustee or assumption of liabilities of the Debtors by the Exempt Assets Trustee is intended hereby, except as expressly set forth in the Plan or this Declaration.

10.6    <u>Books and Records.</u>

The Exempt Assets Trustee shall have the authority to take possession of, and the Debtors, as applicable shall allow access to, all books, records and other information of the Debtors, including, but not limited to, all books, records and other information relating to the Transferred Causes of Action and Unsecured Claims asserted against the Estates, on or before the Effective Date. The Debtors or the CRO, as applicable, shall notify the Exempt Assets Trustee before destroying or abandoning any material records or files of the intended destruction date.

10.7    <u>Amendment and Waiver.</u>

Any substantive provision of this Declaration may be amended or waived with the approval of a majority of the members of the General Oversight Committee, provided that any such amendment or waiver has no effect upon the Nabors Lawsuit Oversight Committee. Technical amendments to this Declaration may be made, as necessary to clarify this Declaration

or enable the Exempt Assets Trustee to effectuate the terms of this Declaration, with the consent of the Exempt Assets Trustee.

10.8    <u>Assignment</u>.

Except as provided herein, the obligations, duties and/or rights of the Exempt Assets Trustee under this Declaration shall not be assignable, voluntarily, involuntarily or by operation of law, and any such assignment shall be void.  All covenants and agreements contained herein shall be binding upon and are personal to the Exempt Assets Trustee and shall inure to the benefit of the Exempt Assets Trustee and any Successor Trustee in the same manner.

10.9    <u>Laws as to Construction</u>.

This Declaration shall be governed and construed in accordance with the laws of the State of New York, without giving effect to rules governing the conflict of law.

10.10    <u>Entire Declaration</u>.

This Declaration, together with the related instruments expressly referred to herein, constitutes the entire agreement of the parties, and all such agreements and the Plan shall be construed as integrated and complementary of each other and intended to carry out the terms of the Plan.

10.11    <u>Severability</u>.

If any provision of this Declaration or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Declaration, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Declaration shall be valid and enforced to the fullest extent permitted by law.

10.12    <u>Notices</u>.

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited by certified mail, postage prepaid, in a post office or letter box addressed to the Person for whom such notice is intended:

If to the Exempt Assets Trustee:

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, Texas 75606

With a copy to:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn:   Robert J. Feinstein, Esq.

If to the General Oversight Committee:

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Attn:   Robert J. Feinstein, Esq.


If to the Nabors Oversight Committee:


If to a holder of a Exempt Assets Trust Beneficial Interest:

To the name and address set forth on the Trust Interest Register maintained by the Exempt Assets Trustee.

10.13    Preemption.

In the event of an inconsistency between this Declaration and the Plan, the terms of the Plan shall govern.  Nothing in this Declaration shall impact the rights of the Exit Facility Lender, the Exit Facility Agent, the Administrative Agent or the Prepetition Lenders under the Plan or their respective loan documents.

10.14    Headings.

The section headings contained in this Declaration are solely for convenience of reference and shall not affect the meaning or interpretation of this Declaration or of any term or provision hereof.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Declaration, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

ERG Intermediate Holdings, LLC

By: _____
Name: R. Kelly Plato
Title:  Managing Member


JASON R. SEARCY

_____

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, Texas 75606

*The Exempt Assets Trustee*


ERG RESOURCES, L.L.C.

By: _____
Name: R. Kelly Plato
Title:  Managing Member

ERG INTERESTS, LLC

By: _____
Name: R. Kelly Plato
Title:  Managing Member

ERG OPERATING COMPANY, LLC

By: _____
Name: R. Kelly Plato
Title:  Managing Member

WEST CAT CANYON, L.L.C.

By: _____
Name: R. Kelly Plato
Title:  Managing Member

**EXHIBIT B**

**Discovery Order**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| ROYALTY CLEARINGHOUSE, LTD, | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | |
| CTS PROPERTIES, LTD., CTS | § | A-16-CV-1342-LY-ML |
| MANAGEMENT, LLC, SCOTT Y. | § | |
| WOOD, AND TANA R. WOOD, | § | |
| Defendants. | § | |

## ORDER

Before the court are Plaintiff's Opposed Motion for Expedited Discovery [Dkt. #11] filed January 31, 2017; Defendant Tana R. Wood's Response to Plaintiff's Motion for Expedited Discovery [Dkt. #15] filed February 7, 2017; Defendants CTS Properties, Ltd., CTS Management, LLC, and Scott Y. Wood's Response in Opposition to Plaintiff's Motion for Expedited Discovery [Dkt. #16] filed February 7, 2017; and Plaintiff's Reply in Support of Its Opposed Motion for Expedited Discovery [Dkt. #19] filed February 14, 2017. The motions and related briefings were referred to the undersigned for disposition by United States District Judge Lee Yeakel pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Rules of the United States District Court for the Western District of Texas. Upon careful consideration of the motions, the briefing, and the relevant case law, the undersigned issues the following order.

## I.    BACKGROUND[1]

In the underlying lawsuit, Plaintiff Royalty Clearinghouse, Ltd. ("RCH") seeks to recover damages incurred from Defendants' alleged fraudulent conduct in connection with the sale of $17.5 million in fractional undivided interests in oil, gas, and other mineral interests. Compl.

---

[1] The facts recited below are taken from the well-pleaded complaint allegations.

[Dkt. #1] ¶ 1. RCH brings a federal law claim against Defendants CTS Properties, Ltd. ("CTS"),

CTS Management, LLC ("CTS Management"), and Scott Y. Wood ("Mr. Wood") (collectively,

the "CTS Defendants") for federal securities fraud pursuant to 18 U.S.C. § 78j(b) and 17 C.F.R.

§ 240.10b-5 as well as state law claims for breach of contract and fraud. *Id.* ¶¶ 198–230. In

addition, RCH brings a state law claim against all Defendants, including Defendant Tana R.

Wood ("Mrs. Wood"), for money had and received. *Id.* ¶¶ 231–237.

The factual predicate for this action is somewhat convoluted but the basic facts relevant

to the current dispute are as follows: Mr. and Mrs. Wood each owned roughly 50% stakes in

CTS Properties, which in turn owned Royalty Interests (the "Royalty Interests") worth at least

$17.5 million. Mr. and Mrs. Wood divorced in December 2013, pursuant to which Mrs. Wood

received a cash payment upwards of $15 million. In January 2014, Mr. Wood caused CTS to sell

its Royalty Interests for $17.5 million to RCH, which wired the purchase price to CTS's bank

account at Prosperity Bank. RCH purchased the Royalty Interests believing Mr. Wood and CTS

had good title to them. It appears, however, that the Royalty Interests were encumbered by the

debt of another company owned by Mr. and Mrs. Wood, ERG Resources, LLC ("ERG"). When

ERG became subject to judicial foreclosure proceedings initiated by its bank, RCH was named

as a defendant because its Royalty Interests were pledged as ERG's collateral. In essence, the

bank conducting the foreclosure proceedings claimed a superior title to the Royalty Interests.

RCH negotiated a settlement with the bank to exit the foreclosure lawsuit worth $700,000, or

less than 5% of the purchase price for the Royalty Interests. In the current lawsuit, RCH alleges

that Defendants' acted fraudulently in purporting to have clear title to the Royalty Interests and

that this conduct led to RCH losing nearly $17.5 million. It now brings this cause of action to

recover the amount it believes it is owed from the beneficiaries of Mr. Wood's alleged fraud.

RCH's pending motion seeks expedited discovery of five documents from Defendants. Defendants oppose RCH's motion on grounds that all discovery in this action is stayed pursuant to section 78u-4(b)(3)(B) of the Private Securities Litigation Reform Act ("PSLRA"), which governs all cases that plead federal securities claims, as a result of two pending motions to dismiss. Defendants argue that RCH has failed to satisfy its burden of demonstrating that the stay should be lifted.

## II.   LEGAL STANDARD

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempt from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." FED. R. CIV. P. 26(d)(1). This proceeding is not exempt from initial disclosure, the parties have not had a Rule 26(f) conference, nor has the court issued a scheduling order. Therefore, for RCH to pursue expedited discovery at this time, the court must order it.

"Federal Rule of Civil Procedure 26 gives a trial court wide discretion to manage the discovery process." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). Though expedited discovery "is not the norm," it may be ordered. *Id.* The Fifth Circuit has not established a standard for allowing expedited discovery, but the majority of courts considering the issue have adopted a "good cause" standard. *See St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011). Under the "good cause" standard, a court must examine the discovery request "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Merrill Lynch*, 194 F.R.D. at 624.

3

## III.   ANALYSIS

RCH seeks expedited discovery in hopes of identifying the transfer recipients of the $17.5 million purchase price it paid CTS for the Royalty Interests. Through initial cooperative discussions, RCH states that it now knows that $15 million of the purchase price was paid to Mrs. Wood pursuant to the divorce settlement, and $350,000 went to the oil and gas brokerage firm that arranged the transaction.  Mot. Exp.[Dkt. #11] at 5. Thus, RCH still seeks to identify where the remaining $2,150,000 of the purchase price went. To this end, RCH requests production of five documents: (1) the Wood's Agreement Incident to Divorce; (2) Mr. Wood's sworn inventory of assets in the Wood Divorce; (3) Mr. Wood's deposition in the Wood Divorce; (4) a report by Mr. Wood's financial valuation expert in the Wood Divorce; and (5) bank statements from CTS's account at Prosperity Bank. *Id.* at 5–6. RCH states it seeks expedited production of these documents for two reasons: (1) they will allow RCH to determine what fraudulent transfer claims may be asserted against Ms. Wood under the Texas Uniform Fraudulent Transfer Act ("TUFTA"); and (2) these documents will help RCH identify any other parties who may have received the unaccounted for $2,150,000 and join them as defendants in this case before the four-year statute of limitations period expires for a fraudulent transfer claim, which could happen as early as January 2018. *Id.* at 6.

Defendants argue that RCH's motion must be denied because discovery in this matter is stayed pursuant to the PSLRA. The PSLRA places a mandatory stay on all discovery "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B). Once a federal securities claim is pleaded, the PSLRA discovery stay applies to all claims, including any state-law claims. *See S.G. Cowen Sec. Corp. v.*

*U.S. Dist. Court*, 189 F.3d 909, 913 n.1 (9th Cir. 1999) ("Congress' attempt to address [concerns

of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the

stay simply by asserting pendent state law claims in federal court in conjunction with their

federal law claims."); *see also In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006

WL 1738078, at *3 (S.D.N.Y. June 26, 2006); *Benbow v. Aspen Technology, Inc.*, No. 02–2881,

2003 WL 1873910, at *5 (E.D. La. 2003) (applying the PSLRA discovery stay to state law

claims, alongside the federal securities law claims).

Mrs. Wood's motion to dismiss was filed on the same day as RCH's Motion to Expedite

Discovery, and the CTS Defendants' Motion to Dismiss was filed the following day. *See* Dkt.

#11–13. Both motions to dismiss remain pending. Thus, RCH, as the party seeking expedited

discovery, bears the burden of demonstrating that the mandatory stay should be lifted. *Davis v.*

*Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 592 (S.D. Tex. 2011).

As an initial matter, the undersigned notes that RCH's arguments that "good cause" exists

for ordering expedited discovery under Fed. R. Civ. P. 26(d)(1) are inapposite as the threshold

issue is whether any discovery is appropriate prior to the resolution of the pending motions to

dismiss. *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1180 (C.D. Cal.

2008) (where PSLRA applies, court does not reach the issue of whether party seeking expedited

discovery has shown "good cause" under Rule 26(d)(1)). When determining whether to lift a

mandatory stay under the PSLRA, a court considers the scope of discovery that the requesting

party seeks. "The rationale underlying the stay was to prevent costly 'extensive discovery and

disruption of normal business activities' until a court could determine whether a filed suit had

merit, by ruling on the defendant's motion to dismiss. The stay protected defendants from

plaintiffs who would use discovery to substantiate an initially frivolous complaint." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir. 2003).

RCH argues that the PSLRA's discovery stay should not apply because the discovery it seeks is "particularized," and it would suffer "undue prejudice" if the stay was not lifted. "Undue prejudice" has been defined as "'improper or unfair treatment' amounting to something less than irreparable harm." *Vacold LLC v. Cerami*, No. 00 CIV. 4024(AGS), 2001 WL 167704, at *6 (S.D.N.Y. February 16, 2001) (quoting *Med. Imaging Ctrs. of Am., Inc. v. Lichenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996)). "Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair." *In re CFS*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001). Undue prejudice has been found "where defendants might be shielded from liability in the absence of the requested discovery." *Vacold*, 2001 WL 167704, at *6; *see In re CFS*, 179 F. Supp. 2d at 1266–67; *see also Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, 99 CIV 342, 1999 WL 223158, at *1–2 (S.D.N.Y. April 16, 1999) (allowing the plaintiff corporation to obtain discovery related to the defendant's efforts to take over the plaintiff, because those actions, if successful, would moot the plaintiff's lawsuit). *Benbow v. Aspen Technology, Inc.*, No. 02–2881, 2003 WL 1873910, at *4 (E.D. La. 2003). A discovery request is sufficiently "particularized" for purposes of obtaining discovery under the exception if the request "adequately specif[ies] the target of the requested discovery and the types of information needed." *Davis*, 801 F. Supp. 2d at 592 (quoting *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005)). Whether a discovery request is sufficiently "particularized" depends on "the nature of the underlying litigation." *Id.* (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

The undersigned finds that RCH has not carried its burden to demonstrate that the mandatory PSLRA stay should be lifted. Assuming arguendo that RCH's discovery requests are sufficiently particularized, it has not shown that this expedited discovery is necessary to prevent undue prejudice.[2] In its motion, RCH concedes that it seeks this discovery to determine what TUFTA claims it may assert against Mrs. Wood specifically and against other parties in general. Mot. Exp. at 6. Yet, Congress enacted the mandatory discovery stay under the PSLRA to prevent plaintiffs from using it as a vehicle to "conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." S. Rep. No. 104-98, at 14 (1995). RCH has chosen to invoke a federal securities fraud claim against the CTS Defendants, thus it is necessarily subjected to the conditions of the PSLRA. Allowing the PSLRA's discovery stay to be lifted so that RCH can obtain information to enable it to add additional claims or defendants not already part of the complaint is exactly the type of conduct Congress sought to prevent by providing for an automatic stay in federal securities law litigation. *See SG Cowen Sec. Corp v*, 189 F.3d at 912 (observing that one of the main purposes of the PSLRA discovery stay is to minimize plaintiffs' incentives to bring frivolous securities class actions in the hopes that discovery will reveal to the plaintiffs some sustainable claim not known or alleged in the original complaint). The PSLRA makes the battle order clear: RCH must withstand a motion to dismiss as to the sufficiency of its PSLRA claim before it can proceed to discovery.

If RCH has stated a viable PSLRA claim such that it can survive Defendants' motions to dismiss, then it will be able to request the documents it seeks through the normal course of discovery. If, in turn, these documents reveal information that counsels towards adding specific TUFTA claims against Mrs. Wood and adding fraudulent transfer claims against other

---

[2] RCH does not argue that expedited discovery is necessary to preserve evidence in this matter. *See* 15 U.S.C. § 78u-4(b)(3)(B).

7

defendants, then RCH may add these claims and defendants in due course. This case is in the very early stages of litigation—there is no scheduling order in place and no amended pleadings deadline yet set. The undersigned is mindful of RCH's concern that the statute of limitations for its potential TUFTA claims may run in January 2018. Still, that deadline is almost a year away and the Defendants' motions to dismiss are already on file. If RCH has pleaded viable claims, it will withstand the motions to dismiss in time to amend its pleadings in this matter.

Accordingly, for the reasons stated above, Plaintiff's Opposed Motion for Expedited Discovery [Dkt. #11] is **DENIED**.

SIGNED February 27, 2017.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

8